## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGENY,                                            )
a program of Destination Innovations Inc.,          )
CHRISTOPHER COOPER,                                 )
ELBERT COSTELLO,                                    )
MARTEL COSTELLO, and                                )
JEREMY LEVY, JR.,                                   )
on behalf of themselves                             )
and others similarly situated,                      )
                                                    )          COMPLAINT – CLASS ACTION
         Plaintiffs,                                )
                                                    )
v.                                                  )          Case No. _____
                                                    )
CITY OF WICHITA, KANSAS,                            )
CHIEF GORDON RAMSAY, in his                         )
official capacity as Chief of the Wichita           )          PLACE OF TRIAL REQUESTED:
Police Department, and                              )          WICHITA, KANSAS
LIEUTENANT CHAD BEARD, in his                       )
official capacity as Supervisor of the Gang         )
Unit of the Wichita Police Department,              )
                                                    )
         Defendants.                                )

## COMPLAINT

Organizational Plaintiff Progeny Kansas and Plaintiffs Christopher Cooper, Elbert

Costello, Martel Costello, and Jeremy Levy, Jr. (collectively "Plaintiffs"), individually and on

behalf of a class of similarly situated individuals, by and through their undersigned attorneys, bring

this action against the City of Wichita, Kansas, Chief Gordon Ramsay, in his official capacity as

Chief of the Wichita Police Department (the "WPD"), and Lieutenant Chad Beard, in his official

capacity as Supervisor of the Gang Unit of the WPD (collectively "Defendants"), and allege as

follows:

## PRELIMINARY STATEMENT

1.      This is an action under the U.S. Constitution and 42 U.S.C. § 1983 challenging the

constitutionality of K.S.A. 21-6313, *et seq.*, and the City of Wichita's maintenance and use,

through its police department, of a discriminatory, erroneous, harmful, and unconstitutional Gang

List to unlawfully track, surveil, prosecute, and punish large swaths of the Wichita community

under the guise of public safety.

2.      The WPD's[1] practices and policies surrounding its Gang List disproportionately

target and harm individuals and communities of color and violate the First, Fourth, and Fourteenth

Amendments to the United States Constitution.

3.      The WPD maintains the Gang List pursuant to K.S.A. 21-6313 and WPD Policy

527, a true and correct copy of which is incorporated as Exhibit A.

4.      Police officers within the WPD's Gang Unit routinely exercise unilateral and

virtually unchecked power to designate individual Wichita residents as "gang members" or "gang

associates" based on scant and unreliable evidence, or, indeed, no evidence at all. K.S.A. 21-6313

and WPD Policy 527 do not require that a person be convicted of a crime, charged with a crime,

or even suspected of being involved in criminal activity in order to be designated as a gang member

or gang associate. The WPD continuously tracks the individuals it designates as gang members or

associates, and even tracks constitutionally protected activity.

5.      Adult individuals placed on the Gang List are provided no notice of their inclusion

on the list, or what prompted that inclusion, nor do they have the opportunity to challenge such

designation either under the terms of the statute or as it is applied in practice. Because there are no

---

[1] The City of Wichita acts, with respect to its use and maintenance of the Gang List, through its governmental sub-unit the WPD, and the WPD's divisions and units; thus, Plaintiffs' references to the WPD or its Gang Unit encompass allegations against the City.

provisions within the WPD policies to remove anyone from the Gang List, those listed remain branded as gang members or associates for life, even if they never come into contact with the criminal justice system.

6.      Inclusion on the Gang List subjects an individual to a wide range of severe civil and criminal consequences, including enhanced bail and probation and parole terms, limited plea opportunities, extreme prejudice at criminal trials, widespread reputational harm, denial of associative and assembly rights, and discrimination in housing, licensing, and employment.

7.      The Gang List is discriminatory in that it targets primarily Black and Brown individuals: the overwhelming majority of those listed are Black or Latinx, despite those groups representing only a small minority of the greater Wichita community. The racial disparities in the makeup of the Gang List, and the geographic concentration of those listed, demonstrate that the WPD is explicitly targeting minority communities for its gang enforcement work, in violation of the Fourteenth Amendment. For instance, Black residents make up only 10.9% of Wichita's population, but comprise 60% of Wichita's Gang List. Latinx individuals account for only 17.2% of Wichita's population, but make up 25% of the Gang List. In contrast, White residents make up 62.8% of Wichita's population, but account for only 6% of the Gang List.[2]

8.      Upon information and belief, WPD officers include on the Gang List a small number of certain "biker groups" and "white supremacists" comprised mainly of white individuals, but do not make the same efforts to surveil those individuals, nor to categorize the individuals they associate with as gang members or gang associates. While all of those listed on the Gang List are

---

[2] *See* U.S. Census Bureau, *QuickFacts: Wichita city, Kansas,* https://www.census.gov/quickfacts/wichitacitykansas (accessed Apr. 5, 2021); Gregg W. Etter Sr. & Warren G. Swymeler, *Examining the Demographics of Street Gangs in Wichita, Kansas,* 16 Journal of Gang Research, at 7-8 (2008).

harmed by the lack of procedural and substantive due process, the statute and the WPD policies are used to disproportionately target racial minorities.

9. These staggering racial disparities are the product of unconstitutionally vague and procedurally deficient policies codified in K.S.A. 21-6313 and implemented in WPD Policy 527.

10. K.S.A. 21-6313 is unconstitutionally vague. K.S.A. 21-6313 sets out ten criteria for law enforcement to consider when determining whether an individual may be designated as a street gang member or associate under Kansas law. A person need only meet three of these ten criteria to be considered a criminal street gang "member" under the statute. K.S.A. 21-6313(b)(2). Even worse, a person need only fulfill two of the ten criteria to qualify as a criminal street gang "associate" under the statute. K.S.A. 21-6313(d)(2). There is no meaningful distinction between the label of member or associate—the consequences that flow from either designation are the same. The criteria to qualify as a gang member or associate are vague and broad, and encompass a wide range of innocuous, innocent, and constitutionally protected behavior. The criteria include:

- Frequenting a particular criminal street gang's area
- Wearing a criminal street gang's color
- Associating with criminal street gang members
- Being identified as a criminal street gang member by a law enforcement officer
- Being identified as a criminal street gang member by "photographs or other documentation" and
- Being identified as a criminal street gang member by any informant "of previously untested reliability" where "such identification is corroborated by independent information."

11. The WPD's Policy 527 is a direct result of the unchecked and far-reaching authority that K.S.A. 21-6313 grants to Kansas police departments. Under Policy 527, an individual may be nominated as a gang member or associate by any state, county, or city law enforcement or correctional officer and "will be added to the Gang List if they meet the criteria defined in K.S.A.

21-6313." The statute provides no opportunity to challenge that nomination, no due process, and no process for removal from a Gang List.

12.     K.S.A. 21-6313 does not define or limit what a police department can define as a gang's "area" or "color," contains no parameters or exceptions regarding associating with gang members (*e.g.*, for family, co-workers, classmates, etc.), and does not establish any standards or grounds for identification of gang members by law enforcement or others, or for corroborating such identification.

13.     Under the statute, a person may be designated as a gang member or associate based on tenuous connections or even a single contact with others so designated. A person may engage in behaviors or contacts meeting these criteria without knowing or having any way to avoid such conduct. The criteria of K.S.A. 21-6313 and Policy 527 are so vague and expansive that the majority of Wichita citizens, including most judges, lawyers, clergy, union members, and other professional and social service providers, could be discretionally designated as a gang member or associate and added to the Gang List. Indeed, under the statute and policy, most WPD officers themselves qualify as gang members. The criteria could encompass entire schools, neighborhoods, and communities where the WPD claim gang presence, thereby implicating anyone who lives or learns there. Both the statute and policy are also written in such a way that anyone in Wichita wearing a gang "color"—such as red (Bloods), orange (Hoover Criminals), yellow (Latin Kings), green (Trinitarios), blue (Crips), or purple (Los Solidos)—also meets half the criteria for being a gang associate. Thus, for a child attending a school in a "gang area," going to class in any one of these colors permits a Wichita police officer to add that child to the Gang List without ever speaking to the child.

14.     K.S.A. 21-6313 also offers police offices a single-criterion, fast-track loophole to add an individual to the Gang List if that individual has "self-identified" as a gang member or associate. K.S.A. 21-6313(b)(1); K.S.A. 21-6313(d)(1). There is no requirement to corroborate such self-identification. Thus, K.S.A. 21-6313 effectively vests plenary authority to designate and brand "gang members" under Kansas law in the hands of individual police officers and departments like the WPD.

15.     Once the WPD adds an individual to the Gang List, that individual is automatically subject to enhanced monitoring and surveillance by Wichita police officers. Policy 527 prescribes frequent records checks to identify Gang List designees and instructs certain members of the Department's Records Bureau to "notify officers by use of Signal 33 [radio message consisting of the number 33] if a records check reveals an individual is listed in the Wichita Police Department computer as a gang member or associate."

16.     Upon information and belief, a Signal 33 is communicated directly to an officer in the field who calls in identifying information such as a license plate number or a driver's license, and is understood to mean that the individual so identified is a gang member.

17.     The information obtained through such Signal 33 notifications can then be used by officers during the course of a traffic or street stop, even if the person stopped is unaware that they are on the Gang List. On information and belief, this results in officers approaching stopped individuals identified through Signal 33 notifications in potentially more combative or escalating manners, including with weapons drawn.

18.     Once a WPD officer adds a person to the Gang List, Wichita police officers are not just encouraged, but procedurally required, to intermittently monitor multiple facets of that person's daily life, including reviewing their social media accounts and running a "Google Search"

on the individual. Upon information and belief, this procedural obligation is consistently carried out on persons of color on the Gang List, but not nearly to the same extent on white gang members and associates.

19.     Further, Wichita police officers routinely target people currently on the Gang List, or those whom the Police Department would like to add to the Gang List, for traffic enforcement. Individuals on the list report that WPD officers repeatedly watch, stop, search, harass, and intimidate them for engaging in noncriminal, innocent conduct.

20.     Neither K.S.A. 21-6313 nor WPD Policy 527 establishes any procedure for providing listed persons with notice or an opportunity to contest their designation on the Gang List as either a gang member or associate. On the contrary, Policy 527 states that the Gang List is "confidential" and "will only be released to commissioned law enforcement/correctional officers" or those authorized by certain Department leaders.

21.     In only one circumstance does Policy 527 outline some sort of notice. This occurs when a juvenile meets the gang member or associate criteria under K.S.A. 21-6313. In this case, a Department supervisor "will attempt to contact the parent and/or guardian of the juvenile," who "will be told how the juvenile met the gang criteria and will be informed of intervention options and resources." However, Policy 527 requires only that there be an "attempt" made to contact the parent or guardian, with no explanation of how extensive the "attempt" should be.

22.     Meanwhile, for adults, neither Policy 527 nor K.S.A. 21-6313 provides any notice to those designated as gang members or associates.

23.     As a general matter, most individuals never know they are included in Wichita's Gang List until it negatively affects them. Often, the first time a person becomes aware they are on the Gang List occurs during a bond hearing or arraignment following his or her arrest when

inclusion on the Gang List is listed on the probable cause affidavit, a point at which it is too late to challenge his or her inclusion on the list before suffering harm. For both juveniles and adults who know they are on the Gang List, there is no procedure to challenge the designation and demand removal from the List.

24.     As a result of the surveillance and harassment that comes with being placed on the Gang List, many individuals find it difficult to obtain or maintain jobs, access housing, or participate in various aspects of daily life. Members of the Wichita community have been afraid to leave their homes, interact with friends, or be around loved ones for fear of either being harassed by the WPD or placed or reinstated as active on the Gang List.

25.     When an individual is arrested on a person felony, the arresting officer is instructed to search the Gang List records for the arrestee's name and to document the arrestee's gang member or associate status in an arrest affidavit. If the individual is listed on the Gang List and arrested for a person felony, K.S.A 21-6316 mandates that judges set a cash or surety bail at a minimum of $50,000, regardless of the severity of the charge or the bond that would otherwise be appropriate. The only exception to this $50,000 minimum is if the reviewing court determines the defendant is not likely to re-offend and the defendant agrees to submit to an "intensive pre-trial supervision program." In such a case, designated WPD officers are then instructed to "monitor documented gang members and associates for any violations of their probation/parole, bond, and pretrial restrictions and will immediately report this to the proper supervising authorities with the intent of removing the offender from the community."

26.     Once designated as a criminal street gang member or associate, an individual remains "active" on the Gang List for a minimum of three years. If at any time during those three years, the WPD document an individual engaging in a *single criterion* of K.S.A. 21-6313, the

8

three-year period will start over. For instance, if a police officer observes a person on the Gang List wearing a particular "gang color," the police officer could extend the three-year period from the date of that observation. Likewise, if the person has a documented "gang tattoo," then a police officer could extend his or her three-year period if that person fails to conceal his or her tattoo, regardless of any actual ongoing gang affiliation.

27.     If an individual somehow manages to go three years without meeting any of the K.S.A. 21-6313's broad, vague criteria, that individual's Gang List status is changed to "INACTIVE"—but they are not removed from the Gang List. Indeed, Policy 527 provides no procedure for any individual to *ever* be removed from the Gang List. The WPD agrees that there is no process by which an individual's name is ever actually "removed" from the Gang List.

28.     The result of the facial deficiencies and discretionary nature of K.S.A. 21-6313 and Policy 527 is that Wichita Police place a large number of people, disproportionately people of color, on the Gang List each year without notice, without recourse, and in the absence of confirmed connections between those individuals and criminal street gangs. Most of these individuals who are added to the Gang List have not been accused of, or charged with, criminal activity connected to a gang.

29.     The result of this careless and unconstitutional designation, guided by an unconstitutionally vague and discretionary statute, is severe, ongoing, and lifelong harm to individuals included on the Gang List in violation of their constitutional rights.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because Plaintiffs seek a remedy under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. §§

2201 and 2202, this Court has jurisdiction to declare the rights of the parties, to grant injunctive relief, and to grant all further relief deemed necessary and proper.

31.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

32.     Organizational Plaintiff Progeny, a nonprofit organization in Wichita, Kansas, operates as a youth/adult partnership focused on reimagining the juvenile justice system and reinvesting in community-based alternatives.[3] Progeny is run by a small executive staff and a team of Youth Leaders who help guide, shape, and execute the vision and mission of the organization. Progeny is an affiliate of Destination Innovations, Inc., a 501(c)(3) organization.

33.     Progeny's goals are to prevent incarceration of young people, to break the school-to-prison pipeline, and to direct state funds into community-based programs that provide alternatives to incarceration.

34.     To fulfill its mission, Progeny hosts town halls, educates and works with members of the Kansas government, provides feedback to local and state leaders regarding their policy priorities, and organizes youth and community leaders around reform. Progeny also creates and publishes reports and other documents that translate youths' insights and needs into calls for government action.

35.     Progeny seeks to empower young people who have come into contact with the criminal justice system and provide these young people with counseling and support. Most of the youth leaders for Progeny started out as young people who came up through its programs.

36.     The WPD's Gang List is completely contrary to Progeny's mission and programs and directly impacts Progeny's staff and youth leaders. Members of Progeny are on the Gang List,

---

[3] Progeny, *Who We Are*, https://www.progenyks.com/about-us.

and the existence of the Gang List makes it more difficult for Progeny to fulfill its mission and help Wichita youth who are involved in the justice system. Moreover, Progeny has had to divert resources away from its other work to provide assistance and resources to those who are suffering from the consequences of being on the WPD's Gang List.

37.     Plaintiff Christopher Cooper is a 26-year-old Black man residing in Wichita. He is currently listed as an "active" gang member in the WPD Gang List. He has been on the Gang List since at least 2015, when he was 18 years old. Mr. Cooper has suffered continuous harassment by Defendants, who routinely stop him for minor traffic violations. Upon information and belief, Mr. Cooper has been denied employment of his choice because of Defendants' sharing of the Gang List with other entities. Mr. Cooper brings this action on behalf of himself and a class of similarly situated individuals who are subjected to Defendants' unconstitutional actions connected to the Gang List, and seeks injunctive and declaratory relief.

38.     Plaintiff Elbert Costello is a 45-year-old Black man residing in Wichita, Kansas. He is currently listed as an "active" gang member on the WPD Gang List. He has been on the Gang List since at least 1997, when he was 22 years old. Mr. Costello has been continuously marked as "active" on the Gang List because he gathers with friends his age, who are also on the Gang List. He fears harassment or, worse, additional punishment, if he gets together with others—including family members—for a beer, a barbecue, a family dinner, or a funeral. Mr. Costello brings this action on behalf of himself and a class of similarly situated individuals who are subjected to Defendants' unconstitutional actions connected to the Gang List and seeks injunctive and declaratory relief.

39.     Plaintiff Martel Costello is a 25-year-old Black man from Wichita. Mr. Martel Costello is incarcerated until 2025, currently in the Ellsworth Correctional Facility, because of a

probation violation. Mr. Martel Costello was convicted of a marijuana offense and possession of firearms. He learned he was on the Gang List for the first time when he was charged with these crimes. He was released pre-trial and eventually sentenced to probation. While on probation, Mr. Martel Costello was forced to abide by certain special conditions of probation, due to his designation as a gang member on WPD's Gang List. These conditions included not having any contact with any other known gang members, abiding by a strict curfew, and more. Mr. Martel Costello was repeatedly harassed by WPD while awaiting trial and while on probation, returned to jail on several occasions due to alleged probation violations. Most notably, he was punished on two occasions for attending the funeral of a loved one—first, his niece's funeral and later, his brother's funeral—because other people listed on the WPD's Gang List were also present. He was considered an active gang member on the WPD Gang List, but will be considered inactive as long as he is incarcerated. Once he is released, he will be considered an active gang member once again, and will again be subject to the extremely harsh gang conditions while on parole. He has been on the Gang List since at least 2016. Mr. Martel Costello brings this action on behalf of himself and a class of similarly situated individuals who are subjected to Defendants' unconstitutional actions connected to the Gang List, and seeks injunctive and declaratory relief.

40.     Plaintiff Jeremy Levy, Jr. is a 22-year-old Black man from Wichita. He is incarcerated until at least 2042, currently in the Hutchison Correctional Facility, because of a conviction of first-degree felony murder in 2017, when he was 18. Prior to being charged in that case, Mr. Levy was listed on the WPD's Gang List. Because of that, the prosecutor at his trial was allowed to introduce to the jury Mr. Levy's alleged gang status and multiple alleged "gang incidents" of an alleged "gang feud" for over six months prior to the alleged incident in which Mr. Levy was charged. There was no evidence that Mr. Levy had participated in those alleged gang

feud events, nor any evidence that the incident with which Mr. Levy was charged—which involved him and another individual—was gang-related. Mr. Levy is one of many individuals for whom their presence on the Gang List allows the prosecution to introduce irrelevant and prejudicial information at trial. Mr. Levy brings this action on behalf of himself and a class of similarly situated individuals who are subjected to Defendants' unconstitutional actions connected to the Gang List and seeks injunctive and declaratory relief.

41.    Defendant the City of Wichita is a municipal government body within the state of Kansas. The City is a "person" within the meaning of 42 U.S.C. § 1983.

42.    The City of Wichita is the largest city in Kansas, with a population of approximately 389,965 people. It is run by a Mayor and a six-member City Council, which collectively conduct all legislative functions for the City and establish policies that are executed by the City Manager. The City of Wichita has supervision over and responsibility for the WPD.

43.    The WPD is a sub-unit of the City of Wichita municipal governmental body, responsible for law enforcement activities within the City of Wichita. The WPD is the main law enforcement agency responsible for policing activities within the City of Wichita. It employs roughly 900 people in both civilian and sworn officer roles.

44.    Defendant Chief Gordon Ramsay, in his official capacity, is the top law enforcement officer within the WPD. He is responsible for the policies and procedures of the WPD, their use and maintenance, and the general oversight of the WPD.

45.    Defendant Lieutenant Chad Beard, in his official capacity, is the Supervisor of the Gang Unit within the WPD. He is responsible for the use and maintenance, policies and procedures, and oversight of the Gang List. He reports directly to Deputy Chief Jose Salcido, Investigations Division Commander, who reports to Chief Gordon Ramsay.

## FACTUAL ALLEGATIONS

### *Unconstitutionality of K.S.A. 21-6313*

46.     K.S.A. 21-6313 defines "criminal street gang" and lays out the criteria that law enforcement agencies may use to designate someone a "criminal street gang member." Under 21-6313(b):

"criminal street gang member" is a person who:

(1) Admits to criminal street gang membership; or

(2) Meets three or more of the following criteria:

    (A) Is identified as a criminal street gang member by a parent or guardian;

    (B) Is identified as a criminal street gang member by a state, county or city law enforcement officer or documented reliable informant;

    (C) Is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information;

    (D) Frequents a particular criminal street gang's area;

    (E) Adopts such gang's style of dress, color, use of hand signs or tattoos;

    (F) Associates with known criminal street gang members;

    (G) Has been arrested more than once in the company of identified criminal street gang members for offenses which are consistent with usual criminal street gang activity;

    (H) Is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation;

    (I) Has been stopped in the company of known criminal street gang member two or more times; or

14

(J) Has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual."

47.     WPD Policy 527 was drafted to be consistent with K.S.A. 21-6313. However, the WPD had a functioning Gang List for decades before K.S.A. 21-6313 was enacted in 2006. Upon information and belief, the criteria in K.S.A. 21-6313 derived largely from the criteria the WPD was already using, with the addition of K.S.A. 21-6313(b)(2)(J). After K.S.A. 21-6313 was enacted, however, the WPD went back and altered entries in its older records to conform with the statutory criteria listed in K.S.A. 21-6313. Thus, for those entries in the gang records prior to 2006, the entries may have been altered from what was there originally.

48.     K.S.A. 21-6313 and WPD Policy 527 suffer from numerous constitutional defects. For example, they provide no limitation on what type of clothing or paraphernalia may satisfy the color criteria at K.S.A. 21-6313(b)(2)(E), permitting the WPD to identify people as gang members, for example, if they wear certain professional sports team jerseys, school uniforms, or common colors that they simply like. Further, there is no limit on or enumeration of which or how many colors may be considered gang-affiliated; as a result, people are unable to conform their style of dress to K.S.A. 21-6313 and Policy 527 to avoid being classified as gang members.

49.     As another example, K.S.A. 21-6313 also allows the WPD to place someone on the Gang List if that person is identified as a gang member by another law enforcement officer. Yet there is no limitation or process required for such an identification, and no requirement that such an identification be verified or otherwise corroborated in any way. Nor is there any requirement that the officer document the reasons

for his or her belief that the individual is a gang member. Furthermore, there is no requirement that a record of the name of the identifying officer be maintained, making it virtually impossible to confirm or dispute the validity of any such identification.

50.     There is no definition of "gang area" in either K.S.A. 21-6313 or WPD Policy 527 and no way for an individual to know what that means in order to avoid such areas.

51.     There is no way for an individual who is associating with another individual to know if that person is already on the Gang List; there is therefore no way for a person to know whether or not they are meeting the criteria of K.S.A. 21-6313(b)(2)(F).

52.     Under K.S.A. 21-6313(a), the WPD may place someone on the Gang List if the person self-identifies as a gang member. However, there is no requirement in policy or practice that a person's "self-identification" as a gang member be verified. It is therefore possible for an officer to falsely claim that an individual admitted to being a gang member and place them on the list as a result.

53.     There is no way to know who is on the Gang List, no requirement for notification that a person has been listed, no way to challenge the designation, and no way to be removed from the Gang List.

54.     These almost infinitely broad criteria allow—even inevitably cause— rampant discrimination and other unconstitutional practices in law enforcement application.

55.     This is borne out by the racial distribution of the Wichita Gang List itself. Based on information provided publicly by the WPD, there are currently 1,833 Active Gang Members, 298 Associate Gang Members, and 239 Deceased Gang Members listed

in the Gang List. The racial disparities of membership on the list are stunning: 60% Black, 25% Latinx, 9% other racial minorities such as Asian and Indigenous Peoples, and only 6% White.

56.     The statutory criteria included in K.S.A. 21-6313 are so broad and vague that they are incapable of putting people on notice that their conduct or style of dress may result in them being labeled a gang member. People are therefore unable to conform their conduct to avoid the consequences of meeting the statutory criteria and being placed on the Gang List.

57.     The consequences of being named in the Gang List are severe. They range from being denied employment, housing, and licenses; to being frequently surveilled and harassed; to having a high bail amount assessed upon arrest and exceedingly harsh probation and parole conditions; to having irrelevant and prejudicial evidence admitted at trial; to experiencing harsher and longer incarceration conditions.

***Unconstitutionality of WPD Policy 527***

58.     The WPD's maintenance and use of a Gang List is governed by Kansas state law and WPD policy.

59.     WPD Policy No. 527 identifies procedures for how the WPD administers the Gang List. Members of the WPD's Gang/Felony Assault Section or Violent Crimes Community Response Team are responsible for monitoring and documenting gang members in accordance with WPD Policy No. 527.

60.     Virtually all of the criteria for identification as a criminal street gang are non-criminal, lawful activities. Many of these criteria—including those regarding association, expression, or movement within the community—are protected First Amendment activities.

61.     The criteria that WPD officers use to determine gang affiliation are almost entirely unrelated to actual criminal conduct or active participation in gang activities.

62.     According to the WPD Gang Unit Supervisor, certain colors and symbols are associated with gangs. The WPD will consider individuals wearing these colors or symbols—including clothing associated with certain professional sports teams—to be wearing a "gang style of dress or color" sufficient to meet the criteria listed in K.S.A. 21-6313.

63.     Upon information and belief, the WPD has a practice of falsely indicating that individuals self-admitted to gang membership when entering them into the Gang List without corroboration of the admission, particularly when the officer cannot substantiate the individual's gang membership. This practice was documented in a video news story by Wichita's KSN TV in May 2012. In the video, available on YouTube,[4] two officers of the WPD's Gang Unit are shown conducting a traffic stop because a passenger is not wearing a seatbelt. After speaking with the men inside the car, an officer claims that the passenger self-identified as a gang member and appears to add the man to the Gang List on the spot. In response to KORA requests, the WPD has refused to disclose statistics or information regarding the bases for including individuals on its Gang List, obscuring the full extent of this practice.

64.     The WPD frequently add people to the Gang List merely because such people are related to, work with, or attend school with someone already on the Gang List. Even a single interaction with someone already on the Gang List may lead to an individual being designated a gang member or associate. Again, the WPD's refusal to disclose its

---

[4] *Wichita Police Work to Slow Gang Violence - KSN TV*, YouTube (May 10, 2012), https://www.youtube.com/watch?v=vUhRPu2Chao. Documented traffic stop begins at 2:48.

bases for including individuals on the Gang List—even as aggregate data—obscures the full extent of this practice.

65.     Individuals can be included on the Gang List merely because they "associate" with other people listed on the Gang List. This can include classmates, co-workers, or even family members.

66.     According to the WPD's Standard Operating Procedure for Entries into the Gang List, a person can be added to the Gang List as a "criminal street gang associate" if he or she only meets two criteria listed in K.S.A. 21-6313, rather than the three criteria required to be listed as a "member."

67.     In practice, WPD officers often include individuals in the Gang List without any justification or evidence proving that they are in fact members of street gangs.

*General Parameters of the WPD Gang List*

68.     Pursuant to WPD Policy No. 527, if a WPD officer identifies a person for inclusion in the Gang List based on the criteria in K.S.A. 21-6313, the person will be listed in the Gang List as "active" for a minimum of three years. If a person is listed as active, and then later becomes incarcerated, that person will be returned to active status upon release from custody.

69.     If a person is listed in the Gang List as active, but has "no documented activity" for three years, the person's status will be changed to "inactive." However, pursuant to WPD policy, the three-year period will start over if the person meets the criteria listed in K.S.A. 21-6313, is involved in "criminal street gang activity," or if there is "documentation of criminal street gang member or associate criteria."

70.     This means two things. First, a person can be listed in the Gang List for relatively innocuous behavior, such as wearing a particular color, appearing in a

photograph with someone else listed on the Gang List, and/or living in a community with known gang members. And second, once a person is listed in the Gang List, in order to be placed as "inactive," that person would have to refrain from meeting a single Gang List criteria for a three-year period. A person included on the Gang List for any reason would have to avoid wearing any gang color, being seen or photographed with anyone on the Gang List, and potentially move from his or her community to avoid being accused of "frequenting a particular criminal street gang's area."

71.     For this reason, the WPD rarely moves people from "active" to "inactive" on the Gang List.

72.     Instead, people can remain on the Gang List for decades based on what they wear, whom they live near, whom they are related to, and myriad other examples of innocent behavior.

73.     Elbert Costello, for example, has been on the Gang List for several decades. Although he is in his mid-40s and has children of his own, he is still friends with people from high school on the Gang List, and is therefore still labeled as a gang member. He is still subject to surveillance and harassment and often has to endure needless and invasive traffic stops. And his designation as a gang member is routinely extended for an additional three years because of what he is wearing or whom he is seen with. In March 2021, Mr. Costello's placement on the Gang List as an active gang member was extended until March 2024 because he was observed by WPD officers wearing a red "Phillies" hat in a photo on Facebook.

74.     Other individuals on the Gang List have been pulled over by Wichita Police officers while driving with their families and have had those officers refer to them by old

nicknames listed in the Gang List. These nicknames, like the individuals themselves, need not have ever been gang-related in order for the individual to be included on the Gang List. These individuals are now grown adults with children and grandchildren, having long left behind adolescent nicknames and personas. Those individuals report feeling humiliated and degraded by the WPD's insistence that they are gang members and by the WPD's reference to them as gang members in front of their grandchildren.

### *Lack of Notice and Ability to Contest Gang Membership*

75.    The WPD provides no notice to the vast majority of people when they are first listed in the Gang List, provides no ongoing notice to anyone who is added or removed from the Gang List, and provides no notice to anyone who is moved from "inactive" back to "active."

76.    Many individuals find out they are on the list for the first time when they apply for and are denied employment, housing, or licenses based on being on the Gang List, or when they are arrested or charged with a crime.

77.    WPD Policy No. 527 does not include any provisions related to these vital components of due process, with the sole exception being that the WPD will "attempt to contact" the parent or guardian of any juvenile listed in the Gang List.

78.    Upon information and belief, however, the WPD does not in practice contact the parents or guardians of juveniles when they are listed in the Gang List. Rather, most youth (and their parents) remain unaware they are on the Gang List.

79.    Even if the WPD does notify a parent of a juvenile they are on the Gang List, the parent is not given any opportunity to contest their child's inclusion. The letter the WPD sends informing the parents of the juvenile's inclusion merely offers to provide the family with "intervention options and resources."

21

80.     For many juveniles, the first time they learn they are on the Gang List is when they are arrested and their inclusion on the Gang List is listed in the Probable Cause Affidavit for their arrest.

81.     The WPD also provides no process for challenging one's inclusion on the Gang List or requesting to be removed from the Gang List. WPD Policy No. 527 offers no process or procedure regarding removal or challenging the listing, and the WPD posts no other relevant policies or procedures on its website nor makes such policies or procedures publicly available or known.

82.     Even if there were a publicly available policy or procedure for contesting inclusion on the Gang List or requesting removal, members of the public would not be able to avail themselves of it because the WPD does not notify people when they are added to the Gang List.

83.     The WPD shares its Gang List with other local, state, and national law enforcement agencies, including the Kansas Bureau of Investigation, pursuant to a Confidentiality and Usage agreement. These other entities may have notice of an individual's placement on the Gang List, even though the individual does not know he or she is on the Gang List.

84.     Upon information and belief, entities with whom this information is shared are often contacted for background checks by potential employers, landlords, or licensing agents. Disclosure of the information that an individual is considered a member of a criminal street gang has a huge negative effect on that individual's employment, housing, and licensing prospects.

*Targeting Innocent, Constitutionally-Protected Activity*

85.     The WPD has a policy or practice of encouraging its officers to surveil particular communities and groups in order to add people to the Gang List.

86.     In particular, members of the WPD's Gang Unit are instructed to surveil community members' social media accounts to find photographs of people with known gang members, patrol and stop individuals in particular communities to question them as to whether they might meet the criteria for inclusion in the Gang List, and use traffic stops to identify drivers or occupants who are currently listed or qualify to be added to the Gang List.

87.      Community members and Plaintiffs have experienced repeated examples of being subjected to this surveillance and targeting by WPD officers who are interested in adding more people to the Gang List.

88.     When WPD officers pull over a vehicle for a traffic infraction, they will radio in a "Signal 33" to check whether the driver or passengers are listed in the Gang List. If they are listed, WPD officers may interrogate the driver and passengers, threaten them, or attempt to get information out of them regarding gang activity. If some of the passengers are not listed, but others are, the WPD may use that as evidence that the non-listed passengers should be added to the Gang List.

89.     WPD policies, including their Instructions for New Gang Intel Form, directs WPD officers to document all interactions for documented gang members so that the Gang Unit will have a running list of the "vehicles they drive and who they associate with." This form also instructs officers to "document new addresses, vehicles, girlfriends, phone numbers, and hang out locations," which then allows the WPD to surveil and closely track those individuals and their friends and family.

90.    The WPD also regularly monitors the social media accounts of community members to identify evidence that could be used to label individuals as gang members. WPD Standard Operating Procedures provides instructions for how officers can save images and videos from Facebook and YouTube that meet one of the criteria listed in K.S.A. 21-6313.

91.    Upon information and belief, assignment to the WPD's Gang Unit is considered a desirable job and a promotion from the street patrol position. When considering officers to promote to positions within the Gang Unit, the WPD considers how well the officer is able to identify individuals to be added to the Gang List, including the officer's ability to covertly identify community members through social media and track their postings and shared photographs.

92.    Upon information and belief, some WPD officers maintain fake social media profiles in order to befriend members of the community to more easily have access to photos and other information that would allow the officers to add more people to the Gang List and qualify for promotion to the Gang Unit.

93.    Upon information and belief, WPD officers often pull people over, tell them that they "just want to talk," and then ask them a series of leading questions in an attempt to collect enough information that would justify adding those individuals to the Gang List.

94.    These practices profoundly affect how Plaintiffs interact with their friends and families and move about the community. Community members report that they cannot ride in the car with certain friends or go to certain public places in their neighborhoods because they are afraid it will cause them to be labeled as a gang member.

***Increased Punishment as a Result of Inclusion on Gang List***

95.     Inclusion in the Gang List can have profound impacts on a person's daily life, especially if they become involved in the criminal justice system.

96.     In particular, if a person is listed in the Gang List and charged with a person felony (whether or not the charged felony is connected with any of the criteria for Gang List inclusion), state law mandates that bail be set at a minimum of $50,000. K.S.A. 21-6316. The only exception is if the judge makes a finding on the record that the defendant is not likely to reoffend and will be subject to intensive pretrial supervision—which often comes at great personal and financial cost.

97.     Conviction of certain offenses also carry higher sentences if the person convicted is a "known criminal street gang member." *See, e.g.*, K.S.A. §§ 21-6804, 21-6301, 21-6315, 21-6811.

98.     Upon information and belief, prosecutors in the Sedgwick County District Attorney's office will also use a person's inclusion on the Gang List as a reason to offer less attractive plea offers.

99.     When a person is on the Gang List and sentenced to probation or released on parole, they must abide by specific special conditions, including the following:[5]

    a.  Not associating with anyone affiliated in a gang;

    b.  Not wearing any clothing with the primary color being red;

    c.  Abiding by a curfew from 9:00 p.m. to 5:00 a.m.;

    d.  Not riding in a car with more than one person unless those people are siblings, parents, or children;

---

[5] A true and correct copy of the Sedgwick County Department of Corrections Gang Conditions Attachment is provided as Exhibit B to this complaint.

e.   Not engaging in "throwing or showing gang hand signs";

f.   Not associating with a family member or extended family member who is a documented gang member (exception being immediate family only—brother, sister, or parents); and

g.   Not using social media to post "statements having any relationship to . . . any gang whatsoever" or posting any photos or images "that can in any way be associated with . . . any gang."

100.   Because many of these conditions are inherently vague, proscribe innocent, constitutionally protected conduct, and significantly curtail people's ability to live and move freely in their communities, the gang conditions imposed on those listed on the WPD's Gang List create a significant risk of probation or parole violations.

101.   Being on the WPD's Gang List therefore results in significantly more punitive restrictions on a person's liberty while on probation or parole than individuals not on the Gang List, and may result in an increased risk that the WPD or the Sedgwick County Department of Corrections will charge that person with a probation violation and revoke their community supervision.

***Disparate Impact on Minority Communities***

102.   The racial and ethnic makeup of those listed in the Gang List is overwhelmingly Black and Latinx.

103.   According to the most recent census data, only 10.9% of the greater Wichita community is Black, and only 17.2% is Hispanic.

104.   However, roughly 60% of those listed in the Gang List are Black, and over 25% are Latinx.

105.    It is clear that inclusion in the WPD Gang List disproportionately impacts Black and Latinx communities, suggesting that the WPD systematically targets Black and Brown neighborhoods and community members for gang enforcement activities and surveillance.

***Progeny and its Members are Negatively Impacted by the Gang List***

106.    Progeny is an organization that seeks to assist individuals who are involved in the criminal-legal system and work towards reducing, and eventually eliminating, the myriad harms caused by the juvenile justice system. For example, Progeny holds town halls, facilitates conversations with impacted youth, provides support and services to youth who are involved in the criminal legal system or transitioning back to the community, and engages with elected officials regarding their policies and reform efforts that may impact system-involved youth. The Gang List is a direct impediment to carrying out that mission, as it stigmatizes Progeny's members and Youth Leaders and their families, and prevents Progeny from assisting individuals listed in the Gang List to move away from any criminal-legal system involvement.

107.    Many of Progeny's members and Youth Leaders have been directly impacted by the Gang List; they are either listed themselves, or have family members and friends who are listed in the Gang List.

108.    Other Progeny members have experienced repeated harassment by WPD officers, including being pulled over while on their way to school or work and questioned about gang activity.

109.    Plaintiff Mr. Elbert Costello is a member of Progeny and works with Progeny staff to help advance Progeny's mission of juvenile justice reform and reinvestment. As discussed elsewhere in this Complaint, Mr. Costello is listed as an active

gang member on the WPD Gang List. Other members of Progeny are or previously were listed as gang members on the WPD's Gang List and have suffered harassment and surveillance by the WPD as a result. And, given the broad and vague criteria of K.S.A. 21-6313, many other members of Progeny likely meet the criteria for being labeled as gang members or associates, yet do not know whether or not they are included on the Gang List.

110.    Because associating with individuals listed on the Gang List is a criteria for designation as a gang member or associate, K.S.A. 21-6313 and Policy 527 strongly discourage Progeny from holding meetings of any kind. Most individuals have no way of knowing whether they are included on the Gang List—or whether others affiliated with Progeny are. Meeting in large groups or even one-on-one thus puts Progeny members at risk of causing each other to be designated as gang members or associates by the WPD.

111.    Even worse, for individuals whose inclusion on the Gang List is known (due to an arrest affidavit, background check, or otherwise) or who have truly been connected with street gang activity, K.S.A. 21-6313 and Policy 527 in effect forbid anyone from providing services or support to such persons. Interaction of any kind with such individuals carries the risk of life-long gang member or associate designation, and the many criminal and civil consequences of that designation. In this way, both Progeny members and the individuals and communities they seek to serve are discouraged from, punished for, and deprived of fundamental rights of association and assembly.

112.    The WPD's policies prevent Progeny from successfully carrying out its work helping juveniles involved in the criminal justice system. The Gang List consistently wraps up Progeny members in its throes, subjecting them to ongoing punishment and

distracting Progeny from its ability to help those youth positively readjust to life in the community.

113.    Progeny has had to divert resources away from other projects and direct individual assistance to aid members who are facing repercussions associated with their inclusion in the Gang List.

114.    Eliminating, the Gang List would allow Progeny to fulfill its mission of assisting youth in the justice system and helping the greater Wichita community reinvest in community-based alternatives.

***Christopher Cooper is Negatively Impacted by the Gang List***

115.    In 2014, Mr. Cooper was a college student at Highland Community College. He had received a scholarship to K-State, and was preparing to transfer there.

116.    While on break from school, he attended a party. At the party, there was an altercation and shooting ensued. As Mr. Cooper was leaving the party in his car, one of the individuals involved in the shooting jumped into Mr. Cooper's car, and Mr. Cooper drove away.

117.    In the next few days, Mr. Cooper was arrested and charged with First Degree Murder. At his arrest, he learned for the first time that he had been included on the Gang List. Mr. Cooper denies that he was ever a gang member or associate at any time.

118.    Mr. Cooper had no criminal history prior to this event.

119.    Mr. Cooper's bail was set at $50,000 because he was on the WPD's Gang List. Mr. Cooper remained in jail because he and his family could not afford the bail or bond amount. Eventually, the prosecution offered Mr. Cooper a plea deal: he could plead to obstruction of justice and accept probation. Ultimately, believing he had no choice, Mr.

Cooper accepted the plea. He was incarcerated in jail for a year prior to accepting the plea and being sentenced.

120.    At sentencing, Mr. Cooper was placed on strict probation with gang conditions. He had a 6 p.m. curfew for over a year. He had to live away from his family because some of them were on the Gang List. Despite the hard conditions, Mr. Cooper completed his probation.

121.    Mr. Cooper lost his scholarship to K-State and has never been able to go back to college.

122.    Mr. Cooper has had no criminal charges or offenses since that incident in 2014. He is employed in the aircraft manufacturing business.

123.    Even though Mr. Cooper has had no further criminal events, he has been surveilled and harassed by the WPD. He has been stopped repeatedly for traffic infractions, almost always for failure to signal within 100 feet of an intersection. When officers approach his car, they already know his name and treat him like a criminal. This harassment was consistent until Mr. Cooper began driving a car that is registered in the name of a family member. Since that time, he has not been stopped by the WPD.

124.    Recently, Mr. Cooper applied for a job with another company that would have been a promotion in position and salary. He believed that he was going to be offered the job, but after a background check, he was turned down. Mr. Cooper believes that he was turned down because the background check identified him as an active gang member.

125.    Mr. Cooper has never been and is not currently involved in or associated with a criminal street gang in Wichita or anywhere else.

126.     Mr. Cooper's presence on the Gang List has been extremely damaging to him. Upon information and belief, he was treated more harshly than he would have been as a college student with no prior criminal history who was not on the Gang List. Because of this, he lost his scholarship and his chance to complete college. He is subject to continuous harassment to the point that he had to discontinue driving his own car. He has lost employment opportunities and the chance to advance in his career. The damages he suffers are ongoing.

### Elbert Costello is Negatively Impacted by the Gang List

127.     Mr. Costello first learned that he was on the Gang List when he was arrested in connection with a shooting in Salina, Kansas, in 1997, and the charging documents listed him as a known gang member. Prior to that, Mr. Costello was never told that he was on the Gang List.

128.     Mr. Costello was convicted of voluntary manslaughter and sentenced to a period of imprisonment. He was placed in a higher level custodial setting because of his inclusion on the Gang List.

129.     Following Mr. Costello's incarceration, he served three years on parole where he was subjected to punitive gang conditions and increased surveillance because of his inclusion on the Gang List.

130.     Mr. Costello was never given the opportunity to contest his inclusion on the Gang List, nor notified of the reasons why he was placed on the list.

131.     Mr. Costello is not, nor has he ever been, a member of a criminal street gang in Wichita or anywhere else. Mr. Costello admits that he had relatives who were involved with gangs, but he himself was never associated with a gang.

132.     Both during and following his parole, Mr. Costello was subjected to increased surveillance and harassment by WPD officers. Mr. Costello was—and continues to be—routinely stopped by the WPD for minor traffic violations. For example, WPD officers routinely pull Mr. Costello over for infractions such as "not signaling within 100 feet," and then subject Mr. Costello to invasive questioning.

133.     While Mr. Costello was on parole, the police would search his car anytime he was stopped because he was on the Gang List and subject to special conditions of parole for gang members.

134.     Mr. Costello experiences fear and anxiety on a daily basis because he knows that the WPD is watching him and will pull him over for any minor rule violation so that they can intimidate and harass him.

135.     Mr. Costello cannot get together with many of his lifelong friends because he knows that they are also on the Gang List. Being together would give the WPD an excuse to further target or harass Mr. Costello and his friends and change any of their statuses on the Gang List from inactive to active. Mr. Costello also tries to avoid taking any photographs with his friends because he is afraid that the WPD will find them on social media and use them to continue to claim that he is in a gang.

136.     Mr. Costello also avoids visiting certain businesses or establishments in his community—including gas stations—that he thinks the WPD has identified as "gang hangouts." He therefore drives out of his way to get gas to avoid being further targeted by the police.

137.     In Mr. Costello's WPD gang record, which counsel was allowed to view but was not provided copy of, there are approximately 30 entries pertaining to Mr.

Costello's actions over the last 25 years. The majority of those entries concern photos of him or notations of him socially interacting with others on the Gang List. Each instance has led to Mr. Costello being "renewed" on the Gang List for an additional three years as an "active gang member."

138.     Most recently, on January 16, 2021, there is a notation that an officer observed Mr. Costello in a photo on social media wearing a red "Philadelphia Phillies" Major League Baseball cap. Because the color red is associated with a gang, the WPD deemed this a gang related activity and extended Mr. Costello's period of "active" gang membership until January 2, 2024.

139.     On March 10, 2021, Mr. Costello was identified as a "known gang member" in a story in *The Wichita Eagle* about a shooting that did not involve him at all.[6] Apparently, a parole officer stated to the reporter that the alleged perpetrator of the shooting had been seen in January 2021 with Mr. Costello, who was a "known gang member." The occasion of which the parole officer was speaking was the funeral of a friend of Mr. Costello's. Mr. Costello exchanged pleasantries with the other individual, and that was all, but it was considered an incidence of gang association. Mr. Costello was embarrassed and humiliated that he had been publicly identified as a known gang member in a publication available throughout his home town of Wichita. *The Wichita Eagle* has since revised its article to remove Mr. Costello's name, after receiving complaints from Mr. Costello's friends and family.

140.     Mr. Costello's inclusion on the Gang List has had a profound impact on his life. It has prevented him from maintaining meaningful relationships, prevented him from

---

[6] A true and correct copy of the news article, as it appeared in *The Wichita Eagle* on March 10, 2021, is attached as Exhibit C.

frequenting businesses, and has subjected him to unrelenting and unconstitutional surveillance and enforcement activity by the WPD, which causes him significant anxiety and fear. Because Mr. Costello sometimes socializes with friends his age, who were also put on the Gang List in their youth, it appears that the WPD intends to list him as an active gang member throughout his life.

### Martel Costello is Negatively Impacted by the Gang List

141.   Plaintiff Martel Costello was charged with marijuana offenses and possession of firearms offenses in September 2016. He had no prior adult criminal history and only one juvenile offense on his record. He learned that he was on the WPD's Gang List at the time of his arrest.

142.   Mr. Martel Costello was released pretrial following his arrest. While on pretrial release, he was repeatedly stopped by the WPD for traffic violations and then arrested for unknown outstanding warrants. At no point during any of these stops did the WPD issue Mr. Martel Costello a ticket for a traffic infraction. Instead, the WPD used these traffic stops as a reason to search Martel's car and arrest him.

143.   When arrested, Mr. Martel Costello's bond amounts were set very high due to his status on the WPD's Gang List. His mother had to place her home up as collateral in order to bond him out of jail.

144.   In October 2017, Mr. Martel Costello reached a plea deal with the prosecutor for his underlying charges. At sentencing, the judge gave him an initial sentence of 18 months' probation, with 79 months underlying should he violate the terms of his probation. The judge also assigned him special conditions of probation due to Mr. Martel Costello's status on the WPD's Gang List. These conditions included a restrictive curfew and prohibition on associating with anyone else listed on the Gang List.

145.    From October 2017 to April 2018, Mr. Martel Costello lived in the community and abided by these conditions, with the exception of two minor infractions— using alcohol on one occasion, and being six minutes late for curfew on another occasion.

146.    In April 2018, Mr. Martel Costello was attending a family gathering following the death of his niece. A drive-by shooting occurred while he was in the home; the shooter fired at the house's garage. When the WPD came to investigate the drive-by shooting, they found that Mr. Martel Costello was in the home with another person listed on the Gang List— Mr. Martel Costello's cousin—and that his aunt had her handgun in her purse. As a result of this, Mr. Martel Costello was charged with firearm possession (for his aunt's gun, which he did not bring and was not on his person) and with a probation violation for being with a known gang member. He was incarcerated for this on April 25, 2018.

147.    Between June 2018 and June 2019, Mr. Martel Costello served time in various settings. Ten days after being released from custody in June 2019, the WPD pulled him over again, claiming that the car he had recently bought had bad tags. The WPD impounded the car and searched it, thereby leading to a new charge of possession of paraphernalia and a traffic ticket for the bad tag. The WPD arrested Mr. Martel Costello and incarcerated him again, pending adjudication of these new charges.

148.    In late August 2019, Mr. Martel Costello's brother passed away. On August 21, 2019, his family posted Mr. Martel Costello's bond so that he could be with the family for his brother's funeral. The funeral was held on August 23, 2019, and Mr. Martel Costello attended in person.

149.    The following Monday, Mr. Martel Costello's probation officer told him that he needed to come in to take a urinalysis screen. When Mr. Martel Costello showed up for the screen, he was placed under arrest for violating his conditions of release—namely, being at his own brother's funeral, because other people on the WPD's Gang List were also present.

150.    Mr. Martel Costello was eventually sentenced to prison for the probation violation charges, plus the possession of paraphernalia charge from June 2019. His earliest release date is 2023, but if he loses his good time credit for any reason, he will remain incarcerated through 2025.

151.    On information and belief, the WPD placed Mr. Martel Costello on its Gang List in 2016 because of whom Mr. Martel Costello was related to, rather than any particular conduct by Mr. Martel Costello. Since then, the WPD has taken every opportunity to harass, surveil, and punish Mr. Martel Costello simply because he is on the Gang List.

152.    Mr. Martel Costello has had to abide by strict conditions of probation and pretrial release every time he is bonded out of jail because of the WPD's designation that he is a gang member. These conditions are so punitive that on two occasions Mr. Martel Costello has been sent back to an incarceration setting simply for attending the funeral of a loved one.

153.    Mr. Martel Costello has never been involved in any gang activity and was never told why he was placed on the Gang List in the first place.

154.    Whenever Mr. Martel Costello is living in Wichita, such as when he has been released pretrial or on probation, he is subjected to consistent harassment by the WPD, including multiple traffic stops and searches. Despite these unrelenting traffic stops, Mr.

Martel Costello has yet to receive a ticket for an alleged traffic offense, except the "bad tag" ticket detailed above.

155.    Mr. Martel Costello fears that because of his arbitrary placement on the Gang List, he will never be able to interact with his friends and family or conform his conduct in a way that will keep the WPD from labeling him as a gang member.

156.    Because of Defendants' actions, Mr. Martel Costello has been subjected to significantly harsher punishment than he would have experienced had he not been on the Gang List.

***Jeremy Levy, Jr. is Negatively Impacted by the Gang List***

157.    Plaintiff Jeremy Levy, Jr. was charged with first-degree felony murder in 2017 when he was 18 years old. The charges involved an incident where Mr. Levy and another individual were involved in an altercation that involved shots being fired in a parking lot, and a bystander in a car in the parking lot was killed.

158.    The altercation involved a dispute between Mr. Levy and another individual over the affection of a young woman.

159.    There was no scientific evidence that the shot that killed the bystander came from Mr. Levy.

160.    Prior to this incident, Mr. Levy had never been charged with a crime. As a juvenile, Mr. Levy had some interaction with the juvenile justice system, but only in a few incidents that would have constituted misdemeanors for an adult.

161.    Mr. Levy believes the WPD added him to its Gang List when he was 13 years old. Mr. Levy was riding in a car with his cousins when the car was pulled over by the WPD. Mr. Levy believes he was added to the Gang List then because one of his cousins was already on the Gang List.

162.     Mr. Levy is not, nor has he ever been, a member or associate of a criminal street gang in Wichita or elsewhere.

163.     During his trial for felony murder, the prosecutor moved the court to allow the entry of Mr. Levy's gang status into evidence of a motive for an "otherwise inexplicable event," on the theory that the shooting was part of a gang feud.

164.     The prosecutor's evidence of the alleged theory was that Mr. Levy was listed on the Gang List as a Folk Gang Disciple and the other individual was listed on the Gang List as being a member of a different gang.

165.     Over Mr. Levy's objection both pre-trial and during the trial, the prosecution introduced evidence of at least 13 different "gang related incidents." These alleged incidents included several shootings and other serious criminal offenses. It was not alleged that Mr. Levy was present or involved during any of these events except one event in which Mr. Levy was himself injured, which was not related to any gang activity.

166.     The introduction of the gang-related incidents was extremely prejudicial to Mr. Levy, and it guaranteed that he could not receive a fair trial for the one incident with which he was charged. Even though he was not alleged to have personally participated in the "gang-related events," these events were put before the jury as background to demonstrate that the incident with which he was charged was not an isolated event. The jury convicted him of first-degree felony murder, and he received a harsh sentence, in which he will not be eligible for parole at least until 2042.

167.     Mr. Levy is one of many individuals for whom their presence on the Gang List has allowed prosecutors to introduce irrelevant and prejudicial information at trial.

168.     Presence on the Gang List has additional consequences for such individuals, including a mandatory bail of at least $50,000, longer sentences in higher security prisons, far harsher probation and parole conditions, and, upon information and belief, negative effects on their ability to obtain favorable pleas or diversions.

169.     Upon information and belief, individuals on the Gang List with stricter conditions of probation are more likely to be found in violation of their probation and incarcerated as a result, even if their original offense of conviction did not justify a prison sentence.

## CLASS ACTION ALLEGATIONS

170.     Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2), the individually named Plaintiffs bring this action on behalf of themselves and all other persons similarly situated as members of the proposed class. Plaintiffs seek declaratory and injunctive relief against the Defendants on behalf of the class.

171.     This action satisfies the numerosity, commonality, typicality, and adequacy, requirements of Federal Rules of Civil Procedure 23(a).

172.     Plaintiffs bring this class action on behalf of the following classes, as set forth below:

**Listed Gang Member or Gang Associate Class**
All persons included in the Wichita Police Department's Gang List as an Active or Inactive Gang Member or Gang Associate.

**Equal Protection Class**
All persons included in the Wichita Police Department's Gang List as an Active or Inactive Gang Member or Gang Associate who are Black, Latinx, or a member of another racial minority group, such as Asian or Indigenous Peoples.

173.     Plaintiffs reserve the right to amend the class definition if discovery or further investigation reveals that the class should be expanded, divided into subclasses, or modified in any way.

**Numerosity**

174.     Although the exact number of class members is uncertain and can be determined only through appropriate discovery, the number is great enough such that joinder is impracticable. Based on information provided publicly by the WPD, there are currently 1,833 Active Gang Members and 298 Associate Gang Members listed in the Gang List. The class is sufficiently numerous to warrant class treatment, and the disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court.

175.     Plaintiffs do not currently know the identities of all class members. Plaintiffs are informed and believe the identities of class members may be obtained from information collected and maintained by the WPD.

**Typicality**

176.     Plaintiffs' claims are typical of the claims of the class in that Plaintiffs, like all class members, have been placed on the WPD's Gang List in violation of their constitutional rights.

177.     Thus, Plaintiffs have the same interests and have suffered the same type of harm as the class members. Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members.

178.     Moreover, the factual bases of Defendants' misconduct are common to all class members and represent a common thread of misconduct resulting in similar injury to all members of the class.

*Adequate Representation*

179.     Plaintiffs will fairly and adequately represent and protect the interests of the classes. Plaintiffs have retained counsel with substantial experience litigating civil rights issues and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and have adequate resources to do so.

180.     Neither Plaintiffs nor their counsel has interests adverse to the classes.

*Commonality*

181.     There are numerous questions of law and fact common to Plaintiffs and the class members. The legal harms suffered by Plaintiffs and class members are identical. The answers to these common questions will thus advance resolution of the litigation as to all class members. These common legal and factual issues include:

  a.   Whether K.S.A. 21-6313 is unconstitutionally broad and vague.

  b.   Whether K.S.A. 21-6313 and the actions of Defendants violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

  c.   Whether K.S.A. 21-6313 and the actions of Defendants violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

  d.   Whether K.S.A. 21-6313 and the actions of Defendants violate the Right of Association and Expression Clause of the First Amendment of the United States Constitution.

  e.   Whether Plaintiffs' constitutional rights were violated as a result of a longstanding or widespread custom or practice that was the moving force behind the constitutional violations.

*Rule 23(b)(2) Injunctive or Declaratory Relief*

182.    Plaintiffs and members of the class request certification of a class under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or declaratory relief is appropriate with respect to the class as a whole. Defendants' policies, practices, customs, and conduct have resulted in, and will continue to result in, irreparable injury to Plaintiffs and class members, including, but not limited to, violations of their constitutional and statutory rights. Plaintiffs have no plain, adequate, or complete remedy at law to address the wrong described herein.

183.    The injunctive relief requested by Plaintiffs and class members includes, but is not limited to, an injunction striking down the WPD's use of the Gang List and enjoining Defendants from operating a Gang List in the future.

184.    Plaintiffs and the class also seek a declaration (1) that K.S.A. 21-6313 is unconstitutionally vague and overbroad, (2) that Defendants' maintenance and use of a Gang List pursuant to Policy No. 527 violates the First and Fourteenth Amendments of the United States Constitution, and (3) adjudging Defendants' policies and actions to be unconstitutional.

185.    Further, Plaintiffs and the class seek a declaration that Defendants acted with negligence, gross negligence, and willful, wanton, and careless disregard for the constitutional rights of Plaintiffs and members of the class.

*Rule 23(c)(4) Certification of Particular Issues*

186.    In the alternative to certification under Rule 23(b)(2), Plaintiffs and the class seek to maintain a class action with respect to particular issues under Rule 23(c)(4).

187.     Specifically, the questions of whether K.S.A. 21-6313 is unconstitutionally broad and vague, violates the First Amendment, or violates the Fourteenth Amendment are suitable for issue certification under Rule 23(c)(4).

## CLAIMS FOR RELIEF

### Count I: Violation of Fourteenth Amendment Right to Due Process
### Vagueness
### *All Plaintiffs and Class Members*

188.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated herein.

189.     K.S.A. 21-6313, *et seq.,* violates Plaintiffs right to due process of law under the Fourteenth Amendment of the United States Constitution by failing to give Plaintiffs fair notice of the requirements they must meet under the statute.

190.     K.S.A. 21-6313, *et seq.,* is unconstitutionally broad and vague in that it allows individuals to be designated as criminal street gang members based on innocent, non-criminal activities, such as what they wear, where they live, and whom they are related to.

191.     K.S.A. 21-6313, *et seq.*, is unconstitutionally vague because the statute includes broad undefined language including, *inter alia,* terms such as "gang area," "style of dress," "hand signals or tattoos," "offenses consistent with criminal street gang activity," and "physical evidence such as photographs or other documentation" that are capable of multiple interpretations and provide virtually unfettered discretion for police to designate an individual as a gang member or associate.

192.     K.S.A. 21-6313, *et seq.*, is unconstitutionally vague because individuals do not know whether or not they are on the Gang List, or whether their clothing choices, neighborhood of residence, or other elements of everyday life would qualify them for inclusion on the Gang List.

People therefore cannot conform their conduct to avoid being identified as an associate or member of a gang and placed on the Gang List.

193.    The unconstitutional vagueness of K.S.A. 21-6313, *et seq.* causes significant injury and damage to all named Plaintiffs. Because Wichita residents are unable to conform their conduct to avoid inclusion on Wichita's Gang List, Progeny Kansas is unable to operate in a way that avoids placing its members at risk of List membership and resulting civil and criminal consequences. Mr. Elbert Costello is unable to make basic life decisions—such as where to buy gas or what clothing to wear—in a way that ensures he will not be re-identified by the WPD as an active gang member. Mr. Martel Costello and Mr. Levy will be unable to avoid violating probation and pretrial release conditions that are premised on their own Gang List membership because they do not know who else is on the Gang List. Like all Wichita residents, Mr. Cooper is unable to conform his conduct to the WPD's vague gang membership criteria and avoid the consequences of Gang List membership.

### Count II: Violation of Fourteenth Amendment Right to Due Process
### Failure to Provide Procedural Due Process to Progeny (42 U.S.C. § 1983)
### *Progeny*

194.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated herein. Progeny's members not named as individual Plaintiffs in this lawsuit would have standing to sue in their individual capacities if named as Plaintiffs. These members have suffered injuries in fact, including the deprivation of constitutional rights to expression and assembly and procedural and substantive due process, as well as unlawful police detentions, interrogations, searches, and surveillance, and reputational and financial harms including denial of employment, housing, and participation in social groups.

195.    By bringing this lawsuit, Progeny seeks to protect interests that are germane to Progeny's purpose. Progeny's mission and operations center on the assembly, expression, association and support of at-risk youth. By precipitating civil and criminal punishments on Wichita residents for, among other things, entering certain neighborhoods and associating with certain individuals, K.S.A. 21-6313 and Policy 527 directly obstruct Progeny's purpose and operations. Progeny seeks the invalidation of K.S.A. 21-6313 and Policy 527 so that it may carry out its philanthropic and constitutionally-protected mission.

196.    Neither the claims asserted nor the relief requested in this complaint requires the participation of Progeny's individual members in this lawsuit. Individual participation would be prohibitively cumbersome and would amplify the unnecessary reputational harm caused by the WPD's erroneous and improper designation of Progeny members as gang members. Moreover, the constitutional defects of K.S.A. 21-6313 and Policy 527 may be adjudicated, and the statute and Policy invalidated, without the participation of unnamed individual Progeny members.

197.    The foregoing actions by Defendants violate 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

198.    The Fourteenth Amendment of the United States Constitution guarantees that no citizen will be deprived of life, liberty, or property without due process of law.

199.    The Gang List and Defendants' policies and practices of (1) not providing notice to individuals that they are listed in the Gang List, (2) not allowing individuals to contest their addition to the Gang List, (3) not providing a clear process for individuals to petition for removal from the Gang List, and (4) renewing individuals as Active Gang Members on the Gang List without notice or any opportunity to challenge interfere with Progeny's mission of keeping Kansas youth out of the criminal justice system.

200.    The criteria for gang membership set forth in of K.S.A. 21-6313 and Policy 527 do not reliably identify members of criminal street gangs for inclusion on the Gang List. As such, these criteria are arbitrary and capricious, and serve no legitimate government interest. In fact, the use of arbitrary criteria leading to consistently inaccurate gang membership designations frustrates any conceivable legitimate government interest in combating gang violence or crime generally.

201.    The Gang List interferes with Progeny's mission of keeping Kansas youth out of the criminal justice system because the inability to petition for removal from the Gang List keeps Kansas youth tied indefinitely to the criminal justice system and interferes with the ability of these youth to get education and employment.

202.    Complications resulting from the WPD's Gang List policies absorb Progeny resources that would otherwise be devoted to its philanthropic mission, further damaging Progeny and its members.

203.    The Gang List further interferes with Progeny's mission because it restrains Progeny from hosting events or associating with Kansas youth. Because individuals are unable to determine whether they are listed on the Gang List, Progeny and the youth attending Progeny-hosted events risk being added to the Gang List based on the innocent, non-criminal activity of being in contact with others at such an event who are listed in the Gang List.

### Count III: Violation of Fourteenth Amendment Right to Due Process
### Failure to Provide Procedural Due Process (42 U.S.C. § 1983)
### *Plaintiffs Christopher Cooper, Elbert Costello, Martel Costello, Jeremy Levy, Jr., and All Class Members*

204.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated herein.

205.    The foregoing actions by Defendants violate 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

206. The Fourteenth Amendment of the United States Constitution guarantees that no citizen will be deprived of life, liberty, or property without due process of law.

207. The Gang List and Defendants' policies and practices of (1) not providing notice to individuals that they are listed in the Gang List, (2) not allowing individuals to contest their addition to the Gang List, (3) not providing a clear process for individuals to petition for removal from the Gang List, and (4) renewing individuals as Active Gang Members on the Gang List without notice or any opportunity to challenge violate the Fourteenth Amendment. Unilateral action by one WPD officer is sufficient to place Plaintiffs on the Gang List. Unilateral WPD action is also sufficient to renew Plaintiffs' and others' inclusion on the Gang List indefinitely, with no process to allow them to protect their constitutional rights by challenging their inclusion or petitioning to be removed.

208. Plaintiff Christopher Cooper received no notice of his designation as a gang member on the WPD's Gang List by WPD officers. He only learned that he had been designated as a gang member on the WPD's Gang List at some previous time after he was arrested following a shooting at party he attended. He has never been informed of the basis for his designation as a gang member, nor has he been provided an opportunity to challenge his designation or petition for removal from the Gang List. Likewise, he has never received notice or been provided an opportunity to challenge subsequent renewals of his gang member status. Plaintiff Mr. Cooper is not and has never been a member of a criminal street gang.

209. Plaintiff Elbert Costello likewise received no notice of his designation as a gang member on the WPD's Gang List by WPD officers. He only learned that he had been designated as a gang member on the WPD's Gang List at some previous time after he was arrested in connection with a shooting in Salina, Kansas, in 1997. Prior to his involvement in this lawsuit, he

had never been informed of the basis for his designation as a gang member, nor has he ever been provided an opportunity to challenge his designation or petition for removal from the Gang List. Likewise, he has never received notice or been provided an opportunity to challenge subsequent renewals of his gang member status. As a result, he has been designated as an "active" gang member on the WPD's Gang List for over 20 years—effectively a perpetual lifetime designation. Mr. Costello is not and has never been a member of a criminal street gang.

210.    Plaintiff Martel Costello likewise received no notice of his designation as a gang member on the WPD's Gang List by WPD officers. He only learned that he had been designated as a gang member on the WPD's Gang List at some previous time when he was arrested in connection with marijuana offenses and firearm possession in 2016. He has never been informed of the basis for his designation as a gang member, nor has he been provided an opportunity to challenge his designation or petition for removal from the Gang List. Likewise, he has never received notice or been provided an opportunity to challenge subsequent renewals of his gang member status. Mr. Martel Costello is not and has never been a member of a criminal street gang.

211.    Plaintiff Jeremy Levy, Jr. likewise received no notice of his designation as a gang member on the WPD's Gang List by WPD officers. He only learned that he had been designated as a gang member on the WPD's Gang List at some previous time when he was arrested in connection with a shooting in 2017. He has never been informed of the basis for his designation as a gang member, nor has he been provided an opportunity to challenge his designation or petition for removal from the Gang List. Mr. Levy is not and has never been a member of a criminal street gang. Moreover, the incident with which he was charged and is now incarcerated was not gang-related.

212.    The criteria for gang membership set forth in of K.S.A. 21-6313 and Policy 527 do not reliable identify members of criminal street gangs for inclusion on the Gang List. As such, these criteria are arbitrary and capricious, and serve no legitimate government interest. In fact, the use of arbitrary criteria leading to consistently inaccurate gang membership designations frustrates any conceivable legitimate government interest in combating gang violence or crime generally.

213.    Inclusion on the Gang List entails significant deprivations of liberty and property consequences including detention, arrest, increased bond, criminal liability and incarceration or enhanced sentencing, restrictive probation conditions, and loss of employment, housing, and social opportunities. These deprivations significantly damage Plaintiffs and are effected without notice or an opportunity to be heard in violation of the Fourteenth Amendment.

### Count IV: Violation of Fourteenth Amendment Right to Due Process
### Failure to Provide Substantive Due Process (42 U.S.C. § 1983)
### *All Plaintiffs and Class Members*

214.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated herein.

215.    Under K.S.A. 21-6313, an individual may be included on the WPD's Gang List based entirely on lawful, innocuous, and constitutionally protected conduct. Once on the Gang List, individuals may be and regularly are renewed as "active" members of the list due to lawful, innocuous and constitutionally protected conduct.

216.    Inclusion on the WPD's Gang List leads to significant deprivations of life, liberty and property. These deprivations include:

- frequent, prolonged, intrusive, and hostile encounters with law enforcement;

- unreasonable searches of property;

- unjustified arrests;

- unwarranted online and in-person surveillance;

- identification by and increased attention from WPD officers using "Signal 33";

- allegations of gang membership in arrest affidavits and news media;

- increased bail leading to prolonged imprisonment and financial hardship;

- severely restrictive probation, pretrial release, and parole conditions;

- re-arrest, detention, and incarceration for violations of restrictive release conditions;

- diminished plea offers in connection with criminal charges;

- introduction of gang membership as evidence in criminal proceedings, leading to extreme prejudice, conviction, and incarceration;

- representation of gang membership to other public and private entities, leading to misidentification of Plaintiffs as gang members in background checks and news articles or other public sources; and

- loss of educational, employment, and housing opportunities.

Plaintiffs—including Progeny and its members, individual named Plaintiffs, and Plaintiff class members—have experienced and been damaged by these deprivations.

217.    Additionally, inclusion on the Gang List is stigmatizing. Because other law enforcement entities have access to the Gang List, and inclusion on the Gang List may come up in background checks for employment, housing, or benefits, individuals face reputational harm and disparate treatment as a result of Defendants' actions.

218.    Because of his inaccurate designation as a gang member on the WPD's Gang List, Plaintiff Christopher Cooper has experienced significant deprivations of life, liberty and property including frequent, prolonged, hostile and unjustified police stops; identification by and increased attention from WPD officers; heightened punishment leading to prolonged imprisonment, financial hardship, and ultimately an unwarranted criminal plea and conviction; severely restrictive

probation conditions including a 6 p.m. curfew and prohibition on contact with family members; loss of his college scholarship; and loss of an employment promotion in position and salary.

219.    Because of his inaccurate designation as a gang member on the WPD's Gang List, Plaintiff Elbert Costello has experienced significant deprivations of life, liberty and property including frequent, prolonged, intrusive, and hostile police stops; unreasonable searches of his car; identification by and increased attention from WPD officers; unwarranted surveillance; severely restrictive parole conditions; representation of gang membership to other public and private entities including *The Wichita Eagle* newspaper, and perpetual renewal of his inaccurate gang member designation on the Gang List for reasons such as innocuous social interactions and wearing professional sports team paraphernalia.

220.    Because of his inaccurate designation as a gang member on the WPD's Gang List, Plaintiff Martel Costello has experienced significant deprivations of life, liberty and property including frequent, prolonged, intrusive, and hostile police stops; increased bail leading to prolonged imprisonment and financial hardship; severely restrictive probation and pretrial release conditions including a curfew and ban on contact with family members and others (who in many instances he has no way of identifying); re-arrest and incarceration for violations of restrictive release conditions; unreasonable searches of property; unjustified arrests; unwarranted police surveillance; and identification by and increased attention from WPD officers.

221.    Because of his inaccurate designation as a gang member on the WPD's Gang List, Plaintiff Jeremy Levy, Jr. has experienced significant deprivations of life, liberty and property including introduction of gang membership as evidence in criminal proceedings, leading to extreme prejudice, conviction, and incarceration—which continues to this day.

222.    Progeny members have experienced significant deprivations of life, liberty, and property including those described above. These deprivations interfere with Progeny's essential functions and prevent it from accomplishing its mission of serving Wichita youth.

223.    Causing and imposing significant deprivations of life, liberty, and property on the basis of lawful, innocuous, and constitutionally protected behavior substantively violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

224.    The WPD's policies and practices therefore unconstitutionally impede individuals' liberty interests without due process of law.

### Count V: Violation of Fourteenth Amendment Right to Equal Protection
### Disparate Impact on Minority Communities (42 U.S.C. § 1983)
### *Plaintiffs Christopher Cooper, Elbert Costello, Martel Costello, Jeremy Levy, Jr., and Equal Protection Class Members*

225.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated herein.

226.    Defendants have implemented, enforced, encouraged, and sanctioned policies, practices, and customs of using discriminatory policing tactics to target the named Plaintiffs and members of the Plaintiff class for inclusion in the Gang List based solely on their race and national origin, in violation of the Fourteenth Amendment of the U.S. Constitution. The WPD intentionally applies a facially neutral policy in a discriminatory manner. As a result, Defendants' policy, practice, and/or custom of maintaining the Gang List violates the Equal Protection Clause of the Fourteenth Amendment.

227.    Data indicates that Defendants' Gang List-related policies and practices have a discriminatory effect on Black and Latinx communities and that Black and Latinx people are included in the Gang List at far higher rates than are similarly situated white people.

228.    On information and belief, the WPD created its Gang List to track and surveil Black and Latinx neighborhoods as part of an anti-gang enforcement strategy.

229.     The Kansas Legislature then codified the WPD's harmful gang surveillance policy and practices by passing K.S.A. 21-6313, basing that statute on the WPD's practices of categorizing predominately Black and Latinx Wichita community members as gang members or associates based on whom they hang out with, the businesses they frequent, and the color of clothing they wear.

230.     By its acts and omissions, Defendants have acted under color of state law to deprive Plaintiffs of their Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

231.     Defendants intend to discriminate against people when they violate peoples' rights through placement in the Gang List. Defendants pursued this policy precisely because of the adverse effects it has on Black and Latinx individuals.

232.     Defendants do not subject similarly situated white individuals and communities to the same level of surveillance, harassment, and monitoring for inclusion on the Gang List as they do Black and Latinx individuals and communities.

233.     Plaintiffs Christopher Cooper, Elbert Costello, Martel Costello, and Jeremy Levy, Jr., have suffered injury and damage as a result of Defendants' racially discriminatory policies and practices. Each of these Plaintiffs is a Black male who is not, and has never been a member of a criminal street gang, yet they have been included in the WPD's Gang List. Each of these Plaintiffs have suffered significant civil and criminal consequences as a result of their inclusion on the Gang List. Upon information and belief, similarly situated white residents of Wichita are not targeted for inclusion on the WPD's Gang List, and do not suffer the same civil and criminal consequences for inclusion, such as enhanced surveillance and police harassment, deliberate perpetual renewal of Gang List status, unjustified arrests and searches, and introduction of Gang List status as evidence in criminal proceedings for non-gang-related charges.

234.     Defendants were and remain deliberately indifferent to the harm created through the implementation of the Gang List. Defendants have carried out this policy at least in part because of the adverse effects it has had on Black and Latinx individuals, and a reasonable inference can be drawn that supervisors have intended those effects to occur. Despite notice of racial disparities in the Gang List, Defendants' policies and practices concerning the Gang List remain unchanged.

235.     Defendants have implemented, enforced, encouraged, and sanctioned the WPD's policy, practice, and custom of using and maintaining a Gang List in a manner that constitutes racial and/or ethnic discrimination against the Plaintiff class in violation of the Fourteenth Amendment. As a direct and proximate result of the aforesaid acts and omissions of the City of Wichita, the Fourteenth Amendment rights of the Plaintiffs have been violated.

236.     Unless restrained by order of this Court, a real and immediate threat exists that the Fourteenth Amendment rights of Plaintiffs will be violated by Defendants in the future. Plaintiffs seek injunctive and declaratory relief against Defendants to prevent the continued violation of their constitutional rights.

### Count VI: Violation of First Amendment
### Right of Association and Expression ((42 U.S.C. § 1983) – Direct Prohibition
### *All Plaintiffs and Class Members*

237.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated herein.

238.     K.S.A. 21-6313 and Policy 527 unconstitutionally proscribe expressive and associative activity in violation of the First Amendment to the U.S. Constitution.

239.     K.S.A. 21-6313 and Policy 527's criteria for inclusion on the WPD Gang List include expressive and associative activities protected by the First Amendment. Such activities include, but are not limited to: contact with family members, friends, and others; residence in, or

travel to, certain neighborhoods; participation in political, religious, and other social groups; and display of colors and symbols on one's person or clothing.

240.    Inclusion on the WPD's Gang List under K.S.A. 21-6313 and Policy 527 leads to adverse criminal consequences and enhanced punishment. Such consequences include, but are not limited, to: mandatory minimum bail for certain offenses, enhanced probation conditions and intensive pre-trial monitoring, police surveillance, repeat detainment, questioning and arrest, enhanced criminal charges and diminished plea offers, and prejudicial admission of Gang List membership information in criminal proceedings leading to increased conviction and incarceration.

241.    Plaintiff Progeny Kansas and its members are and have been damaged by K.S.A. 21-6313 and Policy 527's unconstitutional proscription of expressive and associative behaviors. Progeny and its members are directly restricted from organizing, conducting, and attending peaceable assemblies because doing so creates grounds for the WPD to add Progeny members and event attendees to its Gang List and to harass, detain, search, and surveil them pursuant to K.S.A. 21-6313 and Policy 527. Moreover, under K.S.A. 21-6313 and Policy 527, attendance at such peaceable assemblies subjects Progeny members to increased bail for person offenses, more restrictive probation and parole restrictions, and enhanced criminal charges and consequences, including the admission of highly prejudicial Gang List information as evidence in criminal proceedings. Upon information and belief, Progeny members and clients have been added to the WPD's Gang List and subjected to these enhanced criminal consequences due to participation in Progeny activities and/or contact with other Progeny members and clients.

242.    Plaintiff Christopher Cooper has been damaged by K.S.A. 21-6313 and Policy 527's unconstitutional proscription of expressive and associative behaviors. As a result of his

unjustified inclusion on the WPD's Gang List, Mr. Cooper was subjected to enhanced probation conditions which forced him to move away from and cease contact with members of his family. His inclusion on the Gang List under K.S.A. 21-6313 and Policy 527 meant that he was directly proscribed from associating with his own family members, in violation of the First Amendment to the United States Constitution.

243.    Plaintiff Elbert Costello has been damaged by K.S.A. 21-6313 and Policy 527's unconstitutional proscription of expressive and associative behaviors. His unjustified "active" gang member status was recently renewed for an additional three years based on a photograph of him wearing a hat in support of the Philadelphia Phillies baseball team. In the past, Mr. Costello has been renewed on the Gang List for constitutionally protected, non-criminal associations with others on the WPD's Gang List. As his more than 20 years on the WPD's Gang List has shown, inclusion on the Gang List subjects Mr. Costello to significant criminal consequences including police harassment, arrest, unreasonable search, and surveillance. Moreover, should Mr. Costello be arrested or charged with a person crime or other offense, he would be subject to increased bail, restrictive probation or parole conditions, and the potential for his gang member status to be introduced as highly prejudicial evidence in any criminal trial—consequences not faced by individuals facing identical charges who are not on the WPD's Gang List—because of how he dressed and the people with whom he was photographed. Mr. Costello's renewal on the WPD's Gang List for the expressive conduct of wearing a Philadelphia Phillies cap, and for the associative conduct of non-criminal interactions with others on the WPD's Gang List, violates the First Amendment of the United States Constitution.

244.    Plaintiff Martel Costello has been damaged by K.S.A. 21-6313 and Policy 527's unconstitutional proscription of expressive and associative behaviors. As a result of his unjustified

inclusion on the WPD's Gang List, Mr. Martel Costello was subjected to enhanced probation conditions including prohibition on contacts with members of his family. Pursuant to these conditions—a direct consequence of his inclusion on the Gang List—Mr. Martel Costello has been arrested and incarcerated on two separate occasions specifically for being present at events with other family members who are included on the WPD's Gang List. Both events were non-criminal in nature (K.S.A. 21-6313 and Policy 527 are indifferent to whether such contacts have any criminal purpose) and both were commemorations of recent family deaths: Plaintiff Costello's niece in one instance, and his brother in the other. Mr. Martel Costello is currently incarcerated for violating his probation prohibition on contacts with certain family members by being present at his brother's funeral. His inclusion on the Gang List under K.S.A. 21-6313 and Policy 527 meant that he was directly proscribed from associating with his own family members—and arrested and incarcerated for doing so—in violation of the First Amendment to the United States Constitution.

245.    Plaintiff Jeremy Levy Jr. has been damaged by K.S.A. 21-6313 and Policy 527's unconstitutional proscription of expressive and associative behaviors. As a result of his unjustified inclusion on the Gang List, Mr. Levy was subjected to increased punishment at his criminal trial because of his association with other people on the Gang List who may or may not have been involved in other, unrelated crimes. Moreover, once Mr. Levy is released on parole, he will be subject to highly restrictive supervision conditions that will prevent him from associating with his family and friends, in violation of the First Amendment.

246.    These and other enhanced criminal consequences are carried out by state and local law enforcement and corrections officers and constitute government action.

247.    By attaching enhanced criminal consequences to constitutionally protected activities, K.S.A. 21-6313 and Policy 527 directly and impermissibly prohibit and punish those

activities with the force of state law and are invalid under the First Amendment to the U.S. Constitution.

### Count VII: Violation of First Amendment
### Right of Association and Expression (42 U.S.C. § 1983) – Chilling Effect
### *All Plaintiffs and Class Members*

248.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated herein.

249.    K.S.A. 21-6313 and Policy 527 unconstitutionally chill expressive and associative activity among persons within the jurisdiction in which Defendants employ the Gang List in violation of the First Amendment to the U.S. Constitution.

250.    K.S.A. 21-6313 and Policy 527 unconstitutionally chill intimate associations among private individuals including associations among family members, friends, school classmates, co-workers, religious adherents, and others.

251.    Plaintiffs avoid engaging in such activities as contact with family members, friends, and others; residence in, or travel to, certain neighborhoods; participation in political, religious, and other social groups; and display of colors and symbols on one's person or clothing in order to avoid being placed on the WPD's Gang List.

252.    K.S.A. 21-6313 and Policy 527 chill expressive associations among members of non-gang social and political groups. Any member of any group (including political parties, religious organizations, and civic and educational bodies) could be added to the Gang List due to contacts with others in the group who are listed in the Gang List—whether or not that person has in fact ever been connected with a gang.

253.    Inclusion on the WPD's Gang List under K.S.A. 21-6313 and Policy 527 causes reputational harm, precipitating concrete injuries.

254.    Inclusion on the WPD's Gang List leads to increased, extended and intensified interactions with law enforcement. Designation as a gang member or associate leads to improper police stops, detentions, interrogations, searches, surveillance, suspicion, and arrest.

255.    Inclusion on the WPD's Gang List leads to financial and physical harms including denial and loss of employment, discrimination in housing, stigmatization and exclusion from social groups, and harmed personal relationships.

256.    As a result of K.S.A. 21-6313 and Policy 527's unconstitutional restrictions, Organizational Plaintiff Progeny has been chilled and discouraged from constitutionally protected expressive and associative behaviors. Progeny and its members have refrained from organizing, conducting, and attending peaceable assemblies where those included on the WPD's Gang List are likely to be present.

257.    As a result of K.S.A. 21-6313 and Policy 527's unconstitutional restrictions, Plaintiff Christopher Cooper has been chilled and discouraged from constitutionally protected expressive and associative behaviors. Mr. Cooper has refrained from associating with certain family members and intimate friends for peaceful purposes due to fear that such association might cause himself or others to be arrested, included or renewed on the WPD's Gang List and subjected to continued or increased police harassment or other criminal consequences.

258.    As a result of K.S.A. 21-6313 and Policy 527's unconstitutional restrictions, Plaintiff Elbert Costello has been chilled and discouraged from constitutionally protected expressive and associative behaviors. Mr. Costello has refrained from associating with certain family members and intimate friends for peaceful purposes due to fear that such association might cause himself or others to be included or renewed on the WPD's Gang List and subjected to continued or increased police harassment or other criminal consequences. He has refrained from

certain non-criminal commercial interactions—including buying gas in his own neighborhood—for fear that patronizing businesses in certain parts of town might cause himself or others to be included on the WPD's Gang List and subjected to continued or increased police harassment or other criminal consequences. He has also refrained from the expressive conduct of taking or posting photographs to social media for fear that some non-criminal and non-gang related clothing or conduct will be used as grounds to renew his unjustified "active" gang member status. This fear and restraint are well-founded, as he has repeatedly been renewed on the WPD's Gang List and subjected to police harassment and criminal consequences for precisely these types of non-criminal, constitutionally protected associative and expressive actions.

259.    As a result of K.S.A. 21-6313 and Policy 527's unconstitutional restrictions, Plaintiff Martel Costello has been chilled and discouraged from constitutionally protected expressive and associative behaviors. Martel Costello has refrained from associating with certain family members and intimate friends for peaceful purposes due to fear that such association might cause himself or others to be arrested, included or renewed on the WPD's Gang List and subjected to continued or increased police harassment or other criminal consequences.

260.    As a result of K.S.A. 21-6313 and Policy 527's unconstitutional restrictions, Plaintiff Jeremy Levy, Jr. has been chilled and discouraged from constitutionally protected expressive and associative behaviors. Plaintiff Mr. Levy has refrained from associating with certain family members and intimate friends for peaceful purposes due to fear that such association might cause himself or others to be arrested, included or renewed on the WPD's Gang List and subjected to continued or increased police harassment or other criminal consequences.

261.    The Federal Constitution protects Plaintiffs' right to associate with others and to express themselves. *See* U.S. Const. Amend. I.

262.    Defendants' maintenance and use of the Gang List therefore unconstitutionally chills Plaintiffs' First Amendment rights to associate and express themselves.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the putative class they seek to represent, request that this Court grant the following relief:

a.   Issue an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and(b)(2);

b.   Issue a class-wide judgment declaring that K.S.A. 21-6313, *et seq.*, and the policies, practices, and conduct of Defendants, as described in this Complaint, constitute violations of the rights of Plaintiffs and the class they represent under the U.S. Constitution;

c.   Issue a Preliminary and Permanent Injunction preventing Defendants from maintaining the Gang List, implementing a Gang List or adding any individual to the Gang List in the future, and removing from the Gang List all individuals currently or in the past designated as Gang Members or Gang Associates, whether characterized as Active or Inactive;

d.   Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

e.   Allow such other and further relief as the Court deems just and proper.

## DESIGNATION PLACE OF TRIAL

Plaintiffs designate Wichita, Kansas as the place of trial for this action.

Dated this 15th day of April, 2021.

Respectfully submitted,

KANSAS APPLESEED CENTER FOR
LAW AND JUSTICE, INC.

*/s/* Teresa A. Woody
Teresa A. Woody KS #16949
211 E. 8th Street, Suite D
Lawrence, KS 66044
Phone: (785) 251-8160
twoody@kansasappleseed.org
twoody@kansasappleseed.org


AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF KANSAS

*/s/* Sharon Brett
Sharon Brett KS #28696
6701 W. 64th St, Suite 210
Overland Park, KS 66202
Phone: (913) 490-4100
sbrett@aclukansas.org


ATTORNEYS FOR PLAINTIFFS,
INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED