# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc.,
CHRISTOPHER COOPER, ELBERT COSTELLO,
MARTEL COSTELLO, and JEREMY LEVY, JR.,
on behalf of themselves and others similarly situated,

Plaintiffs,

vs.                                               Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS, CHIEF GORDON
RAMSAY, in his official capacity as Chief of the
Wichita Police Department, and LIEUTENANT
CHAD BEARD, in his official capacity as Supervisor
of the Gang Unit of the Wichita Police Department,

Defendants.

---

## Motion to Dismiss and Memorandum in Support

Defendants move to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## I. Nature of the Matter

Plaintiffs seek a declaration that K.S.A. 21-6313 through K.S.A. 21-6316 are unconstitutional.[1] *ECF 1, ¶ 61 Prayer for Relief ¶ b.* Plaintiffs further seek to enjoin the Wichita

---

[1] The complaint identifies the statutes as K.S.A. 21-6313, *et seq. ECF 1, ¶¶ 1, 189-193.* Only K.S.A. 63-6313 through 21-6314 address criminal street gangs and criminal street gang membership. K.S.A. 21-6317 addresses crimes for endangering the food supply.

Police Department from maintaining or implementing a "Gang List" which documents gang members and associates and Plaintiffs further seek an order dismantling its Gang List. *ECF 1, ¶ 61 Prayer for Relief ¶ c.*

Plaintiffs' claims must fail because (1) K.S.A. 21-6313 through K.S.A. 21-6316 are not unconstitutional and (2) the maintenance of a Gang List (without regard to whether any plaintiff is included on the Gang List) does not deprive any person of a constitutionally protected interest.

## II. Statement of Facts

Exhibit A to the Complaint is a true and correct copy of WPD Policy 527. *ECF 1, ¶ 3.* WPD Policy 527 provides that specified WPD officers will monitor "documented gang members and associates for any violations of their probation/parole, bond, and pretrial restrictions and will immediately report this to the proper supervising authorities with the intent of removing the offender from the community." *Id.*, § I.A.1.

Pursuant to WPD Policy 527:

The Wichita Police Department Master Gang List is confidential. Information from the Master Gang List will only be released to commissioned law enforcement/correctional officers or those persons authorized by the supervisor of the Gang/Felony Assault Section, [Violent Crimes Community Response Team (VCCRT)] or Person Crimes Bureau Commander.

*Id.*, § I.A.2.

Persons are added to the Gang List if they meet the criteria defined in K.S.A. 21-6313. *Id.*, § I.B. For persons arrested for a person felony, the records are checked to determine if the arrestee is documented as a criminal street gang member and, if so, the arrest affidavit is to include a sentence pertaining to the arrestee's gang affiliation and status. *Id.*, § I.C.4.

The complaint does not allege that any of the plaintiffs have been arrested, charged, and/or convicted of any offense defined in K.S.A. 21-6313, *et seq*. The complaint does not allege that any of the plaintiffs have been threatened with arrest, charges, and/or conviction for any offense

defined in K.S.A. 21-6313, *et seq*. The complaint does not allege that any of the plaintiffs have

committed any conduct prohibited in K.S.A. 21-6313, *et seq*. The complaint does not allege any

of the plaintiffs wish to engage in conduct prohibited by K.S.A. 21-6313, *et seq*. but have refrained

from doing so for fear of prosecution under those statutes.

### III. Questions Presented

1.   The claims of all plaintiffs—association/organization and individual and prospective plaintiffs—should be dismissed for lack of Article III standing and, therefore, subject matter jurisdiction.

2.   K.S.A. 21-6313 through 21-6316 are not unconstitutional.

3.   The complaint fails to state a claim of deprivation of procedural due process on behalf of any plaintiff or prospective plaintiff.

4.   The complaint fails to state a claim of deprivation of substantive due process on behalf of any plaintiff or prospective plaintiff.

5.   The complaint fails to state a claim of deprivation of equal protection on behalf of any plaintiff or prospective plaintiff.

6.   The complaint fails to state a claim of deprivation of any right protected by the First Amendment.

7    The claims against defendants Ramsay and Beard are redundant of the claims against the City of Wichita and should be dismissed.

8.    All claims against the City of Wichita should be dismissed for lack of an underlying constitutional violation.

### IV. Argument and Authorities

It should come as no surprise that the Wichita Police Department has elected to focus some

of its limited resources on combating gang violence. Gangs present a significant threat to public

safety and account for a significant percentage of reported crime and, particularly, violent crime.

Congress, directed the Attorney General to establish a National Gang Intelligence Center

("NGIC") and a gang information database to collect, analyze, and disseminate gang activity

information" from, to and between federal, state, local, and tribal law enforcement, prosecutorial,

and corrections agencies. 34 U.S.C. § 41507. The statute requires an annual report to Congress on gang activity.

The 2009 *National Gang Threat Assessment* reported the following:

> Gangs pose a serious threat to public safety in many communities throughout the United States. Gang members are increasingly migrating from urban to suburban areas and are responsible for a growing percentage of crime and violence in many communities. Much gang-related criminal activity involves drug trafficking; however, gang members are increasingly engaging in alien and weapons trafficking. Additionally, a rising number of U.S.-based gangs are seemingly intent on developing working relationships with U.S.- and foreign-based drug trafficking organizations (DTOs) and other criminal organizations to gain direct access to foreign sources of illicit drugs.

**Key Findings**

….

• Local street gangs, or neighborhood-based street gangs, remain a significant threat because they continue to account for the largest number of gangs nationwide. Most engage in violence in conjunction with a variety of crimes, including retail-level drug distribution.

• Gang members are migrating from urban areas to suburban and rural communities, expanding the gangs' influence in most regions; they are doing so for a variety of reasons, including expanding drug distribution territories, increasing illicit revenue, recruiting new members, hiding from law enforcement, and escaping other gangs. Many suburban and rural communities are experiencing increasing gang-related crime and violence because of expanding gang influence.

….

• Criminal gangs commit as much as 80 percent of the crime in many communities, according to law enforcement officials throughout the nation. Typical gang-related crimes include alien smuggling, armed robbery, assault, auto theft, drug trafficking, extortion, fraud, home invasions, identity theft, murder, and weapons trafficking.

• Gang members are the primary retail-level distributors of most illicit drugs. They also are increasingly distributing wholesale-level quantities of marijuana and cocaine in most urban and suburban communities.

….

• Many gangs actively use the Internet to recruit new members and to communicate

with members in other areas of the United States and in foreign countries.[2]

The 2011 *National Gang Threat Assessment* reported:

Gangs continue to commit criminal activity, recruit new members in urban, suburban, and rural regions across the United states, and develop criminal associations that expand their influence over criminal enterprises, particularly street-level drug sales. the most notable trends for 2011 have been the overall increase in gang membership, and the expansion of criminal street gangs' control of street-level drug sales and collaboration with rival gangs and other criminal organizations.

**Key Findings**

Gangs are expanding, evolving and posing an increasing threat to US communities nationwide. many gangs are sophisticated criminal networks with members who are violent, distribute wholesale quantities of drugs, and develop and maintain close working relationships with members and associates of transnational criminal/drug trafficking organizations. Gangs are becoming more violent while engaging in less typical and lower-risk crime, such as prostitution and white-collar crime. Gangs are more adaptable, organized, sophisticated, and opportunistic, exploiting new and advanced technology as a means to recruit, communicate discretely, target their rivals, and perpetuate their criminal activity.[3]

Plaintiffs seek injunctive relief effectively dismantling and terminating the use of the Gang List by the Wichita Police Department.[4] The relief sought, if granted, would cripple the WPD's ability to gather information it deems important to public safety, and its efforts to combat violent crime. These police powers are reserved for local law enforcement. *United States v. Morrison*, 529

---

[2] National Gang Intelligence Center and National Drug Intelligence Center, *National Gang Threat Assessment*, p. iii. (U.S. Department of Justice, National Gang Intelligence Center and National Drug Intelligence Center, 2009). Accessible at https://www.fbi.gov/file-repository/stats-services-publications-national-gang-threat-assessment-2009-pdf/view, last visited on July 5, 2021.

[3] National Gang Intelligence Center and National Drug Intelligence Center, *National Gang Threat Assessment: Emerging Trends*, p. 9. (U.S. Department of Justice, National Gang Intelligence Center and National Drug Intelligence Center, 2011).Accessible at https://www.fbi.gov/file-repository/stats-services-publications-2011-national-gang-threat-assessment-2011%20national%20gang%20threat%20assessment%20%20emerging%20trends.pdf/view, last visited July 5, 2021.

[4] Plaintiffs sue not only the City but also Chief Ramsay and Lieutenant Beard in their official capacity and are therefore redundant of the claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

U.S. 598, 618 (2000) ("[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, then the suppression of violent crime and vindication of its victims.").

**A.  Standard for a motion to dismiss.**

**1.  12(b)(1), lack of subject matter jurisdiction.**

A Rule 12(b)(1) motion to dismiss requires a court to dismiss any action for which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and must have a statutory or constitutional basis to exercise jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Dismissal is appropriate when it becomes apparent that jurisdiction is lacking. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Plaintiff bears the burden of establishing that jurisdiction is proper. *Montoya*, 296 F.3d at 955

**2.  12(b)(6), failure to state a claim upon which relief may be granted.**

When ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the nonmoving party to determine whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleading standard arising from the decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, requires that a complaint plead facts sufficient to show that the claims have substantive plausibility. This standard emphasizes the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, which instead must be supported by facts. A complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face. *Iqbal*. at 679–80. The Court draws on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. *See id.*; *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiffs must frame the complaint

with enough factual matter to suggest that they are entitled to relief. Threadbare recitals of a cause of action accompanied by conclusory statements are not enough. *Twombly*, 550 U.S. at 556. A facially plausible claim exists where the complaint pleads factual content from which the Court can reasonably infer the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. *Id*. (quoting *Twombly*, 550 U.S. at 557). Labels, conclusions, formulaic recitation of the elements of a cause of action, and/or naked assertions devoid of further factual enhancement will not stand. *Iqbal*, 556 U.S. at 678.

**B.      Plaintiffs lack Article III standing. The Court lacks subject matter jurisdiction.**

The Complaint does not plausibly allege Article III standing.

The "Judicial Power" of the federal courts extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). A case or controversy requires that a plaintiff possess standing to sue as "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Article III standing requires the plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. "As the party invoking federal jurisdiction, plaintiff bears the burden of establishing each element of Article III standing." *Id*. "At the pleading stage, the complaint must clearly allege facts demonstrating each element." *Id*.

These gatekeeping requirements are designed to ensure the judiciary's "proper role in our system of government," one in which the courts do not "usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). When managing local policing, federal courts are to be particularly mindful of their limited role: The "special delicacy

of the adjustment to be preserved between federal equitable power and State administration of its own law" means courts must show "restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983) (citations omitted).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A concrete injury "must actually exist." *Id.* A "particularized" injury "'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). An "imminent" injury "must be 'certainly impending.'" *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1222 (10th Cir. 2016) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

"An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial" risk that the harm will occur.'" *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 409, 414 n.5). "At the pleading stage, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "[G]eneral factual allegations of injury resulting from the defendant's conduct *may* suffice" to support the claim. *Lujan*, 504 U.S. at 561 (emphasis added). "However, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *COPE*, 821 F.3d at 1221 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## 1.    The individual plaintiffs lack standing for injunctive relief.

Plaintiffs make claims of past injuries that cannot be directly related to their inclusion in the Gang List.

The complaint complains that Plaintiff Cooper had a high bond in his criminal case, *ECF 1, ¶119*, the loss of a college scholarship, *ECF 1, ¶ 121*, increased probation conditions, and having to move away from family members who were reported gang members. *ECF 1, ¶ 120*. This brushes past (1) the fact Cooper was implicated for his participation in a homicide—he drove the getaway car from a shooting, *ECF 1, ¶ 116*; (2) the fact Cooper was afforded due process before bond was imposed—he had a bond hearing, *ECF 1, ¶ 119*; and (3) the fact Cooper plead guilty to a reduced charge. *Id*. Cooper points only to being stopped for traffic infractions (but he does not allege he was ever stopped without reasonable suspicion and/or probable cause supporting the stop), *ECF 1, ¶ 123*, and speculates he lost out on a job opportunity because of a background check. *ECF 1, ¶ 124*. Even viewing these allegations as true, the complaint only speculates these events are directly relatable to his inclusion in the Gang List.

The complaint complains plaintiff Elbert Costello faced a higher level of custody and supervision after his conviction for voluntary manslaughter. *ECF 1, ¶¶ 129-29*. One convicted of a violent person felony like voluntary manslaughter should expect a higher level of classification for incarceration and parole. The complaint does not allege Costello was treated differently from other felons convicted of voluntary manslaughter nor does the complaint allege how his potential inclusion on a Gang List effect the actions of the Kansas Department of Corrections, an entity unrelated to the WPD.  Cooper lacks standing.

The complaint similarly complains Costello was stopped for traffic infractions, *ECF 1, ¶132*, while also failing to allege he was ever stopped without reasonable suspicion and/or probable cause supporting the stop or that he was ever been unlawfully detained. The complaint claims Costello was subject to searches of his car while on parole because of his gang affiliation. The complaint neglects, however, to point out that such searches are authorized by statute. K.S.A.

22-3717(k)(3) (parolees and persons on postrelease supervision "are, and shall agree in writing to be, subject to searches of … by any law enforcement officer based on reasonable suspicion of the person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity.").

The complaint complains Costello was identified in a newspaper article as a gang member by his parole officer. *ECF 1, ¶ 139*. Defendants have no control over the comments of a parole officer. Costello finally claims his social activities and movements have been curtailed, *ECF 1, ¶¶ 135-136 & 140*, though such a course of conduct is a voluntary choice and not a caused by inclusion on a Gang List. Costello lacks standing.

The complaint complains Plaintiff Martel Costello, after his conviction for drug and firearms offenses, was repeatedly stopped by the WPD for traffic violations and arrested on "unknown" outstanding warrants. *ECF 1, ¶¶ 141-142* As with Cooper and Costello, there is no allegation any of the stops and/or arrests were unlawful—rather, he complains he was not given a ticket for a traffic violation when he was stopped. This is no constitutional injury. Costello also complains of high bond but overlooks he had a bond hearing. *ECF 1, ¶143*. Costello details, as alleged "injuries", instances where he was arrested for probation violations and charged for new crimes. *ECF 1, ¶¶ 145-150*. Costello alleges an inability to interact with family and friends because he is listed on the Gang List as his injury, *ECF 1, ¶ 155*, while overlooking the fact that it is his criminal conduct and resulting conditions of release that restrict his ability to interact with members of a Criminal Street Gang. Costello lacks standing.

The complaint complains plaintiff Jeremy Levy, Jr's conviction for murder was somehow in part due to his listing in the Gang List. Levy was involved in an altercation where a person was murdered, and gang affiliation evidence was used in his prosecution. *ECF 1, ¶¶ 157-166*. Levy's

conviction was upheld by the Kansas Supreme Court in *State of Kansas v. Levy*, __ Kan. __, 485 P. 3d 605 (April 23, 2021). It was testimony about his gang involvement that was used at trial, and not his listing on a Gang List.[5] Levy alleges no injury in fact and lacks standing.

### 2.     Progeny lacks association standing.

The Organization/Association Plaintiffs are parties to Counts I, II, IV, VI and VII, where they assert claims on their own behalf and on behalf of their members. They lack standing to do either.

> An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343(1977); *see also Utah Ass'n of Counties v. Bush*, 455 F.3d 1094 (10th Cir. 2006).

A party may move to dismiss a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) by mounting either a facial or factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). A factual attack goes beyond the allegations in the

---

[5] Levy was convicted and received a hard 25 sentence for the first-degree felony murder of an innocent victim caught in cross-fire between rival gangs. Levy was a member of the Folk Gangster Disciples and the shootout involved Levy and three members of the Piru Blood gang. *State v. Levy*, 485 P.3d at 607. Levy's defense focused on the lack of direct forensic evidence tying him to the shooting and attacked the gang theory as motivation for the shooting. *Id*. at 608. The Kansas Supreme Court held the "evidence was legally sufficient to support the jury's determination that Levy committed the underlying felony of criminal discharge" without regard to the gang activity evidence. *Id*., at 609. Levy argued at trial that the animosity leading to the shooting was personal, and not due to respective gang affiliations of the participants whereas the trial court admitted evidence that a gang feud dating back nearly a decade fueled the animosity between the participants. *Id*., at 610.

complaint and adduces evidence to contest jurisdiction. *Id.* (citing *Holt*, 46 F.3d at 1002). When a defendant brings a factual attack, a district court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt*, 46 F.3d at 1003). The court's exercise of such discretion does not convert a Rule 12(b)(1) motion into a summary judgment motion unless "resolution of the jurisdictional question is intertwined with the merits." *Holt*, 46 F.3d at 1003 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 & n.5 (10th Cir. 1987); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991)).

To have standing to sue on its own behalf, Plaintiff Association must show (among other things) that the association has suffered injury in fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). A claim under § 1983 must be based upon the violation of the plaintiff's <u>personal</u> rights, and not the rights of someone else. *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir.), *cert. denied*, 459 U.S. 826 (1982); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990); *Parker v. Caliber Home Loans Inc*, __ Fed. Appx. __, 2021 WL 2451612, at *1 (10th Cir. June 16, 2021).

The only injury alleged by Plaintiff Association is that it was prevented "from successfully carrying out its work helping juveniles involved in the criminal justice system." *ECF 1, ¶ 112*, and it "has had to divert resources away from other projects and direct individual assistance." *ECF 1, ¶ 113*. The complaint provides no specifics about how the City's action caused them to divert resources away from their usual mission. Nor does the complaint identify how the City prevented it from 'successfully' carrying out its work. The complaint assumes Plaintiff is successful otherwise. This lack of factual detail is fatal to the complaint, because if it is part of the organization's ordinary purpose to spend time or resources to issues posed by gang activities, then

they do not have standing. "[O]ordinary expenditures as part of an organization does not constitute the necessary injury-in-fact required for standing." *Plotkin v. Ryan,* 239 F.3d 882, 884 (7th Cir. 2001).

An organization does not have standing merely because it pursues laudable goals or sincerely believes in an issue. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) ("an interest in the underlying law does not equal an injury"); *Plotkin*, 239 F.3d at 886 ("[G]ood intentions are not enough for federal standing."). The Organization Plaintiffs' boilerplate allegations that funds were diverted from their missions are insufficient. *See Plotkin*, 239 F.3d at 884 ("[U]nadorned speculation will not suffice to invoke the federal judicial power.") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976)). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (explaining that a complaint must do more than make "naked assertions devoid of further factual enhancement") (internal quotation marks and citations omitted).

The Association Plaintiffs fare no better in showing standing to sue on behalf of their members. That standing exists only when: (a) an organization's members would otherwise have standing to sue in their own right; (b) the interests the organization seeks to protect in the lawsuit are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. *See Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977). Plaintiffs fail to establish any of these requirements.

First, The Plaintiff Association must "identify members who have suffered the requisite harm[.]" *Summers v. Earth Island Inst.* 555 U.S. 488, 499 (2009). As discussed above, the individual Plaintiff members lack standing. Standing cannot be based upon speculation; rather, plaintiff organizations must make specific allegations establishing that at least one identified

member has suffered a harm. *See Summers*, 555 U.S. at 497-99.

Second, the Plaintiff Association fails to establish that its interests are germane to their purpose. Progeny claims its purposes are frustrated because they surmise that the Gang List "stigmatizes" its members. They further speculate that help their association gives it members could be construed as gang activity resulting in being added to the gang database as a gang member or gang associate. *ECF 1, ¶¶ 106, 111*. If this were true, then the court services department which has similar goals of helping people involved in the legal system transition back to community, would risk gang affiliation. In any event, Progeny offers only speculation that its members risk being added to the database for association with members designated as gang members or associates.

Finally, Progeny cannot establish that the case can be litigated without the participation of their individual members. Progeny depicts the alleged harms stemming from gang designations as depending on numerous facts specific to a particular law enforcement encounter. *ECF 1, ¶¶ 108-109, 115-167*. Litigation of claims on behalf of the association's members would require them to establish (1) particular members are included in the Gang List, (2) their listing information is inaccurate, and (3) the information was used adversely to them in an unconstitutional manner. These fact-specific inquires would require the individual member participate in discovery. The Plaintiff Association lacks standing.

Progeny's claim is, of necessity, premised not on the Progeny's personal rights, but upon the rights of someone else. This itself is fatal to Progeny's standing and claims. *Dohaish*, 670 F.2d at 936; *Archuleta*, 897 F.2d at 497. The standing analysis also fails as to Progeny with the basic principle that one who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." *Whitus v. Georgia,* 385 U.S. 545, 550 (1967). A corollary

is the requirement to prove that the purposeful discrimination "had a discriminatory effect" on person claiming to have been subjected to purposeful discrimination. *Wayte v. United States,* 470 U.S. 598, 608 (1985). "Thus to prevail under the Equal Protection clause, [defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987) (emphasis in original).

### 3.    Standing conclusion.

Plaintiffs lack standing for an injunction. Future injury is not "certainly impending" or a "substantial risk" from inclusion on the Gang List. The Complaint details specific past instances where they alleged consequences flowed from inclusion on the Gang List. In each instance where it was alleged with any degree of factual specificity as required by *Iqbal*, 556 U.S. at 679-80, it is clear those consequences flowed from plaintiffs' own criminal conduct and only after they were afforded constitutionally adequate procedural due process. These one-off alleged instances of past injury are, as a matter of law, insufficient to show a substantial risk or certainty that any Plaintiff will be injured in the future.

The Supreme Court's decision in *Lyons* is dispositive. There Lyons had been stopped by the police for a traffic violation and, notwithstanding he did not present a threat, was put in a chokehold. In addition to a damage claim, Lyons sought an injunction barring the police from using chokeholds in such instances in the future. The Supreme Court held that Lyons lacked standing for an injunction, his past instance of injury "does nothing to establish a real and immediate threat that he would again be stopped" by officers who would then decide to apply a chokehold. 461 U.S. at 105. This was so even though Lyons alleged that it was a "routine[]" practice of the police to apply chokeholds. *Id*. Though it was possible an officer could again apply a chokehold to someone, but it was "no more than speculation" for Lyons to claim that he himself would face another chokehold. *Id*. at 108.

**C.    K.S.A. 21-6313 is constitutional.**

Count I of the complaint challenges the constitutionality of K.S.A. 21-6313 through 21-6316, asserting they are void for vagueness and overbreadth. *ECF 1, ¶ 184, 188-193*. These penal statutes define the criminal offenses (recruiting criminal street gang membership, K.S.A. 21-6314; and crime of criminal street gang intimidation, K.S.A. 21-6315) with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. For this reason, the constitutional challenge fails. While the complaint asserts invalidity for overbreadth and vagueness, the majority of the complaint is directed to the vagueness challenge.

**1.    The statutes are not overbroad.**

The overbreadth doctrine is limited and its limited function "attenuates" as the otherwise forbidden unprotected behavior moves from pure speech toward conduct where the "conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Thus, "particularly where conduct and not merely speech is involved, … the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id*. Even where a statute at its margins infringes on protected expression, "facial invalidation is inappropriate if the 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct....'" *New York v. Ferber*, 458 U.S. 747, 770 n.25 (1982). A court should not invalidate a statute on its face simply because the statute may criminalize some protected speech but must, instead, "determine how much protected speech is impacted 'in relation to the statute's plainly legitimate sweep.'" *Ward v. Utah*, 398 F.3d 1239, 1247 (10th Cir. 2005) (*Ward II*) (quoting *Broadrick*, 413 U.S. at 615).

"[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact… are entitled to no constitutional protection." *Roberts v. U.S. Jaycees*, 468 U.S. at 628. The First Amendment permits prohibition of "true threats" even though such a threat may have expressive content. *Virginia v. Black*, 538 U.S. 343, 359 (2003) "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id*. at 359-60 (internal quotes omitted).

2. **The statutes are not vague.**

Under the Fifth Amendment, "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process prohibits the deprivation of "life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)). Under this standard two kinds of criminal laws may be invalidated under the "void for vagueness" doctrine: those that <u>define</u> criminal offenses and laws that <u>fix the permissible sentences</u> for criminal offenses. *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *United States v. Gaudreau*, 860 F.2d 357, 359–60 (10th Cir. 1988) (citing *Kolender,* 461 U.S. at 357).

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S.

at 357. Statutes fixing penalties for criminal offenses, must specify the range of available sentences with "sufficient clarity." *United States v. Batchelder*, 442 U.S. 114, 123 (1979); *Beckles*, 137 S. Ct. at 892. The degree of specificity demanded by the Constitution depends on the nature of the statute—criminal statutes must be more precise than civil statutes because the consequences of vagueness are more severe. *Winters v. New York*, 333 U.S. 507, 515 (1948); *Kolender*, 461 U.S. at 359 n. 8. Further, a scienter requirement may mitigate a criminal law's vagueness by ensuring that it punishes only those who are aware their conduct is unlawful. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982); *Screws v. United States*, 325 U.S. 91, 101–04 (1945) (plurality opinion). The void for vagueness doctrine focuses both on actual notice to citizens and arbitrary enforcement, but "the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender*, 461 U.S. at 357–58 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id*., at 358 (quoting *Smith*, 415 U.S. at 575).

A federal court interprets state laws according to state rules of statutory construction. *Ward II*, 398 F.3d at 1248. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, Syl. ¶¶ 3-4, 296 P.3d 1106 (2013) (courts read a statute's plain language, give common words their ordinary meanings, and applies the unambiguous meaning without speculating as to the intent).

K.S.A. 21-6313 defines "criminal street gang," "criminal street gang member," "criminal street gang activity," and "gang-related incident" for purposes of K.S.A. 21-6314 through 21-6316.

K.S.A. 21-6314 defines the crime of recruiting criminal street gang membership.[6] The crime requires intentional conduct to encourage, solicit or recruit a person to join a criminal street gang where membership requires the person to commit or submit to a criminal act. K.S.A. 21-6314(a).

K.S.A. 21-6315 defines the crime of criminal street gang intimidation.[7] The crime requires intentional conduct—a threat to person or property to deter withdrawal from a criminal street gang or to punish or retaliate for such a withdrawal. K.S.A. 21-6315. K.S.A. 21-6316 prescribes minimum bail for criminal street gang members arrested for felony offenses, subject to exceptions.[8]

The crimes defined in K.S.A. 21-6314 and 21-6315 include scienter requirements—K.S.A.

---

[6] K.S.A. 21-6314 defines the crime of recruiting criminal street gang membership as:
    (a) Recruiting criminal street gang membership is intentionally causing, encouraging, soliciting or recruiting another person to join a criminal street gang that requires, as a condition of membership or continued membership, the commission of any crime or membership initiation by submission to a sexual or physical assault that is criminal in nature, or would be criminal absent consent by the initiated.
    (b)    Recruiting criminal street gang membership is a severity level 6, person felony.

[7] K.S.A. 21-6315 defines the crime of criminal street gang intimidation.
    (a)    Criminal street gang intimidation is the communication, directly or indirectly with another, any threat of personal injury or actual personal injury to another or any threat of damage or actual damage to property of another with the intent to:
        (1)    Deter such person from assisting a criminal street gang member or associate to withdraw from such criminal street gang; or
        (2)    punish or retaliate against such person for having withdrawn from a criminal street gang.
    (b)    Criminal street gang intimidation is a severity level 5, person felony.

[8] K.S.A. 21-6316 provides:
    When a criminal street gang member is arrested for a person felony, bail shall be at least $50,000 cash or surety, and such person shall not be released upon the person's own recognizance pursuant to K.S.A. 22-2802, and amendments thereto, unless the court determines on the record that the defendant is not likely to reoffend, an appropriate intensive pre-trial supervision program is available and the defendant agrees to comply with the mandate of such pre-trial supervision.

21-6314 explicitly requires intent and one could hardly threaten to injure or actually injure a person

or property to deter, punish or retaliate for withdrawal from a criminal street gang without the

unlawful intent. *See Vill. of Hoffman Ests.*, 455 U.S. at 502 (scienter requirement met where a

prohibited act "for" a particular use or purpose cannot occur intending the unlawful use or

purpose).

K.S.A. 21-6313, *et seq*. does not criminalize membership in a criminal street gang. The

Complaint does not direct the vagueness challenge to any <u>crime</u> defined by Kansas law, nor does

the Complaint direct its challenge to any <u>sentence</u> that may be imposed upon persons convicted of

any crime under Kansas law.

- The crime of recruiting criminal street gang membership does not require or forbid membership in a criminal street gang. Rather, the crime requires an intentional act (causing, encouraging, soliciting or recruiting a person to join a criminal street gang) <u>coupled</u> with a membership requirement that includes commission of a crime or submission to a criminal sexual or physical assault. K.S.A. 21-6314.

- The crime of criminal street gang intimidation does not require or forbid membership in a criminal street gang. Rather, the crime requires a threat of injury or actual injury to person or property coupled with the intent to deter (or retaliate for) the withdrawal from a criminal street gang. K.S.A. 21-6315.

A criminal street gang, for purposes of the crimes defined in K.S.A. 21-6314 and 21-6315

is defined to mean an:

organization, association or group, whether formal or informal:

(1)    Consisting of three or more persons;

(2)    having as one of its primary activities the commission of one or more person felonies, person misdemeanors, felony violations of K.S.A. 2020 Supp. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors;

(3)    which has a common name or common identifying sign or symbol; and

(4)    whose members, individually or collectively, engage in or have engaged in

the commission, attempted commission, conspiracy to commit or solicitation of two or more person felonies, person misdemeanors, felony violations of K.S.A. 2020 Supp. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors or any substantially similar offense from another jurisdiction

K.S.A. 21-6313(a). Article 57 of Chapter 21 of the Kansas Statutes Annotated comprised define

crimes involving controlled substances. K.S.A. Supp. 21-5701 through 21-5717. The statute's

definition of a criminal street gang, mirror's the U.S. Department of Justice description of violent

gangs.[9] The DOJ says the following of Criminal Street Gangs:

Thursday, April 29, 2021

> Street Gangs are located throughout the United States, and their memberships vary in number, racial and ethnic composition, and structure. Large national street gangs pose the greatest threat because they smuggle, produce, transport, and distribute large quantities of illicit drugs and rely on extreme violence. Local street gangs often imitate the larger, more powerful national gangs in order to gain respect from their rivals.

> In the long term, [loosely] organized street gangs threaten increase their role in trafficking drugs, particularly involving the smuggling of drugs into the United

---

[9] The Organized Crime and Gang Section (OCGS) of the Criminal Division of the Department of Justice provides the following " "About Violent Gangs:"

> Gangs are associations of three or more individuals who adopt a group identity in order to create an atmosphere of fear or intimidation.  Gangs are typically organized upon racial, ethnic, or political lines and employ common names, slogans, aliases, symbols, tattoos, style of clothing, hairstyles, hand signs or graffiti. The association's primary purpose is to engage in criminal activity and the use of violence or intimidation to further its criminal objectives and enhance or preserve the association's power, reputation, or economic resources.  Gangs are also organized to provide common defense of its members and interests from rival criminal organizations or to exercise control over a particular location or region.

> Gangs develop and maintain perpetuating characteristics including manifestos, constitutions, and codes of conduct which provide an identifiable structure and rules for initiation and advancement within the association.  Through their use of open intimidation and identifiable insignia, gangs may be distinguished from other organizational criminal groups such as La Cosa Nostra and transnational criminal organizations who rely on secrecy and clandestine control of legitimate businesses and governments to advance their criminal aims.

https://www.justice.gov/criminal-ocgs/about-violent-gangs, last visited July 5, 2021.

States and develop relationships with international criminal organizations and drug-trafficking organizations (DTOs).[10]

Congress enacted 18 U.S.C. § 521 as part of the Violent Crime Control and Law Enforcement Act of 1994. Under § 521(c), the sentence for persons convicted listed offenses "shall be increased by up to 10 years if the offense is committed" by a person who is knowingly a member of a criminal street gang defined under subsection (d). A "criminal street gang" is defined in the United States Code as:

an ongoing group, club, organization, or association of 5 or more persons-

(A) that has as 1 of its primary purposes the commission of 1 or more of the criminal offenses described in subsection (c);

(B) the members of which engage, or have engaged within the past 5 years, in a continuing series of offenses described in subsection (c); and

(C) the activities of which affect interstate or foreign commerce.

18 U.S.C. § 521(a).

In *United States v. Wilson*, 493 F. Supp. 2d 364 (E.D.N.Y. 2006), the court held consideration of the defendant's "membership in a criminal street gang" when evaluating the non-statutory aggravating factor of future dangerousness in a death penalty case was not unconstitutionally vague. *United States v. Wilson*, 493 F. Supp. 2d 364, 385 (E.D.N.Y. 2006). In *United States v. Green*, 618 F.3d 120 (2d Cir. 2010), the court held a prohibition on association with members of criminal street gangs while on supervised release was not unconstitutionally vague. 618 F.3d at 123–24. Such prohibitions were further found constitutionally sound in *United States v. Vega*, 545 F.3d 743, 749 (9th Cir. 2008), and *United States v. Soltero*, 510 F.3d 858, 865 (9th Cir. 2007) (per curiam).

---

[10] See https://www.justice.gov/criminal-ocgs/gallery/criminal-street-gangs, last visited on July 5, 2021.

Inclusion on the WPD Gang List does not, in and of itself, carry any criminal penalty nor does it impose any sentence upon a person convicted of a crime. The complaint points to K.S.A. 21-6804, 21-6301, 21-6315, and 21-6811 and alleges, "Conviction of certain offenses also carry higher sentences if the person convicted is a 'known criminal street gang member.'" *ECF 1, ¶ 97*. Not so. Rather, the Kansas Sentencing Guidelines carry a presumptive prison sentence for a <u>felony</u> conviction if:

> it is shown at sentencing that the offender committed any felony violation for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further or assist in any criminal conduct by gang members, the offender's sentence shall be presumed imprisonment. The court may impose an optional nonprison sentence as provided in subsection (q).

K.S.A. 21-6804(k)(1). As noted in the text of the statute, the presumptive prison sentence does not result merely from membership in a criminal street gang, but rather requires the specific intent to promote/further/assist criminal conduct by the gang. *Id*. The statute first requires conviction of an underlying felony. It then provides the presumptive sentence will be imprisonment when the commission of that felony was motivated by an intent to promote/further/assist criminal conduct by gang members. Such "enhancement" of a sentence does not permit an overbreadth challenge. *See, e.g.*, *Wisconsin v. Mitchell*, 508 U.S. 476 (1993) (enhancement statute which increased sentences for those who intentionally selected the victim because of race unanimously upheld against a First Amendment overbreadth challenge); *Ward II*, 398 F.3d at 1249 (upholding statute enhancing penalty for disorderly conduct offense committed "with the intent to intimidate or terrorize another person" against challenges for both overbreadth and vagueness).

K.S.A. 21-6811, also part of the Sentencing Guidelines, addresses determination of an offender's criminal history classification for purposes of presumptive sentencing guidelines grids. the statute makes no reference to criminal street gangs or to criminal street gang members. *Id*.

K.S.A. 21-6301 defines the crime of criminal use of weapons but the statute makes no

reference to criminal street gangs or to criminal street gang members.

As discussed above, K.S.A. 21-6315 defines the crime of criminal street gang intimidation which requires intentional conduct—a threat to person or property to deter withdrawal from a criminal street gang or to punish or retaliate for such a withdrawal. K.S.A. 21-6315.

First enacted in 2010, *see* L. 2010 ch. 136, §§ 198 through 201, K.S.A. 21-6313 through 21-6316 are patterned after the federal Racketeer Influenced and Corrupt Organizations Act (RICO). *Compare* 18 U.S.C. § 1961 through § 1968 and K.S.A. 21-6313 through 21-6316. RICO makes it a federal crime to participate in a criminal enterprise through a "pattern of racketeering activity." 18 U.S.C. § 1962. "Racketeering activity" is defined to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). *Cf.* K.S.A. 21-6313(a)(2) and (a)(4) (which defines "criminal street gang" as "any organization, association or group, whether formal or informal … having as one of its primary activities the commission of one or more person felonies, person misdemeanors, felony violations of [Kansas' controlled substances act] … and (4) whose members, individually or collectively, engage in or have [committed, attempted, conspired, or solicited] two or more person felonies, person misdemeanors, felony violations of [Kansas' controlled substances act]).

The RICO statute has survived various void-for-vagueness challenges. *See, e.g.*, *Schrag v. Dinges*, 788 F. Supp. 1543, 1555 (D. Kan. 1992); *United States v. Aleman*, 609 F.2d 298 (7th Cir.

1979), *cert. denied*, 445 U.S. 946 (1980); *United States v. Huber*, 603 F.2d 387 (2d Cir. 1979), *cert. denied*, 445 U.S. 927759 (1980); *United States v. Swiderski*, 593 F.2d 1246 (D.C.Cir.1978), *cert. denied*, 441 U.S. 933 (1979); *United States v. Hawes*, 529 F.2d 472 (5th Cir. 1976); *United States v. Campanale*, 518 F.2d 352 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976).

"To assess the risk of violating the RICO statute, one need only assess the risk of repeatedly violating certain clearly enumerated state and federal laws. Thus, the void-for-vagueness challenge to the RICO statute is meritless." *United States v. Casillas*, No. 1:12-CR-132, 2019 WL 978893, at *9 (W.D. Mich. Feb. 28, 2019). Similarly, to assess the risk of violating K.S.A. 21-6314 or 21-6315, one need only assess the risk of knowingly and intentionally recruiting membership to or deterring/punishing/retaliating for withdrawal from a group comprised of persons that committed/attempted/solicited two or more serious crimes having the having the commission/attempt/solicitation of serious crime as one of its primary activities.

K.S.A. 21-6313 through 21-6316 are not unconstitutional.

**D.    Plaintiffs fail to state a Due Process claim.**

It is inaccurate and misleading to attribute any restraints on liberty to the Gang List. Inclusion on the Gang List, in and of itself, carries no adverse consequence. Inclusion on the Gang List does not satisfy the element for any criminal offense.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No state shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. There are two components to the Fourteenth Amendment Due Process Clause—a substantive due process component and a procedural due process component. *United States v. Salerno*, 481 U.S. 739, 746 (1987). Procedural due process ensures that when a government deprives an individual of life, liberty, or property, the government must do so in a fair manner by providing the aggrieved person with notice and an adequate opportunity to be heard at

a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976). Substantive due process prevents the government from engaging in conduct that shocks the conscience or that interferes with rights implicit in the concept of ordered liberty. *Salerno*, 481 U.S. at 746. The Complaint asserts both procedural due process claims (*ECF 1, Count II, ¶¶ 194-203, Count III, ¶¶ 207-213*) and substantive due process claims (*ECF 1, Count IV, ¶¶ 214-224*).

### 1. Procedural due process.

Counts II and III of the complaint alleges the maintenance of the Gang List deprives plaintiffs of a due process right to challenge their inclusion on the Gang List. *ECF 1, Count II, ¶¶ 194-203, Count III, ¶¶ 207-213.*

A procedural-due-process claim requires two elements: "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014). As for the first element, the Court has emphasized that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). These interests require more than "a unilateral hope"; they require "a legitimate claim of entitlement." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal quotation marks omitted). State law creates such an entitlement if "the asserted right to property or liberty is mandated by state law when specified substantive predicates exist." *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). When the right is not mandated—that is, "if government officials may grant or deny it in their discretion"—there is no protected entitlement. *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1178 (10th Cir. 2016) (internal quotation marks omitted).

Maintaining gang membership information does not deprive Plaintiffs of a constitutionally protected interest. The harms allegedly stemming from designations on the Gang List do not

deprive Plaintiffs of a protected interest without due process. The allegations pertaining to bail, bond, conditions of release, and sentencing necessarily implicate a procedure through which due process protections are afforded.[11]

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979). There is no fundamental right be free of pretrial detention or other restraints on liberty in the pretrial context. *Salerno*, 481 U.S. at 748–49. Rather, the government has a regulatory interest in community safety that, in appropriate circumstances, can outweigh an individual's liberty interest. *Id.* (collecting cases). Individuals "may face substantial liberty restrictions as a result of the operation of our criminal justice system, they may be arrested and detained until a neutral magistrate determines whether probable cause exists and an arrestee may be incarcerated until trial if he presents a risk of flight, or a danger to witnesses."

*Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Wolfish*, 441 U.S. at 534).

> The Complaint alleges:
>
> Inclusion on the Gang List subjects an individual to a wide range of severe civil and criminal consequences, including enhanced bail and probation and parole terms, limited plea opportunities, extreme prejudice at criminal trials, widespread reputational harm, denial of associative and assembly rights, and discrimination in housing, licensing, and employment.

ECF 1, ¶ 6. This conclusory allegation, unsupported by facts, ought not be credited by the court.

*Iqbal*. at 679–80. Moreover, the allegation does not state a claim for deprivation of any protected

---

[11] The Complaint refers to "bail." ECF 1, ¶¶ 6, 25, 57, 96, 119, 168, 216, 220, 240, 241, and 243. "Bail" is "the security given for the purpose of insuring compliance with the terms of an appearance bond," K.S.A. 22-2202(e), whereas an "appearance bond" is "an agreement, with or without security, entered into by a person in custody by which the person is bound to comply with the conditions specified in the agreement." K.S.A. 22-2202(b).

interest without due process.

Mere inclusion on the Gang List does not subject any person to criminal liability and criminal liability cannot be imposed in the absence of due process protections for the criminal defendant. The Kansas Statutes Annotated, Chapter 22 provides the Kansas Code of Criminal Procedure, which governs proceedings in all criminal cases in the courts of the state of Kansas, and is "intended to provide for the just determination of every criminal proceeding." K.S.A. 22-2101, 22-2102, and 22-2103. Provided an individual's detention supported by probable cause, and provided the individual's continued detention (or restraints on pretrial liberty) are not "imposed for the purpose of punishment," but instead reasonably relate to a legitimate governmental objective, the policies are constitutional. *Dawson v. Bd. of Cty. Commissioners of Jefferson Cty., Colorado*, 732 Fed. Appx. 624, 632 (10th Cir. 2018) (quoting *Wolfish*, 441 U.S. at 538).

As explained in *Paul v. Davis*, 424 U.S. 693 (1976), the fact that a government document injures a person's reputation because it contains allegedly incorrect information is not enough to state a claim. In *Paul*, for example, the plaintiff was erroneously branded a criminal when he was identified as an "active shoplifter" on a police flyer, but the Supreme Court rejected his claim, even though the erroneous designation could have "deleterious" consequences. *Paul*, 424 U.S. at 711-12. An injury to reputation along does not implicate due process protections. *Id*. at 701; *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir.1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action."). A due process claim alleging placement on a government list caused reputational injury requires that a plaintiff satisfy a two-part test known as the "stigma-plus" standard. *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004); *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011).

The "stigma" part of this standard requires government defamation—that is the government made a false statement sufficiently derogatory to injure one's reputation. *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015); *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir.2012); *Gwinn*, 354 F.3d at 1216, 1224. The "plus" part of this standard requires a governmentally imposed burden that significantly altered the plaintiff's status as a matter of state law. *Brown*, 662 F.3d at 1168; *Gwinn*, 354 F.3d at 1224; *Paul*, 424 U.S. at 710–11.

A listing on the Gang List does not deprive any plaintiff of any constitutionally protected interest without due process. Placement on the Gang List does not alter one's status as a matter of state law. One is not deprived of liberty merely because their name is on the Gang List. *See, e.g., Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1185 (10th Cir. 2016) (even if false, the government's statement did not deprive plaintiff of a protected interest). Plaintiffs show neither stigma nor a "plus" deprivation resulting from it. As to stigma, Plaintiffs do not point to any specific way in which their gang designations harmed their reputations among the public. They complain instead that their designations may have been part of the basis that the courts and/or other law enforcement agencies were influenced in making pretrial release or sentencing decisions.

The alleged reputational harm arising solely from placement on the Gang List does not meet the stigma-plus standard. *See, e.g., Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1559 (10th Cir. 1993) ("Damage to prospective employment opportunities is too intangible to constitute deprivation of a liberty interest"); *Martin Marietta Materials, Inc. v. KDOT*, 810 F.3d at 1186 (loss of business from KDOT did not violate a liberty interest); *Valmonte*, 18 F.3d at 1001 (negative impact on job prospects and social relationships are insufficient to support a cognizable liberty interest).

Article 28 of Chapter 22 of the Kansas Statutes Annotated provide for the release and conditions of release of persons charged with crimes (including bond).

> **Declaration of purpose**. The purpose of this article is to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges or to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest.

K.S.A. 22-2801. Appearance bonds are established by a judge at the defendant's first appearance.

K.S.A. 22-2802. Pretrial detainees are afforded the right to appear before a judge and the right to counsel for the determination of conditions of release. K.S.A. 22-2802(14). Inclusion on the Gang List does not prescribe a judge's discretion when setting bond.

> 21-6316. Criminal street gang member; bail; exceptions. When a criminal street gang member is arrested for a person felony, bail shall be at least $50,000 cash or surety, and such person shall not be released upon the person's own recognizance pursuant to K.S.A. 22-2802, and amendments thereto, unless the court determines on the record that the defendant is not likely to reoffend, an appropriate intensive pre-trial supervision program is available and the defendant agrees to comply with the mandate of such pre-trial supervision.

Inclusion on the Gang List does not, in and of itself, satisfy the statutory definition of criminal street gang member. Under K.S.A. 22-2802(6), the court has to release a person charged with a crime "upon the person's own recognizance by guaranteeing payment of the amount of the bond for the person's failure to comply with all requirements to appear in court. The release of a person charged with a crime upon the person's own recognizance shall not require the deposit of any cash by the person. Thus, while the bail may be set at $50,000—the court has the discretion to release the person without requiring a deposit of cash by anyone. In that instance, the bail amount is not forfeited except for failure to comply with all requirements to appear in court.

K.S.A. 22-3424(a) requires that any "judgment shall be rendered and sentence imposed in open court." And K.S.A. 22-3424(e) requires a hearing before sentence is imposed and specifies that defendant's counsel and the defendant personally be afforded counsel an opportunity to speak

on behalf of the defendant and to present any evidence in mitigation of punishment. Disposition, or sentence, for a person found guilty of a crime is controlled by statute. K.S.A. 21-6604 (authorized dispositions including prison, fines, probation, correctional services, etc.). K.S.A. 21-6607 authorizes a court to "impose *any* conditions of probation, suspension of sentence or assignment to a community correctional services program that the court deems proper." (Emphasis added.)

### 2. Substantive due process.

Count IV of the complaint alleges K.S.A. 21-6313 and Policy 527 violate substantive due process. *ECF 1, ¶¶ 214-224*. The complaint alleges inclusion on the Gang List "leads to significant deprivations of life, liberty and property." *Id*., ¶ 216 (enumerating alleged deprivations of [1] frequent, prolonged, intrusive, and hostile encounters with law enforcement; [2] unreasonable searches of property; [3] unjustified arrests; [4] unwarranted online and in-person surveillance; [5] identification by and increased attention from WPD officers using "Signal 33" [a radio signal notifying officers a records check reveals an individual is listed by the WPD computer as a gang member or associate]; [6] allegations of gang membership in arrest affidavits and news media; [7] increased bail leading to prolonged imprisonment and financial hardship; [8] severely restrictive probation, pretrial release, and parole conditions; [9] re-arrest, detention, and incarceration for violations of restrictive release conditions; [10] diminished plea offers in connection with criminal charges; [11]  introduction of gang membership as evidence in criminal proceedings, leading to extreme prejudice, conviction, and incarceration; [12] representation of gang membership to other public and private entities, leading to misidentification of Plaintiffs as gang members in background checks and news articles or other public sources; and [13] loss of educational, employment, and housing opportunities).

The complaint alleges inclusion on the Gang List is stigmatizing "because other law

enforcement entities have access to the Gang List, and inclusion on the Gang List may come up in background checks for employment, housing, or benefits, individuals." *Id.*, *¶ 217*. The complaint also alleges the Gang List deprives plaintiffs of their fundamental rights of association and assembly. *Id.*, *¶¶ 111, 181.d.*

"Substantive due process bars 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011) (quotation omitted). Substantive due process limits government action both in its legislative and executive capacities. Substantive due process violations have been found where government action infringes a "fundamental" right without a "compelling" government purpose, *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997), as well as where government action deprives a person of life, liberty, or property in a manner so arbitrary it "shocks the conscience," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The court applies the fundamental-rights approach to challenges of legislative action, and the shocks-the-conscience approach to challenges seeking relief for tortious executive action. *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018).

Evaluation of whether a particular claimed fundamental right or liberty interest is afforded substantive due process protection entitled to heightened protection against government interference, a court applies the following two-step analysis: (1) assess whether the claimed fundamental right or liberty is so rooted in the traditions and conscience of our people as to be ranked as fundamental and implicit in the concept of ordered liberty; and (2) undertake a careful description or categorization of the asserted fundamental liberty interest at issue. *Glucksberg*, 521 U.S. at 720-21. Under substantive due-process, analysis proceeds in three steps.

First, the reviewing court must determine whether a fundamental right is at stake either because the Supreme Court or the Tenth Circuit has already determined that it exists or because the right claimed to have been infringed by the government is one that is objectively among those "deeply rooted in this Nation's history and

tradition" and "implicit in the concept of ordered liberty" such that it is "fundamental." *Glucksberg*, 521 U.S. at 720–21, 117 S.Ct. 2258. Second, the court must determine whether the claimed right—fundamental or not—has been infringed through either total prohibition or "direct[ ] and substantial[ ]" interference. *Zablocki v. Redhail*, 434 U.S. 374, 387 (1978). Third, if the right infringed is a fundamental right, the court must determine whether the government has met its burden to show that the law or government action interfering with the right is narrowly tailored to achieve a compelling government purpose. Id. at 388. If the right is not fundamental, we apply rational basis review. *Reno v. Flores*, 507 U.S. 292, 305 (1993) ("[N]arrow tailoring is required only when fundamental rights are involved.").

*Abdi v. Wray*, 942 F.3d 1019, 1028 (10th Cir. 2019).

First, however, is principal that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997). The Supreme Court has "always been reluctant to expand the concept of substantive due process," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Thus, the Supreme Court held in *Graham v. Connor*, 490 U.S. 386, (1989), that where "particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of REHNQUIST, C.J.) (quoting Graham v. Connor, 490 U.S. at 395). *See also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ( "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.")

The rights or liberties accorded substantive due process protection are not fixed or final. *Rochin v. California*, 342 U.S. 165, 170 (1952). Substantive due process protects personal rights or liberties such as "'personal decisions relating to marriage, procreation, contraception, family

relationships, child rearing, and education.'" *Houck v. City of Prairie Village*, 978 F.Supp.1397, 1405 (D. Kan. 1997) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d. Cir. 1995)). Rather, fundamental rights afforded substantive due process protection are "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (internal quotations omitted).

To the extent the Complaint identifies a fundamental right, neither K.S.A. 21-6313, *et seq.* nor the Gang List violates any fundamental right. The analysis to reach that conclusion, necessitates (1) identification of applicable law, (2) definition of the fundamental rights at issue, to the extent needed, and (3) note that the conclude that any fundamental rights at issue have not been infringed by the conduct alleged in the complaint. *Abdi v. Wray*, 942 F.3d at 1026.

The only fundamental rights explicitly identified in the complaint are the "fundamental rights of association and assembly." *ECF 1, ¶ 111*. Presumably, the list of deprivations enumerated in ¶ 216 of the Complaint are intended to implicate fundamental rights.[12] When we break these down, however, we find:

1.    The right finds an explicit textual source in another Amendment (and, thus, is not analyzed under the generalized notion of substantive due process, *Graham v. Connor*, 490 U.S. at 395; *Albright v. Oliver*, 510 U.S. at 273);

---

[12] *See ECF 1, ¶ 216* ("[1] frequent, prolonged, intrusive, and hostile encounters with law enforcement; [2] unreasonable searches of property; [3] unjustified arrests; [4] unwarranted online and in-person surveillance; [5] identification by and increased attention from WPD officers using "Signal 33" [a radio signal notifying officers a records check reveals an individual is listed by the WPD computer as a gang member or associate]; [6] allegations of gang membership in arrest affidavits and news media; [7] increased bail leading to prolonged imprisonment and financial hardship; [8] severely restrictive probation, pretrial release, and parole conditions; [9] re-arrest, detention, and incarceration for violations of restrictive release conditions; [10] diminished plea offers in connection with criminal charges; [11] introduction of gang membership as evidence in criminal proceedings, leading to extreme prejudice, conviction, and incarceration; [12] representation of gang membership to other public and private entities, leading to misidentification of Plaintiffs as gang members in background checks and news articles or other public sources; and [13] loss of educational, employment, and housing opportunities").

2.     There is no fundamental right at issue; or

3.     The fundamental right alleged is not violated by the conduct of the defendant.

The first five of the enumerated "deprivations" clearly fall within the explicit text of the Fourth Amendment which ensures the right for people to be secure against unreasonable searches and seizure. U.S. Const. amend IV. Encounters with law enforcement, searches of property, arrests, surveillance by government officials, and "attention" by law enforcement officers all fall within traditional Fourth Amendment Analysis. There are three categories of police-citizen encounters:

> (1) consensual encounters which do not implicate the Fourth Amendment ... (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity ... and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.

*United States v. Davis*, 94 F.3d 1465, 1467–68 (10th Cir. 1996) (citations omitted). Searches require a warrant and "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

The sixth category of enumerated "deprivations" is a hybrid that partially fall within the explicit text of the Fourth Amendment (allegations of gang membership in arrest affidavits) whereas allegations of gang membership in news media do not. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The latter half of category 6 and categories 12 and 13 (disclosure of gang membership), do not implicate the Fourth Amendment but they do not implicate substantive due process either. Such a claim is foreclosed by *Paul v. Davis*, 424 U.S. at 711–12.

Categories seven through eleven (bail and imprisonment; restrictions on probation, pretrial

release, and parole; arrest, detention, and incarceration for parole/probation/bond violations; plea

offers; evidence in criminal proceedings) are governed by the procedural due process under the

Due Process Clause of the Fourteenth Amendment. *Wolfish*, 441 U.S. at 535

Plaintiff's allegations of stigmatization are speculative. *See, e.g.*, *ECF 1, ¶ 217* (including

the Gang List. "may come up in background checks for employment, housing, or benefits").

The Complaint does not state a due process claim—procedural or substantive.

**E.     Equal Protection**

Count V of the complaint alleges the creation and maintenance of the Gang List violates

Plaintiff's rights under the Equal Protection Clause under the Fourteenth Amendment. *ECF 1,*

*Count V, ¶¶ 225-236.*

The Fourteenth Amendment also provides no state shall "deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal

Protection Clause, the law cannot be administered "with an evil eye and an unequal hand." *Yick*

*Wo v. Hopkins*, 118 U.S. 356, 373 (1886). There is no general constitutional right to police

protection, the states are prohibited under the Equal Protection clause from irrational

discrimination in the police protection they elect to provide. *Watson v. City of Kansas City*, 857

F.2d 690, 694 (10th Cir. 1988).

"Proof of racially discriminatory intent or purpose is required to show a violation of the

Equal Protection Clause." *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265

(1977). The plaintiff must demonstrate discriminatory intent; although the discriminatory purpose

need not be the only purpose, it must be a motivating factor in the challenged decision. *Villanueva*

*v. Carere*, 85 F.3d 481, 485 (10th Cir.1996); *Watson*, 857 F.2d at 694.

Official action does not violate the Equal Protection Clause solely because it results in a

racially disproportionate or disparate impact. *Washington v. Davis*, 426 U.S. 229, 242 (1976);

*Arlington Heights*, 429 U.S. at 264–65. An equal protection claim involving a suspect classification involves two components. First, a plaintiff "must show that he was singled out [for punishment] while others similarly situated were not." *United States v. Johnson*, 765 F.Supp. 658, 660 (D.Colo. 1991). As set forth in the Complaint, the stated intent is for WPD officers to monitor documented gang members "with the intent of removing the offender from the community." ECF 1, ¶ 25. The Complaint alleges the Gang List polices "have a discriminatory *effect*." ECF 1, ¶ 227 (emphasis added).

Selective prosecution violates the equal protection component of the due process clause if the prosecution is deliberately based on an arbitrary, unjustifiable standard such as race or religion. *Oyler v. Boles*, 368 U.S. 448, 456 (1962); *United States v. Dukehart*, 687 F.2d 1301, 1303 (10th Cir. 1982). A prima facie case of such a constitutional violation requires satisfaction a two-part test that plaintiff must first show that the plaintiff was singled out for prosecution while others similarly situated were not, and second, the plaintiff he must establish the prosecution was based deliberately and invidiously on an unconstitutional consideration. *United States v. Davis*, 339 F.3d 1223, 1228 n.3 (10th Cir. 2003); *National Commodity and Barter Assoc'n v. Gibbs*, 886 F.2d 1240, 1248 n. 7 (10th Cir. 1989); *C.E. Carlson, Inc. v. Securities and Exchange Comm'n*, 859 F.2d 1429, 1437–38 (10th Cir. 1988); *United States v. Bohrer*, 807 F.2d 159, 161 (10th Cir.1986); *Dukehart*, 687 F.2d at 1303.

First, inclusion on the Gang List, in of itself, does not cause any injury. Gang Membership is not, itself, unlawful. Likewise, being on the Gang List does not, itself, suffice as evidence for the criminal statutes.

The complaint does not allege any specific facts upon which to base any claim of racial animus. The complaint instead he seeks to establish a prima facie case through statistics alone.

*ECF 1, ¶ 7* (alleging African-American residents comprise 10.9% of the City's population but

60% of the Gang List; LatinX comprise 17.2% of the population and 25% of the Gang List; 6% of

the Gang List are Caucasian). Such statistical evidence cannot be used to show discriminatory

intent with a selective prosecution claim, let alone when challenging law enforcement intelligence

gathering. Statistical evidence may be used to show discriminatory intent only in "certain limited

contexts." *McCleskey v. Kemp*, 481 U.S. 279, 293–94 (1987).

> The [United States Supreme] Court has accepted statistics as proof of intent to
> discriminate in certain limited contexts. First, this Court has accepted statistical
> disparities as proof of an equal protection violation in the selection of the jury
> venire in a particular district. Although statistical proof normally must present a
> "stark" pattern to be accepted as the sole proof of discriminatory intent under the
> Constitution,12 Arlington Heights **1768 v. *294 Metropolitan Housing Dev.
> Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977), "[b]ecause of
> the nature of the jury-selection task, ... we have permitted a finding of constitutional
> violation even when the statistical pattern does not approach [such] extremes." Id.,
> at 266, n. 13, 97 S.Ct., at 563, n. 13.13 Second, this Court has accepted statistics in
> the form of multiple-regression analysis to prove statutory violations under Title
> VII of the Civil Rights Act of 1964. Bazemore v. Friday, 478 U.S. 385, 400–401,
> 106 S.Ct. 3000, 3009, 92 L.Ed.2d 315 (1986) (opinion of BRENNAN, J.,
> concurring in part).

*Id.* "But the nature of the law enforcement, and the relationship of the statistics to that decision,

are fundamentally different from the corresponding elements in the venire-selection or Title VII

cases." *Id.*, at 294.

The Complaint does not state an equal protection claim.

**F.    First Amendment Association & Expression**

Counts VI and VII the complaint alleges K.S.A. 21-6313 and Policy 527 unconstitutionally

of violate Plaintiffs' rights under the First Amendment. *ECF 1, Count VI, ¶¶ 237-247, Count VII,*

*¶¶ 248-262*, claiming they (1) unconstitutionally proscribe expressive and associative activity,

*ECF 1, ¶ 238*; (2) unconstitutionally chill expressive and associative activity, *Id.*, ¶ 249; and (3)

unconstitutionally chill intimate associations among private persons. *Id.*, ¶ 250.

a.    **Analysis of a claim of deprivation of freedom of speech and expression.**

The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. amend. 1. The First Amendment prohibition of laws abridging the freedom of speech limits the government's power to regulate speech based on its substantive content. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*; *see also R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. The phrase "content based" has a commonsense meaning requiring that a court "to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* Obvious facial distinctions define regulated speech by the particular subject matter whereas more subtle distinctions define regulated speech by its function or purpose but either distinction is "drawn based on the message a speaker conveys" and subject to strict scrutiny. *Id.*, at 163–64.

The level of scrutiny—strict or intermediate—applied to a regulation affecting speech first depends on whether the regulation is content-neutral or content-based. Strict scrutiny applies to content-based regulations—those that suppress, disadvantage, or impose differential burdens on speech because of its content. A content-based regulation may be upheld only if it is necessary to serve a compelling state interest and employs the least speech-restrictive means to achieve its goal. *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). Intermediate scrutiny applies to (1) content-neutral time, place, and manner regulations and (2) regulations of speech that can be justified without reference to its content. *Id.* Such regulations are permissible if they

promote a significant governmental interest and do not burden substantially more speech than necessary to further that interest. *Id*.

When laws define regulated speech by particular subject matter or by its function or purpose, they are subject to strict scrutiny. The same is true for laws that, though facially content neutral, cannot be "'justified without reference to the content of the regulated speech,'" or were adopted by the government " because of disagreement with the message" conveyed. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Courts apply strict scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). Other types of regulations receive intermediate scrutiny, including content-neutral regulations of the time, place, and manner of speech, as well as regulations of speech that can be justified without reference to its content. *Turner Broad. Sys.*, 512 U.S. at 642; *Ward v. Rock Against Racism*, 491 U.S. at 791. Such regulations are permissible if they promote a significant governmental interest and do not burden substantially more speech than necessary to further that interest. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014).

To be narrowly tailored, a content-neutral regulation must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. A content-neutral regulation, unlike a content-based restriction of speech, "need not be the least restrictive or least intrusive means of" serving the government's interests. *Id*., at 798. But the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id*., at 799.

A government regulation of speech or expressive activity is content-neutral even if it has an incidental effect on some speakers or messages but not others, provided it serves some purpose

unrelated to content of regulated speech. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'" *Id.* (emphasis added in original) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). A law that is facially content neutral is considered content-if the law that cannot be "'justified without reference to the content of the regulated speech,'" or that were adopted "because of disagreement with the message" conveyed by the speech. *Ward*, 491 U.S. at 791 (quoting *Clark*, 468 U.S. at 293.

A law directed at the "secondary effects" that tend to accompany such expression, so that it is "justified without reference to the content" of the expression, the regulation will be subject to intermediate scrutiny. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986); *see also R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 389–90 (1992) (invalidating Bias–Motivated Crime Ordinance, which prohibited knowing display of a symbol which arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender.).

The City and the State of Kansas have recognized compelling interest in ensuring public order and the safety of persons and property. U.S. Const., amend. IX (reserving police powers to the states); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994); *Milk Wagon Drivers Union of Chicago, Loc. 753 v. Meadowmoor Dairies*, 312 U.S. 287, 294–95 (1941) (upholding injunction directed at violence and coercion occurring during labor picketing notwithstanding effect on expressive activity).

The challenged statutes and policy are content neutral  and narrowly tailored

**b.      Analysis of a claim of deprivation of freedom of association.**

Freedom of association is guaranteed in two distinct contexts: (1) the right to enter into and maintain certain intimate human relationships, such as marriage, close family relationships, and child-rearing; and (2) the right to associate for the purpose of engaging in those activities protected

by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).

A plaintiff may suffer a constitutional injury from a statute when the plaintiff is "chilled":

(1)     from engaging in constitutionally protected conduct which is proscribed by statute because of a current or past prosecution for violating the statute and there exists a credible threat of prosecution under that statute or

(2)     the First Amendment plaintiff is injured because of the statute's chilling effect on the plaintiff's desire to engage in protected conduct but faces a credible threat of future prosecution for doing so.

*Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003) (*Ward I*). *See also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (there is an injury in the First Amendment context where a plaintiff is chilled/foregoes constitutionally protected expression to avoid enforcement consequences).

The complaint alleges Progeny "members have refrained from organizing, conducting, and attending peaceable assemblies where those included on the WPD's Gang List are likely to be present" and that plaintiffs have "refrained from associating with certain family members and intimate friends," posting photos on social media, or "patronizing businesses" due to fear that such conduct/association might cause arrest, inclusion or renewal on the WPD's Gang List. *ECF 1, ¶¶ 256-260*. The complaint does not allege any plaintiff or person has been prosecuted for the exercise of constitutionally protected conduct nor does the complaint allege any plaintiff or person refrains from any statutorily prohibited conduct.

1.     **Direct prohibition**

a.     **Freedom of speech and expression.**

K.S.A. 21-6313 through 21-6316 is justified without reference or regard to any speech or expressive conduct. Policy 527 and K.S.A. 21-6313, *et seq.* do not criminalize or penalize any speech or expressive activity. K.S.A. 21-6314 criminalizes recruitment to a criminal organization

when that recruitment necessarily carries with it the commission of a crime. K.S.A. 21-6315 criminalizes threats of injury or property damages connected with withdrawal from a criminal organization. K.S.A. 21-6316 imposes a minimum bail only upon a criminal street gang member arrested for a person felony while requiring, before releasing such persons without requiring payment or surety for that bail, that the court assess the likelihood of the detainee will reoffend and the availability of appropriate intensive pre-trial supervision.

### b.      Freedom of association.

Policy 527 does not proscribe any conduct or activity. K.S.A. 21-6313 through K.S.A. 21-6316 do not proscribe expressive and associative activity. These statutes are discussed above, *see* § IV.C, *supra pp. 16-25*. K.S.A. 21-6313 is a definitions statute that does not define a crime nor does it proscribe any conduct or activity. K.S.A. 21-6314 defines the crime of recruiting criminal street gang membership which has a scienter requirement and necessarily requires the anticipation that an independent criminal act will be committed by or upon the person recruited. K.S.A. 21-6315 defines the crime of criminal street gang intimidation which, again, has a scienter requirement that necessarily contemplates a criminal threat motivated by criminal street gang membership. K.S.A. 21-6316 imposes a minimum mandatory bail but giving the court discretion to release persons on their own recognizance.

### 2.      Chilling effect.

As set forth above, Policy 527 does not proscribe any conduct or activity and K.S.A. 21-6313 through K.S.A. 21-6316 do not proscribe expressive and associative activity. Because the challenged policy and statutes do not proscribe constitutionally protected conduct, plaintiffs do not plausibly allege they are chilled from engaging constitutionally protected conduct because of Policy 527 or the statutes. As the plaintiffs do not allege any desire or intention to engage in the intentional conduct required for prosecution under K.S.A. 21-6314 and/or 21-6315, there is no

credible threat of prosecution thereunder. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S.

289, 298 (1979) (plaintiff generally standing only if he or she "has alleged an intention to engage

in a course of conduct arguably affected with a constitutional interest, but proscribed by statute,

and there exists a credible threat of prosecution thereunder."); *Laird v. Tatum*, 408 U.S. 1, 13–14

(1972) (allegations of subjective chill inadequate absent specific present objective harm or a threat

of specific future harm).

The Complaint does not state a First Amendment claim.

**G.    The official capacity claims against Chief Ramsay and Lt. Beard are redundant of those against the City of Wichita and should be dismissed.**

A suit brought against an individual in his or her official capacity is, in reality, "another

way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*,

473 U.S. 159, 165 (1985). An official capacity suit against an officer is "not a suit against the

official but rather a suit against the official's office. As such, it is no different from a suit against

the state itself." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) (citations

omitted).

The claims against Chief Ramsay and Lt. Beard in their official capacities are redundant

of the claims against the City and should be dismissed. *See e.g., Rubio v. Turner U.S.D. No. 202*,

453 F.Supp.2d 1295, 1300 (D. Kan. 2006) (dismissing official capacity claims against officials

where government entity is also a party because such claims are duplicative); *Burns v. Bd. of

County Comm'rs of the County of Jackson*, 197 F.Supp.2d 1278, 1296-97 (D. Kan. 2002)

(redundant official capacity claims dismissed as matter of judicial economy); *Sims v. Unified Gov't

of Wyandotte County/Kansas City*, 120 F.Supp.2d 938, 944-45 (D. Kan. 2000) ("When a plaintiff

names both a municipality and a municipal officer in his official capacity as defendants in an

action, the suit against the officer is redundant, confusing, and unnecessary and should be

dismissed."); *Quintero v. City of Wichita*, No. 15-1326-EFM-GEB, 2016 WL 5871883, at *1 (D.

Kan. Oct. 7, 2016) (quoting *Sims*, 120 F.Supp.2d at 944).

**F.     No underlying constitutional violation bars a *Monell* claim.**

"A municipality may not be held liable where there was no underlying constitutional

violation by any of its officers." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658,

690-91 (1978) (municipal liability under § 1983 requires that unconstitutional action implementing

officially adopted policy or custom). "A municipality may not be held liable where there was no

underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774,

782 (10th Cir. 1993). The Complaint does not state any underlying constitutional violation by any

City officer—there is no basis for a *Monell* claim.

**Conclusion**

Defendants request, for the foregoing reasons, that plaintiffs claims be dismissed in their

entirety.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/David R. Cooper**

David R. Cooper                              #16690
Charles E. Branson                           #17376
**Attorneys for Defendants**

JENNIFER L. MAGAÑA, #15519
City Attorney
SHARON L. DICKGRAFE, #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, Kansas 67202
P: (316) 268-4681 | F: (316) 268-4335
sdickgrafe@wichita.gov
**Attorneys for City of Wichita**

### Certificate of Service

I hereby certify that I electronically filed the foregoing on July 9, 2021, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

Teresa A. Woody, KS #16949 | twoody@kansasappleseed.org
Sharon Brett, KS #28696 | sbrett@aclukansas.org
Mitchell F. Engel, KSD #78766 | mengel@shb.com |
Jordan C. Baehr, KSD 327213 | jbaehr@shb.com
Thomas J. Sullivan | tsullivan@shb.com
Joshua M. Pierson | jpierson@aclukansas.org
**Attorney for Plaintiffs**

**s/David R. Cooper@**