IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc.,
CHRISTOPHER COOPER, ELBERT COSTELLO,
MARTEL COSTELLO, and JEREMY LEVY, JR.,
on behalf of themselves and others similarly situated,

    Plaintiffs,

vs.      Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS, CHIEF GORDON
RAMSAY, in his official capacity as Chief of the
Wichita Police Department, and LIEUTENANT
CHAD BEARD, in his official capacity as Supervisor
of the Gang Unit of the Wichita Police Department,

    Defendants.

**Reply in Support of Motion to Dismiss**

Defendants submit this reply in support of their motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P 12(b)(1), and for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P 12(b)(6). The complaint fails to plead facts or illustrate how inclusion in a law enforcement database, in and of itself, causes any cognizable injury to any plaintiff. Plaintiffs lack standing and fail to state a claim that this court can remedy.

**Arguments and Authorities**

**I.**      **Standard for a motion to dismiss.**

Plaintiff does not dispute the applicable standards of review.

**II.    Dismissal is appropriate because this court lacks subject matter jurisdiction.**

Article III standing requires three things: 1) an injury in fact, 2) that the injury is 'fairly traceable' to the defendant's actions; and 3) the injury is likely to be remedied by a favorable judicial decision. *See ECF 14*, p. 7. Viewing the facts alleged in the light most favorable to plaintiffs, the complaint fails to show the alleged injuries are a direct result of the Wichita Police Department's ('WPD') gang database. The complaint posits that WPD Policy 527 inflicts deprivations of liberty and/or First Amendment associational/assembly freedoms without due process. A plain reading of the policy shows Policy 527 does not regulate the conduct of any person other than Wichita police officers.

- § I.A.1, requires officers to "monitor documented gang members and associates for any violations of their probation/parole, bond, and pretrial restrictions." § I.A.2 requires officers to maintain confidentiality of the Gang List. § I.A.I.3 requires officer to identified gang members or associates by using "Signal 33."

- § I.B requires that nominations for persons to be researched by a member of the Gang/Felony Assault Section or VCCRT and that individuals be added to the Gang List if they meet the criteria defined in K.S.A. 21-6313.

- § I.C.4 requires that an officer arresting a criminal street gang member a person felony to check the records to see if the arrestee is documented as a criminal street gang member or associate and, if so, include that fact in the probable cause affidavit.

- § I.D.1 requires that the Records Bureau notify officers by use of Signal 33 if a records check reveals an individual is listed as a gang member or associate.

- § I.E.2 requires officers to notify a parent or guardian if a juvenile meets the Criminal Street Gang Member or Associate criteria in K.S.A. 21-631 and offer information of intervention options and resources.

    A.    **The individual Plaintiffs lack standing.**

The response argues Plaintiffs' injuries are ongoing and thereby require injunctive relief. *See ECF 26*, p. 14. The fallacy with this argument is still that there is no causation between the use of a database to track gang membership and Plaintiff's alleged harms.

The harms alleged by plaintiffs are consequences of police-citizen encounters that do not

violate the constitution. *See ECF pp. 8-11*. Nothing in K.S.A. 21-6313, *et seq*. defines mandatory probation conditions. Nor do the statutes include mandatory post release supervision requirements. While K.S.A. 21-6316 requires bail to be at least $50,000 for a criminal street gang member arrested for a person felony, the statute affords discretion to deviate from that minimum bail if the court determines there is a reason to do so.

The alleged harms to plaintiffs are a result of discretionary decisions made by judges, corrections officers, and other mandatory statutes—each of which occur under circumstances which afford due process before the "harm" is imposed and/or result from a law enforcement encounter which does not violate the rights of any plaintiff. For example, the response argues that "Mr. Cooper has been repeatedly stopped for minor or imaginary traffic infractions" and "WPD officers routinely stop [E. Costello] for alleged minor traffic infractions and subject him to invasive questioning in excess of the authorization of K.S.A. 22-3717(k)(3)." *ECF 26*, pp. 16, 18 (citing ECF 1, ¶¶ 123, 132). The *facts* alleged in the complaint are that Cooper "has been stopped repeatedly for traffic infractions, almost always for failure to signal within 100 feet of an intersection," *ECF 1*, ¶ 123, and "Costello was—and continues to be—routinely stopped by the WPD for minor traffic violations. For example, WPD officers routinely pull Mr. Costello over for infractions such as 'not signaling within 100 feet,'" and then subject Mr. Costello to invasive questioning." *Id*., ¶ 132.

The response contends defendants' motion is based on "unsubstantiated and non-evidentiary statements [amounting to} a general denial of the facts alleged" which they suggest "should be ignored by the court." *EFC 26, p. 5 n. 1*. Not so. Defendants' opening brief merely points out the lack of *factual* allegations of any law enforcement encounter with any plaintiff that is unreasonable under the Fourth Amendment. The contacts alleged by each individual plaintiff

whether connected to WPD's gang database or not is not a legally cognizable "harm" where the contact does not violate the Fourth Amendment.

All persons transitioning from prison into the public has a mandatory term of post-release supervision. See K.S.A. 22-3717. All persons on post-release supervision are subject to searches of themselves, their vehicle, residence, and property, by any law enforcement officer based on reasonable suspicion. *Id*. It is the court imposing judgment on each individual plaintiff that determines the conditions of probation, not inclusion in WPD's gang database.

The response applies conclusory labels ("harassment, surveillance, and punitive policing simply because they are on the Gang List" and "incessant harassment, and prejudicial treatment") while failing to identify or articulate any police encounter that was not reasonable under the Fourth Amendment. *ECF 26*, pp. 3, 13. The response also attempts to convert this action into an impermissible collateral attack on plaintiff Levy's murder conviction. *See ECF 26*, p. 21 (arguing that evidence of Levy's gang affiliation was improperly admitted during his trial).

  **B.**  **Progeny has neither associational nor organization standing.**

As the individual plaintiffs each lack standing, Progeny cannot maintain associational standing using the three-prong test established in *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also ECF 14*, pp 8-11.

The response contends organizational standing exists for Progeny because of "harm" caused by diverting resources from its core purpose to address unlawful conduct. *See ECF 26*, p.10-12. Progeny alleges "*all* of Progeny's members face a real and immediate threat of punishment for associating with a designated gang member." *EFC 26*, p. 7 (emphasis added). Plaintiff argues that, as an organization, the gang database prevents them from holding meetings and being able to help certain people in Wichita. EFC 26, 11. This is untrue.

Inclusion in the gang database, in and of itself, carries no penalty. When conditions of

pretrial release, probation, and/or post-release supervision forbid association with known gang member such conditions are imposed with due process—*i.e.*, with notice and an opportunity to be heard. Progeny is a "partnership" of various community organizations. *ECF 1*, p. 10. If Progeny's members face a "threat of punishment for associating with a designated gang member" that threat arises from individualized conditions of pretrial release, probation, and/or post-release supervision after being afforded due process, not from inclusion in WPD's gang database. Progeny's response suggests all members of Progeny are on pretrial release, probation or post-release supervision Assuming this to be true, limitation to an individual's freedom of association results from a court-ordered sanction, rather than mere inclusion in a law enforcement database.

Associating with a person included in WPD's gang database is not a violation of any federal or state statute. Mere association with a verified gang member does not, by itself, meet the statutory definition of criminal gang membership. *See* K.S.A. 21-6313 (more than one criterion must be established). Progeny's assertion that standing is established because all members face punishment demonstrates a misunderstanding of K.S.A. 21-6313 and its requirements.

Progeny argues a "negative stigma brought to Progeny that may dissuade community members from attending its events." *ECF 26*, p. 7. But again, Progeny does not demonstrate of how WPD's policies cause this harm. Progeny supplies only conclusory assumptions that community members would attend an event but for the existence of a gang database. See ECF 14, pp. 7-8.

All the individual plaintiffs are adults, but Progeny's mission is to assist "youth touched by the juvenile justice system." *ECF 1*, ¶ 32. It is logical to believe the community understand that some of the youth Progeny supports may be involved with a gang. See e.g., ECF 14, pp. 4-5. Any 'stigma' that Progeny experiences exists regardless of a database being used by law enforcement

==to share gang intelligence.==

Progeny also argues there is an inability to hold meetings because of the risk posed to attendees in being affiliated with gang members. *ECF 26*, p. 11. As discussed above, the "risk" does not arise merely from inclusion in the WPD gang database but rather from conditions imposed by a court for pretrial release, probation and/or post-release supervision. Under K.S.A. 21-6313, more than one criterion must be established to meet the definition of a criminal gang member. Further, any limitations on associations exist independent of gang membership designation. *See ECF 14*, pp. 8-11.

Because the existence of a gang database does not create a threat to Progeny's members, frustration of the organization's mission does not result. Additionally, any 'diversion of resources' Progeny chooses to expend to 'counteract the allegedly unlawful action' is voluntary, not mandated. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). Progeny has no direct organizational standing.

Plaintiffs fail to state a claim for which relief may be granted.

Plaintiff's response fails to demonstrate that a removal of the database remedies their alleged harm. Eliminating WDP's use of a gang database changes nothing for Plaintiffs. Each harm alleged is a result of criminal behavior engaged in by each individual plaintiff. The harms claimed by Progeny reflect the consequences of their member's prior illegal conduct that resulted in constitutional police-citizen encounters. See ECF pp. 8-11.

The court draws on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. A moving party for summary judgment need not disprove the nonmoving party's claims; rather, the movant need only point out a lack of evidence on an essential element of the other party's claim to establish it is entitlement to summary judgment. *See Adamson v. Multi Cmty. Diversified Servs.*,

*Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

The individual plaintiffs list three specific injuries they trace to the database: the issuance of a high bond amount, incessant harassment, and prejudicial treatment from stigmatizing designations. ECF 26, p. 13, 36-37. The complaint does not, however, tie these conclusory labels to factual allegations of any deprivation of life, liberty or property without due process.

Bond amounts fall within the discretion of the district court. *See State v. Foy*, 224 Kan. 558, 562, 582 P.2d 281 (1978) (No hard and fast rule can be laid down for fixing amount of bail on criminal charge, and each case must be governed by its own facts and circumstances, the amount of bail resting within sound discretion of presiding magistrate.). The courts have broad discretion to impose conditions on supervised release. *United States v. Burns*, 775 F.3d 1221, 1223 (10th Cir. 2014) (citing *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011)). By statute, parolees and persons on postrelease supervision, are required to agree in writing to be "subject to searches of the person and the person's effects, vehicle, residence and property by any law enforcement officer based on reasonable suspicion of the person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity." K.S.A. 22-3717(k)(3). *See also* 18 U.S.C. § 3553(a)(2)(B)-(D); *see also* 18 U.S.C. § 1030(e)(1) ("your person, property, house, residence, vehicle, papers, computers other electronic communications or data storage devices or media, or office" subject to search under a reasonable suspicion threshold). Courts may impose restrictions upon movement and association as a condition of pretrial release. K.S.A. 22-2802(1)(b) (court may impose restrictions on the travel, association or place of abode); 18 U.S.C. § 3563(b)(6) (court may require that the defendant "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons."). These constitutionally permissible restrictions include a prohibition on associating with other convicted felons, even

family members, absent permission from a probation officer. *See e.g., United States v. Llantada*, 815 F.3d 679 (10th Cir. 2016).

It is these constitutionally permissible restrictions associated with pretrial release, parole and/or post-release supervision that plaintiffs label as the "harm" or "injury" supporting their claims. As a matter of law, these restrictions are not caused by the WPD gang list. Such restrictions are imposed by a court in an individualized proceeding that meet the requirements of due process. This court cannot provide relief to Plaintiff's claims and should dismiss this case on those grounds.

**II.     K.S.A. 21-6313 through 21-6316 are constitutional—they are not overbroad or vague.**

The response argues that briefing on the constitutionality of K.S.A. 21-6313 through 21-6316 is "premature" and "invite the Court to adjudicate Plaintiffs' claims on their merits without the benefit of discovery or any evidentiary record." *ECF 26*, pp. 22-23. Defendants' motion is appropriately submitted under Rule 12(b)(1) and (6). On a motion under Rule 12(b)(6), the court resolves factual disputes and reasonable inferences in favor of the non-moving party, *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013), but the court need not accept plaintiff's conclusory allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). The opening brief addresses constitutional challenges to K.S.A. 21-6313 through 21-6316 at *ECF 14*, pp. 16-45. Discovery would not impact any ruling on the motion under Rule 12 or change this result. Plaintiff's concern that factual disputes may determine the outcome of the court's determination is mistaken.

Plaintiffs argue "anyone branded as a gang member is shackled with that designation for the rest of their life, even if they never come into contact with the criminal justice system." ECF 26, p. 37. These evocative labels lack factual and legal support. The complaint does not identify the "shackle" (*i.e.,* the legally cognizable harm or injury) that flows from being "branded" (*i.e.,* being listed in the WPD gang database) in the absence of any contact with the criminal justice

system. The complaint alleges that "individuals never know they are included in Wichita's Gang List until … a bond hearing or arraignment following arrest." *ECF 1*, ¶ 23.

Discovery is not needed for plaintiffs' facial attack on the statutes nor is discovery necessary to ascertain that no plaintiff alleges a legally cognizable injury traceable to WPD Policy 527 or to K.S.A. 21-6313 through K.S.A. 21-6316. As discussed in defendants' opening brief, (1) the statutes are neither unconstitutionally overbroad or vague, *ECF 14*, pp. 17-24, (2) no plaintiff has been arrested for nor have they been charged and/or convicted of violating the statutes, *id*., p. 2, (3) the complaint does not allege any plaintiff desires to engage in conduct criminalized by the statutes, *id*., pp. 42-43.

Plaintiffs argue "the Constitution does not grant or afford police officers such discretion in executing statutes like K.S.A. 21-3613 [sic]". *See ECF 26*, p. 27. To the contrary, police powers are reserved to the states by the Tenth Amendment. U.S. Const. Amend. X. Our criminal justice system reserves broad discretion to the government as to whom to prosecute. *United States v. Goodwin*, 457 U.S. 368, 380, n. 11 (1982); *Wayte v. United States*, 470 U.S. 598, 607 (1985). Likewise, state and local law enforcement officials are vested with broad discretion to determine when to conduct police-citizen encounters such as traffic stops or field interviews, when and whether to initiate an arrest, and when to prosecute. *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1167 (10th Cir. 2003) (citing *United States v. Armstrong,* 517 U.S. 456, 464 (1996)).

Likewise, in our federal system, States possess plenary authority to define and enforce criminal laws whereas the Congress must tie a federal criminal statute to an enumerated power. *See Torres v. Lynch*, 578 U.S. 986, 136 S. Ct. 1619, 1625 (2016). The Fourteenth Amendment "does not take away from the state those powers of police that were reserved at the time of the adoption of the Constitution." *Terrace v. Thompson*, 263 U.S. 197, 216–17 (1923). The police

power leaves wide discretion for States to "its own public policy and what measures are necessary for its own protection and properly to promote the safety, peace and good order of its people." *Id*. at 2017.

Part of the Executive Branch, law enforcement officers are afforded discretion when enforcing statutes passed by the Legislative Branch. *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). *Kansas v. Glover* recently emphasized the broad discretion for a law enforcement officer, coupled with common sense, to initiate a police-citizen encounter (a traffic stop) based on "a reasonable suspicion that a specific individual was potentially engaged in specific criminal activity." *Kansas v. Glover*, 140 S. Ct. 1183, 1190 (2020).

To be clear, there is a legitimate state interest in collecting and sharing intelligence between law enforcement agencies regarding potential criminal threats. Criminal gang activity poses a real threat to American communities. *See ECF 14*, p. 21. The gang database allows the WPD to document individuals fitting the requirements in K.S.A. 21-6313 to carry out the police function of keeping and preserving the peace.

Additionally, K.S.A. 21-6313's particularized list of characteristics required to identify a gang member or associate are not considered independently. The statute requires multiple criteria be met before entering an individual in the database. Inclusion on the list does not, in and of itself, carry any penalty. The "harms" alleged by individual plaintiffs meeting the statute's criteria are a result of their law enforcement contacts (including felony convictions), not their inclusion on the gang database. The statutes are not unconstitutionally broad.

**III.    Procedural due process is not required to be include on a law enforcement intelligence tool.**

Inclusion a criminal intelligence database does not require procedural due process. No depravation of constitutional rights occurs when a record is added to the database. The response

argues, "being labelled a gang member is undoubtedly stigmatizing because it implies criminal conduct." *ECF 26*, p. 31 (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Not so. On its face, WPD Policy 527 states persons included in the gang data base must "meet the criteria defined in K.S.A. 21-6313." *ECF 1-1*, § I.B.1. Criminal street gang membership is not a crime. While inclusion on the list certainly implies association with persons who commit crimes, it does not imply or accuse the individual of criminal conduct. Placement on the Gang List does not alter one's status as a matter of state law. *See ECF 14*, pp. 26-31.

In *Larry v. Lawler*, 605 F.2d 954, 956 (7th Cir. 1978), the plaintiff was debarred, without a hearing, from federal employment for up to three years based upon a finding of "habitual use of intoxicating beverages to excess." *Id*. at 956. *Castillo v. Cty. of Los Angeles*, 959 F. Supp. 2d 1255 (C.D. Cal. 2013), cited by plaintiff, *ECF 26,* p. 32, involved publication of the plaintiff's name on a state-wide database notwithstanding the investigation found insufficient facts to determine child abuse or neglect had occurred. *Id*., at 1257. *Cf. Endy v. Cty. of Los Angeles*, 975 F.3d 757, 765 (9th Cir. 2020) (holding a listing stating a child abuse allegation was "unfounded" did not meet the stigma-plus standard).

Plaintiffs seem to analogize the gang database to the registered offender database. Registered offenders are required to provide updated information that is shared with the public. K.S.A. 22-4901 *et. seq*. Such compulsive registration first requires conviction or adjudication for an offense requiring registration. K.S.A. 22-4904.

Further, courts have not held that sharing intelligence between law enforcement agencies is a "publication" that satisfies the stigma-plus doctrine. The cases cited in the response considered facts distinct from those alleged in the complaint. WPD Policy 527 requires the confidentiality of the database. Texas law prohibited an individual listed on the TXGANG database from carrying a

firearm in public, and Texas shares the database with a variety of entities, such as military bases. *See Medrano v. Salazar*, No. 5:19-CV-00549-JKP, 2020 WL 589537, at *6 (W.D. Tex. Feb. 5, 2020). Kansas law and WPD Policy 527 operates differently. Obviously, inclusion in WPD's Gang Database does not prohibit the listed person from carrying a firearm and the list is confidential and dissemination of the list is restricted.

The WPD gang database differs materially from those in the cases cited by plaintiffs. WPD Policy 527 requires the database remain confidential. Inclusion in the database does not, in and of itself, impose any burden nor does it deprive the listed person of liberty or property.

      **C.**     **WPD did not violate Plaintiff's substantive due process.**

Plaintiff's contend the fundamental rights at issue are the rights of association and assembly. *ECF 26*, p. 41. First, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997). Second, neither K.S.A. 21-6313, *et seq*. nor the Gang List violates any fundamental right to association or assembly. *See ECF 14*, pp. 31-35.

The response attempts to shoehorn their substantive due process claim as an invasion of privacy under *Griswold v. Connecticut*, 381 U.S. 479 (1965) (holding statute forbidding use of contraceptives unconstitutionally intrudes upon the right of marital privacy). Though plaintiff's call it that "unwarranted online and in-person surveillance" and "identification by and increased attention from WPD officers using 'Signal 33'", *ECF 26*, p. 43, no constitutional right of privacy is invaded or violated by WPD Policy 527 or K.S.A. 21-6313 through 21-6316. This conduct is not unlawful searches or intrusions into their private lives, it is merely viewing things that any member of the public could see.

### D. WPD Policy 527 does not violate Plaintiff's equal protection rights.

Plaintiffs clarify they are asserting a selective enforcement claim rather than a selective prosecution claim. The analysis does not differ materially.

A claim for racially selective law enforcement requires that the plaintiff demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). While statistical evidence can be used to show both discriminatory effect and discriminatory purpose, to be useful a statistical comparison "requires a reliable measure of the demographics of the relevant population, a means of telling whether the data represent similarly situated individuals, and a point of comparison to the actual incidence of crime among different racial or ethnic segments of the population." *Id.* (citations omitted). Thus, to state an equal protection claim the complaint must include a statistical comparison between the number minority persons in the database to a reliable measure of the demographics of the relevant population—that is the relevant population of criminal gang members in Wichita not just citizens in Wichita. *Id.* The complaint alleges a racial disparity between the percentage of the database who are minorities against the demographic composition of the City—not a disparity between the number of caucasion criminal gang members in Wichita who are not included in the database.

The complaint provides no basis to infer that any racial disparities reflected on the gang database are a result of discrimination or selective inclusion in the gang database. National statistics and research reflect that gang membership does not follow overall race distribution. The complaint provides no basis to infer Wichita does not follow these national statistics. The National Youth Gang Center shows membership in gangs by African Americans and Latinos are much higher than other races throughout the country.



(https://nationalgangcenter.ojp.gov/survey-analysis/demographics, last accessed Aug. 2, 2021)

Statistical evidence alone is rarely enough to show discriminatory purpose. *McCleskey v. Kemp*, 481 U.S. 279, 293 & n. 12 (1987). This is because an equal protection claim requires that a plaintiff "must prove that the decisionmakers in *his* case acted with discriminatory purpose." *Id.*, at 292 (emphasis original). The statistical information alleged in the complaint do not suffice to infer a discriminatory purpose in general, let alone a discriminatory purpose as to the plaintiffs.

The complaint fails to allege an equal protection claim.

E.  **The WPD did not violate Plaintiff's First Amendment rights.**

WPD's Policy 527 and its use of a database to track identified gang members does not violate plaintiff's rights of association or assembly. As discussed above, Policy 527 does not regulate the conduct of any person other than Wichita police.

Policy 527 and the existence of a database does not prevent anyone (Progeny's members or otherwise) from gathering. Nor does Policy 527 and the existence of the database prevent anyone from the exercising their right of free speech. The response argues defendants conduct violates plaintiffs' rights by "directly prohibiting certain associational and expressive conduct."

{T0472270}                                14

As previously stated, Policy 527 does not prohibit any conduct (other than prohibiting the dissemination of the list itself). The "harm" complained of by the planitiffs does not materialize until absent subsequent criminal conduct.

As discussed above and in the opening memorandum restrictions on association or conduct arise from conditions on pretrial release, probation and/or post-release supervision. Any limitations upon a specific Progeny member's ability to interact with another person results from those conditions imposed by a court or statute, not whether they are listed in the gang database. The Tenth Circuit recognizes that a special condition banning association with gang members is substantively reasonable. See *United States v. Pacheco-Donelson*, 893 F.3d 757, 761 (10th Cir. 2018); *see also United States v. Muñoz*, 812 F.3d 809, 820 (10th Cir. 2016) ("Keeping [the defendant] away from other convicted felons is a sensible way to reduce the risk of recidivism, which is a legitimate purpose of supervised release even if the condition encroaches on a constitutionally protected interest.").

## Conclusion

For the foregoing reasons and those set forth in defendants' opening memorandum, plaintiffs' claims should be dismissed in their entirety.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/David R. Cooper**
David R. Cooper                             #16690
Charles E. Branson                          #17376
**Attorneys for Defendants**

Jennifer L. Magaña, #15519
City Attorney
Sharon L. Dickgrafe, #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, Kansas 67202
P: (316) 268-4681 | F: (316) 268-4335
sdickgrafe@wichita.gov
**Attorneys for City of Wichita**

## Certificate of Service

I hereby certify that I caused the foregoing to be electronically filed on August 13, 2021, a with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

Teresa A. Woody, KS #16949 | Nicholas C. Shump, *Pro Hac Vice*
KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC.
211 E. 8th Street, Suite D | Lawrence, KS 66044
Phone: (785) 251-8160 | twoody@kansasappleseed.org | nshump@kansasappleseed.org

Sharon Brett, KS #28696 | Joshua M. Pierson, *Pro Hac Vice*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS
6701 W. 64th St, Suite 210 | Overland Park, KS 66202
Phone: (913) 490-4100 | sbrett@aclukansas.org | jpierson@aclukansas.org

Mitchell F. Engel, KSD #78766 | Jordan C. Baehr, KSD 327213
SHOOK, HARDY & BACON, LLP | 2555 Grand Blvd., Kansas City, MO 64108
T: (916) 474-6550 | F: (816) 421-5547 | mengel@shb.com | jbaehr@shb.com

Thomas J. Sullivan | *Pro Hac Vice*
SHOOK, HARDY & BACON, LLP
Two Commerce Square | 2001 Market Street, Suite 3000, Philadelphia, PA 19103
T: (215) 278-2555 | F: (215) 278-2594 | Email: tsullivan@shb.com
**Attorneys for Plaintiffs**

**s/David R. Cooper**