IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGENY,
a program of Destination Innovations Inc.,
CHRISTOPHER COOPER,
ELBERT COSTELLO,
MARTEL COSTELLO, and
JEREMY LEVY, JR.,
on behalf of themselves
and others similarly situated,

    Plaintiffs,

v.

CITY OF WICHITA, KANSAS,

    Defendant.

Case No. 6:21-cv-01100-EFM-ADM

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Plaintiffs object to Defendant's Motion for Protective Order with respect to Plaintiffs' First Request for Production of Documents and Electronically Stored Information, Requests Nos. 19, 20, 23, and 36. Defendant has failed to satisfy the requirements to invoke the law enforcement privilege, and even had those requirements been satisfied, Plaintiffs' need for the information in order to prove its case overrides the privilege, because the information is available from no source other than Defendant. Plaintiffs respectfully request that the Court deny Defendant's Motion for the reasons set forth more fully below.

**I.    STATEMENT OF FACTS**

Plaintiffs submitted their first request for production on January 27, 2022. (ECF 32, 52-2.) After an agreed upon extension, the Plaintiffs received the first set of responses on March 14, 2022 and supplemental responses on March 18, 2022, April 8, 2022, and May 3, 2022. (ECF 40, 52-3;

ECF 42, 52-4; ECF 45, 52-5; ECF No. 49, 52-6, respectively). At the time of filing, production responsive to several of Plaintiffs' initial Requests is still outstanding.

Defendant objected to Requests 19, 20, 23, and 36 in its March 14, 2022 response (ECF 40, 52-3), but went on to partially respond to Requests 19, 20, and 23. The response includes Policy 225, a three-page document which, in relevant part, states that officers can use social media for investigative purposes so long as they use a fake account and receive permission. WICHITA 29008-10[1]. The response also includes a twenty-three-page Standard Operating Procedure handbook for how the Crimes Against Persons Bureau should function. WICHITA 29011. These documents are largely unresponsive to Requests 19, 20, and 23. Defendant has not produced any documents with respect to Request 36.

Further, with respect to Request No. 23, on April 21, 2022, Defendant represented that no documents existed with respect to any audit of the Gang Database other than a Standard Operating Procedure for the audit process, which Defendant agreed to produce, because officers overwrite the previous information in the database, and do not retain any records as to why an individual's status would be changed from active to inactive, or vice versa. *See* April 27, 2022 email from Teresa Woody to David Cooper and others, documenting this understanding, attached as Ex. 1. Thus, Defendant's claim of privilege for additional documents and ESI relevant to this request comes as a surprise to Plaintiffs, and is contrary to prior representations.

The review of the six Gang Files received to date indicates that the Gang Unit engages in ongoing social media monitoring to add individuals to the Gang List. WICHITA 23857-23917, 23942-76, 24134-44, 24313-20, 24355-69, 24370, 24403-18. During Plaintiffs review of the documents received to date, the following information has come to light:

---

[1] All Bates numbered documents can be provided for *in camera* review if the Court wishes to review the documents.

Wichita Police Department ("WPD") officers added Christopher Cooper, named Plaintiff, to the Gang List as an associate based on their investigation of Cooper's Facebook account. WICHITA 23919. These officers relied on Facebook pictures of Cooper allegedly wearing "gang colors" and associating with "gang members" to satisfy statutory requirements. *Id.*

WPD officers added Martel Costello, named Plaintiff, to the Gang List as an associate based in part on his review of Costello's Facebook account. These officers relied on Facebook pictures showing Costello allegedly wearing gang colors, and allegedly using gang signs and terminology to satisfy statutory requirements. WICHITA 24147. During an audit of the Gang List, the Gang Unit extended Costello's time on the list due to Facebook monitoring that revealed photos with alleged "gang colors, hand signs, and terminology." WICHITA 24146-47.

Elbert Costello, named Plaintiff, had his time on the Gang List extended due to monitoring that found a photo of him wearing a red Phillies hat, and attending a family funeral where he appeared in photos with other people purportedly on the Gang List. WICHITA 23978.

WPD officers added A.M., Progeny member, to the Gang List due to their review of a YouTube video where A.M. appeared along with others allegedly on the Gang List. WICHITA 24375. The officers relied on the video to satisfy the criteria of association with other gang members and wearing gang colors to add A.M. to the list. *Id.* The Gang Unit extended A.M.'s time due to Facebook monitoring that found a photo of A.M. wearing a red Cincinnati Reds hat and displaying alleged "gang hand signs." *Id.*

The Gang Unit has used social media, often as its sole consideration, to change an individual's status from "inactive" to "active" on the Gang List. In the past five years, the Gang Unit relisted fifty-three "inactive" individuals as "active" gang members. The Gang Unit relisted twenty-four of these individuals as "active" based on social media monitoring. WICHITA 30055-107. This

continuous social media monitoring to place individuals on the Gang List, even without any evidence of the individual having engaged in any criminal behavior, or even having any personal interaction with a police officer, and without any notice to an individual that he or she has been added to the Gang List due to a social media posting, is the very crux of Plaintiffs' claims regarding both the facial unconstitutionality of the Kansas gang statute, and the unconstitutionality as applied by the Wichita Police Department.

Defendant produced a document entitled "Wichita Street Gang Identifiers" which includes a list of each gang they believe to exist in Wichita and the "identifiers" they rely on to determine if an individual belongs to a certain gang. WICHITA 29044-47. The WPD organizes identifiers by individual gangs, but the identifiers are not unique to each gang. *Id.* For example, the Gang Unit could identify an individual wearing Kansas City Chiefs, Kansas City Royals, Dallas Cowboys, or Philadelphia Phillies attire as a member of one of three different gangs. *Id.* Additionally, the Gang Unit relies on colors as identifiers, including, among others, the colors blue and black. *Id.* The Gang Unit could identify an individual wearing blue and/or black as a member of any of the twenty-three gangs identified in Wichita. It appears that the arbitrary wearing of sportswear, or the ubiquitous colors of blue and black, on one's private social media pages can lead to being characterized by the Wichita Police Gang Unit as a criminal street gang member.

## II. DEFENDANT HAS FAILED TO PROPERLY INVOKE THE LAW ENFORCEMENT PRIVILEGE FOR THE REQUESTED INFORMATION.

Defendant fails to properly invoke the law enforcement privilege. The purpose of the privilege, in relevant part, "is to prevent disclosure of law enforcement techniques and procedures . . . and otherwise to prevent interference with an investigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, No. CIV. A. 93-2471-GTV, 1995 WL 104835, at *1 (D. Kan. Mar. 7, 1995) (citing *U.S. v. Myerson*, 856 F.2d 481, 484 (2d Cir. 1988)). To properly assert the law

4

enforcement privilege, "the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, *specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege*." *U.S. v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (emphasis added).

Defendant has failed to specify the information it seeks to protect or how any of the information would fall within the scope of the law enforcement privilege. The government's assertion of privilege must include enough detail for "the court to establish a link between the nature of the documents and the interference with a pending investigation." *Nat'l Union Fire Ins. Co.*, at *4. In *Nat'l Union Fire Ins. Co.*, the court found that the F.D.I.C. had properly specified the information it sought to protect when it included a list of the five types of documents it sought to protect and a general statement of what information was in the documents. *Id.* at *2-3 (granting FDIC's motion order in part, and denying it in part. In contrast, here Defendant relies entirely on Lieutenant Chad Beard's insistence to defense counsel on asserting the privilege for "<u>any</u> given criminal investigation using undercover social media accounts" including "training and instruction documents pertaining instruction (*sic*) on how to undertake such surveillance". (Defendant's Motion for Protective Order, ECF 52, at pp. 3, 7, emphasis in original.)

Defendant's assertion of the law enforcement privilege fails because it lacks specificity and particularity. Defendant never tells the Court what documents would respond to this request and how those documents fall within the scope of the law enforcement privilege. Defendant only states that its seeks to prevent the disclosure of law enforcement techniques and prevent interference with investigation activities. It is impossible to determine if the documents it seeks to protect would indeed interfere with investigation activities. The assertion certainly does not rise to the level of particularity the district court found proper in *Nat'l Union Fire Ins. Co.* Defendant has failed to

properly assert the law enforcement privilege as to the requested documents, and the Court should deny the use of the law enforcement privilege for the responsive documents.

### III. EVEN IF THE PRIVILEGE WERE TO APPLY, IT IS A QUALIFIED PRIVLEGE THAT PLAINTIFFS OVERCOME BECAUSE PLAINTIFFS HAVE A SUBSTANIAL NEED FOR THE REQUESTED INFORMATION, AND THERE IS NO OTHER REASONABLE WAY FOR PLAINTIFFS TO OBTAIN IT.

The law enforcement privilege is qualified. *U.S. v. Malik*, No. 15-cv-9092-CM-TJJ, 2016 WL 3167307, at *10 (D. Kan. June 7, 2016). A party can overcome the privilege by showing a substantial need for the documents and an inability to obtain them or "their substantial equivalent by other means." *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 698 (D.Colo. 1993) (citing *U.S. v. Davis*, 131 F.R.D. 391, 395 (S.D.N.Y. 1990). The district court in *Nat'l Union Fire Ins. Co.* found a compelling need when the plaintiffs demonstrated that the requested documents were related to the "principal and material issues of th[e] case." *Nat'l Union Fire Ins. Co.*, 1995 WL *5.

The documents the Plaintiffs have requested are needed to prove "principal and material issues of the case," and that need would overcome the law enforcement privilege. The Plaintiffs' Fourteenth Amendment vagueness claim argues that the application of K.S.A. 21-6313 and WPD Policy 527, and in particular, the WPD's use of social media monitoring to enforce these provisions, results in arbitrary and discriminatory enforcement. *See* Compl. ¶¶ 190-93 (vagueness claim generally) and ¶¶ 87, 90-91 (social media use) (ECF 1). To prove this claim, Plaintiffs seek information about the Defendant's use of social media to enforce the statute and policy. Documents received in production indicate that the Defendant relies on social media, oftentimes as a primary source of information, to add individuals to the Gang Database. WICHITA 23857-23917, 23942-76, 24134-44, 24313-20, 24355-69, 24370, and 24403-18. Additionally, the Defendant often uses social media posts to designate an "inactive" individual as an "active" gang member, or to extend

an individual's designation as an "active" member. WICHITA 23919, 24146-47, 23978, 24375, and 30055-107. The requested policies, procedures, protocols, and records of how the Defendant uses social media are paramount to understanding how they enforce the statute and policy, which is critical to advancing this claim.

The content and implementation of these social media policies are crucial to Plaintiffs' ability to advance their claims for violation of their First Amendment rights. *See* Compl. 242-44, 250-52. The Defendant relies on social media to identify criteria found in K.S.A. 21-6313, Policy 527, and its Wichita Street Gang Identifiers document, WICHITA 29044-47, to impact an individual's placement on the Gang List. The criteria they rely on directly impacts the Plaintiffs' ability to freely engage in associative activity. Documents produced show that named Plaintiff Elbert Costello had his time on the Gang List extended because he appeared in photos with other members on the Gang List wearing a "red phillies hat." WICHITA 23978. Christopher Cooper, named Plaintiff, had his time on the Gang List extended because he appeared in a photo with his cousin, who was also on the Gang List. WICHITA 23919.

Defendant appears to consistently impute a hidden criminal motive to innocent conduct and photos with family members, impacting a strongly protected constitutional interest in free association. The WPD seemingly relies on guidance from internal documents without a heightened standard for family association, which causes some individuals to be identified as gang members merely because of their familial connection, or forces them to cut ties with family members. *Cf. Moore v. City of East Cleveland*, 431 U.S. 494, 499 (1990) (plurality opinion) (finding that a zoning ordinance which prevented family members from living together imposed "intrusive regulation on the family" and was unconstitutional). The production of the requested documents is crucial to understanding the Defendant's policies to determine how broadly the First

Amendment violations extend. Defendant seeks to protect its "investigative techniques" with respect to how it targets and identifies individuals and their social media accounts to put them on the Gang List. It is precisely these techniques that are the heart of Plaintiffs' case – that the techniques used by the WPD to add or retain individuals on the Gang List are unconstitutional. Plaintiffs have a substantial need to obtain these documents as evidence of the WPD's unconstitutional application of its Policy 527.

Additionally, the reliance on social media photos where individuals are wearing professional sports attire to extend an individual's time on the Gang List are relevant to Plaintiffs' due process claim. Documents produced show the Defendant relied on photos of Elbert Costello wearing a red Phillies cap and A. M. wearing a red Cincinnati Reds cap to extend their time on the Gang List. WICHITA 23978 and 24375, respectively. The issue of whether individuals such as Elbert Costello or A. M. have improperly had their status renewed due to lawful conduct, such as wearing a Phillies or Cincinnati cap, depends in part on why the Defendant would single them out for wearing those caps but would not add other Phillies or Reds fans in Wichita for wearing team apparel. *See* Order on Motion to Dismiss 35; Compl. ¶ 212. The documents Defendant has produced to date only prove that social media monitoring occurs. The context and guiding documents showing how the WPD goes about its monitoring are crucial to proving Plaintiffs' due process claim.

Defendants have also asserted the privilege to prevent disclosure of an entire group of documents related to a specific "gang" — the Mongols Motorcycle Club. Plaintiffs requested all documents associated with the targeting of this club in their Request No. 36. Members of the Mongols Motorcycle Club reached out to Plaintiffs' counsel after the filing of this lawsuit. The Club believes it is being targeted by WPD. Members of the Club report being harassed with illegal

traffic tickets that were then dismissed, and other harassment techniques, and their concern that they are being targeted as gang members for non-criminal and First Amendment associative activities. Members from the Club are among the 24 individuals who had social media monitoring impact their renewed designation as "active" gang members. The produced entry for member C.B. specifically references his Facebook page and both posts and photos where he appears with others who are on the Gang List and that show him in "gang clothing." WICHITA 30062. Member R.M.E. has specific notes about his Facebook pages in his produced entry, which shows that he is actively being monitored. WICHITA 30071. This targeting and harassment are directly relevant to Plaintiffs' claims, and are further evidence of the WPD's unconstitutional behavior, and targeting of minority communities for inclusion in the Gang Database.

In short, the produced documents are likely indicative of unconstitutional conduct, but they only scratch the surface. The documents will almost certainly show whether the WPD is conducting non-public surveillance of the named Plaintiffs and Progeny Members' social media accounts, or the accounts of members of the putative class, and how such surveillance is used to bolster, enhance, or maintain Defendant's unconstitutional gang list. The produced documents are insufficient to ascertain this important aspect of Plaintiffs' claims. The requested documents are crucial to understanding the breadth of the Defendant's conduct, which is the principal and material issue of this case. Additionally, the documents are only accessible by the Defendant and are unavailable to Plaintiffs by any other means. Plaintiffs have demonstrated a compelling need and an inability to access the documents as required by the exception to the law enforcement privilege.

IV. **SHOULD THE PRIVILEGE APPLY, THE COURT SHOULD CONSTRUE IT NARROWLY AND UTILIZE ALTERNATIVES TO PERMIT THE PRODUCTION OF NECESSARY DOCUMENTS AND INFORMATION.**

The United States Supreme Court has held that privileges should be narrowly construed, whether constitutional, common-law, or statutory. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *Id.* Courts may also rely on alternative ways to protect the release of any privileged information. *Everitt v. Brezzel*, 750 F.Supp. 1063, 1067-68 (D. Colo. 1990). In *Everitt*, the court identified three alternatives to protecting released privileged information: *in camera review* by plaintiff's counsel under protective order, an additional protective order that limits who may see, reproduce, and use the responses, and redaction by the defendants of specific information they believe is too confidential that even an attorney should not see it.[2] *Id.* Furthermore, the Court can always conduct its own *in camera* review. *Id.*

The Defendant's broad assertion of privilege is an attempt to undermine the Plaintiffs' ability to prove its case. Defendant has failed to meet the requirements to assert the privilege, and even if the privilege were applicable, Plaintiffs have shown a compelling need to overcome the privilege asserted for the information requested.

However, should the Court find that the privilege applies to any documents Plaintiffs have requested, this Court should construe it narrowly and apply it only to the documents that are not necessary to prove the material and principal issues in the case and whose disclosure would truly undermine the purpose of the law enforcement privilege. It is unlikely that this Court will need to go that far, as the current Protective Order is adequate to protect such information. *See* Protective Order, ECF 41. If the Defendant believes that the current Protective Order is insufficient, it should

---

[2] Defendant's argument that Plaintiffs are insisting on the production of overbroad information, or that Plaintiffs should propose limitations to the requested information, is a red herring. Plaintiffs have never demanded that Defendant produce information regarding sex crimes or human trafficking, and did not even know that the WPD used social media surveillance in that respect. Defendant is best positioned to propose any limitations of production.

identify the documents that are too sensitive to release so the Court can make specific privilege determinations. Many alternatives exist, any one of which should be preferred before fully undermining the Plaintiffs' ability to prove their case.

## VI. CONCLUSION

This Court should deny the Defendant's Motion for a Protective Order because Defendant failed to properly invoke the privilege for the documents requested, and because Plaintiffs have overcome the asserted privilege by demonstrating a substantial need for the documents and an inability to access them from another source. Should the Defendant adequately assert the need for privilege in the future, this Court should narrowly construe the privilege to ensure that Defendant is not using the alleged protection as a sword to prevent Plaintiffs from accessing admissible evidence.

Dated this 3rd day of June, 2022.

Respectfully submitted,

KANSAS APPLESEED CENTER FOR
LAW AND JUSTICE, INC.

/s/ Teresa A. Woody
Teresa A. Woody KS #16949
Nicolas Shump (admitted *pro hac vice*)
211 E. 8th Street, Suite D
Lawrence, KS   66044
Phone: (785) 251-8160
twoody@kansasappleseed.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS

*/s/* Sharon Brett
Sharon Brett KS #28696
Joshua Pierson KS #29095
Kayla DeLoach KS #29242
6701 W. 64th St, Suite 210
Overland Park, KS 66202
Phone: (913) 490-4100
sbrett@aclukansas.org

SHOOK, HARDY & BACON LLP

*/s/* Paul M. Vogel
Thomas J. Sullivan (admitted *pro hac vice*)
Mitchell F. Engel KS #78766
Jordan C. Baehr KS #27213
Paul M. Vogel KSD #79022
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
tsullivan@shb.com
mengel@shb.com
jbaehr@shb.com
pvogel@shb.com

ATTORNEYS FOR PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

**CERTIFICATE OF SERVICE**

I certify that on June 3rd, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses of all counsel of record.

*/s/* Teresa Woody

Attorney for Plaintiffs