IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PROGENY, a program of Destination Innovations, Inc., et al., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WICHITA, KANSAS,<br><br>Defendant. | Case No. 21-1100-EFM-ADM |

## **MEMORANDUM AND ORDER**

In this putative class action, plaintiffs challenge the constitutionality of the Wichita Police Department's ("WPD") use and maintenance of a "Gang List" created under KAN. STAT. ANN. §§ 21-6313 to -6316. This matter is now before the court on defendant City of Wichita, Kansas's ("the City") Motion for Protective Order. (ECF 52.) By way of this motion, the City asks the court to find that the City does not need to produce certain documents that are responsive to plaintiffs' discovery requests because they are protected by the law enforcement privilege. As explained in further detail below, the court denies the motion because the court finds that the City has not properly invoked this qualified privilege and, even if the court were to find that it applies, plaintiffs would overcome it.

**I.      BACKGROUND**

Under Kansas law, persons identified as members of "criminal street gangs" are subject to different and greater penalties upon arrest. KAN. STAT. ANN. §§ 21-6313 to -6316. The WPD has created a "Gang List," which is a list of persons whom WPD personnel have determined meet the

definition of a "criminal street gang member" under the criteria listed in KAN. STAT. ANN. § 21-6313(b).  WPD Policy 527 puts § 21-6313 into practice by defining the procedures for including an individual on the Gang List.  WPD Policy 527 provides that, after WPD adds an individual to the Gang List, the individual will remain on either "active" or "associate" status for a minimum of three years.  (ECF 1-1, at 3.)  If after three years the individual has not engaged in documented criminal street gang activity, the individual will be designated "inactive" on the Gang List.  (*Id.*)  But this three-year period starts over if a WPD officer documents that the individual either meets the criteria set out in § 21-6313(b) or that the individual has been involved in criminal street gang activity or a gang-related incident.

In April 2021, plaintiffs filed this lawsuit against the City, which supervises and is responsible for the WPD.  (ECF 1, at 13.)  The lead named plaintiff is Progeny, a Wichita nonprofit organization whose stated purpose is "reimagining the juvenile justice system and reinvesting in community-based alternatives."  (*Id.* at 10.)  Progeny claims the Gang List is contrary to its mission and programs.  The other four named plaintiffs—Christopher Cooper, Elbert Costello, Martel Costello, and Jeremy Levy, Jr.—are individuals who claim they have been wrongfully designated as "criminal street gang members" and added to the Gang List.  They assert that they have been subjected to unconstitutional actions by the WPD by virtue of being placed on the Gang List, and that this has negatively affected their lives in a host of ways.

Plaintiffs allege that § 21-6313 is facially unconstitutional and that the WPD's practices and procedures regarding the Gang List violate their constitutional rights of due process, equal protection, and free association and expression.  As pertinent to the current discovery dispute, plaintiffs assert that § 21-6313(b)'s criteria for placing or keeping individuals on the Gang List can lead to persons being labeled as criminal gang members for innocuous conduct, such as

wearing certain clothes, visiting certain places, and associating with family and friends.  (*Id.* at 4-5.)  Plaintiffs allege that "members of the WPD's Gang Unit are instructed to surveil community members' social media accounts to find photographs of people with known gang members" and that WPD "regularly monitors the social media accounts of community members to identify evidence that could be used to label individuals as gang members."  (*Id.* at 23-24.)  Additionally, plaintiffs allege that "some WPD officers maintain fake social media profiles in order to befriend members of the community to more easily have access to photos and other information that would allow the officers to add more people to the Gang List."  (*Id.* at 24.)  Plaintiffs state that such social-media surveillance "profoundly affect[s] how Plaintiffs interact with their friends and families and move about the community" because they fear close proximity to certain people or places will lead the WPD to label them as gang members.  (*Id.* at 24, 32-34, 58.)  Likewise, they say it has a chilling effect on their expression because wearing certain colors or sport-team clothing are criteria that lead to placement on the Gang List.  (*Id.* at 33, 51, 58, 60.)

On January 27, 2022, plaintiffs served their First Requests for Production of Documents ("RFPs") on the City.  (ECF 32 & 52-2.)  In response, the City objected to producing two categories of documents: (1) documents responsive to RFPs 19, 20, and 23 "regarding [WPD's] use of social media in criminal investigations and collection of criminal intelligence"; and (2) documents or ESI responsive to RFP 36 "that relate to the Mongols Motorcycle Gang."  (ECF 52, at 2-3.)  At the parties' request, the court convened a discovery conference on May 4 to discuss the parties' dispute over whether the City must produce the subject documents.  (ECF 51.)  The City asserted it was withholding the documents under the law enforcement privilege, which is a qualified privilege that protects confidential criminal intelligence and investigation materials.  After consultation with the parties, the court set the issue for motion practice.  (*Id.*)

3

The City now moves for a protective order pursuant to Federal Rule of Civil Procedure 26(b)(2)(C) allowing it to withhold information pursuant to the law enforcement privilege. (ECF 52.) Plaintiffs oppose the motion, arguing the City has failed to follow the procedure required to invoke the privilege and, even if the City had properly invoked the privilege, that plaintiffs' need for the information overrides the privilege. (ECF 54.)

## II. LEGAL STANDARDS GOVERNING THE LAW ENFORCEMENT PRIVILEGE

Federal common law recognizes a qualified "law enforcement investigative privilege," which is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files." *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (quotation omitted). "Its purpose 'is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation and otherwise to prevent interference with an investigation.'" *United States v. Malik*, No. 15-CV-9092-CM, 2016 WL 3167307, at *10 (D. Kan. June 7, 2016) (quoting *Nat'l Union Fire Ins. Co. v. F.D.I.C.*, No. 93-2471-GTV, 1995 WL 104835, at *1 (D. Kan. Mar. 7, 1995), which in turn quoted *In re Dep't of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988)); *Estate of Lillis v. Bd. of Cnty. Comm'rs,* No. 16-CV-03038-KLM, 2019 WL 3416268, at *2 (D. Colo. July 29, 2019) (same).

"To assert the privilege, 'the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege.'" *Malik*, 2016 WL 3167307, at *10 (quoting *Winner*, 641 F.2d at 831); *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *1 (same). This requirement "must be strictly adhered to." *Winner,* 641 F.2d at 831. "General allegations that information is protected from disclosure are

not sufficient." *Callahan v. Unified Gov't.,* No. 11-2621-KHV, 2013 WL 2151579, at *4 (D. Kan. May 16, 2013).

Because the law enforcement privilege is a qualified privilege, it "may be overridden by [a party's] substantial need for the documents and its inability to obtain their substantial equivalent by other means." *Lillis*, 2019 WL 3416268, at *2 (quoting *In re M & L Bus. Mach. Co., Inc.,* 161 B.R. 689, 693 (D. Colo. 1993)). This involves "weighing the competing interests." *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *4 (quoting *In re Sealed Case,* 856 F.2d 268, 272 (D.C. Cir. 1988)). "The privilege 'can be overcome if there is a compelling need for the information that outweighs the need for confidentiality.'" *Id.* (quoting *In re Telecomms., Inc. Sec. Litig.,* 799 F. Supp. 1206, 1208 (D.D.C. 1992)); *see also Malik*, 2016 WL 3167307, at *10 ("The law enforcement privilege is a qualified privilege, and thus can be overcome if the party seeking the information establishes 'a compelling need for the information that outweighs the need for confidentiality.'" (quoting *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *4)). "The party seeking documents protected by the law enforcement privilege has the burden to establish a need for the documents." *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *4 (citing *Collins v. Shearson/Am. Express, Inc.,* 112 F.R.D. 227, 228 (D.D.C. 1986)). Relevance alone does not establish need. *Id.*

### III. THE CITY HAS NOT PROPERLY INVOKED THE PRIVILEGE

As noted above, the Tenth Circuit in *United States v. Winner* set forth what is required to assert the law enforcement privilege: "the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." 641 F.2d at 831. In *National Union Fire Insurance Co. v. F.D.I.C.*, U.S.

Magistrate Judge Gerald Rushfelt ruled that the Federal Deposit Insurance Corporation ("FDIC") properly invoked the privilege by submitting a declaration from its regional counsel stating that he exercised personal consideration in invoking the privilege and that the agency had given him authority to invoke the privilege, and he described five categories of documents being withheld "in sufficient detail to enable the court to establish a link between the nature of the documents and the interference with a pending investigation." 1995 WL 104835, at *4. By comparison, in *Callahan v. Unified Government*, U.S. Magistrate Judge Karen M. Humphreys determined that, at a minimum, the party invoking the privilege "must provide a privilege log" in support. 2013 WL 2151579, at *4. Both approaches conform with Federal Rule of Civil Procedure 26(b)(5)(A)'s mandate that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged . . . will enable other parties to assess the claim."

Here, the City has not even minimally met *Winner's* invocation requirement. The City has not submitted a sworn declaration or affidavit of any "responsible official in the department" specifying with particularity the information over which the privilege is asserted. Nor has the City submitted a privilege log indicating documents it is withholding under the privilege. Instead, the City relies on a bare statement in its opening brief that it objected to RFPs 19, 20, 23, and 36 "after consultation with, and at the request of Lt. Chad Beard, supervisor of the Gang/Felony Assault Section & Crime Gun Intelligence Center." (ECF 52, at 3.) The brief states that "Lt. Beard has been the primary contact for defendants' counsel in responding to plaintiffs' requests for production and has repeatedly advised counsel of his objection to producing the materials over which privilege is asserted." (*Id.*) No matter how broadly the court were to interpret the

6

requirement of "lodg[ing] a formal claim of privilege," such a generalized statement in an unsworn legal brief does not meet the requirements to assert the privilege as set forth in *Winner*. The City has therefore failed to properly assert the law enforcement privilege.

First, although Lt. Beard may be the correct WPD official to assert the privilege, he has not "lodged a formal claim of privilege." And nothing in the record indicates he "personally considered" whether particular documents responsive to plaintiffs' discovery requests fall within the scope of the privilege. He has not explained, for example, why particular information—or even *what* particular information—should be withheld to safeguard law enforcement efforts.

Second, even if the court were to accept the unsworn representations of counsel that Lt. Beard "advised counsel of his objection to producing the materials over which privilege is asserted," the City has not provided enough detail about the materials for the court to determine that they fall within the scope of the privilege. The City's brief broadly describes the withheld information as (1) "training and instruction documents pertaining to the use of social media for surveillance of persons and the use of undercover social media accounts to do so," and (2) information about the actual "undercover use of social media for criminal investigation and surveillance." (ECF 52, at 3, 7.) This description does not provide the court with enough information to find a link between documents being withheld and any pending investigation(s). It lacks any explanation as to how disclosing the documents would "harm law enforcement efforts." *Winner*, 641 F.2d at 831; *see, e.g.*, *Callahan*, 2013 WL 2151579, at *4 ("general allegations" that information is subject to the privilege are inadequate).

The City's brief also includes the conclusory statement that it "cannot provide a privilege log of its undercover use of social media without compromising its investigatory and intelligence efforts and assets." (ECF 52 at 4.) But again, these are simply hollow words unaccompanied by

7

explanation or support. Surely it is common for a party to feel its privileged information is "compromised" when it must reveal the types of high-level facts (such as the date of a document, a general description of content, and length) required by a privilege log. *See In re Syngenta AG MIR 162 Corn Litig.,* No. 14-md-2591-JWL, 2017 WL 1106257, at *4-*5 (D. Kan. Mar. 24, 2017) (describing privilege-log requirements). However, courts continue to require adherence to Rule 26(b)(5)(A)'s description requirements—be it by production of a privilege log or by another manner. These requirements are necessary to enable both courts and other parties to assess the privilege claim. *See Martley v. City of Basehor,* No. 19-2138-DDC, 2021 WL 1210013, at *15 (D. Kan. Mar. 31, 2021). In this case, the City has not even indicated the number of documents it is withholding, let alone any basic description of their nature that would allow the court or plaintiffs to assess whether the law enforcement privilege applies.[1]

The City has failed to assert the law enforcement privilege by formally lodging its privilege claim, specifying with particularity the information withheld, and explaining why the information falls within the scope of the privilege. The court therefore denies the City's motion for a protective order on this basis because the invocation requirement "must be strictly adhered to" for the law enforcement privilege to apply. *Winner*, 641 F.2d at 831.

---

[1] Plaintiffs note, for example, that it was their understanding from the City's objection to RFP 23 and subsequent meet-and-confer discussions that no documents exist relating to any audit of the Gang Database other than the Standard Operating Procedure that the City already produced. (*See* ECF 54-1.) So plaintiffs were surprised that the City's motion asserted privilege over documents responsive to this RFP. (ECF 54 at 2.) The City has given no indication at all of what responsive documents it is withholding on privilege grounds.

**IV.     EVEN IF THE PRIVILEGE APPLIES, IT IS OVERCOME BY PLAINTIFFS' SUBSTANTIAL NEED FOR THE INFORMATION**

The court will also briefly address plaintiffs' argument that their need for the requested information overrides any law enforcement privilege that applies. This argument is well-taken. As the court discussed above, the law enforcement privilege is a qualified privilege that a party may overcome by demonstrating a substantial need for the documents that outweighs the agency's need for confidentiality. *See Lillis*, 2019 WL 3416268, at *2; *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *4; *Malik*, 2016 WL 3167307, at *10. Plaintiffs may demonstrate a substantial need for the documents by showing that the documents are related to the "principal and material issues of the case," *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *5, and that plaintiffs cannot "obtain their substantial equivalent by other means," *Lillis*, 2019 WL 3416268, at *2. If plaintiffs establish this need, then the court must weigh plaintiffs' interests in the documents against the City's interests in non-disclosure. *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *4.

This case is unique in that the law enforcement agency asserting the privilege has not specified the documents it is withholding based on its assertion of the privilege. This places plaintiffs in the untenable position of demonstrating a need for documents about which they know very little. But, after reviewing the record, the court finds plaintiffs have demonstrated a substantial need for the two *categories* of documents over which the City asserts the privilege: (1) documents regarding the training, policies, procedures, or records of WPD's social-media use in collecting criminal intelligence, at least insofar as the documents relate to the Gang List, and (2) documents related to the Mongols Motorcycle Gang ("Mongols").

First, the way in which WPD uses social media to determine whether a person should be placed on, or remain on, the Gang List is central to plaintiffs' constitutional claims. As discussed above, a main allegation in plaintiffs' complaint is that WPD monitors community members'

9

social media accounts to identify evidence that could be used to label individuals as gang members and, further, maintains fake social media profiles in order to befriend members of the community and gain access to photos and other information that allow officers to add people to the Gang List. Plaintiffs allege that their innocuous conduct revealed on social media—such as wearing certain clothes, visiting certain places, and associating with certain people—leads WPD to place them on the Gang List. In just one of many examples, plaintiffs state that WPD added plaintiff Christopher Cooper to the Gang List based on WPD's surveillance of his Facebook account and pictures thereon showing him allegedly wearing "gang colors" and associating with "gang members." (ECF 54 at 3.) Plaintiffs state that, according to a document the City produced, WPD changed 24 individuals' status from "inactive" to "active" on the Gang List based on such social media monitoring in the past five years. (*Id.*)

WPD's use of social media to place individuals on the Gang List—allegedly without evidence of any criminal behavior and without notice to the individuals—is at the crux of plaintiffs' claims challenging the constitutionality of § 21-6313, both facially and as applied by WPD. Plaintiffs' Fourteenth Amendment vagueness claim asserts that WPD's application of § 21-6313 via Policy 527, particularly by social media monitoring, results in arbitrary and discriminatory enforcement of the law. (ECF 1, at 24, 43-44.) Plaintiffs' First Amendment claims similarly allege that WPD's use of social-media surveillance to determine that an individual meets a criterion for inclusion on the Gang List has a chilling effect on their constitutional rights of free expression and association. (*Id.* at 55-56, 58.) And finally, plaintiffs' due process claims allege that WPD places individuals on the Gang List without their knowledge or a process for contesting inclusion. (*Id.* at 45-52.) Information about how WPD uses social media to place someone on the Gang List is relevant to these claims. Plaintiffs explain that "the documents [the City] has

10

produced to date only prove that social media monitoring occurs. The context and guiding documents showing how the WPD goes about its monitoring are crucial" for plaintiffs to prove their constitutional claims. (ECF 54 at 8.) The court agrees.

The second category of documents at issue, those relating to the Mongols, appears to overlap the first category. The court says "appears" because the City has not indicated, even generally, what Mongols-related documents it seeks to withhold under the law enforcement privilege. Rather, the City's entire argument for application of the privilege states, "Other than disclosing that law enforcement does conduct surveillance and intelligence operations regarding the activities of the Mongols, it is unable to further disclose the nature of those activities without disclosure of law enforcement techniques and procedures or otherwise interfering with law enforcement intelligence and investigation activities." (ECF 52, at 8-9.) Understandably, then, plaintiffs' argument that they have a substantial need for documents related to the Mongols is sparse. But plaintiffs explain that previously produced documents show WPD used social media monitoring to find Facebook posts by Mongols members and used those posts to support placing the members on the Gang List. Thus, to the extent the City is asserting the law enforcement privilege over documents related to monitoring the social media accounts of Mongol members, the court finds the documents related to "the principal and material issues of the case" for the same reasons laid out above.

In sum, plaintiffs have demonstrated that the categories of WPD documents the City is withholding under the law enforcement privilege are central to the issues in this case, these documents are in the WPD's possession, and they are not available to plaintiffs by other means. Accordingly, the court finds plaintiffs have demonstrated a substantial need for the documents.

11

The court therefore goes on to weigh plaintiffs' interests in the documents against the City's interests in confidentiality.

As analyzed above, plaintiffs' interest in the documents is substantial because the documents go to the crux of the issues in the case, such that plaintiffs' ability to succeed without them would be undermined. In contrast, the weight of the City's interest in withholding the documents is unclear. The City suggests that producing the documents would "compromis[e] its investigatory and intelligence efforts and assets" and "interfere[e] with law enforcement intelligence and investigation activities." (ECF 52, at 4, 8.) But the City does not elaborate on these broad statements. The City has not, for example, "explained the negative impact on law enforcement activities that would result from disclosure of this information." *United States v. Malik*, No. 15-9092-CM, 2016 WL 3167307, at *11 (D. Kan. June 7, 2016) (holding an FBI Section Chief's declaration adequately explained the FBI's interest in keeping a document confidential and that the interest was not overcome by opposing party's demonstration of substantial need). Nor has the City, for example, offered any cogent explanation regarding the extent of the alleged potential interference with WPD's intelligence efforts. To that extent, plaintiffs point out that the Protective Order contains an "attorneys' eyes only" provision. (*See* ECF 41, at 4 ("Confidential documents containing highly sensitive or confidential information the disclosure of which to another party would pose a risk of serious physical injury to . . . persons (whether parties or non-parties), or *harm to the defendant's investigative and enforcement efforts* may be further designated 'ATTORNEYS' EYES ONLY.'" (emphasis added)).) Although this provision may not be enough to overcome the privilege, it does call into question the City's assertion that producing the documents would harm law enforcement efforts. Given all of these

considerations, the court can find no valid reason to attribute much weight to the City's conclusory assertion regarding its interest in protecting the documents.

In weighing the parties' competing interests, the court finds that plaintiffs' substantial need for the withheld documents in order to properly support their constitutional claims overcomes any interest the City may have in not disclosing the documents under the protective order. Thus, even if the court were to find that the City properly invoked the law enforcement privilege, the court would find that plaintiffs have overcome the qualified privilege and therefore deny the City's request for a protective order on this basis.

## V. THE CITY'S OTHER, BOILERPLATE OBJECTIONS ALSO FAIL TO SUPPORT ENTRY OF A PROTECTIVE ORDER

The bulk of the City's request for a protective order focuses on its assertion of the law enforcement privilege. But the City also relies on boilerplate objections of overbreadth, relevance, and proportionality in arguing the motion. In all but one instance, the City's statements in this regard are wholly conclusive and not supported by argument or authority. *See* ECF 52, at 3 (""For Request No. 36, Plaintiffs have not narrowed their request to any degree."), 5 ("Further, the requested information is either not relevant to the claims or defenses in this case or is not proportional to the needs of the case."), and 8 ("Defendant first asserts an overbreadth objection to [RFP 36.] . . . Plaintiffs have not refined or narrowed the request in any respect."). Such conclusory statements are insufficient to support the City's request for a protective order. *See Ensminger v. Credit L. Ctr., LLC,* No. 19-2147-JWL, 2019 WL 6327421, at *2 (D. Kan. Nov. 26, 2019) (party moving for a protective order "must show a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" (internal quotation and citation omitted)).

The lone exception is the City's overbreadth objection to RFP 19, which sought documents regarding "social media tracking or monitoring by the Gang Unit *or any other departments, units, or divisions of the Wichita Police Department*." (ECF 52-2, at 12 (emphasis added).)  The City argues the use of social media by other units within the WPD would encompass the investigation of "sex crimes and human trafficking and those looking for fugitives or persons with active warrants" and "is beyond the scope of discovery directed at defendant's Gang Database." (ECF 52, at 7.)  Plaintiffs concede that RFP 19 is overbroad in that it could be construed to require the production of "information regarding sex crimes or human trafficking," but plaintiffs assert this argument is a "red herring" and plaintiffs "did not even know that the WPD used social media surveillance in that respect." (ECF 54, at 10 n.2.)  Plaintiffs suggest that the City "is best positioned to propose any limitations of production" responsive to this RFP.  (*Id.*)  The court agrees.  It is apparent that the parties have not adequately met and conferred in an attempt to narrow the scope of RFP 19, so this issue is premature.  *See* FED. R. CIV. P. 26(c)(1) (requiring good-faith conferral); D. Kan. Rule 37.2 (same); *see also* ECF 52, at 1 (certifying the parties "met and conferred on Thursday, April 21, 2022") and ECF 54-1, at 1 (summarizing the parties' April 21 conversation about RFP 19 only as "no responsive documents have yet been produced").

The City has not shown good cause for the entry of a protective order based on its boilerplate, unsupported objections.  The City's motion for a protective order on this basis also is denied.

**IT IS THEREFORE ORDERED** that the City's Motion for Protective Order (ECF 52) is denied.

**IT IS SO ORDERED.**

Dated June 29, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

15