## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PROGENY, a program of Destination Innovations, Inc., CHRISTOPHER COOPER, ELBERT COSTELLO, MARTEL COSTELLO, and JEREMY LEVY, JR., on behalf of themselves and others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 6:21-cv-01100-EFM-ADM |
| CITY OF WICHITA, KANSAS, | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      Kan. Stat. Ann. § 21-6313 ..................................................................... 3

        B.      Wichita Police Department Policy 527 .................................................. 4

        C.      Kan. Stat. Ann. § 21-6313 and WPD Policy 527 do not provide notice, a hearing, an opportunity to challenge list inclusion, or a method for removal from the Gang List ........................................................................................................ 5

        D.      Inclusion on the Gang List comes with serious consequences .............................. 8

III.    CLASS DEFINITION ....................................................................................... 11

IV.     LEGAL STANDARD ........................................................................................ 12

        A.      General class certification standards ..................................................... 12

        B.      Class certification standards in civil rights cases .................................. 13

V.      ARGUMENT ..................................................................................................... 14

        A.      Plaintiffs have properly defined the class ............................................. 14

        B.      Plaintiffs have satisfied the Rule 23(a) requirements .......................... 14

                1.      Numerosity ................................................................................. 15

                2.      Commonality .............................................................................. 15

                3.      Typicality ................................................................................... 18

                4.      Adequacy .................................................................................... 19

        C.      The class satisfies the Rule 23(b)(2) requirements .............................. 21

VI.     CONCLUSION .................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adamson v. Bowen*,
    855 F.2d 668 (10th Cir. 1988) ...................................................23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013).......................................................13

*Bennett v. Sprint Nextel Corp.*,
    298 F.R.D. 498 (D. Kan. 2014)...............................................13, 14

*Coe v. Cross-Lines Retirement Ctr., Inc.*,
    No. 22-2047-EFM, 2023 WL 3664921 (D. Kan. May 24, 2023) .............................20

*Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,
    765 F.3d 1205 (10th Cir. 2014) ................................................15

*Dodds v. Richardson*,
    614 F.3d 1185 (10th Cir. 2010) ................................................17

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
    431 U.S. 395 (1977)........................................................20

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
    No. 17-MD-2785-DDC-TJJ, 2020 WL 1873989 (D. Kan. Feb. 27, 2020) ...........................13

*Floyd v. City of N.Y.*,
    283 F.R.D. 153 (S.D.N.Y. 2012) ...............................................18

*Gen. Tel. Co. of the S.W. v. Falcon*,
    457 U.S. 147 (1982).......................................................19

*Gonzales v. U.S. Immig. & Customs Enf't*,
    975 F.3d 788 (9th Cir. 2020) .................................................18

*Gwinn v. Awmiller*,
    354 F.3d 1211 (10th Cir. 2004) ...............................................17

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004)........................................................17

*Hill v. Colorado*,
    530 U.S. 703 (2000)........................................................17

*Jackson v. Ash*,
  No. 13-CV-2504-EFM, 2014 WL 1230225 (D. Kan. Mar. 25, 2014) ....................................15

*Johnson v. City of Grants Pass*,
  50 F.4th 787 (9th Cir. 2022) .........................................................................................18

*Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*,
  654 F.3d 1073 (10th Cir. 2011) ....................................................................................17

*Milonas v. Williams*,
  691 F.2d 931 (10th Cir. 1982) ..................................................................................18, 19

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  292 F.R.D. 652 (D. Kan. 2013) .....................................................................................16

*NAACP v. Alabama*,
  357 U.S. 449 (1958) .....................................................................................................18

*Payne v. Tri-State CareFlight, LLC*,
  332 F.R.D. 611 (D.N.M. 2019) .....................................................................................19

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso* (*Shook II*),
  543 F.3d 597 (10th Cir. 2008) .................................................................................13, 22

*Shook v. El Paso Cnty.* (*Shook I*),
  386 F.3d 963 (10th Cir. 2004) ......................................................................................13

*DG ex rel. Stricklin v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ............................................16, 18, 19, 22, 23, 25

*Thompson v. Jiffy Lube Int'l, Inc.*,
  250 F.R.D. 607 (D. Kan. 2008) .....................................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .....................................................................................................16

*Vasquez v. Rackauckas*,
  734 F.3d 1025 (9th Cir. 2013) ......................................................................................17

*Vickers v. Gen. Motors Corp.*,
  204 F.R.D. 476 (D. Kan. 2001) .....................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................13, 16, 18

*Zinermon v. Burch*,
  494 U.S. 113 (1990) .....................................................................................................17

iv

**Statutes**

Kan. Stat. Ann. § 21-6313 ..............................................1, 2, 3, 4, 5, 6, 8, 10, 11, 16, 17, 18, 19, 23

Kan. Stat. Ann. §§ 21-6314, 21-6315, 21-6316..........................................................................5, 8

**Other Authorities**

First Amendment ..............................................................................................................8, 18, 19

Fourth Amendment ..................................................................................................................18

7A Charles Alan Wright et al., Federal Practice and Procedure § 1768 (4th ed. 2023) ....................................................................................................................................20

7AA Charles Alan Wright et al., Federal Practice and Procedure § 1887 (3d ed. 2023) ......................................................................................................................................2

Federal Rule of Civil Procedure 23 ...................2, 11, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 25, 26

*Newberg on Class Actions* § 25:25 (4th ed. 2002) .......................................................................14

5 *Moore's Federal Practice - Civil* § 23.43(1)(b) (2023)..............................................................14

Mem. & Order, ECF No. 28 ..........................................................................5, 17, 18, 19

Rule 30(b)(6)...............................................................................................................................7

Rule 65(d) ...............................................................................................................22, 23, 25

## I.    INTRODUCTION

Plaintiffs bring this civil rights class action on behalf of the over 5,000 people on the Wichita Police Department's discriminatory, harmful, and unconstitutional Gang List. The WPD's Gang List policies and the statute that enables those policies, Kan. Stat. Ann. § 21-6313, suffer from a host of constitutional defects that have commonly impacted everyone on the Gang List, subjecting them to increased surveillance, increased risk of incarceration, and impermissible chilling effects on expressive and associational freedoms.

The statute itself is also unconstitutionally vague. The statute allows the WPD to add people to the Gang List if they meet two or three of the statute's ten criteria, but the statute does not define numerous key terms in those criteria. The WPD agrees that this obscurity leaves officers with virtually unbridled discretion to determine whom they should or should not nominate for the Gang List. Indeed, numerous WPD officers and leaders have testified that the statutory criteria are subjective and that different officers can interpret and apply the same criteria differently. It is therefore impossible for citizens to conform their conduct to ensure they will not be labeled as gang members. And witnesses have acknowledged that the statute and WPD Policy 527 could— and indeed, do—cause WPD officers to incorrectly identify Wichita residents as gang members.

Despite their defects, neither the statute nor WPD's policy provide any procedural due process. There is no statutory requirement or policy provision to notify people when they are added to the Gang List, leaving the predominantly Black and Latinx Wichita residents represented on the List to guess whether they are included based on their interactions with law enforcement, or to learn of their inclusion on the List when suffering the effects of that inclusion in their daily lives. Likewise, there is no procedure to challenge the WPD's designation of an individual as a gang member or to request removal from the Gang List. Being added to the Gang List carries numerous weighty consequences, including increased bail, increased surveillance, and increased parole or

probation restrictions under the guise of "public safety." Without any due process, the WPD subjects large swaths of the Wichita community to increased harm and risk of harm, in violation of the Constitution.

The City of Wichita knows the Gang List cannot continue in its current form, but steadfastly refuses to make the necessary changes. Plaintiffs brought this lawsuit to prompt changes to the WPD's policies and practices regarding its Gang List and to promote and protect the constitutional rights of all Wichita residents.

For decades, federal courts have used Federal Rule of Civil Procedure 23 to certify classes in civil rights cases. The drafters of Rule 23(b)(2) designed it to enable civil rights actions—"[b]y their very nature, civil-rights class actions almost invariably involve a plaintiff class."[1] That is precisely the case here. All individuals on the Gang List are entitled to relief from the harmful, degrading, and punitive practices the WPD employs in furtherance of its Gang List.

As set forth below, Plaintiffs ask the Court to certify a class for injunctive and declaratory relief that would require the WPD to update its policies and procedures to comply with the Constitution. The City has deliberately invaded core constitutional rights, causing numerous class-wide harms. Plaintiffs satisfy Rule 23's requirements because they focus their challenge on a common set of facts that raise common questions of law: the constitutionality of Kan. Stat. Ann. § 21-6313 and the WPD's Gang List policies and procedures. Plaintiffs therefore ask the Court to certify a Rule 23(b)(2) class consisting of everyone on the Gang List.

---

[1]     7AA Charles Alan Wright et al., Federal Practice and Procedure § 1887 (3d ed. 2023).

2

## II.      BACKGROUND

### A.       Kan. Stat. Ann. § 21-6313

Kan. Stat. Ann. § 21-6313 allows the WPD to maintain a list of "criminal street gang members" and "criminal street gang associates." The statute provides two ways a person can meet the definition of "criminal street gang member." First, the person can "[a]dmit[] to criminal street gang membership."[2] The statute does not define what it means to admit to gang membership. Alternatively, the WPD can classify a person as a gang member if the person meets three or more of ten criteria—specifically, if the person:

1.  is identified as a criminal street gang member by a parent or guardian;

2.  is identified as a criminal street gang member by a state, county or city law enforcement officer or correctional officer or documented reliable informant;

3.  is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information;

4.  frequents a particular criminal street gang's area;

5.  adopts such gang's style of dress, color, use of hand signs or tattoos;

6.  associates with known criminal street gang members;

7.  has been arrested more than once in the company of identified criminal street gang members for offenses which are consistent with usual criminal street gang activity;

8.  is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation;

9.  has been stopped in the company of known criminal street gang members two or more times; or

10. has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual.[3]

---

[2]      Kan. Stat. Ann. § 21-6313(b)(1).

[3]      *Id.* § 21-6313(b)(2).

The WPD can also classify a person as a gang associate if he admits to "criminal street gang association"—again, the statute does not explain what constitutes admission—or meets two or more of the same ten criteria.[4]

### B.  Wichita Police Department Policy 527

The WPD created the procedures and criteria set forth in WPD Policy 527,[5] and then drafted and lobbied the Kansas legislature to create and implement Kan. Stat. Ann. § 21-6313 to create, maintain, and use the Gang List, and to make this vague statute apply statewide.[6] To identify gang members and gang associates, WPD Policy 527 requires officers to apply the definitions from Kan. Stat. Ann. § 21-6313.[7] Under WPD Policy 527, an identified gang member will be classified as "active" for a minimum of three years, and a "gang associate" will remain identified as a gang associate for a minimum of three years.[8] This three-year period starts over every time there "is documentation of *Criminal Street Gang Member* . . . or *Associate* criteria" or the person is involved in gang activity or a gang-related incident.[9] The policy shifts an individual's status on the Gang List from "active" to "inactive" if, after three years, "there is no documented activity." *Id.* There is, however, no procedure for someone to ever be removed from the Gang List, even if they are classified as inactive or merely as an associate.

---

[4]    *Id.* § 21-6313(d).

[5]    *See* Ex. 1, WPD Policy 527.

[6]    Ex. 2, Easter Dep. 34:5–38:1.

[7]    Ex. 1, WPD Policy 527 at 3.

[8]    *Id.*

[9]    *Id.*

C.      **Kan. Stat. Ann. § 21-6313 and WPD Policy 527 do not provide notice, a hearing, an opportunity to challenge list inclusion, or a method for removal from the Gang List.**

This lawsuit challenges, among other things, the complete absence of procedural protections within Kan. Stat. Ann. § 21-6313 and WPD Policy 527. As this Court previously noted, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are *essential*."[10] Yet those protections are not afforded to anyone added to or remaining on the Gang List.

For example, the statute and WPD Policy 527 do not require the WPD to provide any form of notice before adding someone to the Gang List.[11] Nor do they require any form of a hearing before the WPD can add someone to the list.[12] And, even if someone managed to find out that the WPD had added him to the Gang List, neither the statute nor WPD Policy 527 provide any way to challenge the WPD's decision or any way to be removed from the Gang List.

Kan. Stat. Ann. § 21-6313 and WPD Policy 527 likewise fail to define numerous critical terms that allow officers to designate someone a gang member or associate.[13] The statute and policy do not, for example, define what it means for a person to "self-admit" gang membership or gang association.[14] Nor do the statue or policy define what is meant by a "documented reliable informant," a "particular criminal street gang's area," a "gang's style of dress, color, use of hand

---

[10]     Mem. & Order, ECF No. 28 at 27 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).

[11]     *See* Kan. Stat. Ann. §§ 21-6313, 21-6314, 21-6315, 21-6316; Ex. 1, WPD Policy 527.

[12]     *See* Kan. Stat. Ann. §§ 21-6313, 21-6314, 21-6315, 21-6316; Ex. 1, WPD Policy 527.

[13]     *See* Kan. Stat. Ann. § 21-6313.

[14]     *See id.*; *see also* Ex. 1, WPD Policy 527.

signs or tattoos," or what it means to "associate[] with known criminal street gang members."[15] The lack of any definitions or guidance for these terms has practical consequences.

Because of § 21-6313 and WPD Policy 527's definitional shortcomings, different WPD officers interpret the statute differently.[16] All officers have full discretion when deciding whether to nominate an individual for inclusion on the gang list.[17] Different officers hold differing views on what it means for a person to admit gang membership or gang association.[18] One WPD officer referred to the criteria as "subjective."[19] Members of the city government likewise recognize that WPD policy suffers from constitutional deficiencies, with one Wichita councilman calling the criteria "loosely written" and "too vague."[20]

For example, one of the criteria addresses "gang locations" but WPD officers are left to determine gang locations themselves, based on their own judgment.[21] Officers even testified that street gangs no longer associate with specific geographic locations.[22] WPD officers also interpret

---

[15] *See* Kan. Stat. Ann. § 21-6313(b)(2)(B), (D)–(F); *see also* Ex. 1, WPD Policy 527.

[16] *See, e.g.*, Ex. 3, Hemmert Dep. 180:16–184:5 (testifying that applying the gang statute criteria relies on "context" and admitting that different WPD officers interpret the criteria differently).

[17] Ex. 4, McKenna Dep. 74:22–75:12; 84:2–23 (testifying that an officer has discretion whether to fill out a gang information card for a person who meets the gang membership criteria); Ex. 5, Inkelaar Dep. 84:24–85:17; 86:8–87:8; 91:24–92:3 (testifying that officers have discretion about who to nominate to the Gang List and he has exercised that discretion).

[18] *Compare* Ex. 3, Hemmert Dep. 42:19–43:16 (explaining that some officers required a direct admission made to that officer to select "self admit"); *with* Ex. 6, Beard Dep. 32:7–33:7 (explaining some WPD officers select "self admit" based on other interactions that they overheard rather than direct admission to the officer).

[19] Ex. 7, Nicholson Dep. 144:14–145:11.

[20] Ex. 8, Johnson Dep. 56:7–23, 73:7–24.

[21] Ex. 6, Beard Dep. 78:15–79:11; *see also* Ex. 5, Inkelaar Dep. 115:8–116:24 (testifying that different officers could interpret gang areas differently and apply it differently based on different knowledge and experience).

[22] Ex. 4, McKenna Dep. 121:21–123:12 (testifying that the Internet significantly changed the concept of gang locations); *see also* Ex. 9, Salcido Dep. 148:8–25 ("Most of our gang members are commuters, they commute somewhere to commit a crime and then drive back. But it's not as geography-based gang activity here as in other cities. There's no -- with very few exceptions, there's no gang territory.").

the vague "dress" criterion differently.[23] One officer testified that many people no longer adopt particular dress styles.[24] A WPD Deputy Chief testified that, standing alone, one article of a certain color clothing would be enough to satisfy the dress criterion, even if it was an inaccurate identifier and the person was not a gang member.[25] Yet another officer testified that wearing a particular "color" is not enough—context matters.[26]

Several WPD employees, including the City's designated Rule 30(b)(6) witness, testified that they had been contemplating changes to WPD Policy 527 and related procedures for years, yet they chose not to implement any changes after Plaintiffs filed this lawsuit because the City did not want to give Plaintiffs "prevailing party" status.[27] One WPD officer and a Wichita City Councilmember acknowledged that the statute's vague wording should be changed.[28] Another officer acknowledged that the statute and WPD policy risk incorrectly identifying people in the community as gang members.[29]

Even WPD leadership recognizes the associational harms the Gang List imposes.[30] A former Deputy Chief testified that she avoids publicly interacting with her own family members out of fear she will be classified as a gang associate.[31]

---

[23]     Ex. 5, Inkelaar Dep. 113:3–14.

[24]     Ex. 10, Thatcher Dep. 96:12–97:8.

[25]     Ex. 9, Salcido Dep. 183:8–185:5.

[26]     Ex. 3, Hemmert Dep. 168:11–169:18.

[27]     Ex. 11, Corey Dep. 59:6–60:4; Ex. 12, Beard 30(b)(6) Dep. 16:10–17:15.

[28]     Ex. 6, Beard Dep. 215:24–219:6; Ex. 8, Johnson Dep. 56:7–23.

[29]     Ex. 7, Nicholson Dep. 145:12–16.

[30]     Ex. 6, Beard Dep. 215:24–219:23.

[31]     Ex. 13, Parker-Givens Dep. 62:2–63:13.

**D.      Inclusion on the Gang List leads to serious consequences.**

Being added to the Gang List is no small matter. Kan. Stat. Ann. § 21-6313, WPD Policy 527, and other WPD policing practices impose myriad adverse consequences for people added to the Gang List.

The statute itself imposes heightened bail and release requirements on purported gang members:

> When a criminal street gang member is arrested for a person felony, bail shall be at least $50,000 cash or surety, and such person shall not be released upon the person's own recognizance pursuant to K.S.A. 22-2802, and amendments thereto, unless the court determines on the record that the defendant is not likely to reoffend, an appropriate intensive pre-trial supervision program is available and the defendant agrees to comply with the mandate of such pre-trial supervision.[32]

The WPD also subjects people on the Gang List to increased monitoring and surveillance.[33] For both gang members and gang associates, WPD Policy 527 requires police officers to "monitor documented gang members and associates for any violation of their probation/parole, bond, and pretrial restrictions."[34] The policy also requires officers to report any violations to the relevant authority "with the intent of removing the offender from the community."[35] The WPD also stops motorists on the Gang List for minor traffic violations or other pretextual reasons and uses the

---

[32]      Kan. Stat. Ann. § 21-6316.

[33]      Ex. 6, Beard Dep. 244:2–10.

[34]      Ex. 1, WPD Policy 527 at 1.

[35]      *Id.*

traffic stop to question the occupants and search the vehicle.[36] Additionally, the WPD prepares a daily report about people on the Gang List describing their interactions and activities.[37]

Beyond the consequences imposed by statute and WPD Policy 527, the WPD's practices and procedures inflict additional consequences on people on the Gang List as a practical matter. For example, the WPD "maps" people on the Gang List, which means these people must stay away from certain parts of Wichita as a condition of their probation or parole.[38] When people on the Gang List are charged with crimes, their inclusion on the List is used against them at trial—even if they are not on trial for a gang-related crime.[39] Indeed, WPD officers provide "gang testimony" at criminal trials about the defendant's alleged gang history and violence committed by other members of that gang—even gang violence in which the defendant was not involved—and use that testimony to speculate about the motive of the defendant's alleged crime.[40] Furthermore, the WPD sends individuals' gang status information to the Kansas Department of Correction so KDOC can impose additional security enhancements on people in KDOC custody who are on the WPD's Gang List.[41]

Beyond these carceral consequences, the Gang List directly restricts class members' ability to associate with one another and with their broader communities, chilling their constitutional right to associate. Indeed, several of the statutory criteria for inclusion on the Gang List focus on

---

[36]   Ex. 3, Hemmert Dep. 88:21–89:6; 91:14–92:11.

[37]   *Id.* at 62:19–63:4; 67:16–68:23; Ex. 6, Beard Dep. 37:1–23.

[38]   *See* Ex. 6, Beard Dep. 244:11–245:6.

[39]   *Id.* at 255:18–257:14; 258:5–24.

[40]   *Id.*

[41]   *Id.* at 236:19–237:15.

association. A person meets Kan. Stat. Ann. § 21-6313(b)(2)(F) if he "associates with known criminal street gang members." A person meets Kan. Stat. Ann. § 21-6313(b)(2)(I) if he "has been stopped in the company of known criminal street gang members two or more times."

The direct restrictions on associational freedoms prevent Plaintiffs and the putative class members from exercising their constitutional rights. Plaintiff Elbert Costello helped organize a community Christmas party at a skating rink for a family in need, but the WPD called the skating rink and asked the rink to cancel the event because "gang members" were going to show up.[42] Plaintiff Progeny cannot organize or conduct peaceable assemblies because Progeny worries that an assembly could create grounds for WPD to add Progeny members and event attendees to the Gang List.[43] Being "mapped" as a condition of probation or parole, as described above, precludes mapped individuals from associating with anyone within the proscribed areas.[44]

The Gang List also causes exceptional harm to families' rights to associate. A person could meet the "associates with" criteria if they live with a purported gang member.[45] One WPD officer testified that a person could satisfy the statutory criteria "by accident" or "coincidence"—i.e., "your brother is a gang member, your father is a gang member, or your grandfather is a gang member. It happens."[46] One former WPD officer testified that she was concerned that if the WPD saw her with her niece or nephew in the wrong zip code, then the WPD could place her on the

---

[42]     Ex. 14, E. Costello Dep. 41:24–42:16.

[43]     Ex. 15, Progeny Decl. ¶¶ 20–21.

[44]     Ex. 6, Beard Dep. 244:11–245:6.

[45]     Ex. 10, Thatcher Dep. 99:3–100:1.

[46]     Ex. 16, Gilmore Dep. 140:24–141:22. As a brief reminder of the statute's vagueness, one WPD officer testified that he was not sure if hanging out or riding around with a family member qualified under the "associating with" criteria. Ex. 10, Thatcher Dep. 98:18–99:21.

Gang List and cause issues for her career.[47] She also testified that she feared giving rides to children that she coached on local youth sports teams because of possible association and placement on the Gang List.[48]

In sum, the Gang List forces all putative class members to choose between freely associating with friends and family and avoiding the consequences of the Gang List.

The Gang List also affects class members' right of expression. Kan. Stat. Ann. § 21-6313(b)(2)(E) implicates someone who "adopts [a] gang's style of dress, color, use of hand signs or tattoos." And, as mentioned above, Plaintiff Progeny has declined to hold expressive assemblies out of fear that Progeny members and other community members will be added to or renewed on the Gang List as the result of those events.[49]

## III.   CLASS DEFINITION

Plaintiffs propose to certify the following class under Rule 23(b)(2): All persons included on the Wichita Police Department's Gang List as an active or inactive gang member or gang associate.[50] The City produced the Gang List in discovery. As of June 2022, the WPD Gang List included approximately 5,245 living people, consisting of: 1,728 active gang members, 3,296 inactive gang members, and 221 gang associates.[51]

All of the individual named Plaintiffs in this lawsuit are on the Gang List. Plaintiff Progeny is a non-profit organization in Wichita that operates as a youth-adult partnership.[52] Progeny seeks

---

[47]    Ex. 13, Parker-Givens Dep. 58:10–59:3.

[48]    *Id.* at 62:18–63:13.

[49]    Ex. 15, Progeny Decl. ¶¶ 20–21.

[50]    Compl., ECF No. 1 ¶ 172.

[51]    Ex. 17, Engel Decl. ¶¶ 15–17.

[52]    Ex. 15, Progeny Decl. ¶ 16.

to prevent incarceration of young people, break the school-to-prison pipeline, and direct state funds to community-based programs that provide alternatives to incarceration.[53] Progeny hosts town halls, works with state government leaders, and organizes youth and community leaders.[54] Progeny staff members and youth leaders are on the Gang List and directly subjected to the harms caused by inclusion on the list.[55]

## IV.   LEGAL STANDARD

### A.     General class certification standards

Class certification is a two-step inquiry.

*First*, the plaintiff must satisfy the four requirements of Rule 23(a). This requires showing (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Second*, the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b). Plaintiffs here request certification under Rule 23(b)(2). Under that Rule, certification is appropriate when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]"

---

[53]     *Id.*

[54]     *Id.*

[55]     *Id.* ¶ 17.

The "court 'must accept the substantive allegations of the complaint as true,' but it cannot 'blindly rely on conclusory allegations which parrot Rule 23.'"[56]  Instead, the "district court must engage in its own 'rigorous analysis' of whether 'the prerequisites of Rule 23(a) have been satisfied.'"[57] This "rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim."[58]  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[59] District courts have considerable discretion when deciding whether to certify a class.[60] "In exercising this discretion, the Court should err on the side of class certification because it has the authority to later redefine or even decertify the class if necessary."[61]

## B. Class certification standards in civil rights cases

"Rule 23(b)(2) was drafted in significant measure to enable civil rights actions."[62] The Advisory Committee Notes to the 1966 Amendments to the Federal Rules of Civil Procedure name civil rights cases as illustrative of the type of case for which Rule 23(b)(2) was intended.[63] The leading treatises say the same thing.[64]

---

[56]    *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1873989, at *6 (D. Kan. Feb. 27, 2020) (quoting *Shook v. El Paso Cnty.* (*Shook I*), 386 F.3d 963, 968 (10th Cir. 2004)).

[57]    *Shook I*, 386 F.3d at 968 (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)).

[58]    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal quotation marks omitted).

[59]    *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

[60]    *Shook I*, 386 F.3d at 967–68.

[61]    *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 503 (D. Kan. 2014).

[62]    *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso* (*Shook II*), 543 F.3d 597, 610 (10th Cir. 2008)

[63]    39 F.R.D. 69, 102.

[64]    *Newberg on Class Actions* § 25:25 (4th ed. 2002) ("[C]ertain types of lawsuits, such as those in the criminal justice area, are inherently class actions because individual wrongs can be righted only by institutional

## V.    ARGUMENT

Plaintiffs request the Court certify a class under Rule 23(b)(2). Below, Plaintiffs first explain why they have properly defined the class. Plaintiffs then address the four Rule 23(a) requirements. Last, Plaintiffs explain how this class satisfies the Rule 23(b)(2) requirements for injunctive relief classes.

### A.    Plaintiffs have properly defined the class.

Before considering the Rule 23 criteria, courts first analyze the class definition.[65] The class definition must be "precise, objective, and presently ascertainable."[66] The class definition here easily satisfies these criteria. The proposed class is defined as: "All persons included in the Wichita Police Department's Gang List as an Active or Inactive Gang Member or Gang Associate."[67] This definition precisely and objectively defines the class because the City produced in discovery the complete list of people on the WPD Gang List. With the class properly defined, Plaintiffs next turn to the Rule 23(a) requirements.

### B.    Plaintiffs have satisfied the Rule 23(a) requirements.

To certify a class, the class must first meet the four requirements of Rule 23(a):

- **Numerosity (Rule 23(a)(1))**: The class must be so numerous that joinder of all class members individually is "impracticable."

- **Commonality (Rule 23(a)(2))**: There must be questions of law or fact common to the class.

- **Typicality (Rule 23(a)(3))**: The claims and defenses of the class representatives must be typical of the claims or defenses of the class.

---

reforms affecting an entire class of people."); 5 *Moore's Federal Practice - Civil* § 23.43(1)(b) (2023) ("Rule 23(b)(2) was promulgated . . . essentially as a tool for facilitating civil rights actions.").

[65]    *Vickers v. Gen. Motors Corp.*, 204 F.R.D. 476, 477 (D. Kan. 2001).

[66]    *Bennett*, 298 F.R.D. at 504 (internal quotation marks and citation omitted).

[67]    Compl., ECF No. 1 ¶ 172.

- **Adequacy (Rule 23(a)(4))**: The class representatives must be able to fairly and adequately protect the interests of the class.

Plaintiffs have satisfied each requirement here.

### 1.      Numerosity

To demonstrate numerosity, the plaintiffs must "establish that the class is so numerous as to make joinder impracticable."[68] "While there is no set formula for determining whether a plaintiff meets this requirement, courts have found that classes as small as twenty members can satisfy the numerosity requirement, and a good faith estimate of at least 50 members is a sufficient size to maintain a class action."[69]

Here, Plaintiffs have established the class is well over the "at least 50 members . . . sufficient . . . to maintain a class action."[70] The Gang List shows the exact number of class members: 5,245 living people on the Gang List, consisting of 1,728 active gang members, 3,296 inactive gang members, and 221 gang associates.[71] Joinder of thousands of parties is impracticable. This is precisely the type of situation where proceeding as a class action is appropriate.

### 2.      Commonality

Rule 23(a)(2) requires the plaintiffs to show "there are questions of law or fact common to the class." A single common question of law or fact satisfies this element.[72] Plaintiffs satisfy

---

[68]       *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214 (10th Cir. 2014).

[69]       *Jackson v. Ash*, No. 13-CV-2504-EFM, 2014 WL 1230225, at *3 (D. Kan. Mar. 25, 2014) (internal quotation marks and citations omitted).

[70]       *Id.* (internal quotation marks and citations omitted).

[71]       Ex. 17, Engel Decl. ¶¶ 15–17.

[72]       *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

commonality when their claims "depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[73]  A "common question [under Rule 23(a)(1)] is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"[74] Put otherwise, "[c]ommonality requires plaintiffs to demonstrate that the class members have 'suffered the same injury.'"[75] The Tenth Circuit has held that a challenge to a defendant's policies and procedures can satisfy commonality despite individual differences between class members.[76]

Here, Plaintiffs have focused their lawsuit on a common set of facts: the WPD's policies, procedures, and practices, based on Kan. Stat. Ann. § 21-6313 and WPD Policy 527. All class members, by virtue of being on the WPD's Gang List, have been subject to the same unconstitutional Gang List criteria, Gang List policies, and were added to and remain on the Gang List due to the same procedural deficiencies. All class members were added to the Gang List without notice, a hearing, or any opportunity to challenge their continued inclusion. And the Gang List impacts all class members' "rights of free movement, association, and speech."[77] From this common set of facts, common questions of law arise:

---

[73]     *Wal-Mart*, 564 U.S. at 350.

[74]     *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Newberg* § 4:50, at 196–97).

[75]     *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 667 (D. Kan. 2013) (quoting *Wal-Mart*, 564 U.S. at 350).

[76]     *See DG*, 594 F.3d at 1195 (affirming the certification of a class of foster children who challenged the state agency's foster care policies and practices notwithstanding a "considerabl[y] divers[e]" class because the state agency's policies and practices presented a common issue of fact).

[77]     *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (concluding that city could not include plaintiffs on list for gang injunction without procedural due process based on plaintiffs' protected liberty interests); *see also* Mem. & Order, ECF No. 28 at 26–27 (concluding that Plaintiffs had sufficiently alleged harms to their freedom of movement, association, and speech because they cannot visit certain businesses, associate with friends and family, or wear certain clothes or colors due to the Gang List).

- Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 are unconstitutionally vague because they "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct [they] prohibit[]" or they "authorize[] or even encourage[] arbitrary and discriminatory enforcement."[78]

- Whether people on the Gang List "possess a protected interest such that the due process protections were applicable."[79]

- Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 fail to provide procedural protections required by Due Process and the Constitution before adding someone to the Gang List.[80]

- Whether being on the Gang List deprives people of their liberty interest in their "good name, reputation, honor, or integrity."[81]

- Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 deprive people on the Gang List of their liberty interest in freedom pending trial based on the increased bail requirement.[82]

- Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 have a chilling effect on the freedoms of expression and association of people on the Gang List and unconstitutionally prohibit people on the Gang List from freely associating with friends, family, or community members.[83]

Any one of the above factual or legal questions, standing alone, satisfies the commonality requirement because a "finding of commonality requires only a single question of law or fact

---

[78]    *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

[79]    *Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1078 (10th Cir. 2011); *see also Vasquez*, 734 F.3d at 1042 (concluding that a gang injunction "profoundly implicate[d] liberty interest protected by the Due Process Clause").

[80]    *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (explaining factor test used to determine what procedural protections the Constitution requires); *see also Vasquez*, 734 F.3d at 1042 (concluding that city could not include plaintiffs on list for gang injunction without procedural due process); *Hamdi v. Rumsfeld*, 542 U.S. 507, 532–33 (2004) (holding that petitioner classified as an enemy combatant "must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker").

[81]    *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004).

[82]    *See Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) (examining the rights of people detained pretrial).

[83]    *See NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958).

common to the entire class."[84] Further, an answer to any of these questions "will resolve an issue that is central to the validity of each one of the claims in one stroke."[85] And, despite individual differences between class members—i.e., the specific gang criteria they met, whether they ever had to post heightened bail due to inclusion on the list, or other which other effects they have suffered based on their inclusion—the class satisfies the commonality requirement because every class member is "exposed to the same unreasonable risk of harm as a result of Defendants' unlawful practices."[86]

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "exists where . . . all putative class members are at risk of being subject to the same harmful practices, regardless of any class member's individual circumstances."[87]  "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality."[88] "Provided the claims of Named Plaintiffs and putative class members are based on the same legal or remedial theory, differing fact situations of the putative

---

84      *DG*, 594 F.3d at 1195.

85      *Wal-Mart*, 564 U.S. at 350; s*ee also, e.g.*, *Johnson v. City of Grants Pass*, 50 F.4th 787, 804 (9th Cir. 2022) (finding commonality in case challenging city ordinances where determining constitutionality of ordinance would resolve important issue for all class members); *Gonzales v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 807–09 (9th Cir. 2020) (finding commonality in case challenging sheriff's practice of detaining individuals based on ICE detainers because all class members' claims turned on whether policy violated Fourth Amendment); *Floyd v. City of N.Y.*, 283 F.R.D. 153, 173–74 (S.D.N.Y. 2012) (finding commonality in case challenging police's department-wide stop and frisk policy because constitutional questions raised "central and core questions of law and fact").

86      *DG*, 594 F.3d at 1196; *see also Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) (finding commonality where all boys at school were in danger of being subjected to school's unconstitutional disciplinary practices); Mem. & Order, ECF No. 28 at 20 (concluding that claims "such as First Amendment overbreadth and facial vagueness[] will not require individualized proof").

87      *DG*, 594 F.3d at 1199.

88      *Id.* at 1198.

class members do not defeat typicality."[89] "The commonality and typicality requirements of Rule 23(a) tend to merge,"[90] and "the Tenth Circuit has said that the typicality requirement is satisfied if there are common questions of law or fact."[91]

Typicality is easily satisfied here. Kan. Stat. Ann. § 21-6313, WPD Policy 527, and the WPD's practices and procedures subject all class members[92] to the same unconstitutional processes and expose all class members to the same risk of harm.[93] And, because Plaintiffs have satisfied commonality, they have also satisfied typicality, as explained above.

### 4.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry has two parts. "First, courts must examine whether conflicts of interest exist between the named plaintiffs and the other class members." *Coe v. Cross-Lines Retirement Ctr., Inc.*, No. 22-2047-EFM, 2023 WL 3664921, at *5 (D. Kan. May 24, 2023). "Second, courts must examine the adequacy of the named plaintiffs and their counsel such that the class members can expect vigorous prosecution of the action." *Id.* Plaintiffs satisfy both requirements here.

---

[89]    *Id.*

[90]    *Falcon*, 457 U.S. at 157 n.13.

[91]    *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 661 (D.N.M. 2019) (internal quotation marks and citation omitted) (collecting cases).

[92]    Plaintiff Progeny seeks to represent the class in the claims for which it has standing: the First Amendment and vagueness challenges. Mem. & Order, ECF No. 28 at 18–20 (holding that Progeny has standing to seek relief on its own behalf for violation of its right of association and on behalf of its members for First Amendment overbreadth and facial vagueness).

[93]    *See DG*, 594 F.3d at 1199 (finding typicality where plaintiffs alleged that state agency's foster care monitoring policies exposed all plaintiffs to a risk of harm); *Milonas*, 691 F.2d 931 (10th Cir. 1982) (finding typicality where defendants' disciplinary practices exposed all class members to danger regardless of plaintiffs' individual differences).

To satisfy the first requirement, a "class representative must be part of the class and possess the same interest and suffer the same injury as the putative class members."[94] Only "a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."[95] Here, like the rest of the class, the named Plaintiffs are on the Gang List, or in the case of Progeny, work with individuals on the Gang List. All Plaintiffs have the same interest in ending the WPD's unlawful conduct. And, as explained above, the WPD's policies and practices have subjected the named Plaintiffs to the same unconstitutional Gang List criteria and ramifications as the rest of the class members.

Plaintiffs and their counsel also satisfy the second part of the adequacy test. Plaintiffs have played an active role in this litigation. They have produced hundreds of documents in discovery, stayed updated on the case, responded to written discovery requests, and sat for depositions. Progeny has held events for its membership to discuss the Gang List and its ramifications and the aims of this lawsuit. Each Plaintiff has a direct interest in reforming the Gang List so that it no longer is used to target, stigmatize, and impinge upon the constitutional rights of thousands of people and their broader communities.[96]

Concerning the adequacy of Plaintiff's counsel, "Rule 23(g) now sets forth a specific set of factors relevant to the appointment of class counsel."[97] Rule 23(g) requires the court to consider:

- "[T]he work counsel has done in identifying or investigating potential claims in the action;"

---

[94]   *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation marks and citations omitted).

[95]   7A Charles Alan Wright et al., Federal Practice and Procedure § 1768 (4th ed. 2023).

[96]   *See* Ex. 15, Progeny Decl. ¶¶ 3–21; Ex. 18, Cooper Decl. ¶¶ 4–16; Ex. 19, E. Costello Decl. ¶¶ 4–16; Ex. 20, M. Costello Decl. ¶¶ 4–16; Ex. 21, Levy Decl. ¶¶ 4–16.

[97]   *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 628 (D. Kan. 2008).

- "[C]ounsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;"

- "[C]ounsel's knowledge of the applicable law; and"

- "[T]he resources that counsel will commit to representing the class."

Plaintiffs' counsel are well-respected firms and non-profit organizations with extensive experience in complex and class action litigation, including civil rights cases. The ACLU of Kansas and Kansas Appleseed are two state-wide non-profit organizations that are dedicated to litigating federal civil rights cases, including complex class action claims, on behalf of marginalized communities. Counsel from Shook, Hardy & Bacon have extensive experience in class action litigation on behalf of both private and pro bono clients.[98] Together, class counsel possess the resources necessary to vigorously litigate this action, are committed to pursuing this action on behalf of the class members' best interests, and have no conflicts of interest.[99] Plaintiffs' counsel have demonstrated their skill in this litigation. Class counsel have worked for the past three years to identify, investigate, and develop this case. Counsel have spent thousands of hours investigating the facts of this case, identifying and interviewing potential class members, conducting extensive factual and legal research, propounding and pursuing discovery requests, drafting pleadings and various motions—including largely defeating the City's motion to dismiss—and deposing many WPD officers. Therefore, Plaintiffs and their counsel are adequate.

**C.      The class satisfies the Rule 23(b)(2) requirements.**

Rule 23(b)(2) permits the court to certify a class where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]" At the class certification stage, Rule 23(b)(2) "imposes two

---

[98]      *See* Ex. 17, Engel Decl.; Ex. 22, Brett Decl.; Ex. 23, Woody Decl.

[99]      *Id.*

independent, but related requirements."[100] "First, plaintiffs must demonstrate defendants' actions or inactions are based on grounds generally applicable to all class members."[101] "Second, plaintiffs must also establish the injunctive relief they have requested is appropriate for the class as a whole."[102] "Together, these requirements demand cohesiveness among class members with respect to their injuries."[103]

Cohesiveness also has two elements. "First, plaintiffs must illustrate the class is sufficiently cohesive that any classwide injunctive relief satisfies Rule 65(d)'s requirement that every injunction state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required."[104]  "Second, cohesiveness also requires that class members' injuries are sufficiently similar that they can be remedied in a single injunction without differentiating between class members."[105] "Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage [that] plaintiffs describe in reasonably particular detail the injunctive relief they seek such that the district court can at least conceive of an injunction that would satisfy Rule 65(d)'s requirements, as well as the requirements of Rule 23(b)(2)."[106] Plaintiffs satisfy all of Rule 23(b)(2)'s requirements here.

Plaintiffs have satisfied the requirement that the WPD acted or refused to act on grounds generally applicable to the entire class because the WPD has applied its Gang List policies and

---

[100]       *Shook II*, 543 F.3d at 604.

[101]       *DG*, 594 F.3d at 1199 (internal quotation marks and citation omitted).

[102]       *Id.* (internal quotation marks, citation, and emphasis omitted).

[103]       *Id.* (internal quotation marks and citation omitted).

[104]       *Id.* at 1199–1200 (internal quotation marks and citation omitted).

[105]       *Id.* at 1200 (internal quotation marks and citation omitted).

[106]       *Id.* (internal quotation marks and citation omitted).

procedures generally to the entire class. Though WPD has applied different Gang List criteria to different class members, the WPD's common policy, practices, and procedures—as implemented in WPD Policy 527—apply equally to all class members and exposes all class members to the same risk of harm.[107]

Next, Plaintiffs seek injunctive relief that is appropriate for the class as a whole because Plaintiffs propose a permanent injunction that prevents the WPD from enforcing Kan. Stat. Ann. § 21-6313 and WPD Policy 527 in their current forms. Plaintiffs' proposed injunctive relief requests reforms to the Gang List that would apply to the entire class. These reforms include:

- Eliminating the associate category and removing those designated as associates from the Gang List;

- Eliminating the inactive category and removing inactive people from the Gang List;

- Defining "criminal street gang activity" in WPD Policy 527;

- Only including people who have been convicted of "criminal street gang activity" in the last five years on the Gang List;

- Only including people in known, active gangs on the Gang List;

- Eliminating certain vague, subjective criteria from WPD Policy 527;

- Revising criteria in WPD Policy 527 to clarify what it means for a person to self-admit gang membership or be arrested in the company of known gang members;

- Specifying in WPD Policy 527 that the WPD will not "stop and frisk" people on the Gang List without probable cause and a person's status as an alleged gang member does not constitute reasonable suspicion or probable cause;

- Providing procedures in WPD Policy 527 to notify class members that they have been included on the Gang List;

---

[107] *See id.* at 1202 ("Rule 23(b)(2) does not require Named Plaintiffs to prove [defendant's] controverted policies or practices actually harm or impose a risk of harm upon every class member."); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("That the claims of individual putative class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy.").

- Providing an independent, neutral appeals process in WPD Policy 527 for people to challenge their designation as a gang member;

- Specifying in WPD Policy 527 that people who prevail in appealing their designation as a gang member will automatically be removed from the Gang List;

- Providing a process in WPD Policy 527 for people who are no longer involved in the gang-related activity that led to their inclusion on the Gang List and haven't been involved in the activity for three years to be removed from the Gang List;

- Providing a process in WPD Policy 527 to notify third parties that have received information that a person is on the Gang List and request that those third parties remove that information from their records if the person has successfully appealed their gang member status or otherwise been removed from the Gang List;

- Providing a process in WPD Policy 527 for an annual public report on the Gang List;

- Immediately auditing the Gang List with the revised WPD Policy 527 and removing any people who no longer qualify as gang members;

- Notifying everyone on the Gang List about their inclusion and opportunity to appeal their inclusion;

- Creating procedures to provide new people added to the Gang List with notice, an opportunity to appeal, and instructions for appealing;

- Providing for a yearly independent audit of the Gang List;

- Training all WPD members on the revised WPD Policy 527; and

- Hiring an independent compliance administration to oversee compliance.[108]

These reforms apply to the entire class. For example, after these reforms are implemented, the WPD must notify every class member they are on the Gang List. The WPD will also need to provide every class member with an opportunity to challenge his or her designation. The WPD would be enjoined from using vague, subjective, unconstitutional criteria to add or keep people on the Gang List. The proposed injunctive relief also uses audits and monitoring to ensure accuracy

---

[108]     Ex. 24, Proposed Injunctive Relief.

and compliance. Thus, the proposed injunction sets important constitutional limits on the WPD's use of the Gang List that would benefit the entire class. With the first two elements of Rule 23(b)(2) satisfied, Plaintiffs address cohesiveness.

The above injunctive relief easily satisfies the first element of cohesiveness—"Rule 65(d)'s requirement that every injunction state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required."[109] The proposed injunction revises specific language in WPD Policy 527 and proposes specific additional policies and procedures. Plaintiffs' proposed injunction also satisfies the second element of cohesiveness: "class members' injuries are sufficiently similar that they can be remedied in a single injunction without differentiating between class members."[110] All class members are on the Gang List and all suffer the same injury: exposure to the WPD's unconstitutional Gang List practices and procedures as a result of their inclusion on the List. The proposed injunction promises to remedy the constitutional defects in the WPD's practices and procedures through a single injunction that does not require differentiating between individual class members. As a result, the class is sufficiently cohesive, and Plaintiffs have satisfied Rule 23(b)(2).

## VI.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully ask the Court to certify the class under Rule 23(b)(2).

Dated: June 30, 2023                                    Respectfully submitted,

                                                        SHOOK, HARDY & BACON LLP

                                                        */s/ Mitchell F. Engel*
                                                        Mitchell F. Engel KS #78766
                                                        Paul M. Vogel KSD #79022

---

[109]       *See DG*, 594 F.3d at 1199–1200 (internal quotation marks and citation omitted).

[110]       *Id.* at 1200.

Thomas J. Sullivan (admitted *pro hac vice*)
Jordan C. Baehr KS #27213
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
tsullivan@shb.com
mengel@shb.com
jbaehr@shb.com
pvogel@shb.com

KANSAS APPLESEED CENTER FOR
LAW AND JUSTICE, INC.

*/s/ Teresa A. Woody*
Teresa A. Woody KS #16949
211 E. 8th Street, Suite D
Lawrence, KS   66044
Phone: (785) 251-8160
twoody@kansasappleseed.org

AMERICAN  CIVIL  LIBERTIES  UNION
FOUNDATION OF KANSAS

*/s/ Sharon Brett*
Sharon Brett KS #28696
10561 Barkely Street, Suite 500
Overland Park, KS 66202
Phone: (913) 490-4100
sbrett@aclukansas.org

COUNSEL FOR PLAINTIFFS,
INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses

of all counsel of record.

<u>*/s/ Mitchell F. Engel*         </u>

Attorney for Plaintiffs

27