```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination    )
Innovations, Inc., CHRISTOPHER       )
COOPER, ELBERT COSTELLO, MARTEL      )
COSTELLO, and JEREMY LEVY,JR., on    )
behalf of themselves and others      )Case No.
similarly situated,                  )6:21-CV-01100-
                    Plaintiffs,      )EFM-ADM
       vs                            )
CITY OF WICHITA, KANSAS,             )
                    Defendant.       )
_____)

                  VIDEOTAPED DEPOSITION OF
                        KEVIN MCKENNA
                      December 1, 2022
                         8:31 a.m.


                         Taken at:
                 Joseph, Hollander & Craft
                     500 North Market
                      Wichita, Kansas


         Kathy R. Bonfiglio, CSR-KS, CSR-MO, RPR
```

                                                             1

APPEARANCES:

   On behalf of the Plaintiffs:
      Mr. Jordan C. Baehr
      Mr. Paul M. Vogel
      Mr. Thomas J. Sullivan
      Shook, Hardy & Bacon, LLP
      2555 Grand Boulevard
      Kansas City, Missouri 64108
      (816)474-6550
      Fax: (816)421-5547
      jbaehr@shb.com
      pvogel@shb.com
      tsullivan@shb.com

   On behalf of the Defendant:
      Mr. Charles E. Branson
      Fisher, Patterson, Sayler & Smith, LLP
      3550 S.W. 5th Street
      Topeka, Kansas 66606
      (785)232-7761
      Fax: (785)232-6604
      cbranson@fpsslaw.com

   On behalf of Kansas Appleseed Center for Law and Justice, Inc. (By Zoom)

                                                             2

      Ms. Teresa A. Woody
      211 E. 8th Street, Suite 3
      Lawrence, Kansas 66044
      (785)251-8160
      twoody@kansasappleseed.org

                                                             3

TRANSCRIPT INDEX

APPEARANCES.................................. 2
INDEX OF EXHIBITS............................ 5

EXAMINATION OF KEVIN MCKENNA:
BY MR. BAEHR................................. 6

REPORTER'S CERTIFICATE....................... 237

EXHIBIT CUSTODY
EXHIBITS RETAINED BY COURT REPORTER

                                                             4

this statute that would tell you as an officer okay, a person who is involved with a criminal street gang member in the context of providing them services, that could not be an associate of that criminal street gang member.

    A.  You are correct.

    Q.  Okay.  Now, you as an officer, would you consider someone who was associating with a criminal street gang member in order to provide them professional services, would you say that person is associating with a criminal street gang member?

    A.  No.

    Q.  Okay, so you would make a judgment call not to state that that person met this criteria but it wouldn't be strictly based on the language of the criteria; is that right?

    A.  Correct.

    Q.  So you would employ some unwritten criteria to distinguish between people who associate with criminal street gang members for some purposes from people who associate with them in a way that would make them a likely criminal street gang member; is that right?

    A.  No. By state law you have to be

141

involved in criminal activity.

    Q.  In order to be identified as a member?

    A.  Yes.

    Q.  Okay. Point to me where a criminal street gang member has to be involved in criminal activity in order to be designated as a criminal street gang member.

    A.  No. 2 says, "Having one of the primary activities, the commission of one or more felony violations," and that's part of a street gang is criminal activity.

    Q.  Okay.  And just to clarify, a criminal street gang, a gang itself, is defined as an association or group consisting of three or more persons that commits crimes are is involved in crimes as one of its primary activities; correct?

    MR. BRANSON:  Object to form.

    A.  Correct.

    Q.  (By Mr. Baehr) So the definition of gang requires criminal activity; correct?

    A.  Correct.

    Q.  Section 2 here, though, doesn't set forth the definition of a criminal street gang member.  Do you agree?

    A.  Let's make sure we're talking

142

about the same section.  You're saying this right here, Section 2?

    Q.  Yeah, that begins having as one of its primary activities.

    A.  And the question is?

    Q.  Does that section describe the definition of a criminal street gang member?

    A.  No.  It's one of the requirements.

    Q.  Let me ask you this, okay, according to your understanding.  Does a person who -- does a person have to be involved in criminal activity in order to be listed as a gang member in the Wichita Police Department gang database?

    A.  No.

    Q.  Okay.  A criminal street gang, in order to be designated as a criminal street gang, has to have as one of its primary purposes the commission of crimes?

    A.  Yes, sir.

    Q.  But for an individual to be listed in the gang database, that person doesn't have to be associated with any criminal activity; correct?

    A.  Correct.

    Q.  Okay, and so going -- maybe taking a whole step back, let's just look at Policy 527.

143

Okay?  That would be Exhibit 6.  All right.  Look at the bottom left corner of Exhibit 6 and do you see the word Revised 9-26-2019?

    A.  Yes, sir.

    Q.  To your knowledge is that the most recent version of WPD Policy 527?

    A.  Yes, sir.

    Q.  We discussed earlier some proposed changes or negotiations regarding changes to this policy; is that right?

    A.  Yes, sir.

    Q.  And you understand those to have taken place in the context of the lawsuit that you are being deposed as part of right now; right?

    A.  Yeah.  Those changes have not happened.

    Q.  You understand there's some current negotiation going on regarding the policy', right?

    A.  Yes, sir.

    Q.  You don't have any knowledge of any discussion of proposed changes to the policy outside the context of this lawsuit?

    A.  Correct.

    Q.  In your tenure on the Gang Unit, have you ever been approached by anyone to inform you that there might be some changes to gang list

144

A. Yes, and I am very fair and I'm very honest and I have flagged individuals as associates that meet four criteria. I could make them an active member, but I just made them an associate for right now because I don't want to make them active. I would rather have a solid associate flagging than a weak active flagging and so I am very much -- if I was the gang officer that did it, did my research and made sure that everybody matched, would meet the criteria.

Q. Okay. You made sure that every person who was nominated for inclusion into the gang list met all the criteria that they needed to to be included in the gang list?

A. Yes, and every time I've testified in court I've done an audit on the person I went to testify on the person before I testified to insure that they were an active gang member.

Q. Okay. When you say -- what did that audit consist of?

A. So you just -- if you are going to go testify to somebody else's audit because I mean we have a lot of people in the Gang Unit. If you are going to testify to somebody else's audit or you get called over to court to testify to gang

153

indicia, it's your responsibility to insure that the audit is correct; that they do meet the criteria. And I will go through and if I'm going to swear before a judge and I'm going to testify to that, I'm going to audit that person. So I'm going to go through and insure that everything in there is factual; that everything in there is correct; that they do meet the criteria and that they have met the criteria to still be flagged active and that audit is going through old cases, going through, making sure that it's correct.

Q. Okay, and is it your testimony that you want to make sure that at that time they still meet the criteria as of the day that you are testifying?

A. Correct, yes, sir.

Q. So when you say going through old case data, how does that inform their status as of the date that you are conducting the audit?

A. So again, I'm not going to testify in court to something that somebody else did. So I'm going to do it myself and so that is insuring that those cases that were used to extend that person another three years is a correct case that can be used. So basically what I'm doing is I'm double-checking my checkbook, right?

154

Q. I understand the concept I think but I would like to know more about what exactly that looks like. So how do you verify if, for example, a report that somebody was associating with another gang member is correct?

A. So the report number is listed in the case or in the profile. You would just review that case and see what it's about; read that case and see what it says. If he had contact on this day in this car, that type of stuff.

Q. Okay.

A. Go ahead.

Q. So you wouldn't, for example, go to try to surveil the individual on that date did to see that they were engaging in those activities on that date; correct?

A. Not at all, no.

Q. And somebody that might be in custody or you might not be able to observe them engaging in that type of activities on that date; correct?

A. Yes, sir.

Q. Okay. So you would review police reports regarding their conduct to see that the account given in the report does in fact meet the criteria for inclusion in the gang list within a

155

three-year period prior to your testimony?

A. Yes, sir.

Q. Okay. Why was it important to you to insure that anybody that you were going to testify about their gang status was actually a member of the gang they were being identified with?

A. Because you are testifying in court to it and there's an enhancement to the bond and that is the moral and ethical thing to do is to insure that it is correct and I'm not going to just go off of somebody else's work. If I'm going to swear before a judge and a jury I'm going to be correct about it. That's why it's important to me because I would never give my last name a bad name.

Q. Okay. You made a comment -- or actually let me strike that.

Is it your testimony that you would not go in court and testify that someone was a member of a gang based on -- or let's say associate. Is it your testimony that you would not go into court and testify that someone was a gang associate based on having observed them wearing a Washington Nationals jersey in a night club, sitting at a table with other individuals listed on the gang list?

156

them to decide whether a person who meets the strict express criteria of the statute should be added to the gang database?
  A. Yes.
  Q. Okay. So there may be gang intelligence officers who would put someone into the gang database as a gang associate based strictly on seeing someone sitting at a table with other people listed on the gang list and wearing a Washington Nationals jersey?
    MR. BRANSON: Object to form.
  A. Possibly, yes.
  Q. (By Mr. Baehr) Okay. In your personal view, such an individual might not be affiliated with a gang; is that true?
  A. Correct.
  Q. And you personally would not interpret the simple fact of someone sitting at a table with other people on the gang list and wearing a Washington Nationals jersey as behavior intended to claim membership in the gang.
  A. No. I'm telling you that I would not immediately go enter them into the gang database and flag them as an associate. Okay. That's what I'm telling you.

161

  Q. I understand. You would need to see something more; correct?
  A. Correct.
  Q. And some of that something more isn't necessarily listed in Policy 527 or the statute; right?
  A. Correct.
  Q. Okay. So there may be -- there may be indicia of gang membership that you, as a gang intelligence officer, would find important to determining whether someone is appropriate for inclusion in the gang database that aren't listed in the policy or in the statute.
    MR. BRANSON: Object to form.
  A. Correct.
  Q. (By Mr. Baehr) Okay. On the other hand, a different officer could view it differently; is that right?
  A. Always.
  Q. There could be an officer whose approach to applying Policy 527 and the statute is just to tick the boxes if the person is observed meeting those criteria and enter them in the database; is that right?
  A. Yes, sir.

162

  Q. I know we have been going awhile. I think this is a good time for a break so let's go off the record.
    VIDEOGRAPHER: The time is 12:17 p.m.. We are off the record.
    (Whereupon a recess was taken from 12:17 p.m. to 12:30 p.m.)
    VIDEOGRAPHER: The time is 12:30 p.m. and we're back on the record.
  Q. (By Mr. Baehr) All right. When we went off we were talking about, I think sort of how you applied Policy 527 and the statute as an officer or as a detective if you observed someone in the community who might meet some of the criteria; is that right?
  A. Yes, sir.
  Q. Okay. Part of your role as a gang intelligence officer was to review TOPS cards submitted by other officers; is that correct?
  A. Yes, sir.
  Q. And other officers might apply Policy 527 differently than you would; right?
  A. Yes, sir.
  Q. They might submit a TOPS card for someone that you would not have submitted a TOPS

163

card for?
  A. Yes, sir.
  Q. And they might submit it based on a person meeting the strict criteria of Policy 527 without indicia that you would consider important to identifying if that person was involved in gang lifestyle?
  A. Yes, sir.
  Q. And so part of your job was to review the TOPS card and decide whether to actually add that individual to the database; correct?
  A. Yes, sir.
  Q. And you would conduct additional research to determine whether you should add that individual to the database; is that right?
  A. Yes, sir.
  Q. Did you ever add individuals to the database based purely on the information in the TOPS card?
  A. Yes.
  Q. What would determine whether you added an individual to the database based purely on the TOPS card versus conducting additional research?
  A. Like self-admits, that when they self-admit to being in a gang that would be an easy

164

one to add and not a lot of research has to go into it because they admitted to it.

Q. And in that case the officer would fill out the TOPS card and check the box for self-admission; is that right?

A. Correct.

Q. And then would they provide some explanation of what that admission consisted of?

A. Yes, yes.

Q. They would make a note on the back of the card; is that right?

A. Or in the case file itself if there's a case number related, yes.

Q. Okay, and would they specify, for example, if an individual stated that they had been jumped into a particular gang?

A. Yes.

Q. Or alternatively if the individual had said I am a member of a particular gang?

A. Yes.

Q. Okay. In that case, you wouldn't necessarily have any other way to verify that admission other than the report made by the officer; is that right?

A. Well, now you have AXON so --

165

Q. AXON versus body cameras?

A. Yes, so it's not uncommon for officers to say see the AXON video. So when I was a gang officer we would download the AXON video and put it in the file.

Q. Okay, and so when you were a gang intelligence officer if you got a TOPS card reporting that an individual had self identified as a gang member, and referring you to AXON video, then you would -- before adding that person to the gang database you would view the video and determine whether there was a self-identification; correct?

A. Correct.

Q. Were there times where there wasn't AXON video?

A. Yeah, half my career.

Q. Were there times when you served as a gang intelligence officer, were responsible for reviewing TOPS cards when you weren't -- there wasn't video available to verify a self-identification?

A. Yes.

Q. So there were times when you would get cards, the officer would say that the individual

166

self-identified, provide some description of that self-identification but that's all you had to go on; is that right?

A. Yes, sir.

Q. In those cases you might add that individual to the database based purely on that account on the TOPS card; is that right?

A. Yes.

Q. Were there cases where you might not add an individual to the database based purely on a TOPS card indicating self-identification?

A. No. I mean -- if they self-admitted then they got added. Even if they claimed to be a member of a gang that wasn't in Wichita, right? Let's say you have a guy that wants to be a Skyline Pyru. Well, we aren't in San Diego but we have a Pyru set in Wichita so you would say he self-admitted to be a Skyline Pyru and that is a subset of Pyru so we'll keep him as a Pyru here in Wichita.

Q. Would officers sometimes submit TOPS cards based on a social media post?

A. Not just on a single social media post, no.

Q. Okay. You can't ever recall an incident

167

where someone submitted a TOPS card citing a social media post where an individual identified as a gang member in that post?

A. I personally don't recall. I wouldn't rule it out.

Q. It's possible such a --

A. Yeah.

Q. -- such a card has been submitted?

A. Correct.

Q. But you can't recall such an incident?

A. Yes.

Q. Under your interpretation of Policy 527, that would be a basis for someone to submit a TOPS card on an individual; right?

A. No, not for a self-admit. The person has to tell you to your face that you are that. You have to -- you have to hear them say it. Who's is to say I'm not typing on your account and so an example of a self-admit that I personally have done was on a video visit through the jail. A guy is talking to his mom and he said he's a Crip. He even says he's a rolling Crip. He says this. I saved that video visit and I documented him as a Rolling Crip. So a social media post alone does not make you a gang member. I need more than that.

168

42 (Pages 165 to 168)