## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc.,
CHRISTOPHER COOPER, ELBERT COSTELLO,
MARTEL COSTELLO, and JEREMY LEVY, JR.,
on behalf of themselves and others similarly situated,

Plaintiffs,

vs.                                              Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS,

Defendant.

### Response to Motion for Class Certification, Doc. 175

The City of Wichita opposes class certification.

### I. Introduction

Plaintiffs seek injunctive and declaratory relief alleging generalized unconstitutional complaints about the Wichita Police Department's Gang Database and Master Gang List. Plaintiffs fail to present evidence of continued injury or credible threats of imminent future harms directly caused by the Master Gang List.

K.S.A. 21-6313 is not vague, either facially or as applied to the various Plaintiffs. Criteria for nomination to the WPD Master Gang List is controlled by statute. A nomination to the gang list only suggests someone may meet the criteria for addition to the Master Gang List. A person is not added to the Master Gang List until such person is vetted by trained law enforcement officers assigned to the gang intelligence unit. These gang intelligence officers, applying experience and specialized training, vet each candidate for inclusion to the Master Gang List against the criteria of K.S.A. 21-6313. Only after satisfying that criterion is a person added to the Master Gang List.

The Gang Database is a confidential investigative and intelligence tool used to solve crimes by identifying relationships between people and gangs involved in criminal activity in the City of Wichita. By policy, the Master Gang List and the Gang Database are not shared. Whether someone is on the Master Gang List, or not, is information shared only with law enforcement agencies or the judicial branch pursuant to policy.

Despite being contained in the Kansas criminal code K.S.A. 21-5101, *et seq*., K.S.A. 21-6313 does not proscribe any conduct nor any form of punishment, and does not create a deprivation of life, liberty or property. Likewise, WPD Policy 527 is void of any governmental action that deprives a person of a protected interest. Plaintiffs' evidence of perceived harms reflects speculation and conjecture about their presence on the Gang List and only points to the consequences of criminal activity, which is afforded a myriad of due process protections through the criminal justice system.

Plaintiffs fail to produce evidence of continued injury or immediate future harms and fail to meet the requirements of Fed.R.Civ.P. 23 and this Court should refuse certification.

## II. Statement of Facts

### History of K.S.A. 21-6313

K.S.A. 21-6313 began in the Kansas Legislature as SB 366 in 2006. SB 366 was a packaged proposal to amend the law dealing with criminal related topics including: use of deadly force, criminal street gangs, dollar threshold amount for different criminal offenses to distinguish a misdemeanor from a felony; manufacturing of illegal drugs and drug paraphernalia; sentencing mitigating factors; commercial value of wildlife; and sentencing guidelines. *See* 2006 SB 366 and L. 2006, ch. 194, § 6. The package was lobbied for by the Office of the Kansas Securities Commissioner, the Kansas Bureau of Investigation, and Senator Mike Peterson. The Wichita Mayor tasked the WPD to work on a "gang plan" to address the rising violent crimes mainly

perpetrated by gang members. Doc. 186-2, Easter dep., Vo. I, 36:3-38:10. Because Kansas had an influx of gang members coming in from both California and Oklahoma, law enforcement agencies around the state were claiming individuals were gang members but there were no consistent criteria. Id. at 26:7-17; 36:20-37:3; 54:7-10. After meetings with community groups, consulting with other law enforcement agencies, as well as the Mayor's office and Sedgwick County District Attorney's office, then-Lieutenant Jeff Easter drafted the criteria language, *Id.*; 37:10-15; 19-38:1; 42:17-20. Easter's language was changed by the Revisor's office, introduced, then amended by the Senate Judiciary Committee, then the House Judiciary Committee, and then the Conference Committee. Doc. 186-2, Easter dep., 57:16-19.

K.S.A. 21-6313(a) currently defines a criminal street gang as:

any organization, association or group, whether formal or informal:

(1) Consisting of three or more persons;

(2) having as one of its primary activities the commission of one or more person felonies, person misdemeanors, felony violations of K.S.A. 2022 Supp. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors;

(3) which has a common name or common identifying sign or symbol; and

(4) whose members, individually or collectively, engage in or have engaged in the commission, attempted commission, conspiracy to commit or solicitation of two or more person felonies, person misdemeanors, felony violations of K.S.A. 2022 Supp. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors or any substantially similar offense from another jurisdiction;

K.S.A. 21-6313.

### Operation of K.S.A. 21-6313 and WPD Policy 527

The Master Gang List and the Gang Database are not synonymous. The Gang Database is

the entire collection of law enforcement's intelligence gathering about people the WPD deemed to have been associated with criminal street gang activity as defined by K.S.A. 21-6313(a). Criminal street gangs drive a lot of violent crime occurring in Wichita. Doc. 186-7, Bartel dep., 54:13-14.

The WPD uses database software, FileMaker Pro. Doc. 186-4, Beard dep., 88:9-88:12, 165:20-165:23. When gangs began to infiltrate Wichita in the 1990s, a paper copy listing the known gangs in Wichita existed. Doc. 186-2, Easter dep., Vol. I, 24:7-17. Under a federal grant in 1998-1999, the WPD secured the database FileMaker to document officers' notes focused on violent crime, gangs, and drugs. Doc. 186-4, Beard dep., 165:17-166:6; Doc. 186-3, Salcido dep., 131:22-132:16.

> FileMaker is a cross-platform relational database application from Claris International, a subsidiary of Apple Inc. It integrates a database engine with a graphical user interface (GUI) and security features, allowing users to modify a database by dragging new elements into layouts, screens, or forms. It is available in desktop, server, iOS and web-delivery configurations.
>
> FileMaker Pro, the desktop app, evolved from a DOS application, originally called simply FileMaker, but was then developed primarily for the Apple Macintosh and released in April 1985. It was rebranded as FileMaker Pro in 1990. Since 1992 it has been available for Microsoft Windows and for the classic Mac OS and macOS, and can be used in a cross-platform environment.[1]

The WPD first acquired a license for the database through a grant. Initially FileMaker Pro was a stand-alone system that allowed access by only one person at a time. Doc. 186-4, Beard dep., 88:10-12.  The WPD then acquired licenses through a grant to enable placement of a laptop computer placed in each of the four patrol bureaus.[2] In the early 2000s, approximately 2003-

---

[1] Wikipedia, https://en.wikipedia.org/wiki/FileMaker, last visited August 4, 2023.

[2] The WPD received a grant used to provide laptop computers to each bureau and to the Sheriff's Office that maintained the gang database that provided direct access to the database. Doc. 186-2, Easter dep. VII, 20:22-21:6 The computers and database were created in approximately 1998 or 1999 after the grant. Doc. 186-2, Easter dep. VI, 23:20-24:6

2004, WPD officers had read-only access to the gang database using Mobile Computer Terminals (MCTs) in their patrol cars. Doc. 186-2, Easter dep. VI, 30:9-31:18.

The Gang Database is the repository for gang intelligence data which includes active, inactive, and deceased members and associates of criminal street gangs. Doc. 186-21, Declaration of J Bernard. The Master Gang List consists of the current active members and associates from the Gang Database. Doc. 186-3, Salcido dep., 132:15-16; 223:9-15.

EJustice is a records management system which includes all crime incidents. Doc. 186-3, Salcido dep., 226:25-227:2. Gang intelligence officers are responsible for updating EJustice with gang designations, both adding new documented members and removing inactive members. Doc. 186-4, Beard dep., 82:9-83:1. This requires specialized training. Doc. 186-10, Hemmert dep., 65:18-66:10. Information in EJustice is accessible to WPD Law Enforcement personnel when a name search is conducted. Doc. 186-4, Beard dep., 40:11-41:5. EJustice was replaced by NICHE in April of 2021. Doc. 186-4, Beard dep., 82:16-22. Because EJustice and NICHE perform the same function, the terms are used interchangably—either is correct depending on the time period referenced.

Access to EJustice/NICHE is available to commissioned personnel. Beard dep, 40:1-9. A different law enforcement tool is SPIDER (Special Policy Information Data Entry and Retrieval). Officers can contact SPIDER to request information on outstanding warrants or request other services such as a tow truck. The responder from SPIDER will advise an officer an individual is a gang member by saying "signal 33." Doc. 186-4, Beard dep., 40:11-41:5; Policy 527 § I.D. SPIDER does not have access to the Gang Database but pulls its information from EJustice/Niche. Doc. 186-8, Inkelaar dep., 73:1-7. Non-gang officers could ascertain if a person was documented as a gang member when requesting a records check through SPIDER. Policy

527, § I.D. Under Policy 527, Officers include the gang membership in a probable cause affidavit for person felonies. Doc. 186-8, Inkelaar dep., 73:1-7; Policy 527 § I.C.4.a.2. Inactive members are not visible on SPIDER, or EJustice/NICHE, and cannot be accessed by non-Gang Intelligence Officers. Doc. 186-21, Declaration of J Bernard. The inclusion of gang membership in an affidavit does not apply to people who are inactive in the database as they are not considered to be documented as a current gang member. *Id.* Thus, affidavits for persons who are inactive in the database do not include information about gang documentation.

K.S.A. 21-6313 does not require any act by nor does it prohibit any conduct by citizens. Nor does it impose a sanction, fine, or penalty. WPD Policy 527 does not require any act by nor does it prohibit any conduct by citizens. Nor does it impose a sanction, sanction, fine, or penalty. The Master Gang List is not published.

> The Wichita Police Department Master Gang List is confidential. Information from the Master Gang List will only be released to commissioned law enforcement/correctional officers or those persons authorized by the supervisor of the Gang/Felony Assault Section, VCCRT or Person Crimes Bureau Commander.

Policy 527, § I.A.2.

### Nomination and inclusion in the database: The Gang Database is administered only by Gang Intelligence Officers.

Any WPD officer can nominate someone for inclusion in the database. All WPD officers undergo gang-related training: four hours in the academy and two additional hours annually. Doc. 186-4, Beard dep., 189:16-190:21; 193:1-8. While any officer can nominate someone, the Gang Database is administered only by Gang Intelligence Officers, no other WPD personnel can add a person to the Gang Database, inactivate a person in the Gang Database, or remove a person from the Gang Database. Doc. 186-21, Declaration of J Bernard. Additions to the database, or Master Gang List, is done only by Gang Intelligence Officers who use their training and experience and apply statutory criteria to vetted persons nominated for inclusion. Doc. 186-9,

McKenna dep., 163:17-164:16. Gang Intelligence Officers lean to being underinclusive rather than overinclusive. Doc. 186-9, McKenna dep., 153:1-15. The definition of a street gang member necessarily includes criminal activity. K.S.A. 21-6313(a); Doc. 186-9, McKenna dep., 141:19-142:21. *See* Policy 527 § 1.B.1 ("The information will be researched by a member of the Gang/Felony Assault Section or VCCRT. … . The individual will be added to the Master Gang List if they meet the criteria defined in K.S.A. 21-6313.").

Persons are added to the Gang Database in the first instance either (1) through research and contacts by gang intelligence officers or (2) (a) by nomination for inclusion on the database by non-gang officers followed by (b) review and verification by Gang Intelligence Officers that the subject meets the criteria for inclusion on the Master Gang List. Doc. 186-7, Bartel dep., 127:16-128:15. WPD Policy 527 incorporates by the definitions and criteria in K.S.A. 21-6313. Policy 527, § I.E.1 ("Initial identification will be based upon the aforementioned Criminal Street Gang Member or Associate Criteria found in K.S.A. 21-6313.")

**Criteria to verify documentation as a gang member is not vague.**

To evaluate criteria such as frequenting street gang's area, adoption of a gang's style of dress, color, hand signs or tattoos, and associating with known criminal street gang members, Gang Intelligence Officers use their training, experience, and knowledge of the neighborhoods to make the determinations for inclusion in the Master Gang List. Doc. 186-8, Inkelaar dep., 116:13-24. Gang Intelligence Officers converse with each other and discuss individual situations to make determinations based on their training and experience. Doc. 186-6, Gilmore dep., 150:20-151:9. Incidental contact is insufficient— associating with known gang members requires conduct indicative of joining or connection based on gang affiliation. Doc. 186-21, Declaration of J Bernard. Also, immediate family members are exempted and not employed as a criterion of associating with known gang members. Doc. 186-4, Beard dep., 249:10-14, Doc.

186-21, Declaration of J Bernard.

*K.S.A. 6313(b)(1), "Admits to criminal street gang membership"* – Self-admission is a common method by which gang members and associates are identified. Doc. 186-7, Bartel dep., 136:18-137:5; Doc. 186-4, Beard dep. 31:18-33:7, 56:2-3, 56:19-21; Doc. 186-6, Gilmore dep., 44:7-44:16; Doc. 186-10, Hemmert dep., 42:19-43:22.    Some individuals self-admit because they are proud to be a gang member. Doc. 186-7, Bartel dep., 130:12-23. A lot of individuals are comfortable confirming their membership and do not try to hide it: "it's almost written on a shirt." Doc. 186-12, Thatcher dep., 98:11-17.

Even self-admits are verified by gang intelligence officers through watching the reporting officers' AXON video. Doc. 186-9, McKenna dep., 165:18-166:14; Doc. 186-7, Bartel dep., 120:7-11; 128:18-129:6; Doc. 186-10, Hemmert dep., 182:3-18; Doc. 186-8, Inkelaar dep., 83:15-23; Doc. 186-3, Salcido dep., 197:12-198:5; Doc. 186-9, McKenna dep., 163:17-164:16. Gang Intelligence Officers confirm hearing the person self-admit before adding them to the Master Gang List. A social media post alone does not suffice. Doc. 186-9, McKenna dep., 168:15-25.

*K.S.A. 6313(b)(2)(B) "documented reliable informant"* – People of ordinary intelligence can understand what a reliable informant is and understand what it means to document a reliable informant. WPD Officers are trained to understand the distinctions between a reliable informant and an informant of untested reliability. Officers also understand the information must be documented. Doc. 186-21, Declaration of J Bernard.

*K.S.A. 6313(b)(2)(D) – "frequents a particular criminal street gang's area"* - The WPD does not maintain a map identifying specific gang areas. There are known areas where gang members hang out and engage in criminal activity, Doc. 186-2, Easter dep. Vol. II, 54:21-55:20,

but where gangs congregate changes over time, and people relocate. Doc. 186-21, Declaration of J Bernard. Experience and training inform officers' knowledge of current areas of gang activity. Gang Intelligence Officers are knowledgeable of current gang activities and designate gang areas based on gang activity, including gang-related crime, violence, and drug activity. Gang Intelligence Officers use their training, experience, and knowledge of the neighborhoods to make the determinations for inclusion in the database. Doc. 186-8, Inkelaar dep., 116:13-24. Additionally, mapping is used to track gang crimes and helps determine where resources are needed to support grant writing for additional social services and displacement. Doc. 186-11, Speer dep., 68:19-70:3.

*K.S.A. 6313(b)(2)(E) – "adopts such gang's style of dress, color, use of hand signs or tattoos"-* Identification based on dress utilizes multiple factors at the same time: colors, specific sports teams, and how the attire is worn. Doc. 186-10, Hemmert dep., 46:18-47:11. Trained officers know what to look for and follow up with questions to verify gang identification based on their observations. Doc. 186-6, Gilmore dep., 45:19-46:5. There is a continuity of training for Gang Intelligence Officers to safeguard against variation in interpretations. Doc. 186-10, Hemmert dep., 168:9-18. The dress is, like all criteria, viewed in context. Doc. 186-10, Hemmert dep., 183:3-24; Doc. 186-8, Inkelaar dep., 105:16-106:14; Doc. 186-3, Salcido dep., 183:18-184:14; Doc. 186-12, Thatcher dep., 97:9-98:1.

*K.S.A. 6313(b)(2)(F), "associates with known criminal street gang members"-* To associate with someone is interpreted in its common usage. Inclusion in the database is not based solely of an officer's nomination, the Gang Intelligence Officers conduct additional research before adding the individual to the database. Doc. 186-7, Bartel dep., 120:7-11; 128:18-129:6; Doc. 186-10, Hemmert dep., 182:3-18; Doc. 186-8, Inkelaar dep., 83:15-23; Doc. 186-3, Salcido

dep., 197:12-198:5; Doc. 186-9, McKenna dep., 163:17-164:16.

Determinations by Gang Intelligence Officers for inclusion in the database depend on the totality of circumstances, knowledge and experience. Doc. 186-6, Gilmore dep., 124:19-125:11. Disparate application of the criteria is avoided by training the officers and the context of information used. Doc. 186-10, Hemmert dep., 168:18-169:18. The officers are trained to be familiar with gang-specific information, such as hand signs. The reviewing officer looks at the information with skepticism to ensure there is a very specific reason for inclusion. Doc. 186-10, Hemmert dep., 175:9-176:4. The Courts have recognized many of the Gang Intelligence Officers as experts in the area of gangs and allow them to testify as such in criminal trials. Doc. 186-4, Beard dep., 264:16-22.

Policy 527 requires an annual audit to ensure accuracy and remove expired individuals. Policy 527 § I.E.1. This is a painstaking process in which every name and every case are reviewed every year. Doc. 186-6, Gilmore dep., 98:15-25. The WDP Gang Intelligence Officers understand accuracy is critical. Doc. 186-11, Speer dep., 56:25-57:12. The annual audits consist of reviewing each individual to confirm if they meet the required criteria or determine if they no longer meet criteria. Doc. 186-4, Beard dep., 88:15-89:4, 90:8-11.

WPD removes persons from the Master Gang List if the person goes three years without being involved in anything that meets statutory criteria for a criminal street gang member or associate. Beard 30b6, 21:18-21:23; Policy 527, § I.E.1. Additionally, any person may request a meeting with the gang commander and offer information to challenge inclusion and request removal. Doc. 186-7, Bartel dep., 126:20-127:2; Doc. 186-5, Beard 30b6 dep., 21:24-22:6.

When a person is no longer considered an active gang member or associate, the designation is removed from the WPD records management system, EJustice/NICHE, as a

documented gang member. Doc. 186-7, Bartel dep., 120:11-18, 122:2-24, 141:10-142:6; Doc. 186-4, Beard dep., 77:1-8; Doc. 186-5, Beard 30b6 dep., 21:13-23; Doc. 186-13, Cory dep., 78:7-97:13. This also means SPIDER will no longer notify the person is "signal 33." Doc. 186-21, Declaration of J Bernard. That person's status in the Gang Database is changed from active to inactive and they are no longer on the Master Gang List. Policy 527, § E.1. Thereafter, only the Gang Intelligence Officers have access to view the information in the Gang Database. Doc. 186-7, Bartel dep., 121:24-122:24. The process described in this paragraph generally occurs during the annual audit of the Gang Database. Doc. 186-21, Declaration of J Bernard.

Access to view information on inactive members is restricted even further than access to the Master Gang List. Doc. 186-7, Bartel dep., 122:2-24.; Doc. 186-4, Beard dep., 77:1-8; Doc. 186-5, Beard 30b6 dep., 21:13-23; Doc. 186-13, Cory dep., 78:7-97:13. Thereafter, only the gang intelligence officers have access to view the information in the Gang Database. Doc. 186-7, Bartel dep., 121:24-122:24. The historic information in the database—criminal intelligence—is necessary to effectively investigate, solve and/or prevent crimes in the present. Doc. 186-4, Beard dep., 136:8-17.

Once inactive (*i.e.*, removed from the Master Gang List), a person must again meet criteria (self-admit or meet the required multiple statutory criteria) before again being included on the Master Gang List. Beard 30b6, 26:10-26:20; Policy 527, § I.E.1.

WPD attempts to notify and contact guardians of juveniles about inclusion in the Gang Database. Doc. 186-6, Gilmore dep., 94:8-17; Doc. 186-5, Beard 30b6 dep., 23:9-24:2. Initially, certified letters were sent, but many of those were returned undelivered. Doc. 186-4, Beard dep., 138:22-10. Because sending certified letters was ineffective, officers instead began making phone calls and physically visiting the homes to make contact. Doc. 186-4, Beard dep., 107:4-15;

139:10-23. The attempted contacts were documented in the narrative of the database. *Id.*, 108:15-18. Currently, the gang officers and juvenile intervention unit officers work together and visit the home to make personal contact, making phone calls only when multiple attempts to visit the home and school are unsuccessful. Id., 139:24-140:15; Doc. 186-5, Beard 30b6 dep., 24:9-12.

**The Master Gang List is not published.**

The Master Gang List is not published to anyone; it resides in the Gang Database as persons documented as active gang members or associates. Active gang members and associates are flagged in EJustice/Niche to enable SPIDER and dispatch to advise "Signal 33" to officers. The database itself is not shared with other agencies (since 2008-2009) and information from the database is provided only for approved law enforcement purposes. *See* Policy 527; Doc. 186-21, Declaration of J Bernard.

Plaintiffs' assertion the Gang List is distributed to other parts of the local and federal government, to potential employers, landlords, and licensing agents is untrue. Through discovery, no details could be given regarding the allegation that the list was ever made public. Doc. 186-14, Johnson dep., 52:3-9; Doc. 186-15, Parker-Givens dep., 91:9-23; Doc. 186-11, Speer dep., 94:17-97:9. There is no admissible evidence that the Master Gang List is made public or that it is published—either historically or currently. There are anecdotal stories of the list having once been posted at a barber shop and of a landlord asking for an updated copy of the list. No details could be given regarding the anecdotes that the list was ever made public—nobody has personal knowledge of it happening. Doc. 186-14, Johnson dep., 52:3-9; Doc. 186-15, Parker-Givens dep., 91:9-23; Doc. 186-11, Speer dep., 94:17-97:9. The one known instance of unauthorized disclosure resulted in criminal charges filed against the offending officer. *See State*

*v. Wendell Nicholson, Sedgwick County Case No. 2023-CR-000628-FE*.[3] Nonetheless, safeguards are in place to prevent such publication—the Master Gang List is not printed. While the entries that would comprise the Master Gang List is a query or report that can be produced from the Gang Database, such lists are not created or printed. Doc. 186-21, Declaration of J Bernard. The "lists" produced to plaintiffs in this action were specific queries/reports generated for discovery in this matter subject to the Protective Order herein.

Information on individuals is shared upon request with other law enforcement agencies and detention/correction facilities to ensure the safety of all facilities and the incarcerated. This includes potential conflicts for inmates housed at KDOC for classification determinations and is used for the safety of the transferee/gang member. Doc. 186-21, Declaration of J Bernard. Information from the database (not the database itself) is provided only for approved law enforcement purposes on an individual-by-individual basis. MOUs to maintain confidence are in place with other law enforcement agencies that exchange gang intelligence. Doc. 186-4, Beard dep., 296:3-10; Doc. 186-10, Hemmert dep., 93:22-94:1.

> **Bond, conditions of release, terms of probation and/or parole are not set or imposed by the City. They are set or imposed by the courts, county, and state.**

Bond and bail restrictions are determined and imposed by a judge. K.S.A. 22-2802.

Persons can and do challenge the issue of gang membership at bond hearings. Actual evidence of gang membership is required for such bond hearings, the gang list itself is inadmissible hearsay. K.S.A. 60-460, Fed.R.Evid. 802.

Conditions of release often limit the freedom of contact allowed with other felons, victims, witnesses, and even locations. Judges determine if further restrictions based on associations should be made using the evidence provided to them. Doc. 186-21, Declaration of J

---

[3] The Court can take judicial notice of this court proceeding.

Bernard.

K.S.A. 21-6316 provides, in part, "When a criminal street gang member is arrested for a person felony, bail shall be at least $50,000 cash or surety …." Bond is set by the court and the defendant is afforded a hearing. K.S.A. 22-2802. People can, and do, challenge imposition of the $50,000 bond required by K.S.A. 21-6316. Evidence of gang membership is required for such bond hearings—the Master Gang List is, itself, inadmissible hearsay.

### WPD does not preclude meetings

Progeny is not prohibited from organizing or conducting assemblies. They continue to hold regular meetings, as attested by their 30b6 rep in deposition. Doc. 186-16, Atkins Progeny 30b6 dep., 32:23-25. And their attendance is consistent from pre-pandemic times. Id., 33:5-9. They also host special gatherings for the community. *Id.*, 61:15-19. During deposition, the Executive Director noted both events listed on Progeny's website and several during deposition, the Executive Director noted several additional events to those listed on their website in addition to those listed on their website. *Id.*, 73:20-21. Any event with 2 or more people is deemed successful. *Id.*, 72:9-11.

### Plaintiffs misstate the record regarding "admissions" of harm.

Plaintiffs' motion contends "Even WPD leadership recognizes the associational harms the Gang List imposes. Doc. 186-4, Beard dep. 215:24–219:23." This misstates the testimony provided. Capt. Beard was asked for his opinion on changes he would make to the statute. He suggested a change to require the association to be specific to the gang the individual was suspected of being a member of, not just associations to other gang members. This is how Capt. Beard applied the criteria as a Gang Intelligence Officer and it is how he trained subsequent officers when using association as a criteria. Doc. 186-4, Beard dep. 215:24–219:23.

Plaintiffs' motion contends "the WPD "maps" people on the Gang List, which means

these people must stay away from certain parts of Wichita as a condition of their probation or parole. Doc. 186-4, Beard dep. 244:11–245:6." This misrepresents the testimony provided. Capt. Beard was asked about a document in deposition regarding a program suggested by a community corrections officer to expand the drug mapping program to include gang mapping. Beard understood the locations, chosen by the probation or parole officer, were relevant to where the offense occurred and would require the individual to avoid those areas during certain times of the day. The program began in 2019 or 2020 and was discontinued in April of 2022. Doc. 186-4, Beard dep., 253:22-255:9; Doc. 186-5, Beard 30b6 dep., 190:10-19. In subsequent deposition as WPD's 30b6 designee, Beard explained the mapping project was an effort to assist the Sedgwick County Community Corrections officers in enforcing conditions of probation/parole imposed by a judge. Doc. 186-5, Beard 30b6 dep., 186:8-22. The program mapped less than 15 people in total. *Id*., 187:3-5. It was not effective and was discontinued. Doc. 186-4, Beard dep., 253:22-255:9; Doc. 186-5, Beard 30b6 dep., 190:10-19. Further, the restrictions placed on probation or parole releases are determined by probation and parole, and imposed by the judge, not the City. Doc. 186-15, Parker-Givens dep., 76:6-20; Doc. 186-4, Beard dep., 244:11-245:6. Mapping existed for prostitution and drugs, as well as gangs. Doc. 186-4, Beard dep., 244:11-245:1; Doc. 186-2, Easter dep. Vol. II, 15:7-19; Parker-Givens, 75:23-76:5. Mapping is used to track gang crimes and helps determine where resources are needed to support grant writing for additional social services and displacement. Doc. 186-11, Speer dep., 68:19-70:3. There are known areas where gang members hang out and would have frequent criminal gang activity. Doc. 186-2, Easter dep. Vol. II, 54:21-55:20.

Plaintiffs' motion contends "When people on the Gang List are charged with crimes, their inclusion on the List is used against them at trial—even if they are not on trial for a gang-related

crime. Beard 255:18–257:14; 258:5–24." This misstates the testimony. Cpt. Beard disagreed with counsel's assumption that evidence would not otherwise be admissible, and he clarified the incident would be gang-motivated. Doc. 186-4, Beard dep., 257:22-258:3; 258:16-19. Regardless, admissibility in any given case is a determination made by the trial judge, not the officer testifying. Capt. Beard acknowledged he does not decide what evidence is admissible in each trial. Doc. 186-4, Beard dep., 260:12-23. It is the prosecutor that calls the witness and asks the questions.. Doc. 186-2, Easter dep., Vol. II, 45:19-24.

Plaintiffs' motion contends "a person could meet the "associates with" criteria if they live with a purported gang member. Doc. 186-12, Thatcher dep. 99:3–100:1." And "As a brief reminder of the statute's vagueness, one WPD officer testified that he was not sure if hanging out or riding around with a family member qualified under the "associating with" criteria. Doc. 175.10, Doc. 186-12, Thatcher dep. 98:18–99:21." This misstates the testimony. Thatcher stated multiple times that he didn't know the answers to the questions regarding the statute's criteria, that his job did not involve determining if an individual met the criteria, and he didn't have a lot of experience with gangs. Doc. 186-12, Thatcher dep., 70:13-17; 99:23-100:1.

Plaintiffs' motion contends "a person could satisfy the statutory criteria "by accident" or "coincidence"—i.e., "your brother is a gang member, your father is a gang member, or your grandfather is a gang member. It happens." Doc. 186-6, Gilmore dep. 140:24–141:22. This misstates the testimony. Gilmore admitted one criteria could be met by "coincidence" but also explained that association is only one of the three required criteria. "That's why it's three. So that is the reasoning for that and that is the justification and the way to make sure that someone doesn't get mistakenly identified as a gang member just because they are hanging out with their cousin or their brother that's a gang member because they have to meet two more of those criteria

as well." Doc. 186-6, Gilmore dep., 141:15-141:22.

**The named plaintiffs have no injury.**

Plaintiff Levy's gang affiliation was challenged by his trial counsel in a pre-trial hearing and at trial. Doc. 186-17, Levy dep., 25:23-26:13.

Plaintiff's Levy and Cooper learned they were on the gang list only after being arrested separately for murder—*i.e.*, as part of criminal justice procedings. Complaint Page 48 ¶211, Doc. 186-18, Cooper dep., 38:25-40:6. 40:15-18. Cooper believed he received a $50,000 bond by the judge after he was arrested for murder.  Doc. 186-18, Cooper dep., 40:19-41:11

Plaintiff Cooper does not recall being stopped by police since 2017 Doc. 186-18, Cooper dep., 43:25-44:11.

While on Community Corrections, Plaintiff Cooper contends he was ordered not to associate with family members, namely his cousins Elbert and Martel Costello. Cooper admits, however, his probation conditions forbade him from associating with people gang members and people with felony convictions. Cooper further admits that his cousins, Elbert Costello, Jr and Martel Costello had convictions and he thought they were on the gang list. Doc. 186-18, Cooper dep., 53:3-54:15.

Plaintiff Cooper merely assumed he did not get a job because he was on the gang list and no one called him back after he submitted an application. But admits he does not know why he did not get the job. Doc. 186-18, Cooper dep., 49:21-52:24.

Plaintiff Cooper is not on the Master Gang List. He was removed August 24, 2022. Doc. 186-21, Declaration of J Bernard.

Elbert Costello complains he was subject to increased surveillance during his time on Post-Release Supervision because he was included in the gang list but admits there is nothing in his conditions that reflect an increased supervision due to any gang affiliation.  E. Costell Dep.,

22:4-23:24. Elbert Costello also contends he was subjected to continued harassment by WPD through routine traffic stops but admits it has been more than four years since he was last stopped. Doc. 186-19, E. Costello dep., 23:25-25:2

Elbert Costello admits he was prevented from visiting certain business as a condition of his post-release imposed by his probation officer and that after his discharge in June 2003 no one else put restrictions on him. Doc. 186-19, E. Costello dep., 28:6-29:1. Elbert Costello further acknowledges it is the Court that sets bonds and the probation officer that sets conditions of probation. Doc. 186-19, E. Costello dep., 50:11-17.

Martel Costello was sentenced to probation and given "Gang Conditions" as a condition of his probation by the court of his probation officer. Doc. 186-20, M. Costello dep., 34:21-36:11

Martel Costello identified himself as an "Associate Pirus" on his signed intake and assessment form when incarcerated at Ellsworth Correctional Facility. Doc. 186-20, M. Costello dep., 46:3-17.

**The named plaintiffs met the criteria to be documented as gang members**

Plaintiff Christopher Cooper was first documented in the Gang Database as an assciate in August 2015 employing the criteria: Criteria 4 – Clothing and Dress and Criteria 6 – Photos with documented members and posts regarding documented members. Cooper was then validated as an Active gang member and added to the Master Gang List on 01/30/2018 employing following criteria: Criteria 10 – photo observed posted by Cooper associating with an active member. Doc. 186-22, Declaration of J. Bernard.

There after Cooper was audited and found to meet criteria to remain as a criminal street gang member the following criteria: Criteria 10 – Observed associating with other active members; and Criteria 4 – Cooper was observed in a photo flashing hand blood gang signs. *Id.*

On August 24, 2022, Plaintiff Cooper's status was changed to Inactive, and he was removed from the Master Gang List. Cooper remains in Inactive status. *Id.*

Plaintiff Elbert Costello was first documented in the Gang Database on 3/27/1997 as an "Associate" under the following criteria: Identification by a Law Enforcement Officer and having been contacted with gang members on more than one occasion. Plaintiff Elbert Costello's status was changed to "incarcerated" on 9/21/1999, and then validated as an Active gang member and added to the Master Gang List on 1/14/2002 under the following criteria: Contacted by officers with other active members. *Id.*

Plaintiff Elbert Costello was audited and found to meet criteria to remain as an Active criminal street gang member under the following criteria: Criteria 4 – Gang Tattoo; Arrests for gang activity; Criteria 4 – Dress and Clothing; arrests for a person misdemeanor; Criteria 7 – Contacted with active members 2 or more times; arrested for Felony persons crime; Criteria 7 – Contacted with active members 2 or more times; Arrested for felony drug crimes; Criteria 3 – Identified by an informant to be a known blood gang member; Criteria 10 – Observed associating with other active members; and Criteria 9 – Observed at a known gang hang out location with other active members. *Id.*

Elbert Costello is currently scheduled to remain Active until 1/2/24. *Id.*

Plaintiff Martel Costello was first documented in the Gang Database on 11/17/2011 as an "Associate" under the following criteria: Criteria 4 – observed on social media flashing blood hand signs and wearing blood gang colors; and Criteria 6 – utilizes gang terminology. Martel Costello was audited and found to remain as an "Associate" in the Gang Database under Criteria 7 – Contacted with active members 2 or more times. Martel Costello was validated as an Active gang member and added to the Master Gang List on 4/8/2013 under the following criteria:

Arrested for felony persons crime; Criteria 10 – Observed associating with other active members. *Id.*

Plaintiff Martel Costello was audited and found to meet criteria to remain an Active criminal street gang member on under the following criteria: Criteria 4 – Observed on social media flashing blood hand signs and wearing blood gang colors; Criteria 7 – Contacted with active members 2 or more times; Criteria 10 – Observed associating with other active members; multple arrests for arrest felony drug crimes; Criteria 9 – Frequents known gang location / hangout; arrests for misdemeanor persons crime. Martel Costello's status changed to incarcerated on 2/24/20, then to active after released from work release by KDOC on 1/26/2023. Martel Costello is scheduled to remain Active until 11/29/2025. *Id.*

Plaintiff Jeremy Levy was first documented in the Gang Database and on the Master Gang List on 5/10/2017 as "Active" under the following criteria: Criteria 3 – Identified by an informant; Criteria 5 – Arrested with other members; Criteria 7 – Contacted with other members 2 or more times; and arrested for felony drug crime. On 2/21/2018, Jeremy Levy's status changed to incarcerated and remains in that status currently. *Id.*

Progeny's motion identified four members as being on the gang list. Two are active listed on the Master Gang List and two are inactive and remain in the database.

### III. Argument and Authorities

Inclusion on the Master Gang List creates no deprivation of life, liberty or property because the list, by policy, is confidential. As claimed by Plaintiffs, "most individuals never know they are included in the Wichita's Gang List until … following his or her arrest …." Doc. 1, ¶ 23.

Plaintiffs only speculate that their encounters with law enforcement have been because of their inclusion on the gang list. Plaintiffs acknowledge it is the court that sets bond and probation

officers impose restrictions for probation. Because Plaintiffs can show no harms caused by the statute or the policy, class certification is inappropriate.

## A.     Standard of review

Fed. R. Civ. P. 23 governs class actions in federal court. The prerequisites for class certification are set forth in Rule 23(a) which requires

> (1) Numerosity, that "the class is so numerous that joinder of all members is impracticable,"
>
> (2) Commonality, that "there are questions of law or fact common to the class,"
>
> (3) Typicality, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and
>
> (4) Representative Adequacy, that "the representative parties will fairly and adequately protect the interests of the class."

Fed.R.Civ.P. 23(a)(1)-(4).

The court possesses significant latitude in deciding whether to certify a class or deny certification. *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009). "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive." *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988). Though the Court may accept Plaintiffs' substantive allegations as true, "it 'need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may...consider the legal and factual issues presented by plaintiff's complaints.'" *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 (10th Cir. 1999) (quoting 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 7.26 (3d ed. 1992)).

The requirements of Rule 23 are more than "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule," which requires that plaintiffs prove the

requirements "are in fact" satisfied. *Id*. This requires a rigorous analysis and may necessitate probing beyond the face of pleadings to assure the court the requirements for certification are satisfied. *Id*., at 350. Class certification analysis will frequently entail "overlap with the merits of the plaintiff's underlying claim." *Id*. "That is so because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id*. (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160–161 (1982)). "Rigorous analysis" by the court is required to ensure that the putative class meets the requirements of Rule 23. *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

Plaintiffs must show "under a strict burden of proof" that their putative class meets the requirements of Rule 23. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006), *Reed*, 849 F.2d at 1309. If the four prerequisites are met, Plaintiffs must then show that their case fits within one of the categories described in Rule 23(b). Fed.R.Civ.P. 23(b). Plaintiffs cannot meet this burden.

**B.    Plaintiffs' class definition**

The first deficiency with Plaintiffs' request is how they define the class.

The definition of a class is essential to certification, as it identifies who is entitled to relief, bound by a final judgment, and entitled to notice. *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 444 (D. Kan. 2006) (citing Manual for Complex Litigation § 21.222, at 270 (4th ed. 2005)). It "must be precise, objective, and presently ascertainable." *Id*. at 445 (citing Manual for Complex Litigation § 21.222, at 270). Although there is no requirement at the certification stage to show that each and every putative member sustained an injury, a putative class may be denied certification if enough of its members could not have been injured by a defendant's alleged conduct.

*Macias v. BNSF Ry. Co.*, No. 19-CV-02305-TC-GEB, 2023 WL 3377285, at *1 (D. Kan. May 11, 2023). Plaintiffs' proposed class is overbroad and unnecessary: "All persons included on the Wichita Police Department's Gang List as an active or inactive gang member or gang associate."

*Doc. 175*, at 11.

The proposed class is overbroad because it includes a substantial number of individuals that could not have been harmed by the City's conduct. As an initial matter, the proposed class conflates the Master Gang List with the database. Only persons documented as active gang members and associates in the database are on the Master Gang List. Persons inactive in the database (those who have not met any gang criteria for three years or who are deceased) are not on the Master Gang List.

Policy 527 addresses persons on the "Master Gang List." Doc. 176.1, ¶ I.B. The database contains entries for persons identified as (1) criminal street gang members, (2) criminal street gang associates, (3) inactive, and (4) deceased. The Master Gang List consists of persons documented to be gang members and associates. Persons documented as inactive or deceased are not included on the Master Gang List. Plaintiffs' definition including inactive gang members is overbroad because they are not on the Master Gang List.

Additionally, Plaintiffs' proposed class include juveniles. In an effort to intervene with at risk juveniles, the WPD works to contact guardians of juveniles for intervention and prevention. Doc. 186-6, Gilmore dep., 94:8-17, Policy 527, § I.E.2. Thus, the lack of notice lamented is inapplicable to individuals under age 18.

## C.    **The class has no standing.**

The first deficiency with Plaintiffs' request is they fail to show the has Article III standing. This requires a showing that all members in the putative class have suffered a concrete injury. Standing is a jurisdictional issue. *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002) (citation omitted). Plaintiffs solely seek injunctive and declaratory relief, in other words, prospective relief. While standing on retrospective relief may be based upon past injury, claims for prospective relief require continued

injury or a credible threat of imminent future harm. *Id.* at 1202. If while litigation is pending, the injury abates, plaintiffs lose their standing for prospective relief. *Id.* at 1202.

The "injury in fact" requirement for Article III standing for prospective relief requires that the plaintiff be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 107 n. 8 (1983). The threatened injury must be "certainly impending" and not merely speculative. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000) (quotation omitted). "A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283–84 (10th Cir. 2004).

**D.     Plaintiffs and the putative class members were not and could not have been injured by the City's conduct.**

An additional deficiency with Plaintiffs' request is the motion does not tie any of the class certification arguments to the claims that survived this Court's Memorandum and Order on defendant's motion to dismiss. Plaintiffs' motion, instead, speaks to unproven "harms" and "weighty consequences" they attribute to the Master Gang List. For example:

- "Plaintiffs bring this civil rights class action on behalf of the over 5,000 people on the Wichita Police Department's discriminatory, harmful, and unconstitutional Gang List." Doc. 175, at 6.[4]

- "Being added to the Gang List carries numerous weighty consequences, including increased bail, increased surveillance, and increased parole or probation restrictions under the guise of 'public safety.' Without any due process, the WPD subjects large swaths of the Wichita community to increased harm and risk of harm, in violation of the Constitution." *Id.*, at 6-7.

- "All individuals on the Gang List are entitled to relief from the harmful, degrading, and punitive practices the WPD employs in furtherance of its Gang List." *Id.*, at 7.

- "[T]he associational harms the Gang List imposes." *Id.*, at 12.

---

[4] Page references to plaintiffs' motion are to the ECF stamped page number.

- **"The direct restrictions on associational freedoms prevent Plaintiffs and the putative class members from exercising their constitutional rights." *Id*., at 15.

- "The Gang List also causes exceptional harm to families' rights to associate." *Id*.

Plaintiffs do not show how these allegations support the need for this Court to certify the class. Further, these alleged harms are unsubstantiated.

Plaintiffs are not entitled to injunctive relief on their surviving claims. A substantial deficiency with Plaintiffs' request is their failure to show harm on the remaining claims. Following this Court's Memorandum and Order on defendant's motion to dismiss, Plaintiffs' claims are:

Count I        Vagueness (All Plt's and Class Members)

Count III       Procedural Due Process (named Plt's and Class Members - NOT PROGENY)

Count VI       First Amendment – Association and Expression – direct (All Plt's and Class Members)

Count VII      First Amendment – Association and Expression – chilling (All Plt's and Class Members)

Class certification is inappropriate because plaintiffs and the putative class have not been deprived of any constitutional right nor is any plaintiff or putative class member at risk of continued injury or credible threats of imminent future harms directly caused by the Master Gang List or K.S.A. 21-6313.

## 1.    Void for Vagueness – Count I

The Supreme Court previously held that, whether or not it is labeled as penal, a statute "must meet the challenge that it is unconstitutionally vague." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966). *See also Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring) ("So the happenstance that a law is found in the civil or criminal part of the statute books cannot be dispositive."). *Giaccio* involved a statute that permitted a jury, in its discretion,

to assess costs against an acquitted criminal defendant—*i.e.*, a deprivation of property. The Court stated that a statute is unconstitutionally vague and standardless:

> a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.

*Id*. at 402–03 (citations omitted). The statute did not set out any standards to guide the jury's determination. 382 U.S. at 401. The Supreme Court struck the statute on vagueness grounds, reasoning the utter lack of standards subjected acquitted defendants to "arbitrary and discriminatory impositions of costs." *Id*., at 402. *See also Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.").

While the label of civil or criminal penalty is not dispositive, there is no prohibition, sanction, fine, or penalty in K.S.A. 21-6313 or Policy 527. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring) ("So the happenstance that a law is found in the civil or criminal part of the statute books cannot be dispositive."). The degree of scrutiny required by the vagueness doctrine may vary with the relative severity of the penalty *imposed. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982). The Supreme Court has recognized "that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to government law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). "A statute is unconstitutionally vague for one of two reasons: it either 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what **conduct it prohibits**'; or it 'authorizes

or even encourages arbitrary and discriminatory *enforcement*.'" *Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006) (emphasis added) (quoting *Hill v. Colorado*, 530 U.S. 703, 732, (2000)).

K.S.A. 21-6313 and Policy 527 do not prohibit conduct or regulate speech. *See, e.g.*, *Hamilton v. Roberts*, 165 F.3d 27 (6th Cir. 1998) ("While it's true that police and judges cannot be permitted to define subjectively what will constitute prohibited conduct, MLCC 436.1411 does not permit them to do so."). Plaintiffs fail the first prong.

Plaintiff's allegations hang on the second prong, alleging the policy and statute apply for arbitrary and discriminatory enforcement. When addressing the vagueness challenge in Count I, this Court noted "Plaintiffs allege that they have been put on the Gang List precisely for incidental contacts with friends and family members." *Doc. 28*, at 23. The allegation is not borne out by the record. Plaintiffs lament the use of car stops but there is no evidence of any search occurring without reasonable suspicion and/or probable cause for the search.

> **a.    Not vague on its face**

Even if the application of the statute and policy is viewed as the proximate cause of the consequences imposed on a documented criminal street gang member (it is not: the proximate cause is the individual's involvement in a crime), the statute is not impermissibly vague on its face. The footing for the statute is the definition of criminal street gang. Under K.S.A. 21-6313(a) a criminal street gang consists of three or more people whose have a primary activity that includes the commission of person felonies or misdemeanors or felony drug crimes, the group has a common name, identifying sign or symbol, and the members of the group commit person felonies or misdemeanors or felony drug crimes. The definitions of "criminal street gang member," K.S.A. 21-6313(b)(1) and (b)(2)(A)-(J) each tie back to the definition of criminal street gang. For example, "gang's style of dress, color, use of hand signs or tattoos," or

"associates with known criminal street gang members," K.S.A. 21-6313(b)(2)(D)–(F), each relate to a specific group of three or more people with a common name, identifying sign, or symbol whose primary activities include the commission of person felonies or misdemeanors or felony drug crimes. The WPD applies the plain meaning of "associate" (discussed *infra*) and "associates with known criminal street gang members" to involve something other than incidental contact. The verb associate means "to join as a partner, friend, or companion" or "to join or connect together."[5] Synonyms include "join, combine, unite, connect, link, associate, relate" all meaning "to bring or come together into some manner of union." *Id*. "Admits to criminal street gang membership", K.S.A. 21-6313(b)(1), is not vague. Persons of common intelligence understand what it means to "admit" to being a member of a criminal street gang.

### b.    Not vague in application

Nor are the words used impermissibly vague in its application. There is no evidence that the information in the Gang Database or that the Master Gang List is inaccurate. Though the named plaintiffs dispute their documentation as gang members—the City disputes their denials and presents evidence supporting the documentation. Doc. 186-21, Declaration of J. Bernard. Application of the statute and policy to members in the putative class are likewise not vaguely applied. See *supra, § III.C.2a.*

### 2.    Procedural Due Process – Count III

The due process claim, Count III, is a liberty interest, stigma plus claim that requires that a Plaintiff show that: " (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that

---

[5] Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/associate. Last accessed 8/9/2023.

'significantly altered [his or] her status as a matter of state law.'" *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Paul v. Davis*, 424 U.S. 693, 710–11 (1976)) (alteration in original). "Put simply, the test requires both government defamation and a significant change in the plaintiff's legal status." Doc. 28, at 25. While this Court held Plaintiffs had plausibly alleged that the Gang List is made sufficiently public to injure their reputations, *Doc. 28*, at 25, those allegations are unsupported and belied by the record.

For Plaintiffs' claims to have merit, the Master Gang List would have to be available to the public and the WPD would have to be the entity setting bond/bail amounts and determining probation/parole conditions. Those two underlying premises are untrue.

First, the Gang List is not public. The Master Gang List exists in a secure database with access limited to gang intelligence officers. EJustice/Niche is not connected to/tied to the database. People (officers other than Gang Intelligence Officer and civilian WPD personnel) cannot view or access the Master Gang List through an EJustice/Niche or SPIDER inquiry. Inclusion on the Gang List, in and of itself, carries no consequences for the individual. The consequences complained of relate to limitations imposed as a result of a criminal charge, conviction or sentence with the limitations imposed by an authority other than the WPD. Allegations that the Gang List is distributed by the WPD to other parts of the local and federal government, to potential employers, landlords, and licensing agents are untrue and unsubstantiated. The anecdotes of unauthorized disclosure are not attributable to WPD policy or any authorized disclosure. The single instance of an unauthorized disclosure by a former WPD Captain resulted in criminal charges against him. Plaintiffs fail on the first prong.

"The second element of stigma plus, the "plus" element, requires the plaintiff to show that the government's defamation significantly altered his or her status as a matter of state law.

[The Court discerns that Altered status] often boils down to a question of whether the plaintiff is restricted from doing something significant, because of the government's defamation, that he or she could otherwise do 'in common with the rest of the citizenry.'" *Doc. 28*, at 26 (citation omitted). Plaintiff cannot make this showing.

Inclusion on the Master Gang List does not, by its explicit terms or in practice, create any legal bar or obstacle that prevents Plaintiffs (or the putative class members) from visiting any business, associating with friends and family, or choosing any clothing they desire. Inclusion on the Master Gang List carries no penalty, fine, sanction or restriction.

The "weighty consequences" complained of in Plaintiffs' motion are (1) not consequences compelled or caused by inclusion on the Master Gang List and/or (2) are not deprivations of life, liberty, or property. Bond or "increased bail" occurs only after arrest and charge for a person felony and only have a hearing before a judge. Policy 527 requires that the officer preparing the probable cause affidavit also alert the court to the fact the arrestee is listed as an active gang member or gang associate (such language is not included for inactive members stored only in the database). It is the Court, not the City or WPD, that determines whether bond will be required and, if so, the amount of the bond, after due process protections are afforded. Further, the probable cause affidavits are not public record. K.S.A. 22-2302(c).

"Increased surveillance" is not a deprivation of liberty. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (government investigative and data-gathering activity, without concrete, actual, and imminent injury fails to state a justiciable claim). Parole or probation restrictions are imposed by the courts and state and/or county officials, not the WPD.

Surveillance of known or suspected gang members is not a concrete injury. Nor is monitoring documented gang members for violation of probation, parole, bond, or pretrial

conditions/restrictions. A subjective "chilling" of one's exercise of a constitutional right is insufficient to establish a constitutional violation. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (complaining of the "chilling" effect on exercise of First Amendment rights by mere existence and operation of the intelligence-gathering and distributing system, absent evidence of unlawful surveillance activities presents no justiciable controversy). *See also Fifth Ave. Peace Parade Comm. v. Gray*, 480 F.2d 326, 332 (2d Cir. 1973) (speculative apprehension of future misuse of information absent objective harm presents no justiciable issue). Complaints of police surveillance in public places absent direct injury or objective harm warrant only dismissal. *King v. City of Louisburg*, Kan., No. CIV. A. 96-2156-GTV, 1998 WL 100202, at *5 (D. Kan. Feb. 20, 1998); *Fifth Ave. Peace Parade Comm. v. Gray*, 480 F.2d 326, 331 (2d Cir. 1973) (plaintiffs failed to show FBI surveillance caused any specific harm and therefore failed to present a justiciable controversy); *Donohoe v. Duling*, 465 F.2d 196, 199 (4th Cir. 1972) (no harm found when plaintiff's claim of intimidation or injury is purely conjectural and speculative, without any positive proof in support). Plaintiffs fail the second prong.

### 3.    Freedom of association, Counts VI and VII

"Unless laws 'create suspect classifications or impinge upon constitutionally protected rights,' *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 40 (1973), it need only be shown that they bear 'some rational relationship to a legitimate state purpose' *id.*, at 44." *City of Dallas v. Stanglin*, 490 U.S. 19, 23 (1989). In *Roberts v. U.S. Jaycees*, the Supreme Court enumerated the types of government actions that may unconstitutionally infringe upon the right of association, (1) imposition of penalties based on association, (2) withholding benefits, (3) requiring disclosure of membership in a group seeking anonymity, (3) and interference with the internal organization or affairs of the group. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622–23 (1984). In *Roberts*, the Court held that the "application of the Minnesota statute to compel the

Jaycees to accept women" did not infringe the organization's First Amendment "freedom of expressive association." 468 U.S. at 622. The public accommodations law did "not aim at the suppression of speech" and did "not distinguish between prohibited and permitted activity on the basis of viewpoint." *Id.*, at 623–624.

Similarly here, inclusion on the Master Gang List imposes no restrictions on an individual's association. Plaintiff's acknowledge "most individuals never know they are included in the Wichita's Gang List until . . . following his or her arrest…" ECF 1 Page 7 ¶ 23. K.S.A. 21-6313 and WPD Policy 527 do not restrict anyone's right to associate—whether with family, friends, other criminal gang members, or persons attending meetings of a non-profit organization. The statute and policy require nothing of plaintiffs and they do not prevent plaintiffs from engaging in any conduct whatever. Any restriction is imposed by a different entity accompanied by the opportunity for a hearing.

## E.    Commonality, Rule 23(a)(2) and Typicality, Rule 23(a)(3)

In addition to failing to define the class and make a showing of standing or harm, Plaintiffs cannot meet the required element of commonality. Class certification is appropriate only if there are questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). But the questions of fact and law that plaintiffs focus upon are either (1) not borne by the record or (2) not material to the claims.

*Dukes* imposes a higher threshold on demonstrating commonality. Showing commonality requires not just showing common questions but showing an ability to generate common answers through class-wide proof. 564 U.S. at 349-50.

> The crux of this case is commonality—the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." Rule 23(a)(2).5 That language is easy to misread, since "[a]ny competently crafted class complaint literally raises common 'questions.' " *Nagareda, Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 131–132 (2009). For example: Do all of us

plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," *Falcon, supra*, at 157. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same superior. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

"What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Nagareda, supra, at 132.

*Id.* The necessary "common answers" here do not exist. Each individual listed on the Master Gang List would have to show 1) their listing is not warranted, and 2) how they—individually—are harmed as a direct result of their inclusion. The four named Plaintiffs fail to do so; for the same reasons, any putative class member would also fail.

Plaintiffs attempt to show commonality in a unilateral way: being on a list. This simplistic desire falls short of what the Rule requires.  Furthermore, Plaintiffs in no way show the injuries alleged are "typical" of those suffered by all persons on the list. They admit most people are unaware of their inclusion. Each individual has a different set of circumstances for their inclusion. Thus, "the claims or defenses of the representative parties" as to why they should/should not be listed are not "typical of the claims or defenses of the class,"

## F.    Rule 23(b)(2) - Cohesion

Plaintiffs advance their putative class under Rule 23(b)(2), which applies where "the

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Under Rule 23(b)(2): (1) Defendants' "actions or inactions must be based on grounds generally applicable to all class members," and (2) final injunctive relief must be "appropriate for the class as a whole." *Shook II*, 543 F.3d at 604. The Tenth Circuit describes this requirement as one demanding "a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification." *Id*. The necessary cohesion is lacking here.

Under Rule 23(b)(2), certification is appropriate only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). There are two independent but related requirements under Rule 23(b)(2): (1) first, the action or inaction by defendant must be based on grounds generally applicable to all class members, (2) second, final injunctive relief be appropriate for the class as a whole. *Shook v. Board of County Commissioners*, 543 F.3d 597, 604 (10th Cir. 2008) (*Shook II*). This posits inquiry of the relationship between the proposed class, the claims injury/injuries, and the relief sought. *Id*. The rule requires that the class be "'amenable to uniform group remedies.'" *Id*. (quoting *Shook v. El Paso County*, 386 F.3d 963, 973 (10th Cir. 2004) (*Shook I*)). Thus, "Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification." *Id*.

Cohesiveness first requires that class be sufficiently cohesive that any classwide injunctive relief satisfies the requirement of Rule 65(d) by stating "'its terms specifically; and describe in reasonable detail ... the act or acts restrained or required,'" *Id.* (quoting Fed.R.Civ.P.

65(d)(1) Second, "[a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant." 5 Moore's Fed. Prac. § 23.43(2)(b) at 23–195 (3d.2000). "So, if redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members, 'the suit could become unmanageable and little value would be gained in proceeding as a class action.'" *Shook II*, 543 F.3d at 604 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir.1998).

Cohesiveness is lacking here, Plaintiffs' proposed injunctive relief is unwarranted and improper. They do not address any concrete injury or credible threats of imminent future harms directly caused by the Master Gang List. See the list below:

- Eliminating the associate category and removing those designated as associates from the Gang List;

  o There is no injury or harm to Associates (or Active Gang Members)

- Eliminating the inactive category and removing inactive people from the Gang List;

  o Inactives are not a category on the Master Gang List. Making a person inactive removes a person from the Master Gang List.

- Defining "criminal street gang activity" in WPD Policy 527;

  o WPD Policy 527 incorporates the definition of criminal street gang activity which is defined at K.S.A. 21-6313(c).

- Only including people who have been convicted of "criminal street gang activity" in the last five years on the Gang List;

  o A person need not have been convicted of criminal street gang activity to be a street gang member or associate. This requested injunctive relief is tantamount to telling the WPD to wait until the milk has spilled and run down the drain before trying to do anything about it. Requiring the police to wait for a conviction before the police can collect criminal intelligence is nonsensical.

- Only including people in known, active gangs on the Gang List;

- o      The WPD only includes persons in known, active gangs on the Master Gang list.

- Eliminating certain vague, subjective criteria from WPD Policy 527;

  - o      This fails to meet the requirement of Rule providing terms specifically that describe in reasonable detail the acts restrained or required.

- Revising criteria in WPD Policy 527 to clarify what it means for a person to self-admit gang membership or be arrested in the company of known gang members.

  - o      First the terms are self-explanatory. If plaintiffs believe otherwise, fails to meet the requirement of Rule providing terms specifically that describe in reasonable detail the acts restrained or required.

- Specifying in WPD Policy 527 that the WPD will not "stop and frisk" people on the Gang List without probable cause and a person's status as an alleged gang member does not constitute reasonable suspicion or probable cause.

  - o      There is no allegation or evidence that the WPD stops and frisks absent reasonable suspicion and/or probable cause.

- Providing procedures in WPD Policy 527 to notify class members that they have been included on the Gang List.

  - o      As discussed elsewhere, inclusion on the Master Gang List carries no punishment, sanction, fine, or penalty. The inclusion in a criminal intelligence database deprives no person of their constitutional rights.

- Providing an independent, neutral appeals process in WPD Policy 527 for people to challenge their designation as a gang member;

  - o      People have challenged their inclusion on the gang list and, when appropriate, they are removed.

- Specifying in WPD Policy 527 that people who prevail in appealing their designation as a gang member will automatically be removed from the Gang List;

  - o      People have challenged their inclusion on the gang list and, when appropriate, they are removed.

- Providing a process in WPD Policy 527 for people who are no longer involved in the gang-related activity that led to their inclusion on the Gang List and haven't been involved in the activity for three years to be removed from the Gang List;

  - o      Existing policy and practice requires that people who cease gang activity be removed from the Master Gang List after three years.

- Providing a process in WPD Policy 527 to notify third parties that have received information that a person is on the Gang List and request that those third parties remove that information from their records if the person has successfully appealed their gang member status or otherwise been removed from the Gang List;

  o The only information shared with "third parties" (the courts and other law enforcement agencies) is current information.

- Providing a process in WPD Policy 527 for an annual public report on the Gang List;

  o The Master Gang List is confidential.

- Immediately auditing the Gang List with the revised WPD Policy 527 and removing any people who no longer qualify as gang members;

  o The Master Gang List is audited annually and persons who do not meet criteria for a period of three years are removed.

- Notifying everyone on the Gang List about their inclusion and opportunity to appeal their inclusion;

  o Inclusion on the Master Gang List does not deprive anyone of any constitutional right. The "harms" complained of are speculative or arise from the consequences of encounters with the criminal justice system where due process is afforded.

- Creating procedures to provide new people added to the Gang List with notice, an opportunity to appeal, and instructions for appealing;

  o Inclusion on the Master Gang List does not deprive anyone of any constitutional right. The "harms" complained of are speculative or arise from the consequences of encounters with the criminal justice system where due process is afforded.

- Providing for a yearly independent audit of the Gang List;

  o The Master Gang List is audited annually.

- Training all WPD members on the revised WPD Policy 527; and

  o All WPD officers are trained on Policy 527 in both the Academy as recruits and annually.

- Hiring an independent compliance administration to oversee compliance.

o This fails to meet the requirement of Rule providing terms specifically that describe in reasonable detail the acts restrained or required as to who would be

considered qualified in this area, above the expert gang intelligence officers

## IV.    Conclusion

Plaintiffs' motion for class certification should be denied. Plaintiffs and the putative class lack Article III standing. On the record and evidence, Plaintiffs and the putative class do not show a concrete injury or a credible threat of imminent future harm caused by the WPD's Master Gang List. The proposed class includes persons who are not on the Master Gang List and Plaintiff Cooper is not on the Master Gang List. Commonality and cohesion is lacking. Plaintiffs' complaint acknowledges that many of those on the Master Gang List do not know they are documents as gang members. Many on the Master Gang List admit their gang membership. The evidence shows that many proudly proclaim gang membership. Simply put, the proposed class does not identify persons entitled to relief.

The Gang Database and the Master Gang list serve important functions as repositories for criminal intelligence. The database and list are confidential, are not published. Any deprivations of liberty arise not from the database or list, but from the use of the collected intelligence during criminal proceedings accompanies by the myriad of due process protections afforded under the code of criminal procedure.

K.S.A. 21-6313 is not facially invalid nor it is invalid as applied. WPD Policy 527 causes no injury to plaintiffs or the putative class.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/David R. Cooper**
David R. Cooper                    #16690
Charles E. Branson                 #17376
**Attorneys for Defendant**

Jennifer L. Magaña, #15519
City Attorney
Sharon L. Dickgrafe, #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, Kansas 67202
P: (316) 268-4681 | F: (316) 268-4335
sdickgrafe@wichita.gov
**Attorneys for City of Wichita**

## Certificate of Service

On August 11, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

Teresa A. Woody, KS #16949
KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC.
211 E. 8th Street, Suite D | Lawrence, KS 66044
Tel: (785) 251-8160
twoody@kansasappleseed.org

Sharon Brett, KS #28696 | Karen Leve, KS #29580
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS
10561 Barkley Street, Suite 500 | Overland Park, KS 66212
Tel: (913) 490-4100
sbrett@aclukansas.org
kleve@aclukansas.org

Thomas J. Sullivan | *admitted Pro Hac Vice* | Mitchell F. Engel, KSD #78766 |
Jordan C. Baehr, KS #27213 | Paul M. Vogel, KSD #79022
SHOOK, HARDY & BACON, LLP | 2555 Grand Blvd., Kansas City, MO 64108
Tel: (816) 474-6550 | Fax: (816) 421-5547
tsullivan@shb.com
mengel@shb.com
jbaehr@shb.com
pvogel@shb.com
**Attorneys for Plaintiffs**

**s/David R. Cooper**