UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGENY, A PROGRAM OF DESTINATION
INNOVATIONS INC., et al., on behalf of
themselves and others similarly situated,

        Plaintiffs,

        v.

CITY OF WICHITA, KANSAS,

        Defendant.

Case No. 21-1100-EFM-ADM

## PRETRIAL ORDER

On August 30, 2023, U.S. Magistrate Judge Angel D. Mitchell conducted a pretrial conference in this case. Plaintiffs Progeny, Christopher Cooper, Elbert Costello, Martel Costello, and Jeremy Levy, Jr. appeared through counsel Sharon Brett, Teresa Woody, Paul Vogel, Mitchell Engel, Karen Leve, and Jordan Baehr. Defendant City of Wichita appeared through counsel David Cooper and Charles Branson.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by the parties' consent and the court's approval, or by order of the court to prevent manifest injustice. *See* Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(a).

## 1. PRELIMINARY MATTERS.

    **a.** **Subject-Matter Jurisdiction.** Plaintiffs invoke subject-matter jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2202. Defendant disputes plaintiffs' standing to bring their claims.

    **b.** **Personal Jurisdiction.** The court's personal jurisdiction over the parties is not disputed.

    **c.** **Venue.** Venue in this court is not disputed.

     **d.**    **Governing Law.**  Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

- 42 U.S.C. §§ 1983 and 1988;

- the First, Fourth, and Fourteenth Amendments to the United States Constitution;

- Federal Rule of Civil Procedure 23;

- KAN. STAT. ANN. § 21-6313 and § 21-6316; and

- Wichita Police Department ("WPD") Policy 527.

**2.**    **STIPULATIONS.**

    **a.**    The following facts are stipulated:

1. The WPD employs roughly 600 officers and oversees a jurisdiction spanning 163.6 square miles, with a population of roughly 395,000.

2. The WPD is a department of the City of Wichita ("the City") government and is responsible for enacting the City's policies.

3. The Chief of Police is the department head of the WPD.  The Chief is responsible for WPD policies and procedures, their use and maintenance, and general oversight of the WPD.  Gordon Ramsay ("Chief Ramsay") held this position from 2016 to 2022, and Joe Sullivan is the current Chief of Police.

4. Through the WPD, the City maintains and uses a Gang Database under color of state law—specifically, the authority of KAN. STAT. ANN. § 21-6313, *et seq.*

5. The WPD uses the information stored in the Gang Database to generate a Master Gang List of alleged active gang members and associates, sometimes referred to simply as the "gang list."

6. The WPD maintains and uses its Gang Database pursuant to KAN. STAT. ANN. § 21-6313 and WPD Policy 527, as last amended September 26, 2019.

7. The Gang Database includes those gangs that the WPD claims are "criminal street gangs" as defined by KAN. STAT. ANN. § 21-6313(a).

8.      Under KAN. STAT. ANN. § 21-6313(a), a "criminal street gang" means any organization, association, or group, whether formal or informal:

(1)  Consisting of three or more persons;

(2) having as one of its primary activities the commission of one or more person felonies, person misdemeanors, felony violations of K.S.A. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors;

(3) which has a common name or common identifying sign or symbol; and

(4) whose members, individually or collectively, engage in or have engaged in the commission, attempted commission, conspiracy to commit or solicitation of two or more person felonies, person misdemeanors, felony violations of K.S.A. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors or any substantially similar offense from another jurisdiction.

9.      The Gang Database contains entries of persons, both juveniles and adults, identified as either a "member" or "associate" of a criminal street gang.

10.     The Gang Database also contains entries of persons previously identified as either a "member" or "associate" of a criminal street gang who are "inactive" or "deceased."

11.     KAN. STAT. ANN. § 21-6313(b) defines "criminal street gang member" and provides the criteria that WPD uses to identify a person as a "criminal street gang member" within the Gang Database.  KAN. STAT. ANN. § 21-6313(d) defines "criminal street gang associate" and provides the criteria that WPD uses to identify a person as a "criminal street gang associate" within the Gang Database.

12.     Under KAN. STAT. ANN. § 21-6313(b), a "criminal street gang member" is a person who:

(1) Admits to criminal street gang membership; or

(2) Meets three or more of the following criteria:

(A) Is identified as a criminal street gang member by a parent or guardian;

3

(B) Is identified as a criminal street gang member by a state, county or city law enforcement officer or documented reliable informant;

(C) Is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information;

(D) Frequents a particular criminal street gang's area;

(E) Adopts such gang's style of dress, color, use of hand signs or tattoos;

(F) Associates with known criminal street gang members;

(G) Has been arrested more than once in the company of identified criminal street gang members for offenses which are consistent with usual criminal street gang activity;

(H) Is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation;

(I) Has been stopped in the company of known criminal street gang member two or more times; or

(J) Has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual.

13. Under KAN. STAT. ANN. § 21-6313(d), a "criminal street gang associate" is a person who:

(1) Admits to criminal street gang association; or

(2) meets two or more defining criteria for criminal street gang membership described in K.S.A. 21-6313(b)(2).

14. In 2007, former WPD Gang Unit Lieutenant and current Sedgwick County Sheriff Jeff Easter ("Easter") initially drafted the proposed bill that would ultimately become § 21-6313 at the request of and under the authority of Mayor Carl Brewer and WPD Chief Norman Williams. Easter sought to standardize the criteria for the whole state and used Florida, Kentucky, and Georgia's existing state laws as reference. Easter's proposal included the $50,000 bond-increase requirement.

15. WPD Policy 527 is the policy that governs the WPD's use and maintenance of its Gang Database. The WPD created the procedures and criteria set forth

4

in Policy 527 to identify gang members and gang associates.  The policy requires officers to apply the criteria in § 21-6313.

16.     All WPD policies are reviewed either annually or twenty-four months from the date changes were last approved, or from the last review date if no changes were made.  Policy 527 is on the twenty-four-month review schedule.  Policy 527 was last revised September 26, 2019.  Policy 527 was distributed for review in August 2021 and a determination was made that the policy would not be revised while this lawsuit was pending.

17.     The WPD conducted an audit in 2006 to determine whether the gangs in the Gang Database met the § 21-6313(a) definition of a "criminal street gang." The WPD no longer has documentation of that audit.  The WPD trusts that the officers properly applied the criteria in 2006.

18.     During the 2006 audit, WPD Gang Intelligence Officers were expected to determine whether the gangs in the database met § 21-6313 criteria, but the WPD no longer has knowledge of what the individual officers did when doing so.  Changes made as a result of that audit were not documented other than within the database itself.

19.     The WPD performs a yearly audit that includes researching each active member of the Master Gang List.

20.     Policy 527 requires nominations for inclusion on the Master Gang List to be researched by a member of the Gang/Felony Assault Section ("the Gang Unit") or Violent Crimes Community Response Team (the "VCCRT"). Only gang intelligence officers can add individuals to the Gang Database.

21.     Under WPD Policy 527, any state, county, or city law enforcement officer or correctional officer may nominate a person to be added to the Gang Database as either a "member" or "associate" of a criminal street gang, based on the criteria set forth in § 21-6313.

22.     Nominations for including an individual in the Gang Database may be made by electronic submission, completion of a written Targeted Offender Program ("TOPS") card, or otherwise providing the nominee's personal information to the Gang Unit.

23.     Gang Intelligence Officers within the Gang Unit evaluate nominations to the Gang Database with reference to the criteria set forth in § 21-6313 and WPD Policy 527.  If the Gang Intelligence Officer determines that a person meets the criteria and should be added to the Gang Database, that Officer will create a Gang Database entry identifying the person as either a criminal street gang member or a criminal street gang associate.  Gang Intelligence Officers are the ones solely responsible for maintaining the Gang Database.

24. No WPD policy sets forth criteria or considerations for including individuals in the WPD Gang Database other than the criteria set forth in § 21-6313.

25. Section 21-6313 does not prohibit officers from counting a single act or statement toward more than one criterion.

26. WPD Policy 527 allows officers to nominate an individual for inclusion in the Gang Database based on a single criterion, rather than requiring them to gather evidence through additional research and monitoring. Nominations are routed to the Gang Unit where a member of the Gang Unit or VCCRT researches the information.

27. No WPD policy requires that any WPD personnel have personal contact or interaction with any individual before nominating or adding that individual to the Gang Database.

28. No WPD policy requires that an adult person identified as a gang member or gang associate and added to or included in the WPD Gang Database be provided notice of their designation as a gang member or gang associate and inclusion in the Gang Database.

29. There is no notification process for an adult added to the Gang Database or Master Gang List, including instances where an adult is first added, where an adult is updated and their time extended, or if the adult is moved from inactive to active status.

30. No WPD policy requires that a juvenile identified as a gang member or gang associate and added to or included in the WPD Gang Database, or the parent or guardian thereof, be successfully notified of the juvenile's designation as a gang member or gang associate and inclusion in the gang database.

31. When it is determined that a juvenile meets the gang member or associate criteria under § 21-6313, WPD policy requires that a supervisor from the Gang Unit "will attempt to contact the parent and/or guardian of the juvenile," who "will be told how the juvenile met the gang criteria and will be informed of intervention options and resources."

32. WPD Policy 527 was revised in 2017 to include a notification requirement for juveniles.

33. The WPD has successfully notified no more than 50% of juveniles identified as gang members or gang associates and added to or included in the WPD Gang Database, or the parents or guardians thereof, of the juvenile's designation as a gang member or gang associate and inclusion in the Gang Database.

34.  Under current WPD policy, a person the WPD identifies as a gang member or gang associate and the WPD adds to or includes in the WPD Gang Database might never learn that the WPD added them to its Gang Database.

35.  Under current WPD policy, a person the WPD identifies as a gang member or gang associate and adds to or includes in the WPD Gang Database might first learn that the WPD added them to its Gang Database when arrested for or charged with a crime, when applying for bail, or when admission of purported gang status evidence is sought in criminal proceedings against that person.

36.  No WPD policy requires that any person identified as a gang member or gang associate and added to or included in the WPD Gang Database be provided an opportunity to challenge their designation as a gang member or gang associate and inclusion in the Gang Database.

37.  There are no ascertainable, documented incidences of the WPD removing a person from its Gang Database in response to that person's request to be removed.

38.  Once added to the Gang Database, a person remains in the Database as either an "active" or "inactive" gang member or associate in perpetuity. There is no WPD policy providing any process for a person identified as a gang member or associate in the Gang Database to be fully removed or deleted from the Database.

39.  While there is no WPD policy addressing removal from the Gang Database beyond being moved to "inactive" status, one non-policy-based exception to this is known where a juvenile was asked to "have good grades in school" and "do well at home" for a certain time.  Lt. Gilmore spoke with the juvenile's parents to decide what "good grades" should look like.  After "several months," Chief Ramsay directed that the juvenile be removed from the Master Gang List.

40.  A person added to the Gang Database will remain identified as an "active" gang member or associate for a minimum of three years, not including any time spent incarcerated during that period.  If WPD personnel report that person to meet any of the criteria for gang membership or associateship under § 21-6313 and Policy 527 during the initial or any subsequent three-year period, that person will remain identified as an "active" gang member or associate for an additional three years from the date of that report.  WPD personnel actively monitor individuals listed in the Gang Database for evidence of behavior meeting the gang identification criteria, including through surveillance and social-media monitoring.

41.  WPD personnel frequently maintain or renew individuals' designations as active criminal street gang members in the WPD Gang Database for an

additional three years based solely on information that officers observe on social media.

42.     As of May 2022, at least 5,507 individuals had entries in the Gang Database. Of these, 1,725 are documented as active gang members, 3,293 are documented as inactive gang members, 221 are listed as gang associates, and 261 are documented as deceased.

43.     WPD officers may ascertain whether an individual is identified as a gang member or associate in the Gang Database by inquiring from the department's Special Police Information Data Entry and Retrieval ("SPIDER") system or directly from a Gang Intelligence Officer.

44.     According to Policy 527, Gang Intelligence Officers or the WPD supervisor of the Gang Unit, VCCRT, or Person Crimes Bureau Commander may share the fact an individual has been identified as a gang member with other municipal, county, state, and federal law enforcement officers and agencies.

45.     In certain cases, designated WPD personnel testify at criminal trials regarding the WPD's designation of an accused criminal defendant as a gang member or associate.

46.     Policy 527 requires WPD officers to identify, in an arrest affidavit for a person felony, whether a person is documented in the Master Gang List or Gang Database as a gang member or gang associate.

47.     Policy 527 provides stock language for WPD officers to use when identifying, in arrest affidavits, individuals as gang members or gang associates, as documented in the Master Gang Database or Gang Database. This language includes:

- The arrested party is a documented criminal street gang 'MEMBER' as defined in K.S.A. 21-6313. The arrested party meets State guidelines for a criminal street gang 'MEMBER', and was documented in the W.P.D. gang database on_____ (date of offense) as a 'MEMBER' of the _____ (name of gang) criminal street gang.

- Or -

- The arrested party is a documented street gang 'ASSOCIATE' as defined in K.S.A. 21-6313. The arrested party meets State guidelines for a criminal street gang 'ASSOCIATE', and was documented in the W.P.D. gang database on_____(date of offense) as an 'ASSOCIATE' of the _____ (name of gang) criminal street gang.

48.   Historically, but not currently, WPD officers have entered individuals' WPD gang designations into the National Crime Information Center ("NCIC") criminal information index, making those individuals' gang identifications available to all law enforcement officers in the United States.

49.   The majority of WPD personnel who have been assigned to the Gang Unit, VCCRT, and other WPD units or divisions responsible for carrying out Policy 527 are white.

50.   The majority of WPD personnel who have served as Gang Intelligence Officers for WPD have been white, and the majority of current WPD Gang Intelligence Officers are white.

51.   The majority of individuals documented as gang members or associates in WPD's Gang Database are Black.

52.   Approximately 29.5% of individuals documented as gang members or associates in WPD's Gang Database are Latinx or Hispanic.

53.   13.74% of individuals documented as gang members or associates in the WPD's Gang Database are white.

54.   The City, through the WPD, maintains and operates the Gang Database as part of an official policy, custom, or practice.

55.   Plaintiffs have been or currently are listed in the Gang Database as active gang members.  Elbert Costello was added in 1997, Martel Costello in 2011, Christopher Cooper in 2015, and Jeremy Levy in 2017.

56.   Progeny is a non-profit organization based in Wichita that seeks to assist youth involved in the criminal legal system and to work towards reducing and eventually eliminating what Progeny considers to be the myriad harms caused by the juvenile justice system.

57.   Progeny staff and members have been listed in the Gang Database, including D.B.W. (inactive gang member), D.B. (active gang member), K.C. (active gang member), and A.M. (active gang member).

**b.**   The parties have stipulated to the admissibility of all exhibits used in witness depositions taken in this case exhibits for purposes of summary judgment. The parties agree to revisit stipulations regarding the admissibility of exhibits at trial, at a date prior to trial.

**c.**   The parties have stipulated to the authenticity of the following documents for purposes of summary judgment and trial:

      **i.**      All documents produced in discovery.

      **ii.**      Unredacted Affidavit of Detective Brandon Monroe filed on May 23, 2023 in *State of Kansas v. Wendell E. Nicholson*, Case No. 2023-CR-000628-FE, Eighteenth Judicial District, District Court, Sedgwick County, Kansas (PLFS00001978–97)

## 3.    FACTUAL CONTENTIONS.

### a.    Plaintiffs' Factual Contentions.

The City's Gang Database[1] and Master Gang List violates plaintiffs' constitutional rights. The WPD has used and maintained them for decades.  Easter authored the statute while employed at the WPD based on criteria the WPD already used; his proposal was then submitted to the City's law department, which made minor changes; and it was then submitted it to a state legislative committee that did not make significant changes.  WPD Policy 527 requires officers to apply the definitions Easter authored in § 21-6313.  The WPD only reviews Policy 527 every 24 months because it is considered a non-"critical" policy.  Both Policy 527 and §§ 21-6313, *et seq.* are unconstitutionally vague, and the WPD's application of Policy 527 violates plaintiffs' First and Fourteenth Amendment rights.

### i.    Vagueness/Overbreadth

Policy 527 contains numerous vague and overbroad terms.  For example, no WPD policy or other authority defines the term "documented reliable informant" or "particular criminal street gang's area," or establishes criteria for determining what constitutes a "particular street gang's area."  Different WPD personnel may interpret and apply these criteria differently.  Consequently, individuals may only learn that the WPD considers certain areas of the city or businesses to be

---

[1] WPD personnel and policy use the terms "Gang Database" and "gang list" interchangeably, but they are distinguished below as necessary.

"gang areas" when they are prohibited from frequenting those areas or businesses as a condition of probation or parole. The WPD considers some private businesses and personal residential houses to be "a particular criminal street gang's area." WPD officers acknowledge that street gangs are no longer associated with specific geographic locations. Likewise, no WPD policy or other authority defines what it means to "frequent[]" a particular criminal street gang's area. Visiting a family member that lives at a residence the WPD has designated as a criminal street gang's area could satisfy the criterion of "frequents a particular criminal street gang's area." Living at a residence the WPD has designated as a criminal street gang's area could also satisfy the criterion of "frequents a particular criminal street gang's area." So there is no way for an individual to know how to avoid going into a particular street gang's area for purposes of avoiding being included in WPD's Gang Database.

Other provisions of Policy 527 and § 21-6313 are equally broad and not sufficiently defined. For example, no WPD policy or authority defines or limits the number or variety of "style[s] of dress," "colors," "hand signs," or "tattoos," *see* § 21-6313(b)(2)(E), that WPD personnel may consider to be associated with criminal street gangs. WPD personnel have considered at least the colors blue, red, green, black, brown, yellow, and orange, as well as the color combinations red/brown, black/grey/white, black/gold/red, red/white, black/silver/grey, orange/grey, and navy blue/black to be associated with criminal street gangs. WPD personnel have considered clothing and tattoos associated with the Kansas City Chiefs, Denver Broncos, Dallas Cowboys, Pittsburgh Steelers, Oakland/Las Vegas Raiders, New York Jets, Boston Red Sox, Seattle Mariners, Washington Nationals, Montreal Expos, Philadelphia Phillies, Atlanta Braves, Oakland A's, Los Angeles Angels, Kansas City Royals, St. Louis Cardinals, St. Louis Blues, Chicago Bulls, North Carolina Tar Heels, Notre Dame Fighting Irish, Kansas, Nebraska,

Miami, Tampa Bay, Cincinnati, and Green Bay to be associated with criminal street gangs.  WPD personnel associate clothing and/or tattoos for some of these teams with multiple different gangs. No WPD policy defines what it means to "adopt" these colors, clothing, hand signs, or tattoos.

The WPD uses other broad categories to define things that WPD considers to be "gang-related"—for example, WPD training materials identify "Anti-Police Tattoo" as a type of gang tattoo.  Importantly, the WPD does not make known to the public any list or other documented designation of the geographic areas, locations, styles of dress, colors, hand signs, or tattoos that it considers to be affiliated with gang membership.  This leads to misidentifying people as gang members.  For example, the Gang Unit once mistook a historically Black fraternity (Kappa Alpha Psi) as a gang because the fraternity's colors are crimson and cream.  The Gang Unit believed the fraternity's planned gathering was a gang party even though respected community members, including doctors, attended the event as fraternity members.

Similarly, no WPD policy or other authority defines what it means to "associate[]" with known criminal street gang members, *see* § 21-6313(b)(2)(F).  There is no minimum number of times a person must interact with a known criminal street gang member to meet this criterion. Different WPD personnel may interpret and apply this criterion differently.  Also, the WPD considers contacts between a person and members of any gang, not just the gang that the person is believed to be a member or associate of.  WPD officers track and surveil the social and recreational activities of certain members of the Wichita community to bolster including those individuals on the Gang Database.  For example, the WPD documents the names of all individuals who attend certain concerts or community events.  WPD officers routinely surveil certain places they believe to be associated with gangs.  The WPD adds individuals to the Gang Database because officers witness them "hanging out" at those locations, or associating with other people who are at those

locations.  The WPD has identified individuals as "associat[ing] with known criminal street gang members" when those individuals have simply been in the company of their own family members who are also included in the WPD Gang Database.

Different WPD personnel may interpret and apply the criteria for criminal street gang membership or criminal street gang associateship differently when deciding whether to nominate or add an individual to the Gang Database or maintain that individual's gang status as "active" within the Database.  The statute allows Gang Intelligence Officers to add individuals directly to the Gang Database without review by any other WPD personnel.  The criteria are subjective.  WPD officers disagree whether a person must do more than strictly meet three or more criteria under § 21-6313 and WPD Policy 527 to be designated as a criminal street gang member.  Some officers require additional "context" or apparent intent to claim gang membership in order to designate an individual as a gang member, whereas others look strictly to the criteria without concern for whether a person is in fact in a gang.

Finally, no WPD policy or other authority requires that an admission of gang membership or associateship, *see* § 21-6313(b)(1) or (d)(1), as reported by WPD personnel, be corroborated by any other evidence.  A self-admission means different things to different officers.  No WPD policy requires reviewing officer body camera footage of purported self-admissions, even where that footage is available.

The vagueness in § 21-6313 and WPD Policy 527, including the lack of definitions as described above, leads to inconsistent and arbitrary enforcement of WPD Policy 527 against the Wichita community without proper checks and balances.

ii.      **Over-Inclusivity and Inaccuracy in the Gang Database and Master Gang List**

Because of the vagueness and overbreadth described above, some individuals are designated as gang members or associates in the Gang Database who maintain that they are not, or have never been, a member or associate of a criminal street gang.  WPD personnel are aware of individuals who meet three or more criteria of criminal street gang membership, but the WPD has not designated those individuals gang members in the Gang Database.  Some WPD personnel themselves meet two or more criteria of criminal street gang membership or associateship, yet they are not designated as gang members or associates in the Gang Database.  Some WPD and Sedgwick County personnel have stated affiliation with "Three-Percenters," a criminal militia group whose members have been indicted and convicted for organized federal criminal activity, yet those personnel are not designated as criminal street gang members or associates in the Gang Database.  A person could meet three or more criteria and not actually be a gang member.  A person need not be convicted of, charged with, accused of, or suspected of participation in any criminal act.  Some individuals are listed in the Gang Database who have never been charged with or convicted of any criminal act and/or no WPD documentation exists showing they have been accused or suspected of criminal activity.  Importantly, inaccurate gang designations can undermine community trust in the WPD, making law enforcement more difficult.

Classifying an individual as a member or associate of a criminal street gang requires the actual existence of a valid criminal street gang as defined by § 21-6313(a), as officers cannot document someone as a member or associate of a nonexistent gang.  But some gangs listed in the Gang Database may not meet the criteria for a "criminal street gang."  In at least one instance, the WPD counted a deceased person to satisfy the § 21-6313 criteria of "three or more" persons to establish a new gang.  Some persons are designated as gang members or associates who are the

only member or associate of their purported gang.  The WPD's yearly audit does not include examining whether gangs listed in the Gang Database continue to satisfy § 21-6313's definition for a criminal street gang.

WPD officers have wide discretion whether to nominate an individual who meets one or more of the criteria for gang membership.  Some officers nominate more people to the Gang Database than others.  Even if an individual meets three criteria for gang membership, a Gang Intelligence Officer might exercise discretion and choose not to add them to the Gang Database or add that person as an associate instead of a member.  WPD personnel also nominate and add individuals who are from, and reside in, cities other than Wichita.  And WPD personnel nominate and add individuals as members or associates of criminal street gangs that have no known presence in Wichita.  This discretion leads overincluding individuals in the Gang Database who do not belong there.

### iii. Sharing the Master Gang List and Information from the Gang Database

Information in the Gang Database has been disseminated to the public.  A printed copy of entries identifying all individuals on the WPD Gang List was once disclosed publicly after being left on the trunk of a WPD squad car.  A gang bulletin containing names of gang members and their respective gangs was publicly posted at a barber shop in Wichita.  The information was pulled from the Gang Database by WPD personnel and circulated to outside law enforcement personnel, who then forwarded it to an unauthorized person who printed the posted bulletin.  Former WPD Captain Wendell Nicholson ("Nicholson") was charged with and subsequently received diversion for crimes where the underlying facts included at least 22 instances of publicly sharing information derived from the Gang Database, including identifying individuals listed in the Gang Database and their alleged gang affiliations.  This occurred during the time Nicholson was employed with the

WPD.   On at least one occasion, former WPD Officer Donielle Watson ("Watson") shared information with Section 8 housing authority employee Angela Cox about purported gang members living and hanging out at a residence on East Kensington, leading to eviction proceedings being initiated against those individuals.   This approach is consistent with gang suppression strategies shared with Watson and with University of Kansas law enforcement training materials. On at least one occasion, local reporters appeared aware of who was on the Master Gang List or in the Gang Database.

WPD personnel regularly share individuals' gang designation or other information from the Gang Database with other municipal, county, state, and federal law enforcement officers and agencies.   The WPD shares its Gang Database information with the Sedgwick County District Attorney's Office.   Prosecutors can seek the enhanced $50,000 minimum bail for individuals the WPD deems gang members or associates.   At one point, the Sedgwick County Sheriff's Office had direct access to the WPD Gang Database.   The Sheriff's Office maintains an open line of communication with the WPD about individuals in the Gang Database.   Easter testified that intelligence corporals in the Sheriff's Office may have direct access to the Gang Database or can at least access information about the Gang Database by calling the county jail.   The WPD also shares Gang Database information with the Kansas Department of Corrections.   Names and photos of persons designated as gang members or associates by the WPD are disclosed in WPD trainings to all commissioned officers, and shared with resource officers present in Wichita schools.

### iv.      Racial Disparities in the Makeup of the WPD Gang Database and WPD Gang Unit

Although plaintiffs' Equal Protection Clause claim was previously dismissed by the Court, the racial makeup of both the Gang Unit and the Gang Database provides insight into how the WPD uses WPD Policy 527 to track, surveil, and harass predominantly communities of color.   This

is relevant for standing and likelihood of future harm to plaintiffs and the class members they represent.

Officers of color are, and historically have been, underrepresented in the WPD's Gang Unit, VCCRT, and other WPD units or divisions responsible for implementing Policy 527, including in positions of leadership. Some WPD officers of color are qualified for leadership positions in the Gang Unit but have not been promoted or assigned to those positions.

The Gang Database contains a disproportionate number of persons of color in relation to the population of the City of Wichita. Black and Latinx people are overrepresented on the Gang Database. The WPD has not conducted any research into why Black and Latinx individuals make up the majority of people in the Gang Database and has no plans to conduct such research. The WPD has been keeping information about the racial makeup of the Gang Database since at least the mid-1990s. The WPD has been aware that there are more African Americans than white individuals documented in the Gang Database since at least 2003. The WPD is aware of a 2021 report a disproportionate number of African Americans are documented in the Gang Database, including 1 out of every 34 African American residents of Wichita. The WPD does not contest the accuracy of the report's demographic statistics but has taken no action in response to the report.

**v.       Class-Wide Harms Created by § 21-6313 and WPD Policy 527**

Current and former WPD personnel have recognized problems with Policy 527 and the Gang Database, including the lack of notice to individuals placed in the Database and on the Gang List, the lack of opportunity for individuals to challenge being designated as a gang member or associate, infringement on freedom of association, accuracy of gang designations, racial issues, lack of transparency, and unregulated placement of individuals on the List.

a.  **Impact of Being Included in the Gang Database on Other Aspects of the Criminal Legal System**

WPD Policy 527 requires WPD personnel, when arresting an individual for a person felony, to ascertain and document in the arrest affidavit whether that individual is designated as a criminal street gang member or associate in the Gang Database—even when the alleged crime is not gang-related.  This requires all WPD personnel (including approximately 700 commissioned officers or employees) conducting arrests to have access to and use of the Gang List or the information in the Gang Database.  When arresting an individual for a non-person felony or any other crime, WPD officers have discretion whether to identify someone in an arrest affidavit as a gang member or gang associate as documented in the Gang Database.  Officers often identify individuals designated as gang members in the Gang Database on arrest affidavits even for non-person offenses.  When completing a charging affidavit for *any* crime, WPD personnel ascertain and document in the charging affidavit whether that individual is designated as a criminal street gang member or associate in the Gang Database.

These decisions by the WPD inform other criminal justice system personnel of the WPD's assessment that the person is a "known gang member" or "known gang associate," which triggers additional scrutiny and punishment by the courts, parole/probation, and more.  For example, if an individual designated as a criminal street gang member or associate in the Gang Database is arrested for a person felony, that individual has an enhanced default minimum of $50,000 cash or surety bail.  This default minimum applies regardless of the nature of or the facts surrounding the felony or whether it is allegedly gang related.  The basis for imposing this enhanced bail is WPD officers' sworn affidavits attesting to a criminal defendant's purported gang membership or associateship.  The enhanced bail is also imposed before a criminal defendant is provided counsel has a meaningful opportunity to contest WPD's gang designation.  Also, enhanced prison

conditions and stricter pretrial, probation, and parole terms can be imposed on those the WPD has designated as gang members or associates. The WPD plays a role in other agencies' use of these gang conditions. The WPD also plays a significant role in monitoring individuals for violations of gang conditions and reporting any alleged violations. The WPD's goal is to put people in the Gang Database back behind bars if they violate any probation or parole conditions—even violations that are unrelated to gang activity, such as having a drink or not meeting curfew.

When a person identified as a gang member in the Gang Database or the Gang List is sentenced to probation or released on parole, they must abide by additional special conditions, including not associating with anyone affiliated with a gang; not being present at specific locations; not wearing any clothing with certain colors; abiding by a curfew from 9:00 p.m. to 5:00 a.m.; not riding in a car with more than one person unless those people are siblings, parents, or children; not engaging in "throwing or showing gang hand signs"; not associating with a family member or extended family member who is a documented gang member (exception being immediate family only—brother, sister, or parents); and not using social media to post "statements having any relationship to . . . any gang whatsoever" or posting any photos or images "that can in any way be associated with . . . any gang."

One stated purpose of Policy 527 is to monitor those suspected of being gang members or associates for violations of probation/parole, bond, and pretrial conditions, with the intent of removing those individuals from the community. The WPD created a specialty unit, initially called the TOPS Unit, specifically to monitor people in the Gang Database who were subject to parole and probation conditions. This increased surveillance and engagement increases the chances of individuals in the Gang Database of interacting with the criminal justice system.

19

### b.      First Amendment Implications

The vagueness of § 21-6313 and WPD Policy 527 prevent plaintiffs and those similarly situated from conforming their conduct to avoid being included in or renewed on the Gang Database.  In addition, the exercise of core First Amendment activities such as wearing certain clothes or associating with certain people can result in them being included in or renewed on the Gang Database/Master Gang List.

For example, WPD personnel have maintained or renewed individuals' designations as active criminal street gang members in the Gang Database for an additional three years based on a single instance of the individual wearing clothing of a certain color or sports team.  WPD personnel have likewise maintained or renewed individuals' designations as active gang members in the Gang Database for an additional three years based on a single observation of the individual at a family funeral attended by others the WPD had designated as gang members; a single statement by an individual that members of his family are in gangs; or even the individual getting shot by suspects the WPD had designated as gang members while in the presence of other persons the WPD designated as gang members.  Similarly, if a person identified as having a gang-related tattoo manages to become "inactive" on the Gang Database, that person can be re-added to the Gang Database as an active gang associate or member by meeting two or three of the § 21-6313 criteria, respectively. A person can meet one of these criteria simply for not attempting to remove or conceal a tattoo that was originally used to add them to the Gang Database.  People in the Database are under constant surveillance, and their everyday activities could subject them to renewed inclusion on the Master Gang List.  For example, WPD officers can add individuals to the Gang Database based solely on social media postings.  The WPD does not monitor Gang Unit officers' use of social media for Gang Database purposes, nor does the WPD verify the social media

evidence officers collect as purported proof of gang affiliation.  Yet many people are renewed on the Master Gang List, or kept in the Gang Database, because of their activities on social media.

Pretrial, probation, and parole gang release conditions are also based significantly on the WPD's designation of individuals as gang members or associates.  Those conditions include prohibitions on speech content and free association, as well as chilling exercise of First Amendment rights.

### c. Lack of Notice and Ability to Contest Inclusion in Gang Database

Policy 527 includes no provisions for informing adults that they are in the Gang Database or on the Master Gang List, or allowing those individuals to contest their inclusion.  At least one informal notification process existed at one point, but it was incomplete and never part of policy. The WPD has not revised its policies to provide for a notification process to make people aware that they have been added to the Gang Database.

WPD allegedly conducts an annual audit of the Gang Database, which begins with examining the Master Gang List and then revising the Gang Database accordingly to mark active gang members and associates as inactive, incarcerated, or deceased.  At times, the WPD has also moved people from "inactive" to "active" based on the results of the audit.  Individuals are not notified when their status is changed as a result of the audit.

In September 2021, on behalf of WPD staff, Deputy Chief Jose Salcido proposed revisions to WPD policy that would allow for removing individuals from the Gang Database.  The proposed procedure would have included forming a five-person panel to hear challenges to inclusion in the Gang Database and petitions for suspension of inclusion; the panel would have included a member from the Black and Latinx communities; and the Gang Database would have no longer include

inactive members.  But the City of Wichita and the Fraternal Order of Police opposed Deputy Chief Salcido's recommendations, and the WPD did not adopt his recommendations.

Despite WPD leadership's awareness and acknowledgment of the due process violations resulting from the WPD's failures to notify adults of their inclusion in the Gang Database and to provide a procedure for removal from the Database, the WPD has refused to address those due process problems in any meaningful way, such as by formally revising its policies and practices. The WPD deliberately chooses not to address these due process concerns through policy change because it believes that doing so will expose it to liability for attorneys' fees.  The City recognizes there should be a procedure for removal from the Gang Database, but no such procedure exists.

### vi.     Plaintiffs and Their Experiences with the Gang Database/Master Gang List

Plaintiffs represent themselves and a class of similarly situated individuals.  Plaintiffs are directly injured by their inclusion in the Gang Database and on the Master Gang List because being labelled or known as an alleged gang member or associate can result in serious legal/criminal consequences and affect an individual's career, housing, and relationships with others, including with law enforcement.   Plaintiffs have each experienced concrete harms as a result of their inclusion in the Gang Database and on the Master Gang List as described below.

### a.     Progeny

Progeny has organizational standing to sue for its own injuries, as well as associational standing to sue on behalf of its members for claims of First Amendment overbreadth and facial vagueness.  Progeny is an affiliate program of Destination Innovations, Inc., a 501(c)(3) nonprofit organization in Wichita that operates as a youth/adult partnership focused on reimagining the juvenile justice system and reinvesting in community-based alternatives.  Progeny is run by a small executive staff and a team of Youth Leaders who help guide, shape, and execute the organization's

vision and mission.  To fulfill Progeny's mission, it hosts town halls, facilitates conversations with impacted youth, provides support and services to youth who are involved in the criminal legal system or transitioning back to the community, engages with elected officials regarding their policies and reform efforts that may impact system-involved youth, and organizes youth and community leaders around reform.  Progeny also creates and publishes reports and other documents that translate youths' insights and needs into calls for government action.  Most of the Youth Leaders for Progeny started out as young people who came up through its programs.

Various Progeny staff and members, including D.B.W., D.B., K.C., and A.M., have been added to the Gang Database or Master Gang List as active or inactive gang members.  All four have been subjected to increased surveillance, reputational harm, and other negative consequences of being in the Gang Database.  D.B.W. has been subjected to pretextual stops based on the identity of his companions.  D.B.'s inclusion in the Gang Database has been based at least in part on the identity of his companions, including school friends.  A.M. has been subjected to pretextual stops, and the WPD monitors his social media.  K.C. was added to the Gang Database and Master Gang List as a juvenile, but the WPD's apparent single attempt to notify her parent of that fact via certified mail was unsuccessful.  At least as recently as October 21, 2019, the WPD provided information to the Sedgwick County Department of Corrections that D.B., K.C., and A.M. were gang members.  None of these four individuals are active gang members.

Because Progeny staff and members are in the Gang Database or on the Master Gang List, the existence of the Gang Database and Master Gang List makes it more difficult for Progeny to fulfill its mission and help Wichita youth who are involved in the justice system.  Most individuals have no way of knowing whether they are included in the Gang Database—or whether others affiliated with Progeny are.  Meeting in large groups or even one-on-one thus puts Progeny

members at risk of causing each other to be designated as gang members or associates by the WPD, or at risk of violating probation or parole conditions. Thus, Progeny cannot hold member events without risking the possibility that the WPD will add additional Progeny members to the Gang Database, in part due to individuals not in the Gang Database and individuals in the Gang Database both attending the event. Any time Progeny uses a member's face publicly, as part of a campaign or as part of a panel, that member is at risk of being profiled, harassed, or arrested by the WPD. Further, if the WPD adds Progeny members to the list, those members will be at risk for the civil and criminal consequences connected to being in the Gang Database.

Progeny has cancelled or declined to attend protests and events due to WPD presence surveilling the area because of the concern that those in attendance could be added to the Gang Database, among other things. WPD officers continue to target and scrutinize Progeny's lawful associational activities, causing interruption in Progeny's activities, diverting staff time and attention, intimidating attendees, and causing stress and discomfort to staff and attendees.

Any time Progeny wants to hold any type of protest or assembly, it must talk to participants about their connection to the juvenile legal system because if participants are arrested while protesting, it could affect their probation and/or Gang Database status. Progeny must determine whether that individual's participation is worth the risk to that individual, thereby changing the way the organization protests. Moreover, Progeny has had to divert resources away from its other work to provide assistance and resources to those who are suffering from the consequences of being in the WPD's Gang Database. This includes loss of staff time, cancelling events and other meetings, diverting money to pay the costs associated with the criminal justice system for individuals arrested or cited because they are in the Gang Database, and reorganizing Progeny's

mission to combat the effects of the Gang Database on Wichita youth.  Progeny could have otherwise used these funds and resources for its programming or other mission-related needs.

### b.      Elbert Costello

Elbert Costello is a 47-year-old Black man who lives in Wichita.  He has never been a member of a criminal street gang, but he is currently listed as an "active" gang member in the WPD Gang Database.  The WPD added Elbert Costello to the Gang Database in 1997, when he was only 22 years old.  He has been continuously marked as "active" in the Gang Database because he gathers with friends who are also in the Gang Database.

Elbert Costello was unaware that he was included in the Gang Database until he was placed in a higher-level (more restrictive) custodial setting while incarcerated on a criminal charge.  He later pled to a charge of possession of paraphernalia and was initially sentenced to 12 months' probation.  He was placed on highly restrictive, untenable probation conditions, including restrictions on clothing color and vague prohibitions on generalized locations and individuals, all because he was included in the Gang Database.  Because of these restrictive conditions, he was repeatedly found to have violated probation conditions, mostly for being seen with friends and family who were also listed in the Gang Database.  He ended up spending six months in jail, and his probation was extended approximately three years.  Since his release from prison, the WPD has increased surveillance of him.  He has experienced an increased number of traffic stops and a higher-level of suspicion and scrutiny during these traffic stops.

Elbert Costello received six months of jail time for violating the terms of his parole.  On one occasion, the WPD found he violated parole by interacting with friends, whom he neither knew nor believed were affiliated with gangs.  On another occasion, a parole officer threatened to

impose additional sanctions on him for wearing a shirt with red writing on it.  None of his alleged parole violations involved violent or criminal behavior.

The WPD's Gang Database record for Elbert Costello includes dozens of entries pertaining to his actions over the last 25 years.  Most of those entries concern notes about or photos of him socially interacting with others in the Gang Database.  Each instance has led to him being renewed in the Gang Database for an additional three years as an active gang member.  The WPD has also renewed his three-year active period simply for wearing "gang colors."  His continued status in the Gang Database has prevented and continues to prevent him from participating in community service, organizing community events, attending the funerals of his family and friends, and other regular social activities.  Because of his continued inclusion in the Gang Database, he fears harassment or additional punishment if he gets together with others—including family members— for a beer, barbecue, family dinner, or funeral.  The Wichita Eagle published an article in which it identified him as a "known gang member."

c.      **Martel Costello**

Martel Costello is a 27-year-old Black man from Wichita.  He has never been a member of a gang, but he has been listed as an "active" gang member in the Gang Database since 2011.  Until recently, he was incarcerated for a probation violation and on work release.  He was released from prison on June 28, 2023.

In 2016, Martel Costello was convicted of a marijuana offense and possession of firearms. He learned he was in the Gang Database for the first time when he was charged with these crimes. None of his crimes were gang related.  He was released pre-trial and eventually sentenced to probation.  While on probation, he was forced to abide by certain special conditions of probation

because of his designation as a gang member in the Gang Database.  These conditions included not having any contact with any other known gang members, abiding by a strict curfew, and more.

The WPD repeatedly harassed him before his marijuana charge, while awaiting trial, and while on probation.  He was sent back to jail several times because of alleged probation violations for, among other things, being out past curfew by less than ten minutes, associating with alleged gang members (including family members), and attending a wake for his niece.  From 2014 to 2016, the police pulled him over approximately once per month.  From 2016 to 2018, the police harassment escalated, and he was pulled over at least three times per month.  Once, police told him he violated his probation by attending his brother's funeral because gang members were present.  To the best of Martel Costello's recollection, he has had bond set at or over $50,000 at least seven times.  His mother had to place her home as collateral in order to bond him out of jail.

The WPD harassed him by conducting invasive searches of his residence, where officers destroyed his property and threw his possessions on the floor.  During one search, WPD officers removed clothing from his closet and laid it out on his bed in the shape of a person lying down, resembling the outline of a victim's body.  He interpreted this as a threat that the WPD intended to physically harm him.

In 2016, his active status was renewed for another three years simply because WPD personnel observed him at a concert with his father and two others, all of whom the WPD believed were gang members.

Martel Costello obtained his GED and other certifications while incarcerated, and he learned the trade of sheet metal work while at Ellsworth Correctional Facility ("Ellsworth").  Beginning in November 2022, he began working in Ellsworth's Work Release program for the City.  One time while on his shift for the City, he stopped at a convenience store to microwave his

lunch on his lunch break, which is permitted. A WPD officer confronted him, saying he "knew" Martel Costello and eventually called him by his first name. When Martel Costello attempted to leave, the officer repeatedly ordered him to stop and made statements indicating that he knew Martel Costello was working for the City on work release and that he would be released from prison soon. The officer also made statements that Martel Costello believed to be warnings that the WPD would be watching him after his release. He felt fear and concern from this interaction. Now that Martel Costello's incarceration is over, he will be considered an active gang member once again, and could again be subject to the extremely harsh gang conditions while on parole.

### d.      Jeremy Levy, Jr.

Jeremy Levy, Jr. ("Levy") is a 24-year-old Black man from Wichita. He has never been a gang member, but has been listed as an "active" gang member in the Gang Database since 2017. His Gang Database entry notes that the WPD first encountered him in the company of a gang member in 2010, when Levy was 11 years old. In the years that followed, Levy's inclusion in the Gang Database and on the Gang List caused him to be denied employment and harassed by police, and restricted his ability to wear certain colors, patronize certain businesses, and freely associate and socialize with others.

Levy's Gang Database nomination card indicates that the nominating officer believed Levy satisfied the criteria of being in contact with other gang members, being arrested with other gang members, and being identified by a confidential informant, a purported member of a rival gang. In 2017, Levy was the victim of a drive-by shooting by unknown suspects. Even though he was the victim, the WPD renewed his three-year "active" period based on this incident because they believed the shooting was related to an ongoing gang feud.

In July 2017, at age 18, Levy was arrested and charged with first-degree felony murder. Because he was included in the Gang Database, the prosecutor was allowed to introduce his alleged gang status at trial and multiple alleged "gang incidents" of an alleged "gang feud" going back more than six months before the alleged incident in which Levy was charged. But there was no evidence that Levy had participated in those alleged gang feud events, nor any evidence that the incident with which he was charged was gang related. Before Levy's arrest for the murder charge, the WPD never questioned him about any alleged gang affiliation, and he never had an opportunity to challenge his designation as a gang member.

Levy was convicted and is now incarcerated at the Hutchison Correctional Facility until at least 2042. Once released, he will remain listed as active in the Gang Database and could be subject to the extremely harsh gang conditions while on parole.

### e.    Christopher Cooper

Christopher Cooper ("Cooper") is a 28-year-old Black resident of Wichita. He has never been a gang member, but he was listed as an "active" gang member in the Gang Database from approximately June 2015 until at least August 2022. He experiences continuous harassment by WPD officers, who routinely stop him for minor traffic violations.

In 2014, Cooper was a college student at Highland Community College, where he played football and ran track. He had been offered a K-State football scholarship and was preparing to transfer there. While at home working in Wichita during summer break, he attended a party where an altercation occurred and a shooting ensued. As he was leaving the party, one of the individuals involved in the shooting jumped into his car and Cooper drove away. At the time, Cooper was unaware that this individual had been involved in any shooting. In the next few days, Cooper was

arrested and charged with first degree murder.  At his arrest, he learned for the first time that he was included in the Gang Database.

Cooper had never been charged with any criminal activity before this arrest, but his bail was set at $50,000 because he was in the Gang Database.  He remained in jail because he and his family could not afford the bail or bond amount.  While in jail, he learned that the altercation at the party he attended was allegedly gang-related, and that he was charged in connection with that altercation as an alleged gang member.  He also learned that evidence of his inclusion in the Gang Database could be used against him in a potential trial.  Eventually, the prosecution offered Cooper a deal to plead to obstruction of justice and accept probation.  Cooper believed he had no choice, so he accepted the plea.  He was detained in jail for approximately a year before he was offered and accepted the plea and was sentenced.

Cooper has never been and is not currently involved in or associated with a criminal street gang in Wichita or anywhere else.  He had no criminal history before this event and has had no criminal charges or offenses since that 2014 incident.  Nevertheless, the WPD has extended his active gang member status in the Gang Database multiple times for reasons such as attending a cousin's funeral that was also attended by purported gang members, wearing "gang colors," and being shot through a closed garage door during a family gathering while in the presence of purported gang members, who are his family members.

At sentencing, Cooper was placed on strict probation with gang conditions, including a 6:00 p.m. curfew for more than a year.  He had to live away from his family because some of them were in the Gang Database.  Despite these hard conditions, he completed his probation.  After he was released from jail in 2015, he was unable to leave Sedgwick County because of his Gang Database probation terms, so he could not attend or play football at K-State and therefore lost his

scholarship.  Later, Cooper met with coaches and began to train with the Wichita State University track team.  However, he was also not able to join the WSU track team because of his ankle monitor and travel restrictions resulting from his Gang Database status.  Without financial assistance from an athletic scholarship, Cooper has been unable to pay for and attend college.

Since Cooper's release from jail in 2015, he has purposely limited contact with family and avoided high school friends and social activity—as well as avoided certain parks, neighborhoods, and businesses where there might be large or diverse crowds, and therefore other individuals listed in the Gang Database.  He has not been arrested for or charged with any crime, nor had any legal trouble of any kind since his release.  Yet he remains listed in the Gang Database.

Even though Cooper has had no further criminal events, the WPD surveilled and harassed him.  Wichita police officers more frequently initiated traffic stops for spontaneous and minor reasons.  He has been stopped repeatedly for traffic infractions, but the reasons given for the stops were often false.  For example, he was told he was stopped for failure to signal 100 feet in advance of a turn, when he had in fact done so.  When stopped, he has regularly been subject to vehicle searches despite the lack of any connection between the stated reason for the stop (for example, improper signal) and the need to search a vehicle.  Nevertheless, he has allowed the police to search his vehicle to demonstrate that he has nothing to hide and avoid further suspicion or conflict.  Cooper estimates this has happened five to six times since 2013.  When officers approach his car, they already know his name and treat him like a criminal.  This harassment was consistent until Cooper began driving a car that is registered in the name of a family member or asking others for rides in 2016.  Since then, he has not been stopped by the WPD.

Being listed in the Gang Database has affected Cooper's employment prospects.  He has been unable to participate in work events that have taken place in certain locations because of his

31

inclusion in the Gang Database and the potential presence of gang members there.  Working in customer-facing positions risks violating his probation terms because of potential interactions with customers or police over which Cooper has no control.  Because of negative past experiences, Cooper has avoided retail and sales jobs where he would have to interact with the public and has instead been limited to warehouse employment.  Recently, Cooper applied for a job with Spirit AeroSystems that would have been a promotion in position and salary.  He believed Spirit was going to offer him the job, but, after a background check, turned him down.  He believes this was because the background check identified him as an active gang member.

      **b.**      **Defendant(s)' Factual Contentions.**

Criminal street gangs present a significant threat to public safety and account for a significant proportion of violent crime in Wichita.  Much gang-related criminal activity involves drug trafficking and, increasingly, weapons trafficking.  Typical gang-related crimes include alien smuggling, armed robbery, assault, auto theft, drug trafficking, extortion, fraud, home invasions, identity theft, murder, and weapons trafficking.  Criminal street gang members are the primary retail-level distributors of illegal drugs and are increasingly distributing wholesale quantities.  Rivalries and retaliation among and against criminal street gangs also account for a significant proportion of violent crime against persons.

WPD Policy 527 authorizes the WPD Gang Database and Gang List as law enforcement intelligence tools used to solve crimes by identifying relationships between people and gangs involved in criminal activity in the City of Wichita.

Kansas enacted KAN. STAT. ANN. § 21-6313 and § 21-6316 in 2006, L. 2006, ch. 194, §§ 6 and 9, along with 2006, L. 2006, ch. 194, §§ 7 and 8, now codified at § 21-6314 and § 21-6315. Sections 21-6313 and § 21-6316 do not define a crime, whereas § 21-6314 defines the crime of

recruiting criminal street gang membership and § 21-6315 defines the crime of criminal street gang intimidation.  Plaintiffs do not challenge the two statutes in the act that define crimes.

None of the plaintiffs, nor any member of the putative class, have been arrested, charged, and/or convicted of the offenses set forth in § 21-6314 and § 21-6315.

No person has been deprived of liberty merely by virtue of being included on the Master Gang List or in the Gang Database.

### i. Vagueness/Overbreadth

WPD Policy 527 implementing § 21-6313 is not vague, either facially or as applied to the various plaintiffs.  People of ordinary intelligence can understand what a reliable informant is and understand the definitions in WPD Policy 527 and § 21-6313.  Criteria for nomination to the WPD Master Gang List is controlled by statute.  The WPD's maintenance of a Gang List (without regard to whether any plaintiff is included on the Gang List) does not deprive any person of a constitutionally protected right.

A nomination to the Gang List only suggests only that someone may meet the criteria to be added to the Master Gang List.  A person is not added to the Master Gang List until that person is vetted by trained law enforcement officers assigned to the Gang Intelligence Unit.  Persons are added to the Gang Database in the first instance either (1) through research and contacts by Gang Intelligence Officers, or (2) (a) by nomination for inclusion on the database by non-gang officers followed by (b) review and verification by Gang Intelligence Officers that the subject meets the criteria for being included on the Master Gang List.  These Gang Intelligence Officers apply experience and specialized training to vet each candidate for inclusion to the Master Gang List against the criteria of § 21-6313.  Only after satisfying that criterion is a person added to the Master Gang List.

### ii.        Inclusion in the Gang Database and Master Gang List

A "criminal street gang" is an organization, association, or group that has a primary purpose or activity of committing person felonies, person misdemeanors, and/or felony drug crimes.  Persons are added to the Master Gang List if they are nominated and are determined to meet the criteria in § 21-6313 as a criminal street gang member or criminal street gang associate.  A person must either admit to membership in a criminal street gang or meet three criteria listed in § 21-6313 to be identified as a criminal street gang member or criminal street gang associate and added to the Gang List.  The Gang Database includes persons documented as active criminal street gang members and criminal street gang associates.  The Gang Database also includes legacy data for persons who have been removed from the Gang List and are "inactive" or "deceased" but persons who are not currently identified as a criminal street gang member or criminal street gang associate are not on the Master Gang List.  The Master Gang List is neither over-inclusive nor inaccurate.  There is no evidence that people have been listed on the Master Gang List who did not meet the criteria for identification as a criminal street gang member or criminal street gang associate.  The Master Gang List is audited annually.  Persons who have not been documented to have engaged in any new gang activity for a period of three years are removed from the Master Gang List (made inactive), as are persons who die (marked deceased).

### iii.       Sharing the Master Gang List and Information from the Gang Database

By policy, the Master Gang List and the Gang Database are not shared except for law enforcement purposes.  Information as to whether someone is on the Master Gang List (or not) is shared only with law enforcement agencies or the judicial branch pursuant to policy.  Plaintiffs' contentions that information in the Gang Database has been disseminated to the public is dated and anecdotal.  Nonetheless, the WPD has safeguards in place to limit the dissemination and

34

distribution of the information from the Gang List.  For example, the Gang Database itself is accessible only to Gang Intelligence Officers; the Master Gang List is not printed or distributed.

There is no admissible evidence—i.e., information based on personal knowledge—that such dissemination occurred.  Communications by a Community Policing Officer about gang information is not dissemination—officers have personal knowledge about activities within their patrol assignments.

Dissemination of information by former Captain Nicholson was contrary to policy and resulted in his criminal prosecution and abrupt retirement.

Information from the Master Gang List or the Gang Database with other municipal, county, state, and federal law enforcement officers and agencies occurs only for law enforcement purposes such as allowing detention facilities to separate members of rival gangs within the general population.

When someone is arrested by a WPD officer for a person felony, Policy 527 directs that records be checked to determine if the arrestee is documented as a criminal street gang member or criminal street gang associate and, if so, the arrest affidavit is to include a sentence pertaining to the arrestee's gang affiliation and status.  Bond is imposed by the court after a proceeding during which the criminal defendant is afforded the opportunity to challenge any evidence offered pertaining to criminal street gang membership and/or imposition of bond.

### iv.    Racial Disparities.

The Equal Protection claim was dismissed and plaintiffs state they do not attempt to resurrect that claim in the pretrial order. Nonetheless, plaintiffs' claims that racial disparities undermine the validity of Policy 527 are both inaccurate and incorrect.  There is no study of the

population(s) of criminal street gangs, nor is there a study of the demographics of the total population who are also members of criminal street gangs.

> **v.** **Plaintiffs' alleged "harms" are discrete criminal justice encounters, they are not created or caused by § 21-6313 and/or WPD Policy 527.**

The "harms" alleged by plaintiffs are not "harms" caused by documentation within the database or identification on the Gang List. Rather, those "harms" are a result of plaintiffs' discrete encounters with the criminal justice system (arrest, charge, conditions of release/bond, conviction, sentencing) that are accompanied by the full panoply of due process protections afforded by the codes of criminal procedure (state and/or federal). Stated differently:

- There is no evidence that any person has been arrested or charged in the absence of probable cause to believe the specific person arrested and/or charged committed a crime;

- No person is subjected to bond or conditions of pretrial release unless they are charged with a crime;

- No person is convicted of a crime merely because they are identified as a criminal street gang member;

- No person is sentenced for a crime absent having been convicted of a crime; and

- No person is subject to conditions of probation or parole absent a conviction for a crime.

Identification as a criminal street gang member on the Gang List or inclusion in the database does not deprive any person of any constitutional right. The Gang List is nothing more than a law enforcement intelligence record. No person can be stopped, arrested, charged, convicted, and/or sentenced merely because they are identified on the Gang List. For example, the $50,000 bond described in § 21-6316 occurs only after arrest for a person felony and the bond itself is imposed by the court after a proceeding during which the criminal defendant is afforded the opportunity to challenge any evidence offered pertaining to criminal street gang membership

and/or imposition of bond.  Section 21-6316 requires the court to assess the likelihood that the detainee will reoffend and the availability of appropriate intensive pre-trial supervision.

The WPD does not impose conditions of pretrial release, probation, and/or parole. Conditions of release, probation, and/or parole are governed by the code of criminal justice and persons subject to the conditions are afforded due process protections.

Policy 527's stated purpose of monitoring persons documented as criminal street gang members or associates for violations of probation, parole, bond, and/or pretrial conditions with the intent of removing those individuals from the community is a legitimate, public-safety purpose. All such detentions--bond revocation/revision, probation and parole revocation/revision, and conditions of pretrial release are all addressed and controlled through procedures afforded by the code of criminal procedure.

Policy 527 and § 21-6313 do not criminalize, proscribe any conduct, nor inflict any form of punishment, and do not create a deprivation of life, liberty, or property.  WPD Policy 527, the database, and list maintained thereunder are not governmental action that deprives a person of a protected interest.  Plaintiffs' contentions of perceived harms reflect speculation and conjecture. The contentions of "harm" are not caused by identification on the Gang List or inclusion in the database.  Rather, the "harms" claimed are the consequences of criminal activity and an interaction with the criminal justice system, which is afforded a myriad of due process protections by the code of criminal procedure.  Thus, complaints regarding the "lack" of notice or a procedure to challenge inclusion on the Gang List are not complaints of harm or any deprivation of rights by the WPD.

Whether the named plaintiffs, members of Progeny, or the putative class, the WPD has bona fide and legitimate bases for including all persons on its Gang List and has bona fide and legitimate bases for including persons in the database documented as inactive and/or deceased.

No plaintiff has been stopped or detained absent reasonable suspicion and/or probable cause for a traffic violation and/or crime. "Surveillance" of an area by law enforcement generally, or the WPD specifically, does not violate any person's constitutional rights.

### a.      Progeny

Progeny is not prohibited from organizing or conducting meetings or assemblies.  Progeny has and continues to hold regular membership meetings and community events.  Progeny has not diverted resources or funds to address concerns regarding the Gang List, but rather the resources were budgeted and intended to assist individuals charged with crimes—i.e., normally part of the association's activities.

The WPD does not unlawfully "harass" or "profile" persons because of attendance at any Progeny meeting or event.  The only persons at risk of arrest by the WPD are persons for whom there is probable cause and/or a warrant for that person's arrest.

The fact that D.B.W., D.B., K.C., and/or A.M. have been included on the Gang List (presently or in the past) has not been published by the WPD nor has their inclusion on the Gang List caused any reputational harm or other injury.

The WPD generally, and WPD Policy 527 specifically, does not impose and has not imposed any restrictions on the associational and/or expressive freedom of Progeny or its members.

### b.      Elbert Costello

Analysis of information from sources, observations, and other investigative or information gathering efforts led WPD Gang Intelligence Officers to believe there is a reasonable probability that Elbert Costello is a member of a criminal street gang.  He was subject to supervision and restrictions as placed upon him by the courts or probation officers associated with his criminal convictions, not by the WPD and not merely because he was identified on the Gang List.  The

WPD generally, and WPD Policy 527 specifically, does not impose and have not imposed any restrictions on Elbert Costello's associations and/or expressive freedoms.

### c.    Martel Costello

Analysis of information from sources, observations, and other investigative or information-gathering efforts led WPD Gang Intelligence Officers to believe there is a reasonable probability that Martel Costello is a member of a criminal street gang.  He has identified himself as an Associate Blood (Pirus) gang member.  After being convicted of crimes, he was placed on probation under conditions imposed by the court and his probation officer, not by the WPD and not merely because he was identified on the Gang List.  The WPD generally, and WPD Policy 527 specifically, does not impose and has not imposed any restrictions on Martel Costello's associations and/or expressive freedoms.  He was subject to searches of his person and property—not simply because he was included on the Gang List, but pursuant to valid search warrants.  And he was incarcerated—not simply because he was included on the Gang List, but because he committed probation violations.  The conditions and harms of which he complains are the result of his criminal convictions and not any action by the WPD or his inclusion on the Gang List.

### d.    Jeremy Levy, Jr.

Analysis of information from sources, observations, and other investigative or information-gathering efforts led WPD Gang Intelligence Officers to believe there is a reasonable probability that Levy is a member of a criminal street gang.  There is no credible evidence that he was ever denied employment due to any action of the WPD.  Levy was convicted of murder after a jury trial.  The trial judge allowed prosecutors to present gang evidence at trial, and did so in the trial judge's own discretion pursuant to Kansas State Law.  This evidence was not allowed because of WPD Policy 527 or because Levy was included on the Gang List, but instead because the evidence was relevant to the crimes with which Levy was charged.  Levy's classification and housing in the

Department of Corrections (DOC) is because of the DOC's assessment and evaluation of Levy and not because of WPD Policy 527.  The WPD generally, and WPD Policy 527 specifically, does not impose and has not imposed any restrictions on Levy's associations and/or expressive freedoms.

**e.       Christopher Cooper**

Analysis of information from sources, observations, and other investigative or information-gathering efforts led WPD Gang Intelligence Officers to believe there was a reasonable probability that Cooper was a member of a criminal street gang.  Cooper is not listed in the Gang List but is listed as 'inactive' in the Gang Database as of August 24, 2022.  He does not recall being stopped by the police since 2017, and there is no evidence he has been stopped by a WPD officer since 2017.  Cooper was arrested based on probable cause for murder, had a bond hearing, and remained in custody until he accepted a plea agreement and was sentenced by the court.  The charges, conditions of release, probation, and/or parole for Cooper were imposed by a court, probation and/or parole officer and not the WPD.  The WPD did not impose any conditions on Cooper's confinement or release.  Cooper was never offered a scholarship.  He has no evidence that he ever lost a job or scholarship because he was listed on the Gang List.  Cooper was not allowed admission to K-State housing because he was a convicted felon, not because of the WPD Gang List.  His probation and parole were ordered by the court and enforced by his probation officer, not by the WPD and not because of the WPD's Gang List. The WPD generally, and WPD Policy 527 specifically, does not impose and has not imposed any restrictions on Cooper's associations and/or expressive freedoms.

4.     **LEGAL CLAIMS AND DEFENSES.**

   a.  **Plaintiffs' Claims.**[2]

Plaintiffs assert they are entitled to prospective relief upon the following theories:[3]

   i.     **Violation of Fourteenth Amendment Right to Due Process—Vagueness (Count I).**  The City's policies and practices in maintaining a Gang Database pursuant to § 21-6313 and WPD Policy 527 violate the rights of Plaintiffs and others similarly situated to Due Process under the Fourteenth Amendment by being unconstitutionally vague.  The WPD's criteria and processes for designating individuals as criminal street gang members and associates are so broad, vague, subjective, and discretionary that many non-gang-affiliated individuals meet the criteria for inclusion, and plaintiffs and others similarly situated are unable to conform their conduct to avoid designation as gang members and associates and consequent legal and social harm.

   ii.    **Violation of Fourteenth Amendment Right to Due Process—Procedural Due Process of Individual Plaintiffs (Count III).**  Defendant's policies and practices in maintaining a Gang Database pursuant to § 21-6313 and WPD Policy 527 violate the rights of Plaintiffs and others similarly situated to Due Process under the Fourteenth Amendment by failing to provide procedural due process.  Specifically, the WPD's failure to provide individuals it designates as criminal gang members and associates with notice of and an opportunity to challenge such designation violates procedural due process.

   iii.   **Violation of First Amendment Right of Association and Expression—Direct Prohibition (Count VI).**  Defendant's policies and practices in maintaining a Gang Database pursuant to § 21-6313 and WPD Policy 527 violate the rights of plaintiffs and others similarly situated to freedom of

---

[2] The court previously dismissed plaintiffs' claims for Violation of Fourteenth Amendment Right to Due Process—Failure to Provide Procedural Due Process to Progeny (Count II), Violation of Fourteenth Amendment Right to Due Process—Failure to Provide Substantive Due Processes (Count IV), and Violation of Fourteenth Amendment Right to Equal Protection—Disparate Impact (Count V).  (ECF 28.)

[3] The individual plaintiffs bring all of these claims. As an organization, Progeny brings only the claims on behalf of its members asserting that § 21-6313 and WPD Policy 527 are overbroad and unconstitutionally vague (Count I), and that they violate Progeny's First Amendment rights of association and expression (Count VI).

association and freedom of expression under the First Amendment to the United States Constitution by prohibiting certain constitutionally protected expressive and associative behaviors.  Specifically, the WPD's designation of individuals as gang members and associates (leading to significant legal and social harm) based on their contact with others in their own families, neighborhoods, religious, political and social groups, as well as designation based on clothing, gestures, speech, and tattoos punishes plaintiffs and others for engaging in activity protected by the First Amendment.

iv.   **Violation of First Amendment Right of Association and Expression— Chilling Effect (Count VII).**   Defendant's policies and practices in maintaining a Gang Database pursuant to KAN. STAT. ANN. § 21-6313 and WPD Policy 527 violate the rights of plaintiffs and others similarly situated to freedom of association and expression under the First Amendment by having a chilling effect on certain constitutionally protected expressive and associative behaviors.  Specifically, the WPD's designation of individuals as gang members and associates (leading to significant legal and social harm) based on individuals' contact with others in their own families, neighborhoods, religious, political and social groups, as well as designation based on clothing, gestures, speech, and tattoos unconstitutionally deters plaintiffs from engaging in activity protected by the First Amendment.

**b.   Defendant's Defenses.**

Defendant asserts the following defenses:

i.   As to all counts, plaintiffs lack Article III standing because they do not suffer from a continuing injury or credible threat of future harm.

ii.   As to Count I, § 21-6313 is not unconstitutionally vague, facially, because:

a.   The statute is not itself a criminal statute and does not prohibit, proscribe, or penalize any conduct;

b.   The statute is not vague in the vast majority of its applications;

c.   The text of the statute is not permeated by vagueness;

d.   The criminal statutes that employ the definitions in § 21-6313 (§ 21-6314 and § 21-6315) provide people of ordinary intelligence with a reasonable opportunity to understand what conduct is prohibited; and

e.   The statute neither authorizes nor encourages arbitrary and discriminatory enforcement.

42

    iii.    As to Count I, WPD Policy 527 is not unconstitutionally vague, as applied, because:

        a.    The policy and § 21-6313 are not a penal ordinance or statute;

        b.    No plaintiff or putative class member has been, or will be, charged with a violation of WPD Policy 527 or § 21-6313;

        c.    No plaintiff or putative class member has been charged with a violation of § 21-6314 or § 21-6315 (the only criminal statutes that employ the definitions supplied by § 21-6313);

        d.    No person is deprived of liberty absent a specific criminal justice encounter for which due process protections are afforded by the code of criminal procedure;

        e.    Section 21-6313 provides the court with sufficient definition to apply the bond requirement of § 21-6316 to criminal street gang members charged with a person felony;

        f.    Persons are not added to the Master Gang List unless the nomination of that person is vetted by a trained Gang Intelligence Officer and determined to have met the criteria for inclusion; and

        g.    All instances of deprivation of liberty (*i.e.*, arrest, incarceration, and/or imprisonment) were a result of a criminal charge and associated due process protections afforded by the code of criminal procedure.

    iv.    As to Count III:

        a.    the WPD's Master Gang List and Gang Database are not published;

        b.    No plaintiff has experienced a governmentally imposed burden that significantly altered that plaintiff's status as a matter of state law because of the Master Gang List or Gang Database;

        c.    All instances of deprivation of liberty (*i.e.*, arrest, incarceration, and/or conditions of release) were a result of a criminal charge and associated due process protections afforded by the code of criminal procedure.

    v.    As to all Counts, Plaintiffs have not been deprived of any constitutional right without due process by virtue of the Master Gang List or Gang Database. Section 21-6313 and WPD Policy 527 contain no prohibition, sanction, fine or penalty. Section 21-6313 and WPD Policy 527 do not prohibit any conduct, do not deprive any person of liberty, nor do they

regulate speech nor infringe upon any person's rights of expression or association.

5.       **DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

Plaintiffs seek prospective injunctive and declaratory relief pursuant to 42 U.S.C. § 1983.

Specifically, plaintiffs seek the following relief on behalf of themselves and all those similarly

situated, which includes all persons included on the WPD's Gang List or Gang Database as an

active or inactive gang member or gang associate (the class plaintiff seeks to certify under Fed. R.

Civ. P. 23(a) and (b)(2)):

- A class-wide judgment declaring that § 21-6313 and subsequent statutes employing the definitions contained therein (§§ 21-6314, -6315, and -6316) and the City's policies, practices, and conduct described above violate the constitutional rights of plaintiffs and the class they represent.

- A permanent injunction against the City and its employees, agents, servants, and attorneys from enforcing § 21-6313 using the definitions contained therein for the enforcement of §§ 21-6314, -6315, and -6316, and enforcing WPD Policy 527 in its current form.

The proposed terms of the injunction, including the revisions required to WPD Policy 527, will flow from the court's legal ruling on plaintiffs' claims.  However, at a minimum, plaintiffs request that, in addition to the above, defendant be ordered to:

- Permanently eliminate the category of "associates" from the WPD Gang List and remove all individuals currently labeled as "associates" from the Gang Database.

- Permanently eliminate and remove the category of "inactive" members and associates from the Gang List and the Gang Database.

- Revise Policy 527 to:

  - Limit inclusion on the Gang List and in the Gang Database to only those people who have been convicted of conduct that constitutes criminal street gang activity, as defined below, in the last 5 years.

    o Define "criminal street gang activity" as "conduct performed to (1) enhance an individual's reputation within a known criminal street gang in Wichita, or (2) enhance such gang as an organization, or (3) provide a direct financial benefit to such gang."

- Identify the "criminal street gangs" that qualify individuals for inclusion on the Gang List and in the Gang Database and limit that list to gangs known to be active in the Wichita area in the last 5 years.

- Eliminate certain criteria from the list of criteria that can be used to designate someone as a member of a criminal street gang, including:

  o "Frequents a particular criminal street gang's area";

  o Adopts a gang's "style of dress" or "color";

  o "Associates with known criminal street gang members"; and

  o "Has been stopped in the company of known criminal street gang members two or more times."

- Require that additional criteria be revised as follows:

  o "Self-identification" must be verified via a sworn declaration from a law enforcement officer who accepts the verbal self-identification and requests inclusion of the individual on the Gang List and is confirmed by officer body camera footage where available.

  o Specify that being arrested in the company of a known criminal street gang member can only be grounds for inclusion if the arrest was for a crime related to a criminal enterprise.

- Specify that individuals on the Gang List or in the Gang Database will not be subjected to "stop and frisk" activities, including stops for alleged minor traffic infractions, unless there is otherwise probable cause for such stops.  Further specify that designation as a gang member does not constitute reasonable suspicion or probable cause for the purpose of searching, detaining, or arresting individuals, or searching individuals' vehicles, and that WPD officers will not request consent to search or conduct warrantless searches of people on the Gang List and in the Gang Database unless there is specific, concrete reasonable suspicion for doing so that is not based solely on the individual's presence on the Gang List and in the Gang Database.

- Provide procedures to notify current and future class members that they have been included on the Gang List or in the Gang Database and explain their right to appeal and the process by which they can make an appeal or seek removal from the Gang List/Database.

- Provide an appeal process for individuals to challenge their designation as a gang member that involves an independent neutral arbiter of the evidence that WPD claims justifies the person's inclusion on the Gang List/Database.

- Provide that a person who succeeds in their appeal will automatically be removed from the Gang List/Database.

- Provide a process for those who have been on the Gang List/Database to request removal if they are no longer involved in the conduct that permitted their inclusion per WPD's revised policy and have not been involved in such activity for the last three years.

- Provide a process by which third-parties, including but not limited to the Kansas Bureau of Investigation, who have received information regarding an individual's inclusion on the Gang List and in the Gang Database are notified and requested to remove such designation from their own records upon the successful appeal by an alleged gang member or the removal of an individual from the Gang List/Database.

- Prepare an annual public report on the Gang List/Database, which at minimum will include statistics on the number of individuals who have been added to the Gang List and Gang Database, the number of individuals who have challenged their designation, and the number of individuals who have been removed from the Gang List and Gang Database with demographic detail including age, race, ethnicity, gender, and zip code.

- Conduct an immediate audit of the Gang Database against the newly revised policy and criteria, and remove anyone who does not meet that criteria.

- Provide everyone who remains on the Gang List and in the Gang Database with proper notice of their inclusion on the Gang List and in the Gang Database and the opportunity to appeal it, including instructions on how to appeal the designation.

- Provide for an independent audit of the Gang Database every year by an independent auditor selected by the Wichita Citizen's Review Board to identify any errors, check compliance of actual policing practices with the requirements of the revised policy, and make recommendations for improving the operations and use of the Gang List and Gang Database.

- Provide mandatory in-person trainings for all members of the WPD on their obligations under the injunction within 60 days of the entry of the injunction.

- Provide additional in-person, in-service training to members of the Gang Unit or other unit responsible for implementing Policy 527 regarding the revised WPD Policy 527 and how it affects their operations and duties.

- Hire an independent compliance administrator, through a joint selection process with plaintiffs, who will oversee compliance with the injunction and issue periodic public reports filed with the Court.

Plaintiffs also seek reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

46

**6.      AMENDMENTS TO PLEADINGS.**

None.

**7.      DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by June 6, 2023.  Discovery is complete.

Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay briefing or ruling on dispositive motions or other pretrial preparations.  Although discovery may be conducted beyond the deadline to complete discovery if all parties agree to do so, under these circumstances the court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8.      MOTIONS.**

**a.      Pending Motions.**

Plaintiffs' Motion for Class Certification (ECF 175) filed on June 30, 2023, remains pending.

**b.      Additional Pretrial Motions.**

Both sides anticipate filing the following motions:

- motions to exceed the summary judgment page limits set in D. KAN. RULE 7.1(d)(2),[4]

- motions for summary judgment as to all remaining claims,

- motion to exclude or limit testimony of the opposing party's experts, and

---

[4] The court asked the parties how many pages they anticipate needing.  The parties were not sure this far in advance, but they acknowledged that any motion to exceed these page limits must be filed at least three days before the brief's filing deadline.  *See* D. KAN. RULE 7.1(d)(4).

- motions in limine.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **September 29, 2023**.  The parties must follow the summary-judgment guidelines on the court's website:

*http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf*

**c.**    **Motions Regarding Expert Testimony.**  All motions to exclude the testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, must be filed 60 days before trial.

**9.    TRIAL.**

This case is set for trial on **May 7, 2024, at 9:00 a.m., in Wichita, Kansas**.  This case will be tried by the court sitting without a jury.  Trial is expected to take approximately 10 days.  The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial.  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

**10.    ALTERNATIVE DISPUTE RESOLUTION (ADR).**

The parties formally met on October 13, November 1 and 11, 2022; and March 27, April 10, 12, and 21, 2023, to discuss potential settlement.  Sly James mediated the October 13, November 11, March 27, and April 10 sessions.  The parties continued to meet after the mediation sessions, but they reached an impasse at the April 21 meeting.  The parties currently believe the

48

prospects for settlement of this case are poor in advance of any summary judgment ruling, and they do not believe that further court-ordered ADR would be helpful until after the Court rules on the forthcoming motions for summary judgment.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the court if they reach an agreement that resolves the litigation as to any or all parties. Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the court's jury coordinator at least one full business day before the scheduled trial date.

IT IS SO ORDERED.

Dated September 13, 2023, at Kansas City, Kansas.

  s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge