1              UNITED STATES DISTRICT COURT
                    DISTRICT OF KANSAS
2

3  PROGENY, A PROGRAM OF DESTINATION
   INNOVATIONS, INC., et al., on behalf
4  of themselves and others similarly
   situated,
5                                  Case No. 21-1100-EFM-ADM

6    Plaintiffs,

7    v.
                                   Kansas City, Kansas
8  CITY OF WICHITA, KANSAS,        Date:  8/30/2023

   Defendant.
9  ....................................

10

11         TRANSCRIPT OF TELEPHONE PRETRIAL CONFERENCE
            BEFORE THE HONORABLE ANGEL D. MITCHELL
12            UNITED STATES MAGISTRATE COURT JUDGE

12

13

   APPEARANCES:
14

   For the Plaintiffs:
15

   Sharon Brett                  Jordan Baehr
16 Karen Leve                    Mitchell Engel
   ACLU Foundation of Kansas     Paul Vogel
17 10561 Barkley Street          Thomas Sullivan
   Suite 500                     Shook, Hardy & Bacon, L.L.P.
18 Overland Park, KS 66212       2555 Grand Boulevard
                                 Kansas City, MO 64108
19 Ms. Teresa A. Woody
   Kansas Appleseed Center for
20 Law and Justice, Inc.
   211 East Eight Street
21 Suite D
   Lawrence, KS 66044
22

23  *Appearances continued

24  _____
        Proceedings recorded by machine shorthand, transcript
25         produced by computer-aided transcription.

1  APPEARANCES:

2  For the Defendant:

3   David Cooper
    Charles Branson
4   Fisher, Patterson, Sayler & Smith, L.L.P.
    3550 S.W. 5th Street
5   Topeka, KS 66606

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Court called to order.)

2          THE COURT:  Good morning.  We're here today in

3  Case No. 21-1100, *Progeny, a program of Destination*

4  *Innovations, Inc., et al, on behalf of themselves and others*

5  *similarly situated as plaintiffs versus the City of Wichita,*

6  *Kansas, as defendant* for a pretrial conference in the case.

7          Will counsel please state their appearances for the

8  record beginning with counsel for the plaintiffs.  And by the

9  way, will you please let me know who's going to be doing the

10  bulk of the speaking on behalf of the plaintiff.

11          MS. BRETT:  Sure, Your Honor.  This is Sharon Brett on

12  behalf of the plaintiffs.  I'll be doing the bulk of the

13  speaking.  Also on the call for plaintiffs Teresa Woody, Tom

14  Sullivan, Mitch Engel, Paul Vogel, Jordan Baehr and Karen Leve.

15          THE COURT:  Karen Leve, is she counsel of record?

16          MS. BRETT:  She is.

17          THE COURT:  Okay.  Okay.  And who do we have on behalf

18  of the defendant?  And same thing, please let me know who's

19  going to be doing the bulk of the speaking.

20          MR. COOPER:  This is David Cooper.  David Cooper for

21  defendant.  Charles Branson is also on the line.  And I'll be

22  doing the bulk of the speaking as long as my voice holds up.

23          THE COURT:  Okay.  Very good.  All right.  Well, thank

24  you for submitting the prepared pretrial order in advance of

25  today's pretrial conference.  I have gone through that

 1    carefully a couple of times and made some edits that I'm going
 2    to explain to you all today, but it will be my intention, after
 3    we're finished today, to recirculate it for further revisions
 4    which I'll discuss.  And when I do that, you all will have an
 5    opportunity to look at the version as I'm working from it now
 6    that has, again, made edits to what you all submitted.

 7            And if there's -- I haven't intended to make any
 8    substantive edits other than as we're going to discuss today.
 9    Mostly it's just wordsmithing, tightening things up, aligning
10    things to the format that we typically see for pretrial orders,
11    things along those lines.  And so I don't think you'll really
12    see a lot of substantive edits, again, other than what we're
13    going to discuss today.

14            But if I have wordsmithed something unartfully in a
15    way that causes someone heartburn, please feel free to make the
16    appropriate edits when I recirculate; otherwise, I'll take it
17    that my edits have got the job done.

18            And so to start at the beginning turning first to the
19    issue of subject matter jurisdiction, I did note that under
20    that paragraph (1)(a) the defendant disputes plaintiffs'
21    standing to bring their claims.  It looks like this argument
22    was already asserted in the defendant's motion to dismiss.
23    Judge Melgren rejected it, but I assume this is something that
24    the defendants can and do challenge again at the summary
25    judgment stage.  Is that -- in these type of cases.  Is that

1  accurate, Mr. Cooper?

2        MR. COOPER:  That is accurate, judge.  Part of

3  Judge Melgren's ruling was that on the -- on the motion to

4  dismiss the allegations supported standing.

5        THE COURT:  Okay.  Got it.

6        Okay.  Then under governing law you guys have had a

7  number of paragraphs about what claims remain versus what was

8  dismissed.  We don't really need to cover that in the governing

9  law section, and so instead I clarified under the later

10  section, I think it's paragraph (4)(a), what claims are made

11  and what claims have been dismissed.  And so that's why you

12  won't see that language under the governing law section.

13        One question that I did have that alluded me, and I'm

14  going to jump ahead just a little bit, but when I got to the

15  plaintiffs, the relief that they're seeking, and this will come

16  back to the governing law section, but one of the forms of

17  relief the plaintiffs are seeking is the following relief.  It

18  seeks class-wide judgment declaring K.S.A. 21-6313 *et sequitur*

19  and the City's policies, practices, and conduct above violate

20  the constitutional rights, et cetera, et cetera.  And then

21  under the governing law I thought that you all listed K.S.A.

22  21-6313 and 21-6316, but then in the narrative throughout I

23  really didn't see anywhere other than where 21-63-13 (sic)

24  itself is implicated.

25        So I guess I'm not understanding the reference to this

1  *et sequitur* or 21-6316 under governing law.  Can you help me

2  understand that, Ms. Brett?

3          MS. BRETT:  Sure, Your Honor.  So there are additional

4  statutes following the definitional statute at 21-6313 that

5  implicate the harms that are described in our factual

6  contention section, in particular the minimum bail amount that

7  is set for individuals who are on the gang list who are charged

8  with certain offenses.  And so if we -- if you'd like we can

9  add the relevant statutory cite to our factual contention

10  section when we talk about that, but the -- that is the

11  specific statutory provision from I believe it's 6316 that we

12  are concerned about and challenging in this case as relate to

13  6313.

14          THE COURT:  Got it.  Okay, that makes sense to me.

15  Yes, okay.  I'm not saying you necessarily need to add it, but

16  that helps me understand why you have that reference to 6316

17  here.

18          I have deleted -- other than in the beginning where I

19  refer to K.S.A., really the proper way to cite that,

20  unfortunately, is Kan.Stat.Ann, which is fairly long.  And so

21  after we mention a couple times in the beginning, I've pretty

22  much just started saying it down Section 21-6313, and I think

23  it's pretty clear from that what we're talking about

24  throughout.  And so that's one change that I've made

25  throughout.

1          I thought it was a really interesting read for what
2     it's worth.  Once I get to the plaintiffs' factual contentions,
3     those were very helpful and I thought very well written, but
4     they're quite a bit longer than what we usually see, and I'm
5     not saying unjustifiably so.  I actually thought the level of
6     detail was very helpful to understand what the case was about,
7     but I did still think there was a lot of room to condense them
8     to make them a little bit shorter.
9          And so you'll see throughout there -- again, I haven't
10    intended to make any substantive edits to the plaintiffs'
11    factual contentions, but what I have done is eliminate some of
12    the wording in the factual contentions which is now redundant
13    of what's in the stipulated facts.  I'm assuming the factual
14    contentions came first and then you all probably worked on the
15    stipulated facts.  And so there's just some repetitive language
16    that remained in the factual contentions that I didn't think
17    those really needed given the stipulated facts, and so I've
18    eliminated some of that.
19          There was other -- also some language throughout that
20    got, I thought, sort of repetitive and unnecessary.  It just
21    seems to be largely implied, and that was language along the
22    lines of, you know, under vagueness and overbreadth, or that
23    the criteria for determining what constitutes a particular
24    street gang area, and then you go on to say as used in K.S.A.
25    21-6313 and as applied by the WPD designating individuals as

1    gang members or associates in the gang database.  I think that

2    that's fairly implied in the plaintiffs' factual contentions

3    and really it occurs over and over and over and over.  And so I

4    thought there was a lot of room to shorten that up, and so I've

5    eliminated a lot of that wording.

6            And then other than that I've just tightened up the

7    language a little bit.  And there were some points where the

8    phrasing was a little bit confusing, so I've tried to clarify

9    it.

10           But, again, if -- overall I thought it was really well

11   written and I understand what the case is about from the

12   plaintiffs' perspective, and so I really appreciate your time

13   and effort and good work on that.

14           MS. BRETT:  Thank you, Your Honor.  We'll be happy to

15   review those recommended changes.  Thank you.

16           THE COURT:  Okay.  Then once we get to the defendant's

17   factual contentions, I'm a little bit more gloom and doom,

18   Mr. Cooper, I regret to say, in that I was really quite

19   struck --

20           One more question I had in the plaintiffs' factual

21   contentions.  Where it's talking about specifically Christopher

22   Cooper, at some -- near the end -- it's actually the last

23   sentence or the last paragraph it says, "Recently Cooper

24   applied for a job with Sprint Aerospace."  I assume that's

25   Spirit AeroSystems.  I don't think there is a Sprint Aerospace.

1    I'm guessing.

2              MS. WOODY:  That's correct, Your Honor.  That's

3    correct.

4              THE COURT:  Okay.  I've made that change then.

5              Okay.  Then to the defendant's factual contentions,

6    it's really -- I'm -- those really need to be reworked.  And

7    let me just say that for what it's worth, Mr. Cooper, I'd -- I

8    would encourage you and Mr. Branson to go back and review --

9    the court updated its form pretrial order in December of 2022.

10   I know, Mr. Cooper, this isn't your first rodeo with a pretrial

11   order in this court, and so just for what it's worth letting

12   you know where I'm coming from on this.

13             In December of 2022 the court revised its pretrial

14   order form after some pretty robust discussion amongst the

15   district judges where, as I'm sure you recall, in this court

16   once upon a time the pretrial order form required, frankly, a

17   lot of detail as to each claim, et cetera, et cetera,

18   et cetera, and then it went to a more generic format where the

19   parties essentially laid out their factual contentions.  And

20   suffice it to say that that just really wasn't working very

21   well for the district judges as a whole.  Not to say that it

22   might not have passed muster for some of them, but most of them

23   wanted significantly more detail than what they were getting in

24   the more updated pretrial order form.

25             And so what was ultimately decided is that the court

1    was not going to significantly revise the pretrial order form

2    but rather the comments in the form, and those -- now

3    essentially what they're wanting in the defendant's factual

4    contentions -- and I'll go through some examples of what you

5    have right now a little bit more clearly here in a moment.  But

6    at a high level the judges are wanting to see something akin to

7    what the plaintiffs have done here, and from the defendant's

8    perspective really whatever counterpoints the defendant intends

9    to make in response to the plaintiffs' factual contentions.

10   And to that end, the district judges will look closely to the

11   pretrial order to construe the claims and defenses as well as

12   the proper scope of the evidence both on summary judgment and

13   at trial.

14        Now, the different district judges may vary in their

15   level of extent to which they hold parties to what's in the

16   pretrial order, but I can tell you that I've issued a number of

17   pretrial orders in Judge Melgren cases which were dozens of

18   pages long in what I would call a little bit more complicated

19   cases like this one.

20        And what the pretrial order form now says is that each

21   party should provide a concise statement of the factual

22   contentions that they believe support their respective theories

23   of the case.  You don't have to recite every factual nuance and

24   identify every item of evidence, but the factual contentions

25   must provide a sufficiently specific narrative that, if

1   supported by the evidence, each claim and defense the verdict

2   could withstand a dispositive motion if there's a motion for

3   summary judgment, judgment as a matter of law, or judgment on

4   partial findings in a non-jury case or -- and I'm ad-libbing

5   here -- but from the defendant's perspective sufficient

6   specific narrative that you could defeat such a motion.  And so

7   they also must be sufficiently detailed to support each claim

8   or defense.

9        And so as I'm looking at what's here, most of that I

10  probably just am not going to include in the defendant's

11  factual contentions because it's really not factual

12  contentions.  And so the first would be the defendant generally

13  denies plaintiffs' claims and contentions, that I would not --

14  I'm not going to include here because it's not a factual

15  contention.  It's just a general denial.  And so if you deny --

16  if the defendant denies the plaintiffs' contentions, rather

17  than saying that, I think you need to explain why.  In other

18  words, what's -- what's the counter narrative to what the

19  plaintiff has provided here.

20       Does that make sense just as a beginning matter,

21  Mr. Cooper?

22       MR. COOPER:  It does.  There was -- I trust -- you can

23  trust me there was discussion about that, and part of it was

24  how do you plead the -- a negative.  But I'm -- I've been

25  listening and taking notes as you've been discussing, and I

1   understand what it is you're looking for.

2        THE COURT:  Okay.  Yeah, all this -- like, for

3   example, the next sentence might be helpful.  It says, "Progeny

4   is not prohibited from organizing or conducting meetings or

5   assemblies and continues to hold regular membership meetings

6   and community events."  You can go on to say, for example,

7   blah, blah, blah, blah, blah and explain why that is the case.

8        And also I guess I don't understand why that seems

9   significant.  Perhaps it's significant to, you know, harm,

10  significant to -- so, in other words, a lot of what the

11  defendant's factual contentions are in here I don't even

12  understand necessarily.  I mean, I can guess but I don't

13  necessarily even understand what issues they go to.  And so

14  it's hard for me to tell how they correlate to the sentence.

15       And so although you don't have to put your defenses in

16  here, maybe add some kind of header, some heading, something

17  like that, something like what the plaintiffs have done so that

18  I get why we're talking about certain kinds of things and why

19  those matter essentially in the scope of why.

20       Honestly, if I read the defendant's factual

21  contentions, at this point I just don't even understand what

22  their defenses are about.  So, I mean, I understand there's a

23  failure of proof entity, but I just think that -- there's a

24  failure of proof allegation, but I just don't get what they're

25  about.  And so I think by adding a whole lot of meat to that

 1    would help make sure that you preserved your ability to pursue

 2    such theories with Judge Melgren.

 3            And perhaps you have insight as to how tightly he

 4    holds parties to the pretrial order in ways that I don't, but

 5    at least at this procedural juncture for your own benefit I

 6    think it would be very helpful to beef up.

 7            And then you go on -- there's a couple of paragraphs

 8    too about how Elbert -- essentially you think Elbert Costello

 9    really is a member of a criminal street gang and the same about

10    -- and so, anyway, I just think -- I think it would be really

11    helpful to beef up this narrative pretty significantly to

12    something akin to a counterpoint to what the plaintiffs have

13    done.  And so I'll let you have at it, Mr. Cooper, when I

14    recirculate this.

15            MR. COOPER:  Very well.

16            THE COURT:  Okay.  Just as a few other examples.  We

17    get to Martel Costello.  You say the conditions about which he

18    complains are the result of his criminal convictions and not

19    any action by the WPD or a result of being on what's known as a

20    gang list, but I'm not sure -- is that all going to, for

21    example, the lack of a concrete injury in fact?  In other

22    words, a lack of standing?

23            MR. COOPER:  That's --

24            THE COURT:  I'm sorry?

25            MR. COOPER:  It's both that, judge, and just the fact

```
 1    that he is, in fact, a gang member and/or -- or that
 2    identification of him as the court is factually supported.
 3              THE COURT:  So how -- how does that -- help me
 4    understand.  And how does that matter if they are -- if one of
 5    them -- one or more of them is actually a gang member?  How is
 6    that a defense, because -- yeah, help me understand.
 7              MR. COOPER:  Well, in part each claims not to be.
 8              THE COURT:  I'm sorry?
 9              MR. COOPER:  Each claims not to be.
10              THE COURT:  Right.  But how does that -- how does that
11    pose a defense?
12              MR. COOPER:  Well, they're not improperly identified
13    in the database as a gang member because -- well, period.
14              THE COURT:  Okay.  And so you think therefore no
15    liability?  Like they can't prove liability because they
16    weren't wrongfully identified?
17              MR. COOPER:  In -- in part.
18              THE COURT:  Okay.  You know, I think it would help if,
19    when you are talking about each one of them individually, if
20    you could maybe help articulate how the points you're making
21    somehow correlate to the legal defenses or at least -- or maybe
22    the legal defenses refer back to that.
23              So, for example, we get to Levy who you say is a
24    member of -- basically you think he is a member of a criminal
25    street gang.  He was convicted of murder and gang -- and
```

1    essentially the trial judge allowed this gang evidence pursuant

2    to Kansas state law.  And so I guess I don't understand that --

3    how that addresses the allegations, because I think that's kind

4    of the point is once you're a gang member there's all of this

5    sort of negative -- there's all these negative consequences

6    that flow through the criminal justice system.

7            So, for example, whether he's subject -- if I recall

8    correctly, I could be wrong, but he was subject to -- I don't

9    understand how that helps with the idea that he was subject to

10   the default minimum 50,000 fine or stricter or unfair probation

11   term.  But maybe -- maybe that would help if you broke down

12   more succinctly.  I may be confusing all of the distinctions

13   amongst them.  You all are in the weeds a lot more on that than

14   I am.

15           But so identify, for example, was he someone who was

16   subject to a $50,000 -- like I don't -- I don't understand what

17   this defense that essentially the trial judge allowed this gang

18   evidence goes to, whether it's the issue of causation, concrete

19   injury in fact, things like that.

20           Mr. Cooper?

21           MR. COOPER:  In that specific instance, judge, it's

22   not the fact that he was on -- identified on the gang database

23   or in the gang database.  It's instead that there was

24   substantive evidence actually provided in a -- in a proceeding

25   where due process was afforded.  In other words, the evidence

1    was not used with -- in a manner which deprived the -- that

2    particular plaintiff of due process.  He was afforded due

3    process through the trial process itself.

4              THE COURT:  Great.  Got it.

5              MR. COOPER:  So that's -- that's part of our overall

6    point is being in the database in and of itself doesn't cause

7    any of these harms.  The harms only come when there's a law

8    enforcement encounter or criminal justice system encounter.

9    And all of the harms that are alleged are accompanied

10   separately by due process in the criminal justice procedure.

11             THE COURT:  I got it.  So your -- so that would be

12   helpful to break down into a heading maybe that says no lack of

13   due process and then essentially articulates all the ways in

14   which they were afforded due process through the criminal

15   justice system.  That would be really helpful.

16             MR. COOPER:  Okeydoke.

17             THE COURT:  Because then that goes to -- then it's

18   clear to -- this argument is going to the due process claims;

19   right?

20             MR. COOPER:  Yeah.

21             THE COURT:  Okay.  And then another one is Cooper has

22   -- we're talking about Cooper has no evidence that he ever lost

23   a job or scholarship due to being listed on the gang list.  And

24   why is that that he -- again, that has no evidence.  I'm

25   probably not going to include that.  But why is it you're

1   saying he never lost a job or scholarship?

2           MR. COOPER:  Well, that's one of his affirmative

3   claims is that he sustained a loss by --

4           THE COURT:  Right.

5           MR. COOPER:  -- scholarship, sustained a loss of job

6   in his testimony, and he has no -- no evidence connecting those

7   harms to being on the database.  He doesn't know why he didn't

8   get those jobs.  He suspects.  Either of those is speculation.

9           THE COURT:  Okay.  So, like, that would be helpful

10  rather than saying he has no proof or has no evidence.  It's to

11  say that, you know, he testified in deposition that blah, blah

12  -- you know, that he doesn't have anything tying the two

13  together.  So it's pure -- so it's only the speculation that he

14  lost a job or scholarship because of the gang list; right?

15  Something like that.  Just something that says more clear why

16  you're saying there's no evidence I think would be much more

17  helpful.

18          And then I also wasn't sure what this neither

19  K.S.A. 21-6313 nor WPD Policy 527 contain a prohibition,

20  sanction, fine or penalty, neither prohibit conduct or regulate

21  speech, nor infringe upon the plaintiffs' right of expression

22  or association, help me understand how that substantially

23  can -- because I understand the plaintiffs' argument would be,

24  well, yeah, but it's all these harms that flow from being on

25  the gang list.  And so why does it matter that as a matter of

1   law that the statutes themselves don't require a lot of these

2   harms that ultimately end up happening?

3          MR. COOPER:  Again, plaintiffs' claim is that this

4   statute, 6113 (sic), or WPD 527 impose these harms.  They

5   don't -- they don't restrict the freedom of associations,

6   speech, expression.  I mean, the statutes themselves don't do

7   the things or -- and the policy itself don't -- does not impose

8   the harms or the events plaintiffs complain of.  Those are

9   separate consequences of law enforcement, criminal justice

10  encounters that are all accompanied by due process due to the

11  Code of Criminal Procedure.

12         THE COURT:  Okay.  Okay.  So essentially your point on

13  this paragraph would be a facial challenge failed --

14         MR. COOPER:  Right.

15         THE COURT:  -- because of the statute itself?  So that

16  is a facial challenge, but then there's a separate as applied

17  challenge.

18         So as I understand -- this is really helpful.  So as I

19  understand the City's defense at this point is that the statute

20  and policy are facially constitutional and the defendant --

21  any, you know, additional rights the defendants have are

22  protected through the criminal justice system essentially.

23         MR. COOPER:  Right.

24         THE COURT:  And so then you get down to the as applied

25  challenge, and that's where you get into essentially issues

1    concerning -- well, as --

2           MR. COOPER:  How it really works --

3           THE COURT:  Right.

4           MR. COOPER:  I spoke over you; I'm sorry.

5           THE COURT:  No, no, that's helpful.  Yeah, that's

6    exactly -- you said it better than I could have, so... okay.

7           And then the same thing, you say it's not vague either

8    facially or as applied.  Again, I'll let you -- it sounds like

9    you got all these -- as I'm talking to you about all of these,

10   I'm understanding a lot more what the case is about from the

11   defendant's perspective.  It just didn't come through to me in

12   the draft pretrial order.  And so I'll leave it to you to

13   hopefully reorganize that on these subheadings and articulate

14   really what the case is about from the defendant's perspective

15   and put a lot more meat on that.

16          Okay.  On the plaintiffs' claims paragraph (4)(a), I

17   dropped a footnote noting the claims that the court previously

18   dismissed and also another footnote clarifying Progeny is only

19   bringing Count 1 and Count 6.  The individual plaintiffs are

20   bringing all the claims, but Progeny is only bringing Counts 1

21   and 6.  So hopefully that's correct.

22          Is that right, Ms. Brett?

23          MS. BRETT:  I believe so, Your Honor.

24          THE COURT:  Okay.  And I also have deleted the last

25   paragraph that says, "Entitle plaintiffs to prospective

1    injunctive and declaratory relief under 1983 and reasonable

2    attorneys fees," because that's covered in paragraph 5 which

3    goes to damages and non-monetary relief requested, so we don't

4    need it in paragraph (4)(a) too.

5            And then, Mr. Cooper, when we get the defendant's

6    defenses, same thing here.  On the defenses I need to

7    understand, when I read the defendant's perspective defenses,

8    either what they're about by virtue of having read through the

9    factual contentions, which I don't at this point, or sometimes

10   if it's a pretty perfunctory defense you can sort of complete

11   the sentence here.

12           So, for example, the first one, general denial of

13   plaintiffs' claims, that's not an affirmative defense.  I'll

14   take that out.  You can articulate all the reasons why

15   factually the plaintiffs' claims don't pass muster in a factual

16   contention.

17           The plaintiffs' lack of standing under Article III,

18   the plaintiffs' failed to demonstrate they suffer from a

19   continuing injury or a credible threat of future harm, I sort

20   of get what you're saying there, and hopefully it will come

21   through a little bit more clearly when you redo the factual

22   contentions, but you can elaborate, if you need to, on some of

23   these a little bit more in the defendant's defenses, for

24   example, just like completing a sentence.  So, for example, in

25   the next one, case cite 21-6313 is not unconstitutionally vague

1   because blah, blah, blah, blah, you know, just sort of complete

2   the sentence on something like that.

3          But if you already have it in the factual contentions

4   -- in other words, I just want to make sure that I understand

5   what the factual basis is or the theory is for these defenses,

6   whether it's in the factual contentions or in paragraph 4 here.

7   Does that make sense, Mr. Cooper?

8          MR. COOPER:  It does, yes.

9          THE COURT:  Okay.  I'm also curious, you had the

10  Wichita Police Department's Master Gang List and Gangs Database

11  are not published.  What does that go to?  I wasn't sure how is

12  that a defense?

13         MR. COOPER:  Liberty interest claims.  That's one of

14  the elements of a liberty interest claim:  publication.

15         THE COURT:  Okay.  So that gets me to the next point

16  on the defendant's defenses.  On each one of them I'd like you

17  to add at the beginning as to all claims or as to count "x,"

18  whatever those are, just so that it's clear which of the

19  defenses apply to which claims.

20         MR. COOPER:  We can do that.

21         THE COURT:  And so when I send that if you -- okay.

22  Just make sure that whenever -- that you articulate -- break

23  those down as to the claims that they apply to.

24         Okay.  Then on the damages and non-monetary relief

25  requested, Ms. Brett, the first one I did include just the -- I

1    don't think that class certification is necessarily a claim for

2    relief, and so I just included that in the instructory

3    paragraph instead.  But then that leaves the first bullet point

4    "as a class-wide judgment declaring that 21-6313 *et sequitur*

5    and the City's policies, practices, and conduct described above

6    violate the constitutional rights of plaintiffs and the class

7    they represent," are you really -- I was just curious, are you

8    really seeking the *et sequitur*?

9            In other words, because then you want a permanent

10   injunction against the City and its employees for enforcing

11   21-6313 *et sequitur*, and I just wondered if you -- what that

12   means.  Because if you're really seeking to invalidate several

13   subsections, it seems like those ought to be spelled out really

14   clearly here, because I'm not sure what you're really asking

15   for if it's just this 6313 *et sequitur,* kind of an elusive

16   parameter sort of.  Does that make sense?

17           MS. BRETT:  Yes, Your Honor.  And so as discussed a

18   few moments ago when we were talking about some of the language

19   you addressed earlier in the order, we will go back and confirm

20   the specific provisions that follow 6313 that relate to the

21   claims that we have in this document and spell those out more

22   specifically if that works.

23           THE COURT:  Okay.  Okay.  Okay.  Thank you.  That just

24   seemed a little bit unwieldy to me.  So -- okay, great, so if

25   you clarify that.

1          I know you all have a dispositive motion coming up

2     September 20th, but given I'm going to recirculate this for

3     further edits, I realize we need to bump that.  I'll come back

4     to that in just a moment.  But I can tell you that based upon

5     an anticipated dispositive motion deadline in late September,

6     Judge Melgren has given us a trial date of May 7th, 2024, at

7     9:00 a.m. in Wichita.

8          Then under alternative dispute resolution, it looks --

9     I know you guys have tried to settle this thing to no avail, so

10    I appreciate all that.  But when we get to that, I think it

11    would be helpful to be clear.  You say the parties currently

12    believe the prospects for settlement of the case are poor in

13    advance of summary judgment, and summary judgment's a pretty

14    lengthy process from the time it starts to the time it ends.

15    And I assume what you mean here is that the prospect of the

16    case are poor in advance of any summary judgment ruling.

17         Is that correct, Mr. Cooper?

18         MR. COOPER:  It is.

19         THE COURT:  Okay.  Ms. Brett, do you agree with that?

20         MS. BRETT:  Yes.  Yes, Your Honor.

21         THE COURT:  Okay.  I just want to make that

22    clarification in here so that if Judge Melgren is looking for

23    "is there a way to get this settled without all the hullabaloo

24    associated with summary judgment," the answer is based on

25    clarified wording here probably not.  And so I just wanted to

1  provide that clarification there.

2          And so with that let's turn back to the issue of

3  dispositive motion deadline and me recirculating this to you

4  all to work this over and to give you all time to do that.

5  What would be a realistic turnaround on your end in order to

6  get a revised draft back to me?  Normally I like to aim for

7  about a week-ish, and so but I know we've got, like, a

8  three-day weekend in the middle here and whatnot.

9          And so, Mr. Cooper, I think the bulk of the legwork is

10  going to fall on you on this next go-around, you and your team,

11  and so what would be workable from your perspective in terms of

12  turning around the revised draft?

13          MR. COOPER:  I would really have to say the 8th at the

14  earliest, judge.  If you can't tell from my voice, I'm coming

15  back from a bought of COVID.

16          THE COURT:  Oh, my.

17          MR. COOPER:  Yeah, which is -- this one was way more

18  significant than the last time I had it.

19          THE COURT:  Sorry to hear that.

20          MR. COOPER:  Well, I'm sorry to be saying it, let me

21  tell you.

22          THE COURT:  Although you've got this one under your

23  belt this go-around presumably then.

24          MR. COOPER:  And we've got another dispositive motion

25  deadline that -- this Friday.  So realistically this is going

1    to be the weekend project and going into the weekend exchanging

2    drafts.  So a week from today is I think fairly ambitious.

3    Next Friday is still ambitious but much more doable.

4          THE COURT:  How about -- how about if we say

5    September 11th, Monday the 11th?

6          MR. COOPER:  That -- that's even better.

7          THE COURT:  Or do you like Fridays?  I like Friday

8    deadlines because then I don't have to work on things over the

9    weekend.  But if you want a little bit of wiggle room over the

10   weekend, I'm fine, I'm happy to set it on September the 11th.

11         MR. COOPER:  I prefer the 11th just to get the extra

12   two days to...

13         THE COURT:  Okay.  Okay.  Ms. Brett, is that workable

14   from your perspective?

15         MS. BRETT:  Yes, Your Honor, it's workable from our

16   perspective.

17         THE COURT:  Okay.  Then I'd like to set this for a

18   follow-up call in case I have any questions on the resubmitted

19   pretrial order.  If we don't need the call, we can always

20   cancel it.  But while I've got everybody on the line, I think

21   it's handy to get a follow-up call set.  And so I would suggest

22   setting a follow-up call maybe for -- how about 10:00 a.m. on

23   Thursday the 14th?

24         MS. BRETT:  That works for me, Your Honor.

25         MR. COOPER:  Yes, judge, we'll be in a -- in a

1    deposition, but we will take a break from that to do this.

2          THE COURT:  Okay.  We might not even need the call.

3    And if we do, I probably -- I suspect it will be a very short

4    follow-up call.  But if we can cancel it, just tidy things up

5    by e-mail, I'm happy to do that as well.

6          Okay.  So if we -- if we -- given that schedule then,

7    I think if you all want to, I'm happy to move out the

8    dispositive motion deadline a little bit to give you a little

9    bit more of a turnaround after hopefully if we reconvene --

10   resubmit on the 11th.  Reconvene on the 14th if necessary.

11   Hopefully I will have this entered by September 15th.  How

12   about if we put the dispositive motion deadline out to

13   September 29th?  Is that something that you all want to do or

14   would you prefer to keep it as is?

15         Thoughts on that, Mr. Cooper?

16         MR. COOPER:  Yeah, this is Cooper.  I was going to

17   suggest the thought 29th.

18         THE COURT:  All right.  Great minds.

19         All right.  Ms. Brett, does that work on your end?

20         MS. BRETT:  Your Honor, I'm just trying to -- that

21   works on our end.  I'm trying to game out what the remainder of

22   the deadlines would be.  We have another dispositive deadline

23   in the same window, so I'm trying to make sure I can count my

24   weeks ahead for the reply brief and the opposition briefs that

25   will need to be filed.

1         The only question I have for Your Honor on that is I

2    think we have an interest in keeping the trial date that you

3    mentioned a few moments ago, and I'm wondering if that two-week

4    extension impacts that trial date at all or if since it's not

5    too long of an extension we can keep that trial date?

6         THE COURT:  Yes, we had asked Judge Melgren for a

7    trial date based on a late September dispositive motion

8    deadline, and so September 29th is about as late as it gets.

9    So I think he'll keep that trial date of May 7th if you have a

10   dispositive motion deadline of September 29th.

11        MS. BRETT:  Thank you, Your Honor.  That -- that

12   should work.  That should work for us.  I'm bad at math on the

13   fly, but that should work for us.  Thank you.

14        THE COURT:  Thank you.  I will let you all know

15   Judge Melgren's practice typically is that if there is

16   significant motions for extension of time during the

17   dispositive motion briefing schedule, you may lose your trial

18   date.  And so I -- you know, you all got to do what you got to

19   do.  I just want to make sure that if that's an issue that

20   you're sensitive about, Ms. Brett, that you're aware that

21   motions for extension of time could impact your trial date.  At

22   what point, I don't know.  That's up to him and his chambers.

23   But if you all want to keep that trial date, I would encourage

24   you to get as close as you can to the default deadlines under

25   the local rules.

```
1              So any questions?

2              MS. BRETT:  Yeah, understood, Your Honor.

3              THE COURT:  Okay.  Mr. Cooper, any questions or

4    concerns on your end?

5              MR. COOPER:  About that specifically or anything else

6    generally?

7              THE COURT:  Anything -- anything else even.

8              MR. COOPER:  I do have a couple issues that I --

9              THE COURT:  Okay.

10             MR. COOPER:  -- we want to address.

11             THE COURT:  Okay.

12             MR. COOPER:  One is the way the Daubert motions are

13   addressed, the dispositive motion deadline on those, I think --

14   I think the -- both parties -- I don't think Daubert is

15   dispositive for either party.  So I think the alternative

16   42 days before trial would be more -- the more appropriate

17   deadline.

18             THE COURT:  Yep, I'm actually glad that you brought

19   that up because I did change the language in the pretrial order

20   that you all submitted to track with Judge Melgren's practice,

21   which is to require those motions -- the run-of-the-mill

22   motions, again, not dispositive motions but the kind you're

23   talking about, he requires those to be filed up to 60 days

24   before trial.

25             MR. COOPER:  Okay.  And then the other question,
```

1    plaintiffs, we know at the onset of this, sent a notice to the

2    attorney general that they were challenging the statute, but in

3    another case I recently had cause to actually look at and read

4    Rule 5.1.  I don't see that the -- there has been certification

5    by the court to the attorney general about the statutory

6    challenge --

7              THE COURT:  Okay.

8              MR. COOPER:  -- and I don't know -- I don't know how

9    that's supposed to be addressed.

10             THE COURT:  Would there be -- just off the top of my

11   head I don't know, but I would typically think the court -- we

12   typically don't act unless there's a motion.

13             MR. COOPER:  That -- and that's -- that's why I'm

14   bringing it up is because it's -- the statute says the court

15   will certify, and so that begs the question of how do we help

16   make that come about.

17             THE COURT:  So who would -- I think either party could

18   file a motion to require that.  Could be if it's certified it

19   will require a motion to do so.  I think either party that

20   wants that done or make sure that requirement is met will want

21   to file a motion.

22             MR. COOPER:  And my thought is the appropriate thing

23   to do would be that that certification be accompanied by the

24   final pretrial order.

25             THE COURT:  Okay.

 1          MS. BRETT:  Your Honor, this is Sharon.  I have some

 2     concerns that this is the first time this is being raised by

 3     Mr. Cooper, and -- and some concerns that doing this at this

 4     stage will create a further delay in all of the deadlines that

 5     we just discussed.  We sent that notice and made the parties

 6     aware that we sent that notice at the inception of this case

 7     about two-and-a-half years ago at this point.

 8          THE COURT:  Is that -- is that on the docket sheet?

 9          MS. BRETT:  I believe so, but I would have to go back

10     and confirm, Your Honor.

11          THE COURT:  Okay.

12          MR. COOPER:  And I got to admit, I was looking --

13     searching for 5.1 when I did a search of the docket.

14          THE COURT:  Okay.  Is it a local rule?

15          MR. COOPER:  No, it's FRCP.

16          THE COURT:  Federal Rule of Civil Procedure 5.1?

17          MR. COOPER:  Yes.

18          THE COURT:  Okay.

19          MR. COOPER:  And the text is the court must, under

20     28 U.S.C. 2403, certify.

21          THE COURT:  Okay.

22          MR. COOPER:  And so I'm not -- I'm not looking to

23     change any dates, deadlines, or anything, I just want that box

24     checked.

25          THE COURT:  Right.  Because I assume nobody wants to

21-1100 Progeny et al v City of Wichita, KS  8.30.23

1    go through all this trouble to litigate and then later on

2    there's some argument raised by the AG's Office they weren't

3    properly notified one of their statutes are invalid.

4          MS. WOODY:  This is Teresa Woody, and our office sent

5    the notification to the Attorney General's Office and by

6    certified mail.  It's been received.  So I assume the motion

7    would just relate back to that and say -- recognize that the

8    attorney general was indeed notified.

9          THE COURT:  Okay.  Okay.  And is there -- on that

10   notice -- and I'm sorry I'm not -- I'm not savvy on this issue.

11   So is there a certificate of service on that notice?

12         MS. WOODY:  Yes.

13         THE COURT:  Okay.

14         MS. WOODY:  We -- well, let me say this --

15         THE COURT:  Is there --

16         MS. WOODY:  -- it's --

17         THE COURT:  -- is there -- is there -- hold on.  Hold

18   on.  And is there the certificate of -- the signed certified

19   mail certificate --

20         MS. WOODY:  Yes --

21         THE COURT:  -- is that on file?

22         MS. WOODY:  -- I believe so.

23         THE COURT:  Okay.

24         MS. WOODY:  And I think -- I know that there is.

25   There's an acknowledgement from the Attorney General's Office

 1    that they received it.  They sent us back an e-mail saying that

 2    they received it and that -- and that they would -- that --

 3    they understood that we had filed this.  So I have that e-mail.

 4              THE COURT:  Okay.

 5              MR. COOPER:  Document 3, judge -- this is Cooper by

 6    the way -- is that notice.  What I'm unsure of is whether that

 7    counts for certification by the court.

 8              THE COURT:  Right.  Right.  Okay.  Well, I tell you

 9    what I will do is I will put on my list of things to do between

10    now and when we reconvene on the 14th how to right the ship on

11    this issue if it's not already righted.

12              MR. COOPER:  Yeah, I -- I -- I concur with Ms. Woody

13    that the notice was sent and I at least the -- that

14    administration was aware of it because I had a conversation

15    with somebody.  But like I -- like I mentioned, I just more

16    recently actually read the statute, and it said the court will

17    certify or the court must certify.  And so it begs the question

18    whether we've actually checked the box sufficiently.

19              THE COURT:  Okay.  Okay.  Well, I will take a look

20    into that issue.  I appreciate you raising the issue.  I'll

21    take a look into that and be in touch with you about that when

22    the court reconvenes again or e-mail.  So -- okay.  And give my

23    thoughts on how -- where I think we stand on that issue.

24              MR. COOPER:  Okay.

25              THE COURT:  Okay.  Thank you, Mr. Cooper.  Anything

1    else from the defendant's perspective that we need to address?

2         MR. COOPER:  No.

3         THE COURT:  Okay.  Ms. Brett, anything else on behalf

4    of the plaintiffs today?

5         MS. BRETT:  Two things, Your Honor.

6         The first is that we wanted to propose one redaction

7    to the pretrial order that gets filed publicly, and we can put

8    in a motion to that effect if you would like.  The only thing

9    that we were hoping to redact is the names of the Progeny

10   youths who are on the gang list.  So that would appear in

11   stipulated fact No. 57 as well as the second paragraph on

12   page 19 currently just to redact the names of the Progeny

13   youths.  That is consistent with the protective order that we

14   had had in the case.  I'm not sure how the court would like us

15   to handle it, but that was the first question I wanted to

16   raise.

17        THE COURT:  Well, that is a good question.  I think

18   you're not going to -- this is a good issue to raise in

19   advance.  I don't know how Judge Melgren would be inclined to

20   view something like that.  I think I would be the one that

21   decides this, but of course he can do as he wishes going

22   forward.  And so I think even if I were to grant that motion or

23   allow those to be redacted, which I frankly have never done in

24   a pretrial order, I would probably be more inclined to just use

25   initials or something like that if they're youth.

1        MS. BRETT:  Okay.

2        THE COURT:  Can we do that instead is use --

3        MS. BRETT:  Sure.

4        THE COURT:  -- initials?

5        MS. BRETT:  We can change to initials, Your Honor.

6        THE COURT:  Okay.  Okay.  I think when I recirculate

7   it or I will --

8        MS. BRETT:  Okay.

9        THE COURT:  -- I'll try to make those changes.  But

10   just for what it's worth going forward, generally I -- my sense

11   is judges in this district have a pretty low appetite for under

12   seal filings and redactions and things of that sort.  And so

13   I'm sure there has been a lot of highly confidential materials

14   produced in this case.  I would just encourage you all to

15   request any redactions and/or under seal filings as sparingly

16   as possible with Judge Melgren.  Really try to minimize those.

17   Look for ways to do that or I fear you might not like what you

18   get if that makes sense.

19        MS. BRETT:  Understood, Your Honor.

20        THE COURT:  And so whether it's that or other

21   sensitive information that you may intend to file, I just think

22   there's going to have to be, as there often is as cases get

23   closer to the public record and closer to trial, more of a day

24   of reckoning in terms of what really is going to have to be

25   kept protected at this point forward and really try to

 1    significantly narrow that down on those parts.

 2            MS. BRETT:  Understood.

 3            THE COURT:  Okay.  So but at least -- but at least for

 4    the time being we solved the issue concerning the other names

 5    in the pretrial order.  It sounds like we'll just use their

 6    initials instead.

 7            And then is there another issue, Ms. Brett?

 8            MS. BRETT:  Yes, Your Honor.  I just wanted to alert

 9    the court the parties had spoken about the page limits for the

10    dispositive motions.  Given the complexities of the case and

11    the length of the pretrial order as you previously noted, I

12    think both parties are anticipating needing more than what the

13    current local rules allow for page limits for the motion for

14    summary judgment.  And so we are intending to file a -- a

15    motion for an extension of pages that is unopposed by the

16    defendants.  And we have given them our assurance that we would

17    likewise not oppose a similar motion from them.  But I just

18    wanted to alert that to the court since that's something that

19    we had discussed since submitting the draft pretrial order and

20    it's not included under the additional pretrial motions

21    section.

22            THE COURT:  Okay.  I appreciate you highlighting that

23    issue with me.  How many pages -- just out of curiosity, how

24    many pages do you all think you need?

25            MS. BRETT:  Well, Your Honor, I don't like to estimate

1    before the thing is actually written, but even given the

2    factual allegations we've been putting together in tandem with

3    the pretrial order, our factual allegations are currently at

4    about 45 pages double spaced.  And so, you know, adding the

5    argument onto that is going to be quite significant especially

6    because, as we note, we have to -- to brief our entitlement to

7    the relief that we seek as well as part of the dispositive

8    motions.  So I'm not sure that I can give you a best

9    guesstimate right now, but I know that it will be over 60 pages

10   most likely.

11         THE COURT:  Okay.  Hold on.  I'm just adding this to

12   the list of motions -- anticipated motions.  Of course you know

13   under the court's local rules you'll need to file that at least

14   three days in advance.

15         MS. BRETT:  Understood, Your Honor.  We have it

16   prepared and ready to go.  I just wanted to flag it for you so

17   that could be added in.

18         THE COURT:  Okay.  Just out of curiosity, is this --

19   maybe these kind of cases are really amenable to some

20   resolution on summary judgment, but I don't know.  I always

21   kind of felt like -- I always kind of feel like that your

22   likelihood that you're entitled to summary judgment is

23   inversely proportional with your briefs.  And so if you're

24   really talking about that many pages, do you really think that

25   all -- that this case is really amenable to summary judgment or

1   can't you trim down the issue that you're presenting?  I mean,

2   to me the standing issues seem to be a big one on summary

3   judgment.  I could be wrong on that, but...

4        MS. BRETT:  Well, Your Honor, I think their standing

5   defense is something that they will need to brief certainly and

6   we'll need to be prepared to oppose.  But given there are five

7   different plaintiffs and a putative class that they represent

8   and four different claims in the case, there is -- a

9   significant amount of discovery has been conducted in this case

10  that we would like to present in support of our claims.  We

11  think that it is the type of case that's going to have a longer

12  dispositive motion than maybe some others might, but we still

13  believe that at least some of the claims can be resolved on

14  summary judgment.

15       THE COURT:  Mr. Cooper, on the defendant's anticipated

16  motion for summary judgment, do you have a sense of how many

17  pages you're going to need?

18       MR. COOPER:  We really don't, judge.  Other than our

19  discussion today, in noting that the plaintiffs' factual

20  contentions comprise 12 single-space pages and we're going to

21  have to rebut each one of those, that's quadruple.  So I was

22  also envisioning 40 to 50 pages of factual contentions followed

23  by 25-30 pages of briefing all of the issues.

24       THE COURT:  Well, good grief you all.  I'm sure you'll

25  just make Judge Melgren's day with this.  Luckily for you he's

1    a softer landing than I would be on page limits, so good luck

2    with that.  I appreciate the heads-up.  I'll make sure to let

3    him know it's coming and -- and you may -- you may find luck

4    with him.  Okay.  So thank you for highlighting.  I'll add that

5    to the list of anticipated motions, Ms. Brett, and wish you all

6    to the best of luck on that front.

7          Okay.  With that is there anything else we need to

8    take up today on behalf of the plaintiffs, Ms. Brett?

9          MS. BRETT:  No, Your Honor.  Thank you.

10         THE COURT:  Okay.  Anything further on behalf of the

11   defendant, Mr. Cooper?

12         MR. COOPER:  No.  Looking forward to getting with you

13   in a week-and-a-half.

14         THE COURT:  Okay.  Very good.  Yes, I'll look forward

15   to receiving the revised version back and reconvening if

16   necessary here in the couple of weeks, and wish you all the

17   best of luck continuing to make progress between now and then.

18         And, Mr. Cooper, continued speedy recovery.

19         And so with that I'll get this revised version

20   circulated and an initial order memorializing the follow-up

21   deadlines, and the court stands adjourned.  Thank you everyone.

22         (Proceedings adjourned.)

23

24

25

1                          CERTIFICATE

2          I certify that the foregoing is a true and correct

3    transcript from the stenographically reported proceedings in

4    the above-entitled matter.

5       DATE:  September 6, 2023

6

7                    /s/Kimberly R. Greiner
                     KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
8                    United States Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25