### Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc., et al.,

  Plaintiffs,

vs.   Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS,

  Defendant.

DEPOSITION OF
JEREMY LEVY, JR.,

taken on behalf of the Defendant, pursuant to Amended Notice to Take Deposition, beginning at 10:04 a.m. on the 7th day of June, 2023, at the Hutchinson Correctional Facility, 500 Reformatory Street, in the City of Hutchinson, County of Reno, and State of Kansas, before Lee Ann Bates, CSR, RPR, CRR.

### Page 2

APPEARANCES

ON BEHALF OF THE PLAINTIFF:

  Ms. Teresa A. Woody
  Kansas Appleseed Center for Law & Justice
  211 East 8th Street, Suite D
  Lawrence, Kansas  66044
  (785) 251-8160
  twoody@kansasappleseed.org

  Mr. Paul M. Vogel
  Shook, Hardy & Bacon, LLP
  2555 Grand Boulevard
  Kansas City, Missouri  64108
  (816) 474-6550
  pvogel@shb.com

### Page 3

ON BEHALF OF THE DEFENDANT:

  Mr. Charles E. Branson
  Fisher, Patterson, Sayler & Smith, LLP
  3550 SW 5th Street
  Topeka, Kansas  66606
  (785) 232-7761
  cbranson@fpsslaw.com

### Page 4

INDEX

Certificate ---------------------------- 50

WITNESS
ON BEHALF OF DEFENDANT:         PAGE
JEREMY LEVY, JR.
Direct-Examination by Mr. Branson     5

EXHIBITS
LEVY DEPO EXHIBIT NO.:         MARKED
No 69  Plaintiff Jeremy Levy's Response
       to Defendant's 1st Set of
       Interrogatories              11
No 70  Journal Entry of Judgment,
       2017-CR-2032-FE              26
No 71  Department of Corrections File  16
No 72  Complaint                    27

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

Page 17

1  Does that sound correct to you?
2     A.  Yes, sir.
3     Q.  Is that when you become eligible for
4  parole?
5     A.  Yes, sir.
6     Q.  All right.  And I think you'd given me an
7  admission date earlier.  This says September 12,
8  2018.  Does that sound about right?
9     A.  No.
10    Q.  Okay.  What do you think your admission
11 date here was?
12    A.  Here at Hutchinson?
13    Q.  Yeah.
14    A.  May 19th, 2020.
15    Q.  Okay.  Before you were in Hutchinson,
16 were you actually at Ellsworth first?
17    A.  Yes, sir.
18    Q.  Okay.  And before Ellsworth, did you
19 appear in El Dorado?
20    A.  Yes, sir.
21    Q.  Okay.  On page 2 of that document, it
22 reflects convictions, sir.  The document reflects
23 that you were convicted in Sedgwick County
24 District Court in Case Number 17-CR-2032 for
25 murder in the first degree.  Is that your

Page 18

1  understanding of your conviction?
2     A.  Yes, sir.
3     Q.  All right.  Do you recall what sentence
4  you received for that conviction?
5     A.  Yes, sir.
6     Q.  What is your sentence?
7     A.  25 to life.
8     Q.  Okay.
9     A.  Parole after 25.
10    Q.  All right.  Sir, does this record I'm on,
11 starting on page 2, does this also include various
12 disciplinary reports since you've been in custody?
13    A.  Yes, sir.
14    Q.  Okay.  And, sir, I'm not asking if you
15 agree with any of these disciplines, but after
16 you've taken some time and looked through there,
17 do you have any reason to believe this doesn't
18 accurately represent the discipline that you've
19 received since you've been in custody?
20    A.  I need you to ask that question again,
21 please.
22    Q.  Okay.  I'm not -- I'm not asking if you
23 agree whether or not you should have received
24 discipline.  I'm only asking if -- if this is an
25 accurate representation of the discipline that's

Page 19

1  been imposed on you since you've been in custody.
2  Are these the things that have happened to you
3  since you've been in custody?
4     A.  Yes, sir.
5     Q.  Okay.  Sir, do you -- these discipline
6  entries have different classes of discipline, and
7  it looks like they range from 1 to 3.  Do you
8  know what those differences are?
9     A.  I assume severity level.
10    Q.  Okay.  Do you know if 3 is more severe
11 than 1?
12    A.  1 is more severe than 3.
13    Q.  So 1 is the most severe?
14    A.  Yeah, than 3.
15    Q.  Okay.
16    A.  3 is like at the very bottom.
17    Q.  Okay.  Thank you.  Sir, I want to turn
18 you back to your interrogatory answers, in
19 Interrogatory Number 9, and that is on page number
20 8.  Sir, you were asked a question about if you've
21 ever had any affiliation with any groups or
22 organizations.  Sir, have you ever heard of the
23 Folks gang?
24    A.  Yes, I have.
25    Q.  And how have you heard of them?

Page 20

1     A.  I've had -- well, I have multiple family
2  members that are associated -- that are -- I have
3  multiple family members that are associated or are
4  the Folks, so --
5     Q.  Okay.  So they're part of the Folks gang?
6     A.  Yeah, I have multiple family members,
7  yeah.
8        MS. WOODY:  You're going to have to speak
9  up just a little bit.
10       THE WITNESS:  Yes, I have multiple family
11 members.  I'm sorry, Miss.
12       BY MR. BRANSON:
13    Q.  Sir, have you ever been a member of the
14 Folks gang?
15    A.  No, sir.
16    Q.  Are you familiar with the term Gangster
17 Disciples?
18    A.  Yes, sir.
19    Q.  And how are you familiar with the term
20 Gangster Disciples?
21    A.  Folks, Gangster Disciples are the same
22 thing.
23    Q.  Okay.  Do you have any family members
24 that consider themselves Gangster Disciples?
25    A.  Yes, sir.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

Page 25

1  Q. Okay. Sir, I don't want to ask you
2  anything about any conversations you have with
3  your appellate counsel in this matter. I'm just
4  asking you if you could tell me, in your own
5  words, what caused you to be convicted of this
6  case, your understanding of what caused you to be
7  convicted in this case.
8    A. What caused me to be convicted in this
9  case? The overwhelming accusations about things I
10 did by the WPD, as far as gang evidence and things
11 of that nature; things I've never been tried for
12 or questioned about or nothing like that, that was
13 presented at my trial.
14   Q. Okay.
15   A. That tainted the image of the jury.
16   Q. Okay. You're talking about the Wichita
17 Police Department's testimony in your case about
18 gang affiliation?
19   A. Yes, sir.
20   Q. Okay. Sir, were you present for your
21 entire trial?
22   A. Yes, sir.
23   Q. Were you present for any of the pretrial
24 hearings?
25   A. Yes, sir.

Page 26

1  Q. Okay. Did your attorney challenge the
2  testimony from the Wichita Police Department about
3  your gang affiliation?
4    A. I'm almost 100% sure, yes.
5    Q. Okay. Was that done at pretrial, before
6  the trial?
7    A. I believe so, yes.
8    Q. Okay. Did your attorney also raise those
9  objections during the trial itself?
10   A. I believe so, yes.
11   Q. And did the judge allow that evidence
12 into your trial?
13   A. Yes, he did.
14   Q. Okay. Sir, as a result of that trial,
15 were you convicted of first degree murder?
16   A. Yes, sir.
17      (THEREUPON, Deposition Exhibit No 70 was
18 marked for identification.)
19    BY MR. BRANSON:
20   Q. Okay. I'm going to hand you what's been
21 identified as Deposition Exhibit 70 and have you
22 take a look at that. Sir, this is a journal
23 entry. Have you -- have you looked at this
24 journal entry before?
25   A. Yes, sir.

Page 27

1  Q. Okay. Is this a journal entry of your
2  conviction in the 2017 case in Sedgwick County?
3    A. Yes, sir.
4    Q. Okay. All right. You can probably set
5  that aside. We may come back to that. Paul, did
6  you ever find a number?
7      MR. VOGEL: I'm not sure it's been
8  marked.
9      MS. WOODY: Okay.
10     MR. BRANSON: Okay.
11     MS. WOODY: Just mark it again. We've
12 got several -- several exhibits that have been
13 marked more than once, so --
14     MR. BRANSON: Okay. I apologize. Let
15 me see what we've already done here, so I don't
16 make --
17     MS. WOODY: 69, 70 and 71.
18     MR. BRANSON: 69, 70 and 71, so we'll
19 just mark this 72, then.
20     (THEREUPON, Deposition Exhibit No 72 was
21 marked for identification.)
22     MS. WOODY: Okay.
23   BY MR. BRANSON:
24   Q. Okay. Sir, I'm going to hand you a copy
25 of the complaint, and I apologize. I don't have

Page 28

1  an extra copy of that one.
2      MS. WOODY: That's all right.
3      MR. BRANSON: Other than mine, that's all
4  marked up.
5      MS. WOODY: That's fine.
6    BY MR. BRANSON:
7    Q. Sir, I want to ask you some questions
8  about the statements in the complaint that are
9  attributed to you. On page 37 of the complaint,
10 Exhibit 72, sir, you -- you indicate in paragraph
11 160 that you believe that you had some interaction
12 with the juvenile justice system, but nothing --
13 only a few incidents that would have constituted
14 misdemeanors as an adult. Do you see that
15 statement?
16   A. Yes, sir.
17   Q. In paragraph 160? Okay. In your answers
18 to Interrogatory Number 3, you listed "Charged
19 with burglary as a juvenile." Can you explain to
20 me what occurred for that burglary charge?
21   A. Me and like two, I think it was two or
22 three other kids I used to go to school with at
23 Southeast High School that were my friends at the
24 time, we had left school probably like during
25 break or end of school, I don't remember, and we


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street   6420 W. 95th Street   800 E. 1st Street
Topeka, KS 66604      Suite 101             Suite 305
785-273-3063          Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com   913-383-1131          316-201-1612

Page 29

1  actually had -- we were going to our neighborhood,
2  because we all lived in the same neighborhood,
3  Central -- Central and Oliver area by the Burger
4  King or whatever, and one of the kids I was with
5  at the time, he had said that he knew where some
6  weed was.
7     I was a teenager, so we were smoking weed, of
8  course, and he had took the screen off the window.
9  Never entered the house.  He took the screen off
10 the window, the outside of the window, and the
11 police was called and we all got charged.
12    Q.  Do you know what the results of that
13 charge were?
14    A.  Yeah.  It was ended up pleading to like a
15 misdemeanor.  It was a -- I think it was, at the
16 time, a level 9 felony or something like that, and
17 I pled to a misdemeanor.  I don't remember what
18 the misdemeanor was, though.
19    Q.  Okay.
20    A.  Like breaking and entering or something
21 like that.  I don't know.
22    Q.  So some type of burglary charge is what
23 you think you were originally, and your
24 understanding is that's a felony?
25    A.  It -- it was originally a felony.

Page 30

1     Q.  Okay.
2     A.  And I ended up taking a plea and went to
3  a out-of-home boys' placement.
4     Q.  Okay.  In your understanding, the plea
5  was to some type of misdemeanor?
6     A.  Yeah, it was.
7     Q.  Thank you.  Sir, staying on that same
8  page, paragraph 161, it talks about your belief
9  that you were added to the Wichita Police
10 Department's Gang List when you were 13 years old.
11 Last sentence on that paragraph says you believe
12 you were added to the list then because one of his
13 cousins was already on the Gang List.
14    Sir, who's -- what cousin are you referring
15 to?
16    A.  His name is Herschel Ricks.  He's no
17 longer alive.  He's deceased.
18    Q.  Okay.  Herschel Ricks?
19    A.  Yes, sir.
20    Q.  Okay.  Can you spell that last name for
21 the record?
22    A.  R-i-c-k-s.
23    Q.  R-i-c-k-s?  Okay.  Thank you, sir.  Sir,
24 how did you know Mr. Ricks was on the Gang List?
25    A.  They pulled him over one time, like a

Page 31

1  traffic stop, and I was in the car with him.  He
2  had came and got me from school and -- well,
3  basically, they had -- well, they had told him,
4  you know, you can't be wearing these certain
5  colors and things of that nature, and I was
6  curious as to why they said that.  I asked him
7  about it.  He told me "They got me on the gang
8  file."
9     Q.  Okay.  Sir, when did you become aware
10 that you were listed in the Wichita Police
11 Department's Gang List?
12    A.  I was 13.  I was going to Robinson Middle
13 School.
14    Q.  Okay.  Sir, can I have you take a look at
15 page 48 of the complaint, paragraph 211, second
16 sentence.  "He only learned that he'd been
17 designated as a gang member on the WPD's Gang List
18 at some previous time when he was arrested in
19 connection with a shooting in 2017."  Is that
20 statement incorrect, sir?
21    A.  Say that again.
22    Q.  Well, it's the second -- second sentence
23 of paragraph 211.
24    A.  Okay.
25    Q.  Starts with "He only learned that he had

Page 32

1  been designated as a gang member on the WPD's Gang
2  List at some previous time when he was arrested in
3  connection with a shooting in 2017."
4     A.  No, I knew they had put me on the gang
5  file before 2017.
6     Q.  Okay.  How did you know that you were on
7  the gang file before 2017?
8     A.  Because they told me I couldn't go to
9  certain QuikTrips.  I couldn't get a job at a --
10 this place called Lids in the Towne East Mall.  I
11 couldn't go to the mall.  I couldn't wear certain
12 colors.
13    Q.  Who told you this?
14    A.  The police that had stopped me at the
15 QuikTrip one day.
16    Q.  Do you know who that police was?
17    A.  No, sir.
18    Q.  Do you know an approximate date when this
19 occurred?
20    A.  No, sir.
21    Q.  You say you were 13 years old at the
22 time?
23    A.  Yeah.
24    Q.  Did Lids hire 13-year-olds?
25    A.  No, no, no.  I tried to get a job years

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street   6420 W. 95th Street   800 E. 1st Street
Topeka, KS 66604   Suite 101   Suite 305
785-273-3063   Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com   913-383-1131   316-201-1612

Page 33

1 later at Lids, but when I was like 17, 18, and
2 they wouldn't hire me because I was on the gang
3 file, or I was actually scared to even be seen
4 there by the police in the Towne East Mall,
5 because I was scared they were going to stop me
6 and question me and things of that nature.
7     Q.  Okay.
8     A.  But I learned I was on the gang file when
9 I was 13.
10    Q.  Okay.  Are you saying the Lids wouldn't
11 hire you or that you were scared to go to the
12 mall?
13    A.  I was scared to get seen in the mall, but
14 I wanted a job, so at the end of the day, I
15 wanted the money.
16    Q.  Okay.  So did you actually apply for a
17 job?
18    A.  I applied for it.
19    Q.  Okay.  You were turned down for that job?
20    A.  I was turned down.
21    Q.  What reason were you given to be turned
22 down for that job?
23    A.  I don't remember.  I just know I didn't
24 get the job after I filled out the application and
25 waited for weeks to get a response.

Page 34

1     Q.  Sir, on page 51 of the complaint,
2 paragraph 221 at the bottom, the second sentence
3 says "Plaintiff Jeremy Levy, Jr. was" -- "has
4 experienced significant deprivations of life,
5 liberty and property."  Sir, can you tell me what
6 is meant by that statement?
7        MS. WOODY:  Objection; calls for a legal
8 conclusion.  You can answer it as far as you
9 understand.
10       THE WITNESS:  Okay.  Well, due to me
11 being on the gang file hindered me from doing
12 things that a normal person would be able to do.
13    BY MR. BRANSON:
14    Q.  And what is that?
15    A.  Applying certain jobs.  Wear certain
16 colors.  Have the ability to go to certain
17 QuikTrips and hang out with certain people without
18 them being afraid of getting on the gang file and
19 being harassed and things like that.
20    Q.  Okay.  What jobs have you applied for
21 that you were denied because of the Wichita Police
22 Department's Gang List?
23    A.  Lids.  Lids, L-i-d-s.
24    Q.  Okay.  Sir, you just testified that you
25 don't know why Lids didn't give you a job.

Page 35

1     A.  Yeah, and I assumed it was just gang
2 file.  It had to have been the gang file.  That's
3 the only reason it could have been.  Wasn't
4 nothing else wrong.
5     Q.  Sir, has any employer ever told you you
6 cannot have a job with them because of the gang
7 file?
8     A.  This construction job I applied for, they
9 questioned me about it and asked me about it.
10    Q.  Which construction job?
11    A.  Just I was 17 at the time.  I'm not very
12 sure.  I don't know.  Told me I couldn't apply
13 and be a gang member.
14    Q.  They told you you couldn't apply and be a
15 gang member?
16    A.  I couldn't get the job because I was a
17 gang member.  On the gang file, I mean.
18    Q.  Okay.  What construction company was
19 this?
20    A.  I don't know.
21    Q.  Where were they located?
22    A.  I don't know.
23    Q.  What kind of construction did they do?
24    A.  Basically like -- like in hospitals.
25 They would like clean up hospital stuff and fix

Page 36

1 stuff like that.
2     Q.  Okay.  Do you know where you applied for
3 this job?
4     A.  I don't remember.
5     Q.  Do you remember the name of anybody that
6 you might have spoke to about this job?
7     A.  Do I remember the name of --
8     Q.  Anyone that you might have spoke to about
9 this job.
10    A.  Not that I remember.  No, not that I
11 remember.
12    Q.  Do you know if it was a job that you had
13 to be background checked for?
14    A.  Had to have been a background check if he
15 told me I couldn't get it.  I mean, because I
16 couldn't get a job if I was on the Gang List,
17 so --
18    Q.  Was this after you had been convicted in
19 juvenile court?
20    A.  Yes, sir.
21       MR. BRANSON:  Hour goes by fast.
22       MS. WOODY:  It does.
23    BY MR. BRANSON:
24    Q.  Okay.  Sir, I'm going to direct you to
25 page 57, paragraph 245.  Sir, the second sentence


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

Page 37

1  of that paragraph -- well, I guess a portion of
2  the second sentence of the paragraph says "Mr.
3  Levy was subjected to increased punishment at his
4  criminal trial because of his association with
5  other people on the Gang List."  Do you see that
6  statement?
7      A.  Yes, sir.
8      Q.  How do you allege that you received
9  increased punishment because of your inclusion on
10 the Gang List?
11     A.  How do I -- can you ask me that again?
12     Q.  Well, you say you received increased
13 punishment because you'd been listed on the Gang
14 List.
15     A.  Yeah.
16     Q.  Tell me what that increased punishment
17 was.
18     A.  Well, they upped my bond when I was in
19 the county.  I would get, I feel like, treated way
20 -- well, I know I was getting treated way
21 different than other civilians.  In my eyes, that
22 was a form of punishment itself.
23     Q.  Okay.  You're speaking about while you
24 were in custody of the jail?
25     A.  No.  Any time I got stopped and when I

Page 38

1  went to county, my bond was increased, or I was --
2  yeah.
3      Q.  Okay.  I'm asking you specifically about
4  your statement in paragraph 245 about increased
5  punishment at your criminal trial.
6      A.  Oh, at my criminal trial?
7      Q.  Yes.  Can you tell me what you believe
8  the increased punishment at your criminal trial
9  is?
10         MS. WOODY:  Objection; asked and
11 answered.  You can answer.
12         MR. BRANSON:  Well, he didn't -- he
13 didn't answer that question.  He answered a
14 different question.
15         MS. WOODY:  Go ahead.  You can answer.
16 Go ahead.
17         THE WITNESS:  They -- everything that's
18 on record that they had accused me of and stated
19 during my trial, that's increased punishment, is
20 it not?
21 BY MR. BRANSON:
22     Q.  Sir, do you believe anything about your
23 sentence would have been different -- you were
24 convicted of first degree murder and you were
25 given a sentence for that --

Page 39

1      A.  Yes, sir.
2      Q.  -- conviction.  Is there anything about
3  your sentence you believe would have been
4  different if you'd been convicted of first degree
5  murder and not associated with a gang?
6          MS. WOODY:  Objection; lacks foundation.
7  You can answer if you can.
8          THE WITNESS:  Do I feel that my sentence
9  would have been different?  I don't really know
10 how to answer that.
11 BY MR. BRANSON:
12     Q.  Okay.  Let me ask it this way.  You've
13 alleged that your sentence was harsher because you
14 were convicted of first degree murder and you were
15 associated with a gang.
16         MS. WOODY:  Objection.  Misstates the
17 testimony and the document.
18 BY MR. BRANSON:
19     Q.  Sir, what was the increased punishment
20 you were subjected to at your criminal trial
21 because of your association with other people on
22 the Gang List?
23         THE WITNESS:  Since what -- that's what
24 he's referring to, right, my sentence?
25         MS. WOODY:  No, no.  He's asking you

Page 40

1  about this language right here.  "Subject to
2  increased punishment at his criminal trial because
3  of his association with other people on the Gang
4  List."  So that's what -- that's what he's asking
5  you about, so --
6          THE WITNESS:  Okay.  Subject to increased
7  punishment.
8          MS. WOODY:  At your trial.
9          THE WITNESS:  At my trial, subject to
10 increased punishment.  How did the gang -- how did
11 the gang file affect my -- increase my punishment
12 at the criminal trial?  I mean, if you talking
13 about my sentence, how did it increase my
14 sentence, it didn't increase my sentence.  It did
15 not increase my sentence.
16 BY MR. BRANSON:
17     Q.  Sir, also in paragraph 245, that last
18 sentence, it states "Once Mr. Levy is released on
19 parole, he'll be subject to highly restrictive
20 supervision conditions that will prevent him from
21 associating" -- "associating with his family and
22 friends."  Sir, have you been told what your
23 conditions of release on parole would be?
24     A.  No.
25         THE WITNESS:  I got a question.


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street         6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604                Suite 101                   Suite 305
785-273-3063         Overland Park, KS 66212         Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612