**Page 1**

```
 1
 2         IN THE UNITED STATES DISTRICT COURT
 3              FOR THE DISTRICT OF KANSAS
 4
 5
 6  PROGENY, a program of Destination
 7  Innovations, Inc., et al.,
 8         Plaintiffs,
 9     vs.        Case No. 6:21-cv-01100-EFM-ADM
10  CITY OF WICHITA, KANSAS,
11         Defendant.
12
13
14
15           DEPOSITION OF
16           MARTEL COSTELLO
17  taken on behalf of the Defendant, pursuant to
18  Amended Notice to Take Deposition, beginning at
19  9:48 a.m. on the 8th day of June, 2023, at the
20  Wichita Work Release Center, 401 South Emporia
21  Street, in the City of Wichita, County of
22  Sedgwick, and State of Kansas, before Lee Ann
23  Bates, CSR, RPR, CRR.
24
25
```

**Page 2**

```
 1              APPEARANCES
 2
 3
 4  ON BEHALF OF THE PLAINTIFF:
 5
 6    Ms. Teresa A. Woody
 7    Kansas Appleseed Center for Law & Justice
 8    211 East 8th Street, Suite D
 9    Lawrence, Kansas  66044
10    (785) 251-8160
11    twoody@kansasappleseed.org
12
13    Ms. Emily Otte
14    Shook, Hardy & Bacon, LLP
15    2255 Grand Boulevard
16    Kansas City, Missouri  64108
17    (816) 474-6550
18    eotte@shb.com
19
20
21
22
23
24
25
```

**Page 3**

```
 1  ON BEHALF OF THE DEFENDANT:
 2
 3    Mr. Charles E. Branson
 4    Fisher, Patterson, Sayler & Smith, LLP
 5    3550 SW 5th
 6    Topeka, Kansas  66606
 7    (785) 232-7761
 8    cbranson@fpsslaw.com
 9
10
11  ALSO PRESENT:
12
13    Ms. Laine Bernard
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
 1              INDEX
 2
 3
 4  Certificate ---------------------------- 66
 5
 6
 7              WITNESS
 8  ON BEHALF OF DEFENDANT:                PAGE
 9  MARTEL COSTELLO
10  Direct-Examination by Mr. Branson        6
11  Cross-Examination by Ms. Woody          48
12  Redirect-Examination by Mr. Branson     56
13  Recross-Examination by Ms. Woody        60
14
15
16              EXHIBITS
17  COSTELLO DEPO EXHIBIT NO.:          MARKED
18  No 73  Plaintiff Martel Costello's
19      Response to Defendant's 1st Set of
20      Interrogatories                     10
21  No 74  Facebook photo marked CONFIDENTIAL -
22      SUBJECT TO PROTECTIVE ORDER         13
23  No 75  Facebook photo marked CONFIDENTIAL -
24      SUBJECT TO PROTECTIVE ORDER         14
25
```

Page 25

1 as Exhibit 81. Do you recognize yourself in that
2 picture?
3    A.  Yes.
4    Q.  And which person are you in this picture?
5    A.  The first one in the black shirt.
6    Q.  The first one with the black shirt that
7 has lettering on it that starts with "Don't"?
8    A.  Yeah.
9    Q.  Sir, you're holding up your right hand in
10 this picture. Can you tell me what you're doing
11 with your right hand?
12    A.  Look like I'm throwing up the middle
13 finger, sir.
14    Q.  Okay. Sir, my interpretation of this, it
15 looks like your finger is bent or curled around.
16 Is that how you throw up your middle finger?
17    A.  Do you want me to show you?
18    Q.  Well, I suppose you can.
19    A.  (Witness indicates.)
20    Q.  Sir, can you identify why you're --
21 you're throwing up the middle finger in this
22 picture?
23    A.  No, just told you, I was in high school.
24 Something everybody did in high school.
25       MR. BRANSON:  Okay.

Page 26

1       (THEREUPON, Deposition Exhibit No 82
2 marked for identification.)
3       BY MR. BRANSON:
4    Q.  Sir, this is Exhibit 82. Do you
5 recognize yourself in this picture?
6    A.  Yes, sir.
7    Q.  Which one are you in this picture?
8    A.  The lower -- the bottom part.
9    Q.  The bottom part with the red hat with the
10 white "P" on it?
11    A.  Yes, sir.
12    Q.  Okay. Sir, you're doing something with
13 your -- your appears to be your left hand in that
14 picture. Can you tell me what you're doing?
15    A.  No, sir.
16    Q.  Sir, does this appear to be the same
17 picture that was used on your Facebook profile in
18 Exhibit 74?
19    A.  Still, I can't see the faces clearly in
20 that picture.
21       MR. BRANSON:  Okay.
22       (THEREUPON, Deposition Exhibit No 83
23 marked for identification.)
24       BY MR. BRANSON:
25    Q.  Sir, this is Exhibit 83.

Page 27

1    A.  Mm-hmm.
2    Q.  Sir, there's two pictures depicted in
3 that. Is the picture on the left the same as the
4 picture in Exhibit 75?
5    A.  Yes, sir.
6    Q.  Okay. And then the picture on the right,
7 is that the same picture as depicted in Exhibit
8 76?
9    A.  Yes, sir.
10    Q.  Okay. Sir, do you still deny that the
11 picture on the right is you, with your back to the
12 camera?
13    A.  Yes, sir.
14    Q.  Sir, I'm going to ask you to go back to
15 your interrogatory answers.
16    A.  Yes, sir.
17    Q.  And if you would go to Interrogatory
18 Number 3 on page 3.
19    A.  Yes, sir.
20    Q.  Sir, you were asked about your criminal
21 history and you provided some responses to your
22 criminal history. I'd like to ask you a couple
23 questions about some of your responses. You
24 indicate in 2012 that you were convicted of felony
25 criminal damage to property. Do you remember what

Page 28

1 that case was about?
2    A.  Yeah, but you said felony criminal damage
3 to property?
4    Q.  Yes, sir. That's what's listed in your
5 answer.
6    A.  No, I didn't have no felony.
7    Q.  So, sir, are you telling me that your
8 answer to Interrogatory Number 3 is wrong?
9    A.  No, sir. I just believed it was a
10 mistyped.
11    Q.  Okay. So is it -- is it your position
12 that that is mistyped and that should be a
13 misdemeanor, then?
14    A.  Yes, sir.
15    Q.  And we're talking about the 2012-JV-
16 00735-FE case?
17    A.  Yes, sir.
18    Q.  Sir, you had a chance earlier to review
19 your answers to interrogatories and you said that
20 those were your true and correct answers, to the
21 best of your belief, and you've identified now an
22 error in those answers. Do you believe that there
23 is any other errors in your answers?
24    A.  Not from what I've seen, sir.
25    Q.  Okay. Sir, the next entry is for 2013,



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

Page 29

1  and it says plaintiff pled -- pleaded guilty to
2  intimidation of a witness in case number 13-JV-
3  967-FE.  Do you recognize that conviction?
4      A.  Yes, sir.
5      Q.  Okay.  Can you tell me the circumstances
6  of that case?
7      A.  I got probation.
8      Q.  I'm sorry, sir.  I didn't understand your
9  answer.
10     A.  I got probation in that case.
11     Q.  Can you tell me what caused you to be
12 convicted of that?
13     A.  I don't remember.  I had a lot of cases
14 in 2016 and 2017.
15     Q.  Sir, were you arrested -- well, this --
16 sir, this is a case from 2013.  Do you see that?
17     A.  Yeah.  Well, okay.  Well, yeah, I see it.
18 That's a long time ago.
19     Q.  Okay.  Sir, were you arrested in October
20 of 2013 for using social media to post threats to
21 the victims of a shooting?
22     A.  I don't remember posting any threats,
23 sir.
24     Q.  Sir, the next entry is 2016.  The
25 plaintiff was charged with marijuana offenses and

Page 30

1  possession of firearms.  You see that?
2      A.  Yes, sir.
3      Q.  Sir, can you tell me what caused you to
4  be convicted of that?
5      A.  I was pulled over with some marijuana and
6  a firearm.
7      Q.  And were you eventually placed on
8  probation for those convictions?
9      A.  It ran concurrent with the case I'm in
10 here on now.
11     Q.  Okay.  When you were originally
12 convicted, though, were you placed on probation in
13 that case?
14     A.  Yes, sir.
15     Q.  And since that time, has that probation
16 been revoked?
17     A.  Yeah, clearly.
18     Q.  Okay.  I appreciate that, sir.  Sir,
19 you're still in the custody of the Department of
20 Corrections?
21     A.  Yes, sir.
22     Q.  Is that right?
23     A.  Yes, sir.
24     Q.  Okay.  And you've been in the custody of
25 Department of Corrections for several years now?

Page 31

1      A.  Yes, sir.
2      Q.  Okay.  And, sir, you've worked your way
3  through Department of Corrections and are now on
4  work release program?
5      A.  Yes, sir.
6      Q.  Okay.  And you've been here in the
7  Wichita work release program since November of
8  last year?
9      A.  Yes, sir.
10     Q.  All right.  Sir, do you know what your
11 out date is?
12     A.  Yes, sir.
13     Q.  What is that?
14     A.  June 28th.
15     Q.  June 28th of this year?
16     A.  Yes, sir.
17     Q.  All right.  Sir, as we continue with your
18 responses to Interrogatory Number 3, it appears
19 that you list in 2017, you were charged again with
20 possession of a firearm, possession of marijuana;
21 is that correct?
22     A.  Yes.
23     Q.  And did you receive probation in that
24 case also?
25     A.  I was already concurrent, sir, so all

Page 32

1  those cases from 2016 to 2017 cases were all
2  bunched in one.
3      Q.  Okay.
4      A.  So, yeah, I got probation on -- not
5  probation, because it's a difference.
6  Corrections.  Community Corrections.
7      Q.  All right.  Sir, you've already testified
8  that eventually, your -- your probation in your
9  cases was revoked and you were remanded to serve
10 your sentence; is that right?
11     A.  Yes, sir.
12         MR. BRANSON:  Okay.
13         (THEREUPON, Deposition Exhibit No 84
14 marked for identification.)
15         BY MR. BRANSON:
16     Q.  Sir, I'm going to hand you what's been
17 marked as Exhibit 84.  Sir, this is a printout
18 from the Department of Corrections, and do you
19 recognize your name at the top of this?
20     A.  Yes, sir.
21     Q.  Okay.  And does that accurately reflect
22 your birth date?
23     A.  Yes, sir.
24     Q.  All right.  Under Current Status, then it
25 lists earliest possible release date.  Is that the



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604       Suite 101              Suite 305
785-273-3063           Overland Park, KS 66212 Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

Page 33

1　June 28th, 2023, that you're referring to?
2　　A.　Yes, sir.
3　　Q.　All right. Sir, on page 2 of that, it
4　lists adult convictions. Can you look at that for
5　me?
6　　A.　Yes, sir.
7　　Q.　I'll give you a second to look through
8　there.
9　　A.　Yeah, I recognize them.
10　　Q.　Okay. Sir, do you recognize those as
11　your adult criminal convictions?
12　　A.　Yes, sir.
13　　Q.　Okay. Is there any convictions, adult
14　criminal convictions that you're aware of, that
15　are not listed on here?
16　　A.　No, sir.
17　　Q.　Okay. Sir, this document goes on down
18　below, bottom of page 2 and the top of page 3.
19　It appears to list the physical locations where
20　you were held while you were in -- in custody.
21　Do you see that?
22　　A.　Yeah.
23　　Q.　All right. So it looks like, starting
24　with the earliest, you first went to El Dorado
25　Correctional Facility in December of 2019?

Page 34

1　　A.　Yes, sir.
2　　Q.　Okay. Then you were transported to Cloud
3　County for a period of time?
4　　A.　Yes, sir.
5　　Q.　Then made your way to Ellsworth County
6　Correctional Facility?
7　　A.　Yes, sir.
8　　Q.　And then to the Wichita Work Release
9　Center in November of last year.
10　　A.　Yes, sir.
11　　Q.　Is that right? Okay.
12　　　(THEREUPON, Deposition Exhibit No 85
13　marked for identification.)
14　　BY MR. BRANSON:
15　　Q.　Sir, your complaint states that when you
16　were convicted of your offenses that you were
17　sentenced to probation for, that you were placed
18　on conditions -- gang conditions. Do you recall
19　that?
20　　A.　Yes, sir.
21　　Q.　Okay. I'm going to show you Exhibit 85.
22　Sir, Exhibit 85 is a journal entry of judgment,
23　and have you seen your journal entries before in
24　your criminal cases?
25　　A.　Yeah.

Page 35

1　　Q.　Okay. So you're familiar with this type
2　of document?
3　　A.　For the most part.
4　　Q.　Okay. This is a journal entry depicting
5　your conviction in 2017-CR-1343 in Sedgwick
6　County. Do you see that on page 2 at the top, on
7　the county and case number?
8　　A.　2017. Where at, sir?
9　　Q.　Where it says "County" and then "Court
10　case number."
11　　A.　Okay. Yeah.
12　　Q.　All right. And sir, in Section 3, where
13　it says "Current Conviction Information," it shows
14　the primary offense of conviction, criminal
15　possession of a weapon by a convicted felon. Do
16　you see that?
17　　A.　Yes, sir.
18　　Q.　Okay. And with an offense date of May 1,
19　2017.
20　　A.　Yeah, I see it.
21　　Q.　Okay. Okay. Sir, and then under section
22　5, under Other Conditions, it lists general and
23　special conditions of probation. Do you see that
24　section?
25　　A.　Yeah.

Page 36

1　　Q.　Okay. And the last condition under there
2　is "Gang conditions are imposed as a condition of
3　probation."
4　　A.　Uh-huh.
5　　Q.　All right. And, sir, did the district
6　court judge impose those conditions on you?
7　　A.　I don't know if it was him or the
8　probation officer. I don't --
9　　Q.　So you think it was the judge or the
10　probation officer that --
11　　A.　Yeah.
12　　Q.　-- imposed those conditions of probation
13　on you?
14　　A.　I mean, I don't know. Yeah, somebody
15　did.
16　　Q.　Okay. Sir, did you ever have probation
17　violations?
18　　A.　Yeah.
19　　Q.　I believe in the complaint on page 35 and
20　paragraph 145, you indicate that you were able to
21　abide by your conditions of probation with the
22　exception of two minor infractions, using alcohol
23　on one occasion, and being six minutes late for
24　curfew on another occasion.
25　　A.　Yes, sir.


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street　　6420 W. 95th Street　　800 E. 1st Street
Topeka, KS 66604　　　Suite 101　　　　　　Suite 305
785-273-3063　　　　　Overland Park, KS 66212　Wichita, KS 67202
www.appinobiggs.com　913-383-1131　　　　316-201-1612

Page 37

1  Q. Okay. Do you believe that those are your
2 only probation violations?
3  A. I know they wasn't my only probation
4 violations.
5  Q. Okay. But you -- you said in the
6 complaint that you were able to abide by --
7  A. Yeah.
8  Q. -- your conditions of probation with the
9 exception of two minor infractions.
10  A. Yes.
11  Q. Was that statement not accurate?
12  A. Yeah, that's accurate.
13  Q. Okay. But you also had other --
14  A. Yes.
15  Q. -- violations?
16  A. Yes, sir.
17  Q. In addition to those?
18  A. Yes, sir.
19  Q. Okay. Sir, do you remember approximately
20 what -- when you were placed on probation the
21 first time?
22  A. October -- the very, very first time or
23 just in this case?
24  Q. The very first time.
25  A. 2013, February 3rd.

Page 38

1  Q. 2013?
2  A. February 3rd.
3  Q. Okay. Sir, was there ever a time after
4 that you were --
5  A. Or 2014, February 3rd.
6  Q. Okay. 2014, February 3rd?
7  A. Yeah.
8  Q. Okay. Sir, was there ever a time after
9 that where you were not on some sort of
10 supervision or probation?
11  A. Yeah.
12  Q. Okay. When was that?
13  A. I completed probation in about September,
14 October of 2014, and then I was on probation until
15 I caught this case.
16  Q. You were off probation until you caught
17 this case?
18  A. Yes.
19  Q. Okay. And this case was in 2016?
20  A. 2016, yes, sir.
21  Q. Okay.
22  A. Excuse me.
23  Q. Is that when you were arrested for -- for
24 being a felon in possession of a firearm?
25  A. Yeah.

Page 39

1  Q. Were you subsequently after that arrested
2 again on May 1st, 2017, for being in possession of
3 a firearm and marijuana?
4  A. Yeah.
5  Q. Were you subsequently again arrested on
6 August 10th, 2017, for domestic battery?
7  A. No, sir.
8  Q. On Arisa Smith?
9  A. No, sir.
10  Q. You don't believe you were ever arrested
11 for domestic battery?
12  A. I know I wasn't arrested.
13  Q. Sir, in February of 2018, were you
14 arrested for domestic battery of Arisa Sullivan
15 Costello -- or excuse me -- Arisa Sullivan?
16  A. No.
17  Q. Sir, you've testified that your probation
18 was subsequently revoked and you were sentenced to
19 serve your underlying sentences in the criminal
20 case.
21      (THEREUPON, Deposition Exhibit No 86
22 marked for identification.)
23      BY MR. BRANSON:
24  Q. I'm going to hand you what's marked as
25 Exhibit 86. Sir, this is another journal entry.

Page 40

1 This is a journal entry of a probation violation
2 hearing and this is for court case 2017-CR-1348 in
3 Sedgwick County. Sir, are you familiar with this
4 journal entry?
5  A. Yeah.
6  Q. Okay.
7  A. Well, I know the case. I've never seen
8 these documents, but I know the case.
9  Q. All right. Sir, was your probation in
10 that case revoked?
11  A. Yes, sir.
12  Q. Okay. And I'm going to ask you to take a
13 look at page 3 with me.
14  A. Okay.
15  Q. Page 3, under section 3, and it says
16 "Violations of" -- "Violation Sanction History."
17 It appears that there are two sanctions there
18 where you were violated, and it looks like 60-day
19 jail sanctions were imposed. Do you see that?
20  A. Yeah, I see it.
21  Q. Okay. One for May 25th, 2018, and then
22 one for November 27th, 2018?
23  A. This is on page 3; right?
24  Q. Yeah.
25  A. Yeah, I see it.



Page 41

1  Q.  Okay.  Yeah, right here at the top.
2  A.  Yeah.
3  Q.  All right.  Sir, do you remember what
4  those probation violations were for?
5  A.  Yeah, I was on residential.
6  Q.  And what does that mean?
7  A.  Residential?
8  Q.  Yes, sir.
9  A.  It's like a work release facility before
10 you -- before they send you to prison.
11 Q.  Okay.  Do you recall what those probation
12 violation sanctions were for?
13 A.  I didn't know that they were for this,
14 but I know I had some probation violations.  I
15 know I had -- I had messed up in residential, but
16 I didn't know that it was for gang conditions or
17 none of that.
18 Q.  Okay.  So there's nothing there that says
19 anything about gang conditions.  Do you agree?
20 A.  I mean, down here, this says --
21 Q.  Well, I see that below.  I'm asking about
22 the ones under section 3 at the top.
23 A.  No, sir.
24 Q.  Okay.  So you said you messed up in
25 residential, but you're not -- are you unsure what

Page 42

1  those were for?
2  A.  Well, I know what I did, but --
3  Q.  Okay.  Can you tell me what you did?
4  A.  I was saying I was going to work and I
5  wasn't there.  My hours didn't match my -- my away
6  hours didn't match my on work hours.
7  Q.  Okay.  Was that for both of those
8  sanctions?
9  A.  Yeah.  That's when I got both of those
10 sanctions at the same time.
11 Q.  All right.  Sir, if we go down to section
12 4, section IV.
13 A.  Uh-huh.
14 Q.  This is on the disposition of the -- of
15 this violations hearing.  You see down at the
16 bottom, it says a brief description of violation.
17 It depicts that there's a warrant filed on June
18 12th, 2019, that you failed to obey the laws of
19 the United States and State of Kansas by
20 committing the offense of possession of drug
21 paraphernalia.
22 A.  Mm-hmm.
23 Q.  Is that a yes, sir?
24 A.  Yes, sir.
25 Q.  Okay.  Sir, is that the offense that

Page 43

1  caused your probation to be revoked and -- and for
2  you to serve your time now?
3  A.  No, I bonded out again after that.
4  Q.  Well, sir, but this is for a probation
5  violation.
6  A.  Uh-huh.
7  Q.  Was violating the law the reason that you
8  were placed into prison?
9  A.  No.
10 Q.  Why were you placed in prison?
11 A.  I mean, violating the law, of course, but
12 this violation, I had -- I was out of jail again
13 after this violation.
14 Q.  Okay.  After that, though, did you have a
15 probation violation hearing?
16 A.  Yeah.
17 Q.  Okay.  And did the court find that you
18 were in violation of your probation by committing
19 the offense of possession of drug paraphernalia?
20 A.  Yes, sir.
21 Q.  Okay.  Below that, it also says a warrant
22 filed on 8/29/19, and it lists four different
23 probation violations for -- for being out past
24 curfew set by his gang conditions.  Do you see
25 that?

Page 44

1  A.  Yeah.
2  Q.  Okay.  And, sir, were you in fact
3  violated on your probation for being out past your
4  curfew in violation of your probation conditions?
5  A.  Yeah, but what they told me was, on this,
6  they told me I have curfew violations and I had
7  gang member violations for being around gang
8  members.
9  Q.  Okay.  Sir, do you see that it says that
10 you were violated for being out past your curfew?
11 A.  I see what it say, but I'm telling you
12 what they told me.
13 Q.  Okay.  Who told you that?
14 A.  My probation officer.  The polices, when
15 they -- the polices, when they was booking me into
16 the county jail.  My bail bondsman.  That's the
17 same thing they told my bail bondsman.
18 Q.  All right.  Sir, do you understand that
19 this is a journal entry signed by the judge --
20 A.  Yeah.
21 Q.  -- finding that those were the violations
22 that you were responsible for?
23 A.  Yeah, I get it.  I see that what they
24 tell me and what they tell the judge is two
25 different things.

Page 45

1   Q.  Okay.  But, sir, do you understand it's
2   the judge that decides what conditions that you
3   violated?
4   A.  Yeah, I understand.
5       (THEREUPON, Deposition Exhibit No 87
6   marked for identification.)
7   BY MR. BRANSON:
8   Q.  Sir, after your probation violation and
9   the judge sentenced you or ordered you remanded to
10  serve your sentence, one of the places that you
11  went to was Ellsworth Correctional Facility.
12  A.  Yes, sir.
13  Q.  Correct?  When you went to Ellsworth
14  Correctional Facility, did you have a period of
15  time that you were in a classification unit or
16  something when you first got there for them to
17  decide where to place you in the jail?
18  A.  Yeah, RDU.
19  Q.  RDU?  And while you were in there, did
20  they give you various forms informing you of the
21  rules and -- of the facility and asking you about
22  your convictions?
23  A.  Yes, sir.
24  Q.  Okay.  Did you also then complete an
25  intake assessment form while you were at the

Page 46

1   facility?
2   A.  Yes, sir.
3   Q.  Okay.  Sir, I'm going to hand you what's
4   marked as Exhibit 87.  Is that your signature down
5   there at the bottom of Exhibit 87?
6   A.  Yeah.
7   Q.  Okay.  Sir, this is an intake assessment
8   form from -- from -- from Ellsworth.  It depicts
9   your name, Costello, Martel E., at the top.
10  A.  Yeah.
11  Q.  All right.  Sir, Number 5 on this intake
12  and assessment form asks the question "Are you
13  currently or have you been a member of any
14  organization?" and you see that "Yes" circled?
15  A.  Yes, an associate.
16  Q.  Okay.  And it says Associate Pirus?
17  A.  Yeah.  Associate, yeah.
18  Q.  Okay.  Sir, back to your interrogatories,
19  Number 7, you listed a possible witness in this
20  case as Latrice Helsel.
21  A.  Where?
22  Q.  I'm sorry.  Interrogatory Number 7, and
23  that is page 6.
24  A.  Yeah.
25  Q.  All right.  You listed a possible witness

Page 47

1   in this case being Latrice Helsel.  Who is Latrice
2   Helsel?
3   A.  My mom.
4   Q.  And what information about this case do
5   you think she has?
6   A.  I mean, little to none, I mean.  She's a
7   woman.  She didn't have no knowledge of what I was
8   doing.
9       MR. BRANSON:  Okay.  Take a short break?
10      MS. WOODY:  Sure.
11      MR. BRANSON:  We've been going for a
12  little bit.  I'm probably getting pretty close to
13  wrapping up.
14      (THEREUPON, a break was then taken from
15  10:47 a.m. to 10:50 am.)
16  BY MR. BRANSON:
17  Q.  Mr. Costello, we've come back from a
18  short break and your attorney's indicated there's
19  something that you wanted to clarify in one of
20  your responses.
21  A.  Yeah.  On the interrogatory on page 6
22  that you had just asked me about Latrice Helsel,
23  about my mom knowing about me being harassed by
24  the police, yeah, she knows about that, but what I
25  was saying is she don't know anything about my

Page 48

1   case, as far as what I'm in here on.
2       MR. BRANSON:  Okay.  I understand that
3   clarification.  All right.  Sir, I have no other
4   questions for you.
5       MS. WOODY:  I've just got a few questions
6   I wanted to follow up on.
7   CROSS-EXAMINATION
8   BY MS. WOODY:
9   Q.  Earlier in your -- in the deposition, Mr.
10  Branson showed you a number of pictures of you and
11  I believe, in looking at them, they were all from
12  2012 and 2013 of you, as you said, throwing up the
13  middle finger and doing some other stuff.  In 2012
14  and 2013, what were you doing?
15  A.  In high school.
16  Q.  You were in high school.  And I think you
17  testified that that was something that was
18  commonly done in high school?
19  A.  Yes, ma'am.
20  Q.  Mr. Costello, we went through some
21  convictions, starting in 2016.  Do you recall
22  that, 2016 and 2017?
23  A.  Yes, ma'am.
24  Q.  And were any of those convictions gang
25  related in any way?

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                   Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612

Page 49

1  A.  No, ma'am.
2  Q.  Were any of those -- were you arrested in
3  any of those instances with gang members?
4  A.  No, ma'am.
5  Q.  Were you -- but you did have gang
6  conditions imposed on you on your probation;
7  correct?
8  A.  Yes, ma'am.
9  Q.  And walk us through, if you would, the
10 various probation violations and how that all
11 worked out, because I think it was a little
12 confused in your earlier testimony.
13 A.  When I first got on probation, I had my
14 first probation was for -- was for alcohol.  My
15 second one -- my second probation violation was
16 for -- my second probation violation was for being
17 late for curfew by six minutes.
18 Q.  And who determined that you were late for
19 curfew?
20 A.  The WPD.
21 Q.  And so that was your second violation,
22 and then were you put back in some kind of
23 incarceration after that?
24 A.  They placed me on house arrest for 90
25 days.

Page 50

1  Q.  Okay.  And what happened after that?
2  A.  While I was on house arrest, they --
3  while I was on house arrest, they -- my house was
4  shot up and I was violated for it.
5  Q.  Was that something that -- were you
6  involved in any shooting in that?
7  A.  No, ma'am.
8  Q.  Do you recall when that was?
9  A.  April 20th -- April 20th, 2018.
10 Q.  And what was going on at your house at
11 that time?
12 A.  We were conducting a wake for my niece
13 that had just passed away earlier that day.
14 Q.  And you say your house was shot up, but
15 were any shots directed at you?
16 A.  I hope not.
17 Q.  Were you injured in that shooting?
18 A.  No, ma'am.
19 Q.  Was there any shooting back at anybody
20 from your house?
21 A.  No, ma'am.
22 Q.  Okay.  So that was -- but that was a
23 probation violation?
24 A.  Yes, ma'am.
25 Q.  Did that lead to additional charges, that

Page 51

1  particular instance?
2  A.  Yes, a couple probation violations, and
3  they tried to charge me with possession of a
4  firearm that was later dismissed.
5  Q.  And whose firearm was it?
6  A.  My aunt's.  I had never seen it.
7  Q.  Was that an instance where they searched
8  your bedroom?
9  A.  Yes, ma'am.
10 Q.  And who searched your bedroom?
11 A.  The WPD.
12 Q.  What did they do to your room?
13 A.  They tore it apart.
14 Q.  Did they -- did they do anything with
15 anything in your closet?
16 A.  Yeah, they ripped my clothes.  They tore
17 my house apart.  Everything that on the incident
18 prior, when they raided my house in 2016, they had
19 laid out an outfit on my bed, and the outfit that
20 was not put together.  They took a red shirt out,
21 a red hat out of my -- out of my closet and some
22 red pants, and in my closet, the pantses is on --
23 the pants are on one side and the shirts are on
24 one side, and I have various hats.  I got like 40
25 hats, so they had to go and search and put this

Page 52

1  outfit together, and it was a red shirt, red pair
2  of pants, a red hat and a white pair of shoes
3  that was laid across my bed with pictures of me
4  and my friends, me and some old pictures from a
5  long time ago, spread around the outfit, and then
6  they had a shirt of me and my brother, of me and
7  my brother on my bed as well.
8  Q.  And were you -- when you saw that, what
9  did you -- what did you think?
10 A.  They out to get me.
11 Q.  Why did you feel that way?
12 A.  They just laid a full-fledged outfit on
13 my bed.  That's almost a body outline.
14 Q.  So you felt -- did you feel threatened?
15 A.  Yes, ma'am.
16 Q.  Are there other times that you felt
17 threatened by the police?
18 A.  Yes, several times.
19 Q.  Have you felt threatened by the police
20 recently, while you were on work release?
21 A.  Yes, ma'am.
22 Q.  Can you tell us about that?
23 A.  At my job, I work for the City, and I
24 work for the City and so we got to go to public
25 places to use the bathroom, such as QuikTrip or a



Page 57

 1  A. No, sir.
 2     MS. WOODY: Objection. Lacks foundation.
 3  BY MR. BRANSON:
 4  Q. Sir, did Wichita Police Department
 5  recover a firearm from your bedroom?
 6  A. Yeah.
 7  Q. And were you subsequently arrested for
 8  that?
 9  A. Yes, sir.
10  Q. Sir, was your cousin, Christopher Cooper,
11  shot during that incident?
12  A. Yes, sir.
13  Q. Sir, you've talked about this incident at
14  some convenience store in town.
15  A. Yes, sir, but I got a question for you.
16  Q. Sir, I --
17     MS. WOODY: No, no.
18  BY MR. BRANSON:
19  Q. You don't get to ask me questions on
20  this.
21  A. Okay.
22  Q. Sorry. You testified earlier about an
23  incident with Wichita Police Department at a
24  convenience store.
25  A. Mm-hmm.

Page 58

 1  Q. Okay. When did that occur?
 2  A. I'm not sure. About a month ago.
 3  Q. Okay. Do you know who the officer was?
 4  A. No, sir.
 5  Q. Okay. You said this occurred while you
 6  were on work. Were you working at the convenience
 7  store?
 8  A. No, sir. I was on my lunch break.
 9  Q. Okay.
10  A. But we get a 15-minute rest period at
11  2:00 and at 10:00, and at -- it was at 2:00 when
12  we stopped at the store -- or, no, it was on my
13  lunch break at 12, about 12:15-ish.
14  Q. All right. And where was this
15  convenience store located?
16  A. 31st and Seneca.
17  Q. And you believe this was about a month
18  ago?
19  A. Yes, sir.
20  Q. Okay. Sometime around 12:15?
21  A. Yes.
22  Q. All right. You indicated that you went
23  in and got some food and went to the bathroom.
24  A. I had already had some food. They
25  provide us with a lunch here, so I was warming up

Page 59

 1  my sandwich and my sandwich and stuff in a -- in
 2  my -- and some soup and they -- and when I left,
 3  I put my food in the microwave when I went to the
 4  bathroom. When I came back, he was standing
 5  there.
 6  Q. He was standing where?
 7  A. In front of my food. In front of the
 8  microwave with my food.
 9  Q. Okay. You left your food in the
10  microwave, went to the bathroom, and when you came
11  out, there was a police officer standing in front
12  of the microwave?
13  A. Yeah.
14  Q. Okay. And at that point in time, he
15  engaged you with conversation?
16  A. Yeah.
17  Q. Okay. Did he place you under arrest?
18  A. No, sir.
19  Q. Did he threaten to place you under
20  arrest?
21  A. No, sir.
22  Q. Did he tell you that you weren't free to
23  leave?
24  A. No, sir. He did stop me when I was
25  trying to move, though, but --

Page 60

 1  Q. What do you mean, he stopped you when you
 2  were trying to move?
 3  A. He told me to stop.
 4  Q. Okay. Tell me about that.
 5  A. He -- when he asked me if I was Elbert,
 6  or I was like, "No, I'm not Elbert." When he --
 7  when I got my stuff together and cleaned up my
 8  food, he said -- and I was moving away from him,
 9  he says, "Stop. I know you. I recognize you
10  from somewhere," and that's when he told me,
11  "You're -- if you're not Elbert, you're Martel."
12  Q. And what did you tell him?
13  A. I told him I don't know what he talking
14  about.
15  Q. Okay. But your name's Martel?
16  A. Yeah.
17  Q. Okay. So you refused to tell the officer
18  your name?
19  A. No, I didn't refuse. I just told him I
20  didn't know what I was -- what he was talking
21  about.
22     MR. BRANSON: Okay. I have no further
23  questions.
24     RECROSS-EXAMINATION
25  BY MS. WOODY:

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com
6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131
800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612