---

ELBERT E. COSTELLO  -  06.01.23

**Page 1**

```
                UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
                      WICHITA DIVISION

PROGENY, a program of           )
Destination Innovation, Inc.,   )
CHRISTOPHER COOPER, ELBERT      )
COSTELLO, MARTEL COSTELLO, and  )
JEREMY LEVY, JR., on behalf of  )
themselves and others           )
similarly situated,             )
                                )
              Plaintiffs,       )
                                )
vs.                             ) Case No.
                                )
CITY OF WICHITA,                ) 6:21-cv-01100-EFM-ADM
                                )
              Defendant.        )
                                )

                    D E P O S I T I O N

     The deposition of ELBERT E. COSTELLO, taken on
behalf of the Defendant in the above-styled and
numbered cause, pursuant to the Federal Rules of Civil
Procedure before Jeffrey J. Elliott, Kansas CCR #912,
at City Hall, 455 North Main, 13th Floor, Wichita,
Sedgwick County, Kansas, on the 1st day of June, 2023,
commencing at 10:00 a.m.


              HARRISON-ELLIOTT REPORTING, LLC
                  Certified Court Reporters
         1417 North Saint Paul, Wichita, Kansas 67203
            (316)267-8278 phone  (316)267-8621 fax
                    jeff@harrisonelliott.com
```

---

**Page 2**

A P P E A R A N C E S

FOR THE PLAINTIFF(S):

   Ms. Teresa A. Woody
   KANSAS APPLESEED CENTER FOR LAW & JUSTICE, INC.:
   211 East 8th Street - Suite D
   Lawrence, Kansas 66044
   twoody@kansasappleseed.org

   Ms. Sharon Brett            (VIA VIDEOCONFERENCE)
   ACLU FOUNDATION OF KANSAS:
   10561 Barkley Street - Suite 500
   Overland Park, Kansas 66212
   sbrett@aclukansas.org

   Mr. Ijeoma (EJ) Odigwe
   SHOOK, HARDY & BACON, LLP
   2555 Grand Boulevard
   Kansas City, Missouri 64108
   iodigwe@shb.com

   Mr. Jordan C. Baehr         (VIA VIDEOCONFERENCE)
   SHOOK, HARDY & BACON, LLP
   2555 Grand Boulevard
   Kansas City, Missouri 64108
   jbaehr@shb.com

FOR THE DEFENDANT CITY OF WICHITA:

   Mr. Charles E. Branson
   FISHER, PATTERSON, SAYLER & SMITH
   3550 SW 5th Street
   Topeka, Kansas 66606
   cbranson@fpsslaw.com

   Mr. David R. Cooper         (VIA VIDEOCONFERENCE)
   FISHER, PATTERSON, SAYLER & SMITH
   3550 SW 5th Street
   Topeka, Kansas 66606
   dcooper@fpsslaw.com

---

**Page 3**

I N D E X

ELBERT E. COSTELLO

   Direct Examination by Mr. Branson              5
   Cross-Examination by Ms. Woody                44
   Redirect Examination by Mr. Branson           49


DEFENDANT DEPOSITION EXHIBIT 60
   Marked for Identification                     10
   (Interrogatory Answers - E. Costello)
DEFENDANT DEPOSITION EXHIBIT 61
   Marked for Identification                     15
   (Color Photo Image - Family First Star Tattoo)
DEFENDANT DEPOSITION EXHIBIT 62
   Marked for Identification                     16
   (Color Photo Image - Four Individuals)
DEFENDANT DEPOSITION EXHIBIT 63
   Marked for Identification                     19
   (KS Sentencing Guidelines Journal Entry of
    Judgement - Filed 12/8/97)
DEFENDANT DEPOSITION EXHIBIT 64
   Marked for Identification                     22
   (KS Parole Board - Certificate of Release)
DEFENDANT DEPOSITION EXHIBIT 65
   Marked for Identification                     28
   (KS Parole Board - Cert. Post Release Discharge)
DEFENDANT DEPOSITION EXHIBIT 66
   Marked for Identification                     35
   (12/26/20 Group Color Photo Image - Facebook)

---

**Page 4**

DEFENDANT DEPOSITION EXHIBIT 67
   Marked for Identification                     38
   (Five Color Photo Images - Facebook Post)
DEFENDANT DEPOSITION EXHIBIT 68
   Marked for Identification                     34
   (Group Color Photo Image - Facebook Post)
DEFENDANT DEPOSITION EXHIBIT 69
   First Reference in Transcript                 44
   (Color Photo Image - Five-Point Star Tattoo)












SIGNATURE OF WITNESS                             51
CERTIFICATE OF CERTIFIED REPORTER                52

ELBERT E. COSTELLO  -  06.01.23

Page 5

1          ELBERT E. COSTELLO,
2  of lawful age, having been first duly sworn on his
3  oath to state the truth, the whole truth, and nothing
4  but the truth, deposes and says:
5          DIRECT EXAMINATION
6  BY MR. BRANSON:
7  Q.  Good morning, sir.  Would you please state your
8      name for the record?
9  A.  Elbert Eugene Costello.
10 Q.  And, Mr. Costello, where do you live?
11 A.  2536 South Pattie.
12 Q.  How are you employed, sir?
13 A.  Employed by T-Mobile and I also work with Future
14     Bail Bondsman.
15 Q.  Future Bail Bondsman?
16 A.  Yeah.
17 Q.  What do you do for Future Bail Bondsman?
18 A.  Help bring in bails, people that bond out.  I
19     promote 'em and get bails, people to come to
20     their company to use their services.
21 Q.  Okay, I'm sorry, you said you promoted them?
22 A.  I promote them so people can come in and use
23     their services.
24 Q.  Okay, do you do any bail recovery work?
25 A.  No.  I have rode with 'em, but I just stay in

Page 6

1      the car just to observe, you know, stuff they do
2      and learn the trade of it, so . . .
3  Q.  What do you do at T-Mobile?
4  A.  I've been with sales with them for the last
5      seven years.
6  Q.  Okay.  Sir, have you ever taken a deposition
7      before?
8  A.  No.
9  Q.  Have you ever testified in court before?
10 A.  Yes.
11 Q.  Okay.  What was that for?
12 A.  In a trial and -- in a trial and -- it was a
13     trial.  I believe that was it.
14 Q.  Was it a trial you were involved in?
15 A.  Not I was involved in, I was a witness.
16 Q.  Okay.  What kind of trial was that?
17 A.  It was for robbery.
18 Q.  Okay, tell me about -- what did you witness, what
19     was your testimony about?
20 A.  I was actually with the fella that was accused
21     of the robbery before it happened.  And he had
22     told them that he was with me.  They called me
23     into court to testify that I was with him before
24     it had happened.
25 Q.  Okay.  So, sir, now that we've had a little bit

Page 7

1      of discussion here and since you have not done a
2      deposition before --
3  A.  Mm-hmm.  (Witness motioned head up and down.)
4  Q.  -- I want to go over just some of the kind of
5      basic rules so that we understand each other and
6      how this works.
7  A.  Mm-hmm.  (Witness motioned head up and down.)
8  Q.  I'm going to be asking you questions.  It's very
9      important for the court reporter who is taking
10     down our responses that you wait for my question
11     to be over before you attempt to answer it, and I
12     will hopefully not ask you a question while you
13     are still trying to answer a question so we don't
14     talk over each for the court reporter.
15 A.  Okay.
16 Q.  Also, it's going to be important that you do not
17     use uh-huh or huh-uhs.  Those are very difficult
18     for the court reporter to take down and it makes
19     the record very confusing as to what the actual
20     answer is.
21 A.  (Witness motioned head up and down.)
22 Q.  And so if you can, use yes or no when that's
23     appropriate.
24 A.  Okay.
25 Q.  Sir, are you under any type of doctor's care or

Page 8

1      taking any type of medication that may make it
2      difficult for you to answer questions today?
3  A.  No.
4  Q.  Okay.  Is there anything on your mind, any
5      worries or any troubles that you have going on
6      that may make it difficult for you to concentrate
7      and participate today?
8  A.  No.
9  Q.  What did you do to prepare for this deposition?
10 A.  Hmm, other than spoke with my attorneys, that
11     was it.
12 Q.  And I won't ask you what you talked to your
13     attorneys about, that's the general rule here.
14 A.  Mm-hmm.  (Witness motioned head up and down.)
15 Q.  Did you review any documents in preparation for
16     today?
17 A.  No.
18 Q.  Can you just tell me in your own words, how did
19     you become involved in this lawsuit?
20 A.  Well, I was reached out to by an organization
21     from here and some attorneys and asked me if I
22     would like to participate in it.
23 Q.  Okay, what organization reached out to you?
24 A.  Progeny.
25 Q.  What was the request to you other than to

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

Page 17

1  A. Yes, it is.
2  Q. And you're making a gesture with your right hand.
3     What is the gesture that you're making?
4  A. A.
5  Q. An A?
6  A. Mm-hmm. (Witness motioned head up and down.)
7  Q. Okay. There's a gentleman that's going to be on
8     the right side of the picture, in the picture
9     that would be to the left of you making a gesture
10    with his left hand. Who is that?
11 A. Uh, which --
12           MS. WOODY: I'm sorry.
13 Q. Yeah, I tried to say it verbally, but I'm going
14    to point over here and this is going to be on the
15    right side of the picture as you're looking at
16    it.
17 A. Okay.
18 Q. There's a gentleman standing next to you in the
19    black shirt and his left hand is making a
20    gesture.
21 A. Mm-hmm. (Witness motioned head up and down.)
22 Q. Who is that person?
23 A. Uh, old friend of mine, it's Arias.
24 Q. I'm sorry?
25 A. Arias.

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

Page 18

1  Q. Arias?
2  A. Yeah, mm-hmm.
3  Q. Is that a first name or last name?
4  A. Yes, first name.
5  Q. First name. What is the last name?
6  A. I'm not for sure of his last name.
7  Q. Do you recognize -- what's he doing with his left
8     hand?
9  A. Looks like he's giving a middle finger and
10    pointing it down.
11 Q. There is also a person standing behind you with
12    some type of green logo on their shirt making a
13    gesture with their right hand. What is that
14    gesture?
15 A. Uh, A.
16 Q. And then there's also another person that has a
17    white shirt on to the far left side of the
18    picture as you look at it making a gesture with
19    his right hand. What is that gesture?
20 A. Looks like he's doing a peace sign.
21 Q. Okay. Who is the person in white?
22 A. Ah, I can't think of his name. I haven't seen
23    him in years.
24 Q. What about the person behind you with the green
25    logo on his shirt?

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

Page 19

1  A. His name was Otis. He's deceased.
2  Q. Otis?
3  A. Yes.
4  Q. What's his last name?
5  A. Uh, Bolden. Bolden, I believe.
6  Q. Sir, in your interrogatories, Interrogatory No.
7     3, you were asked about your criminal history
8     and you responded that you had a manslaughter
9     conviction in Saline County, Kansas in 1997?
10 A. Yes.
11 Q. Can you tell me about that case?
12 A. Best way I can describe it, uh, we was young and
13    had a bad experience drinking and led to an
14    altercation where I shot and killed somebody.
15 Q. Okay. And were you convicted of that after a
16    jury trial?
17 A. Yes.
18           (Deposition Exhibit 3 marked
19            for identification.)
20 Q. Hand you what's been marked as Deposition Exhibit
21    No. 63. Sir, Deposition Exhibit No. 63 is the
22    Kansas Sentencing Guidelines Journal Entry of
23    Judgement. Have you seen this document before?
24 A. I believe I have. I can't say.
25 Q. Are you familiar with it as a document that lays

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

Page 20

1     out what your sentence was for that case?
2  A. Yes.
3  Q. And did you receive 51 months of imprisonment for
4     that case?
5  A. Yes.
6  Q. And where was that imprisonment served?
7  A. Hutchinson.
8  Q. Sir, on page 9 of your interrogatory responses
9     there is Interrogatory No. 10. I'll have you
10    turn to that if you would, please.
11 A. You said page 9?
12 Q. Page 9, that will be at Interrogatory No. 10.
13    Sir, as part of your lawsuit you allege that
14    while you were incarcerated that you were
15    subjected to a higher-level custodial setting
16    because of your inclusion on the gang list.
17 A. Mm-hmm. (Witness motioned head up and down.)
18 Q. Do you see that statement?
19 A. Yes.
20 Q. Sir, you go on to explain something about a point
21    system in prison. Can you elaborate on your
22    answer? What are you referring to when you talk
23    about a point system?
24 A. Uh, well, when you go into the system, they give
25    you points based off of your crime. If you're a

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

21

1  gang member. It's just certain stuff they give
2  you points to classify your level.
3  Q. And how is that you were aware of what things you
4  are classified on?
5  A. Uh, your counselor, he informs you.
6  Q. And I know that it says that you don't remember
7  who your unit team leader was.
8  A. No.
9  Q. Have you had a chance to think about that at all?
10 A. I haven't thought about it. That's something
11 happened over 20 years ago.
12 Q. Were you ever specifically told that your custody
13 level was affected by your inclusion on the
14 Wichita Police Department's gang list?
15 A. Yes.
16 Q. And how were you provided that information?
17 A. Like I said, through my counselor.
18 Q. Did you have to answer any questions related to
19 gang affiliation when you were first brought into
20 custody?
21 A. I can't remember.
22 Q. Sir, do you recall when you were released from
23 jail?
24 A. Yes.
25 Q. Was is it somewhere around November 13th, 2000?

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

22

1  A. Yes.
2            (Deposition Exhibit 64 marked
3             for identification.)
4  Q. I'm going to hand you an Exhibit 64. Sir,
5  Exhibit 64 is your Certificate of Release. Is
6  that your signature at the bottom of that
7  certificate?
8  A. Yes.
9  Q. And does this denote your release from prison and
10 your placement on post-release supervision by the
11 Kansas Department of Corrections?
12 A. Yes.
13 Q. And on page 2 of your Conditions of Post-Release
14 Supervision, looks like there's 12 conditions and
15 then a special condition typed onto the form. Do
16 you see that?
17 A. Special condition?
18 Q. Yeah, there's 12 numbered conditions --
19 A. Oh, I see.
20 Q. -- and then under Special Conditions there's an
21 additional thing looks like maybe has been typed
22 on the form.
23 A. Mm-hmm. (Witness motioned head up and down.)
24 Q. Okay. And again, sir, is that your signature at
25 the bottom of this page?

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

23

1  A. Yes.
2  Q. Sir, in your Interrogatory No. 11 on page 10, you
3  allege that in paragraph 129 of the complaint
4  that you were subjected to increased surveillance
5  because of your inclusion in the gang list. Do
6  you see that statement?
7  A. Yes.
8  Q. Sir, I'm going to ask you that you review Exhibit
9  64 and the Conditions of Post-Release
10 Supervision, if you will just take some time to
11 review that second page.
12           (REPORTER'S NOTE:  Witness
13            reviewing document.)
14 Q. Are you familiar with those conditions now that
15 you've had a chance to review them?
16 A. Yes.
17 Q. And those are the conditions that you signed off
18 on when you were placed on post-release
19 supervision?
20 A. Yes.
21 Q. Sir, is there anything in those conditions that
22 reflect that you are subject to a higher level of
23 surveillance because of any gang affiliation?
24 A. No.
25 Q. Sir, in your Interrogatory No. 12, starts on page

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

24

1  11, you allege that in paragraph 132 of the
2  complaint that you were subjected to increased
3  surveillance and harassment by WPD officers and
4  that you continued to be routinely stopped by WPD
5  officers for minor traffic violations. Let me
6  first ask you about the second part of that.
7  Have you been stopped recently by Wichita Police
8  Department?
9  A. No.
10 Q. When was the last time you were stopped by the
11 Wichita Police Department?
12 A. I really don't recall.
13 Q. More than a year ago?
14 A. Yes.
15 Q. More than two years ago?
16 A. Yes.
17 Q. More than three years ago?
18 A. Yes.
19 Q. More than four years ago?
20 A. Don't gotta go that far back.
21 Q. Okay, sure. Sir, when you say you were subjected
22 to increased surveillance and harassment by
23 Wichita Police Department officers, so it's been
24 at least four years ago that you have been -- or
25 close to four years ago that you have been

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

Page 25

1  stopped.
2  A. Right.
3  Q. When do you alleged that this harassment started?
4  A. Say not too much longer after I was released
5     from prison.
6  Q. So sometime in 2000?
7  A. Yes.
8  Q. Sir, have you been arrested since you've been
9     released from prison?
10 A. Yes.
11 Q. Were you arrested in 2005 for possession of
12    marijuana in September of 2005?
13 A. I -- I really can't recall. I can't remember.
14 Q. Okay. What about July of 2006; were you arrested
15    in July of 2006 for possession of marijuana?
16 A. I can't recall.
17 Q. Okay. Were you arrested in February of 2007 for
18    possession of drug paraphernalia?
19 A. Yes.
20 Q. Do you know the result of that case?
21 A. One-year probation.
22 Q. Were you arrested in September of 2007 for
23    domestic battery?
24 A. Yes.
25 Q. What was the result of that arrest?

Page 26

1  A. Dismissed.
2  Q. Were you arrested in April of 2008 for aggravated
3     domestic battery?
4  A. I believe so, but I can't recall.
5  Q. What was the result of that arrest?
6  A. Dismissed.
7  Q. Were you arrested in September of 2009 for
8     possession of narcotics?
9  A. September of 2009. I don't recall that.
10 Q. Okay. How about October of 2009 for possession
11    of narcotics, were you arrested?
12 A. No. That I can recall, huh-uh.
13 Q. Sir, of the arrests that you can recall, are you
14    alleging that any of those arrests were done
15    without probable cause?
16        MS. WOODY: Objection. Calls for a
17    legal conclusion. You can answer.
18 A. Can you repeat that?
19 Q. Yes. Of the arrests that you can recall, are you
20    alleging that any of those arrests were done
21    without probable cause?
22 A. I don't --
23        MS. WOODY: If you understand, you
24    can't answer.
25 A. I really don't understand the question.

Page 27

1  Q. Let me rephrase it, then. Do you believe that
2     those arrests were done without a legal reason?
3  A. Yes.
4  Q. Okay, which ones?
5  A. Hmm, I really don't recall because it's so long
6     ago, but I think the traffic stops were -- if I
7     recall correctly, they were doing traffic stops
8     and I think the traffic stops were illegal.
9  Q. Why do you think they were illegal?
10 A. Around that time I was getting pulled over a lot
11    for not signaling at 100 feet. And to me, that
12    was just a way to pull me over without them
13    having to prove that I actually committed a
14    crime to pull me over.
15 Q. So are you alleging that you did in fact signal?
16 A. Yes.
17 Q. Did you make any complaints to anybody about this
18    treatment?
19 A. At that time, no.
20 Q. Why not?
21 A. I didn't know the proper channels to reach out
22    to.
23 Q. Sir, at some point you were discharged from post-
24    release supervision; is that correct?
25 A. Yes.

Page 28

1  Q. Do you know if that was on or around June 22nd,
2     2003?
3  A. Yes.
4        (Deposition Exhibit 65 marked
5         for identification.)
6  Q. Hand you what's been marked as Exhibit 65. Do
7     you recognize that as your Certificate of Post
8     Release Discharge?
9  A. Yes.
10 Q. Sir, in Interrogatory No. 14, it starts on page
11    13, you allege in your complaint at paragraph 136
12    that you were unable to visit certain businesses
13    and establishments?
14 A. Yes.
15 Q. You indicated that this was a condition placed
16    upon you by your probation officer; is that
17    correct?
18 A. Yes.
19 Q. Did anybody else place this condition or
20    restriction on you?
21 A. No.
22 Q. So after you were discharged from post-release on
23    June 22 of 2003, my understanding from your
24    testimony would be that nobody else put any
25    restrictions on you.

ELBERT E. COSTELLO - 06.01.23

29

1  A.  No.
2  Q.  Sir, did you continue after that to have en-
3      counters with Wichita Police Department?
4  A.  Yes.
5  Q.  Do you recall on March 30th, 2008, Wichita Police
6      Department showing up to a disturbance where
7      gambling was going on and that you were present?
8  A.  No.
9  Q.  Okay.
10 A.  I don't recall it.
11 Q.  Do you remember encountering the Wichita Police
12     Department on March 11, 2009 when you drove
13     Wendell Gasper to the hospital after he was shot?
14 A.  Yes.
15 Q.  Tell me about that incident.
16 A.  Hmm, I was outside of a club. I seen him get
17     shot. I know him. I helped him in my car and
18     drove him to the hospital.
19 Q.  Did you have encounters with the Wichita Police
20     Department on February 24th of 2011 during a
21     disturbance at The Patron Club?
22 A.  Where was that club located?
23 Q.  Well, the easy answer is in Wichita. Let me see
24     if I have an address here, hang on just a second.
25     I don't have an address for you at the moment.

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

30

1  A.  I don't recall that.
2  Q.  You were possibly with somebody named Tyrone
3      Richardson [sic] at that time?
4  A.  I don't recall.
5  Q.  Sir, did you have an encounter with the Wichita
6      Police Department on October 23rd, 2011 when you
7      were involved in a physical altercation at the
8      Crystal Nights nightclub here in Wichita?
9  A.  Not that I recall.
10 Q.  That same evening a person named Eugene Guy was
11     shot in the parking lot?
12 A.  I don't recall.
13 Q.  Don't recall, okay. Sir, do you have any
14     recollection of an encounter with Wichita Police
15     Department on September 15th, 2013? Were you
16     present when James Gary was shot?
17 A.  Yes.
18 Q.  Okay, tell me about that incident.
19 A.  I was at a party and somebody opened fire on the
20     crowd and several people were shot. I got in my
21     car and left.
22 Q.  Were you later questioned about event by Wichita
23     Police Department?
24 A.  Yes.
25 Q.  Tell me about that questioning.

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

31

1  A.  Uh, they asked me what did I see, if I knew who
2      did it. Things around that line.
3  Q.  Sir, do you recall an encounter with Wichita
4      Police Department on March 5th, 2016 when Shawn
5      Bell was shot next to you in Old Town?
6  A.  Yes.
7  Q.  Tell me about that event.
8  A.  We was walking through Old Town. We heard lot
9      of gunshots and we ran. Didn't notice he was
10     hit until we got in the car. We got in the car
11     and he said he was feeling a burning sensation.
12     That's when we noticed he was hit.
13 Q.  Do you know who shot him?
14 A.  No, I don't.
15 Q.  Do you know any of the circumstances around that
16     shooting?
17 A.  No.
18 Q.  Sir, do you recall an encounter with Wichita
19     Police Department on April 21st, 2018 at 1124
20     South Yale when there was a shooting at that
21     residence?
22 A.  I wasn't there.
23 Q.  Do you know of that event?
24 A.  Yes.
25 Q.  What do you know about that event?

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

32

1  A.  Hmm, that was my kids' mother's house. They was
2      there for my granddaughter had passed that day
3      and they were over there mourning the loss for
4      her, and somebody opened fire on 'em and my
5      nephew was shot. That's all I know.
6  Q.  Any idea why anybody would open fire on --
7  A.  No.
8  Q.  -- on this event?
9  A.  No.
10 Q.  Who was your nephew that was shot?
11 A.  Christopher Cooper.
12 Q.  Is Christopher Cooper the same Christopher Cooper
13     that's involved in this lawsuit?
14 A.  Yes.
15 Q.  Sir, I'm going to direct you back to your
16     interrogatory responses.
17 A.  Mm-hmm. (Witness motioned head up and down.)
18 Q.  Page 12, Interrogatory No. 13. You allege in
19     your complaint at paragraph 135 that you cannot
20     get together with many of your lifelong friends
21     because you know that they're on the gang list.
22     Can you elaborate on that statement?
23 A.  Well, when -- if anybody's on probation, that
24     can get 'em violated or it can get 'em
25     classified as I believe active or back on the

HARRISON-ELLIOTT REPORTING
(316) 267-8278

ELBERT E. COSTELLO - 06.01.23

Page 45

1  little bit too much to drink that night and I
2  got into a verbal altercation with a guy that
3  led to him assaulting me and, uh, me shooting
4  him.
5  Q. Okay. And that didn't have anything to do with
6  gangs?
7  A. Nothing at all.
8  Q. Mr. Branson asked you about a series of times
9  when you had some interface with the police over
10 the years.
11 A. Mm-hmm. (Witness motioned head up and down.)
12 Q. And in the times that he mentioned, in any of
13 those times were you charged with anything?
14 A. No.
15 Q. Did anybody accuse you of being engaged in any
16 criminal activity when you had those interfaces
17 with the police?
18 A. Uh, I believe so. I was accused, you know, on
19 the scene I would say, but other than charged
20 with anything, not that I can remember.
21 Q. How about times when you were with people at the
22 hospital; did you ever get charged for any of
23 that?
24 A. No.
25 Q. And the time when Mr. Bell got shot in the foot,

Page 46

1  were you ever charged with anything for that?
2  A. No.
3  Q. Okay, I want to ask you a little bit about the
4  drug paraphernalia conviction that you had. Do
5  you recall that?
6  A. Yes.
7  Q. And I think you said you got a year's worth of
8  probation; is that correct?
9  A. Yes.
10 Q. And did you have restrictions as part of that
11 probation?
12 A. Yes.
13 Q. Can you tell us what some of those restrictions
14 were?
15 A. As far as color of clothes I wore, certain
16 places I couldn't go. People I couldn't be
17 with. Things along that line.
18 Q. And were you successful in meeting those
19 probation terms?
20 A. With the probation or the parole?
21 Q. The probation.
22 A. The probation, no.
23 Q. What happened?
24 A. I was PV'd a few times.
25 Q. And you when you say PV, you mean parole

Page 47

1  violated, right?
2  A. Probation.
3  Q. Probation, excuse me. So what happened, what
4  caused you to have the PV's?
5  A. Been so long I can't really recall what the PV's
6  were for, but I believe one of 'em was for being
7  around gang members.
8  Q. And were those your friends?
9  A. Yes.
10 Q. Did you think they were gang members?
11 A. No.
12 Q. Were there any other PV's that you can remember?
13 A. I can't remember exactly what they were for.
14 Q. Did your probation officer ever tell you he was
15 going to PV you because you had a shirt on with
16 red writing on it?
17       MR. BRANSON: Object to form.
18 A. Yes.
19 Q. And did he?
20 A. No, he didn't that day.
21 Q. Okay.
22 A. He threatened me with it.
23 Q. As a result of those parole violations, what
24 happened?
25 A. Uh, sanctioned in the county jail.

Page 48

1  Q. And how long were you in the county jail?
2  A. Hmm, if I recall, maybe a total of about six
3  months.
4  Q. Okay, so you had a 12-month probation and you
5  ended up spending six months in jail because of
6  parole violations; is that right?
7  A. Yes.
8  Q. Did any of those parole violations involve any
9  kind of violent violent behavior or criminal
10 behavior?
11 A. No.
12 Q. It was all violations of those restrictions; is
13 that right?
14 A. Yes.
15 Q. How long all told did it take you to serve that
16 probation and get that done with after the drug
17 paraphernalia?
18 A. I believe I was on it a total of close to three
19 years, three years.
20 Q. At any time that you were in jail, did you ever
21 have bail assessed against you after that?
22 A. Yes.
23 Q. How much was that bail?
24 A. I can recall one time it was I believe around
25 800,000.

1 Q. $800,000?
2 A. Yes.
3 Q. That was for possession of drug paraphernalia,
4    right?
5 A. Yes.
6    MS. WOODY: Okay. I have no further
7    questions.
8    REDIRECT EXAMINATION
9 BY MR. BRANSON:
10 Q. To follow up on questions counsel asked you, sir,
11    your probation term was served with Sedgwick
12    County; is that right?
13 A. Yes.
14 Q. Are you aware that Sedgwick County is separate
15    from the Wichita Police Department?
16 A. Uh, yes.
17    MS. WOODY: Should say objection, lacks
18    foundation. Sorry.
19 Q. You listed on your Interrogatory No. 3 a
20    conviction for possession with intent to
21    distribute in November of 2011. Do you recall
22    that response?
23 A. Not a conviction.
24 Q. You were charged, though, with possession with
25    intent to distribute?

1 A. Yes.
2 Q. And that's the case that resulted in you being on
3    probation for one year?
4 A. Yes.
5 Q. You accepted a plea to a lesser charge?
6 A. Yes.
7 Q. Is that the case that you had an $800,000 bond
8    set in?
9 A. It was for one of the probation violations, I
10    believe.
11 Q. Are you aware, sir, that the Court sets the
12    amount of bond in your criminal case?
13 A. Yes.
14 Q. Sir, as for your terms of probation, are you
15    aware that it's your probation officer and the
16    court that sets your conditions of probation?
17 A. Yes.
18    MR. BRANSON: I have no further
19    questions.
20    MS. WOODY: No further questions.
21    Thank you very much, Elbert.
22    THE WITNESS: Thank you.
23    MR. BRANSON: Thank you, sir.
24    (DEPOSITION CONCLUDED AT 11:12 A.M.)
25    * * * *

1    I have read the foregoing testimony
2    recorded on pages 5 through 50, inclusive,
3    and the same is true and correct to my
4    knowledge and belief.
5
6
7
8    _____
9    ELBERT E. COSTELLO
10
11
12
13
14
15
16 STATE OF KANSAS    )
                     )
17 _____ COUNTY )
18
19    Subscribed and sworn to before me, the
20 undersigned authority, this, the ____ day of
21 _____, 2023.
22
23
24 _____    _____
25 (Commission Expires)    (Notary Public)

1    CERTIFICATE
2 STATE OF KANSAS )
                  )
3 SEDGWICK COUNTY )
4    I, Jeffrey J. Elliott, a Certified Court
5 Reporter within and for the State of Kansas, do hereby
6 certify the within-named witness was by me first duly
7 sworn to testify the truth, and that the deposition
8 by ELBERT E. COSTELLO, given in response to the
9 questions propounded, as herein set forth, was first
10 taken in computer-aided shorthand by me and afterwards
11 reduced to writing under my direction and supervision,
12 is a true and correct record of the testimony given by
13 the witness, CONSIDERING THE INHERENT LIMITATIONS WITH
14 RESPECT TO ELECTRONIC SOUND REPRODUCTION VIA VIDEO AND
15 TELECONFERENCE COMMUNICATION/TESTIMONY.
16    I further certify that I am not a relative or
17 employee, attorney or counsel of any of the parties,
18 relative or employee of such attorney or counsel, or
19 financially interested in the action.
20    WITNESS my hand and official seal at Wichita,
21 Sedgwick County, Kansas, this ____ day of
22 _____, 2023.
23    _____
      Jeffrey J. Elliott, CCR #912
24    HARRISON-ELLIOTT REPORTING
      14531 East Sundance Road
25 COSTS: _____    Wichita, Kansas 67230