# EXHIBIT 13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc., CHRISTOPHER COOPER, ELBERT COSTELLO, MARTEL COSTELLO, and JEREMY LEVY, JR., on behalf of themselves and others similarly situated,

    Plaintiffs,

vs.

CITY OF WICHITA, KANSAS,

    Defendants.

**CASE NO.**
6:21-cv-01100-EFM-ADM

### DEPOSITION OF
DR. ANA MUNIZ

**DATE:** Friday, May 19, 2023

**REPORTER:** Dalia R. Smith, CSR No. 8486

**LOCATION:** 5 Park Plaza
Suite 1600
Irvine, California 92614



### HINES REPORTERS

**INTERNATIONAL TOWER**
**888 S. FIGUEROA STREET, SUITE 940, LOS ANGELES, CALIFORNIA 90017**

866.432.4300; 213.688.7887

WWW.HINESREPORTERS.COM

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 3 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF KANSAS

 3

 4   PROGENY, a program of Destination ) Case No.:
     Innovations, Inc., CHRISTOPHER    ) 6:21-cv-01100-EFM-ADM
 5   COOPER, ELBERT COSTELLO, MARTEL   )
     COSTELLO, and JEREMY LEVY, JR.,   )
 6   on behalf of themselves and       )
     others similarly situated,        )
 7                                     )
     Plaintiffs,                       )
 8                                     )
              vs.                      )
 9                                     )
     CITY OF WICHITA, KANSAS,          )
10                                     )
     Defendant.                        )
11   _____)

12

13              DEPOSITION OF DR. ANA MUNIZ

14

15

16
     5 Park Plaza, Suite 1600
17   Irvine, California 92614

18

19

20   FRIDAY, MAY 19, 2023

21

22

23

24   DALIA R. SMITH,
     Certified Shorthand Reporter No. 8486
25
```

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 4 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

1   Q. Correct. Because I believe your testimony was
2   you needed a definition --
3   A. Yes.
4   Q. -- to be able to do that and a criteria to be
5   able to gauge that against.
6   Did I understand your testimony correctly?
7   A. Yes.
8   Q. Now that you have a criteria I'm going to go
9   back and ask you again about your experience in the Echo
10  Park neighborhood and your experience with the CalGang
11  database and gang criteria.
12  In your research and studies of the Echo Park
13  neighborhood did you ever identify anybody that you
14  believed fit the CalGang criteria?
15  A. I encountered people that the LAPD had assessed
16  to fit these criteria.
17  Q. Okay. I'm asking if you, though, ever
18  interviewed, met, or came across in your research of the
19  Echo Park neighborhood anybody that you believed fit that
20  criteria?
21  A. Yes, because --
22  MR. BAEHR: Objection to form.
23  THE WITNESS: Yes. A very broad range of people fit
24  this criteria. I fit these criteria in the Echo Park
25  neighborhood.

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 5 of 19

Progeny, et al. vs. City of Wichita, KS                                    Deposition of Dr. Ana Muñiz

BY MR. BRANSON:

Q. May seem like a strange question, Doctor, but were you ever involved in gang activities?

A. No. And these criteria don't require that someone is involved in gang activities.

Q. Were you ever involved in criminal activity?

MR. BAEHR: Objection to form.

THE WITNESS: No. And many of these criteria don't require that someone is involved in criminal activity.

BY MR. BRANSON:

Q. Doctor, did you ever encounter anybody then that fit the criteria contained in -- strike that question.

I want to ask you a little bit more about your experiences. I believe you said you've given one prior deposition.

A. Uh-huh.

Q. To your knowledge has your professional opinion provided in any of these cases that we discussed ever been excluded or disallowed by a court?

A. I'm not sure. Not that I'm aware of, but I can't say for sure.

Q. Your attorney -- well, plaintiff's attorneys have provided us I believe documents in response to the notice to take deposition here today.

Did you bring any other documents with you

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 6 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

BY MR. BRANSON:

Q.  Page five of your report you state under Opinion 1 that you did an analysis of Wichita Police Department's policies and procedures.

Can you tell me what that analysis is.  Can you describe it for me.

A.  Yes.  So I read over the policies and procedures that are listed in the previous sections, such as the policies manual, their audit checklists, their procedures for entries into database.  Looked at the juvenile notification letter.  The gang intel form, the gang intelligent study guide.  Later the training which you referred to.  And then I assessed and compared those to other departments.

Q.  How did you assess and compare those to other departments?  Tell me what that means.

A.  That means I looked at how similar or different they were from the criteria used by other departments.

Q.  And how does that inform your opinion?

A.  It informed my opinion, for example, because I, as you mentioned, I'm an expert on the LAPD, for example.  And so Wichita's policies are remarkably similar to the Los Angeles Police Department's policies.  And so when we see similar policies, those structured behavior, and there tends to be similar patterns between departments

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 7 of 19

Progeny, et al. vs. City of Wichita, KS │ Deposition of Dr. Ana Muñiz

1  when we see those similar policies.

2  Q. Okay. Well, thank you. I did mention that you
3  indicated you were an expert on LA gang policies. That
4  is not my assessment.

5  MR. BAEHR: Objection to form to the extent that was
6  a question or not a question.

7  BY MR. BRANSON:

8  Q. You've authored four opinions in this case.
9  Your first opinion you indicate that gang designations
10 are overinclusive and inconsistent.

11     Doctor, tell me in your review of the Wichita
12 Police Department gang list did you identify anybody on
13 that list that should not be listed?

14 MR. BAEHR: Objection to form.

15 THE WITNESS: I did not see the list, so I was not
16 able to identify if someone was legitimately on or not on
17 that list. There were Wichita Police Department officers
18 who in their depositions said that they had found people
19 on the list that they believed did not fit the
20 criteria.

21 BY MR. BRANSON:

22 Q. You're referring to a statement by Chad Beard?
23 A. Let me make absolutely sure. Yes.
24 Q. Okay. Doctor, your testimony was that you've
25 not seen the Wichita Police Department gang list and

Case 6:21-cv-01100-EFM  Document 207-13  Filed 09/29/23  Page 8 of 19

Progeny, et al. vs. City of Wichita, KS    Deposition of Dr. Ana Muñiz

1   A. That it's possible, for example, and this is also stated by officers, by Wichita Police Department officers in their depositions, that it would be possible because the criteria are vague and overly broad for one officer to make one assessment looking at the same person and the same evidence and a different officer to make a different assessment. Also because these are very discretionary, it's possible for an officer to see that somebody might fit these criteria and yet choose not to put them on the list. To see that they meet the criteria for membership and yet choose to put them on the list as an associate instead of a full member.

Q. You say it's possible, but have you identified any inconsistencies in Wichita Police Department's gang list?

MR. BAEHR: Objection to form.

THE WITNESS: Again, I haven't seen the actual gang list.

BY MR. BRANSON:

Q. I'll repeat my question. Have you identified any inconsistencies within the Wichita Police Department gang list?

A. And I'll repeat the answer that I have not actually seen the gang list.

Q. So your answer is no?

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 9 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

1  Q.  What other basis for your opinion have we not
2  discussed?
3  A.  Well, you mainly focused on -- I mean, I don't
4  know if you mean did we talk about specific criteria.
5  So, you know, my opinion includes an analysis of gang
6  style of dress, but also tattoos, gang areas.  So I know
7  we didn't cover those specifically.  But I'm not sure if
8  that's what you meant, what you mean by that question.
9  Q.  Well, so let's talk about style of dress.
10 You've testified that you believe that that criteria is
11 vague.
12 A.  Yes.
13 Q.  Anything else about the style of dress that you
14 find problematic?
15 A.  I think that the fact that it's vague, overly
16 broad allows for inclusion covers it.
17 Q.  Okay.  We haven't talked about colors.  What is
18 your opinion about colors with regard to the gang
19 database?
20 A.  Similarly, that the use of colors to determine
21 gang designation can lead to overinclusion.
22 Q.  Okay.  Let's talk about gang areas.  What is
23 your opinion with regard to the vagueness of gang areas?
24 A.  That gang area doesn't have a -- as the WPD,
25 they don't provide a specific definition that they

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 10 of 19

Progeny, et al. vs. City of Wichita, KS                     Deposition of Dr. Ana Muñiz

1  communicate to the public.  So it's similarly vague and
2  under defined and makes it difficult then for people also
3  to avoid violating that criteria.
4       Q.  Tattoos.
5       A.  Yes.
6       Q.  What about tattoos?  What's the vagueness
7  there?
8       A.  The vagueness is, again, that there is not a
9  specific definition given and communicated to the public.
10 So it allows for overinclusion, and also does not allow
11 often people in the public to avoid violating that
12 criteria.
13      Q.  Any other basis for your Opinion 1?
14      A.  No.
15      Q.  Let's talk about your Opinion 2.  Can you tell
16 me what your Opinion 2 is.
17      A.  That gang list.  So Opinion 1 involves the act
18 of designation.  And the basis on Opinion 2 is that gang
19 lists are overinclusive.  And also that they don't, the
20 WPD gang list does not provide process protections that
21 that would allow to correct inaccurate information.  So,
22 for example, there's not a compulsory notification
23 process and a clear process for appeal.  It's unclear how
24 many people have applied for removal and been given
25 removal.

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 11 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

```
 1   BY MR. BRANSON:
 2        Q.   Did you make any analysis if those gang
 3   databases that you conducted research on had the same
 4   policies and procedures and audit processes that the
 5   Wichita gang database does?
 6        A.   I did look at those to see if those departments
 7   had the auditing processes.  So, for example, the CalGang
 8   database has a consistent audit process.  To my knowledge
 9   I haven't seen evidence that WPD has provided regular and
10   consistent audits.
11        Q.   Are you aware of any audit process that the WPD
12   employs?
13        A.   I know that they claim to have an audit process.
14   But I wasn't provided, for example, like purging numbers
15   or dates on which audits were done and how many people
16   were found to be and accurately on the database and
17   purged.
18        Q.   Were you provided the audit process itself?
19        A.   Let me just be sure.  Let me look at this
20   opinion.  I can't recall specifically if those -- I would
21   need to look at these documents again to recall
22   specifically if there was mention of an audit procedure
23   in particular.
24        Q.   In your report you discuss your perceived
25   problems with the LAPD's CalGang database and entry of
```

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 12 of 19

Progeny, et al. vs. City of Wichita, KS                Deposition of Dr. Ana Muñiz

1  inaccurate information.  We've already established that
2  you have not reviewed the individual gang entries in the
3  Wichita Police Department gang database.
4          Do you have any opinion whether or not the
5  problems that plague the CalGang database such as officer
6  misconduct in entering information that you describe on
7  page nine has occurred on Wichita Police Department
8  gang's database?
9       MR. BAEHR:  Objection to form.
10      THE WITNESS:  I was not given information about
11 officer conduct by -- officer misconduct by the WPD.
12 BY MR. BRANSON:
13      Q.  Doctor, on page 12 of your report you indicate,
14 "Under the Wichita Police Department's policy the lack of
15 due process protections concerning how information is
16 added to and maintained in the gang list makes it
17 incredibly difficult for an individual to correct
18 inaccurate information in the gang list or have their
19 information removed from the gang list."
20          What due process protections are you speaking
21 of?
22      MR. BAEHR:  Objection to form.
23      THE WITNESS:  So one of those would be the fact that
24 there is not a compulsory notification procedure, and not
25 a clear appeal procedure for all people who have been

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 13 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

1  added to the gang list.
2  BY MR. BRANSON:
3      Q.  Any other basis for making -- or having the
4  opinion that there's a lack of due process protections?
5      A.  Well, upfront the criteria being overinclusive,
6  there -- you know, those are vague.  And so I think
7  there's some issues there.  But as far as information
8  that's already in the database, it's difficult, which I
9  think is what you're referring to here, correcting
10 inaccurate information.  If people are not informed that
11 they've been added to the database they cannot challenge
12 or correct that information.
13     Q.  You used the term due process protections.  Are
14 you drawing a legal conclusion in your opinion?
15         MR. BAEHR:  Objection to form.
16         THE WITNESS:  I am not.
17 BY MR. BRANSON:
18     Q.  Then what is the significance of a due process
19 protection?
20     A.  Can you repeat that question.
21     Q.  Well, I'm trying to understand.  If you're not
22 making a legal conclusion what -- by stating an opinion
23 that Wichita Police Department's gang database lacks due
24 process protections, I'm trying to understand what
25 exactly you mean by due process protections.

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 14 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

1    A.   I'm referring to the procedures that would allow
2  people to learn if they're in the database and to correct
3  that information so that it does not affect them
4  negatively down the line.
5    Q.   Okay.  These are procedures that you believe are
6  inadequate within the Wichita Police Department gang
7  database?
8    A.   The procedures that I reviewed I did not see a
9  notification and removal process which, yeah, opens up
10  this gang list to inaccurate information.
11    Q.   Do you have an opinion whether or not
12  individuals listed on the gang database are entitled to
13  notice or opportunity for removal?
14    MR. BAEHR:  Objection to form.
15    THE WITNESS:  Do I believe an individual is entitled
16  to know if they're on this gang database?
17  BY MR. BRANSON:
18    Q.   Correct.
19    A.   I think that when you have a notification --
20  when you have no notification process, process for
21  appeal, process for removal, that it enables the database
22  to hold inaccurate information.  There are other
23  departments who have similar gang lists, similar gang
24  databases, and do have notification and removal processes
25  for this very reason.

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 15 of 19

Progeny, et al. vs. City of Wichita, KS                                  Deposition of Dr. Ana Muñiz

1  Q.  Doctor, you talk about certain stigmas attaching
2  to people that are listed on the -- listed on a gang
3  database.
4       What is the basis of your opinion that there's a
5  stigma that attaches?
6  A.  My review of research in the field, and also my
7  own research over the course of about 15 years.
8  Q.  And tell me what you mean by stigma attaches.
9  A.  Well, a stigma -- a stigma is something that
10 when someone has a label they are negatively viewed.  So
11 that can be through official processes.  For example, I
12 did an extensive amount of research that demonstrated
13 that people who have been designated gang members or
14 associates are ineligible for certain aspects of
15 immigration relief.  But that stigma can also be more
16 informal.  So it can result in, for example, if someone
17 in -- if a community is aware that someone has been
18 designated a gang member, they may look more negatively
19 upon that person.  May reject them socially.  It's also
20 possible that an employer would look at them negatively
21 and deny them housing opportunity -- I mean, I'm sorry --
22 employment opportunities, for example.
23 Q.  Are you aware of anybody listed on the Wichita
24 Police Department's gang list that's been denied
25 employment or housing opportunities?

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 16 of 19

Progeny, et al. vs. City of Wichita, KS                                    Deposition of Dr. Ana Muñiz

1  enhancement which is a state statute.  And somebody would
2  qualify for a gang enhancement, which in many places is
3  10 years additional incarceration by virtue of
4  designation as a gang member associate by a local police
5  department.
6  BY MR. BRANSON:
7      Q.  Well, you talk about 10-year gang enhancement on
8  page 16 of your report, I believe.  Make sure I'm on the
9  right page here.  Yeah, it's the last paragraph on that
10 page.
11     A.  Yes.
12     Q.  Do you have any information with regard to
13 whether or not Kansas has a similar gang enhancement that
14 you speak of on this page?
15     A.  I was not given information on gang enhancement
16 statutes in Kansas to review.
17     Q.  Were you provided any information on Kansas law
18 on probation and parole requirements?
19     A.  I reviewed a policy on the gang conditions that
20 can be applied to people who are on the gang list.  And
21 so that was a county -- the county probation parole
22 requirement.  The Sedgwick county probation gang
23 conditions.
24     Q.  And do you have any understanding whether or not
25 the Sedgwick county gang -- probation gang conditions are

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 17 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

1  something under the control of the Wichita Police
2  Department?
3       A.  It is my understanding that these gang
4  conditions, one way in which someone would qualify for
5  them or they would be applied would be by virtue of their
6  designation as a gang member or associate by the Wichita
7  Police Department.
8       Q.  Do you have any understanding of who imposes
9  those conditions?
10      MR. BAEHR:  Objection to form.
11      THE WITNESS:  The Sedgwick county probation gang
12 conditions?
13 BY MR. BRANSON:
14      Q.  Yes.
15      A.  Can you specify a little what you mean by
16 imposes.
17      Q.  Well, who imposes those conditions on the
18 convicted person?
19      A.  I can't say for sure.
20      Q.  Do you have any evidence that the Wichita Police
21 Department then imposes those conditions?
22      MR. BAEHR:  Objection to form.
23      THE WITNESS:  I understand that the Wichita Police
24 Department designates individuals as gang members and
25 associates, and that may -- that designation may be one

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 18 of 19

Progeny, et al. vs. City of Wichita, KS                    Deposition of Dr. Ana Muñiz

1  lead to a similar outcome.  So the lack of notification,
2  appeal, and removal would be the same issue that is
3  shared between those two instances.
4      Q.  Doctor, on page 15 of your report you state,
5  "Previous research has found that police officers in gang
6  units tend to approach alleged gang members in an
7  aggressive, dehumanizing, and combative manner."
8      Do you have any examples of that behavior you
9  are relying on for the Wichita Police Department?
10     A.  I have not observed the Wichita Police
11 Department in person.
12     Q.  Doctor, you may have answered a similar question
13 earlier, but I want to make sure.  You have not surveyed
14 any Wichita Police Department officers in preparing your
15 report, have you?
16     A.  I have not surveyed Wichita Police Department
17 officers.
18     Q.  And you have not surveyed anybody stopped by the
19 Wichita Police Department in forming your opinions?
20     A.  No, I have not conducted research in Wichita.
21     Q.  Doctor, I would like to go on to your Opinion 4.
22     Doctor, can you tell me the basis of your
23 opinion that gang profiling is highly racialized.
24     A.  Yes, the basis of that opinion is a robust body
25 of social science research in this field and then my own

Case 6:21-cv-01100-EFM   Document 207-13   Filed 09/29/23   Page 19 of 19

Progeny, et al. vs. City of Wichita, KS                                    Deposition of Dr. Ana Muñiz

1  extensive research.
2      Q.  Tell me a little bit about that research.
3      A.  So this research finds a very consistent pattern
4  that people who are designated as gang members and
5  associates by law enforcement are overwhelming either
6  Black or Latino.
7      Q.  You state in your report that, "While the
8  criteria used by the Wichita Police Department for
9  designating individuals as gang members or associates are
10 so broad as to encompass a large range of people, they do
11 not affect all people equally."
12         Is that a correct statement?
13     A.  Yes, that's what it says.  Yes.
14     Q.  Okay.  Are you aware of any validated scientific
15 research or studies that have determined the percentage
16 of the Black population that is involved in gang
17 activity?
18     MR. BAEHR:  Objection to form.
19     THE WITNESS:  I can't.  I can't.  I wouldn't be able
20 to give you a certain answer unless I was given time to
21 review, to go back and revisit that research.
22 BY MR. BRANSON:
23     Q.  So you're not aware of any study?
24     MR. BAEHR:  Objection to form.
25     THE WITNESS:  Can you repeat that question.