# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination
Innovations, Inc., CHRISTOPHER
COOPER, ELBERT COSTELLO, MARTEL
COSTELLO, and JEREMY LEVY, JR., on
behalf of themselves and others similarly
situated,

　　　　　*Plaintiffs,*

　vs.

CITY OF WICHITA, KANSAS,

　　　　　*Defendant.*

Case No. 6:21-cv-01100-EFM-ADM

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for Class Certification (Doc. 175).  Organizational

Plaintiff Progeny, along with individual Plaintiffs Christopher Cooper, Elbert Costello, Martel

Costello and Jeremy Levy, Jr., bring this putative class action on behalf of themselves and others

similarly situated.  Broadly speaking, they seek relief from Defendant City of Wichita's "Gang

List," along with the statutes and local policies that enable it.  The Gang List is purportedly a list

of persons, created and maintained by the Wichita Police Department ("WPD"), whom WPD

personnel have determined meet the definition of a "criminal street gang member" under the

criteria set out in K.S.A. § 21-6313(b). The individual Plaintiffs allege they were wrongfully

designated as "criminal street gang member[s]" and added to the Gang List, which has negatively affected their lives in a host of ways.  Ultimately, Plaintiffs seek as relief a declaration that K.S.A. § 21-6313 is unconstitutional under the First and Fourteenth Amendments and injunctive relief effectively dismantling the Gang List.  In their present Motion, Plaintiffs request certification as a class under Federal Rule of Civil Procedure 23(b)(2).  For the reasons stated below, the Court grants Plaintiffs' Motion and appoints Plaintiffs' counsel as class counsel under Rule 23(g).

## I.        Factual and Procedural Background

At the heart of this constitutional quagmire is a relatively brief definitional statute.  K.S.A. § 21-6313 defines several terms relevant to criminal gangs, including a definition of a "criminal street gang"[1] and "criminal street gang activity."[2]  But for present purposes, the most important parts of § 21-6313 are its definitions of "criminal street gang member" and "criminal street gang associate."  A "criminal street gang member" is a person who either admits to their membership in a gang or meets three of the following statutory criteria, while a "criminal street gang associate" is someone who admits to gang associateships or meets only meet two:

> (A) Is identified as a criminal street gang member by a parent or guardian;
> (B) is identified as a criminal street gang member by a state, county or city law enforcement officer or correctional officer or documented reliable informant;
> (C) is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information;
> (D) frequents a particular criminal street gang's area;
> (E) adopts such gang's style of dress, color, use of hand signs or tattoos;
> (F) associates with known criminal street gang members;
> (G) has been arrested more than once in the company of identified criminal street gang members for offenses which are consistent with usual criminal street gang activity;

---

[1] K.S.A. § 21-6313(a).

[2] *Id.* § 21-6313(c).

(H) is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation;
(I) has been stopped in the company of known criminal street gang members two or more times; or
(J) has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual.[3]

The various definitions of § 21-6313 apply both to the statute itself and subsequent statutory sections.  For example, K.S.A. § 21-6316 sets a minimum bail of $50,000 for "criminal street gang members" arrested for a person felony, subject to a few exceptions.

WPD policy puts § 21-6313 into practice on the streets of Wichita.  Specifically, Policy 527 defines the procedures for an individual's inclusion on the Gang List.  "Any state, county, or city law enforcement officer or correctional officer may nominate" an individual for inclusion on the Gang List.  After this nomination, the individual will be added to the Gang List if they meet the criteria of § 21-6313.  Once on the Gang List, Policy 527 provides that the individual will remain on either "active" or "associate" status for a minimum of three years.  If, after three years, the individual has not engaged in documented criminal street gang activity, the individual will be designated "inactive" in the Gang List.  But this three-year period starts over if an officer documents that the individual either meets the criteria set out in § 21-6313(b) or that the individual has been involved in criminal street gang activity or a gang-related incident, as defined by the statute.  Officers of the WPD monitor members of the Gang List for any violations of probation conditions, bond, and pretrial restrictions.  Policy 527 further specifies that the Gang List is confidential and will only be released to commissioned law enforcement, correctional officers, and those authorized to receive Gang List information by various high-level supervisors within the

---

[3] *Id.* § 21-6313(b)(2)(A)–(J).

WPD.  Once on the Gang List, Policy 527 does not provide an opportunity for an individual to remove their name the Gang List entirely.  Rather, the individual simply may be labeled "inactive."

Four individuals and one nonprofit entity make up the named Plaintiffs.  Plaintiff Christopher Cooper first learned he was on the Gang List in 2014 when he was arrested for first degree murder.  Plaintiff Elbert Costello first learned he was on the Gang List in 1997, when he was arrested in connection with a shooting.  Plaintiff Martel Costello believes he was first added to the Gang List in 2016 because of his association with relatives, presumably also members of the Gang List, rather than any conduct on his part.  On two separate occasions, Martel was attending funeral services for a family member when he was found to have violated his parole because family members on the Gang List were also in attendance.  Martel is incarcerated for these violations until at least 2023.  Plaintiff Jeremy Levy, Jr., believes he was added to the Gang List at 13 years old when he was pulled over by the WPD while riding in a car with one of his cousins, who was already on the Gang List.  Five years later, Levy was charged with first-degree felony murder.  Levy was convicted and is currently incarcerated until at least 2042.

Rounding out the named Plaintiffs, Progeny is a nonprofit organization in Wichita, Kansas, that operates "as a youth/adult partnership focused on reimagining the juvenile justice system and reinventing in community-based alternatives."  Progeny states that, because K.S.A. § 21-6313 and Policy 527 list "associat[ing] with known criminal street gang members" as one of the criteria for being designated or renewed as a "criminal street gang member," it is strongly discouraged from hosting town halls or meetings of any kind, as they might result in even more people being added to the Gang List.  Progeny believes § 21-6313 and Policy 527 effectively prohibit it from providing services to those individuals known to be on the Gang List, as doing so may result in Gang List designations for Progeny members working with those perons.

Together, named Plaintiffs asserted a putative class action against the City of Wichita[4] on April 15, 2021.  Plaintiffs allege that § 21-6313 and Defendant's policies and practices violated their rights under the First and Fourteenth Amendments to the United States Constitution.  They seek certification as a class under Fed. R. Civ. P. 23(b)(2), and injunctive and declaratory relief.  For a class definition, Plaintiffs propose, "All persons included in the Wichita Police Department's Gang List as an Active or Inactive Gang Member or Gang Associate."  In total, the Gang List and Gang Database list 5,245 persons—1,728 active gang members, 3,296 inactive gang members, and 221 gang associates.

Plaintiffs present six common questions they claim apply to all proposed class members:

(1) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 are unconstitutionally vague because they "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct [they] prohibit[]" or they "authorize[] or even encourage[] arbitrary and discriminatory enforcement."

(2) Whether people on the Gang List "possess a protected interest such that the due process protections were applicable."

(3) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 fail to provide procedural protections required by Due Process and the Constitution before adding someone to the Gang List.

(4) Whether being on the Gang List deprives people of their liberty interest in their "good name, reputation, honor, or integrity."

(5) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 deprive people on the Gang List of their liberty interest in freedom pending trial based on the increased bail requirement.

(6) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 have a chilling effect on the freedoms of expression and association of people on the Gang List and unconstitutionally prohibit people on the Gang List from freely associating with friends, family, or community members.

---

[4] WPD Chief Gordon Ramsey, and WPD Gang Unit Supervisor, Lieutenant Chad Beard were also named as defendants in their official capacities but were dismissed pursuant to this Court's order on Defendants' partially successful motion to dismiss on January 10, 2022 (Doc. 28).

Within their Motion, Plaintiffs request that the Court appoint the following persons as class counsel under Rule 23(g): Jordan Carmichael Baehr, Mitchell F. Engel, Paul Monroe Vogel, and Thomas J. Sullivan of Shook, Hardy & Bacon LLP; Karen Ellen Leve, Kunyu L. Ching, and Sharon Brett of the ACLU Foundation of Kansas; and Teresa A. Woody of Kansas Appleseed Center for Law and Justice, Inc.  Each of these attorneys have represented Plaintiffs throughout the course of this case.

## II.    Legal Standard

Fed. R. Civ. Proc. 23 governs the certification of class actions.  "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[5] In ruling on a motion for class certification, courts must accept the facts contained within the plaintiff's complaint as true.[6]  Although "a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[7]  Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant

---

[5] *DG ex rel. Stricklin v. DeVaughn*, 594 F.3d 1188, 1194 (10th. Cir. 2010) (citations and internal quotations omitted).

[6] *Harlow v. Sprint Nextel Corp.*, 254 F.R.D. 418, 420 (D. Kan. 2008) (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir.1999)).

[7] *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (further citations and quotations omitted).

to determining whether the Rule 23 prerequisites for class certification are satisfied."[8] Any attempt by the party opposing class certification to litigate the merits of the claims must be disregarded.[9]

The burden is on the plaintiffs to make a prima facie case that the putative class meets Rule 23's requirements.[10] Taking the "substantive, non-conclusory allegations of the complaint as true,"[11] courts must conduct a "rigorous analysis" of a plaintiff's complaint to ensure it meets Rule 23's requirements.[12] Even so, "[c]ourts should err on the side of class certification because they have broad discretion to later redefine (or even decertify) the class if necessary."[13]

As an initial step, Rule 23(a) requires the proposed representative plaintiffs to show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

If the plaintiffs meet Rule 23(a)'s requirements, they must show that the class fits within one of the Rule 23(b) categories. In this case, Plaintiffs seek to proceed under Rule 23(b)(2), which states "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

---

[8] *Id.* at 466.

[9] *See id.* (quoting Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C. App., p. 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.")).

[10] *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).

[11] *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (further citations omitted).

[12] *Id.* (further citations omitted).

[13] *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968) (further citations omitted).

### III.    Analysis

Plaintiffs seek to certify a class under Rule 23(b)(2).  As an initial matter, Defendant is ripping, roaring, and raring to adjudicate Plaintiffs' claims on the merits, dedicating nearly the entirety of their Response to this end.  The Court, however, is mindful of the stage of this case.  To the extent Defendant wants a battle over the substantive issues of Plaintiffs' claims, it is free to assert substantive arguments in a motion for summary judgment.[14]  Here, the Court will only address substantive matters to the extent they are relevant under Rule 23's standards for class certification.

### A.    Class definition

In determining whether to certify a class, the Court first addresses the proposed class definition.[15]  "Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action."[16]  Therefore, the definition must be "precise, objective, and presently ascertainable."[17]

Here, Plaintiffs seek to certify the following class: "All persons included in the Wichita Police Department's Gang List as an Active or Inactive Gang Member or Gang Associate."  Defendant objects to this definition on two grounds.[18]  First, Defendant claims the definition is overbroad by including inactive and even deceased gang members and gang associates contained

---

[14] At the time of writing, cross motions for summary judgment have already been filed by the parties.

[15] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 257–58 (D. Kan. 2010).

[16] *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 444 (D. Kan. 2006) (quoting Manual for Complex Litigation § 21.222, at 270 (4th ed.2005)) (further quotations omitted).

[17] *Id.*

[18] That is, Defendant objects on two grounds that do not delve into substantive arguments best left for summary judgment.

in the WPD's Gang Database.[19]  Including deceased persons within the class definition would be nonsensical.  Therefore, the Court agrees that including deceased gang members as members of the class definition is unnecessarily overbroad.  However, Defendants offer no real argument as to how persons classified as "inactive" on the Gang List transforms the proposed class definition anything other than precise, objective, and presently ascertainable.

Second, Defendant argues that the definition improperly includes juveniles.  While Defendant claims that juveniles on the Gang List have extra procedural protections—thus rendering them less susceptible to Plaintiffs' claimed injuries—this is irrelevant to whether the class is objective, precise, and presently ascertainable.  Furthermore, in making this argument, Defendant relies on facts outside the pleadings.  At this stage of the case, the Court relies on Plaintiff's factual allegations instead of Defendant's own contended facts.

In sum, the Court finds the following definition to be precise, objective, and readily ascertainable: "All living persons included in the Wichita Police Department's Gang List or Gang Databased as an Active or Inactive Gang Member or Gang Associate."  The addition of "living" and "Gang Database" sufficiently address Defendant's concerns regarding the definition's overbreadth as proposed by Plaintiffs.  Accordingly, the Court will utilize this definition when analyzing Plaintiffs' proposed class under Rule 23.

**B.    Rule 23(a)'s requirements**

Next, the Court must determine whether Plaintiffs can establish a prima facie case under Rule 23(a)'s four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. The Court will examine each requirement in turn.

---

[19] The Court notes that Defendant's Response appears to be the first time in this case that Defendant distinguishes between the "Master Gang List" and the WPD Gang Database.

1.      *Numerosity*

Under Rule 23(a), the proposed class must be so "numerous that joinder of all members is impracticable."[20]   To show numerosity, plaintiffs "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."[21]  This Court has held that "a good faith estimate of at least 50 members is a sufficient size to maintain a class action."[22]  Even so, the numerosity inquiry looks beyond the sheer number of proposed class members.[23]  Courts should also examine "factors like the practical viability of individual suits in terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members."[24]  For example, classes with a "fluid nature" that "makes identifying class members difficult, if not impossible"  favor finding sufficient numerosity.[25]

Here, Plaintiffs have sufficiently established numerosity.  Plaintiffs wish to include every person listed on the Gang List—5,245 persons total with 1,728 active gang members, 3,296 inactive gang members, and 221 gang associates.  Individual suits are not practically viable because there are thousands of class members.  Furthermore, the class members are presumably located around the Wichita area, and thus geographically condensed.  Finally, Plaintiffs request

---

[20] Fed. R. Civ. Proc. 23(a)(1); *see also Stambaugh v. Kansas Dept. of Corrections*, 151 F.R.D. 664, 673 (D. Kan. 1993) (" 'Impracticable does not mean impossible.' ") (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

[21] *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 504 (D. Kan. 2015) (further citations and quotations omitted).

[22] *Ogden v. Figgins*, 315 F.R.D. 670, 673 (D. Kan. 2016) (further citation and quotations omitted).

[23] *See Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995).

[24] *Id*.

[25] *See Ogden*, 315 F.R.D. at 673–74 (holding that "ever-changing nature of [class] populations" favored a finding of numerosity).

injunctive relief instead of damages, meaning there would be no individualized findings as to the injuries suffered by each class member.  Moreover, Defendant neglects to argue that Plaintiffs fail to establish numerosity in this case.  Therefore, the Court finds that Plaintiffs have adequately shown that the class size is sufficiently numerous under Rule 23(a)(1).

### 2.      Commonality

To establish commonality of issues, plaintiffs must show that a "common contention [is] of such a nature that it is capable of classwide resolution."[26]  The inquiry here  is not "whether common questions predominate, but in order to determine (as Rule 23(a)(2) requires) whether there is even a single common question."[27]  As such, the emphasis of Rule 23's commonality requirements is not the existence of "common *questions*" but rather whether those common questions would result in "common *answers* apt to drive the resolution of the litigation."[28]  What matters is whether "determination of [the common question's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[29]

Defendant argues that Plaintiffs fail to show that even a single common question capable of generating a common answer is available to Plaintiffs here.[30]  Plaintiffs identify six common questions that they claim are capable of resolution regarding all proposed class members:

(1) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 are unconstitutionally vague because they "fail[] to provide people of ordinary intelligence a reasonable

---

[26] *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (further citation and quotations omitted).

[27] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (emphases and alterations omitted).

[28] *Naylor Farms,* 923 F.3d at 789. (further citation and quotations omitted) (emphasis in original).

[29] *Id.* (further citation and quotations omitted).

[30] Defendant primarily takes issue with the merits of these questions, arguing that Plaintiffs cannot prevail on them.  However, the Court will not conduct an in-depth inquiry into the merits of Plaintiffs' claims at the class certification stage.  Rather, the Court will focus its inquiry on whether even a single question presented by Plaintiff would result in a common answer for all class members.

opportunity to understand what conduct [they] prohibit[]" or they "authorize[] or even encourage[] arbitrary and discriminatory enforcement."

(2) Whether people on the Gang List "possess a protected interest such that the due process protections were applicable."

(3) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 fail to provide procedural protections required by Due Process and the Constitution before adding someone to the Gang List.

(4) Whether being on the Gang List deprives people of their liberty interest in their "good name, reputation, honor, or integrity."

(5) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 deprive people on the Gang List of their liberty interest in freedom pending trial based on the increased bail requirement.

(6) Whether Kan. Stat. Ann. § 21-6313 and WPD Policy 527 have a chilling effect on the freedoms of expression and association of people on the Gang List and unconstitutionally prohibit people on the Gang List from freely associating with friends, family, or community members.

At a bare minimum, Plaintiffs' first proposed question necessitates an answer common to every one of Plaintiffs' proposed class members. Indeed, it is difficult to conceive of a more generally applicable question than whether a statute—here, K.S.A. § 21-6313—is unconstitutionally vague. Unconstitutionally vague statutes by their very nature impart the same injury to all persons. Furthermore, whether persons on the Gang List possess a protected interest is a question capable of a common answer which will apply to each of Plaintiffs' proposed class members. The same is true regarding Plaintiffs' question of whether K.S.A. § 21-6313 and WPD Policy 527 fail to provide procedural protections to persons on the Gang List. Finally, if inclusion in the Gang List has a chilling effect on persons' freedom of association, that will be true across the board. If not, that will also be a common answer for every class member.

In contrast, the fourth question requires individualized proof of reputational harm. Similarly, the fifth question is incapable of providing a common answer because not every person

on the Gang List awaits trial or will ever do so.  Still, the existence of individualized questions does not preclude the certification of Plaintiffs' proposed class.  Holding otherwise would ignore explicit precedent stating only one common question is necessary to certify a class under Rule 23. Thus, the Court finds that Plaintiffs sufficiently meet the commonality test under Rule 23(a)(2).

### 3. Typicality

Under Rule 23(a)(3), plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  The test for this requirement looks past differing factual situations "so long as the claims of named plaintiffs and class members are based on the same legal or remedial theory."[31]  Thus, "[a] named plaintiff's interests and claims do not need to be identical to class members' interests and claims to satisfy typicality, but they must not be significantly antagonistic."[32]  While conclusory allegations of typicality are insufficient to meet Rule 23(a)(3)'s requirement, "[d]emonstrating typicality is not an onerous burden."[33]  Indeed, plaintiffs who demonstrate commonality will usually meet the typicality standard as "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."[34]

As above in the commonality analysis, the individual Plaintiffs present claims and interests closely aligned with those of each class member.  The core of each Plaintiffs' case is that inclusion on the Gang List violates their constitutional rights, thus exposing each to the same risk of harm. Therefore, Plaintiffs' claims stem from facts common to all class members (inclusion on the Gang

---

[31] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652. 670 (D. Kan. 2013).

[32] *Florece v. Jose Pepper's Restaurants, LLC*, 2021 WL 5038773, at *4 (D. Kan. 2021) (citing *DG*, 594 F.3d at 1198–99); *see also Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 622 (D. Kan. 2008) ("The typicality requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.").

[33] *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996).

[34] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

List) and request relief applicable to all class members (injunctive action nullifying K.S.A. § 21-6313 and WPD Policy). Plaintiffs' claims are in no way antagonistic to the proposed class members' interests. This is true despite the differing factual circumstances between class members, such as being added to the Gang List based on different criteria, not undergoing criminal prosecution, or not being aware of their inclusion on the Gang List.

Regarding Progeny, which as an entity is not on the Gang List, Defendant makes no attempt to show that Progeny's interests are antagonistic to those of the proposed class members. Accordingly, the Court concludes that Plaintiffs have met their burden of showing that their claims are typical of the class members' claims.

### 4. Adequacy

Rule 23(a)(4) inquires into whether the named plaintiffs "will fairly and adequately protect the interests of the class."[35] Under this analysis, two questions are significant.[36] First, courts must examine whether conflicts of interest exist between the named plaintiffs and the other class members.[37] Second, courts must examine the adequacy of the named plaintiffs and their counsel such that the class members can expect vigorous prosecution of the action.[38] As this Court has previously stated:

> Minor conflicts between class members do not prevent certification. Only a fundamental conflict about the specific issues in controversy will prevent a named plaintiff from representing the interests of the class adequately. A fundamental conflict exists where some class members claim an injury resulting from conduct that benefited other class members.[39]

---

[35] Fed. R. Civ. Proc. 23(a)(4).

[36] *See Tripp*, 310 F.R.D. at 506.

[37] *Id.*

[38] *Id.*

[39] *Id.* (citations omitted).

Here, neither party has identified any conflicts of interest that might exist between the named Plaintiffs and proposed class members. Indeed, Defendant fails to substantively address Rule 23(a)(4) at all in their Response. It seems clear that Plaintiffs' interests closely align with the interests of the proposed class members such that Plaintiffs are motived to litigate this case. Thus, Plaintiffs have met the first part of the adequacy test.

Similarly, the parties do not contest the named Plaintiffs' investment and vigorous prosecution of this case. For over two years, Plaintiffs have consistently submitted and responded to motions and participated in discovery. Nothing in Plaintiffs' behavior during the course of this case gives the Court any reason to doubt the sincerity and motivation of Plaintiffs to vigorously prosecute this case. Therefore, the Court finds that Plaintiffs meet Rule 23(a)(4)'s adequacy standard.

**B.   Plaintiffs sufficiently fulfill Rule 23(b)(2)'s requirements.**

Having concluded that Plaintiffs meet Rule 23(a)'s requirements, the Court must determine whether Plaintiffs can also show that their proposed class qualify under one of Rule 23(b)'s categories. Plaintiffs seek class certification under Rule 23(b)(2), which states "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Tenth Circuit has characterized Rule 23(b)(2)'s standard as requiring "cohesiveness," which has two distinct elements:

> First, plaintiffs must illustrate the class is sufficiently cohesive that any classwide injunctive relief satisfies Rule 65(d)'s requirement that every injunction state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required. Second, cohesiveness also requires that class members' injuries are

sufficiently similar that they can be remedied in a single injunction without differentiating between class members.[40]

"Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek such that the district court can at least conceive of an injunction that would satisfy Rule 65(d)'s requirements, as well as the requirements of Rule 23(b)(2)."[41]   In other words, Rule 23(b)(2) "require[s] that a class must be amenable to uniform group remedies."[42]   The Tenth Circuit has further stated

> [a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant.  So, if redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members, the suit could become unmanageable and little value would be gained in proceeding as a class action . . . .  In short, under Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in a[] single injunction that need not differentiate between class members.[43]

Here, Plaintiffs allege that Defendant acted or refused to act by applying the Gang List criteria under K.S.A. § 21-6313 and WPD Policy 527 to add persons to the Gang List without procedural protections for those persons.  These grounds apply to the entire class of persons added to the Gang List as a gang member or gang associates.  Furthermore, Plaintiffs' requested relief is, at its core, simple—to enjoin Defendant from enforcing § 21-6313 and WPD Policy 527 in their

---

[40] *DG*, 594 F.3d at 1199–1200 (further citation and quotations omitted).

[41] *Id.* at 1200 (further citation, quotations, and brackets omitted).

[42] *Shook v. Bd. of Cnty. Comm's of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (citation and quotations omitted).

[43] *Id.*

current forms.  This requested injunction is appropriate to the class as a whole because all class members are persons whose names appear on the Gang List.[44]

Turning to first cohesiveness element, Plaintiffs' requested injunction is specific and describes in reasonable detail what Plaintiffs seek—no more use of the Gang List or enforcement of § 21-6313.  As to cohesiveness's second element, the alleged injuries of all the class members—i.e., injury to their freedom of association, freedom of expression, due process, reputation, etc.—are sufficiently similar such that enjoining Defendant from using the Gang List would address them all.  Returning to Rule 23(b)(2)'s "bottom line," enjoining Defendant from utilizing the Gang List is a conceivable injunction that satisfies Rule 65(a)'s specificity requirements and Rule 23(b)(2)'s cohesiveness elements.  Accordingly, the Court concludes that Plaintiffs meet their burden to show that class certification is warranted here.

Plaintiffs demonstrate that their proposed class meets the requirements under both Rule 23(a) and Rule 23(b)(2).  Thus, the Court grants Plaintiffs' Motion for Class Certification.

## C. The Court appoints Plaintiffs' proposed counsel as class counsel.

Under Rule 23(g)(1), the Court must appoint class counsel whenever it certifies a class.  In so doing, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex

---

[44] Although Plaintiffs list various proposed reforms in their Motion, those proposals do not appear as requested relief in their Complaint.  Furthermore, these reforms would appear to be (1) requests for affirmative injunctive relief, which bears a much higher standard and (2) at odds with the simple request in Plaintiffs' Complaint that the Court enjoin Defendant from maintaining the Gang List and declaring K.S.A. 21-6313 and WPD Policy 51 unconstitutional.  Therefore, the Court will only consider Plaintiffs' proposed injunction as stated in their Complaint in ruling on this Motion.

litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."[45]

Plaintiffs request that the Court appoint the following attorneys as class counsel: Jordan Carmichael Baehr, Mitchell F. Engel, Paul Monroe Vogel, and Thomas J. Sullivan of Shook, Hardy & Bacon LLP; Karen Ellen Leve, Kunyu L. Ching, and Sharon Brett of the ACLU Foundation of Kansas; and Teresa A. Woody of Kansas Appleseed Center for Law and Justice, Inc.  Defendant offers no objection to any of the proposed class counsel.  Still, the Court must analyze the four factors under Rule 23(g) instead of simply relying on the parties' agreement in this matter.

Relevant to the first and fourth factors, Plaintiffs' counsel has already invested significant resources in pursuing this litigation and identifying or investigating potential claims over the past three years.  Likewise, the second factor favors appointing Plaintiffs' counsel because the ACLU, Kansas Appleseed, and Shook, Hardy, & Bacon all are well-known entities with significant experience litigating civil rights claims as well as class actions.  Third, there is little doubt based on counsel's wide experience and intelligent briefing in this case that they possess knowledge of the applicable law for Plaintiffs' claims.  Therefore, each of the factors favor appointing Plaintiffs' counsel as class counsel in this case.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 175) is **GRANTED**.

---

[45] Fed. R. Civ. Proc. 23(g)(1)(A).

**IT IS FURTHER ORDERED** that Jordan Carmichael Baehr, Mitchell F. Engel, Paul Monroe Vogel, Thomas J. Sullivan, Karen Ellen Leve, Kunyu L. Ching, Sharon Brett, and Teresa A. Woody are appointed as class counsel in this case.

**IT IS SO ORDERED.**

Dated this 10th day of October, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE