**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

PROGENY, a program of Destination Innovations, Inc.,
CHRISTOPHER COOPER, ELBERT COSTELLO,
MARTEL COSTELLO, and JEREMY LEVY, JR.,
on behalf of themselves and others similarly situated,

                              Plaintiffs,

         vs.                                        Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS,

                              Defendant.

---

**Reply in Support of Motion for Summary**

Defendant submits this reply in support of its motion for summary judgment, Doc. 205.

**I. Statement of Facts**

For the following enumerated paragraphs, Plaintiffs purport to controvert the facts stated in Defendant's Statements of Fact (DSOF) but (1) do not dispute the fact stated but, instead, argue about what Plaintiffs think the fact may mean, (2) fail to cite to any record or evidence that disputes the stated fact as required by D.Kan. Rule 56.1(b)(1) and (c) and Fed.R.Civ.P. 56(c)(1)(A), and (3) plaintiffs' response and purported controversy does not dispute the stated fact.

Plaintiffs' response to DSOF ¶¶ 2, 5, 7, 20, 22, 24, 26, 29, 31, 33, 40, 81, 87, 91, 92, 99, 100, 110, 112, 121, 123, 131, 137, 139, 142, 145, 151, 163, 167, 183, 185, and 187. The additional argument and statements do not dispute the fact stated and do not raise a material disputed fact. Fed.R.Civ.P. 56(c)(1)(B).

For the following enumerated paragraphs, Plaintiffs purport to controvert the facts stated in Defendant's Statements of Fact but (1) the DSOF accurately sets forth the substance of the cited record and (2) plaintiffs' response and purported controversy does not dispute the stated fact. Fed.R.Civ.P. 56(c)(1)(B).

Plaintiffs' response to DSOF ¶¶ 3, 10, 11, 12, 13, 15, 16, 34, 35, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 64, 65, 74, 78, 80, 82, 83, 85, 89, 93, 94, 95, 101, 108, 111, 115, 118, 120, 122, 124, 125, 126, 127, 128, 129, 130, 135, 138, 148, 149, 150, 156, 160, 162, 164, 166, 172, 175 (the correct citation is Doc. 205-36 rather than Exhibit 36), 177, 178, 179, 180, 181, 182, 184, 186, 190, and 191.

DOSF ¶ 19. Plaintiffs purport to controvert DSOF ¶ 19 in part, but cite to testimony relating to the WPD Gang Intelligence Officer's job to *add* the designation flag in EJustice/NICHE and the Master Gang List. The cited testimony does not address the *removal* of the flag. Historic data about gang membership designation is not stored in EJustice—it is only in the WPD's gang database. See DSOF 16 (uncontroverted). The only place inactive gang members can still be identified is in the Gang Database. Access to the Gang Database is available to Gang Intelligence Officers only. Beard addresses the removal at Doc. 205-8, Beard dep., 77:1-8, explaining the flag designating gang membership is *removed* from EJustice/NICHE. See also Doc. 205-16, Bartel dep., 122:2-16, describing the removal process that includes removal from the records management system (EJustice/NICHE) and moved to inactive on the Gang Database, accessible only to Gang Intelligence Officers. See also Doc. 205-6, Decl. of Jess Bernard, ¶ 10. See also PR-DSOF 24, admitting queries through SPIDER do not result in a "hit" for inactive gang members because they are no longer flagged in EJustice/NICHE. Further, the specialized training for Gang Intelligence Officers is to accurately

enter and edit the Gang Database and EJustice/NICHE. Hemmert's testimony describes the detail involved to be able to have edit access. While Plaintiffs purport to controvert this fact, the response does not dispute the stated fact and does not cite to any materials in the record that dispute the facts stated.

DSOF ¶ 27. Plaintiffs purport to controvert DSOF ¶ 27 but fail to address the stated fact or the cited record. The response instead refers to inadmissible evidence contrary to Fed.R.Civ.P. 56(c)(1)(A), referring to footnote 12 linking to news articles that (1) are not in the record and (2) are inadmissible. Acknowledging or confirming the WPD has designated a given individual is not publication of the Master Gang List. Doc. 205-5, Policy 527 makes clear information from the Master Gang List is shared for law enforcement purposes only, and documents are only shared following a MOU agreement. Doc. 205-6, Decl. of Jess Bernard at ¶¶ 11-14. See also Doc. 218, Response to PSOF ¶¶ 21-32. While Plaintiffs purport to controvert DSOF ¶ 27, the response does not dispute the stated facts and does not cite to any materials in the record that dispute the facts stated.

DSOF ¶ 28. Plaintiffs purport to controvert DSOF ¶ 28 and refer to their response to DSOF ¶ 27. The fact remains there is no admissible evidence to support the allegation that WPD routinely, or has ever been responsible for, publishing the Gang Database or the Master Gang List, absent the single unauthorized disclosure by Nicholson--which resulted in criminal charges. Doc. 218, Defendant's Response to PSOF ¶¶ 28-31. Their response to this fact provides no evidence to the contrary. On summary judgment, the movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol-Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The defendant has carried its initial burden, plaintiffs cannot rest on allegations

and must instead "set forth specific facts" that would be admissible evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id*. (citing Fed.R.Civ.P. 56(e)).

DSOF ¶ 30. Plaintiffs purport to controvert DSOF ¶ 30 and argue that the annual audit must necessarily involve printing the Gang List. Reference to historic practice of printing lists—a practice abandoned in favor of the current practice of the limited access database—is not evidence disputing the fact the Master Gang List is not printed or disseminated. The annual audit process is not incompatible with the fact that the Master Gang List is not printed. Gang Intelligence Officers review every name and every case, every year. DSOF ¶ 49. The annual review does not require a full printout of the Master Gang List, nor do any of the citations made by Plaintiffs support an inference of a printed copy. See Doc. 218, Response to PSOF 62, explaining "The audit SOP directs that 'Each person in the Gang Database will be researched to see if they continue to meet the criteria of gang member, associate, incarcerated, or deceased. There is a checklist for the audit process.

DSOF ¶ 32. Plaintiffs purport to controvert DSOF ¶ 32, citing PSOF ¶ 33. PSOF ¶ 33is factually incorrect and unsupported by the cited record. See Doc. 218, Response to PSOF ¶ 33, (demonstrating the citations misrepresent the record). The record cited by Defendant supports the stated facts. *See also* DSOF ¶¶ 37, 39. Further, while Plaintiffs controvert DSOF ¶ 32, the response does not dispute any of the stated facts and does not cite to any materials in the record that dispute the facts stated.

DSOF ¶ 67. The correct cite is Doc. 205-20, C. Cooper dep. 19:1- 20:16.

DSOF ¶ 113. The correct citation for DSOF ¶ 113 is Doc. 205-24. Plaintiffs' response, citing stipulations that are unrelated to this statement of fact, adds additional, but non-responsive, information. While Plaintiffs controvert this statement of fact, the response does not dispute any

of the stated facts and does not cite to any materials in the record that dispute the facts stated.

DSOF ¶ 154. The correct the citation is Doc. 205-36, Atkins dep., 10:3-4. Plaintiffs' response does not dispute ¶ 154.

DSOF ¶ 188. The correct citation is Doc. 207-37 (rather than Exhibit 37), an interrogatory requesting details of alleged harassment of Progeny members and youth leaders (Interrogatory #9). Doc. 205-37. The answers provided to Interrogatory #9 speak for themselves. See Doc. 205-37. The alleged "long history of harassment" remains a mere allegation that plaintiffs fail to prove. The cited testimony plaintiffs use to support this contention does not articulate any event that "Progeny members and youth leaders have been harassed by WPD officers on numerous occasions[.]" Progeny's witness could not articulate when she witnessed any "harassment" or what conduct may have constituted harassment. Doc. 205-36, Atkins dep., 97:12-103:10.

DSOF ¶ 189. Plaintiffs' response, Doc. 207-44, fails to include their response to Interrogatory #16 as cited. The fact remains that no details of A.M./N.M.'s alleged harassment were produced. Exhibit 1, Pltf's Answers to Rog 9, 16.

## Plaintiffs' Statement of Additional Facts (PSOF)

Defendant addresses only those of Plaintiffs' Statement of Facts (PSOF) to which defendant has an objection.

2. Plaintiffs incorporate all statements of fact cited in their Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Doc. 207).

Defendant incorporates its responses and objections as set forth in **Doc. 218.**

3. Each Plaintiff has experienced harm as the result of being designated in the Gang Database. Each Plaintiff fears or anticipates future harm as the result of designation in the Gang Database, and has altered their behavior accordingly out of a desire to avoid continued renewal in the Gang Database, violating any conditions of release, and further negative interactions with the WPD.

Defendant incorporates its responses and objections as set forth in Doc. 218. ¶¶ 110-168.

## II. Argument and Authorities

### A.    "Admission of critical facts."

Plaintiffs stack inference upon inference all premised on the factually and legally inaccurate premise that being designated a member or associate on the Master Gang List (or, historically having been designated and, thus, in the Gang Database), in of itself, alters an individual's legal status as a matter of state law.

The tactic of stacking inferences, one on top of another, is insufficient to defeat summary judgment. *Crumpley v. Associated Wholesale Grocers*, No. 16-2298-DDC, 2018 WL 1933743, at *32 (D. Kan. Apr. 24, 2018). While the summary judgment record is construed in the light most favorable to the non-moving party, there must be evidence from which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). Plaintiffs' unsubstantiated allegations carry no probative weight on summary judgment. *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir.1992). Rather, Plaintiffs must present evidence, based on more than mere speculation, conjecture, or surmise. *See Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.1999); *Allen v. Muskogee*, 119 F.3d 837, 846 (10th Cir.1997).

### B.    Neither WPD Policy 527 nor K.S.A. 21-6313 are void for vagueness, facially or as applied.

Plaintiffs equate designation on the gang list or in the database with prohibited conduct. The premise for Plaintiffs' claim is based on being "included in the Gang Database" as the "harm" to which Plaintiffs refer for their claims. Neither Policy 527 nor K.S.A. 21-6313 prohibit any conduct.

1.    **WPD Policy 527 and K.S.A. 21-6313 are not facially vague. Neither the policy nor K.S.A. 21-6313 prohibit any conduct. Persons of ordinary intelligence can understand what conduct is prohibited by statutes employing the definition of criminal street gang.**

Policy 527 and K.S.A. 21-6313 do not define a crime and do not prohibit or restrict any conduct. Thus, there is no "enforcement" of Policy 527 or K.S.A. 21-6313, whether arbitrary, discriminatory or otherwise.

K.S.A. 21-6314 defines the crime of "recruiting criminal street gang membership" where membership requires commission of a crime or submission to a sexual or physical assault. K.S.A. 21-6315 defines the crime of "criminal street gang intimidation" as the threatening injury to person or property with the intent of deterring withdrawal from a criminal street gang or retaliating for withdrawal. Persons of ordinary intelligence can understand the prohibition of recruiting someone to join a group whose purpose is the commission of person crimes and/or felony drug crimes <u>and</u> where membership to that group requires that the recruit commit a crime or submit to a sexual or physical assault. Likewise, persons of ordinary intelligence can understand the prohibition of threatening personal injury or property damage to deter withdrawal from a criminal street gang or retaliating for withdrawal from a gang.

There is no evidence that *any* person, let alone any plaintiff or class member, has been charged with "recruiting criminal street gang membership" under K.S.A. 21-6314 or "criminal street gang intimidation" under K.S.A. 21-6315.

2.    **WPD Policy 527 and K.S.A. 21-6313 are not vague as applied.**

Only Gang intelligence officers decide who goes onto the Gang Database and the Gang List. DSOF ¶¶ 35-36. Everyday officers can and do nominate individuals for inclusion. DSOF ¶ 34. These nominations are based on their individual observations that an individual 'might' meet criteria for inclusion. *Id*. That nomination then is sent to the gang intelligence officers that

research the individual nomination and apply the criteria of K.S.A. 21-6313. *Id*. Plaintiffs'
response is misleading when suggesting any WPD officer can simply place someone on the Gang
Database.

Gang Intelligence Officers apply criteria to individuals, the officers also discuss how the
criteria is met by an individual and sometimes choose not to list someone. DSOF ¶ 37-47.
However, their use of restraint in adding someone to the Gang Databases is just the opposite of
arbitrary and discriminatory conduct. *Id*. There is no evidence in the record of any willy-nilly
enforcement or discriminatory intent.

### 3.    K.S.A. 21-6313 and Policy 527 do not prohibit or limit any conduct.

Plaintiffs' cite their own brief as authority for the proposition that Defendants do "not
rebut or deny that K.S.A. 21-6313's gang criteria encompasses a wide range of constitutionally
protected conduct …." Doc 215, at 59 n.147-148.   Conversely, Defendant has consistently
denied K.S.A. 21-6313 prohibits any constitutional protected conduct. Defendant's Opening
Brief, Doc. 305, at 31-33. Plaintiffs offer no admissible evidence and rely on Plaintiffs' self-
serving statements and declarations. On a motion for summary judgment Plaintiffs must provide
admissible evidence. While Rule 56 permits the use of affidavits or declarations on summary
judgment, they "must be made on personal knowledge, set out facts that would be admissible in
evidence, and show that the affiant or declarant is competent to testify on the matters stated."
Fed.R.Civ.P. 56(c)(4). Foundation objections, under Rule 56(c)(2) are appropriate when "the
material cited to support or dispute a fact cannot be presented in a form that would be admissible
in evidence." Fed.R.Civ.P. 56(c)(2). Under Fed.R.Evid. 602, a witness "may testify to a matter
only if evidence is introduced sufficient to support a finding that [he] has personal knowledge of
the matter." *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1190 (D. Kan. 2022).

Simply put, Plaintiffs roam the unfenced field of speculation and ask the court to accept

their speculation, conjecture and surmise as fact. *See In re Estate of Wernet*, 226 Kan. 97, 106, 596 P.2d 137 (1979) (courts are not permitted to roam the unfenced fields of speculation and conjecture). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings[; they] must be based on more than mere speculation, conjecture , or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir.2004) (citation omitted). Information presented in the nonmovant's affidavit must be "based on personal knowledge and [must set] forth facts that would be admissible in evidence. We do not consider conclusory and self-serving affidavits." *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) (citation omitted) (quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)) (internal quotation marks omitted).

Surveillance and gathering criminal intelligence are legitimate law enforcement activities. Neither alter a person's legal rights. *Alston v. City of Madison*, 853 F.3d 901, 909-10 (7th Cir. 2017); *Al-Turki v. Tomsic*, 926 F.3d 610, 618-19 (10th Cir. 2019). Underlying the criteria to be a criminal street gang member or associate is the purpose of associating with a group whose purpose is criminal activity. K.S.A. 21-6313(a).

Policy 527 and K.S.A. 21-6313 do not prohibit any conduct, do not proscribe any conduct or impose any penalty, and do not impinge on First Amendment freedoms. A criminal street gang, by definition, is an organization, association or group with a primary activity of committing person crimes or felony drug crimes. K.S.A. 21-6313, K.S.A. 21-6314, K.S.A. 21-6315, and K.S.A. 21-6316 do not reach a substantial amount of constitutionally protected conduct, are not impermissibly vague in all of their applications, and do not authorize or encourage arbitrary and discriminatory enforcement.

Plaintiffs fear of being listed or continued on the gang list, presumed to be true, is not a

cognizable injury. The as-applied vagueness challenge must be tethered to the factual context in which the ordinance was applied. *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009) ("Because this is an as-applied challenge, we consider this statute in light of the charged conduct."). The "charged" conduct—being designated a gang member or associate—is not an offense, does not involve an arrest, a charge or a conviction. Rather, the challenged conduct is identification as a gang member or associate and inclusion in the database.

**C.    Plaintiffs' procedural due process claim fails. The WPD's gang list and gang database**

    **1.    No Plaintiff acquires any new or altered "legal status" from being identified as a gang member or associate.**

    **2.    Disclosure of documentation of gang membership or association in an arrest affidavit does not deprive a person of a liberty interest without due process. The process afforded by the criminal justice system is the requisite due process.**

Section 1983 requires the deprivation of a federal right. Plaintiffs rely on the incorrect arguments that their alleged reputational harm is enough to satisfy the stigma plus due process standard. Plaintiffs make no attempt to distinguish, or even discuss, the controlling Tenth Circuit case—*Al-Turki  v. Tomsic*, 926 F.3d 610. Plaintiffs cite *Gwinn v. Awmiller,* 354 F.3d 1211 (10th Cir. 2004), but only to the extent this Court cited *Gwinn* when ruling on the motion to dismiss in *Doc. 28*. *See* Doc. 215, at 62 n.160, 64 n.170.

First, reputational harm, no matter how egregious, is insufficient to implicate due process protections sufficient to support a § 1983 cause of action. *Gwinn*, 354 F.3d at 1216, *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981).

> [A] plaintiff asserting that the government has violated the Due Process Clause by impugning his or her "good name, reputation, honor, or integrity," *Jensen*, 998 F.2d at 1558, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly

altered [his or] her status as a matter of state law." *Paul*, 424 U.S. at 710–11. This is sometimes described as the "stigma plus" standard.

*Gwinn*, 354 F.3d at 1216. This Court made clear it was crediting Plaintiffs' allegations both that "that the Gang List is made sufficiently public to injure their reputations," *Doc. 28*, at 25, and that the "the Gang List designation" altered Plaintiffs' legal status. *Id*., at 27. On summary judgment, however, Plaintiffs' unsubstantiated allegations carry no probative weight. *Phillips v. Calhoun*, 956 F.2d at 951 n.3. Plaintiffs' speculation, conjecture, or surmise are not evidence and cannot defeat a properly supported motion for summary judgment. *Rice v. United States*, 166 F.3d at 1092; *Allen v. Muskogee*, 119 F.3d at 846.

> **3.     Gang designation does not alter Plaintiff's legal status as a matter of state law. Gang designations do not limit Plaintiffs' expression, association, free movement and employment.**

Plaintiffs only speculate that their harms are caused by the WPD Gang List and offer no record evidence other than their speculation and assumptions. The record shows as follows:

- The Gang List is not published, the database itself not shared, and memoranda of understanding restricts the use of information from the list or database to law enforcement purposes only. DSOF ¶ 27

- Notwithstanding the allegations that the list is made public or published by WPD, there is no evidence of the Gang List or Database being made public for over two decades. DSOF ¶ 28.

- The one known instance of unauthorized dissemination of information from the list or database resulted in criminal charges and conviction of the offender. DSOF ¶ 29.

- The WPD limits dissemination of information from the list or database for law enforcement purposes only and has agreements in place for receiving agencies to maintain confidentiality. DSOF ¶ 31.

**Plaintiff Cooper** contends he lost an athletic scholarship, was given a $50,000 bond (without acknowledging he was charged with first degree murder), and that his educational and employment opportunities have been hampered by designation on the Gang List. The record reflects, however:

- Cooper was injured playing his first season of community college football and was never on the college's track team. DSOF ¶¶ 64-65.

- Cooper's bond was set by a judge (not the WPD). DSOF ¶ 68.

- Cooper lost his scholarship because of his felony conviction (not because of his gang designation) DSOF 72.

- Cooper was never offered a scholarship to K-State. DSOF ¶ 74.

- Cooper was unable to be on campus because of his conviction as a violent offender (not because of his gang designation). DSOF ¶ 78.

- Cooper merely speculates his gang designation hampers his employment opportunities because (1) he assumes all employers do background checks and (2) he assumes gang designation is revealed during such background checks. DSOF ¶¶ 79-80. Cooper has, nonetheless, maintained employment since 2014. DSOF ¶ 96.

- Cooper's conditions of probation prevented participation at public events, DSOF ¶ 81, which in turn limited employment opportunities at such. DSOF ¶ 82. Cooper acknowledged his inability to attend certain community events were due to probation conditions, not designation on gang list. DSOF ¶ 85.

- The probation conditions were imposed by a judge and monitored by community corrections (not the WPD). DSOF ¶¶ 83-84.

- Cooper admits his law enforcement encounters following his conviction were with cause/reason and that he consented to a search. DSOF ¶¶ 87-88.

- Cooper has no personal knowledge of being surveilled—rather, others told him police were hiding in bushes. DSOF ¶ 91.

- Cooper assumed he could not associate with family members because of the gang list and probation condition preventing association with felons and gang members. DSOF ¶ 92-93.

- Cooper has no documentation of any of the "harms" he alleges. DSOF ¶ 94.

- Cooper has maintained employment since 2014. DSOF ¶ 96.

**Plaintiff Levy** contends he was denied employment and convicted of first-degree murder because of his designation on the gang list. The record reflects, however:

- Levy merely assumes he didn't get a job because of the gang list, but admits he does not know the reason he didn't get the job. DSOF ¶ 99.

- Levy was charged and convicted of first-degree murder and admits gang evidence was admitted at his trial, that his attorney challenged the admissibility of the evidence, that the objections were overruled, that the admission of that evidence was contested and affirmed on appeal as relevant evidence that was not unduly prejudicial. DSOF ¶¶ 102-107.

- Levy admits his family members are active criminal street gang members and that he spent time with them. DSOF ¶ 107.

- Levy admits his inclusion on the gang list didn't increase sentence and cannot say what his conditions of release may be in the future. DSOF ¶ 109-110.

- Levy has no documentation of any of the "harms" he alleges. DSOF ¶ 111.

**Plaintiff M. Costello** contends he was placed on restrictive conditions of probation, and harassed and surveilled by the police.

- M. Costello. Acknowledges a judge or probation officer imposed conditions of probation (not the WPD), that his probation was revoked for a curfew violation, and the sanctions were not for violations of any gang conditions. DSOF ¶ 116, ¶ 118

- M. Costello cannot give any details—who, when, where, or what—regarding alleged harassment or traffic stops by the WPD, DSOF ¶¶ 124-125, but agrees he engaged in criminal activity at the time. DSOF ¶ 126.

- M. Costello designated himself a Piru. DSOF ¶ 127.

- M. Costello has no documentation of any of the "harms" he alleges. DSOF ¶ 129.

- M. Costello has maintained employment between his convictions and parole violations. DSOF ¶ 132.

Plaintiff **E. Costello** contends he was subjected to more restrictive conditions in jail, and was placed on restrictive conditions of probation, and harassed and surveilled by the police. The record reflects, however:

- E. Costello agrees and understands the court sets bond and probation and enforced by probation officers (not the WPD). DSOF ¶ 136.

- E. Costello agrees there is no evidence that his probation conditions were higher because of his designation on the gang list. DSOF ¶ 137.

- E. Costello can't remember the last time he was stopped by the WPD, but it was at least 3-4 years ago. DSOF ¶ 138.

- The harassment alleged by E. Costello occurred while he was on parole following his release from prison in 2000. DSOF ¶ 139.

- E. Costello testified a probation officer threatened him for wearing red but didn't follow through. DSOF ¶ 144.

- E. Costello has maintained steady employment since 2013. DSOF ¶ 147.

- E. Costello has no documentation of any of the "harms" he alleges. DSOF ¶ 148.

Plaintiff **Progeny** contends attendance at its events suffers due to "harassment" by the WPD and "fear" of attendance risks being placed on the gang list for associating with Progeny members. The record reflects, however:

- Attendance at Progeny events now are the same as attendance prior to 2020 and the onset of the pandemic. DSOF ¶ 129.

- Progeny hosts standing room only events. DSOF ¶ 171.

- Attendance at events varies unpredictably but Progeny continues to host and sponsor dozens of events and post-pandemic attendance has been steady compared to pre-pandemic attendance. DSOF ¶¶ 172-176.

- When Progeny claims to have been "harassed" by "way too much" police presence, it can offer no specifics, cannot identify any affected member, employee, or attendee, and is speaking about a single police officer sitting across the street. DSOF ¶¶ 177-179, 182, 185-188.

- Progeny cannot identify any unlawful arrest of a member or employee nor is there evidence of any Plaintiff or Progeny member being unlawfully arrested. DSOF ¶¶ 183-184.

- Progeny can offer no evidence of any instance of the "harassment" it claims to have occurred violated the Fourth Amendment. DSOF ¶ 191.

### a.    Gang designation does not alter Plaintiffs' rights regarding bail.

A person arrested and subject to K.S.A. 21-6316 is afforded the opportunity to present evidence or argument against any requirements of bail, whether it be their prior criminal history, places they can and cannot go, people the can associate with or the amount and nature of a cash or surety bond. At most, K.S.A. 21-6316 is a rebuttable presumption, as is any bond condition set by the court. See K.S.A 22-2802:

> Release prior to trial; conditions of release; appearance bond, cash bond or personal recognizance.
>
> ….
>
> (8) In determining which conditions of release will reasonably assure appearance and the public safety, the magistrate shall, on the basis of available information, take into account the nature and circumstances of the crime charged; the weight of the evidence against the defendant; whether the defendant is lawfully present in the United States; the defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, record of convictions, record of appearance or failure to appear at court proceedings or of flight to avoid prosecution; the likelihood or propensity of the defendant to commit crimes while on release, including whether the defendant will be likely to threaten, harass or cause injury to the victim of the crime or any witnesses thereto; and whether the defendant is on probation or parole from a previous offense at the time of the alleged commission of the subsequent offense.

K.S.A. 22-2802(8). Moreover, conditions of release are subject to review and modification. K.S.A. 22-2802(10)-(11). A defendant is permitted to contest bail and conditions of release without fear of their statements being used in a later proceeding. K.S.A. 22-2802(12) ("No statement or admission of the defendant made at such a proceeding shall be received as evidence in any subsequent proceeding against the defendant.").

### b.    Gang designation does not alter Plaintiffs' legal status.

Defendant does not impose conditions of release or confinement on criminal defendants, whether pretrial or post-conviction. As more fully discussed in the City's opening brief, conditions of release are imposed by the court, the secretary of corrections, and the prisoner

review board. *See Doc. 205,* pp. 33-37, 57-63. It is conditions of release—both pretrial and post-conviction—that Plaintiffs identify as the harms at issue.

> **2.    Disclosure of documentation of gang membership or association in an arrest affidavit does not deprive a person of a liberty interest without due process. The process afforded by the criminal justice system is the requisite due process.**

As more fully discussed in Defendant's opening brief, Doc. 205, designation in the database or on the list carries no penalty or prohibition. The harms Plaintiffs complain of are the those associated with being arrested and charged with a crime. Once arrested for a person felony, Policy 527 directs that the WPD advise the court and prosecutor of the gang designation in the arrest affidavit. All consequences that flow from an arrest and criminal charges are accompanied by the due process protections afforded by the code of criminal procedure.

The record is devoid of evidence that Plaintiffs suffered an altered legal status by merely being included in the Gang Database. Nor is there evidence the WPD determines gang conditions or that the WPD drafts policies implemented by other agencies. WPD enforces laws of the state of Kansas, investigates crimes and protects the public by carrying out law enforcement activities. Those law enforcement activities include monitoring probationers and parolees for violations of their conditions of release. The restrictions Plaintiffs complain of are imposed by other state actors and those restrictions are triggered only by arrest, charge and conviction—all of which are afforded the requisite due process protections.

**D.    Plaintiff's rights of association and expression are not violated by Policy 529 or K.S.A. 21-6313.**

> **1.    K.S.A. 21-6313 and Policy 527 do not prohibit any conduct and do not impermissibly chill First Amendment freedoms of expression or association (or movement and employment).**

To avoid summary judgment Plaintiffs must present evidence, based on more than mere speculation, conjecture, or surmise. *Rice v. United States*, 166 F.3d at 1092; *Allen v. Muskogee,*

119 F.3d at 846. Plaintiffs offer only speculation, conjecture and surmise that their harms are caused by the WPD Gang List. Plaintiffs point to no competent evidence in the record, relying instead on their speculation and assumptions.

### Expression

Plaintiffs fail to produce any testimony or admissible evidence that they or a member of the class have been prevented from expressing themselves by Policy 527 or K.S.A. 21-6313. Plaintiffs instead rail (at Docs. 207 and 208, pp. 20-22, PSOF ¶¶ 65-75) that the use of clothing, tattoos, colors, sports teams, numbers, phrases, or symbols make it difficult for an individual to know what to avoid. Plaintiffs Cooper, M. Costello, E. Costello and M. Atkins for Plaintiff Progeny make the same blanket statement that "*I am afraid that the WPD will perceive (my) (Progeny members') clothing, tattoos, or social media activity as gang-related and renew my status based on those perceptions*." (emphasis added) Doc 207-34 ¶ 19, Doc 207-33 ¶13, Doc 207-32 ¶17. Doc 207-43 ¶15. A fear that something "could happen" is a hypothetical situation assuming a possible consequence—or nothing more than speculation, conjecture, or surmise.

This subjective, speculative "chill" is insufficient to implicate the First Amendment—as there is no "objectively justified fear of real consequences." *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Plaintiffs do not demonstrate "a credible threat of prosecution or other consequences flowing from the statute's enforcement." *D.L.S.*, 374 F.3d at 975.

### Association and Assembly

Plaintiffs fail to produce any testimony or admissible evidence that they or a member of the class have been prevented from associating with others. The "evidence" detailed by Plaintiffs regarding "associational limitations," Doc 207, pp. 23-24 PSOF ¶¶ 76-84, does not address any

restriction or prohibition on association. Rather, Plaintiffs point out the WPD gathers intelligence and information by observation, surveillance and documentation. Plaintiffs cite two former Wichita Police Department Officers, neither of whom are a plaintiff or class member. Doc 207, p. 24, PSOF ¶¶ 80-81. Former Deputy Wanda Parker-Givens expressed keeping her personal life separate from her work life and that she was "okay" with not seeing a family member that might be listed, nothing to state she was prevented from doing so. *See* Doc 218, Response to PSOF ¶ 80. Former Captain Nicholson testified he felt community members might be afraid to ride with their own family members for fear of possibly having to deal with the police department, *i.e.*, inadmissible speculation. Doc 218 Response to PSOF ¶ 81.

Individual plaintiffs Cooper, M. Costello and E. Costello again make similar claims of fears of spending time with family or friends because it could renew their status on the gang list. Doc 207-33 ¶14, Doc 207-32 ¶17, Doc 207-34 ¶19. Again, these "could happen," speculative scenarios are not evidence, nor do they "substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. at 13–14.

Plaintiffs claim Defendant waived argument on their "directly prohibits" claim and argues they are entitled to judgment or trial on that issue. Doc 215, p. n.192. Defendant has consistently argued that K.S.A. 21-6313 and Policy 527 do not prohibit any conduct. Doc. 205, pp. 3 (¶ 10), 4 (¶ 15), 26-28, 31-33, 38-39, 64-67; Doc. 196, Pretrial Order, p. 42 (statute "does not prohibit, proscribe, or penalize any conduct"), p. 43 ("21-6313 and WPD Policy 527 contain no prohibition, sanction, fine or penalty. Section 21-6313 and WPD Policy 527 do not prohibit any conduct.").

Defendants addressed above, at pp. 14-15, the fact that Progeny has not been prevented from assembly or hosting meetings and events.

Plaintiffs claim that K.S.A. 21-6313 et seq. and Policy 527 directly prohibit expressive and associative conduct. Doc 207, at 67-78. Plaintiff do not, however, present any evidence and present only scant argument of any direct prohibition of conduct for fear that they could be listed on the gang list. Nothing in the statute or WPD policy directly prevent plaintiffs from any protected conduct.

### Free Movement

For restrictions to freedom of movement, Plaintiffs point to vague and inadmissible recitations of pretextual stops and perceived harassment by surveillance of the Plaintiffs. There is no evidence any of the non-specific stops or surveillance was unlawful or without reasonable suspicion on part of the law enforcement. See Doc 207 61-64, PSOF ¶¶ 99-100, 122, 133-136, 140-141, 147-149. Compare Doc. 218, Response to PSOF ¶¶ 99-100, 122, 133-136, 140-141, 147-149. Plaintiffs further complain gang conditions expressly limit their movements. See Doc. 207, PSOF ¶¶ 121, 123, 136-137, 149, 155, but again compare Doc. 218, Response to PSOF ¶¶ 121, 123, 136-137, 149, 155. Plaintiffs admit that conditions of pretrial release, probation and parole that restrict their movement are imposed by by judges, probation, and parole officers not by the WPD. Plaintiffs offer E. Costello's inadmissible hearsay that a skating rink canceled an event after WPD officers told the proprietors gang members would be present. Doc 207, 62, Doc. 218 Response to PSOF ¶157. Plaintiff Cooper speculates about employment and sales jobs he didn't get, Doc 207 61, Doc 218 Response to PSOF 123-124, but the limitations on his employment were due to his probation conditions. Doc 215 Response to DSOF ¶¶ 81-85.

### Employment

Plaintiff Cooper believes all employers run background checks as part of the application process and he assumed an employer can see that he was listed on a gang database on the background check. This, in turn results in his speculation and assumption that if he applied for a

job and didn't get a call back, it was because of the background check. Doc 215, Response to DSOF 79. This speculation, conjecture or surmise is improper on summary judgment. Cooper confirmed that being on the gang list did not deny him a job, Doc 215 Response to DSOF 80, and that limitations on his employment were due to his probation conditions. Doc 215 Response to DSOF 81-82.

Jeremy Levy did not know why he did not get a job at 'Lids' but assumed it was because of the gang file. Doc 215 Response to DSOF 99. Levy testified that after his conviction as a juvenile, he was told he could not get a job working for a construction company, but he cannot remember the name of the company, anyone he spoke to or if the employer did background checks. Levy's testimony is not based on personal knowledge and is inadmissible.

It is uncontroverted that Martel Costello has been employed in between his convictions and parole violations since October 2017. Doc 215 Response to DSOF 132. It is also uncontroverted that Elbert Costello has been employed by the same employer for seven years and has been employed steadily since 2013. Doc 215 Response to DSOF 147.

**E.    Plaintiffs lack Article III standing. The Court lacks subject matter jurisdiction.**

Article III standing requires the plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs' claims lack all three. The WPD's conduct—implementation of Policy 527 through the Gang Database and designation of persons as gang members or associates—is not an injury. The "harms" or injuries Plaintiffs identify—being subject to bail and conditions of release and conditions of confinement—exist without regard to the database or gang list. Lastly, plaintiffs' complaints about being subject to bail and conditions of release and conditions of confinement are not redressed by changing or eliminating the database or list.

## III. Conclusion

Defendants are entitled to summary judgment on all Plaintiff's claims.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/David R. Cooper**
_____

| David R. Cooper | #16690 |
| Charles E. Branson | #17376 |

**Attorneys for Defendant**

Jennifer L. Magaña, #15519
City Attorney
Sharon L. Dickgrafe, #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, Kansas 67202
P: (316) 268-4681 | F: (316) 268-4335
sdickgrafe@wichita.gov
**Attorneys for City of Wichita**

## Certificate of Service

On November 3, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

**s/David R. Cooper**
_____