## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination
Innovations, Inc., CHRISTOPHER COOPER,
ELBERT COSTELLO, MARTEL
COSTELLO, and JEREMY LEVY, JR., on
behalf of themselves and others similarly
situated,

|  |  |  |
|---|---|---|
| | *Plaintiff(s)*, | Case No. 6:21-cv-01100-EFM-ADM |

v.

CITY OF WICHITA, KANSAS,

*Defendant*.

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant's opposition to Plaintiffs' motion for summary judgment (Doc. 207) offers primarily factual responses that do not actually controvert—and indeed, frequently *support*—Plaintiffs' statements of undisputed facts, together with eleven pages of argument almost entirely devoid of citation to the record and the law. Most of Defendant's legal arguments simply incorporate by reference arguments from its own ineffectual motion for summary judgment (Doc. 205), to which Plaintiffs have already responded (Doc. 215). Defendant's only substantive legal argument in its response concerns Plaintiffs' due process claim—yet Defendant concedes that it provides no process to Plaintiffs or any class member. Even when viewed in the light most favorable to Defendant, these immaterial factual disputes and unsound legal arguments do not provide a sufficient basis for denying summary judgment to Plaintiffs.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S ADDITIONAL STATEMENT OF UNCONTROVERTED FACTS**

192.    Plaintiffs' expert witness, Anna Muniz, provided no evidence or testimony to support her statement that the policies of the Los Angeles Police Department are similar to those of the WPD. Muniz dep., *seriatim*.

**RESPONSE:** Controverted. Dr. Muñiz testified about the similarity between LAPD and WPD policies and practices.[1] Dr. Muñiz's expert report, introduced in her deposition, described LAPD policies and practices and compared them directly to the WPD's policies and practices, citing to a robust body of publications, government documents, and academic research.[2] That Defendant elected not to probe this analysis during deposition does not negate the fact that the witness can testify about this at trial. To the extent this statement seeks to suggest that Dr. Muñiz's opinion lacks sufficient basis or is not the product of reliable principles or methods, such arguments are more properly raised in a *Daubert* motion, not a new statement of purportedly uncontroverted fact.

193.    Muniz did not review entries from the WPD's gang database. Exhibit 2, Muniz dep., 26:11-27:24; 28:17-18.

**RESPONSE:** Uncontroverted, but immaterial and therefore improperly included in Defendant's statement of uncontroverted material facts, per Summary Judgment Guideline No. 3, which instructs parties to include only "facts that could affect the outcome under the governing law." To the extent this statement seeks to suggest that Dr. Muñiz's opinion lacks sufficient basis or is not the product of reliable principles or methods, such arguments are more properly raised in a *Daubert* motion, not a new statement of purportedly uncontroverted fact.

194.    Muniz did not take into consideration other events that affected CalGang database problems—such as officer misconduct—when forming her opinions. *Id.* at 42:24-43:11.

---

[1] Doc. 207-13, Muñiz Dep. 25:2–26:1, 42:2–45:25; Ex. 90, Muñiz Dep. 29:2–30:13, 32:5-15, 56:20–57:16.

[2] Ex. 91, Expert Report of Ana Muñiz, at 7, 9, 10, 11 (discussing LAPD officers' consideration of particular styles of dress, colors, and tattoos; failure to notify individuals of designation; CalGang criteria and practices nearly identical to the WPD's criteria and practices); Doc. 218-2, Muñiz Dep. at 55:10-18.

**RESPONSE:** Uncontroverted but immaterial in contravention of Summary Judgment Guideline No. 3. To the extent this statement seeks to suggest that Dr. Muñiz's opinion lacks sufficient basis or is not the product of reliable principles or methods, such arguments are more properly raised in a *Daubert* motion, not a new statement of purportedly uncontroverted fact.

195.    Muniz did not consult with any other experts in creating the report, *id.* at 22:8-10; and her report was not peer-reviewed. *Id.* at 22:11-13.

**RESPONSE:** Uncontroverted, but misleading in that it suggests that expert witnesses are required to consult other experts when creating a report or that an expert report created for the purposes of litigation must be peer-reviewed. This statement misunderstands and confuses the function and purpose of expert reports in litigation with the peer-review process for academic publications.

196.    Muniz could not opine on any individual members of WPD's gang list having incurred a negative stigma as a result of being on the list. *Id.* at 47:23-48:2. This included anyone that WPD listed as a gang member being limited on access to jobs or housing or participation in community life or family life. *Id.* at 55:6-22.

**RESPONSE:** Controverted. This statement misstates Dr. Muñiz's testimony. Dr. Muñiz testified that she had not been provided documents that would allow her to opine on any specific individual designee's denial of employment or housing opportunities or reduced participation in community and family life.

197.    WPD officers download and preserve photos, videos, and conversations captured from social media sites to verify initial or continued gang membership or affiliation. Exhibit 5, Beard dep., 149:3-12.

**RESPONSE:** Uncontroverted that WPD officers download social media materials they consider relevant to gang designations. Controverted that such materials "verify . . . gang membership or affiliation."[3]

---

[3] Ex. 92, McKenna Dep. 131:24–132:5 ("Q. Okay, and so you agree that a person might meet the criteria for gang membership under Policy 527 and Kansas state statute, but not actually be a member of that gang. A. Again, I would tell you that it's not our job to validate you as a gang member. It's our job to recognize you as claiming that."); Doc. 207-11, McKenna Dep. 128:18 –129:7 ("Q. You are just saying you don't actually know who is and isn't in a gang? A. Correct. Q. You just know who you have defined as being in a gang according to Policy 527? A. And Kansas state

198.    WPD officers inform their supervisors when they set up a fake account for investigatory purposes. Exhibit 12, Notification of UC Social Media Acct.

**RESPONSE:** Uncontroverted but immaterial in contravention of Summary Judgment Guideline No. 3.

199.    The statute is not vague when officers consistently apply their training and experience in context. Exhibit 8, Mateo dep., 106:24-110:25.

**RESPONSE:** Controverted, as this statement consists of improper legal arguments and conclusions, in contravention of Summary Judgment Guideline No. 6. Defendant's designated expert witness is not offered as a legal expert, is not an attorney and is not competent to render a legal opinion on whether a statute is unconstitutionally vague. Furthermore, the deposition excerpt cited by Defendant is incomplete: Defendant's expert admitted that an individual would require knowledge beyond the language of the statute in order for the criteria to be appropriately applied, and later withdrew his opinion that the statute is not unconstitutionally vague.[4]

200.    Though Wichita doesn't have gangs that "claim" a specific area—meaning there are no defined borders—there are areas that are considered gang conflict areas that the officers learn from their training and intelligence sharing/gathering. Doc. 207-18, Salcido dep., 205:16-206:01.

**RESPONSE:** Controverted. This statement contradicts Defendant's other statements of facts. *E.g.*, Doc. 205, Defendant's Statement of Facts ("DSOF") ¶¶ 45, 193. Further controverted as incomplete and misstates the testimony to the extent it suggests that such "gang conflict areas" are static in nature.[5] Plaintiffs incorporate Doc. 207, Plaintiffs' Statement of Facts ("PSOF") ¶¶ 50-51 and the sources cited therein.

---

statute, yes. . . . Q. In fact, is it your testimony that it's not particularly your concern to know factually whether a person is in a gang. It's just your concern to know whether they meet the criteria under Policy 527 and Kansas state statute? . . . A. Yes, sir.").

[4] *See* Ex. 93, Mateo Dep. 106:24–118:14, 121:3–122:8.

[5] *See, e.g.*, Doc. 207-16, Salcido Dep. 206:15–206:7 ("A. There might be like – like, transitory areas where right now – right now would be considered a gang conflict area, and we would identify those. Q. So I hear – what I hear you telling me is that at least with respect to Wichita, this particular criteria that we're talking about in 21-6313[(b)](2)(D) is not a very useful criteria to assess whether somebody is in a gang or not? A. Not – not really, not really.").

201.    Sheriff Easter testified that most of the beat officers knew the neighborhoods and houses where particular gang members spent time. "To be honest with you most beat officers knew that. We knew it from neighborhood members who wanted us to do something about them in their neighborhood and that's generally how we got the information." Doc. 205-02, Easter dep. vol. II, 55:21-56:17. He also attested to Wichita having known areas where gang members hang out and would have frequent criminal gang activity. *Id.*, at 54:21-55:20.

**RESPONSE:** Controverted. This statement contradicts Defendant's other statements of fact. *See, e.g.*, DSOF ¶ 192. Plaintiffs incorporate their response *supra* to DSOF ¶ 192, PSOF ¶¶ 50-51, and the sources cited therein.

202.    Mapping locations are chosen by the probation or parole office and relate to where an offense occurred. They require an individual to avoid those designated areas during certain times of the day. The program to include gang members in mapping began in 2019 or 2020 and was discontinued in April of 2022 because it was ineffective. Doc. 207-02, Beard dep., 253:22-255:9; Doc. 207-07, Beard 30b6 dep., 190:10-19. In total, the program mapped less than 15 individuals. *Id.*

**RESPONSE:** Controverted in part. The mapping locations were chosen by a WPD officer, not the probation or parole office.[6] The WPD provided direct input on the areas from which individuals should be mapped or forbidden from entering, and actively solicited participation in its mapping program from agencies managing probation and parole.[7] Further controverted in that WPD records show that the WPD mapped at least 17 individuals designated as gang members or associates.[8] Further controverted as misleading and incomplete, as individuals were mapped or otherwise forbidden from entering locations based on *any* arrest or suspect case within their entire lifetime, regardless of connection to gang activity or to the criminal case for which mapping conditions

---

[6] Doc. 208-15, Selected Gang Mapping Documents, at WICHITA 047445 (describing mapping program process wherein a Sedgwick County Intensive Supervision Officer contacts a WPD officer of an individual's placement on supervision, the WPD officer researches the individual's criminal history, and then "notif[ies] the ISO to map the person from the specific map in which these cases occurred"), WICHITA 109547; Doc. 208-17, Selected Gang Conditions Documents, at WICHITA 121147.

[7] *See, e.g.*, Doc. 208-15, Selected Gang Mapping Documents, at WICHITA 047445, WICHITA 098333–36, WICHITA 109547; Doc. 208-17, Selected Gang Conditions Documents, at WICHITA 121147.

[8] *See* Doc. 208-15, Selected Gang Mapping Documents, at WICHITA 047476.

were imposed.[9] Defendant's Rule 30(b)(6) representative testified that this lawsuit was the impetus

for discontinuing the WPD's mapping program.[10]

203.    WPD's 30b6 designee explained the mapping project was an effort to assist the Sedgwick County Community Corrections officers in enforcing conditions of probation/parole imposed by a judge. Doc. 207-07, Beard 30b6 dep., 186:8-22. The program mapped less than 15 people in total. *Id.*, 187:3-5. It was discontinued because it was not effective. Doc. 207-02, Beard dep., 253:22-255:9; Doc. 207-07, Beard 30b6 dep., 190:10-19.

**RESPONSE:** Controverted in part. Plaintiffs incorporate their response to DSOF ¶ 194 and the

sources cited therein. Plaintiffs further incorporate their response to Defendant's additional

statement of fact *supra* ¶ 202.

204.    Each probationer is put on notice describing the areas and times of day they are prohibited from being in a specific area. Each sign-off to acknowledge receipt of the description of the restriction and the map showing prohibited areas. See e.g. Doc. 207, Exhibit 53, BATES Wichita 047485-515.

**RESPONSE:** Uncontroverted but immaterial in contravention of Summary Judgment Guideline

No. 3.

205.    The Club that Plaintiff E. Costello purported to work at was known as a place where members of the Bloods criminal street gang would hang out. Doc. 207, Exhibit 36.

**RESPONSE:** Controverted. Defendant fails to specify the relevant portion of the cited exhibit that

supports this fact statement, in contravention of Summary Judgment Guideline No. 10. Plaintiffs

further object to this statement as immaterial in contravention of Summary Judgment Guideline

No. 3, especially because the statement does not specify who the purported information was

---

[9] *Id.* at WICHITA 047445 ("**In their lifetime**, if they have had either two arrests, three suspect cases, or one arrest and two suspect cases I then notify the ISO to map the person from the specific map in which these cases occurred." (emphasis original)); *see also* Doc. 207-19, Hartman Decl. ¶¶ 8-9; Doc. 207-23, Bales Decl. ¶¶ 9-10; Doc. 207-24, Hang Decl. ¶¶ 9-10; Doc. 207-26, Strickland Decl. ¶¶ 9-10.

[10] Doc. 207-8, Beard 30(b)(6) Dep. 118:22–189:22 ("A. . . . [T]here were very few people mapped anyway and so I was talking about if we wanted to even continue it, but in reference to this, I indicated that *because of the gang lawsuit we should stop*. . . . [I]t was already in my mind before then that we were going to probably discontinue this program, but *because I didn't want to be a part of prevailing party status or anything, I just thought since there was no new people coming into it to just stop doing it right now*." (emphases added)).

"known" by, and there is no evidence that *Plaintiffs* knew or were ever told that the Club was considered a gang hangout.

206.    The concert E. Costello, M. Costello, and D. Hubbard were attending was the same Rich The Factor concert held at Club Bounce, a known Blood club. Doc. 207, Exhibit 16, WICHITA 024146.

**RESPONSE:** Controverted. The evidence cited does not say anything about Club Bounce being "a known Blood club." Plaintiffs further object to this statement as immaterial in contravention of Summary Judgment Guideline No. 3. Plaintiffs incorporate their response *supra* to DSOF ¶ 205.

207.    ECF 207, Exhibit 16, WICHITA 053645 and 030074 put both documented gang members at the same funeral for Bernie Ornelas (a known gang member of NSG), so there is no merit to the claim that these persons were renewed for attending a funeral where "no other alleged members" were present. Doc. 207, PSOF ¶ 84.

**RESPONSE:** Controverted as this statement consists of improper legal arguments and conclusions, in contravention of Summary Judgment Guideline No. 6. Further controverted because this statement misstates the evidence. Neither Gang Database entry mentions the presence of any other identified gang members at the funeral as the reason for renewal.[11]

208.    There is no evidence that attending an event hosted by Progeny led to an individual having been added to, or had time extended on, the Gang List.

**RESPONSE:** Controverted as this statement consists of improper legal arguments and conclusions, in contravention of Summary Judgment Guideline No. 6, and further fails to cite to any evidence, in contravention of Summary Judgment Guideline No. 10.

209.    There is no evidence that attendance at any of their hosted events decreased as a result of the WPD's gang database or Master Gang List. Rather, the Executive Director testified their attendance numbers routinely vary. See DSOF ¶¶ 168-74.

**RESPONSE:** Controverted. Progeny has consistently provided evidence that WPD presence at the February 2019 community action against violence event deterred individuals from attending

---

[11] Doc. 208-3, Selected Gang Database Entries, at WICHITA 053645, WICHITA 030074.

the event out of fear of being added to or renewed in the Gang Database.[12] Progeny's Rule 30(b)(6) representative further testified to police presence deterring attendance at a sign-making event in preparation for protesting at an event at which Governor Laura Kelly would be present.[13] Further controverted as this statement consists of improper legal arguments and conclusions, in contravention of Summary Judgment Guideline No. 6.

## ARGUMENT

Defendant points to no genuine issues of material fact and cites to no legal authority sufficient to preclude summary judgment in favor of Plaintiffs. Rather than meaningfully engaging with Plaintiffs' claims and the significant evidence in support thereof, Defendant relies on erroneous and/or immaterial "facts," improper character judgments, convenient strawmen, and legally unsupported arguments. Even taking all inferences in favor of Defendant, there is ample evidence to conclude that K.S.A. 21-6313 and Policy 527 are unconstitutionally vague, deny class members due process, and improperly infringe upon and chill protected First Amendment expressive and associational activities. Summary judgment in favor of Plaintiffs is proper.

## I.    Defendant's Flawed Responses to Plaintiffs' Statements of Fact Are Insufficient to Create a Genuine Dispute of Material Fact.

Defendant devotes 66 of its 79-page opposition brief attempting to respond to Plaintiffs' undisputed statements of material fact. But its complaints are principally makeweight, consisting of immaterial disputes of fact, misstatements of record evidence, contentions lacking citations to evidence, and improper and unsupported evidentiary objections. None of these flawed responses

---

[12] Doc. 207-43, Progeny 30(b)(6) Decl. ¶¶ 11-12; Doc. 207-48, Progeny's Resp. to Def.'s Interrog. No. 14; Doc. 207-49, Progeny 30(b)(6) Dep. 73:17–74:8.

[13] Doc. 205-36, Progeny 30(b)(6) Dep. 92:15–96:1.

are enough to overcome the strength of the record evidence in Plaintiffs' favor.[14]

    ***Immaterial disputes of fact.*** Defendant's responses are replete with quibbles on immaterial matters, providing extraneous and irrelevant information that ultimately does not refute Plaintiffs' statements of fact.[15] In many cases, Defendant's attempts to distinguish or explain the evidence only lend greater support to the fact as presented by Plaintiffs.[16]

---

[14] To the extent Defendant's responses dispute typographical errors, inadvertent errors introduced during the editing process, or accessibility of evidence, Plaintiffs respond as follows:

- Doc. 218, Defendant's Response to Plaintiffs' Statement of Fact ("DR-PSOF") ¶ 41: Plaintiffs submit copies of the articles cited in Footnote 72 as Ex. 94.

- DR-PSOF ¶ 44: Plaintiffs submit a revised version of Ex. 51 as Ex. 95.

- DR-PSOF ¶ 48: The correct cites in Footnotes 85 and 86 to Ex. 14 is Inkelaar Dep. 115:8–117:25.

- DR-PSOF ¶ 60: The correct cite in Footnote 107 to Ex. 22 is Ex. 96, Ramsay Dep. 16:7–17:18, 110:15–115:24. Plaintiffs further cite to Doc. 207-16, Salcido Dep. 85:16-22; Ex. 97, Salcido Dep. 298:7–304:16.

- DR-PSOF ¶ 63: The correct cite in Footnote 112 to Ex. 18 is Doc. 207-16, Salcido Dep. 116:13–117:17, 128:5-18, 190:16–196:2, 196:10-20, 205:1–206:16, 317:4-8. Plaintiffs further cite to Ex. 97, Salcido Dep. 213:7–216:15.

- DR-PSOF ¶ 71: The correct cite in Footnote 124 is PSOF ¶ 62; *see* Doc. 207-5, Policy 527 (providing no definitions or guidance on assessing "style[s] of dress," "color[s]," "hand signs," or "tattoos"); *see also* Doc 207-28, Hemmert Dep. 182:23–184:5; Doc. 205-9, Hemmert Dep. 168:11–169:18 (unable to provide straightforward answer to as to whether any WPD policy states that wearing gang colors alone is insufficient to meet K.S.A. 21-6313(b)(2)(E)); Doc. 207-14, Inkelaar Dep. 112:20–113:20; Doc. 207-11, McKenna Dep. 139:9-15, 162:8-15 (other factors important to gang membership not listed in policy or statute); Thatcher Dep. 96:12–97:8. Plaintiffs further cite to Ex. 92, McKenna Dep. 137:1-11 (Policy 527 fails to even list the statutory criteria).

- DR-PSOF ¶ 88: The correct cite in Footnote 152 to Ex. 67 is WICHITA 047449–59.

- DR-PSOF ¶ 89: WICHITA 079679, 079680 are contained in Ex 66. WICHITA 047449 is contained in Ex. 55. Plaintiffs submit WICHITA 047444 as Ex. 98.

- DR-PSOF ¶ 94: Plaintiffs submit one additional page of the Johnson deposition transcript as Ex. 99, to provide context refuting Defendant's objections.

- DR-PSOF ¶ 99: The correct cite in Footnote 173 is to Ex. 75, not Ex. 76.

- DR-PSOF ¶ 147: Plaintiffs further cite to Doc. 207-33, E. Costello Decl. ¶ 8.

- DR-PSOF ¶ 155: Plaintiffs further cite to Doc. 207-33, E. Costello Decl. ¶ 7.

[15] *See, e.g.*, DR-PSOF ¶¶ 35 (responding to statement concerning WPD officers' testimonies regarding inconsistent application of statutory criteria by discussing the audit and gang intelligence officers' superior knowledge about gangs), 54 (asserting that "Beard did not say [it] is common for large families to live together," but PSOF ¶ 54 says nothing about Beard testifying as such), 130 (adding extraneous information about M. Costello's presence at a club with other purported gang members unrelated to the event described in Plaintiffs' statement of fact).

[16] *See, e.g.*, DR-PSOF ¶¶ 13 (confirming Plaintiffs' statement that the WPD has renewed individuals for being shot by a rival gang member and for "associating with another documented gang member" by suffering domestic violence at the hands of a boyfriend who was purportedly a gang member), 75 (confirming Plaintiffs' statement that specific

***Misstating evidence.*** Defendant continually disputes the relevance or content of record evidence by misstating what that evidence actually says.[17] Defendant also confuses relevance of evidence with weight of evidence.[18]

***Factual deficiencies and unsupported denials.*** Defendant's responses often consist of flat (and objectively incorrect) denials that the record evidence cited supports Plaintiffs' statements of fact without explanation.[19] In many responses, Defendant denies the relevance of or otherwise disregards the inferential support provided in citations following a *see also* signal.[20] Defendant also inexplicably denies the materiality of factual statements that go directly to the heart of Plaintiffs' claims or provide important context.[21] In many of its responses, Defendant contradicts

---

individuals were added or renewed based on their clothing), 98 (confirming Progeny staff were included in the Gang Database based on clothing color, use of hand signs, social media activity, and association with others), 108 (manufacturing purported contradiction between individuals who are aware of their Database status and the fact that designated individuals may never find out that they are designated), 130 (confirming Plaintiffs' statement that M. Costello was renewed for attending a concert with his father and two other purported gang members).

[17] *See, e.g.*, DR-PSOF ¶¶ 33 (distinguishing filling out TOPS cards from identifying potential gang members, in contravention of PTO Stip. ¶ 22, which states that officers may nominate an individual for inclusion in the Gang Database by filling out a TOPS card), 39 (incorrectly stating that Ex. 44 is a "presentation on street gang graffiti and tagging" and ignoring pincite to and parenthetical concerning WICHITA 085578), 52 (incorrectly stating that Deputy Chief Salcido "did not give a specific number" despite quoted testimony that he believes "frequents" means to "linger there for many days . . . . four or five, six . . . or more"), 58 (ignoring the cited portion of the Inkelaar deposition discussing the text of Policy 527), 75 (ignoring 76 (incorrectly stating that D.B. was wearing navy blue and gray, where the cited TOPS card states that the driver of the car in which D.B. was riding was the one wearing navy blue and gray). With respect to Exhibit 44, which Defendant mischaracterized as a "presentation on street gang graffiti and tagging," Plaintiffs submitted only the first page and excerpts of the 162-page presentation relevant to their summary judgment motion, in the interest of minimizing burden on the Court. Plaintiffs will submit the entire document should the Court wish to view it.

[18] *See, e.g.*, DR-PSOF ¶¶ 51-52 (criticizing testimony from WPD personnel as irrelevant because those individuals were not gang intelligence officers).

[19] *See, e.g.*, DR-PSOF ¶¶ 19- 20, 44-46, 57, 67 ("Ex. 60 does not support the statement."), 90, 97, 102-103, 110, 114, 168.

[20] *See, e.g.*, DR-PSOF ¶¶ 26, 53, 82, 90, 94, 155.

[21] *See, e.g.*, DR-PSOF ¶¶ 17, 21, 59, 78, 138, 157, 164.

stipulated evidence or its own statements of fact,[22] fails to provide pincites[23]—or fails to cite evidence at all.[24]

***Deficient evidentiary objections.*** Defendant raises a hodgepodge of evidentiary objections that lack specificity and defy logic and common sense. Chief among these are attacks on declarations or other sworn testimony from Plaintiffs and others as "not competent" or lacking foundation.[25] The proposition that Plaintiffs and other declarants are not competent or lack foundation to discuss relevant events they personally experienced or their beliefs and opinions for the bases for those events misconstrues the evidentiary nature of testimony. Other evidentiary objections are borderline nonsensical.[26]

Defendant also raises unpersuasive hearsay objections. Defendant oftentimes fails to identify the hearsay statement in the first instance.[27] Many of the hearsay objections arise out of a misapprehension of the role of a Rule 30(b)(6) witness.[28] In cases where the Defendant manages

---

[22] *See, e.g.*, DR-PSOF ¶¶ 18 (contradicting PTO Stip. ¶¶ 51-53), 48 (contradicting DSOF ¶¶ 45, 201), 56 (contradicting PTO Stip. ¶¶ 30, 33), 88 (admitting that the WPD drafted gang conditions policies for SCDOC in contradiction of DR-PSOF ¶¶ 49 and 88's claims that the WPD does not determine gang conditions), 149 (disputing E. Costello's belief that the WPD sees certain locations as "gang hangouts" in contradiction of DR-PSOF ¶¶ 48-49 and DSOF ¶¶ 205-206).

[23] *See, e.g.*, DR-PSOF ¶¶ 37, 50, 64.

[24] *See, e.g.*, DR-PSOF ¶¶ 95, 114, 117, 129, 131-132, 137, 144, 146.

[25] *See, e.g.*, DR-PSOF ¶¶ 25, 86-87, 94, 98, 100, 106, 108, 118, 121, 123, 125, 131-132, 140, 148, 165, 167.

[26] *See, e.g.*, DR-PSOF ¶ 93 ("Objection, statement is not competent evidence to establish a fact.").

[27] *See, e.g.*, DR-PSOF ¶¶ 86-87, 91, 100, 106-109.

[28] *See, e.g.*, DR-PSOF ¶ 109; Fed. R. Civ. P. 30(b)(6) ("The person designated must testify about information known or reasonably available to the organization."); *Hauck v. Wabash Nat'l Corp.*, No. 18-471 KG/LF, 2020 U.S. Dist. LEXIS 10523, at *10 (D.N.M. Jan. 22, 2020) (overruling hearsay objection to Rule 30(b)(6) witness testimony); *Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2017 U.S. Dist. LEXIS 179156, at *7 (D. Kan. Oct. 30, 2017) ("The testimony of a Rule 30(b)(6) designee represents the knowledge of the corporation, not of the individual deponents."); *Raytheon Aircraft Co. v. United States*, No. 05-2328-JWL-DJW, 2007 U.S. Dist. LEXIS 66156, at *21 (D. Kan. Sep. 6, 2007) ("A witness testifying as a Rule 30(b)(6) designee does not give his or her personal opinion and is not limited to his or her own knowledge . . . [and] is subject to the collective knowledge of the entity.").

to identify a specific hearsay statement, that statement is admissible for a non-hearsay purpose, or an exemption or exception applies.[29]

Defendant's objections to the testimony and opinions of Plaintiffs' expert witness, Dr. Ana Muñiz,[30] are likewise inadequate. Defendant's complaints about her purported failure to review certain documents or Plaintiffs' supposed failure to produce certain evidence[31] do not explain why that evidence is relevant to her opinion, and are nothing more than an attempt to invent a dispute of material fact. These immaterial objections seek to challenge the basis of Dr. Muñiz's opinions without doing the actual work of filing a *Daubert* motion and satisfying the relevant legal standard.

*"Improper arguments."* Defendant continuously attacks Plaintiffs' statements of fact for what it misperceives as "improper argument" in straightforward descriptions of testimony or other evidence.[32] Yet Defendant's own responses and additional statements of fact contain similar arguments[33] or otherwise recite the same information it objected to from Plaintiffs.[34]

---

[29] *See, e.g.*, DR-PSOF ¶¶ 16 (expert witness permitted to rely on hearsay or other inadmissible evidence for opinion under Fed. R. Evid. 703), 17 (admissible under Fed. R. Evid. 803(8) or 807), 60 (not hearsay under Fed. R. Evid. 801(d)(2)(D)), 28 (within witnesses' personal knowledge; offered not for the truth of the matter but for the effect on the WPD or to show the WPD's awareness or state of mind; or otherwise admissible under Fed. R. Evid. 801(d)(2)(A)-(D)), 92 (alternatively offered to establish Defendant's knowledge or awareness that potential consequences exist).

[30] *See, e.g.*, DR-PSOF ¶¶ 16, 32, 41, 63.

[31] Plaintiffs produced the academic journal articles and other documents that Dr. Muñiz relied upon for her report and opinion concurrently with her expert report. Doc. 142.

[32] *See, e.g.*, DR-PSOF ¶¶ 53 (objecting to concise description of Defendant's 30(b)(6) witness testimony as "improper argument"), 61 (objecting to paraphrasing PTO Stip. ¶¶ 37-38 and quoting Deputy Chief Salcido's testimony as "improper argument").

[33] *See, e.g.*, DR-PSOF ¶¶ 85 ("K.S.A. 21-6316 provides for $50,000 cash or surety bond, 'unless the court determines on the record that the defendant is not likely to reoffend, an appropriate intensive pre-trial supervision program is available, and the defendant agrees to comply with the mandate of such pre-trial supervision.' The WPD does not control the judge's decision or discretion and only the judge may decide what bail is appropriate in each individual case."), 102 ("Any alleged harms are not from the Gang List or because of Policy 527. They are imposed only after probable cause has led to an arrest, a charge, conviction, sentencing, and/or a judge has imposed conditions on post-release. Due process is afforded throughout."); DSOF ¶ 199 ("The statute is not vague when officers consistently apply their training and experience in context.").

[34] *Compare, e.g.*, PSOF ¶ 89 ("Gang conditions have included 'mapping' individuals listed as gang members, i.e., prohibiting them from entering large geographic zones at certain times of the day. The Sedgwick County Department of Corrections ('SCDOC') instituted this program in 2019 with input from the WPD, and both agencies collaborated in the program's function. The City paused the mapping program in mid-2022, in large part because of this lawsuit.")

*Voluntary cessation.* Defendant asserts that it voluntarily ceased the WPD's mapping program.[35] It is unclear what Defendant thinks is gained by this point. Mootness is not at issue in this case, and even if it were, voluntary cessation of active illegal conduct can provide an exception to the mootness doctrine. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880–81 (10th Cir. 2019). Unless enjoined, Defendant is free to resume mapping, using Policy 527 as a guide, upon conclusion of this case.[36] At any rate, the challenged conduct extends far beyond the mapping program.

In sum, Defendant's responses to Plaintiffs' undisputed statements of material fact do not provide a sufficient basis for denying Plaintiffs summary judgment. Defendant has not met its burden of "set[ting] forth specific facts showing that there is a genuine issue for trial."[37]

## II. Plaintiffs Are Entitled to Summary Judgment on Their Due Process Claims.

Defendant makes no argument that it provides Plaintiffs or those like them with notice or an opportunity to challenge the WPD's gang designations and renewals in its Gang Database.[38] Indeed, Defendant's unsupported assertion that "any individual may request a meeting with the WPD to learn the reasons for their inclusion and present information to rebut the designation" is

---

*with* DSOF ¶¶ 194-195 ("Mapping locations . . . require an individual to avoid those designated areas during certain times of the day. The program to include gang members in mapping began in 2019 or 2020 and was discontinued in April of 2022 because it was ineffective. . . . WPD's 30b6 designee explained the mapping project was an effort to assist the Sedgwick County Community Corrections officers in enforcing conditions of probation/parole imposed by a judge.").

[35] DR-PSOF ¶ 89; DSOF ¶¶ 202-203.

[36] *See* Doc. 208-15, Selected Gang Mapping Documents, at WICHITA 121496 ("The city's attorney's [sic] have asked that the 'Gang Mapping' be paused until the suit is resolved.").

[37] *Britvic Soft Drinks Ltd. v. Acsis Tech., Inc.*, 265 F. Supp. 2d 1179, 1184 (D. Kan. 2003).

[38] *See* PTO Stip. ¶ 36; Doc. 218 at 72–78; DR-PSOF ¶¶ 55, 58. Defendant's argument that Plaintiffs and class members receive process from others in criminal prosecution proceedings, Doc. 218 at 74, 78, underscores that *Defendant* offers no process with respect to its Gang Database practices, despite the fact that the WPD—and no one else—creates and maintains the gang designations subject to this lawsuit. Defendant cannot contend that any other entity does or could provide the notice of and opportunity to challenge such designations that its own witnesses have called due process concerns. *See, e.g.*, Ex. 97, Salcido Dep. 271:6-23, 278:4-280:3.

nonsensical: a person cannot "request a meeting" about or challenge a designation of which they have no notice, and Defendant acknowledges that the persons the WPD designates "will, often, never know they were identified or listed as a gang member or associate."[39]

Conceding that no process is given, Defendant's only hope to avoid summary judgment is to suggest that no process is due. Here, as elsewhere, Defendant's briefing is devoid of evidence and legal analysis, relying instead on unsupported attorney argument and attacks on Plaintiffs' character and the veracity and significance of the harms they have established by sworn testimony, declarations, and written discovery. Such an approach is unavailing, and summary judgment for Plaintiffs is warranted.[40]

### A.    Process is necessary to avoid erroneous gang designations.

Defendant first suggests that no process is due Plaintiffs because whether or not they are in fact gang members is controverted, defeating summary judgment. But Defendant does not assert—either in defense to Plaintiffs' due process claims, or anywhere in its briefing—that Plaintiffs are in fact active members of criminal street gangs. Instead, Defendant states (without reference to the record) that it "has presented objective evidence supporting [Plaintiffs'] designation as gang members."[41] In other words, Defendant argues only that Plaintiffs have, at some point, met the statutory criteria for criminal street gang membership under K.S.A. 21-6313. This contention is inapposite to Plaintiffs' claim that gang designations based on the statutory criteria do not reliably correlate to actual gang membership, and that the WPD provides no process

---

[39] Doc. 205 at 33.

[40] *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) ("[T]he nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein.").

[41] *See* Doc. 218 at 72.

to test or ensure accuracy of designations.[42] On this evidentiary record, it is undisputed that Plaintiffs are not actually gang members.[43] That the WPD may designate them as such under K.S.A. 21-6313 and Policy 527 demonstrates precisely why process is due, and summary judgment should be granted.

### B.    Gang designations alter designees' legal status.

Defendant next argues that no process is due Plaintiffs because even if inaccurate, the WPD's gang designations do not meaningfully alter Plaintiffs' legal statuses. For example, Defendant claims that gang designations cannot be defamatory because they are not published.[44] Inexplicably, Defendant states that "only Gang Intelligence Officers have access to the Gang Database,"[45] despite elsewhere admitting that as of 2022, it provided the U.S. Probation Office with a "downloaded copy of the Gang Database" to be "updated twice yearly at [the] agencies [sic] request."[46] Such intra-government sharing alone is sufficient to trigger due process protections.[47] But here, it is beyond dispute that the WPD also shares individuals' gang designations directly with the media, including the designations of deceased persons, crime victims, and even victims of police violence.[48] Such statements are quintessentially public and harmful to reputation,[49] whether or not made specifically for that purpose.

---

[42] *See, e.g.*, Doc. 207 at 67–68; *see also* PSOF ¶¶ 37-38.

[43] *See, e.g.*, DR-PSOF ¶¶ 115 (purporting to controvert that Plaintiff Cooper has never been a gang member by citing evidence that he met statutory criteria), 129 (same for Plaintiff M. Costello), 144 (same for Plaintiff E. Costello), 162 (same for Plaintiff Levy, Jr.).

[44] Doc. 218 at 72–73.

[45] *Id.* at 73.

[46] Doc. 205-15; *see also* DR-PSOF ¶ 25; DSOF ¶ 31.

[47] *See* Doc. 207 at 58–59.

[48] *See* Doc. 215 at 9 n.12.

[49] *See* Doc. 207 at 58 n.311.

Unable to rebut Plaintiffs' claims with evidence, Defendant turns to the untethered and inappropriate suggestion that no matter how false or public, the WPD's gang designations could never have harmed the reputations of Plaintiffs who have been charged with felony crimes.[50] Defendant's arguments are tantamount to the assertion that one cannot harm the reputation of a suspected felon, and are a thinly veiled effort to discredit Plaintiffs in the hope of undermining their otherwise unrebutted testimony of substantial injuries. Besides lacking any evidentiary foundation, this argument falls flat given that a person need not be accused of or charged with any crime in order for the WPD to designate them as a gang member or associate,[51] and Defendant admits that the WPD has designated individuals in the Gang Database who have never been charged with or even accused of any crime.[52]

Moreover, far from being immune, a criminal defendant facing felony charges is deeply and uniquely vulnerable to harms resulting from false public statements inherently implicating criminality.[53] This basic truth gives rise to such bulwarks of due process as the right to trial by a jury unbiased by adverse pretrial publicity,[54] and the special ethical duty of prosecutors to "refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused."[55] Contrary to Defendant's improper insinuations, due process protections are not obviated, but rather are especially important where the rights and reputations—

---

[50] *See* Doc. 218 at 73; *see also id.* at 76–77 (reciting irrelevant criminal allegations against Plaintiffs, including many related to charges ultimately abandoned by prosecutors).

[51] *See* Doc. 215 at 60.

[52] DR-PSOF ¶ 10.

[53] *See* Doc. 28 at 25 ("[T]he Court is persuaded that designation as a gang member inescapably implies that a person is involved, at least in some capacity, with criminal activity.").

[54] *See Irvin v. Dowd*, 366 U.S. 717, 728 (1961).

[55] *See* 240 Kan. R. Prof. Conduct 3.8.

and ultimately, the liberty—of the criminally accused are at stake.[56]

This principle likewise unravels Defendant's argument (again unfettered by evidence) that "[p]ersons who have no law enforcement or criminal justice encounters (*i.e.*, are not stopped, not arrested, not charged) are unaffected by being identified as a gang member or associate."[57] This is demonstrably untrue: as discussed more fully in Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (Doc. 215), gang designation effectively restricts "Plaintiffs' ability to do significant things that they otherwise have the right to do freely,"[58] including enjoying free movement, intimate and expressive association, housing, employment, and such expressive activities as choosing what clothes to wear and whose deaths to grieve.[59]

At the same time, Defendant's unwitting suggestion by omission that persons who *do* have law enforcement or criminal justice encounters *are* affected by identification as a gang member or associate is amply supported by record evidence. The consideration and ultimate eligibility for bail and drug court or diversion, as well as for gang conditions of probation, incarceration, or parole, are altered as a matter of law and policy for individuals included in the WPD's Gang Database.[60] The rights to an individualized determination of bail and conditions of confinement and release which Defendant invokes are directly altered by gang designation[61]—to say nothing of the reality

---

[56] *See United States v. Salerno*, 481 U.S. 739, 755 (1987).

[57] Doc. 218 at 73.

[58] Doc. 28 at 27.

[59] *See* Doc. 207 at 60–65; Doc. 215 at 64–67.

[60] *See* Doc. 207 at 60–65; Doc. 215 at 64–67. Defendant clings to the notion that a criminal defendant can challenge their gang designation prior to imposition of the enhanced $50,000 bond or pretrial gang conditions of release as evidence of adequate due process. *E.g.*, DR-PSOF ¶ 58; Doc. 218 at 74, 77–78. But bond and pretrial gang conditions are assessed and imposed at a defendant's first appearance, before they are able to request a public defender. *See* Doc. 207-19, Hartman Decl. ¶ 5; Doc. 207-23, Bales Decl. ¶ 6; Doc. 207-24, Hang Decl. ¶ 6; Doc. 207-25, De Hoyos Decl. ¶ 7; Doc. 207-26, Strickland Decl. ¶ 6; *see also* Doc. 215 at 60 n.151. In the absence of legal representation, it can hardly be said that a defendant receives a *meaningful* opportunity to challenge gang designation before being subjected to the negative consequences of that designation.

[61] Defendant acknowledges the existence of these rights under the Kansas Constitution, statute, and Kansas Supreme Court precedent. *See* Doc. 218 at 74. As such, these established interests are unlike the prisoner's purported right to

17

that the WPD remains actively involved in criminal cases from arrest to first appearance to trial to determining and enforcing gang conditions of release.[62] Even if true (which it is not), Defendant's suggestion that only those who encounter law enforcement or the criminal justice system face consequences from gang designation is no defense: the demands of due process do not end at the jailhouse door, or the back of a squad car. The material evidence of record—uncontroverted by Defendant—establishes that Plaintiffs are entitled to summary judgment on their Due Process claims.

## III. Summary Judgment Is Proper on Plaintiffs' First Amendment and Vagueness Claims, and Defendant's Arguments to the Contrary are Without Merit.

Defendant's opposition brief raises no new arguments regarding Plaintiffs' standing to bring their claims or the substance of Plaintiffs' void-for-vagueness and First Amendment claims. Instead, Defendant rests on arguments made in its own motion for summary judgment.[63] For the reasons set forth in Plaintiffs' opposition to that motion,[64] Defendant's arguments are without merit.

Plaintiffs have set forth sufficient facts demonstrating that they possess standing to prevail on their claims.[65] They and the class they represent have each experienced concrete injuries that

---

serve his sentence in Saudi Arabia that the Court found unsupported by state or federal law in *Al-Turki v. Tomsic*, 926 F.3d 610, 615 (10th Cir. 2019). Here, Defendant apparently assumes that because the rights to individualized bail, etc., are enshrined in state law, they are invariably given effect despite the plain requirement of K.S.A. 21-6316 to the contrary. Besides lacking evidentiary support, this argument proves too much: if every real legal entitlement and liberty interest were necessarily given effect, there could never be a threat of deprivation sufficient to trigger due process.

[62] *See* PSOF ¶¶ 23, 88-90; Doc. 215, Plaintiffs' Response to Defendant's Statements of Fact ("PR-DSOF") ¶¶ 38; Doc. 215 at 67–68.

[63] *See* Doc. 218 at 69 (incorporating by reference, without any further commentary, Defendant's prior standing arguments), 70–72 (incorporating by reference Defendant's prior void for vagueness arguments), 78–79 (incorporating by reference Defendant's prior First Amendment arguments).

[64] Doc. 215 at 55–61 (responding regarding Plaintiffs' void for vagueness claim), 68–76 (First Amendment), 76–80 (standing).

[65] *See* PSOF ¶¶ 96-168; Doc. 207 at 53–56, 60–65, 70, 72–76, 79–81; *see also* PR-DSOF ¶¶ 62-190; Doc. 215 at 76–80.

are continuous and ongoing so long as they remain in the Gang Database; their injuries are traceable to Defendant's discretionary decision to include Plaintiffs and certified class members in the Database; and a decision in their favor in this case would redress their grievances.[66]

Likewise, Plaintiffs have provided sufficient factual and legal support for them to prevail on the merits of their void-for-vagueness and First Amendment claims.[67] Rather than ground their opposition in law and citations to the record, Defendant continues to assert that one cannot be arrested and charged with "being a criminal street gang member or associate."[68] But that is not the standard for demonstrating that a statute or policy is unconstitutionally vague. Similarly, the abundant evidence and legal authority in support of Plaintiffs' First Amendment claims go unanswered in Defendant's opposition brief. Instead, Defendant continues to take a disingenuous and myopic view of K.S.A. 21-6313, arguing (incorrectly) that the statute and the WPD's application thereof have no effect on expressive or associational conduct.[69] Plaintiffs have set forth ample evidence that they themselves have been chilled in their exercise of First Amendment rights.[70] Defendant's unsupported contentions otherwise are without merit.

Defendant does not meaningfully engage with or respond to Plaintiffs' arguments, instead resting on its own conclusory and unfounded statements that misconstrue the law, ignore record evidence, or both. Plaintiffs are entitled to summary judgment on these claims.

---

[66] Doc. 215 at 76–80.

[67] *See* Doc. 207 at 44–57, 68–80; *see also* Doc. 215 at 55–61, 68–76.

[68] Doc. 218 at 70.

[69] *See id.* at 78–79.

[70] *See* Doc. 215 at 68–75; Doc. 207 at 68–81.

IV.    **Plaintiffs' Requested Relief Stands Unchallenged.**

Defendant's response disputes only Plaintiffs' ability to succeed on the merits of their claims; it did not address Plaintiffs' entitlement to injunctive and declaratory relief.[71] Defendant therefore concedes that Plaintiffs have satisfied all requirements for a permanent injunction and declaratory relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for summary judgment on all claims.

Date: November 3, 2023

Respectfully submitted,

SHOOK, HARDY & BACON LLP

*/s/* Jordan C. Baehr
Jordan C. Baehr KS #27213
Thomas J. Sullivan (admitted *pro hac vice*)
Mitchell F. Engel KS #78766
Paul M. Vogel KSD #79022
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
tsullivan@shb.com
mengel@shb.com
jbaehr@shb.com
pvogel@shb.com

KANSAS APPLESEED CENTER FOR
LAW AND JUSTICE, INC.

*/s/* Teresa A. Woody
Teresa A. Woody KS #16949
211 E. 8th Street, Suite D

---

[71] Doc. 207 at 81–84.

Lawrence, KS 66044
Phone: (785) 251-8160
twoody@kansasappleseed.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF KANSAS

*/s/* Sharon Brett
Sharon Brett KS #28696
Karen Leve KS #29580
Kunyu Ching KS #29807
10561 Barkley St. Ste 500
Overland Park, KS 66212
Phone: (913) 490-4100
sbrett@aclukansas.org
kleve@aclukansas.org
kching@aclukansas.org


ATTORNEYS FOR PLAINTIFFS,
INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November 2023, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of

such filing to the e-mail addresses of all counsel of record.

*/s/* Jordan C. Baehr
Jordan C. Baehr