# EXHIBIT 93



**PohlmanUSA®**
Court Reporting and Litigation Services

Robert Mateo

August 4, 2023

Progeny, et al.

vs.

City of Wichita, Kansas

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS


PROGENY,
a program of Destination
Innovations Inc.,
CHRISTOPHER COOPER,
ELBERT COSTELLO,
MARTEL COSTELLO, and         Case No.
JEREMY LEVY, JR.,            6:21-cv-01100-EFM-ADM
on behalf of themselves
and others similarly
situated,

          Plaintiffs,

v.

CITY OF WICHITA, KANSAS,

Defendant.
_____/



               VIDEOTAPED DEPOSITION OF
                    ROBERT MATEO

          Taken on behalf of the Plaintiffs



          DATE TAKEN:   August 4, 2023
          TIME:         10:02 a.m. - 1:01 p.m.
          PLACE:        Shook, Hardy & Bacon
                        100 N. Tampa Street
                        Suite 2900
                        Tampa, Florida 33602




             Stenographically Reported by:

               Lisa Gropper, RPR, FPR-C
```

```
 1   APPEARANCES

 2
     ON BEHALF OF THE PLAINTIFFS:
 3
          TERESA A. WOODY, ESQ.
 4        KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC.
          211 E. 8th Street
 5        Suite D
          Lawrence, Kansas 66044
 6        twoody@kansasappleseed.org
          kching@kansasappleseed.org
 7
          LINDSEY KNAPTON, ESQ. (via videoconference)
 8        SHOOK, HARDY & BACON LLP
          2555 Grand Boulevard
 9        Kansas City, Missouri 64108
          lknapton@shb.com
10
          SHARON BRETT, ESQ. (via videoconference)
11        KUNYU CHING, ESQ. (via videoconference)
          AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS
12        10561 Barkley Street
          Suite 500
13        Overland Park, Kansas 66212
          sbrett@aclukansas.org
14

15   ON BEHALF OF THE DEFENDANT:

16        CHARLES E. BRANSON, ESQ.
          FISCHER, PATTERSON, SAYLER & SMITH, LLP
17        3550 S.W. 5th Street
          Topeka, Kansas 66606
18        cbranson@fpsslaw.com

19
     ALSO PRESENT:   Nick deHaas, Videographer
20                   Paul Snyder (via videoconference)
                     Maneola Saldanha (via videoconference)
21

22                            - - -

23

24

25
```

```
 1                          INDEX
 2   Witness                                        Direct
 3   Robert Mateo
 4   (By Ms. Woody)                                    5
 5
 6                          - - -
 7                        EXHIBITS
 8
     Defendant's         Description                  Page
 9
     Exhibit 1    Expert Report of Robert Mateo        63
10
     Exhibit 2    SOP for Entries into the Gang        68
11                Data Base
12   Exhibit 3    28 CFR Part 23                       90
13
14          REFERENCED PREVIOUSLY MARKED EXHIBITS
15   Exhibit 5    Statute 21-6313                     107
16   Exhibit 6    Wichita Police Department            69
                  Policy 527
17
18                          - - -
19
20
21
22
23
24
25
```

```
 1   one way to get a question answered is to call the source
 2   directly.
 3        Q    Okay.  So you think that members of the
 4   community have to take it on themselves if they want to
 5   be careful that they're not in gang hangouts to contact
 6   the police and ask specific questions about specific
 7   areas that they might be present in?
 8        A    I'm saying that that's someplace where the
 9   public can get that information.
10        Q    Do you know if that's something -- if -- if
11   they ask that question, if the Wichita Police Department
12   would actually give them that information?
13        A    I don't know if they would or would not.  That
14   is a question for the Wichita Police Department.
15        Q    Okay.  But there's nothing in the policies and
16   procedures that mandate that there be notification to
17   the community as to what the Wichita Police Department
18   considers gang hangouts?
19        A    Not that I've seen.
20        Q    Okay.  Let's take a look at Page 13 of your
21   report, and at the bottom there's -- there's opinion
22   1(C).  Do you see that?
23        A    Yes.
24        Q    You say, "The Kansas statute is not vague, but
25   even if it is, WPD's policies provide additional
```

```
 1   protections."  Do you see that?
 2        A    Yes.
 3        Q    On what do you base your opinion that the
 4   Kansas statute is not vague?
 5             And let me go ahead and give you a copy of
 6   what -- the statute so you can actually look at it.
 7   That's been previously marked exhibit -- Exhibit 5 in
 8   this case.
 9        A    Can you repeat --
10        Q    And what -- what do you base your opinion on
11   that the Kansas statute is not vague?
12        A    So the statute, it lists out individual
13   criteria, specific criteria that -- and definition that
14   a gang has to meet in order to be identified as a
15   criminal gang, as well as what members of that gang have
16   to meet in order to be identified as an associate or a
17   member.
18        Q    Okay.  So let's take a look at the statute and
19   let's look at section 4(b).
20             Do you see that?
21        A    Yes.
22        Q    Yeah.  And that's where it kind of -- it -- it
23   lays out the criteria for saying somebody's a gang
24   member, correct?
25        A    Yes.
```

```
 1      Q     So if you look down at (2)(D), do you see
 2   that?
 3      A     Yes.
 4      Q     It says "Frequents a particular criminal
 5   street gang's area."  Do you see that?
 6      A     Yes.
 7      Q     Is there any definition of what a street
 8   gang's area is?
 9      A     I don't believe there is one in here.
10      Q     Okay.  Not in the statute, right?
11      A     Correct.
12      Q     And we've just talked about the fact that,
13   with respect to WPD and their implementation of the
14   statute through Policy 527 and their SOP, there's not --
15   you're not aware of anyplace that they actually list out
16   gang areas, correct?
17      A     I'm not aware of that, no.
18      Q     And you're not aware of any -- anyplace where
19   individuals could go to say okay, this is a street gang
20   area; I need to avoid this area, correct?
21      A     Outside of the examples I've previously
22   provided, no.
23      Q     Okay.  Then if you look at (2)(E), it says,
24   "Adopts such gang's style of dress, color, use of hand
25   signs or tattoos;" is that right?
```

```
 1      A    Yes.
 2      Q    And is there anything here that describes what
 3   style of dress means?
 4      A    Not in here.  That would be based on the
 5   officer's training and experience.
 6      Q    Okay.  And so that's something that the
 7   officers would -- they would have some information
 8   saying we believe that, if you dress like this, you're a
 9   member of X gang, correct?
10      A    Well, it's part of the training documents that
11   I reviewed where they provide insight into that with
12   regard to any particular gang adopting a particular
13   style of dress.  Again, law enforcement doesn't
14   designate the style of dress of a gang.  That is done by
15   the gang itself.
16      Q    Is there anything in the statute that would
17   allow somebody to know what colors they needed to avoid
18   to be -- to avoid being considered a gang member for
19   instance?
20      A    No, ma'am.
21      Q    Is there anything in there that says what
22   particular hand signs are affiliated with gangs?
23      A    No, ma'am.
24      Q    Is there anything in here that says what types
25   of tattoos are considered gang tattoos?
```

```
 1      A    No, ma'am.
 2      Q    And are you -- is there discretion among
 3  police officers looking at colors, hand signs and
 4  tattoos as to whether they believe those are gang
 5  affiliated?
 6      A    If they're applying the consistent training
 7  that they were provided in the identification of
 8  criminal gangs, then they would apply that
 9  appropriately.
10      Q    So in your mind the tattoo would need to match
11  exactly what they've been trained, what's shown in the
12  training materials, in order for that -- them to
13  designate -- to use that tattoo as gang membership?
14      A    It would need to be --
15           MR. BRANSON:  Object to form.
16           Go ahead.
17  BY MS. WOODY:
18      Q    Go ahead.
19      A    It would need to be consistent --
20      Q    Okay.  What's that mean?
21      A    -- with the training, meaning -- meaning it's
22  a five-point crown; is it being used in context based on
23  the training that they were provided.
24      Q    In context, correct?
25      A    Yes, ma'am.
```

```
 1        Q    So if I have a five-point crown on my
 2   shoulder, that by itself doesn't necessarily mean I'm a
 3   member of a gang?
 4        A    Correct.
 5        Q    Okay.  So what context would you need with the
 6   five-point crown to say I was a member of -- I believe
 7   you said the Latin Kings?
 8        A    Well, let's go back to my original example of
 9   the Latin Kings.  If there was a Latin King -- or,
10   excuse me, a five-point crown tattoo with a lion's head
11   underneath it and they were wearing a black and gold
12   bandanna and some beads and they were observed throwing
13   the hand sign in social media and another -- and another
14   example or another exhibit if you will, putting --
15   beginning to put these things together in context would
16   help identify that person as a Latin King.
17        Q    And again that -- you could look at those
18   things, but that person doesn't have to be engaged in
19   any criminal activity for them to be designated a gang
20   member based on indicia, correct?
21        A    Correct.
22        Q    So if I dress up like that for Halloween and I
23   have a fake tattoo of a five-point star and I got a
24   lion's head underneath it and I'm wearing black and gold
25   and I'm walking around and a police officer sees me, he
```

```
 1   could designate me as a Latin King, correct?
 2        A    There would be -- I -- I would suspect there
 3   would be conversation about that.  If they see you out
 4   in public, they can have a consensual encounter with you
 5   and apply their training.
 6        Q    Okay.  And do they do that routinely?
 7        A    I believe they do, yes.
 8        Q    So anybody that they think might be a gang
 9   member, they go up to them and have a conversation
10   about, Hey, what's -- what's with the tattoo, that kind
11   of thing?
12        A    That's one of the best ways to do it.
13        Q    Do they -- do -- does the Wichita Police
14   Department do it?
15        A    I -- I can't say that the Wichita Police
16   Department individual officers do that, but I -- again,
17   that's a personnel issue.  If they're not --
18        Q    If they're not doing it, it's a problem?
19        A    -- engaging the public, that's an issue the
20   Wichita Police Department would need to take up with
21   them.
22        Q    Okay.  Then if you look at section (2)(E)
23   here -- I'm sorry, section (2)(F), it says, "Associates
24   with known criminal street gang members."  Do you see
25   that?
```

```
 1      A     Yes, ma'am.
 2      Q     What's that mean?
 3      A     Hanging out regularly with other known gang
 4   members.
 5      Q     Okay.  And hanging out, what's that mean?
 6      A     Parties.
 7      Q     Parties, okay.
 8      A     Sporting events.
 9      Q     Sporting events.
10      A     Getting stopped in a car with other known gang
11   members where there might be drugs in the car would be
12   another example.
13      Q     How about getting --
14      A     Showing association.
15      Q     How about getting stopped in a car with
16   unknown gang members and there's nothing in the car
17   that's illegal?
18      A     There would still be the association.
19      Q     Okay.  So they could be just riding around
20   and -- and if the car gets stopped and the Wichita
21   police alleges that two of these people are already
22   gang -- are on a gang list and there's a third person,
23   that person can -- that's a -- that's meeting the
24   criteria, right?
25      A     It is meeting one of the criteria, yes.
```

```
1     Q    Okay.  Number (G) says, "Has been arrested
2  more than once in the company of identified criminal
3  street gang members for offenses which are consistent
4  with usual criminal street gang activity."  Do you see
5  that?
6     A    Yes.
7     Q    What's that mean?
8     A    I believe the statute identifies criminal
9  street gang activity.
10    Q    Okay.
11    A    And if the subject is arrested with gang
12 members that are engaged in a pattern of criminal street
13 gang activity, that is a criteria.
14    Q    Okay.  So if you look down here, this -- down
15 under section (c), that -- that is their definition of
16 criminal street gang activity.  Do you see that?
17    A    Yes, ma'am.
18    Q    And it says, "Means the commission or
19 attempted commission of or solicitation or
20 conspiracy --"
21         THE STENOGRAPHER:  Can you slow down, please.
22         MS. WOODY:  Sorry.  I am so sorry.
23         THE STENOGRAPHER:  Thank you.
24 BY MS. WOODY:
25    Q    "Means the commission or attempted commission
```

1   of or solicitation or conspiracy to commit one or more
2   person's -- person felonies, person misdemeanors, felony
3   violations of KSA 2021," and it gives other statutes
4   there, "and amendments thereto, any felony violation of
5   any provision of the Uniformed Controlled Substances Act
6   or the violation of any provision -- of -- of comparable
7   juvenile offenses, which if -- which if --"
8              THE STENOGRAPHER:  Comparable...
9   BY MS. WOODY:
10      Q    "-- which if committed by an adult, would
11  constitute the commission of such felonies or
12  misdemeanors on separate occasions."  Do you see that?
13      A    Yes, ma'am.
14      Q    Is there anything in there that says that that
15  activity has to be related to -- to a gang?
16      A    No, ma'am, but it is the definition of
17  criminal street gang activity.
18      Q    Okay.  So criminal street gang activity is any
19  drug -- is any drug felony, right?
20             MR. BRANSON:  Object to form.
21      A    As it -- as it relates to the statute, that's
22  what it appears to state.
23  BY MS. WOODY:
24      Q    Okay.  So if a person is engaged in criminal
25  activity, even if it's not a benefit to the gang and

```
 1   even if it's just a personal benefit to them -- to them
 2   personally, it can still be called criminal street gang
 3   activity?
 4        A    And that's where we go back to the vetting
 5   process when that TOPS card or when that nomination
 6   comes in.
 7        Q    Okay.
 8        A    And if it's no longer called a TOPS card, if
 9   you can -- correct me whenever you feel like it.
10        Q    That's good enough.  I think we all know
11   what -- what -- we all understand TOPS card or whatever
12   they have used subsequent to it.
13             Okay.  Now, if you go back up to --
14             And that's -- that's a little different from
15   the Polk County definition of criminal street gang
16   activity, isn't it?
17        A    I'd have to -- it's been a while since I read
18   that particular paragraph, but I'd have to go back and
19   read it.
20        Q    I believe it says that the criminal activity
21   has to be in support of the gang --
22        A    In furtherance of.
23        Q    In furtherance of actual gang activity or
24   benefiting the gang itself, that kind of thing.  Does
25   that ring a bell?
```

```
 1      A    Yes, ma'am.
 2      Q    Okay.  So that's different from this?
 3      A    Yes.
 4      Q    Okay.
 5      A    In its wording, yes.
 6      Q    Yes.  All right.
 7           Okay.  Number (H) -- I'm sorry, we were going
 8   back to (2)(H), the criteria.  It says, "Is identified
 9   as a criminal street gang member by physical evidence,
10   including but not limited to photographs or other
11   documentation."  Do you see that?
12      A    Yes.
13      Q    What's that mean?
14      A    So that would be I believe an opinion that
15   would need to be rendered by the District Attorney's or
16   State Attorney's Office - I don't know what they're
17   called in Kansas - to what they would accept as physical
18   evidence.  Some items that might be could be bandannas,
19   beads, photographs, things of that nature.
20      Q    Okay.  But none of that's spelled out as to
21   exactly what that is in the statute; is that correct?
22      A    Correct.
23      Q    Okay.  And you don't find any of those --
24   anything within that statute to be vague?
25      A    No, ma'am, because they usually come with
```

```
 1   context and review.
 2       Q    Right.  So you'd have to look at the context
 3   in order to understand exactly what -- what's being
 4   prevented -- what is being -- what is -- they seek to
 5   prohibit here, correct?
 6       A    Prohibit, I'm not sure the --
 7       Q    Okay.  Well --
 8       A    It's -- it's to identify.
 9       Q    Okay.
10       A    Yeah.
11       Q    You're right.  You're right.  You'd have to
12   look to the context as to what they mean here in order
13   to identify somebody as a gang member, correct?
14       A    Yes, ma'am.
15       Q    Okay.
16            MR. BRANSON:  Teresa, is this a good spot for
17       a break?
18            MS. WOODY:  Sure, sure.  Let's take a break.
19            THE VIDEOGRAPHER:  All right.  We're off the
20       video record at 12:25 p.m.
21            (Recess taken.)
22            THE VIDEOGRAPHER:  This is the beginning of
23       Media Unit No. 3.  We're on the video record at
24       12:35 p.m.
25
```

```
 1        Q    So that's it?
 2        A    Yes.
 3        Q    Okay.  Take a look at Page 16.  In there you
 4   talk about -- I believe this is another safeguard that
 5   you believe prevents overinclusiveness, correct?
 6        A    Which portion?
 7        Q    This -- well, the top -- the top paragraph.
 8             Well, this whole -- this whole section is
 9   regarding safeguards to keep somebody from being
10   unjustifiably identified, correct?
11        A    Yes, as well as the Master Gang List
12   confidentiality --
13        Q    Okay.  And that's what I want to talk about
14   next.  The -- you say, "The WPD 5 -- Policy 527
15   identifies the Master Gang List as confidential,"
16   correct?
17        A    Yes.
18        Q    And we've already talked about the fact that
19   there is testimony and evidence that individuals have
20   released gang information to members of the community
21   who are not law officers and you said you don't know
22   anything about that and you stand on your former --
23   former testimony with respect to that?
24        A    Yes, ma'am.
25        Q    Okay.  With respect to your opinion that
```

```
 1   the -- the statute that -- no.  Statute 21-6313 is not
 2   vague, is that a legal opinion?
 3        A    No, ma'am.  I wouldn't make a legal opinion on
 4   that.
 5        Q    Okay.  So you aren't -- you're not making --
 6   you're not opining that, for constitutional purposes,
 7   it's not vague?
 8        A    I am not opining that, no.
 9        Q    Okay.  Let's take a look at section II of
10   your -- of your opinion starting on Page 16, and there
11   you are talking about the individual harms of the named
12   plaintiffs, correct?
13        A    Yes, ma'am.
14        Q    And first you've talked about Christopher
15   Cooper, so let's just focus on him for a second, and
16   again you -- the -- the information that you've recited
17   here in quotations is information that came from
18   Judge Melgren's order on the motion to dismiss, correct?
19        A    Yes, ma'am.
20        Q    And I just want to -- for all of these
21   individuals, for Christopher Cooper, for Elbert
22   Costello, for Martel Costello, for Jeremy Levy and for
23   Progeny, you're basing your opinion only on the
24   information that was present in Judge Melgren's order,
25   correct?
```