## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination
Innovations, Inc., CHRISTOPHER
COOPER, ELBERT COSTELLO, MARTEL
COSTELLO, and JEREMY LEVY, JR., on
behalf of themselves and others similarly
situated,

    *Plaintiffs,*

 vs.

              Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court are the parties' opposing Motions for Summary Judgment: Defendant's

(Doc. 205) and Plaintiffs' (Doc. 206).  Organizational Plaintiff Progeny, along with individual

Plaintiffs Christopher Cooper, Elbert Costello, Martel Costello and Jeremy Levy, Jr., bring this

putative class action on behalf of themselves and others similarly situated. Collectively, Plaintiffs

seek as relief a declaration that K.S.A. § 21-6313 is unconstitutional under the First and Fourteenth

Amendments and injunctive relief effectively dismantling the Wichita Police Department

("WPD")'s Gang List.  The Gang List is purportedly a list of persons whom WPD personnel have

determined meet the definition of a "criminal street gang member" under the criteria set out in

K.S.A. § 21-6313(b).  The individual Plaintiffs contend they were wrongfully designated as "criminal street gang member[s]" and added to the Gang List, which has negatively affected their lives in a host of ways.  At this stage in the litigation, only four claims remain: Count I (due process—vagueness), Count III (procedural due process), Count VI (First Amendment—direct prohibition), and Count VII (First Amendment—chilling effect).

For the reasons set forth below, the Court finds that Progeny lacks standing for Count I and all Plaintiffs lack standing for Count VI.  However, genuine issues of material fact prevent summary judgment in favor of either side on the remaining Counts.  Accordingly, the Court dismisses Count I as to Progeny and Count VI as to all Plaintiffs without prejudice and otherwise denies the parties' Motions.

## I.   Factual and Procedural Background[1]

### A.   The parties

The WPD is a department of the City of Wichita ("the City") government and is responsible for enacting the City's policies.  It is the WPD's Policy 527, and subsequent enactment into state law as K.S.A. § 21-6313, which comprises the subject of this lawsuit.

The individual Plaintiffs and class representatives are Christopher Cooper, Elbert Costello, Martel Costello and Jeremy Levy, Jr., each of whom are listed on the WPD's Gang List as active gang members.  All four testified in depositions and declarations that they are not and have never been gang members.

---

[1] The facts are those uncontroverted by the parties unless otherwise noted and are accepted as true for the purposes of this Order.

Cooper was arrested in 2014 on the charge of first-degree murder after driving a shooter away from a party. At that time, Cooper learned that he was an "active gang member" on the Gang List. The magistrate set his pre-trial bail at $50,000. He was afterward convicted for obstruction of justice and sentenced to time in prison.

Martel Costello ("Martel") first learned of his own gang designation in either 2017 or 2018 when he was arrested for possession of a firearm and marijuana in violation of his parole. On two separate occasions, Martel violated his parole while attending funeral services for a family member because family members also on the Gang List were in attendance.

Elbert Costello ("Elbert") was added to the Gang List in 1997.[2] In 2011, Elbert plead guilty to possession of drug paraphernalia and received one year probation. Because of his gang designation, Elbert incurred additional conditions of release while on probation. Elbert repeatedly violated those conditions, resulting in six months in jail and three additional years' probation. Elbert believes that his association with family members, several of whom are also designated gang members or associates, led to his own gang designation. He also believes that his presence at a funeral while wearing a red Phillies hat led to the WPD renewing his active status on the Gang List.

Levy believes he was added to the Gang List at 13 years old when the WPD pulled over a car driven by one of his cousins who was already on the Gang List. Five years later, Levy was charged and ultimately convicted of first-degree felony murder. The magistrate assigned to Levy's case set his bail at $50,000. Levy is currently serving his sentence.

---

[2] The reasons for the WPD doing so are not before this Court.

Rounding out the named Plaintiffs, Progeny is a nonprofit organization in Wichita, Kansas, that operates as a youth/adult partnership focused on reimagining the juvenile justice system and reinventing in community-based alternatives.  Progeny staff and members are on the Gang List, including D.B.W. (inactive gang member), D.B. (active gang member), K.C. (active gang member), and A.M. (active gang member).

Progeny maintains that K.S.A. § 21-6313 and Policy 527 list strongly discourage it from hosting town halls or meetings of any kind, as they might result in Progeny staff or attendees being added to the Gang List.  Progeny believes § 21-6313 and Policy 527 effectively prohibit it from providing services to those individuals known to be on the Gang List, as doing so may result in gang designations for Progeny members working with those persons.

**B.     K.S.A. § 21-6313 et. seq.**

Plaintiffs challenge K.S.A. §§ 21-6313 through 21-6316[3] as unconstitutional.  Together, these statutes define several terms relevant to criminal gangs, criminalize criminal street gang recruitment and intimidation, and mandate a higher bond for any criminal street gang members.  Upon passage by the Kansas legislature, Governor Kathleen Sebelius signed the relevant statutes into law on May 19, 2006.

K.S.A. § 21-6313 functions as the definitional statute.  Under K.S.A. § 21-6313(a), a "criminal street gang" means any organization, association, or group, whether formal or informal:

(1) Consisting of three or more persons;

(2) having as one of its primary activities the commission of one or more person felonies, person misdemeanors, felony violations of K.S.A. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform

---

[3] Plaintiffs challenge K.S.A. §§ 21-6314 and 21-6315 without making any arguments specific to these statutes.  Rather, Plaintiffs main concern stems from the use of § 21-6313's definitions within those sections.  Therefore, the Court will not address them here.

controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors;

(3) which has a common name or common identifying sign or symbol; and

(4) whose members, individually or collectively, engage in or have engaged in the commission, attempted commission, conspiracy to commit or solicitation of two or more person felonies, person misdemeanors, felony violations of K.S.A. 21-5701 through 21-5717, and amendments thereto, any felony violation of any provision of the uniform controlled substances act prior to July 1, 2009, or the comparable juvenile offenses, which if committed by an adult would constitute the commission of such felonies or misdemeanors or any substantially similar offense from another jurisdiction.

The statute also defines "criminal street gang member" and "criminal street gang associate." Persons must meet three or two, respectively, of the following conditions or self-admit gang membership/association:

(A) Is identified as a criminal street gang member by a parent or guardian;

(B) is identified as a criminal street gang member by a state, county or city law enforcement officer or correctional officer or documented reliable informant;

(C) is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information;

(D) frequents a particular criminal street gang's area;

(E) adopts such gang's style of dress, color, use of hand signs or tattoos;

(F) associates with known criminal street gang members;

(G) has been arrested more than once in the company of identified criminal street gang members for offenses which are consistent with usual criminal street gang activity;

(H) is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation;

(I) has been stopped in the company of known criminal street gang members two or more times; or

(J) has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual.[4]

Finally, K.S.A. § 21-6316 governs increased bail for criminal street gang members.  In full, it states:

> When a criminal street gang member is arrested for a person felony, bail shall be at least $50,000 cash or surety, and such person shall not be released upon the person's own recognizance pursuant to K.S.A. 22-2802, and amendments thereto, unless the court determines on the record that the defendant is not likely to reoffend, an appropriate intensive pre-trial supervision program is available and the defendant agrees to comply with the mandate of such pre-trial supervision.

## C.    WPD Policy 527

Policy 527 puts § 21-6313 into practice on the streets of Wichita.  In documenting gang members, the WPD maintains two separate but related databases: the Gang Database and the Master Gang List.[5]  The Gang Database contains records of all active and inactive gang members and associates, whereas the Master Gang List consists solely of active gang members.

Any state, county, or city law enforcement officer or correctional officer may nominate an individual for inclusion on the Master Gang List.  However, only Gang Intelligence Officers can designate a person as a gang member or associate after reviewing whether they meet criteria of § 21-6313.  Likewise, only Gang Intelligence Officers can add, remove, activate, or inactivate a person from the Gang List.  WPD officers monitor members of the Master Gang List for any violations of probation conditions, bond, and pretrial restrictions.

Once on the Master Gang List, Policy 527 provides that the individual will remain designated as "active" for a minimum of three years, not including time served in custody.  If after

---

[4] *Id.* § 21-6313(b)(2)(A)–(J).

[5] When referring to these lists together, the Court simply uses "the Gang List."

three years the individual has not met any of the criteria under § 21-6316(b), they will be marked inactive with their names removed from the Master Gang List. However, their entries remain visible in the Gang Database, which is only accessible by Gang Intelligence Officers. Policy 527 does not provide an opportunity for an individual to remove their name the Gang Database entirely. In fact, WPD has removed a person's name from the Gang List only once. On that occasion, the WPD instructed a juvenile with an inactive gang member status to "have good grades in school" and "do well at home" for a certain time. After several months of apparent success, Chief Gordon Ramsay directed that the juvenile be removed from the Gang List.

Policy 527 further specifies that the Master Gang List is confidential and will only be released to commissioned law enforcement, correctional officers, and those authorized to receive Master Gang List information by various high-level supervisors within the WPD. In contrast, the Gang Database has not been shared with any other agency since 2009 and is not accessible through any of the shared criminal databases WPD utilizes, such as EJustice, SPIDER, or NICHE. Practically speaking, only the Master Gang List plugs into the WPD's EJustice system, a criminal database accessible by multiple law enforcement agencies. Thus, information within the Master Gang List is available to other law enforcement agencies. The WPD also shares the Master Gang List with the prosecutor's office. Furthermore, Policy 527 requires WPD officers to identify, in an arrest affidavit for a person felony, whether a person is documented on the Gang Database as a gang member or gang associate.

In addition to the official intragovernmental sharing of the Master Gang List, former WPD Captain Wendell Nicholson also shared information from the Gang Database with the public at least 22 times. When this unauthorized dissemination was discovered, Nicholson lost his job, faced criminal charges, and ultimately received diversion.

The WPD does not notify adults of their placement on the Master Gang List.  However, WPD policy requires supervisors from the Gang Unit to attempt to contact the parent or guardian of any juvenile placed on the Master Gang List.  If contact is successful, the supervisor will inform the parent or guardian how the juvenile met the gang criteria and advise them of intervention options and resources.  The WPD's successful notification rate is roughly 50%.

As of May 2022, at least 5,507 individuals had entries in the Gang Database.  Of these, 1,725 are documented as active gang members, 3,293 are documented as inactive gang members, 221 are listed as gang associates, and 261 are documented as deceased.

**D.     Contested facts**

Plaintiffs contend that the WPD disseminates information contained in the Master Gang List and Gang Database to the public.  First, they claim a printed copy of entries identifying all individuals on the Gang List was once disclosed publicly after being left on the trunk of a WPD squad car. They next point to a complainant in 2011 who informed the WPD that her two sons' names and address listed in a "Gang Activity Informational Bulletin" distributed at a liquor store. Opposed to this characterization of the facts, Defendants staunchly assert that the public does not have access to either the Master Gang List or the Gang Database.  In support, Defendant points to evidence that two of the three instances of leaked Gang List information originated from unauthorized sources outside WPD.  The third instance, unauthorized disclosure by Captain Nicholson, resulted in criminal charges.

Several of the individual Plaintiffs complain that they lost jobs or scholarships because of the background checks which purportedly revealed their gang designations.  In contrast, Defendants challenge Plaintiffs' claimed harms as subjective and without basis in the record.  For

instance, Defendant points to the lack of evidence—besides Plaintiffs' own testimony—showing that they have lost any jobs or scholarships because of their gang designations.

The parties also disagree over the criteria the WPD employs to add or renew a person as an active gang member or associate.  For example, Plaintiffs claim that persons have had their active gang member status renewed for as little as wearing a red Phillies hat.  In contrast, Defendants offer evidence from WPD personnel that the more broadly applicable criteria are applied in context—i.e., wearing a red Phillies hat while flashing known gang signs or doing so in a video with other designated gang members.

Plaintiffs further claim that they have been either placed or renewed on the Gang List solely for interacting with family members at funerals, concerts, or other locations.  For instance, on two separate occasions, Martel violated his parole by attending funeral services because family members on the Gang List also attended.  Because of this and similar events, Plaintiffs claim that they must shun family members and friends who may be on the Gang List, in order to avoid meeting K.S.A. § 21-6313(b)(2)(F).

Progeny likewise claims that it has also suffered associational harms.  For example, Progeny cancelled a planned protest after the WPD contacted Progeny.[6]  Furthermore, Progeny claims it suffered associational harms from police presence outside one of its meetings.  Progeny's founder and Rule 30(b)(6) witness, Atkins, submitted a declaration stating that Progeny's members and staff consistently fear placement on the Gang List due to the possible attendance of those already having gang designations.  This fear then, according to Atkins, discourages Progeny from

---

[6] Further detail regarding the WPD's "contact" with Progeny is not before this Court.

holding in person meetings of any kind.  Defendants, however, challenge Atkins' testimony and the true reasons for Progeny canceling the protest.

While acknowledging that applying K.S.A. § 21-6313(b)'s criteria leaves room from individual discretion, Defendants rely on evidence showing that officers generally adhere to the same general unspoken policies.  For instance, Defendant offers testimony from officers showing that the WPD does not consider association with family members, even those designated as active gang members, relevant under K.S.A. § 21-6313(b)(2)(F).  Furthermore, Defendant point to evidence showing that other considerations besides interaction with family played a role in each of Plaintiffs' active gang member status renewal.

**E.      Procedural history**

Plaintiffs initiated this lawsuit on April 15, 2021, naming the City of Wichita, Gordon Ramsay, and Chad Beard as Defendants and alleging seven counts for various constitutional violations.  On January 10, 2022, the Court issued its order granting in part and denying in part then-Defendants' motion to dismiss.[7]  The Court dismissed Ramsay and Beard from the case, as well as Counts II, IV, and V.  What remained were Count I (due process—vagueness), Count III (procedural due process), Count VI (First Amendment—direct prohibition), and Count VII (First Amendment—chilling effect) asserted against the City.

On October 10, 2023, the Court granted Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(2).  The present class definition covers "all living persons included in the Wichita Police Department's Gang List or Gang Database as an Active or Inactive Gang Member or Gang Associate."

---

[7] *Progeny v. City of Wichita*, 2022 WL 93406 (D. Kan. 2022).

Currently pending are the parties' opposing Motions for Summary Judgment, with each side moving for summary judgment on all claims before this Court.  Defendant's focuses its arguments on Plaintiff's perceived lack of standing.  In contrast, Plaintiffs contend that they not only have standing but are entitled to summary judgment on the merits for each of their claims. As these Motions have been fully (and voluminously) briefed, they are now ripe for adjudication by this Court.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[10]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12]  The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[13]

---

[8] Fed. R. Civ. P. 56(a).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

### III.    Analysis

**A.    Standing**

Before addressing the substantive issues of the case, the Court must ensure it has jurisdiction to adjudicate Plaintiffs' claims.  Defendant challenges the Court's jurisdiction based on standing.  It argues the evidence fails to show any Plaintiff: (1) suffered an injury in fact; (2) that is fairly traceable to the WPD's Policy 527 and maintenance of the Gang Database and Master Gang List; and (3) that is likely to be redressed by a favorable judicial decision.

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."[14]  "Article III of the United States Constitution restricts the jurisdiction of federal courts to the adjudication of 'Cases' or 'Controversies.'"[15]  "To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing by establishing (1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."[16]

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[17]  "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too

---

[14] *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).

[15] *Fish v. Schwab*, 957 F.3d 1105, 1117 (10th Cir. 2020) (quoting U.S. CONST. art. III, § 2, cl. 1).

[16] *Id.* (cleaned up); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992)

[17] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560).

speculative for Article III purposes—that the injury is *certainly* impending."[18]  Similarly, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."[19]

Regarding the second element of standing, a plaintiff establishes causation "when the injury is fairly traceable to the challenged conduct of the defendant."[20]  "This requires proving that there is a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."[21]

Finally, redressability requires the plaintiff to show that the injury will likely be redressed by a favorable decision.[22]  This showing must rise above mere speculation.[23]  "A showing that the relief requested *might* redress the plaintiff's injuries is generally insufficient to satisfy the redressability requirement."[24]

The burden of proof is on the party asserting the Court has jurisdiction.[25]  At the summary judgment stage, the party may no longer rely on allegations of standing, "but must set forth by affidavit or other evidence specific facts."[26]

When a plaintiff asserts several separate claims, he "must demonstrate standing for each claim he seeks to press."[27]  Although the individuals Plaintiffs assert each claim, Progeny joins in

---

[18] *Lujan*, 504 U.S. at 564 n.2 (further citation and quotations omitted).

[19] *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) (quoting *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734 (2008)).

[20] *Fish*, 957 F.3d at 1117 (further citations and quotations omitted).

[21] *Id.* at 1117–18 (further citations and quotations omitted).

[22] *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1152 (10th Cir. 2022).

[23] *Id.*

[24] *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012).

[25] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).

[26] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (further citation and quotations omitted).

[27] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

only Counts I (on behalf of its members) and VI (on its own behalf).[28]  Therefore, the Court will examine whether Plaintiffs have standing for each claim they assert against Defendant.

     *1.*    *Due process claims*

The individual Plaintiffs assert two separate Fourteenth Amendment Due Process claims through 28 U.S.C. § 1983: vagueness (Count I) and procedural due process (Count III).  Progeny joins in only Count I.  The standing inquiry for both claims is identical because Plaintiffs assert the same injury for each—specifically, reputational damage due to being designated "gang members."

Damage to one's reputation may implicate "a protectible liberty interest . . . that requires procedural due process in the form of a hearing to clear his name."[29]  However, "stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action."[30]  This is because "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."[31]

Instead, a plaintiff must meet what courts commonly describe as the "stigma plus" standard.[32]  The stigma plus standard contains two distinct elements: "(1) the government made a false statement about the plaintiff that was sufficiently derogatory to injure his reputation, and that

---

[28] The Court has already held that based on the types of Progeny has organizational standing to bring

[29] *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (further citations and quotations omitted).

[30] *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir.1981).

[31] *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Brown v. Montoya*, 662 F.3d 1152, 1267 (10th Cir. 2011) ("[D]efamatory publications, however seriously they may have harmed respondent's reputation, did not deprive [plaintiff] of any 'liberty' or 'property' interests protected by the Due Process Clause.") (quoting *Paul*, 424 U.S. at 712).

[32] *See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1229 (10th Cir. 2020).

-14-

(2) the plaintiff experienced a governmentally imposed burden that significantly altered his status as a matter of state law."[33]   To meet the second prong, the Tenth Circuit has "required an alteration of a state-recognized right to allege a stigma-plus claim."[34]

Classic examples of a "significant, material change in a legal status" include "losing the right to drive a car or being wrongfully registered as a sex offender."[35]   Other examples include losing the right to buy liquor, wholly preventing any federal employment, or barring a person from attending school.[36]   In contrast, injuries such as psychological trauma or impaired prospective employment opportunities do not alter a person's legal status.[37]   Furthermore,  "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."[38]

There can be little doubt that the label "gang member" or "gang associate" carries a stigma.[39]   "[D]esignation as a gang member inescapably implies that a person is involved, at least in some capacity, with criminal activity, which is generally recognized as defamatory *per se* under relevant state law."[40]   Thus, the Court concludes that gang designations are sufficiently derogatory to injure one's reputation.

---

[33] *Id.* at 1230 (cleaned up) (further citations omitted).

[34] *Al-Turki v. Tomsic*, 926 F.3d 610, 618 (10th Cir. 2019).

[35] *Hinkle*, 962 F.3d at 1231.

[36] *Al-Turki*, 926 F.3d at 617 (summarizing cases) (further citations omitted).

[37] *See Hinkle*, 962 F.3d at 1230–31 (summarizing and quoting relevant examples from caselaw on the "stigma plus" standard).

[38] *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *see also Al-Turki*, 926 F.3d at 619 (citing with approval *Behrens v. Regier*, 422 F.3d 1255, 1256–63 (11th Cir. 2005) where "the plaintiff failed to allege a plus factor giving rise to a procedural-due-process claim because state law 'provide[d] that the decision to place a child in a prospective home is a discretionary one,' and therefore did not confer any adoption right of which the plaintiff was deprived").

[39] *See Progeny v. City of Wichita*, 2022 WL 93406, at *12 (D. Kan. 2022) (summarizing caselaw regarding classification of "gang member" as defamatory per se).

[40] *Id.* at *12 (citations omitted).

However, several issues of fact preclude summary judgment on this ground.  First, there is the disputed fact of whether the WPD wrongfully designated Plaintiffs as gang members.  Plaintiffs claim complete innocence—Defendant disagrees.  This is an issue best left for trial where the Court may make credibility determinations and consider the weight of evidence.

Furthermore, whether the "public" has access to the Gang List is a genuine issue of fact at this point.  Plaintiffs cite evidence showing at least two public disclosures of the Gang List.  Defendants counter by stating that one of the leaks by former Captain Nicholson resulted in criminal charges and the other came via non-WPD personnel.  However, the fact remains that the public at large was informed of gang designations.

Regardless, the Master Gang List is accessible by various other law enforcement agencies, including the Kansas Department of Corrections.  The WPD also provides a suspect's gang designation in an arrest warrant, which is provided to the magistrate, the prosecutors, and the defendant's attorney.  As noted by this Court in its previous order, the consensus among courts appears to be that intra-governmental disclosures of an individual's gang-member designation are sufficiently public to damage one's reputation.[41]  Defendants have not pointed to a single case where the court expressly required publication to laypeople, the typical "public."  Thus, the Court

---

[41] *See Pedrote-Salinas v. Johnson*, 2018 WL 2320934, at *5 (N.D. Ill. 2018) (citing *Larry v. Lawler*, 605 F.3d 954, 958 (7th Cir. 1978) and *Castillo v. County of Los Angeles*, 959 F. Supp. 2d 1255, 1261–62 (C.D. Cal. 2013)); *Medrano v. Salazar*, 2020 WL 589537, at *6 n.3 (W.D. Tex. 2020) ("A stigmatizing label can be sufficiently public even when the government shares it only with other governmental entities and agencies on a 'need to know' basis.") (citations omitted); *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1367–68 (11th Cir. 1993) ("As in *Bishop* and *Sutton*, where the courts found no deprivation of liberty, appellees did not disclose any negative information about BJC to the public. And, although appellees discussed BJC's case with government lawyers, they did not communicate the allegations of BJC's misconduct to any other government agency.").

concludes that Plaintiffs show a genuine issue of material fact as to whether Defendant published a derogatory statement by including them on the Gang List.[42]

This initial showing, however, is not enough to establish standing. Plaintiffs must also demonstrate that they have suffered a significant material change in their legal status because of their inclusion on the Gang List. Only one injury is necessary to establish standing for Plaintiffs' due process claims.

Here, K.S.A. § 21-6316 imposes a minimum bond of $50,000 for criminal street gang members. The Court is unwilling at this stage in the litigation to hold that an altered minimum bail amount is insufficient as a matter of law to constitute a significant altered legal status. Accordingly, the individual Plaintiffs have adequately established a genuine issue of material fact as to whether they suffer an injury-in-fact traceable to their placement on the Gang List. Furthermore, that injury is fully redressable should they receive a favorable decision from this Court. Therefore, the Court finds that for the purposes of this Order, Plaintiffs have standing to assert their due process claims against Defendant.

The same cannot be said for Progeny. An association has standing bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[43] The third element becomes a matter of individualized proof.[44]

---

[42] Notably, those solely in the Gang Database do not suffer this harm, as that information is only accessible to WPD personnel via a name search.

[43] *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

[44] *Id.* at 344.

As previously discussed by the Court, Progeny can meet the first two elements quite easily.[45]  But any stigma-plus standing analysis necessarily involves individualized proof of any injury-in-fact.  Indeed, the Court already dismissed Plaintiffs' Count II—violation of due process brought by Progeny on behalf of its members—on the basis of standing.[46]   Progeny's lacks standing on Count I for the exact same reason.  Therefore, the Court dismisses without prejudice Count I as brought by Progeny for lack of standing.

>    *2.    First Amendment*

Plaintiffs also assert two First Amendment claims, each containing two distinct parts.  In Count VI, Plaintiffs assert that K.S.A. § 21-6316 and Policy 527 directly prohibit them from exercising their rights to freedom of expression and freedom of association.  And in Count VII, Plaintiffs claim that K.S.A. § 21-6316 and Policy 527 impermissibly chill the same.

>    a.       Freedom of expression through symbolic conduct

Before reaching the individual Counts, the Court must address Plaintiffs' freedom of expression claim so far as it relies on symbolic speech.  In its prior order, the Court concluded that "this issue, though framed under the First Amendment, is actually a different species of the procedural due process claim."[47]  There, the Court realized it

> must address a threshold issue in First Amendment cases involving expressive conduct or "symbolic speech," rather than written or verbal expression.  Namely, does the plaintiff's conduct actually constitute protected speech under the First Amendment?  A necessary element to transform conduct into protected speech is that the plaintiff had the "intent to convey a particularized message."  It is in addressing this element that the Court concludes this issue, though framed under

---

[45] *See Progeny*, 2022 WL 93406, at *9.

[46] *Id.* ("Progeny does not have associational standing for those claims that require individualized proof. Because in Count II, Progeny relies entirely on associational standing to bring its procedural due process claim on behalf of its members, and that claim will require individualized proof, that Count is dismissed.").

[47] *Id.* at *17.

the First Amendment, is actually a different species of the procedural due process claim discussed above.

In theory, there are two possible messages Elbert [Costello] could have been intending to convey by wearing his Phillies hat. He could have been trying to communicate "I like the Philadelphia Phillies and think they are an excellent baseball team." And if this is the case, Defendants' decision to renew his Gang List designation on this basis was not a punishment based on his communicated message. There is no allegation that Defendants intend to place persons on the Gang List simply because they are Phillies fans. Rather, if this was Elbert's message in wearing the Phillies cap, Defendants made a mistake about his message, and Elbert's grievance centers around the lack of opportunity to challenge the grounds underlying the renewal of his designation as a gang member. This, of course, is a feature of procedural due process.

The second possible message Elbert may have been trying to convey by wearing the hat is "I am a gang member." This is certainly the message Defendants understood Elbert to convey. But this is foreclosed by Elbert's own statements, accepted as true at this stage, that he is not, and has never been, a gang member. Accordingly, this cause of action, though brought under the First Amendment, is merely a facet of Plaintiffs' procedural due process claim.[48]

Although Plaintiffs reasserted their freedom of expression claims in the Pretrial Order, the Court's characterization of those claims remains the same. To the extent Plaintiffs' claim rely on symbolic speech, they are nothing more than a facet of Plaintiffs' procedural due process claims. Throughout this litigation, Plaintiffs have consistently maintained that they are *not* gang members. And yet, to prevail on any standalone freedom of expression claim regarding symbolic speech, Plaintiffs must argue that they *intended* to communicate gang affiliation through their expressive conduct. Obviously, that could not be further from Plaintiffs' position. Therefore, the Court once again concludes that any freedom of expression claim based on symbolic speech really is just a procedural due process claim repackaged. Accordingly, the Court need not address whether Plaintiffs have standing to assert this claim.

---

[48] *Id.* (citations omitted).

b.      Count VI—direct prohibition

Plaintiffs argue that their First Amendment expressive conduct claims are not limited solely to symbolic speech. Rather, they claim "the WPD's enforcement of K.S.A. 21-6313 through Policy 527 targets and punishes written expression in the form of tattoos and social media posts and through pretrial, probation, or parole gang conditions of release in a content-discriminatory manner."

A problem arises under Plaintiffs' theory of the case because K.S.A. § 21-6313 and Policy 527 do not prohibit anything. Therefore, Plaintiffs face no real threat of prosecution from engaging in *any* speech or association. Plaintiffs admit as much, instead framing the alleged "prohibition" as stemming from the "harms" inflicted on designated gang members and associates. Plaintiffs fail to cite any caselaw where the court found a statute to directly prohibit speech despite lacking any threat of prosecution, i.e., an unenforceable definitional statute such as K.S.A. § 21-6313. Rather, those facts form the classic example of a "chilling effect" scenario where some indirect threat of harm prevents plaintiffs from engaging in speech not directly prohibited.[49] From the brunt of Plaintiffs' arguments, it seems clear that their direct prohibition claim really is just another facet of their First Amendment chilling effect claim.

The same logic holds true for Plaintiffs' argument regarding "gang conditions of release," by which they refer any manner of release conditions, whether pretrial, supervised release,

---

[49] Plaintiffs briefly note that a "criminal street gang member or criminal street gang associate" as defined by K.S.A. § 21-6313's is a "covered person" under the Kansas RICO Act, § 21-6313. This, they argue, effectively prohibits and punishes any speech used by the WPD to designate someone as a gang member or associate. Plaintiffs' reasoning goes a step too far. The Kansas RICO statute, K.S.A. § 21-6329, makes clear that simply being a "covered person" is insufficient to constitute a crime or incur punishment. A covered person only incurs criminal liability upon meeting the other elements under § 21-6329(a). Thus, Plaintiffs cannot show that K.S.A. § 21-6313 directly prohibits speech.

probation, parole, etc.  Such release conditions—which may limit speech by restricting tattoos containing text, certain social media posts, association with other designated gang members, etc.— remain within the sole discretion of the courts, the secretary of corrections, and prisoner review boards who impose them.  No party responsible for imposing any gang conditions of release is before this Court.  Of course, the gang release conditions' "harms" may constitute consequences capable of chilling a person's exercise of First Amendment privileges.  However, the Court cannot reasonably hold that K.S.A. § 21-6313 and Policy 527 directly prohibit First Amendment activities through Plaintiffs' gang release conditions.

Regardless, Plaintiffs lack standing to assert any claim against Defendant for gang conditions of release imposed by other parties.  This is because such a claim fails the third element of standing—redressability.  Even if the Court were to find K.S.A. § 21-6313 and Policy 527 unconstitutional, that would not prevent courts or other parties from imposing the very gang conditions of release of which Plaintiffs now complain.  Furthermore, Plaintiffs' requested relief does not include prohibiting the WPD from having input in those parties' decisions regarding conditions of release.   Without showing redressability, Plaintiffs lack standing to assert any claim against Defendant that K.S.A. § 21-6313 and Policy 527 directly prohibit any speech or associative rights through the gang conditions.  And, as discussed above, Plaintiffs do not truly allege any other colorable basis for their direct prohibition claim.  Accordingly, the Court dismisses Plaintiffs' Count VI without prejudice for lack of standing.

c.      Count VII—chilling effect[50]

Plaintiffs' Count VII asserts a First Amendment chilling effect claim for both freedom of expression and association.  As no doubt predicted by the reader at this point, Defendant argues that Plaintiffs lack standing to assert this claim.

First Amendment claims based on perceived chilling effects necessarily present an inherent difficulty in showing injury-in-fact "because such injuries are, by definition, inchoate: the speech has not yet occurred and might never occur, yet the government may have taken no formal enforcement action."[51]  Therefore, "an injury-in-fact exists where a chilling effect arises from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement."[52]  In contrast, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."[53]

Once again, only one injury is necessary.  Here, the Court concludes that there is a genuine issue of material fact as to whether an increased presumptive bail amount constitutes "other consequences" sufficient to create a cognizable injury in fact.  Therefore, the individual Plaintiffs have standing to assert their First Amendment chilling effect claim.

Likewise, Progeny also submits evidence creating a genuine issue of material fact as to whether it has standing to bring its First Amendment chilled speech and association claims.

---

[50]   As per the Pretrial Order, Progeny only joins in Count VI—not Count VII.  However, since the Court construes Count VI as simply restating a First Amendment chilling effect claim, it seems clear that Progeny intends to assert such a claim.  Thus, the Court concludes Progeny joins in Count VII.

[51] *Rio Grande Found.*, 57 F.4th at 1160 (further citation and quotations omitted).

[52] *Id.* (cleaned up).

[53] *Citizen Ctr. v. Gessler*, 770 F.3d 900, 913 (10th Cir. 2014) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)).

Progeny has provided some evidence having to cancel events and losing participation due to members' fears of receiving gang designations through association with designated gang members. These "injuries" are continuing and actual, rather than hypothetical.  Whether they rise to the level of a concrete injury or merely subjective fear is a factual issue for which evidence on both sides exists.  At this stage, the Court must conclude that Progeny has created a genuine issue of material fact as to whether it has suffered an injury-in-fact.

Furthermore, Plaintiffs submit evidence that this injury is fairly traceable to Defendant's conduct in creating and maintaining the Gang List and may be redressed by favorable injunctive relief dismantling the Gang List.  The Court concludes for the purposes of this Order that genuine issues of material fact preclude summary judgment on the basis of standing.  Therefore, the Court denies Defendant's Motion on this ground.

**B.      Merits**

Having concluded that genuine issues of material fact regarding Plaintiffs' standing remain on Counts I, III, and VII, the Court must now examine the parties' competing arguments as to why they deserve summary judgment on the merits.  However, genuine issues of material fact as to each claim once again demonstrate that this case is one best left for trial.

*1.      Count I—vagueness*

A basic feature of Due Process under the Fourteenth Amendment is that a law must clearly define what it prohibits, or otherwise be held "void for vagueness."[54]  "Where a law deals with areas of First Amendment import, there is the additional concern that the uncertain terms will inhibit those First Amendment freedoms, as 'citizens will steer far wider of the unlawful zone than

---

[54] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

if the boundaries of the forbidden areas were clearly marked.'"[55]   Thus, stricter standards apply when vagueness concerns overlap with First Amendment protections.[56]

A statute is unconstitutionally vague in two circumstances: (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement."[57]  Void for vagueness challenges come in two species.  First, a plaintiff may challenge the statute as vague as applied to his particular circumstances.[58]  The analysis of an as-applied claim is tethered to the factual context in which the statute was applied to the plaintiff.[59]  Second, a plaintiff may allege that a statute is facially vague.[60]  Finding a statute facially vague is "strong medicine," and requires a plaintiff to show that "the challenged law would be vague in the vast majority of its applications."[61]

Plaintiffs' claims as set forth in the Pretrial Order do not specify whether they challenge K.S.A. § 21-6313 facially or as applied.  Their briefing, however, indicates that they seek to challenge it on both grounds.

### a.  Facial challenge

Plaintiffs' vagueness challenge implicates First Amendment concerns because K.S.A. § 21-6313 allows WPD officers to consider potential gang members' speech and associates. "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First

---

[55] *Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006) (quoting *Grayned*, 408 U.S. at 109) (alterations omitted).

[56] *Id.*

[57] *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56–57 (1999)).

[58] *See Galbreath v. City of Oklahoma City*, 568 F. App'x 534, 539 (10th Cir. 2014).

[59] *Id.* (citing *United States v. Franklin–El*, 554 F.3d 903, 910 (10th Cir. 2009)).

[60] *See Dr. John's*, 465 F.3d at 1157.

[61] *Id.* (further quotations and citation omitted).

Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep."[62]   However, "even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests."[63]   "In determining whether a law is facially invalid, [courts] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."[64]

Here, genuine issues of material fact prevent either party for achieving summary judgment on this claim, namely: (1) whether K.S.A. § 21-6313 is impermissibly applied in a substantial number of cases compared to the statute's plainly legitimate sweep and (2) whether Plaintiffs' gang designations deprive them of any liberty interest.   Because these genuine issues of material fact remain, the Court denies the parties' Motions on this claim.

    b. As-applied challenge.

"As-applied vagueness challenges involve a factual dimension in that vagueness is determined in light of the facts of the case at hand."[65]   Plaintiffs contend that, as applied to them, K.S.A. § 21-6313's provisions are vague and arbitrarily enforced by the WPD.   This, however, is where the parties' controverted facts differ wildly.   Furthermore, facts vital to this question seem to be missing from the record, such as what criteria the WPD relied upon to add Plaintiffs to the Gang List in the first place.   Thus, just like Plaintiffs' facial challenge, genuine and material factual

---

[62] *Morales*, 527 U.S. at 52 (further citation and quotations omitted).

[63] *Id.*

[64] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008).

[65] *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1234 (10th Cir. 2023) (further citations and quotations omitted).

disputes prevent summary judgment on this claim. Accordingly, the Court denies both parties' Motions as to Count I.

    2.    *Count III—procedural due process*

Here, the analysis for Plaintiffs' procedural due process claim comports exactly with the above standing analysis. After all, a key issue for both standing and Plaintiffs' procedural due process on the merits is whether Plaintiffs have alleged the deprivation of a liberty interest in their reputations. Genuine issues of material fact remaining in this analysis include; (1) whether the WPD's designation of Plaintiffs as "gang members" was false; (2) whether Plaintiffs suffered an alteration of a significant legal status; and (3) whether any process exists at all for challenging Plaintiffs' gang designations. Because the facts key to answering these questions remain controverted, the Court concludes that summary judgment is inappropriate. Accordingly, both parties' Motions are denied as to this claim.

    3.    *Count VII—First Amendment chilled speech and association*

As noted above, Plaintiffs' First Amendment claim relies on the chilling effect of K.S.A. § 21-6313 and Policy 527. Fundamentally, the core factual issue over which the parties disagree is whether Plaintiffs' fear is merely subjective or amounts to an objectively justified fear of real consequences. The proper course of action is to allow the parties to contest the issue at trial, after which the Court may make findings of fact necessary to reach a conclusion on this issue. For now, genuine issues of material fact preclude summary judgment. Accordingly, the Court denies both parties' Motions on Plaintiffs' First Amendment chilling effect claims.

**IT IS THEREFORE ORDERED** that Count I as to Progeny and Count VI as to all Plaintiffs are **DISMISSED** without prejudice for lack of standing.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 205) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judge (Doc. 206) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 30th day of January, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE