IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc., CHRISTOPHER COOPER, ELBERT COSTELLO, MARTEL COSTELLO, and JEREMY LEVY, JR., on behalf of themselves and others similarly situated,

                *Plaintiff(s)*,

v.

CITY OF WICHITA, KANSAS,

                *Defendant*.

Case No. 6:21-cv-01100-EFM-ADM

## PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT ROBERT MATEO PURSUANT TO RULE 702

Plaintiffs seek an order to exclude and strike the testimony of Defendant's expert Robert Mateo. Mr. Mateo's qualifications and purported testimony fall short of the threshold requirements set forth in Federal Rule of Evidence 702. In addition, the Court should strike Mr. Mateo's impermissible factual and legal conclusions that none of the named Class Representatives suffered harm from their inclusion in the Gang Database, all of which he recanted in his deposition as mere speculation. For the following reasons, the Court should exclude Mr. Mateo's testimony in its entirety and strike Section II of his Expert Report under Rule 702, or alternatively, under Rule 403.

## INTRODUCTION

Plaintiffs bring this lawsuit pursuant to 42 U.S.C. § 1983 on behalf of themselves and a class of similarly situated individuals, seeking to end the Wichita Police Department's ("WPD") practices related to its Master Gang List and Gang Database. Specifically, Plaintiffs challenge K.S.A. 21-6313, *et seq*. and WPD policies based upon those statutes as unconstitutionally vague and overbroad, failing to provide procedural due process under the Fourteenth Amendment to the

U.S. Constitution, and violating Plaintiffs' First Amendment rights to freedom of association and expression. Plaintiffs produced an expert report from their expert witness, Dr. Ana Muñiz, an Assistant Professor of Criminology, Law, and Society with expertise in the areas of policing; gang profiling and enforcement; local, state, and federal gang databases; federal intelligence gathering; immigration enforcement; digital surveillance; and the intersection of these topics with race.

To rebut Dr. Muñiz's testimony, Defendant retained Robert Mateo, a Florida career law enforcement officer. He has never studied gang databases or the effects on individuals listed in such databases. Mr. Mateo is not familiar with gang database best practices. He also concedes that he is not an expert on the constitutionality of gang criteria or statutes. Mr. Mateo has never testified in a § 1983 case or opined on the constitutionality or appropriateness of a gang database or statute. Under these circumstances, the Court should perform its "gatekeeping" function established by Rule 702 and exclude Mr. Mateo's opinion that is devoid of relevant facts or proper analysis.

**RELEVANT BACKGROUND**

Defendant has designated Mr. Mateo as its sole retained expert in this case.

**A. Mr. Mateo's Opinions**

Mr. Mateo was retained to render an opinion "[o]n the overinclusiveness and improper use of the Wichita Police Department's Master Gang List." Ex. A, Dep. of Robert Mateo ("Mateo Dep.") 7:17-20. To do this, he prepared an expert report in which he purported to (1) rebut four assertions made in Dr. Muñiz's expert report, and (2) address why he believes Plaintiffs' claims of harm are unjustified. Ex. B, Expert Report of Robert Mateo ("Mateo Report") at 9–18. The first part of Mr. Mateo's report seeks to rebut Dr. Muñiz's finding that WPD policies and procedures result in overinclusive gang designations. According to Mr. Mateo, WPD policies and procedures[1]

---

[1] In forming his opinions, Mr. Mateo relied on "the [Standard Operating Procedure] for Entries into the Gang Data Base" and "the Wichita Police Department Policy 527." Mateo Dep. 69:9-23.

are not overinclusive because: (1) officers receive extensive and ongoing training; (2) the WPD's policies and procedures are compliant with 28 C.F.R. Part 23; and (3) nominations to the Gang Database are vetted. *Id.* at 9–12. In addition, Mr. Mateo's rebuttal opinions assert that the WDP's policies and procedures do not lead to inconsistent gang designations; K.S.A. 21-6313, *et seq.* is not vague; and the WPD's policies and procedures reduce the chances of an unjustifiable gang identification. *Id.* at 12–15. After declaring Plaintiffs' harms are unjustified, Mr. Mateo ends his report by finding "it does not appear that WPD has engaged in haphazard collection of gang and gang member data." *Id.* at 18.

### B. Mr. Mateo's Qualifications

Mr. Mateo is a career law enforcement officer. Mateo Report at 1. He is currently a detective with the Polk County, Florida Sheriff's Office and works within the Intelligence Unit of the Strategic Investigations Analysis Section. *Id.* His knowledge of gang databases is limited to a single database in Polk County, Florida. Mateo Dep. 61:24–62:92 (testifying he has "not touched another database in Florida" or anywhere else). He has never performed any academic research on gang databases. *Id.* 47:18-20. Nor has he conducted any studies on the effects of gang databases on communities. *Id.* 61:21-23. Mr. Mateo has no experience evaluating gang activity in Kansas. *Id.* 47:21-25.

Mr. Mateo also teaches courses on criminal street gangs and their members. Mateo Report at 1. However, his own teachings are "not very in-depth for gang databases." Mateo Dep. 41:2-21, 42:1-4 (explaining he provides gang identification and interrogation training). His trainings do not address database best practices because, according to Mr. Mateo, "every agency is going to have their own best practices for how they want to do it." *Id.* 41:21-23.

Mr. Mateo is the President of the Florida Gang Investigators Association and the President

of the National Alliance of Gang Investigators Associations. Mateo Report at 1. These organizations do not evaluate or provide standards or best practices for the use of gang databases. Mateo Dep. 21:17–22:21.

### C. Mr. Mateo's Methodology

In reaching his opinions, Mr. Mateo does not apply any particular principle or methodology. His report ultimately seeks to evaluate whether "the Wichita Police Department is following their own policy" on paper. Mateo Dep. 18:25–19:10. To analyze this, Mr. Mateo reviewed written documents and training materials, but otherwise did not consider many of the facts in this case. *See id.* 19:4-10, 20:10-19. He did not review any Gang Database entries. *Id.* 18:19-21, 23:12-14. Nor did he interview officers about their use of the Gang Database[2] or evaluate the actual consequences of the Gang Database as explained below. *Id.* 23:8-11.

### LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under this rule, the Court must first "determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (internal quotation marks and citation omitted). If so, the expert testimony is admissible only if: (1) such testimony is based upon sufficient facts or data; (2) it is a product of reliable principles and methods; (3) the witness applied the principles and methods reliably to the facts of the case; and (4) the testimony is helpful to the trier of fact. Fed. R. Evid. 702. The Court, acting as the gatekeeper, admits expert testimony only if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The burden rests on the party offering the expert testimony to show that it is admissible. *United States v. Nacchio*, 555 F.3d

---

[2] Mr. Mateo spoke to Officer Carson about whether he received training on 28 C.F.R. Part 23. *Id.* 9:21–12:5.

1234, 1241 (10th Cir. 2009). "*Daubert*'s standards must still be met" if neither party has requested jury trial. *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009).

## ARGUMENT

Mr. Mateo's testimony fails to meet every requirement of Rule 702. First, Mr. Mateo's own testimony makes clear that he does not have the requisite knowledge, skill, experience, training, or education to qualify as an expert. Second, his report and testimony not only ignore the facts and data in evidence in this case, those very facts and data undermine his conclusions. Mr. Mateo's testimony is flawed as he does not consider how officers actually apply the WPD's policies and procedures. He does not articulate the application of any principles or methods, much less any reliable ones, nor did he apply those principles to any significant facts in this case. Mr. Mateo admits that his opinions are based *only* on the fact that the WPD has written policies regarding the use of the Gang Database. This inquiry is irrelevant to the question of constitutionality in this case—no one disputes that the policies exist. His testimony is therefore not helpful to the trier of fact. For these same reasons, Mr. Mateo's testimony should be excluded under Rule 403 as a waste of time.

Finally, the Court should strike Part II of Mr. Mateo's expert report both because it contains impermissible factual assertions and legal opinions, and because in his deposition, Mr. Mateo agreed that his opinions were mere speculation. For each of these reasons, Mr. Mateo's opinions should be excluded in their entirety.

### A. Mr. Mateo is Not Qualified to Testify as an Expert.

To qualify as an expert, a witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."

374 F.3d 917, 928 (10th Cir. 2004). Mr. Mateo does not meet this requirement.

Here, Mr. Mateo's experience as a police officer does not qualify him to render an opinion about the WPD's Gang Database practices and procedures. Although police officers may be qualified by their experience to testify as experts, that is not always the case. *See, e.g.*, *United States v. Rodella*, No. CR 14-2783 JB, 2014 WL 6634310, at *8 (D.N.M. Nov. 19, 2014) (excluding a law enforcement expert where "[i]t is not clear, whether merely teaching, without practical field experience qualifies [him] as an expert in law enforcement procedures."). For an expert to be qualified based on experience, they "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014). An expert that "possesses knowledge as to a general field, . . . [but] who lacks specific knowledge does not necessarily assist the [fact-finder]." *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998) (citation omitted). Defendant cannot demonstrate that Mr. Mateo's general experience with gangs as a police officer in Florida bears a close relationship to his opinions of the WPD's Gang Database for several reasons.

First, Mr. Mateo has experience with only a single gang database in Polk County, Florida, which he acknowledges differs from Wichita's. Mateo Dep. 61:24–62:9, 46:15-17 ("Q. Did you make any attempt to compare what's done in Polk County with what's done in Wichita? A. No, ma'am."); *see also* 88:5–89:5 (differences in auditing and purging database). For one, the Polk County gang database is governed by Florida law with different requirements for designation of gang members or associates. *Id.* 31:6-10, 116:14–117:5. *Compare* Fla. Stat. § 874.03 *with* K.S.A. § 21-6313. Thus, "the application of [gang] criteria in Florida is different than in Kansas." Mateo Dep. 130:15-24. Polk County also removes individuals from its database after five years. *See id.*

36:10-15.

Second, Mr. Mateo has no experience studying gang databases. He has never performed academic research on gang databases. *Id.* 47:18-20. Nor has he conducted any studies on the effects of gang databases on communities. *Id.* 61:21-23. He also lacks any experience developing model gang database statutes. *See id.* 45:13-16. Mr. Mateo concedes that he is not an expert on the constitutionality of gang criteria or gang statutes. *Id.* 51:12-17.

Third, Mr. Mateo lacks substantive experience in teaching about gang databases. His own teachings about gangs do not go "in-depth for gang databases." *Id.* 41:18-21. In fact, the purpose of the training he offers is to teach "gang identification" and "interrogation," not managing a gang database. *Id.* 41:2-17, 42:1-4. For this reason, Mr. Mateo does not instruct law enforcement officers about gang database best practices. According to him, national best practices do not exist because "every agency is going to have their own best practices for how they want to do it." *Id.* 41:21-23; *see also id.* 21:17–22:2.

Mr. Mateo acknowledges that no court has ever certified him as an expert in a case such as this one. *Id.* 65:12-19 (admitting that he has never been designated or accepted as an expert with respect to the constitutionality of any gang database policy or to the application of any gang database). Nor has he ever testified as an expert on gang databases or in a § 1983 case. *Id.* 51:7-11 (admitting he has never testified about the constitutionality or appropriateness of a gang database or statute), 59:18-22 (same), 52:7–9 (admitting he has never before testified in a § 1983 case). Mr. Mateo's past experience is limited to testimony about gang identification in individual criminal cases. *Id.* 59:11-17; s*ee also, e.g.*, *id.* 52:14–54:23. In the few instances where his testimony did not relate to gang affiliation, Mr. Mateo's testimony involved interpreting coded messages and a person's gang-related activities. *Id.* 56:10–58:16. None of this experience qualifies Mr. Mateo as

- 7 -

an expert on gang databases.

For all of these reasons, Mr. Mateo's general knowledge of criminal gangs in Polk County, Florida, cannot overcome his lack of specific knowledge about gang databases and, in particular, the WPD's Gang Database. *See Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM, 2021 WL 2290822, at *3 (D. Kan. June 4, 2021) (quoting *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998)). Any "expertise" Mr. Mateo possesses regarding gangs in Florida or how the Polk County gang database operates is simply not relevant to this case. *See* Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."); *Choate v. City Gardner, Kan.*, No. 16-2118-JWL, 2020 WL 774097, at *3 (D. Kan. Feb. 18, 2020) (the first question for the court when considering the admissibility of testimony from a Rule 702 expert is whether the proffered testimony will assist the trier of fact). Testimony from Mr. Mateo should therefore be excluded in its entirety for lack of expert qualifications.

**B. Mr. Mateo's Opinions are Not Reliable.**

Even if the Court finds Mr. Mateo qualified, it must next "determine whether the witness's opinion is reliable by assessing the underlying reasoning and methodology." *Schulenberg*, 911 F.3d at 1283. "Reliability is about 'the reasoning and methodology underlying the expert's opinion.'" *United States v. Wofford*, 766 F. App'x 576, 581 (10th Cir. 2019) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)). With non-scientific experts, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) (internal quotation marks omitted). For testimony to satisfy the reliability standard, it must be based on actual knowledge, not mere subjective belief or unsupported speculation. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215

F.3d 1083, 1088 (10th Cir. 2000); *Sinclair v. Rodriguez*, No. 20-1116-JWB, 2022 WL 558119, at *2 (D. Kan. Feb. 24, 2022) (concluding "[f]or such testimony to satisfy the reliability standard, it must be based on actual knowledge, and not mere subjective belief or unsupported speculation"). Mr. Mateo's opinions fail to satisfy the reliability standard because (1) they are not based on sufficient relevant facts; (2) they rely on speculation; and (3) they fail to apply a useful analytical framework to the facts of the case.

### 1. Mr. Mateo's opinions are not reliable because they are not based on sufficient facts.

Mr. Mateo's opinion does not draw conclusions based on the facts of this case. At a high-level, Mr. Mateo admits that he ignored actual evidence. He did not review documents produced in discovery, and instead only "briefly read the Complaint" and relied primarily on the Court's Order on the Motion to Dismiss. Mateo Dep. 7:21–8:6. Mr. Mateo does not have a grasp of the basic facts of this case, such as Plaintiffs' claims or the relief they seek. *Id.* 8:9–9:7.

In addition to his lack of familiarity about the very subject of this litigation, Mr. Mateo's opinions fail to consider the actual facts of this case—including Plaintiffs' attested experiences. In preparing his expert report, Mr. Mateo did not review the Plaintiffs' deposition testimony, their discovery responses, or any of their individual gang files maintained by the WPD. Mateo Dep. 18:3-21 (admitting he did not review Plaintiffs' depositions, interrogatory responses, or gang files). Mr. Mateo also does not know why the WPD added the Plaintiffs to its Gang Database in the first instance or how long any of the Plaintiffs have been in the database. *E.g.*, *id.* 132:2-5 (responding he does not know how long Mr. Costello has been on the gang list), 132:12-13 (testifying "I don't know anything about [Mr. Costello]. I don't know his background."), 125:9-10 ("I do not know what [Mr. Cooper's] criminal history was before the first degree murder arrest.").

Worse, Mr. Mateo lacks knowledge of the WPD's actual practices. He did not interview a

single WPD officer about their use of the Gang Database. *Id.* 23:8-11. He did not confirm that WPD officers actually received training based on the materials he reviewed. *Id.* 86:14-21. Nor is Mr. Mateo familiar with the numerous allegations related to the WPD's improper use of the Gang Database. *See, e.g.*, *id.* 93:24–94:6 (whether individuals in the Gang Database have been identified to community members), 94:17-23 (that the WPD gave landlords information about people designated in the Gang Database), 94:24–95:5 (that the WPD asked a roller skating rink to cancel a charitable event because the organizers were included in the Gang Database).

To the extent Mr. Mateo found that WPD policies and procedures complied with the requirements set forth in 28 CFR Part 23, it is apparent that he did not consider all of the regulation's requirements. *Id.* 101:7-16 ("Q. [O]ne of your opinions was, well, they're exceeding what's required by the CFR because they have a look-back period of three years instead of five, right? A. Yes. Q. But you didn't necessarily see that all of these other particular requirements of . . . 28 CFR 23 were actually complied with? A. I don't know if they are -- I haven't reviewed anything that agrees with that."). For example, Mr. Mateo was uncertain on whether the WPD employed "an up-to-date computer system" with a built-in audit trail mechanism. *Id.* 98:3–99:5 (describing automatic computer audit trail system, then asserting that manual entries can constitute an audit trail), 101:3-6 (testifying that he was not sure if the audit examples he reviewed were real-world examples). Nor does Mr. Mateo know whether the WPD maintained a dissemination log, or if the WPD performs an annual purge of the Gang Database, or what the WPD's retention period is. *Id.* 99:6–100:23.

Each of these knowledge gaps are significant and render Mr. Mateo's opinions unreliable given the allegations in this case.

**2. Mr. Mateo's opinions are not reliable because they rely on speculation.**

Mr. Mateo claims that his opinions are based on the few policy and training documents he reviewed. But he conceded that he does not know how the WPD has implemented these policies and procedures in practice. *See* Mateo Dep. 23:8–24:8. Given that Mr. Mateo did not interview any WPD employees or review any discovery in this case, he turns to speculation to reach specious conclusions.

First, despite reviewing the WPD's policies and training documents, Mr. Mateo's opinions rest on a series of assumptions. For one, he assumes the procedures he reviewed apply to all of the allegations in this case. But Mr. Mateo does not know when Policy 527 or the standard operating procedure for entries into the Gang Database were created or went into effect. *Id.* 70:13-21. Nor does he know if the policies he reviewed are current. *Id.* 71:1-3, 71:19–72:2.

Second, according to Mr. Mateo, his opinion is limited to whether the WPD is following its own policies—specifically, if the WPD has implemented policies to "train[] the officers on how to identify gang members, how to fill out the proper documentation and provide it so that that documentation can be vetted by a gang officer . . . ." *Id.* 18:25–19:9. Mr. Mateo does not know if officers are actually following these policies and procedures. Mr. Mateo neither reviewed a single gang member file nor spoke to any officers about them, and he has reviewed only very limited portions of some depositions of individuals he could not recall. *Id.* 14:2-8, 16:13-16, 18:19-21, 23:12-14. Thus, his opinion that the WPD is following its own policies is entirely baseless. Moreover, because Plaintiffs allege those policies themselves are unconstitutional, this opinion is irrelevant.

Further, Mr. Mateo speculates that WPD officers are actually benefiting from the training materials he reviewed. But he does not know if WPD officers in the Gang Unit actually receive additional training—he has never observed any trainings, and he has not confirmed the specific

materials that are used. *Id.* 73:22–74:15 (admitting that he cannot identify the specific gang related trainings that were given to WPD officers twice a year), 86:14-21 (did not observe trainings and could not confirm that all officers received training). Because Mr. Mateo does not know what training WPD officers actually received, any opinions about the content of training materials are also irrelevant to this case.

### 3. Mr. Mateo's opinions are not reliable because they do not apply any principles or methodology.

The lack of factual support for Mr. Mateo's conclusory opinions demonstrates that his opinions are not based in any principle or methodology at all, much less sound ones. For each of his opinions, he fails to identify any standard or model by which he assesses compliance and, therefore, cannot identify what the requirements for acceptable compliance would be.

First, Mr. Mateo's ultimate opinion is that the WPD is "following [its] own policies." Mateo Dep. 22:22–23:7, 51:21-22 (explaining he is "only opining on the use of the database as it relates to their policies"). In providing his opinions, Mr. Mateo relies on a handpicked selection of documents and sidesteps the realities of how the WPD operates. These realities ungird Plaintiffs' allegations that the WPD's operation of the Gang Database violates the Constitution. Even assuming that Mr. Mateo's opinion that the WPD is "following [its] own policies" is of any value in addressing the issues in this case, failing to consider how an agency actually operates cannot be a reliable principle or method. *See* Fed. R. Evid. 702(c).

Mr. Mateo's choice to ignore the realities of how the WPD applies its policies and procedures reveals an absence of any methodology to his opinion. One example is Mr. Mateo's reliance on the vetting process that occurs when officers nominate individuals for the Gang Database. He offers no standard or model for how the process should work. Without a model or framework, there is no methodologically sound way to analyze whether the WPD's process is

appropriate. Here, Mr. Mateo conceded that the vetting process may, in fact, entail the use of officer discretion. *See* Mateo Dep. 82:20–83:24 (explaining the context matters in the context of togetherness, for example, a birthday party may not reveal gang association). Such discretion is what Plaintiffs allege results in inconsistent and unconstitutional designations.

Separately, Mr. Mateo's opinion also fails to recognize best practices for gang databases or even criminal databases more generally. Indeed, Mr. Mateo is not familiar with *any* best practices set forth by statewide or national gang inspector associations. *See id.* 21:10–22:21. According to Mr. Mateo, it is up to the "individual agenc[ies] . . . to decide what their best practice would be." *Id.* 21:19-20. This means that the WPD can simply create and claim to be following its own best practices, *id.* 22:22-25—a conclusion that is at odds with a common sense understanding of the very concept of an objective standard of best practices. Mr. Mateo also did not attempt to compare Polk County to Wichita, *id.* 46:15-17, further underlining the inaptitude of his experience and his lack of qualifications to serve as an expert witness here.

For all these reasons, the Court should find Mr. Mateo's opinions fail to apply any sound principles or methodology.

### C. Alternatively, the Court Should Exclude Mr. Mateo's Opinions under Rule 403.

If the Court does not exclude Mr. Mateo's opinions under Rule 702, Plaintiffs request that it do so under Rule 403 as a waste of time and needlessly presenting cumulative evidence. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . wasting time, or needlessly presenting cumulative evidence."). In his deposition, Mr. Mateo testified that he was "only opining on the use of the database as it relates to [the WPD's] policies" and that the WPD is "following [its] own policies," effectively disavowing all other opinions initially listed in his expert report. Mateo Dep.

22:22–23:7, 51:21-22. As discussed above, Mr. Mateo's conclusion that the WPD has a Gang Database policy and that it follows that policy is not relevant to the ultimate constitutional questions in this case and is not helpful to the Court in answering those questions. His opinion on the Gang Database policy's existence and that the WPD follows that policy would be duplicative of anticipated fact witness testimony that would more appropriately come from WPD personnel actually familiar with the facts. Mr. Mateo's opinions, therefore, should be excluded under Rule 403 as a waste of time and duplicative of fact witness testimony, particularly where bench trial time is limited, and the parties expect to call dozens of witnesses.

**D. The Court Should Strike Section II of the Mateo Report on Individual Harms as Impermissible Factual Determinations and Legal Conclusions.**

The Rules of Evidence "do not . . . allow an expert to offer testimony that merely tells the [fact-finder] what result they should reach." *See United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993). Mr. Mateo commits this precise error when opining that he has "not observed anything that has been provided to demonstrate that harm has actually been suffered by [the Plaintiffs] as a result of being included on WPD's Master Gang List."[3] Mateo Report at 18. This is an impermissible legal conclusion because Mr. Mateo "state[s] legal conclusions drawn by applying the law to the facts." *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1342 (10th Cir. 2017). To allow Mr. Mateo to draw conclusions as to whether WPD policies and procedures harmed Plaintiffs "substitute[s] [his] judgment for the [the fact finder's]." *Baumann v. Am. Family Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011).

In stark contrast to his report, Mr. Mateo repeatedly admitted at his deposition that he was simply speculating that none of the named Plaintiffs had suffered harm from being included in the

---

[3] Such opinion is based on incomplete facts as he failed to even consider Plaintiffs' testimony. *See* Mateo Dep. 18:12-16 (admitting he did not read Plaintiffs' depositions or interrogatory responses), 18:19-21 (admitting he did not review any of the Plaintiffs' gang files).

Gang Database. Mateo Dep. 127:11-15 ("Q: So you can't sit here today and say whether that's a harm to Mr. Cooper, because you don't even know what they are? A: I don't know what they are, so I wouldn't be able to speculate on that."), 131:17-24 ("Q: And if Mr. [Elbert] Costello isn't a gang member, isn't an active gang member, and he has been identified to members of the public, the Wichita public at large, through the media as a gang member, that would be a harm to him, correct? . . . A: I don't have all of his background information, so I wouldn't be able to speculate."), 133:1-15 (no opinion on whether it was appropriate for Martel Costello to be incarcerated for a violation of a gang probation condition, and no idea what the alleged violation even was), 135:9-13 ("Q: Okay. So you, sitting here today without knowing what the information was, you can't say whether [Jeremy Levy] was harmed by that or not? A: No, ma'am, I wouldn't be able to make that speculation."), 136:15-17 ("Q: So you can't say whether [Progeny was] harmed or not, correct? A: No, ma'am, I cannot speculate on that.").

Because Mr. Mateo has admitted that his opinions in Section II of his report are based on speculation, this section should be struck in its entirety. *United States v. Reulet*, No. 14-40005-DDC, 2016 WL 191883, at *2 (D. Kan. Jan. 14, 2016). Thus, even if the Court finds that Mr. Mateo is qualified as an expert and that a portion of his testimony is relevant, reliable, and not a waste of time or needlessly cumulative, the Court should not permit Mr. Mateo to testify regarding any of his opinions expressed in Section II of his report.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this Motion and exclude Mr. Mateo's testimony in its entirety.

Date: March 15, 2024

                Respectfully submitted,

KANSAS APPLESEED CENTER FOR
LAW AND JUSTICE, INC.

/*s*/ Teresa A. Woody
Teresa A. Woody KS #16949
211 E. 8th Street, Suite D
Lawrence, KS 66044
Phone: (785) 251-8160
twoody@kansasappleseed.org


AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF KANSAS

/*s*/ Kunyu Ching
Kunyu Ching KS #29807
Sharon Brett KS #28696
Karen Leve KS #29580
10561 Barkley St. Ste 500
Overland Park, KS 66212
Phone: (913) 490-4100
kching@aclukansas.org
sbrett@aclukansas.org
kleve@aclukansas.org


SHOOK, HARDY & BACON LLP

/*s*/ Paul M. Vogel
Thomas J. Sullivan (admitted *pro hac vice*)
Mitchell F. Engel KS #78766
Jordan C. Baehr KS #27213
Paul M. Vogel KSD #79022
Charles C. Eblen, KS #77940
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
tsullivan@shb.com
mengel@shb.com
jbaehr@shb.com
pvogel@shb.com
ceblen@shb.com

ATTORNEYS FOR PLAINTIFFS,
INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED

**CERTIFICATE OF SERVICE**

I certify that on March 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses of all counsel of record.

/*s*/ Kunyu Ching

Attorney for Plaintiffs