# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc.,
CHRISTOPHER COOPER, ELBERT COSTELLO,
MARTEL COSTELLO, and JEREMY LEVY, JR.,
on behalf of themselves and others similarly situated,

Plaintiffs,

vs.                                              Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS,

Defendant.

## EXPERT REPORT OF ROBERT MATEO

**Qualifications and Experience**

I am a duly appointed law enforcement officer, a Deputy Sheriff employed by the Polk County, Florida Sheriff's Office, and have been so employed since 1995. I am currently a Detective with the Strategic Investigations Analysis Section, Intelligence Unit, and I have been a Detective for approximately twenty-five (25) years. I have received over fourteen hundred (1400) hours of general law enforcement training and more than six hundred fifty (650) hours of specialized training in the field of criminal street gangs. I am certified by the State of Florida, Criminal Justice Standards and Training Commission (CJSTC) as an instructor for the Law Enforcement Academy and was part of a team that developed a training section for law enforcement academies on criminal gangs and their members. I have provided instruction to new cadets at the academy on a variety of law enforcement topics; including, but not limited to, criminal gangs, extremists, and terrorist groups.

I have also been an instructor for the Florida State Attorney General's Office. I have also been an instructor for the St. Petersburg College Multi-Jurisdictional Counterdrug Task Force Training program and had been so for approximately ten (10) years and have provided training to law enforcement officers in twenty-six (26) states, the U.S. Virgin Islands, and the Cayman Islands on the subject of criminal street gangs. I have been a member of the West-Central Florida Multi-Agency Gang Task Force for approximately twenty-five (25) years and previously held the position of Co-Chairman. I am currently the President of the Florida Gang Investigators Association and have held a Board position since 2003. I am also the President of the National Alliance of Gang Investigators Associations and was elected in 2019.

I have been recognized as an expert in the United States on criminal street gangs by the National Gang Crime Research Center, Chicago, Illinois, and have provided instruction for attendees of the National Gang Conference. I have been declared an expert on criminal gangs in the Tenth

1

Judicial Circuit of Florida by the Honorable Judge Jones and the Honorable Judge McCarthy, among others, and allowed to provide opinion testimony regarding the composition, history, and practices of criminal gangs. I have also provided instruction to the State of Florida Judge's College on the topic of current gang trends and methods of operation. I am also a duly sworn Federal Agent with the Federal Bureau of Investigations, operating under the auspices of the Safe Streets Violent Crime and Gang Task Force, and have been so sworn since 2009. I have been involved in the preparation and execution of more than one hundred (100) search warrants Including search warrants executed during criminal gang investigations.

I have conducted numerous investigations involving Criminal Gangs and their members over the past twenty-five (25) years. Based on these investigations and specialized training and experience, I have learned these enterprises commonly maintain documents, records, photographs, and recordings of their criminal activities. These are maintained in numerous ways; including, but not limited to, cellular phones, digital cameras, computers, flash drives, video recorders, CDs, and DVDs. I have also learned that criminal gang members will keep photographs, clothing, jewelry, posters, signs, and other materials that bolster or document their criminal affiliations and activities in their residences, vehicles, and electronic devices. I am also aware that members of these enterprises create and maintain internet pages on social networking websites such as Instagram and Facebook, demonstrating their gang affiliation and depicting the enterprise's activities and the activities of its members. As social media has evolved over the years, in conducting interviews of gang members, I have learned that gang members use social media to bolster their status within the organization and bolster the organization's status.

In my training and experience, I have learned individuals will adopt indicia, specific colors, sports teams, hand signs, graffiti, and tattoos to identify their membership in a specific gang to other gang members and other rival gang members. While the mere act of wearing red does not make someone a member of a set under the umbrella of the Bloods criminal gang for example, if someone wears a red bandana, and is observed on social media using hand signs and showing tattoos that are consistent with membership to the Bloods, the color red then is placed into context as being associated with the Bloods.

I have extensive first-hand experience in interviewing and identifying criminal gang members. I have extensive experience in the employment of a variety of computer systems utilized in the everyday work of law enforcement. I have conducted numerous investigations which involve the identification of criminal gangs and their members and associates. I have provided hours of instruction to hundreds of law enforcement officers around the United States and abroad and have shared experiences with colleagues regarding gang databases and their importance in assisting in shooting investigations in preparation for retaliatory behavior from the "victim" gang.

Through the normal course of my work, I regularly engage in surveillance of criminal gang members and their activities. I monitor recorded jail phone calls of identified criminal gang members and extensively review their electronic jail mail messages allowing me to glean insight into their mindset and methods of operation. I have extensively examined contraband documents seized within the corrections and detention facilities drafted by or possessed by criminal gang

2

members containing coded language, terminology specific to their particular gangs, and deciphering keys. I have been involved in wiretap investigations involving criminal gangs engaging in activities in furtherance of their criminal enterprise where I was able to further learn how gang members utilize contraband cellular devices from within a prison to send out orders in furtherance of their ongoing criminal organization to members and associates on the outside, to engage in illegal acts of ongoing criminal behavior to include the illicit sales of narcotics to fund the criminal gang and coordinate retaliatory actions against rival gang members.

**Cases Where I Have Provided Opinion Testimony in the Past**

I have been proffered and accepted as an expert witness and provided opinion testimony regarding criminal gangs, their criminal enterprises and methods of operation, and their use of coded/slang terminology in the following criminal cases and administrative proceedings:

2023 – State of Florida v. Julian Bird 16-CF-10594

2023 – State of Florida v. James Roundtree 22-CF-2636

2023 – State of Florida v. Tyrese Crews 22-CF-2636

2023 - State of Florida v. Xavier Ulysse 22-CF-2636

2022 – State of Florida v. Ramon Turner 18-CF-6445

2020 – United States President's Commission on Law Enforcement and the Administration of Justice on Criminal Gangs

2020 – State of Florida v. Aaron Delaune 18-CF-8190

2018 – State of Florida v. Joseph Gomes-Brandon 16-CF-3816

2015 – State of Florida v. Jamie Fenley 09-CF-1905

2010/11 – State of Florida v. Daniel Barajas 10-CF-7001

2007 – Florida Statewide 18th Grand Jury that was tasked with investigating criminal gang activity.

**Statement of Compensation**

My compensation for work in this matter as a private individual is at the rate of $150 an hour for reviewing material and drafting reports, and $250 an hour for preparing and providing testimony and any associated travel expenses.  My compensation is for my time reviewing provided relevant documents and is not contingent upon the outcome of this matter.

**Documents Reviewed to Prepare These Opinions**

- Beard Exhibit 29
- Beard Exhibit 30
- Deposition Excerpt from Chad Beard
- Deposition Excerpt from David Inkelaar
- Deposition Excerpt from Jeffrey Gilmore

3

- Deposition Excerpt from Kevin McKenna
- Deposition Excerpt from Sage Hemmert
- Deposition Excerpt from Wanda Parker-Givens
- Deposition Excerpt from Wendell Nicholson
- Deposition Transcript for Ana Muñiz (5.19.2023) – condensed
- Muñiz, Ana – Exhibit 1
- Audit Checklist
- Instructions for New Gang Intel Form
- PLFS00001386-00001388
- WICHITA 040931-041086 – Academy Fall 2017 New
- WICHITA 047401-047443 – 2019.03.14 Emlo re Gang Zone Restrictions
- WICHITA 060290-060302 – sop FOR Entries into the Gang Database
- WICHITA 060331 – Gang Intelligence Study Guide
- WICHITA 079059 – WPD Juvenile Notification Letter
- WICHITA 079060 – WPD Juvenile Notification Letter
- WICHITA 079061 – WPD Juvenile Notification Letter
- WICHITA 080167 – 090168
- WICHITA 080311 – 080313
- WICHITA 080535 – 080537
- WICHITA 093274 – 093275
- WICHITA 095378
- WICHITA 097702 – 097703
- WICHITA 098116
- WICHITA 101434 – 101439
- WICHITA 101684 – 101685
- WICHITA 104645 – 104694
- WICHITA 105928 – 105929
- WICHITA 106040 – 106041
- WICHITA 108529 – 108531
- WICHITA 108633 - 108634
- WICHITA 110034 – 110035
- WICHITA 110994 – 110996
- WICHITA 120587 – 120589
- WICHITA 121147 – 121147
- Baird, Timothy 6.2.2023
- Bartel, Jason 1.31.2023 – Full
- Beard, Chad 12.19.2022 – Full
- Beard, Chad 30(b)(6) 5.25.2023
- Cory, Christian 2.22.2023 – Full
- Easter, Jeff 5.18.2023 – Vol. I
- Easter, Jeff 5.26.2023 – Vol. II.
- Gilmore, Jeffery 12.06.2022 – Full
- Hemmert, Sage 12.09.2022 – Full

4

- McKenna, Kevin 12.01.2022 – Full
- Ramsay, Gordon 2.28.2023
- Speer, John 3.28.2023
- BeardCha052523non_Ex48CONF
- BeardCha052523non_Ex47CONF
- BeardCha052523non_Ex48CONF (2)
- WPD Policy 527
- K.S.A. §21-6313
- Chao Xiong, "Ramsey County's GangNet Database Goes Dark Monday." *Star Tribune* August 14, 2011.
- WICHITA - 060420.pdf
- WICHITA - 060575.pdf
- WICHITA - 060626.pdf
- WICHITA - 060692.pdf
- WICHITA - 060890.pdf
- WICHITA - 060908.pdf
- WICHITA - 061016.pdf
- WICHITA - 061093.pdf
- WICHITA - 061095.pdf
- WICHITA - 061270.pdf
- WICHITA - 061297.pdf
- WICHITA - 061351.pdf
- WICHITA - 061564.pdf
- WICHITA - 061757.pdf
- WICHITA - 061954.pdf
- WICHITA - 062156.pdf
- WICHITA - 062426.pdf
- WICHITA - 062630.pdf
- WICHITA - 062835.pdf
- WICHITA - 062943.pdf
- WICHITA - 062967.pdf
- WICHITA - 063013.pdf
- WICHITA - 063053.pdf
- WICHITA - 063093.pdf
- WICHITA - 063210.pdf
- WICHITA - 063247.pdf
- WICHITA - 063296.pdf
- WICHITA - 063465.pdf
- WICHITA - 063576.pdf
- WICHITA - 063600.pdf
- WICHITA - 063654.pdf
- WICHITA - 063847.pdf
- WICHITA - 064044.pdf
- WICHITA - 064269.pdf
- WICHITA - 064471.pdf
- WICHITA - 064567.pdf

5

- WICHITA - 064656.pdf
- WICHITA - 064704.pdf
- WICHITA - 064752.pdf
- WICHITA - 065068.pdf
- WICHITA - 065086.pdf
- WICHITA - 065237.pdf
- WICHITA - 065274.pdf
- WICHITA - 065338.pdf
- WICHITA - 065354.pdf
- WICHITA - 065382.pdf
- WICHITA - 065467.pdf
- WICHITA - 065568.pdf
- WICHITA - 065582.pdf
- WICHITA - 065627.pdf
- WICHITA - 065712.pdf
- WICHITA - 065790.pdf
- WICHITA - 065987.pdf
- WICHITA - 066005.pdf
- WICHITA - 066218.pdf
- WICHITA - 066546.pdf
- WICHITA - 066596.pdf
- WICHITA - 066610.pdf
- WICHITA - 066738.pdf
- WICHITA - 066907.pdf
- WICHITA - 066921.pdf
- WICHITA - 066971.pdf
- WICHITA - 067176.pdf
- WICHITA - 067263.pdf
- WICHITA - 067371.pdf
- WICHITA - 067451.pdf
- WICHITA - 067465.pdf
- WICHITA - 067681.pdf
- WICHITA - 067694.pdf
- WICHITA - 067802.pdf
- WICHITA - 067887.pdf
- WICHITA - 068058.pdf
- WICHITA - 068076.pdf
- WICHITA - 068115.pdf
- WICHITA 087701.pdf
- WICHITA 087776.pdf
- WICHITA 087849.pdf
- WICHITA 087881.pdf
- WICHITA 087959.pdf
- WICHITA 087969.pdf
- WICHITA 088141.pdf
- WICHITA 088297.pdf

6

- WICHITA 088394.pdf
- WICHITA 088413.pdf
- WICHITA 088742.pdf
- WICHITA 088814.pdf
- WICHITA 088919.pdf
- WICHITA 089080.pdf
- WICHITA 089115.pdf
- WICHITA 089150.pdf
- WICHITA 089253.pdf
- WICHITA 089476.pdf
- WICHITA 089627.pdf
- WICHITA 089668.pdf
- WICHITA 089669.pdf
- WICHITA 089733.pdf
- WICHITA 089771.pdf
- WICHITA 089789.pdf
- WICHITA 089881.pdf
- WICHITA 089890.pdf
- WICHITA 090094.pdf
- WICHITA 090135.pdf
- WICHITA 090263.pdf
- WICHITA 090298.pdf
- WICHITA 090309.pdf
- WICHITA 090335.pdf
- WICHITA 090396.pdf
- WICHITA 090457.pdf
- WICHITA 090458.pdf
- WICHITA 090459.pdf
- WICHITA 090460.pdf
- WICHITA 090461.pdf
- WICHITA 090462.pdf
- WICHITA 090463.pdf
- WICHITA 090485.pdf
- WICHITA 090487.pdf
- WICHITA 090513.pdf
- WICHITA 090523.pdf
- WICHITA 090540.pdf
- WICHITA 090564.pdf
- WICHITA 090566.pdf
- WICHITA 090577.pdf
- WICHITA 090584.pdf
- WICHITA 090617.pdf
- WICHITA 090618.pdf
- WICHITA 090638.pdf
- WICHITA 090647.pdf
- WICHITA 090656.pdf

- WICHITA 090676.pdf
- WICHITA 090702.pdf
- WICHITA 090708.pdf
- WICHITA 090715.pdf
- WICHITA 090724.pdf
- WICHITA 090738.pdf
- WICHITA 090776.pdf
- WICHITA 090790.pdf
- WICHITA 090799.pdf
- WICHITA 090808.pdf
- WICHITA 090822.pdf
- WICHITA 090831.pdf
- WICHITA 090840.pdf
- WICHITA 090854.pdf
- WICHITA 090865.pdf
- WICHITA 090876.pdf
- WICHITA 090914.pdf
- WICHITA 091599.pdf
- WICHITA 091667.pdf
- WICHITA 091705.pdf
- WICHITA 091716.pdf
- WICHITA 091717.pdf
- WICHITA 091718.pdf
- WICHITA 091744.pdf
- WICHITA 091770.pdf
- WICHITA 091772.pdf
- WICHITA 091786.pdf
- WICHITA 091796.pdf
- WICHITA 091805.pdf
- WICHITA 091819.pdf
- WICHITA 091829.pdf
- WICHITA 038776-038978 - 2004 - Gang Pre...004.pdf
- WICHITA 038979-038216 - 2009 - Gang Pre...009.pdf
- WICHITA 039217-039266 - 2009 - Gang Up...009.pdf
- WICHITA 039267-039597 - 2010 - Gang Pre...010.pdf
- WICHITA 039598-039926 - 2011 - Gang Pre...011.pdf
- WICHITA 039927-040166 - 2013 - Academy 2013.pdf
- WICHITA 040167-040338 - 2014 - Academy 2014.pdf
- WICHITA 040339-040535 - 2015 - Academy ...all.pdf
- WICHITA 040536-040728 - 2015 - Academy 2015.pdf
- WICHITA 040729-040930 - 2016 - Academy ...ing.pdf
- WICHITA 040931-041086 - 2017 - Academ...New.pdf
- WICHITA 047387-047389 - Gang and CRT Of...ers.pdf

## Case Background and Allegations by Plaintiffs

Plaintiffs allege their inclusion in the WPD Gang List has had a detrimental effect on their lives and in the case of Plaintiff Progeny on the lives of the population they serve. Based on my experience and training and after a review of the documents provided in this case, my opinions are as follows:

## I.    Plaintiffs' Expert's Opinion 1 Addressed

### A.    WPD's Policies and Procedures are not overinclusive.

Dr. Muñiz states, in her opinion 1, that the WPD policies and procedures are likely to lead to overinclusive and inconsistent gang designation practices. This is untrue because of the training officers receive because officers do not create gang criteria and because the policies WPD implements go above and beyond the requirements of federal regulations and state law.

Plaintiffs asserted, "the majority of Wichita citizens, including most judges, lawyers, clergy, union members, and other professional and social service providers, could be discretionally designated as a gang member or associate and added to the Gang List."[1]  This assertion fundamentally changes the definition of a criminal street gang as defined in K.S.A. §21-6313 where, in order to identify a gang, the gang must have as one of its primary activities the commission of crime. This would be an overbroad and overinclusive definition since neither of the mentioned entities by Progeny has as a primary goal, the commission of criminal activity.

WPD Officers and Detectives assigned to the WPD Gang/Felony Assault Section of VCCRT appear to employ training and experience, and common-sense observations to review and vet the supporting document provided to them before adding someone to the Master Gang List.  Based upon the statements provided in depositions, supporting documents are reviewed in context and based on the above statements provided during depositions that appear to be the case. WPD Officers received two 8-hour in-service trainings including on gangs to obtain updates and refreshers on gang identification according to Captain Christian Cory's deposition.[2]

As an example of the vetting officers undertake when identifying criminal street gang members or associations, Lt. Gilmore testified in his deposition that he would provide parents with guidance when asked by them on what colors to look for if their children seemed to favor one color over the other. "I would say, if your child is coming home and he's wearing all red, it doesn't mean he's a gang member, but those are indicators for you to look at. If he just got a brand new pair of shoes but he put big wide red laces in them and he's got a red bandana hanging out of his pocket and wearing a Piru hat, these are colors, that could be, not saying it is but it could be identified as gang clothing and that's an indicator and as a parent it is your responsibility to investigate that, to look into that and to know what is going on." Lt. Gilmore

---

[1] Judge Melgren's Memorandum and Order – 1/10/2022
[2] Deposition of Capt. Cory, 2/2/2023, P. 31-32

went as far as to say, just because the person favored a particular color that he knows is a color employed by a criminal gang, it does not mean the child is a gang member standing alone. [3] This appears to be in direct contrast to the opinion of Ms. Muniz regarding the overbroad and overinclusive use of the Master Gang List.

**1.    WPD Officers receive extensive and ongoing training.**

Wichita Police Department (WPD) Policy 527 is the criminal intelligence system procedure for gang offenders. This policy sets forth a procedure for including an individual on the Master Gang List, establishing a process of (1) having the nomination of a person to be included on the list; (2) researching the individual nominated; and (3) applying criteria as defined in K.S.A. §21-6313 to the nominated individual prior to inclusion in the Master Gang List.

Dr. Muñiz does not appear to consider training received by prospective officers of the Wichita Police Department beginning at the Police Academy level on the identification of criminal gang members.  My review of the materials shows that Officers of the WPD then go on to receive mandated training twice a year on updated gang information. This training is designed to have the very opposite result of overinclusive and inconsistent gang designation. The training provides that officers take the time to make their observations in an area where they spend a good deal of time working in their regularly assigned patrol area to make the educated determination of who meets the State listed gang membership criteria.

Law enforcement officers assigned to work in a specific area engage in a modified form of Ethnography.  Ms. Muñiz described herself as an Ethnographer in her deposition.[4] She stated that her work as such involved, "…actually observing people as they do things."  I submit that law enforcement engages in an informal form of ethnography every day they go to work. Consider the officer assigned to the same "beat" for an extended period of time.  That officer will learn who the persons are that make calls for service for lower priority calls regularly, and how to respond to them.  They also learn who the persons are that are inclined to engage in criminal activity.  As well as where the drug houses are, and where suspects tend to run to when attempting to avoid capture by police after the commission of a crime. Officers will also learn of any criminal gang activity within their area of responsibility. This ongoing education WPD officers experience allows them to identify criminal gang members effectively and without ambiguity through the officer's observations and documentation of any indicia known to the officer through those observations that have been adopted by the criminal gang's members as a means to show their criminal gang affiliation.  Through experience and the ongoing on-the-job training described above provides a consistent means by which officers apply state law and WPD Policy 527 when completing the proper documentation to submit to the Gang/Felony Assault Section as a nominee for further vetting and research.

It is inferred that once a law enforcement officer is selected to work as a member of the Gang/Felony Assault Section of VCCRT, they would be offered training in the identification of

---

[3] Deposition of Lt. Gilmore, 12/6/2022, P. 144-145
[4] Deposition of Dr. Ana Muñiz, May 19,2023

criminal street gangs and their members, and the proper application of K.S.A. §21-6313 in the uniform designation of a criminal street gang and its members and associates. This, coupled with the application of Policy 527 and the SOP are WPD's best practices to employ the Master Gang List utilized for the safety of the community by providing WPD ready access to members, for example, of a criminal gang that operates in a certain part of Wichita where one of its members was the victim of a shooting.  WPD can efficiently identify members of a rival gang as investigators of the shooing collect crucial details that might help identify, at minimum, the gangs involved, and possibly who might be inclined to respond with violent retaliation. Incidents such as these are regularly described in news media reports where innocent bystanders are caught in the crossfire of such retaliation. Also, criminal gangs know no jurisdictional lines.  The maintenance of a criminal gang database also allows for the ability to quickly share information with other law enforcement entities that have a need to know and a right to know as outlined by 28 C.F.R. part 23.20(2)(g).

On July 23, 2023, I had a telephonic conversation with WPD Gang Intelligence Officer Cale Carson who stated he had participated in an online training for collecting criminal street gang intelligence which discussed the topic of 28 CFR Part 23. I reviewed training files provided to me and noted that the training files demonstrated officers participated in a variety of training, including training as it related to criminal street gangs.

**2.      WPD's policies and procedures are compliant with federal regulations.**

In 1968 the United States Congress passed the Omnibus Crime Control and Safe Streets Act.  As a result of that law regulations were developed and implemented regarding criminal databases. Those regulations, 28 C.F.R. Part 23 are applicable to all criminal databases as enumerated in the regulations.  28 C.F.R. Part 23 has a purging requirement whereby the agency maintaining the database must remove a person who has not been active in a gang after a designated period of time. The purpose of 28 C.F.R Part 23 "…is to assure…conformance with the privacy and constitutional rights of individuals."[5] This regulation acknowledges "the exposure of …ongoing networks of criminal activity can be aided by the pooling of information about such activities."[6] This federal regulation sets forth the applicability of criminal intelligence systems operating policies permitting the collection of data where "information directly relates to criminal conduct or activity and there is reasonable suspicion that the subject of the information is or may be involved in criminal conduct or activity."[7] "Reasonable suspicion or criminal predicate is established when information exists which establishes sufficient facts to give a trained law enforcement officer, investigator, or employee a basis to believe that there is a reasonable possibility that an individual or organization is involved in a definable criminal activity or enterprise."[8]

---

[5] §23.1
[6] §23.2
[7] §23.20(b)
[8] §23.20(c)

11

WPD policy 527 section E complies with federal requirements. That section designated a three-year period where a person placed on the Master Gang List pursuant to the criteria of K.S.A. §21-6313 will remain active after being placed on the list. "If after the initial three (3) year period there is no documented activity, the individual's status will be changed to "INACTIVE" in the WPD Gang Database and the flag will be removed from EJustice. That section makes provisions for both tolling and restarting the three-year period.

The Master Gang List is an objective tool used by the Wichita Police Department to identify and track offenders who have been deemed gang members through a specific vetting process. This process is compliant with 28 C.F.R. Part 23.

### 3.   Nominating officers do not have the discretion to add to WPD's Master Gang List.

According to WPD Policy, officers may nominate someone to be added to the Master Gang List. However, that information is then vetted for accuracy and compliance with K.S.A. §21-6313 and WPD Policy 527 for submission to the Master Gang List by a member of the Gang/Felony Assault Section or Violent Crimes Community Response Team. Dr. Muñiz does not seem to recognize that officers are trained to follow policies and procedures, as well as state laws.

Chad Beard testified that nominees were not added to the Master Gang List if the criteria submitted did not satisfy the review as required by Policy 527.[9]  Beard went on to explain that this practice was common, stating, "It was not rare, it – it was common, I mean, people would send a card, and that person would not meet criteria so we didn't them in there." This demonstrates that the policy employed by the WPD prevents the overbroad and overinclusive additions to the Master Gang List as suggested by the plaintiff's expert.  Further, their testimonies have included what means they utilize to determine what criteria are utilized in the capacity of a WPD Gang Intelligence Officer or Detective when vetting someone's criminal gang membership status, and how they identify a 'gang area.'

### B.   WPD's Policies and Procedures do not lead to inconsistent gang designations.

Dr. Muñiz also asserted that WPD policies and procedures allot too much discretion to the individual officers, "…broad discretion, leading to inconsistent and overinclusive designation practices."[10] I reassert my above opposition to her opinion. Additionally,  individual officers "on the ground" do not have the ability to enter/place criminal gang members into the "Gang Database." Dr. Muñiz opined in her report that the Ramsey County, Minnesota Sheriff's Office, "shut down its gang database in 2011 after an audit found the gang designation practices to be overly inclusive." Dr. Muñiz cited a media report by the Star Tribune dated August 14, 2011.[11] Upon review of that report, in my opinion, Dr. Muñiz mischaracterized the report. In my review

---

[9] Deposition of Lt. Beard, 12/19/2022, P. 55

[10] Deposition of Dr. Ana Muñiz, *Ibid*

[11] Chao Xiong, "Ramsey County's GangNet Database Goes Dark Monday." *Star Tribune* August 14, 2011.

12

of the same reporting, I found no mention of an audit that found it to be overly inclusive in the reporting.

No one knows better the presence of a criminal gang within a community better than a member of that community. This would include officers that work in the community. Through the work of officers in the WPD in the communities they serve, they can observe what signs and symbols criminal gangs have adopted, and what colors they might use to represent the individual members' affiliation. This would allow for accurate identification of areas known to be hang-outs for criminal gang members. Lt. Beard identified locations in his depositions based on the level of violent crime, up to and including shooting incidents and homicides that took place at them. Not just a casual association of subjects hanging out at those locations. Lt. Beard also stated, "Yes, I mean, obviously if there's nobody there, we'd just drive by so..."[12] Again, Lt. Beard appeared to demonstrate a clear knowledge of areas that have been identified as known locations for gang violence based on his training and experience as a Police Officer working within the community.

Additionally, WPD provides guidance and training for their law enforcement officers with the Standard Operating Procedure (SOP) for Entries into the Gang Data Base.[13] The SOP outlines in detail, again, the definition of a criminal street gang, a criminal street gang member and associate as defined by K.S.A. §21-6313. It further defines criminal street gang activity. This removes any ambiguity on the part of the officers when investigating criminal gangs and their related activities. It also provides guidance on the means by which officers will collect information on criminal gang members and associates, how to properly flag the subject in their Master Gang List, and calls for an annual audit of the Database. This system of checks and balances prevents improper inclusion of a subject within the database and eliminates ambiguous entries.

The SOP for Entry into the Gang Data Base further provides detailed guidance on the use and entry of persons into the database and provides officers with the statutory definition of a gang, a member, and associates. Again, K.S.A §21-6313 allows for, "...a state, county or city law enforcement officer or correctional officer..." to nominate someone to be added to the Master Gang List, WPD Policy 527 goes further to protect individuals who do not meet criteria under K.S.A §21-6313 from being improperly added to the database.

Both Policy 527 and the SOP, as created in conformance with K.S.A. §21-6313, are in place as best practices to collect and maintain accurate data on persons properly identified as being criminal street gang members or associates. These processes seem to protect against over-inclusion into the database through the thorough investigation and vetting process they outline.

**C.    Kansas statute is not vague, but even if it is, WPD's policies provide additional protections.**

---

[12] Deposition of Lt. Beard, 12/19/2022, P. 44-45
[13] WICHITA 060290-060302 – SOP for Entries into the Gang Database

K.S.A §21-6313 provides law enforcement officers with a definition of a criminal street gang, a criminal street gang member, and a criminal street gang associate. The criteria found in K.S.A. §21-6316, generally, is a list of items and behaviors adopted by criminal street gangs. The items were codified into law as a means to identify the criminal gangs and their members in order to protect the community as a whole.

Dr. Muñiz asserted that the criteria codified in K.S.A. §21-6313 are vague and lack definition. Dr. Muñiz, in my opinion, implies that officers can simply select a color and designate it as a color utilized by criminal gangs. This is simply not the case. The law enforcement community, including WPD, did not select what color a particular criminal gang would use to identify their affiliation, nor did the WPD select any other indicia to include a criminal gang's preference for a style of dress or tattoo to show their criminal gang affiliation. This was done by the criminal gang itself. An officer simply observes, or engages in a form of informal Ethnography, to learn what colors or indicia or style of dress a specific criminal gang has adopted to show their allegiance.

A law enforcement community does not assign indicia to gangs, nor does it pick its membership. Membership philosophy is created by the criminal gang itself. The criminal gang chooses who they allow within their ranks, and they do so carefully. I am aware that gangs often employ the initiation practice of making a prospective member commit a crime in the presence of another member to have that crime held over the prospective member's head in case they turn into an informant for law enforcement. Also, some gangs are particular in that they will only allow a certain race within their criminal gang. However, this is not exclusive to white supremacist criminal gangs. For example, Mexican street gangs followed the philosophy of not letting mixed-race Mexicans into the criminal gang, demonstrating that internal prejudice and bias within their ethnic group exist.[14] Criminal gangs decide who can be a member. Law enforcement does not decide who joins what gang.

Further, the law enforcement community did not choose or assign what indicia or colors criminal gangs have adopted over the decades as symbols used to identify membership. The criminal gangs chose them. WPD Officers selected to work in a specialized unit such as a Gang Unit or an Intelligence Unit charged with the identification of, and investigation of criminal gangs and their members would likely obtain training on how to identify gang members, including what indicia they would display. While working in the field, ongoing contact with identified gang members, interviews of cooperating gang members, and the ongoing education of those officers would provide them with a better understanding of what gangs specific to their area of responsibility are using to identify membership within their gang. WPD Officers in the field would learn what indicia local gang members are using, what sports apparel they prefer to show allegiance with their gang, and what hand signs they use. Training and experience allow officers to recognize the indicia displayed and allow them to articulate how that indicium is consistent with a particular criminal gang, or umbrella such as the Bloods. A trained law enforcement officer investigating criminal gangs generally will seek out more information than simply one

---

[14] A Guide to Understanding Street Gangs – 4th Edition, Al Valdez, Ph.D., ISBN: 1-56325-078-0

14

criterion to put into context the visual message of the indicia observed without merely accepting one clothing item as a firm gang membership indicator. All members of the Wichita police department are required to attend twice-a-year 8-hour training, including training on gangs.[15]

### D. The additional protections included in WPD's policy and procedures greatly reduce the chances of an unjustifiable gang member identification resulting.

Dr. Muñiz lastly asserted in her Opinion 1 that WPD policies and procedures are also likely to result in the unjustifiable designation of certain non-gang-involved individuals as gang associates. Again, starting in the police academy, officers are trained in the proper identification of criminal gang members by utilizing criteria outlined in K.S.A. §21-6313, WPD 527, and through learning the signs and symbols and other indicia adopted by criminal gangs known to operate nationally by being provided a detailed overview of criminal gangs that might be encountered within the jurisdictional boundaries of the City of Wichita as well as local criminal gangs known to operate within WPD jurisdiction.[16]

Kansas statute §21-6313 specifically requires three or more enumerated and subjective criteria be met before an individual can be designated a criminal street gang member.[17] This criterion has been adopted by reference in WPD Policy 527. While K.S.A §21-6313 allows for, "...a state, county or city law enforcement officer or correctional officer..." to nominate someone to be added to the Master Gang List, WPD Policy 527 goes further to protect individuals who do not meet criteria under K.S.A §21-6313 from being improperly added to the database.

Other than self-admission as a gang member, neither K.S.A. §21-6313 nor WPD Policy 527 allows for only one criterion for inclusion on the Master Gang List. The validation process is a standardized process that requires multiple steps to validate the person of interest as a member or associate gang member. The validation process is not a simple check box method but entails detailed and multi-layered steps to ensure a correct and valid process has been administered. This information is strictly intelligence based and used for investigations into criminal organizations and criminal acts. This information is the same as a basic officer's notes or knowledge of known actors engaged in criminal acts in their areas of responsibility. The validation process would provide for the avoidance of the overinclusion and ambiguity of persons onto the Master Gang List by researching and vetting the nomination, thus ensuring the nominee meets the statutory requirement for inclusion on the Master Gang List through the additional criteria and vetting used by WPD provides for additional protections from overinclusion.

The policy also calls for a 3-year limit on maintaining someone in the Active list unless their data is updated. Otherwise, the status must be changed. It should be noted 20 C.F.R. Part 23 described above calls for a 5-year limit. The Policy also discusses that a nominee for the Master

---

[15] Deposition of Capt. Cory – P. 31-32

[16] WICHITA 040931-041086 – Academy FALL 2017 New.pdf

[17] Kansas §21-6313(b)(2)

Gang List will be researched by a member of the Gang/Felony Assault Section or VCCRT is required likely to vet the data for clarity and accuracy.

Further, WPD Policy 527 identifies the Master Gang List as confidential.[18] WPD's Master Gang List is confidential and shared only with "…commissioned law enforcement/correctional officers or those persons authorized by the supervisor of the Gang/Felony Assault Section, VCCRT or Person Crimes Bureau Commander."[19] normal course of business, prospective employers or landlords conduct background checks on the criminal histories of a potential employee or renter. The criminal histories of the applicant would be revealed during this background examination, but not the fact that the person is on the Master Gang List.  Accordingly, even under the Fair Housing Act, a "landlord can consider things background issues such as criminal history, credit rating and financial stability when deciding whether to rent to the prospective tenant. [sic]"[20] Furthermore, a prospective employer could exercise discretion in hiring a person convicted of a felony crime with no knowledge that person's name is on the Master Gang List.

## II.    Plaintiffs' Individual Harms Addressed

Chief Judge Melgren's Memorandum and Order dated January 10, 2022, identified the four individual plaintiffs in this action as (1) Christopher Cooper, (2) Elbert Costello, (3) Martel Costello, and (4) Jeremy Levy, Jr. The Memorandum articulates the experiences of each individual as listed below, along with this expert's opinion as to why they are unjustified.

### A.    Christopher Cooper

Cooper having "learned he was on the gang list in 2014 when he was arrested for first-degree murder, bail was set at $50,000 according to Cooper because he was on the gang list. After accepting a plea deal "at sentencing was placed on probation with special gang related conditions. He alleges conditions forced him to live away from his family because some of them were on the gang list." The memorandum goes on to say that after a background check, Cooper was denied employment. "Cooper believes the background check identified him as an active gang member."

 Plaintiff Christopher Cooper was arrested and charged with first-degree murder. Cooper's bail was set at $50,000 which he attributes to the requirements of K.S.A. §21-6313 and not to the nature of the crime charged. WPD Policy 527 addresses the bonding of criminal street gang members allowing for judicial discretion. Since the judiciary is separate from the WPD, the WPD Policy 527 that addresses bail for a felon is not binding on the judicial officer. Cooper took a plea and was placed on probation with special gang-related conditions. Trial court judges often place individuals on probation with specific conditions. Plea agreements are accepted by defendants voluntarily and are aware of specific conditions that will be placed on them should they agree.  If plaintiff Copper had issues with the special gang-related conditions, I suspect,

---

[18] WPD Policy 527

[19] Wichita Police Department Policy 527

[20] https://www.kansaslegalservices.org/node/1934/tenant-issues-and-rights-kansas-renters

based on my training and experience, they could have been addressed before accepting the plea agreement.

WPD Policy 527 plainly states that information in the Department's Master Gang List is confidential. The policy goes on to outline the detailed process for the entry of someone onto the Master Gang List. The policy discusses the issue of a $50,000 bond, which discusses the discretion of the court to decide if the bond is appropriate on a case-by-case basis. The bond is not set by the WPD.

### B.   Elbert Costello

Elbert Costello was arrested in 1997 for a shooting incident. It is at this time he learned he was on the gang List. He was convicted of voluntary manslaughter. Elbert Costello asserts "he has avoided spending time with lifelong friends because they may also be on the Gang List. That he has avoided certain businesses because he believes WPD has identified them as "gang-hideouts." "Most recently, Elbert was renewed because he appeared in a social media photo wearing a red 'Philadelphia Phillies' baseball cap and because the color red is associated with a gang."

Plaintiff Elbert Costello believes his appearance in a social media posting of a photograph is the sole reason for his being designated "active" on the WPD Master Gang List. Elbert Costello alleges no contact nor affiliation with Philadelphia, Pennsylvania. A law enforcement officer or investigator, trained and experienced in gang customs, trends, and activity would be alerted by an individual, in Wichita, Kansas wearing a sports logo from a city thirteen hundred miles away because they would know that Blood gangs include Piru gangs and that  Bloods criminal gangs identify with the color red predominantly, in this case, the colors of a traditional Philadelphia Phillies baseball cap is red with a white "P" on it. The cap has a large "P" above the bill. Based on training and experience, law enforcement officers and investigators know that Blood gang members wear the Philadelphia Phillies baseball cap because the "P" represents Piru. They further know that People Nation gangs wear the same baseball cap and for that gang, the "P" stands for People Nation. Gangs under the People Nation umbrella include the Vice Lords and Latin Kings, among others.

Elbert Costello cites a belief that one criterion, style of dress, placed him back on the active status on the Master Gang List. Elbert Costello has been convicted of manslaughter and incarcerated for that crime. He alleges while incarcerated he was subjected to a "high-level custodial setting" because he was on the gang list. Correctional institutions are high-pressure settings where rival gang issues may and often do result in violent assaults. Correction authorities strive to maintain safe environments for all detainees.

### C.   Martel Costello

Martel Costello asserts a belief he was placed on the Gang List "because of his association with relatives, presumably also members of the Gang List, rather than any conduct on his part. He was arrested for drug and firearm charges, plead guilty, and was placed on probation "subject to a condition that he did not associate with anyone else on the Gang List." As a result of violating this specific condition, he was incarcerated.

17

Plaintiff Martel Costello believes his inclusion on the Gang List was because of his association with relatives, presumably on the Gang List. Martel Costello was arrested for drug and firearm offenses, ultimately entered a plea of guilty, and was placed on probation with a condition he did not associate with anyone else on the Gang List. He violated that condition and was incarcerated.

### D.     Jeremy Levy, Jr.

Jeremy Levy, Jr. "believes he was added to the Gang List at 13 years old" when in the company of a cousin who was already on the Gang List. Levy was later convicted of first-degree felony murder. Levy alleges "During his trial, the prosecutor was allowed to introduce evidence of Levy's gang membership, based on the Gang List, and other gang-related incidents that Levy believes were irrelevant and extremely prejudicial."

Plaintiff Levy alleges at his trial for first-degree felony murder the prosecutor was allowed to introduce evidence of Levy's gang membership, based on the Gang List, and other gang-related incidents he alleges were extremely prejudicial.

Plaintiffs Levy, Cooper, and both Martel and Christopher Costello raised concerns during their proceedings that factors being used against them, being on the Master Gang List, or being gang members, were improperly raised. The courts involved in those individual cases seemingly ruled on those matters not finding errors in how the factors were presented, including the defendants' inclusion on the Master Gang List.

### E.     Progeny

Plaintiff Progeny alleges the Gang List has caused direct harm to its members and that Progeny has had to divert resources from its other work to provide services to those on the Master Gang List. Judge Melgren's Memorandum and Order stated Progeny's goals are to "prevent the incarceration of young people, break the school-to-prison pipeline, and direct state funds into community-based programs that provide alternatives to incarceration."

Other than what is asserted above by plaintiffs, and after a review of the above-listed records, I have not observed anything that has been provided to demonstrate that any harm has actually been suffered by them as a result of being included on WPD's Master Gang List.

### Summary

Based on my review of the documents provided, it does not appear that WPD has engaged in a haphazard collection of gang and gang member data. Rites, rituals, and methods of operation for criminal street gangs were not assigned to criminal gangs by members of law enforcement. Law enforcement did not pick the colors, tattoos, hand signs, style of dress, or symbols used by individual criminal gangs. Nor did the law enforcement community select the membership of criminal gangs. Law enforcement merely collected and interpreted the information in context regarding these criteria from various sources, including debriefs of current and former gang members and through collaboration with colleagues that also work in criminal street gangs, coupling that with the individual Officer's ongoing training and common-sense observations. The criminal justice community simply studied criminal gangs' behavior, took that knowledge to

18

the state legislature, and codified it into a statute used to identify criminal gangs and their members through their own adopted rites and rituals.

I have reviewed documents provided to me in this matter and opine that the Wichita Police Department database is being properly utilized, and that there are sufficient checks and balances in place to avoid the overinclusion of persons on the Master Gang List.

Should any new information be provided for my review, I can review it and amend my report accordingly.

Robert Mateo, NGBTS Consulting, LLC

Date: July 24, 2023