# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination Innovations, Inc.,
CHRISTOPHER COOPER, ELBERT COSTELLO,
MARTEL COSTELLO, and JEREMY LEVY, JR.,
on behalf of themselves and others similarly situated,

Plaintiffs,

       vs.                                         Case No. 6:21-cv-01100-EFM-ADM

CITY OF WICHITA, KANSAS,

Defendant.

---

## Motion to Exclude Testimony of Ana Muñiz

Pursuant to Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702-05, Defendant City of Wichita, moves this Court to exclude from evidence the opinions and testimony of Dr. Ana Muñiz, designated by plaintiffs as an expert on "policing; gang profiling and enforcement; local, state, and federal gang databases; federal intelligence gathering; immigration enforcement; digital surveillance; and the intersection of these topics with race."

Dr. Muñiz's conclusions should be excluded because she has no specialized knowledge applicable to the remaining facts at issue, does not aid the fact finder in its remaining determinations, and fail to identify reliable principles or methods employed to generate results.

## Nature of the Matter Before the Court

Plaintiffs challenge the legality of Defendant's utilization of a database to document criteria statutorily recognized to define membership of, and association with, criminal street gangs. To aid their effort, plaintiffs offer Dr. Ana Muñiz to provide an expert opinion on the WPD's policies and practices.

## Issue Presented

I.     The ethnographic method refined by Muñiz in California was not utilized towards the WPD, and her specialized knowledge is inapplicable to the remaining facts.

II.    Muñiz's knowledge and experience do not help the trier of fact determine the remaining disputed facts, and her opinions are not objective, verifiable, or based on a reliable scientific methodology.

## Argument and Authorities

### I.     Relevant Legal Standards

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 through 705. To be admissible:

(a)    the expert's scientific, technical, or other specialized knowledge will [must] help the trier of fact to **understand the evidence** or to **determine a fact** in issue;
(b)    the testimony is [must be] **based on sufficient facts or data**;
(c)    the testimony is [must be] the **product of reliable principles and methods**; **and**
(d)    the expert [must have] reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). The rules of evidence also require the evidence to be relevant and avoid the creation of undue delay or result in a waste of time. Fed. R. Evid. 401, 403.

To determine the admissibility of expert testimony, the court conducts a two-step analysis. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, a court must determine whether the expert is qualified by "knowledge, skill, experience, training or education" to render an opinion. *Id*. If the expert is sufficiently qualified, the court must then conduct a preliminary fact-finding to determine whether the testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Expert testimony is unnecessary when a "common sense inquiry" reveals an "untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702, Advisory Committee Notes, citing Ladd, *Expert Testimony*, 5

Vand.L.Rev. 414, 418 (1952). When common sense concludes the testimony is unnecessary to determine the disputed issue, the testimony is unhelpful and not relevant. *Id.* (cleaned up), *see also Delsa Brooke Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (holding "relevance is also referred to as helpfulness. To determine whether the testimony will help the trier of fact, courts consider, in part, whether the testimony is within the juror's common knowledge and experience").  If the testimony is not helpful, it is not relevant, and therefore inadmissible. *Id.*, *see also* Fed. R. Evid. 402 (evidence lacking relevance is inadmissible).

In addition to being helpful/relevant/admissible, the testimony must also be proven reliable. *Daubert*, 509 U.S. at 589. This means the information offered must be capable of validation. *Id.*, at 590; *see also* Fed. R. Evid. 702(c). The non-exclusive factors for a court's consideration include 1) whether the expert's technique or theory can be—or has been— tested; 2) whether the technique or theory can be reasonably assessed for reliability; 3) the known or potential rate of error of the technique; and 4) whether the theory or technique is generally accepted in the scientific community. *Id.*, at 593. "Where an expert testifies based on experience, the tribunal reviews the reliability of the testimony with reference to the nature of the issue, the expert's particular expertise, and the subject of the testimony." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (cleaned up).

At the onset, Fed. R. Evid. 104(a) requires the court to ensure each proposed expert "will assist the trier of fact to understand or determine a fact in issue." *McKenzie v. Benton*, 388 F.3d 1342, 1350 (10th Cir. 2004) (internal citations omitted). Additionally, the trial court is required to perform a gatekeeping function to ensure evidence proffered by each party does not invade the province of the jury or render opinions on issues of law. *Daubert*, 509 U.S. at 597. The party offering the testimony carries the burden to establish all admissibility requirements are met by a

preponderance of the evidence. Fed. R. Evid. 104(a).

## II.    Muñiz is not qualified to provide an opinion on the remaining contested facts.

The Court first determines if an expert is qualified by reviewing their knowledge, skill, expertise, training and/or education. *103 Investors I, L.P.*, 470 F.3d at 990. An expert's qualifications must be capable of laying a foundation sufficient to produce the opinion that he offers. *Anderson v. Equifax Info. Servs., LLC*, No. 2:16-CV-2038-JAR, 2018 WL 1542322, at *2 (D. Kan. Mar. 29, 2018) (explaining "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.") quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). Defendant does not contest that Dr. Muñiz is likely qualified to provide testimony as an expert in specific instances; Defendant's objection is to the application of Muñiz's expertise here.

Following this Court's Order issued on January 30, 2024, a limited number of disputed facts remain. *See* Doc. 234. The facts requiring resolution as identified by this Court are:

- To determine the accuracy of Defendant's designation of plaintiffs and class members as gang members, and the creation of a deprived liberty interest.  Doc. 234, 16, 25-27.
- To determine if Defendant's actions rise to the level defined as "publishing" a "derogatory statement" to the "public." Doc. 234, 14-17.
- To determine if a presumptive bail amount constitutes a significant alteration of status or a cognizable injury in fact. Doc. 234, 17, 22, 26.
- To determine if Progeny's cancelation of events are concrete injuries or merely subjective fears. Doc. 234, 22-23.
- The existence of a process to challenge a gang designation. Doc. 234, 26.
- To determine if the fear alleged by plaintiffs is objective or subjective. Doc. 234, 26.

Muñiz's knowledge, skill, expertise, training, and/or education are inapplicable to the remaining determinations. Following the Court's award of summary judgment in favor of Defendant on the remaining claims, opinions from Muñiz on issues outside those listed above are

not relevant and should be excluded.

Muñiz holds a PhD in Sociology and has conducted research limited to California, in places such as Echo Park, Englewood, and Los Angeles. Exhibit A, *Muñiz dep.*, 8:6-12; 12:15-17; 17-9:9.   As a self-described ethnographer, her central means of research occur in the field by "observing people as they do things." *Id*., 12:19-21. Muñiz's expertise lies in conducting interviews and observing individuals in effort to study law enforcement proceedings in California. *Id*., 5:15-18.

Here, Muñiz did not utilize her ethnographic expertise—she neglected to observe or interview any class member, nor did she immerse herself within the Wichita Police Department, accompany a WPD officer on duty, or investigate the WPD's process for gang classification and member identification. Exhibit A, *Muñiz dep.*, 13:11-20; 22:14-19. She relied solely on the plaintiffs' allegations in the complaint, without pursuing follow-up interviews or contacts. *Id*., 22:14-19. This omission underscores a significant gap in her approach. Additionally, her failure to immerse herself in Kansas' culture—she's never been to Wichita—weakens the credibility of the perspectives she puts forth. *Id*., 22:20-21.

While the rules permit an expert to form opinions based on data beyond their firsthand observations, Fed. R. Evid. 703, testimony demonstrating the expert's unfamiliarity with the processes involved results in exclusion. 103 Invs. I, L.P., 470 F.3d at 990. Muñiz concedes she does not understand the WPD's processes. See Exhibit A, Muñiz dep., 24:17-24. (revealing she does not grasp the implications of an individual being marked inactive in the database). Moreover, she demonstrates a failure to distinguish between the Gang List (comprising active members and associates, shared across various law enforcement notification systems) and the Gang Database (housing an archive of inactive gang members and associates accessible only to select Gang

Intelligence Officers within the WPD's Gang Unit).  Muñiz erroneously asserts that once a person is added to the Gang List, they are permanently listed without removal. Exhibit B, Report, 2. Contrary to her assertion, annual audits routinely result in individuals being removed from the Gang List and marked  "inactive" in the database when  three years pass without further indication of membership. The assertion demonstrates her lack of understanding and fails to establish a solid foundation for her opinions.

Muñiz may be qualified to opine on the effectiveness of an ethnographic research approach, but that approach is missing here. Likewise, Muñiz may be qualified to testify regarding law enforcement procedures in California, but the conjecture that all law enforcement agencies and communities are comparable is nonsensical.

Plaintiffs fail to clear the first hurdle because Muñiz is unqualified to opine on the WPD, Wichita's gangs, and the remaining facts required to resolve this matter.  Her testimony should be disregarded for this reason alone.

### III.    Muñiz's testimony is not relevant and is unreliable.

Should this Court reconcile Muñiz's qualifications with the facts at hand, her report would still not withstand the second level of scrutiny: the rigorous fact-finding process required to establish both relevance and reliability. *See Daubert*, 509 at 589. Muñiz fails both.

#### A.  Muñiz's report is not helpful, relevant, or admissible.

 Plaintiffs must explain how Muñiz's expertise is relevant to the questions remaining here. *See 103 Invs. I, L.P.*, 470 F.3d at 990. Muñiz claims her focus as an ethnographer is to observe and talk to individuals. Exhibit A, *Muñiz dep.*, 12:19-25. She's conducted ethnographic studies on two specific law enforcement agencies. *Id.*, 8:6-10. Yet her research did not assess if gangs exist or if individuals she observed were gang members; her focus was on how law enforcement agencies define gang membership and proceed to designate individuals as gang members. *Id.*, 14:15-18.

The knowledge acquired from these isolated research experiences falls short in addressing the remaining issues at hand.

Moreover, Muñiz's testimony fails to meet step two of the admissibility analysis because her deductions are conclusory and do not include matters beyond the understanding of the average layperson. "The touchstone of Rule 702 is helpfulness of the expert testimony, a condition that goes primarily to relevance. Thus, the Court must determine whether the proffered evidence would be helpful to the trier of fact." *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 202 F. Supp. 2d 1212, 1215 (D. Kan. 2002) (internal citations omitted). Rule 104 requires the expert's help be directly applicable "to understand or determine a fact in issue." *McKenzie*, 388 F.3d at 1350.

Muñiz's Report offers the following opinions:

- Gang designations are overinclusive and inconsistent;
- Gang lists are overinclusive and lack due process protections;
- Inclusion on the gang list has negative consequences; and
- Gang designations are racially biased.

Exhibit B, *Report*. A review of these opinions against the remaining disputed facts in this case highlight Muñiz's unhelpfulness. *See* Fed. R. Evid. 702. Proffered evidence must materially connect to the facts requiring determination in the action to be admissible. Fed. R. Evid. 401. Otherwise, the court must employ its gatekeeping function and exclude the evidence. *Daubert*, 509 U.S. at 597.

The facts remaining in this lawsuit require a credibility determination and do not require an expert to explain what, if any, impact the WPD's actions have on an individual. The trier of fact must determine if the alleged consequences are because of the plaintiffs' own decisions, or the consequence of WPD typing their name in a database.

*Factual dispute #1: To determine the accuracy of Defendant's designation of plaintiffs and*

*class members as gang members, and assess if those designations create a deprived liberty interest. Doc. 234, p. 16, 25-27.*

The evaluation of the evidence to evaluate if each named plaintiff is a validated gang member—or an innocent, misunderstood person—requires only a jury's common-sense consideration. *See* Fed. R. Evid. 702; *Compare e.g.*, Doc. 205-26, *Carson Declaration* with Doc. 207-32, *Cooper Declaration*. Muñiz provides no opinion as to any named plaintiff's gang membership. Exhibit B, *Expert Report of Dr. Ana Muñiz* ("*Report*"), at 5 (listing the four opinions provided). Muñiz admits she cannot determine if the stories crafted in plaintiffs' complaint are true or not. Exhibit A, *Muñiz dep.* 30:25-31:6. She did not review a specific case or names from the gang list. *Id*., 55:9, 21-22. Her testimony does not help the factfinder determine the accuracy of WPD's designations.

Additionally, in response to plaintiffs' facial void for vagueness challenge to K.S.A. 21-6313, the Order requires plaintiffs to demonstrate how their gang designation (specifically) deprives them of a liberty interest afforded them under the First Amendment. Doc. 234, *Order*, 25. This determination coincides with plaintiffs' burden to show the statute's definitions are "impermissibly applied in a substantial number of cases compared to the statute's plainly legitimate sweep"—again pertaining to the accuracy of WPD's designation. Muñiz's opinions are likewise unhelpful in making this determination.

On the surface, Muñiz's first two opinions appear applicable, but a closer look reveals otherwise: Muñiz opines the criteria implemented by WPD through Policy 527 are vague because they provide officers broad discretion—discretion that creates a "likelihood" of inconsistent and overinclusive designations. Exhibit B, *Report* at 5. Yet she does not claim the gang list ***includes*** incorrect designations, or that any class member ***does not*** belong to a gang. Her research found that "police officers consider widely worn apparel, such as sports team logos and red or blue t-

shirts, to be indicative of gang affiliation." Exhibit B, *Report* at 8. But her research did not conclude sports team logos or specific colors **do not** communicate membership, nor did her studies discover that a consideration of apparel **leads to** incorrect designations. Thus, the conclusion that the WPD's consideration of such factors renders Policy 527 vague and overinclusive is a jump in logic unsupported by her research. *See* Fed. R. Evid. 702. And this unsupported conclusion fails to aid a jury in weighing the evidence presented. Muñiz's assessment of the officers' deposition testimony similarly provides no specialized knowledge unavailable to a lay person. *See* Exhibit B, *Report* at 6-8.

Next, Muñiz incorrectly accuses WPD policy of failing to "account for innocuous non-gang related tattoos and thus may capture non-members as well as active members." Exhibit B, *Report* at 8. This, too, shows Muñiz's misunderstanding of the policies and procedures in question: Policy 527 **does** allow WPD officers to consider innocuous non-gang related information under their discretion, allowing the application of the Gang Intelligence Officer's knowledge, training, and experience to determine the distinction between tattoo symbols indicative of gang membership and those that are innocent cultural symbolism. Muñiz advocates for this distinction while simultaneously criticizing the policy for allowing discretion. Exhibit B, *Report* at 9. Further, there is no indication WPD **does** capture non-members under its interpretation of tattoos, yet another assumption Muñiz jumps to. *Id*., at 8. The factfinder is not aided by this unhelpful opinion.

The same is true regarding Muñiz's opinion of a need to define "gang areas." *See* Exhibit B, *Report* at 8-9. WPD admits the evolving nature of locations where gangs spend time. A layperson does not require help to understand the possibility of unknowingly entering a bar or store identified by law enforcement as a frequent hangout of a local gang. Her example of an unaware immigrant in 2018 does not claim the woman could not obtain an immigration status change, or

that she was prevented from challenging affiliation with her ex-boyfriend. *See id.*, at 9. This single instance fails to demonstrate how her expertise is required by a layperson to understand the fact at issue. Further, this example is inapplicable to the facts: the WPD does not use its intelligence to make any decisions; they provide the information to the prosecutor's office, who then may provide it to the sentencing judge. Those decisions are discretionary and not within the WPD's control. *See* Doc. 234, Order, 21 ("No party responsible for imposing any gang conditions of release is before this Court…Plaintiffs lack standing to assert any claim against Defendant for gang conditions of release imposed by other parties.")

While at first glance the opinions offered by Muñiz appear applicable, a closer review reveals her knowledge, skill, experience, training, or education provides no specialized assistance to a trier of fact. The trier of fact is capable of determining the factual dispute surrounding the WPD's accuracy of designating gang members in Wichita and resulting consequences. The remaining opinions offered by Muñiz concerning the accuracy of identification are unreliable. *See* Supra § III.B.

> *Factual dispute #2: To determine if Defendant's actions rise to the level defined as "publishing" a "derogatory statement" to the "public." Doc. 234, 14-17.*

Muñiz did not review any information to form an opinion related to this disputed issue. Because her opinion has not been supplemented and is not relevant to this fact requiring determination, it should be excluded. *See* Fed. R. Evid. 402.

> *Factual dispute #3: To determine if a presumptive bail amount constitutes a significant alteration of status or a cognizable injury in fact. Doc. 234, 17, 22, 26.*

A determination as to a cognizable injury in fact required for standing requires multiple considerations. *See e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–42, *as revised* (May 24, 2016) (discussing the roles of historical practice in English and American courts, as well as the judgment

of Congress in determining what harms satisfy the injury-in-fact requirement). Muñiz offers no on-point opinion grounded in her expertise to assist in making this determination.

Muñiz dedicates the third opinion to a lamentation of consequences applied to individuals who appear on a gang list. Exhibit B, *Report* at 14-18. Muñiz states these impacts result from processes like background checks and societal stigma. *Id*. at 14. Again she fails to differentiate between individuals unjustly on a gang list from those who are gang members, or from those who experience consequences as a direct result of criminal behaviors, rendering this opinion unhelpful.

Additionally, this opinion is not outside of common sense and provides no "expert" assistance to a jury. *See Delsa Brooke Sanderson*, 976 F.3d at 1172.  Muñiz jumps to conclusions untethered to her claimed research or expertise; claiming "individuals may remain on a gang list for decades, sometimes without their knowledge" and then flip-flops to suggest "gang-designated individuals are reluctant to …go[] to the grocery store." Exhibit B, *Report*, 14-15. Regardless, these conflicting opinions are inapplicable to what remains to be decided.

Although Muñiz discusses possible effects of an increased bond, she cites a single article for support (not her experience, knowledge, or her research). Exhibit B, *Report*, 16. The lone article reviews prosecutorial misconduct—an accusation not made here and unconnected to the remaining facts requiring determination. The lone author assumes gang databases include non-gang members and "are compiled without any requirement of criminal conduct or actual gang membership[.]" Exhibit B, *Report*, 16, quoting K. Babe Howell. Muñiz fails to connect the author's (inaccurate) assumptions with the facts here, or demonstrate how *her* expertise assists a fact finder. This opinion should be omitted.

*Factual dispute #4: To determine if Progeny's cancelation of events are concrete injuries or merely subjective fears. Doc. 234, 22-23.*

Muñiz did not review any information to form an opinion related to this fact involving

Progeny as a named plaintiff. Her testimony is irrelevant to this issue.

*Factual dispute #5: The existence of a process to challenge a gang designation. Doc. 234, 26.*

Muñiz opines the WPD has an inconsistent notification process and appeal policy, Exhibit B, *Report*, 5, and "inadequate opportunities to contest and correct inaccurate information on the Gang List." *Id*., 6. Her conclusion that there is no removal process for anyone again misunderstands the Gang List/Gang Database distinction and conflicts the testimony WPD officers provided. *Id*., 12.

Again, she has not spent time with the WPD or interviewed any officer to learn of their practices. The information Muñiz cherry picks to base her opinion on is disputed by Defendant. Muñiz does not put forth any expert knowledge that a trier of fact requires to understand this issue. Her opinion does nothing to help a factfinder resolve this dispute.

Defendant admits it is possible for an adult to be unaware of their inclusion on the gang list— Muñiz's testimony is redundant in establishing this point. The critical issue at hand is whether an individual may challenge their inclusion. Doc. 234, *Order*, 26. Muñiz's personal viewpoint on the adequacy of the process lacks relevance and does not contribute to the fact-finding process.

*Factual dispute #6: To determine if the fear alleged by plaintiffs is objective or subjective. Doc. 234, 26.*

This final fact also falls short. Plaintiffs' First Amendment claim of chilled speech and association survived summary judgment. Doc. 234, *Order*, 26. Muñiz's third opinion claims that placement on any gang list has negative consequences. Exhibit B, *Report*, 14-15. Muñiz cites multiple consequences resulting from being entangled with the criminal justice system, most of which have already been ruled inapplicable to this case. *See* Doc. 234, *Order*, p. 21.

The only seemingly pertinent opinion claims the designation—itself—creates

psychological distress, disruption of community and family relationships, and de-facto house arrest.  Exhibit B, *Report*, 15. Muñiz does not cite a single study or source of evidence to support this opinion.  She has not interviewed any plaintiff in this case.  Exhibit A, *Muñiz dep.*, 13:11-20; 22:14-19. And this opinion does not assist the trier of fact who will likely hear from the plaintiffs directly and judge the nature of the fears alleged.

Muñiz goes on to state that sharing intelligence with other law enforcement agencies "that conduct background checks can compromise an individual's employment and housing prospects." Exhibit B, *Report*, 16. Again, no source is cited. And Muñiz conflates results from a criminal background check with information shared between authorized law enforcement agencies for criminal intelligence purposes. *Compare* K.S.A. 22-4701, *et seq.*, with Doc. 1-1, *WPD Policy 527*. No job applicant is checked against the gang database; only specific officers have access to the database. Any applicant who fails a criminal background check has a documented criminal history, regardless of his or her gang affiliation(s). Muñiz's statements to the contrary are unhelpful and confusing.

A trier of fact is able to weigh the testimony from both parties and decide if plaintiffs' claimed fears genuinely result from a database entry. Muñiz's expertise does not aid in that effort. Further, Muñiz's assumptions—unsupported by anything other than her personal opinion—do not make for a reliable opinion and require exclusion. *Supra* § III.B; s*ee also Daubert*, 509 U.S. at 589.

Testimony that is irrelevant is inadmissible. *Delsa Brooke Sanderson*, 976 F.3d at 1172; *see also* Fed. R. Evid. 402. Plaintiffs' expert fails the first requirement of the second prong because her testimony is not relevant/helpful/admissible to determine any of the remaining facts at issue.

**B.      The conclusions drawn by Muñiz are untested, unsupported, and unassessed, rendering them unreliable.**

Muñiz's methods are not scientific and amount to generalized conclusions about law enforcement operations in general. She has no specialized knowledge of the gang community in Wichita, and her opinions are based on misinformation and allegations unproven in this case.

The court's duty as gatekeeper "requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (cleaned up). Muñiz's technique as an ethnographer is difficult to measure. Ethnography is "the study and systematic recording of human cultures." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ethnography, Last accessed Feb. 26, 2024. The district court must apply the same level of scrutiny to testimony from a social science field. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999) (holding the court's gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") The data used to support her opinions is insufficient and does not reflect a generally recognized method. Rather, they must be "supported by appropriate validation" and "establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590; see Fed. R. Evid. 702(b)–(d).

"Where an expert testifies based on experience, the tribunal reviews the reliability of the testimony with reference to the nature of the issue, the expert's particular expertise, and the subject of the testimony. The method employed by the expert must be scientifically sound and the opinion must be based on facts which satisfy Rule 702's reliability requirements." *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1222–23 (10th Cir. 2018) (cleaned up). A court "cannot allow the jury

to speculate based on an expert's opinion which relies only on clinical experience in the absence of showing a consistent, statistically significant association[.]" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 887 (10th Cir. 2005). Rather, the expert must rely on "objective, verifiable evidence and scientific methodology of the kind traditionally used" by those in a similar field. *Id.*, internal citations omitted. This includes a demonstration by the proponent that the testimony meets "the level of intellectual rigor of the expert in the field." *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1206 (10th Cir. 2002).

In *Hollander*, plaintiffs attempted to introduce testimony from doctors to discuss specific ingredients in drugs and their potential effects. *See id., generally*. The Tenth Circuit Court of Appeals ruled the testimony unreliable because 1) the doctor failed to explain how one drug was similar to another; 2) the doctor failed to provide details on his methodology or conclusions of the studies alleging specific effects; and 3) the theory had not been tested, only hypothesized. *Id.* at 1207-08.

The same circumstances are present here: 1) Muñiz does not provide details as to how the WPD is comparable to the law enforcement agencies in Englewood or Los Angeles, California; 2) her report provides no details as to her methodology or how she reached specific conclusions, nor could she sufficiently answer those questions in her deposition; and 3) her opinions have not ever been tested, peer-reviewed, or objectively analyzed. Additionally, Muñiz admits she did not consult with her peers in creating the report, nor did she request a peer review her conclusions. Exhibit A, *Muñiz dep.*, 22:8-13. Plaintiffs must evidence how her opinions meet the "level of intellectual rigor" in this field. *See id.*, at 1206.

Muñiz cites no quantitative numbers or statistics to support her overbroad opinions that every/all/any gang designations are always overinclusive and inconsistent and only a parade of

horrible consequences directly attributable to the WPD's policies and practices result. Exhibit B, *Report*. She provides no support for her speculative assumptions that Policy 527  leads to an "impermissible application in a substantial number of cases." *See id*., at 8-9, or that WPD's practices created a deprivation of liberty interests. The omission of reliable principles and methods results in her personal opinion, not one grounded in research. Rather, Muñiz's opinions are the product of advocacy for plaintiffs, not an application of reliably applied methods of research.

Expert testimony lacks "fit" when "a large analytical leap must be made between the facts and the opinion." *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *Id*. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

Here, the conclusory statements made by Muñiz provide no detail. *See e.g.*, Exhibit B, *Report*, 15 (claiming gang designation leads to de-facto house arrest, a disruption in relationships, and that negative consequences multiply with intelligence sharing between law enforcement agencies—all with no citation or reference to any specific study or methodology). These statements are unable to be validated, have not been tested, and are unreliable—Muñiz expects "because I said so" to be enough.  It is not. *See Gen. Elec. Co.,* 522 U.S. at 146.

The trial court's gatekeeping function requires more than "taking the expert's word for it." *See* Fed. R. Evid. 702, adv. comm. note. The expert must explain how they drew their conclusions. The aim is to exclude any expert testimony that is based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

What's missing is a true apple-to-apple comparison: Muñiz ignores the fail-safes implemented by WPD to prevent inaccuracies, including the nomination/review process before

initial inclusion, and the annual re-evaluation of every active member. Absent these additional considerations, and having demonstrated no implementation of a scientifically sound method to reach these opinions, and no way to test its reliability, the testimony offered by Muñiz should be excluded under Rule 702's reliability requirements. *See F & H Coatings, LLC v. Acosta*, 900 F.3d at 1223.

## Conclusion

Dr. Muñiz is unqualified to opine on the issues remaining and her testimony is irrelevant, unreliable, and risks more harm than help to the trier of fact. Her testimony should be excluded.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/Charles E. Branson**

| | |
|---|---|
| David R. Cooper | #16690 |
| Charles E. Branson | #17376 |

**Attorneys for Defendant**

Jennifer L. Magaña, #15519
City Attorney
Sharon L. Dickgrafe, #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, Kansas 67202
P: (316) 268-4681 | F: (316) 268-4335
sdickgrafe@wichita.gov
**Attorneys for City of Wichita**

## Certificate of Service

On March 15, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

Teresa A. Woody, KS #16949
KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC.
211 E. 8th Street, Suite D | Lawrence, KS 66044
Tel: (785) 251-8160
twoody@kansasappleseed.org

Sharon Brett, KS #28696 | Karen Leve, KS #29580 | Kunyu Ching, #29807
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS
10561 Barkley Street, Suite 500 | Overland Park, KS 66212
Tel: (913) 490-4100 | Fax: (913) 490-4119
sbrett@aclukansas.org
kleve@aclukansas.org
kching@aclukansas.org

Thomas J. Sullivan | *admitted Pro Hac Vice* | Mitchell F. Engel, KSD #78766 |
Jordan C. Baehr, KS #27213 | Paul M. Vogel, KSD #79022
SHOOK, HARDY & BACON, LLP | 2555 Grand Blvd., Kansas City, MO 64108
Tel: (816) 474-6550 | Fax: (816) 421-5547
tsullivan@shb.com
mengel@shb.com
jbaehr@shb.com
pvogel@shb.com
**Attorneys for Plaintiffs**

<u>s/Charles E. Branson</u>