## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGENY, a program of Destination
Innovations, Inc., CHRISTOPHER COOPER,
ELBERT COSTELLO, MARTEL
COSTELLO, and JEREMY LEVY, JR., on
behalf of themselves and others similarly
situated,

                    *Plaintiff(s)*,            Case No. 6:21-cv-01100-EFM-ADM

v.

CITY OF WICHITA, KANSAS,

                    *Defendant*.

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
## SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

After extensive arms-length negotiation, the Parties have entered into a proposed Settlement Agreement resolving this class action suit (attached as **Exhibit A**). Plaintiffs Progeny, Christopher Cooper, Elbert Costello, Martel Costello, and Jeremy Levy, Jr. and Defendant the City of Wichita, Kansas ("the City") now jointly seek an order from the Court preliminarily approving the Settlement Agreement on the terms discussed below.

"Class action settlements require court approval." *Bailes v. Lineage Logistics, LLC*, No. 15-CV-02457-DDC-TJJ, 2016 WL 7242501, at *4 (D. Kan. Dec. 15, 2016). To approve a class action settlement, "the court must find that it is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)). This determination usually involves a two-step process. First, the court makes an initial decision "whether the proposed settlement is 'fair, reasonable, and adequate,' and if it is, the court preliminarily approves the settlement and orders the parties to send notice of the settlement to class members." *Id.* (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)); *but see also Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 513 (D. Kan. 2002) ("[C]lass actions maintained pursuant to Rule 23(b)(2) do not require individual notice and are subject only to the notice requirements of [Rule 23(c)(2)] of the Federal Rules of Civil Procedure"); Fed. R. Civ. P. 23(c)(2) (permitting "appropriate notice" to a class certified under Rule 23(b)(2) but requiring "best notice" to a class certified under Rule 23(b)(3)). Second, the court holds a final fairness hearing, "entertains any objections," makes a final determination of "whether the settlement is 'fair, reasonable, and adequate,' and either denies or approves the settlement." *Id.*

Pursuant to Federal Rule of Civil Procedure 23(e), the Parties respectfully request the Court: (1) grant preliminary approval of the Settlement Agreement; (2) approve the form and manner of the Long- and Short-Form Notice of Proposed Class Action Settlement (attached as

**Exhibits B** and **C**); and (3) set a case schedule, including deadlines for written submissions from Class Members and a date for a final fairness hearing pursuant to Federal Rule of Civil Procedure 23(e)(2).

## I.   OVERVIEW OF THE LITIGATION

On April 15, 2021, Plaintiffs filed this class action pursuant to 42 U.S.C. § 1983.[1] Doc. 1. Plaintiffs challenged the constitutionality of K.S.A. § 21-6313 *et seq.* and asserted that the Wichita Police Department's ("WPD") policies and practices implementing K.S.A. § 21-6313 *et seq.* through creating and maintaining a database and/or list of individuals the WPD has designated as gang members or associates ("the Gang Database" or "Gang List") violate Plaintiffs' First and Fourteenth Amendment rights to due process, equal protection, and freedom of expression and association. *Id.*

On July 9, 2021, Defendants moved to dismiss the action. Doc. 14. On January 10, 2022, the Court dismissed the individual defendants, Plaintiffs' substantive due process and equal protection claims, and Progeny's procedural due process claim brought as an association on behalf of its members. Doc. 28. The City filed its answer on January 24, 2022. Doc. 31.

From January 2022 to August 2023, the Parties engaged in intensive discovery efforts, including the exchange of voluminous information about WPD personnel's development of and advocacy for K.S.A. § 21-6313 *et seq.*, WPD Gang List/Database policies and practices, WPD personnel's interpretation and application of the statute and Policy 527, and Plaintiffs' experiences as Gang Database designees. Doc. 196 at 2–9, 47; *see also id.* at 10–40. Collectively, the Parties propounded, responded to, and supplemented responses to seven sets of document requests, two

---

[1] Prior to filing suit, Plaintiffs engaged in a thorough, months-long pre-suit investigation, the results of which served as the basis for the allegations in Plaintiffs' complaint. Decl. of Kunyu Ching in Supp. of Joint Mot for Prelim. Approval ("Ching Decl.") ¶ 3.a.

sets of interrogatories, and one set of requests for admission. Docs. 32, 60, 89, 114, 119, 125, 144, 14, 170. Together, the Parties produced nearly 140,000 pages of documents and native files, plus expert reports. Finally, the Parties conducted 25 depositions of current and former City personnel, all named Plaintiffs, Rule 30(b)(6) representatives, and expert witnesses. Docs. 87, 93, 94, 95, 96, 97, 98, 99, 100, 101, 110, 111, 112, 115, 117, 126, 133, 147, 148, 149, 155, 156, 160, 169, 180.

Contemporaneous with these discovery efforts, the Parties engaged in lengthy and detailed settlement negotiations beginning in March 2022. The Parties first retained former Kansas City Mayor Sly James, a mediator experienced both in city government and plaintiff-side civil litigation, to assist them in exploring settlement. The Parties engaged in four sessions with Mr. James from October 13, 2022, to April 10, 2023. In addition, the Parties exchanged numerous revised proposals and met again without Mr. James on November 1, 2022 and April 12 and 21, 2023. Though not immediately successful, these negotiations were productive and resulted in consensus on the majority of the terms ultimately memorialized in the Settlement Agreement.

On June 30, 2023, Plaintiffs moved for class certification pursuant to Rule 23(b)(2). Doc. 175. The Court granted Plaintiffs' motion for class certification, appointed Plaintiffs as class representatives, and appointed Plaintiffs' counsel as class counsel. Doc. 212. The Court certified the following class: "All living persons included in the Wichita Police Department's Gang List or Gang Database as an Active or Inactive Gang Member or Gang Associate." *Id.* at 9.

On September 29, 2023, the Parties filed cross-motions for summary judgment, comprising more than 350 pages of briefing and 1,500 pages of exhibits. Docs. 205, 206, 207, 215, 218, 222, 223. On January 30, 2024, the Court denied both motions, dismissing for lack of standing Progeny's claim that K.S.A § 21-6313 *et seq.* is void for vagueness and overbroad in violation of due process, and all Plaintiffs' claims that the statute and the WPD's implementing policies and

practices directly prohibit expressive and associational activities protected by the First Amendment. Doc. 234 at 2, 26–27. But the Court further found that "genuine issues of material fact prevent summary judgment in favor of either side on the remaining Counts," preserving the following claims for trial:

- Plaintiffs Cooper, E. Costello, M. Costello, and Levy's claims that the definitions included in K.S.A. § 21-6313, *et seq.*, and adopted into WPD Policy 527, are unconstitutionally vague and overbroad in violation of the Fourteenth Amendment.

- The individual Plaintiffs' claims that K.S.A. § 21-6313 and WPD Policy 527 fail to provide procedural due process in violation of the Fourteenth Amendment.

- All Plaintiffs' claims that K.S.A. § 21-6313 and WPD Policy 527 have a chilling effect on certain constitutionally protected expressive and associative behaviors in violation of the First Amendment.

- All Plaintiffs' claims for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

*Id.* at 2, 23–26.

On February 16, 2024, the Court entered a Trial Scheduling Order setting a five-day bench trial beginning May 7, 2024 and other various deadlines. Doc. 239.

Following the Court's summary judgment order, the Parties exchanged additional settlement communications and engaged in formal negotiations by videoconference on March 18 and 27, 2024, supervised by experienced mediator and former Johnson County, Kansas District Court Judge Paul Gurney. These latest efforts resulted in the Settlement Agreement now before the Court.

## II.      SUMMARY OF THE SETTLEMENT AGREEMENT

The Settlement Agreement was fully executed as of April 12, 2024. It resolves all claims brought on behalf of the Class in exchange for detailed actions to be taken by the City. Ex. A, Part XVI. The Agreement is not an admission of liability by the City nor a concession by Plaintiffs that

their claims are not well-founded, and it preserves Plaintiffs' right to facially challenge the constitutionality of K.S.A. § 21-6313 *et seq.* against other entities. *Id.* ¶ 5; *see also id.* Part XIII. The Settlement Agreement contemplates dismissal of the pending claims with the Court retaining jurisdiction for purposes of enforcing the terms of the Settlement Agreement, and conformance with Rules 23(e), 41(a), and 65(d). *See id.* Part XVI–XVII. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation, the Parties urge the Court to preliminarily approve the Settlement Agreement as submitted.

Plaintiffs continue to believe that their claims are meritorious and, as the Court indicated in its order granting class certification, properly redressable on a class-wide basis. Defendant denies any violations of federal law. Despite these differing positions, the Parties share a common desire to address the concerns raised in this lawsuit in a way intended to protect the constitutional rights of Wichita citizens and to allow law enforcement to conduct effective investigations for public safety. To that end, the Settlement Agreement addresses the issues raised in the Complaint by obligating the City to implement revisions to existing WPD policies and practices and to enact new policies and practices that:

(1) narrow and clarify the criteria the WPD can use to add a person to the Gang List/Database, *see id.* Part II, ¶¶ 1–2;

(2) provide procedures for juveniles who meet the revised criteria for inclusion in Gang List/Database to avoid such inclusion pursuant to negotiated intervention agreements, *id.* Part II, ¶ 3;

(3) reduce the minimum number of a years a gang designee must remain on the Gang List/Database from three (3) to two (2), *id.* Part I;

(4) eliminate the "inactive" and "associate" categories from the Gang List/Database and remove all individuals presently so designated from the List/Database, *id.* Part VIII;

(5) require notice to all future gang designees of their designation, the basis therefor, and procedures to review and/or appeal such designation, *id.* Part III;

(6) establish procedures for gang designees to review the supporting documentation and/or appeal their designations, *id.* Parts IV–VI;

(7) prescribe steps to be taken promptly and annually thereafter to audit the Gang List/Database for consistency with revised policies and practices, and publish results thereof, *id.* Part VII; and

(8) train WPD personally on the revised policies and practices, *id.* Part IX.

In addition, the Settlement Agreement provides for the immediate review of named Plaintiffs' gang designations consistent with the revised criteria, a biannual review of the City's actions to implement the Settlement Agreement's terms by a jointly selected Special Master for a period of three years, and the payment of an agreed sum for attorneys' fees and costs incurred in prosecuting this action. *See id.* Parts X–XII.

Pursuant to the Settlement Agreement, the City will revise Policy 527, which prescribes the process for listing and maintaining individuals as gang designees on the Gang List/Database and incorporates the criteria set forth in K.S.A. § 21-6313(b) for gang designation. Like the existing Policy 527, the revised policy requires an individual to either self-admit to gang membership or meet at least three enumerated criteria to be included in the Gang List/Database. Unlike the existing policy, however, the revised policy will require that any nomination due to self-admission be supported by a signed, sworn affidavit from the nominating official. *Id.* Part II.1.a. In particular, the specific policy reforms regarding the application of the statutory criteria are summarized as follows:

| Previous criteria per K.S.A. § 21-6313(b)(2) | Revised criteria per Settlement Agreement Part II.2 |
|---|---|
| (A) Is identified as a criminal street gang member by a parent or guardian; | a. A parent or guardian provides a documented statement to Sedgwick County or City of Wichita law enforcement personnel that the person is 13 years of age or older and is a member of a particularly named criminal street gang. |

| (B) is identified as a criminal street gang member by a state, county or city law enforcement officer or correctional officer or documented reliable informant; | b. The person is identified as a criminal street gang member by a federal, state, county, or city law enforcement officer or correctional officer or documented reliable informant and such identification is corroborated by independent information. For purposes of this criteria, "independent information" must concern activity within 3 years prior to the individual's nomination to the Gang Database, and must be of the type described in criteria (a) or (c)-(g) of this Policy. The same information may not be used to satisfy more than one criteria for inclusion in the WPD Gang Database. |
|---|---|
| (C) is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information; | [This provision is eliminated] |
| (D) frequents a particular criminal street gang's area; | c. The person is observed in a business or residence two or more times in six months that has a prior documented pattern of gang violence or activity, and there is no good faith basis for the person to be at that business or residence, such as to purchase goods or services, attend school, for employment purposes, or to participate in recreational activities, unless such activities are organized for the purpose of engaging in criminal street gang activity; |
| (E) adopts such gang's style of dress, color, use of hand signs or tattoos; | d. The person adopts two or more of the following as observed in person by a Sedgwick County or City of Wichita law enforcement officer, or as documented by physical evidence including but not limited to photographs, social media posts, or other documents: (1) a particular color of attire, (2) attire with gang insignia, (3) the use of hand signs, or (4) particular tattoos, and the nominating officer can articulate a reasonable basis for the belief that the particular display is associated with membership in a criminal street gang; |
| (F) associates with known criminal street gang members; | [This provision is eliminated] |
| (G) has been arrested more than once in the company of identified criminal street gang members for offenses which | e. The person has been arrested more than once in the company of individuals presently listed as criminal street gang members in the WPD Gang Database; |

| | |
|---|---|
| are consistent with usual criminal street gang activity; | |
| (H) is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation; | [This provision is eliminated] |
| (I) has been stopped in the company of known criminal street gang members two or more times; | g. The person has been observed in the company of known criminal street gang members two or more times while participating in criminal street gang activity. The observing Sedgwick County or City of Wichita officer must articulate a reasonable basis for their belief that each the person was observed participating in criminal street gang activity. There is a presumption that presence at or engagement in the following activities does not constitute criminal street gang activity for purposes of this criteria: funerals, weddings, family celebrations, large public gatherings for entertainment purposes, educational functions, and religious or political gatherings. |
| (J) has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual; | f. The person has participated in or undergone activities self-identified or identified by a reliable informant to be part of a gang initiation ritual; |

These revisions are intended to clarify the types of conduct that may result in gang designation so that citizens may reasonably anticipate and avoid designation (or in the case of individuals already designated, avoid renewal). The revisions are also intended to tie gang designations more closely to criminal activity, reduce the possibility of designation due to constitutionally protected expressive and associative conduct, and focus the use of the Gang List/Database on conduct implicating public safety. The Settlement Agreement further provides for elimination of the "inactive" and "associate" categories from the Gang List/Database, and that all individuals currently identified as "inactive" or "associates" will be removed from the database

within 90 days of the Agreement's effective date. *See* Ex. A, Part VIII. Collectively, these provisions directly address the vagueness, overbreadth, and First Amendment concerns underlying Plaintiffs' claims on behalf of the class.

Further policy revisions set forth in the Settlement Agreement establish procedures providing individuals included in the Gang List/Database with notice of and an opportunity to challenge such inclusion. *See id.* Part III–V. Under Part III, each individual added to the Gang List/Database (or if a minor, the parent or guardian of such individual) will be informed of their inclusion, the criteria used for the designation and any renewals, the date(s) of initial identification and any renewals, a copy of Policy 527 (as revised), instructions for reviewing supporting documentation, instructions and forms for appealing designation, and gang prevention literature. *See id.* Part III. For adults, this information will be provided via written notification to their last known address. *Id.* Part III.2. For minors, a WPD Gang/Felony Assault Section supervisor will attempt to contact the minor's parent or guardian directly. *Id.* Part III.1. The WPD shall document all efforts to provide notice to or regarding designated individuals.

Under the Settlement Agreement, any individual (and the parent or guardian of a minor) will have the opportunity to review their own status in the Gang List/Database. *See* Ex. A, Part IV.1. The Agreement sets forth detailed procedures for requesting such review, including an initial template review request form for citizens to submit. *Id.* Part IV.2, App'x B. The WPD shall provide a written response within 30 days of receipt of the request. For designated individuals, the response shall include the criteria used for the designation and any renewals, the date(s) of initial identification and any renewals, a copy of Policy 527 (as revised), instructions for reviewing supporting documentation, instructions and forms for appealing designation, and gang prevention literature. *See id.* Part IV.4–6. Any individual included in the Gang List/Database may also request

to review WPD documentation supporting their inclusion. *See id.* Part IV.7–9.

The Settlement Agreement additionally provides each designated individual with an opportunity to appeal their inclusion in the Gang List/Database once every 18 months. *See* Ex. A, Part V. A Gang Review Ombudsperson ("GRO") shall review any information submitted by the individual requesting review and WPD documentation supporting designation, and then issue a written decision. *Id.* Part V.1, 5–11. The Settlement Agreement sets forth detailed eligibility requirements for GROs, each of whom will serve a two-year term. The Parties shall agree upon the first GRO, and the Wichita City Council shall select all subsequent GROs. *Id.* Part V.2–4, Part VI. In addition to the notification and gang status review communications described above, instructions and forms for appealing Gang List/Database inclusion will be posted on the WPD website. *Id.* Part V.4, 13, *see also id.* App'x A. Collectively, the notification, review, and appeal procedures discussed above directly address the procedural due process concerns underlying Plaintiffs' claims on behalf of the Class.

The Settlement Agreement provides for a three-year period of oversight by Special Master Judge Paul Gurney, who mediated the Parties' final settlement meeting and assisted in finalizing the settlement terms. Ex. A, Part XI. Every six months, Special Master Gurney will review documentation bearing on Defendant's continued compliance with the agreement, including:

- a random selection of up to 20 individuals added to the Gang Database within the preceding six months (and supporting documentation);

- documentation of notification efforts for each addition to the Gang List/Database;

- documentation related to any appeals filed, granted, or denied within the preceding six months;

- documentation of juveniles added to the Gang List/Database within the preceding six months;

- training materials related to gangs or WPD units responsible for the Gang List/Database;

- results of the annual Gang List/Database audit,[2] including a list of all individuals added to, renewed, or removed and a subset of related documentation.

*Id.* Part XI.2–7. Special Master Gurney will report the results of his review, including any compliance deficiencies, to the Parties, who shall meet with the Special Master to discuss any corrective action plan needed to remedy any deficiencies. *See id.* Part XI.10. In the event that the Parties cannot agree on a sufficient corrective action plan, Plaintiffs may elect to pursue enforcement of the Settlement Agreement with the Court. *See id.* Part XI.13.

The Settlement Agreement provides that the City will pay Plaintiffs $550,000 in attorneys' fees and costs. This sum is significantly less than the fees and costs incurred over the three-plus years that Plaintiffs have litigated this case—which, at the time of the Parties' last mediation, exceeded $2.5 million. In the interest of resolving this matter favorably for the Parties, including all Class members, an estimated 1,250 hours spent by Plaintiffs' counsel on this matter have been considered *pro bono publico*.

## III.   THE COURT'S ORDER GRANTING CLASS CERTIFICATION SHOULD NOT BE DISTURBED.

In its order granting Plaintiffs' motion for class certification, the Court found that the proposed class satisfied the requirements of numerosity, commonality, typicality, and adequacy and certified the following Rule 23(b)(2) class: "All living persons included in the Wichita Police Department's Gang List or Gang Database[] as an Active or Inactive Gang Member or Gang Associate." Doc. 212 at 9. The Court further appointed Plaintiffs' counsel as Class Counsel under

---

[2] The WPD's annual audit involves checking all Gang Database entries against the revised criteria for designation and removing from the Database individuals without adequate documentation to support designation within the previous two years. Accordingly, Judge Gurney's review of audit results will occur only during reviews immediately following the conclusion of the audit. *See* Ex. A, Part XI.7.

Rule 23(g). *Id.* at 17–18. The Parties have negotiated and approved the Settlement Agreement in light of the Court's ruling, and for the purposes of settlement, they agree that the requirements of Rule 23(a) and (b)(2) are met and that certification was proper for all the reasons described in the Court's order.

"Class action settlements are premised upon the validity of the underlying class certification." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004). Here, the Court's certification of the above class is valid and should remain in effect for purposes of settlement approval. Since that order issued, there has been no change in circumstance that would alter the Court's thorough and well-reasoned analysis.

## IV. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED.

As a matter of public policy, the law favors and encourages settlements. *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354–55 (10th Cir. 1972); *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). This is particularly true in the context of class actions and other complex cases, where substantial judicial resources can be conserved by avoiding protracted litigation. *See, e.g.*, *Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 14-2378, 2015 WL 4523806, at *2 (D. Kan. July 27, 2015) ("The law favors compromise and settlement of class action suits."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (recognizing the "strong judicial policy in favor of settlements, particularly in the class action context" (internal quotation marks and citation omitted)). "At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, i.e. whether

there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing." *Alexander v. BF Labs Inc.*, No. CV 14-2159-KHV, 2016 WL 5243412, at *9 (D. Kan. Sept. 22, 2016). (collecting citations). At this stage, courts apply a "less stringent" standard than that at final approval. *Freebird, Inc. v. Merit Energy Co.*, No. CIV.A. 10-1154-KHV, 2012 WL 6085135, at *5 (D. Kan. Dec. 6, 2012). "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel,* 286 F.R.D. at 492 (internal quotations and citation omitted).

A proposed settlement may be approved only after the Court makes a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Tenth Circuit has directed district courts to consider four non-exclusive factors in determining whether a proposed settlement is "fair, reasonable, and adequate":

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see also* Fed. R. Civ. Proc. 23(e)(2) (identifying factors a court must consider in determining that a proposed class action settlement agreement is fair, reasonable, and adequate). All four factors favor preliminary approval here. "These inquiries do not require the court to 'conduct a foray into the wilderness in

search of evidence that might undermine the conclusion that the settlement is fair.'" *Jackson v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *2 (D. Kan. Feb. 23, 2015) (citation omitted).

**A.  The Settlement Agreement Was Fairly and Honestly Negotiated.**

The Settlement Agreement is the result of extensive negotiations conducted at arm's length and in good faith by seasoned counsel. The parties' negotiations were lengthy, at times contentious, and largely overseen by two highly skilled and experienced independent mediators, attorney and former Kansas City, Missouri Mayor Sly James and former Johnson County, Kansas District Court Judge Paul Gurney.

The Parties have a thorough understanding of the facts and legal arguments that remain at issue. Plaintiffs' counsel spent considerable time conducting pre-suit investigations. During the more than three years this case has been pending, the Parties have engaged in extensive discovery, including the production and review of nearly 140,000 pages of documents and files. The Parties' comprehensive settlement negotiations included nine formal meetings over an 18-month period, as well as innumerable intermediate communications, proposals, and revisions. These negotiations were well-informed by the knowledge counsel gained through their investigations of the law and facts of the case, as well as by the Court's detailed rulings on, among other things, the City's motion to dismiss, Plaintiffs' motion for class certification, and the Parties' cross-motions for summary judgment. Based on this knowledge and counsel's broad experience in litigating similar cases, *see* Doc. 212 at 18, the Parties made educated assessments regarding the strengths and weaknesses of their respective claims and defenses, as well as the costs and risks of trial. Ching Decl. ¶¶ 3-7, 9-10.

The Parties' well-informed, serious, non-collusive negotiations weigh in favor of finding that the Settlement Agreement is fair, reasonable, and adequate. *See, e.g.*, *Ogden v. Figgins*, No.

2:16-cv-02268, 2017 WL 5068906, at *2 (D. Kan. Nov. 3, 2017) ("The record demonstrates that the Agreement is the result of cooperative, good-faith, and arms'-length negotiation by skilled counsel who are familiar with litigating civil rights claims. The Agreement was reached following both parties' deliberate consideration of the action's merits and uncertainties and a balancing of Plaintiffs' constitutional rights with Defendant's legitimate security interests in operating the jail."); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator with a background in [the substantive law at issue.]").

**B.  Serious Questions of Law and Fact Exist.**

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (citation omitted). Litigating a class action case always carries some risk, especially where, as here, the Court has already considered the bulk of the parties' evidence and arguments at summary judgment and determined that questions of material fact remain. *See* Doc. 234 at 25–26. Though the Parties believe in the merits of their positions, both acknowledge that the precise factual and legal questions presented here have not been squarely addressed by controlling precedent. *Cf. Ogden*, 2017 WL 5068906, at *2 ("In this case, the parties appropriately estimate that serious legal and factual uncertainties obscure the ultimate outcome of this action. Both parties possess valid legal arguments and a large body of favorable evidence. . . . Neither the United States Supreme Court nor the Tenth Circuit has directly addressed the issue. . . . The unresolved nature of this legal issue undermines any certainty

regarding the outcome of this litigation."). The exact requirements of the constitutional vagueness and overbreadth doctrines, procedural due process, and the First Amendment as to chilling activity are inherently complex. The remaining existence of serious questions of law and fact here favors settlement "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Accordingly, this factor weighs in favor of preliminary approval.

**C. The Value of Immediate Recovery Outweighs the Mere Possibility of Relief.**

Next, "the court must consider . . . 'whether the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation.'" *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) (citation omitted). "The value of the settlement must be weighed against 'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'" *Id.*

Here, the Settlement Agreement represents substantial, enforceable commitments by the City to remedy the very issues that Plaintiffs filed suit to address. Among other things, the City has agreed to specific policy and practice revisions that narrow and clarify gang designation criteria, focus those criteria on conduct implicating public safety, and provide each Class member with notice and an opportunity to challenge their designation. *See* Ex. A, Part II–VI. The City has also agreed to eliminate the "inactive" and "associate" categories from the Gang List/Database, which by itself will remove about 3,517 of the at least 5,245 individuals currently included— granting prompt and complete relief to more than two-thirds of Class members. *See id.* at Part VIII. These provisions represent significant relief assured to the Class members under the Agreement.

Absent settlement, the Parties would be compelled to engage in significant additional trial preparation, including: *Daubert* briefing; preparation of and objections to exhibit and witness lists; designation, counter-designation, and objections to deposition testimony; coordination of and preparation for witness testimony, including service of subpoenas as needed; drafting and arguing motions in limine; and trial briefs—followed by trial, post-trial submissions, and the possibility of appeal. This work would take a significant additional amount of attorney time and judicial resources, and threaten to substantially delay or potentially deny altogether any ultimate relief.

In the context of this case, the value of immediate relief is immense. The Settlement Agreement promises prompt procedural relief for all Class members, and the primary desired outcome—removal from the Gang List/Database—for the majority of Class members. If Plaintiffs were to proceed to trial, there is, of course, no guarantee when or if any relief would be obtained. Importantly, the Settlement Agreement and the process by which it was negotiated has allowed the Parties and their counsel to craft relief that carefully balances Plaintiffs' constitutional rights (and their own interests in privacy and public safety, among other things) with the City's responsibility for law enforcement (and its own interest in respecting the constitutional rights of its citizens, among other things). In other words, even if Plaintiffs were to prevail on their claims at trial, there is no certainty that any resulting remedy would be preferable, more beneficial, or more practically accessible to the Class than the terms set forth in the Settlement Agreement. For these reasons, the value of immediate, certain, and specific recovery far outweighs the mere possibility of unknown future relief, and this factor weighs in favor of preliminary approval.

**D.  The Parties Believe the Settlement Agreement Is Fair and Reasonable.**

"When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Dep't*

*of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002). "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Id.* at 1183 (citation omitted). "[A]bsent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Id.* (alteration in original) (quoting *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993)); *see also Saunders v. Berks Credit and Collections, Inc.*, No. CIV. 00-3477, 2002 WL 1497374, at *10 (E.D. Pa. July 11, 2002) ("After inquiring into the negotiation process the Court is confident there was no collusion. . . . The Court is therefore deferential to the reasoned judgment of the well-informed attorneys.").

Here, Plaintiffs' counsel have extensive experience in complex civil litigation, including in litigating class actions to enforce constitutional policing practices and protect civil liberties. *Cf.* Doc. 212 at 18. Based on that experience and the specific facts of this case, Plaintiffs' counsel have concluded that the Settlement Agreement is of significant benefit to the Class and represents a fair, reasonable, and adequate compromise of the claims of the Class members. Ching Decl. ¶ 10.

Counsel for the Parties—seasoned plaintiffs' class action and defense attorneys, respectively—have fully evaluated the Settlement Agreement, weighed the strengths, weaknesses, and risks of each side's position, and concluded the Settlement Agreement is fair and reasonable. Thus, this factor favors preliminary approval.

Because all relevant factors weigh in favor, the Court should grant preliminary approval.

## V.    THE PROPOSED CLASS NOTICE AND NOTICE PLAN SHOULD BE APPROVED.

Under Federal Rule of Civil Procedure 23(e)(1), a court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *DeJulius v. New Eng. Health Care Emps.*

*Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). Here, the Parties' proposed Notice of Proposed Class Action Settlement (Long Form attached as **Exhibit B** and Short Form attached as **Exhibit C**) summarizes the terms of the proposed Settlement Agreement, provides instructions on how to obtain full copies of the Settlement Agreement, and advises recipients what to do if they have questions. The Notice also describes instructions for those who wish to be heard in favor of or in objection to the Settlement Agreement and will specify the date, time, and place of the final fairness hearing to be set by the Court.

The form of proposed Notice is clear and in plain language for Class members, their representatives, and other stakeholders who may be interested in its terms. The Parties have provided a detailed proposal for dissemination of the Notice in the Proposed Order (attached as **Exhibit D**). This proposal includes, among other things, publishing the Notice in the newspapers with greatest circulation within Wichita, posting the Notice in various locations throughout Wichita that Class members or their representatives are likely to go, and sending the Notice to criminal defense attorneys and professional and community organizations within Wichita.

The proposed Notice comports with Rule 23 and the requirements of due process, and it should be approved.

## VI.   THE COURT SHOULD ESTABLISH A SCHEDULE FOR FINAL APPROVAL.

The parties request that the Court set a schedule for notice to the Class and final approval of the Settlement Agreement as follows:

| Event | Date |
|---|---|
| Deadline to commence notice program | 14 days after the Court's Order of Preliminary Approval |
| Deadline to object to settlement | 60 days after notice period begins |
| Deadline for any objector to file notice to appear | 7 days after objection deadline |

19

| Deadline to file motion for final approval and all submissions received in support of or in objection to the Settlement Agreement | 14 days after objection deadline |
|---|---|
| Final approval hearing | ~7 days after deadline to file motion for final approval |

## VII.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed Settlement Agreement; approving the form and manner of the Notice of Proposed Class Action Settlement; and setting deadlines and a hearing for the purpose of deciding whether to grant final approval of the Settlement Agreement.

Dated: May 9, 2024

Respectfully submitted,

**SHOOK, HARDY & BACON LLP**

*/s/* Mitchell F. Engel
Thomas J. Sullivan (admitted *pro hac vice*)
Mitchell F. Engel KS #78766
Paul M. Vogel KSD #79022
Charles C. Eblen, KS #77940
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
tsullivan@shb.com
mengel@shb.com
pvogel@shb.com
ceblen@shb.com

**KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC.**

*/s/* Teresa A. Woody

20

Teresa A. Woody KS #16949
211 E. 8th Street, Suite D
Lawrence, KS 66044
Phone: (785) 251-8160
twoody@kansasappleseed.org


**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF KANSAS**

*/s/* Kunyu Ching
Kunyu Ching KS #29807
Karen Leve KS #29580
10561 Barkley St. Ste 500
Overland Park, KS 66212
Phone: (913) 490-4100
kching@aclukansas.org
kleve@aclukansas.org


*Attorneys for Plaintiffs and the Class*


**FISHER, PATTERSON, SAYLER & SMITH,
LLP**
3550 S.W. 5th
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com
*/s/* Charles E. Branson
David R. Cooper #16690
Charles E. Branson #17376
**Attorneys for Defendant**


Jennifer L. Magaña, #15519
City Attorney
Sharon L. Dickgrafe, #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, Kansas 67202
P: (316) 268-4681 | F: (316) 268-4335
sdickgrafe@wichita.gov
**Attorneys for City of Wichita**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on May 9, 2024, to be served by the operation of the Court's CM/ECF electronic filing system upon all parties.

DATED: May 9, 2024

                          /s/Mitchell F. Engel
                          Mitchell F. Engel