**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

PROGENY, a program of Destination
Innovations, Inc., CHRISTOPHER COOPER,
ELBERT COSTELLO, MARTEL
COSTELLO, and JEREMY LEVY, JR., on
behalf of themselves and others similarly
situated,

          *Plaintiff(s)*,          Case No. 6:21-cv-01100-EFM-ADM

v.

CITY OF WICHITA, KANSAS,

          *Defendant*.

**DECLARATION OF KUNYU CHING IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Kunyu Ching, declare:

1. I am a Staff Attorney at the American Civil Liberties Union Foundation of Kansas ("ACLU of Kansas"). This declaration is submitted in support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement ("the Motion").

2. The facts set forth here are within my personal knowledge or gained from review of pertinent documents and materials, and for those matters set forth on information and belief, I believe those to be true. If called upon to testify, I could and would testify to the same in a court of law.

3. Plaintiffs' counsel thoroughly investigated and evaluated the strengths and weaknesses of this case before reaching the settlement. This assessment included:

    a. A thorough, months-long pre-suit investigation of Wichita Police Department ("WPD") policies and practices connected with its Gang List/Database, including submission of requests under the Kansas Open Records Act, review

       of media and scholarly analysis of Wichita gang policing, conversations with affected community members, and meetings with WPD personnel;

  b. Preparation of a class action complaint;

  c. Extensive legal research and evaluation of the applicable law with respect to the claims asserted in the operative complaint and the potential defenses thereto;

  d. Fully briefed opposition to the Motion to Dismiss;

  e. Fully briefed Motion for Class Certification;

  f. Extensive discovery efforts, including:

     i. Propounding six sets of document requests, one set of interrogatories, one set of requests for admission,

     ii. Responding to and supplementing responses to Defendant's document requests and interrogatories,

     iii. Deposing 20 current and former City employees,

     iv. Preparing and defending depositions of all five Plaintiffs,

     v. Collecting, reviewing, and producing approximately 2,000 pages of documents to Defendant, and

     vi. Reviewing the approximately 137,850 pages of documents produced by Defendant;

  g. Fully briefed Cross-Motions for Summary Judgment; and

  h. *Daubert* motion to exclude Defendant's expert witness.

    4. The parties engaged in prolonged mediation efforts spanning two years. These settlement negotiations were all times arms-length. In March 2022, Plaintiffs served Defendant with their initial settlement term sheet. The parties agreed to retain former Kansas City Mayor Sly James, an experienced mediator with experience both in city government and representing plaintiffs in civil litigation, to assist them in exploring the potential for settlement. Plaintiffs submitted confidential mediation statements to Mr. James on October 10, 2022, November 9,

2022, and March 24, 2023, in connection with videoconference mediation sessions supervised by Mr. James on October 13 and November 11, 2022, and again on March 27 and April 10, 2023. In addition, the parties exchanged numerous revised settlement proposals and met for unsupervised formal negotiations on November 1, 2022 and April 12 and 21, 2023. Though not immediately successful in resolving the Action, these negotiations were productive and allowed the parties to reach agreement on the majority of the terms ultimately memorialized in the Settlement Agreement.

5. Following the Court's summary judgment ruling in January 2024, the parties returned to the negotiation table with the assistance of former Johnson County, Kansas District Court Judge Paul Gurney. Plaintiffs submitted a confidential mediation statement to Judge Gurney on March 13, 2024. The parties exchanged additional settlement communications and engaged in formal negotiations by videoconference on March 18 and 27, 2024. These latest efforts resulted in the Settlement Agreement now before the Court.

6. During and before the numerous mediation sessions, Plaintiffs' counsel weighed the strengths and weaknesses of the case, and examined all issues including the risks and expenses of further litigation, potential difficulties in proving liability, and the possibility that any relief obtained at trial would not provide the same or better benefits as a negotiated settlement. Counsel also considered the time value of the present settlement in resolving Plaintiffs' claims and providing speedy relief to the Class.

7. The result of the negotiations is a fair compromise and is described in the Settlement Agreement (Exhibit A to the Motion).

8. In summary, the Settlement provides for substantial reforms to WPD Policy 527 and the WPD's practices implementing K.S.A § 21-6313 *et seq*. These reforms:

(1) narrow and clarify the criteria the WPD can use to add a person to the Gang List/Database, *see* Settlement Agreement, Ex. A, Part II, ¶¶ 1–2;

(2) provide procedures for juveniles who meet the revised criteria for inclusion in Gang List/Database to avoid such inclusion pursuant to negotiated intervention agreements, *id.* Part II, ¶ 3;

(3) reduce the minimum number of a years a gang designee must remain on the Gang List/Database from three (3) to two (2), *id.* Part I;

(4) eliminate the "inactive" and "associate" categories from the Gang List/Database and remove all individuals presently so designated, *id.* Part VIII;

(5) require notice to all future gang designees of their designation, the basis therefor, and procedures to review and/or appeal such designation, *id.* Part III;

(6) establish procedures for gang designees to review the supporting documentation and/or appeal their designations, *id.* Parts IV–VI;

(7) prescribe steps to be taken promptly and annually thereafter to audit the Gang List/Database for consistency with revised policies and practices, and publish results thereof, *id.* Part VII; and

(8) train WPD personally on the revised policies and practices, *id.* Part IX.

In particular, the specific policy reforms regarding the application of the statutory criteria are summarized as follows:

| Previous criteria per K.S.A. § 21-6313(b)(2) | Revised criteria per Settlement Agreement Part II.2 |
|---|---|
| (A) Is identified as a criminal street gang member by a parent or guardian; | a. A parent or guardian provides a documented statement to Sedgwick County or City of Wichita law enforcement personnel that the person is 13 years of age or older and is a member of a particularly named criminal street gang. |
| (B) is identified as a criminal street gang member by a state, county or city law enforcement officer or correctional officer or documented reliable informant; | b. The person is identified as a criminal street gang member by a federal, state, county, or city law enforcement officer or correctional officer or documented reliable informant and such identification is corroborated by independent information. For purposes of this criteria, "independent information" must concern activity within 3 years prior to the individual's nomination to the Gang Database, and must be of the type described in criteria (a) or (c)-(g) of this Policy. The same information may not be used to satisfy more than one criteria for inclusion in the WPD Gang |

4

| | |
|---|---|
| | Database. |
| (C) is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information; | [eliminated] |
| (D) frequents a particular criminal street gang's area; | c. The person is observed in a business or residence two or more times in six months that has a prior documented pattern of gang violence or activity, and there is no good faith basis for the person to be at that business or residence, such as to purchase goods or services, attend school, for employment purposes, or to participate in recreational activities, unless such activities are organized for the purpose of engaging in criminal street gang activity; |
| (E) adopts such gang's style of dress, color, use of hand signs or tattoos; | d. The person adopts two or more of the following as observed in person by a Sedgwick County or City of Wichita law enforcement officer, or as documented by physical evidence including but not limited to photographs, social media posts, or other documents: (1) a particular color of attire, (2) attire with gang insignia, (3) the use of hand signs, or (4) particular tattoos, and the nominating officer can articulate a reasonable basis for the belief that the particular display is associated with membership in a criminal street gang; |
| (F) associates with known criminal street gang members; | [eliminated] |
| (G) has been arrested more than once in the company of identified criminal street gang members for offenses which are consistent with usual criminal street gang activity; | e. The person has been arrested more than once in the company of individuals presently listed as criminal street gang members in the WPD Gang Database; |
| (H) is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation; | [eliminated] |

5

| (I) has been stopped in the company of known criminal street gang members two or more times; | g. The person has been observed in the company of known criminal street gang members two or more times while participating in criminal street gang activity. The observing Sedgwick County or City of Wichita officer must articulate a reasonable basis for their belief that each the person was observed participating in criminal street gang activity. There is a presumption that presence at or engagement in the following activities does not constitute criminal street gang activity for purposes of this criteria: funerals, weddings, family celebrations, large public gatherings for entertainment purposes, educational functions, and religious or political gatherings. |
|---|---|
| (J) has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual; | f. The person has participated in or undergone activities self-identified or identified by a reliable informant to be part of a gang initiation ritual; |

These policy reforms are intended to remedy the specific procedural Due Process and First Amendment expressive and associational chilling effect problems that Plaintiffs have identified in their claims. The Settlement Agreement also preserves Plaintiffs' claim for a facial challenge to the overbreadth and vagueness of K.S.A § 21-6313 *et seq.* against another defendant in future litigation. *Id.* Part XIII.

Furthermore, the Settlement Agreement provides for the immediate review of named Plaintiffs' gang designations consistent with the revised criteria. It also provides for oversight and accountability through a biannual review of the City's compliance with the Settlement Agreement's terms by a jointly selected Special Master (Judge Gurney) for a period of three years. Finally, the Settlement Agreement provides for the payment of an agreed sum for attorneys' fees and costs incurred in prosecuting this action. *See id.* Parts X-XII.

9.      Prior to the parties' March 2024 mediation sessions, Plaintiffs' counsel had incurred over $2.5 million in fees and expenses litigating this action. As of March 12, 2024, counsel at the ACLU of Kansas had spent approximately 1,292.31 hours and incurred $434,218 in attorneys' fees. As of March 13, 2024, pro bono counsel from Shook, Hardy & Bacon had incurred $1,499,178.00 in attorneys' fees and $132,375.38 in costs. As of December 31, 2023, counsel from Kansas Appleseed had incurred approximately $508,000 in fees and $3,237.61 in expenses. These fees and costs have only increased since that time, including the cost of the March 2024 mediation and hours simultaneously spent on trial preparation efforts.

10.     Based on my experience and knowledge of this case, I fully endorse the proposed settlement. Although I believe the case against Defendant is strong, such confidence must be tempered by the fact that the settlement is extremely beneficial (providing a significant immediate return) and that there were serious risks of less or no recovery, particularly in a complex case such as this one. I am convinced that this settlement is in the best interests of the Class based on the negotiations and the detailed knowledge of the issues presented herein. I believe that the Settlement achieved on behalf of the Class in this action is fair and reasonable.

I declare under penalty of perjury under the laws of the United States of America and the State of Kansas that the foregoing is true and correct.

Executed on May 9, 2024 in Overland Park, Kansas.

*s/ Kunyu Ching*_____
Kunyu Ching