**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

PROGENY, a program of Destination
Innovations, Inc., CHRISTOPHER COOPER,
ELBERT COSTELLO, MARTEL
COSTELLO, and JEREMY LEVY, JR., on
behalf of themselves and others similarly
situated,

     *Plaintiffs*,     Case No. 6:21-cv-01100-EFM-ADM

v.

CITY OF WICHITA, KANSAS,

     *Defendant*.

## DECLARATION OF KUNYU CHING IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL

I, Kunyu Ching, declare as follows:

1.  I am a Staff Attorney at the American Civil Liberties Union Foundation of Kansas ("ACLU of Kansas"). The ACLU of Kansas represents the Plaintiffs in this case.

2.  I submit this declaration in support of the parties' Joint Motion for Final Approval of Settlement. The facts set forth here are within my personal knowledge, and for those matters set forth on information and belief, I believe those to be true. If called upon to testify, I could and would testify to the same in a court of law.

### Litigation Background

3.  Plaintiffs' counsel thoroughly investigated and evaluated the strengths and weaknesses of this case before reaching the settlement. This assessment included:

  a. A thorough, months-long pre-suit investigation of Wichita Police Department ("WPD") policies and practices connected with its Gang List/Database, including submission of requests under the Kansas Open Records Act, review

of media and scholarly analysis of Wichita gang policing, conversations with affected community members, and meetings with WPD personnel;

b.   Preparation of a class action complaint;

c.   Extensive legal research and evaluation of the applicable law with respect to the claims asserted in the operative complaint and the potential defenses thereto;

d.   Fully briefed opposition to the Motion to Dismiss;

e.   Fully briefed Motion for Class Certification;

f.   Extensive discovery efforts, including:

    i.   Propounding six sets of document requests, one set of interrogatories, one set of requests for admission,

    ii.   Responding to and supplementing responses to Defendant's document requests and interrogatories,

    iii.   Deposing 20 current and former City employees,

    iv.   Preparing and defending depositions of all five Plaintiffs,

    v.   Collecting, reviewing, and producing approximately 2,000 pages of documents to Defendant, and

    vi.   Reviewing the approximately 137,850 pages of documents produced by Defendant;

g.   Fully briefed Cross-Motions for Summary Judgment; and

h.   *Daubert* motion to exclude Defendant's expert witness.

4.     The parties engaged in prolonged mediation efforts spanning two years. These settlement negotiations were all times arms-length. In March 2022, Plaintiffs served Defendant with their initial settlement term sheet. The parties agreed to retain former Kansas City Mayor Sly James, an experienced mediator with experience both in city government and representing plaintiffs in civil litigation, to assist them in exploring the potential for settlement. Plaintiffs submitted confidential mediation statements to Mr. James on October 10, 2022, November 9,

2022, and March 24, 2023, in connection with videoconference mediation sessions supervised by Mr. James on October 13 and November 11, 2022, and again on March 27 and April 10, 2023. In addition, the parties exchanged numerous revised settlement proposals and met for unsupervised formal negotiations on November 1, 2022 and April 12 and 21, 2023. Though not immediately successful in resolving the Action, these negotiations were productive and allowed the parties to reach agreement on the majority of the terms ultimately memorialized in the Settlement Agreement.

5.    Following the Court's summary judgment ruling in January 2024, the parties returned to the negotiation table with the assistance of former Johnson County, Kansas District Court Judge Paul Gurney. Plaintiffs submitted a confidential mediation statement to Judge Gurney on March 13, 2024. The parties exchanged additional settlement communications and engaged in formal negotiations by videoconference on March 18 and 27, 2024. These latest efforts resulted in the Settlement Agreement now before the Court.

6.    During and before the numerous mediation sessions, Plaintiffs' counsel weighed the strengths and weaknesses of the case, and examined all issues including the risks and expenses of further litigation, potential difficulties in proving liability, and the possibility that any relief obtained at trial would not provide the same or better benefits as a negotiated settlement. Counsel also considered the time value of the present settlement in resolving Plaintiffs' claims and providing speedy relief to the Class.

7.    The result of the negotiations is a fair compromise and is described in the Settlement Agreement (**Exhibit A** to the Motion).

**The Settlement Agreement**

8.     In summary, the Settlement provides for substantial reforms to WPD Policy 527

and the WPD's practices implementing K.S.A § 21-6313 *et seq*. These reforms:

(1) narrow and clarify the criteria the WPD can use to add a person to the Gang List/Database, *see* Settlement Agreement, Ex. A, Part II, ¶¶ 1–2;

(2) provide procedures for juveniles who meet the revised criteria for inclusion in Gang List/Database to avoid such inclusion pursuant to negotiated intervention agreements, *id.* Part II, ¶ 3;

(3) reduce the minimum number of years a gang designee must remain on the Gang List/Database from three (3) to two (2), *id.* Part I;

(4) eliminate the "inactive" and "associate" categories from the Gang List/Database and remove all individuals presently so designated, *id.* Part VIII;

(5) require notice to all future gang designees of their designation, the basis therefor, and procedures to review and/or appeal such designation, *id.* Part III;

(6) establish procedures for gang designees to review the supporting documentation and/or appeal their designations, *id.* Parts IV–VI;

(7) prescribe steps to be taken promptly and annually thereafter to audit the Gang List/Database for consistency with revised policies and practices, and publish results thereof, *id.* Part VII; and

(8) train WPD personally on the revised policies and practices, *id.* Part IX.

In particular, the specific policy reforms regarding the application of the statutory criteria are

summarized as follows:

| Previous criteria per K.S.A. § 21-6313(b)(2) | Revised criteria per Settlement Agreement Part II.2 |
|---|---|
| (A) Is identified as a criminal street gang member by a parent or guardian; | a. A parent or guardian provides a documented statement to Sedgwick County or City of Wichita law enforcement personnel that the person is 13 years of age or older and is a member of a particularly named criminal street gang. |
| (B) is identified as a criminal street gang member by a state, county or city law enforcement officer or | b. The person is identified as a criminal street gang member by a federal, state, county, or city law enforcement officer or correctional officer or documented reliable informant and such identification is corroborated by independent |

| | |
|---|---|
| correctional officer or documented reliable informant; | information. For purposes of this criteria, "independent information" must concern activity within 3 years prior to the individual's nomination to the Gang Database, and must be of the type described in criteria (a) or (c)-(g) of this Policy. The same information may not be used to satisfy more than one criteria for inclusion in the WPD Gang Database. |
| (C) is identified as a criminal street gang member by an informant of previously untested reliability and such identification is corroborated by independent information; | [eliminated] |
| (D) frequents a particular criminal street gang's area; | c. The person is observed in a business or residence two or more times in six months that has a prior documented pattern of gang violence or activity, and there is no good faith basis for the person to be at that business or residence, such as to purchase goods or services, attend school, for employment purposes, or to participate in recreational activities, unless such activities are organized for the purpose of engaging in criminal street gang activity; |
| (E) adopts such gang's style of dress, color, use of hand signs or tattoos; | d. The person adopts two or more of the following as observed in person by a Sedgwick County or City of Wichita law enforcement officer, or as documented by physical evidence including but not limited to photographs, social media posts, or other documents: (1) a particular color of attire, (2) attire with gang insignia, (3) the use of hand signs, or (4) particular tattoos, and the nominating officer can articulate a reasonable basis for the belief that the particular display is associated with membership in a criminal street gang; |
| (F) associates with known criminal street gang members; | [eliminated] |
| (G) has been arrested more than once in the company of identified criminal street gang members for offenses which are consistent with usual criminal street gang activity; | e. The person has been arrested more than once in the company of individuals presently listed as criminal street gang members in the WPD Gang Database; |

| (H) is identified as a criminal street gang member by physical evidence including, but not limited to, photographs or other documentation; | [eliminated] |
| --- | --- |
| (I) has been stopped in the company of known criminal street gang members two or more times; | g. The person has been observed in the company of known criminal street gang members two or more times while participating in criminal street gang activity. The observing Sedgwick County or City of Wichita officer must articulate a reasonable basis for their belief that each the person was observed participating in criminal street gang activity. There is a presumption that presence at or engagement in the following activities does not constitute criminal street gang activity for purposes of this criteria: funerals, weddings, family celebrations, large public gatherings for entertainment purposes, educational functions, and religious or political gatherings. |
| (J) has participated in or undergone activities self-identified or identified by a reliable informant as a criminal street gang initiation ritual; | f. The person has participated in or undergone activities self-identified or identified by a reliable informant to be part of a gang initiation ritual; |

These policy reforms are intended to remedy the specific procedural Due Process and First Amendment expressive and associational chilling effect problems that Plaintiffs have identified in their claims. The Settlement Agreement also preserves Plaintiffs' claim for a facial challenge to the overbreadth and vagueness of K.S.A § 21-6313 *et seq.* against another defendant in future litigation. *Id.* Part XIII.

9.      Furthermore, the Settlement Agreement provides for the immediate review of named Plaintiffs' gang designations consistent with the revised criteria. It also provides for oversight and accountability through a biannual review of the City's compliance with the Settlement Agreement's terms by a jointly selected Special Master (Judge Gurney) for a period of

three years. Finally, the Settlement Agreement provides for the payment of an agreed sum for attorneys' fees and costs incurred in prosecuting this action. *See id.* Parts X-XII.

10.    Prior to the parties' March 2024 mediation sessions, Plaintiffs' counsel had incurred over $2.5 million in fees and expenses litigating this action. As of March 12, 2024, counsel at the ACLU of Kansas had spent approximately 1,292.31 hours and incurred $434,218 in attorneys' fees. As of March 13, 2024, pro bono counsel from Shook, Hardy & Bacon had incurred $1,499,178.00 in attorneys' fees and $132,375.38 in costs. As of December 31, 2023, counsel from and the Kansas Appleseed Center for Law and Justice ("Kansas Appleseed") had incurred approximately $508,000 in fees and $3,237.61 in expenses. These fees and costs have only increased since that time, including the cost of the March 2024 mediation and hours simultaneously spent on trial preparation efforts, as well as hours and costs incurred seeking approval of the settlement, finalizing settlement details, and providing adequate notice to the Class. Plaintiffs incurred approximately an additional $8,750 executing the Notice Plan and pursuing alternate forms of publication of the Notice.

11.    Based on my experience and knowledge of this case, I fully endorse the proposed settlement. Although I believe the case against Defendant is strong, such confidence must be tempered by the fact that the settlement is extremely beneficial (providing a significant immediate return) and that there were serious risks of less or no recovery, particularly in a complex case such as this one. I am convinced that this settlement is in the best interests of the Class based on the negotiations and the detailed knowledge of the issues presented herein. I believe that the Settlement achieved on behalf of the Class in this action is fair and reasonable.

**The Notice Plan**

12.     On May 30, 2024, the ACLU of Kansas and Kansas Appleseed issued a joint press release concerning the Court's preliminary approval order, the class notice, and class members' options. This press release was provided to media outlets who have previously reported on this case, including the Wichita Eagle, the Kansas Reflector, KWCH, and Unavision. Between May 31 and July 26, 2024, the press release published on the ACLU of Kansas website was viewed 2,902 times.

13.     On May 30, 2024, the ACLU of Kansas posted the Long Form Notice on its website together with the Settlement Agreement and other relevant information for class members. On May 31, 2024, at my direction, Kansas Appleseed and Progeny staff members posted the Long Form Notice on the Kansas Appleseed and Progeny websites.  Between May 31 and July 26, 2024, the ACLU of Kansas's page concerning the settlement was viewed 2,662 times.

14.     Social media posts concerning the settlement and directing viewers to visit websites for additional information were posted on the ACLU of Kansas's Facebook, Instagram, Twitter/X, and LinkedIn accounts on May 31, June 5, June 18, July 5, July 8, and July 25, 2024; on Kansas Appleseed's Facebook and Instagram accounts on May 31, June 3, June 6, July 19, and July 26, 2024; and on Progeny's Facebook and Instagram accounts on May 31, July 22, and July 25, 2024. The ACLU of Kansas spent $350 to boost its posts' visibility to Facebook and Instagram users located in the counties comprising the Wichita metropolitan area. As of July 31, 2024, the ACLU of Kansas's posts had been viewed 42,455 times and received 1,687 clicks.

15.     On May 31, 2024, the ACLU of Kansas took out a quarter-page advertisement in the print version of the Wichita Eagle as well as a digital advertisement on the Eagle's website, both consisting of the Short Form Notice (Doc. 254-3). These advertisements ran again on June

16, June 30, and July 14, 2024. The ACLU of Kansas also purchased a 30-day digital advertisement consisting of the Short Form Notice on the Wichita Community Voice website beginning on June 1, 2024, as well as printing the Short Form Notice in the June 7 and June 21 print issues of the Community Voice.

16.    Between June 4 and June 7, 2024, at my direction, ACLU of Kansas and Kansas Appleseed staff members posted physical copies of the Short Form Notice at or near the following locations:

    a.  Sedgwick County Juvenile Courthouse: 1900 E Morris St

    b.  Wichita Public Library locations

          i.  Alford Branch: 3447 S. Meridian

        ii.  Evergreen Branch: 2601 N. Arkansas

       iii.  Rockwell Branch: 5939 E. 9th

       iv.  Walters Branch: 4195 E. Harry

        v.  Westlink Temporary Branch: 7011 W. Central

    c.  City of Wichita Community and Recreation Centers

          i.  Boston Recreation Center: 6655 E Zimmerly

        ii.  Brewer Community Center: 1329 E 16th St N

       iii.  Edgemoor Recreation Center: 5815 E 9th Street

       iv.  Evergreen Recreation Center: 2700 N Woodland

        v.  Linwood Recreation Center: 1901 S Kansas

       vi.  Orchard Recreation Center: 4808 W 9th St

      vii.  Woodard Recreation Center: 2750 E 18th St

    d.  Old Town

       i.   Public kiosk located at approximately 900 E Douglas Ave

      ii.   Emerson Biggins, 808 E Douglas Ave

  e.  Additional locations

       i.   "The 1111" Nightclub/Bar: 1111 E Lincoln St

      ii.   Litty Liquor Store: 1523 E Pawnee St

     iii.   Shock Shop Barber Shop: 3936 E 13th St N

     iv.   CHD Boxing Club: 2505 E. 9th St N.

17.     On June 7, 2024, I emailed the following individuals requesting that they disseminate the Notice among their staff or members and post the Notice in locations most likely to be seen by class members and/or their legal representatives through the date of the Final Approval Hearing:

  a.  The Hon. Jeffrey Goering, Chief Judge of the 18th Judicial District Court (Sedgwick County);

  b.  Marc Bennett, District Attorney for the 18th Judicial District (Sedgwick County);

  c.  Jeff Easter, Sedgwick County Sheriff;

  d.  Jeff Zmuda, Secretary of the Kansas Department of Corrections ("KDOC");

  e.  Kelly Bielefeld, Superintendent of Wichita Public Schools USD 259;

  f.  Sarah McKinnon, Chief Public Defender for Sedgwick County;

  g.  Melody Brannon, the Federal Public Defender for the District of Kansas;

  h.  Rhonda Sullivan of the Wichita office of Kansas Legal Services;

  i.  Laura Ice, President of the Kansas Bar Association;

j. Patrick Lewis, Executive Director of the Kansas Association of Criminal Defense Lawyers ("KACDL"); and

k. Scott Hill, President of the Wichita Bar Association.

18. I received the following responses to my June 7 email request: The Sedgwick County BIDS Office and the Federal Public Defender affirmed that they would comply and post the Notice. The 18th Judicial District agreed to post the Notice in the lobby of the Sedgwick County Courthouse or at the back of courtrooms handling criminal or juvenile matters. KDOC Secretary Zmuda responded that the Notice would be sent to all residents electronically via assigned tablets. The Wichita Bar Association acknowledged receipt but did not indicate whether it agreed to my request. The KACDL did not respond to me directly, but I am informed that it shared the Notice with its members through the KACDL email listserv. Sheriff Easter twice refused to post the Notice at the Sedgwick County Main Jail.

19. On June 10, 2024, Plaintiffs received a final complete list of incarcerated class members and their respective detention facilities from Defendant. Of the 556 individuals Defendant provided, the ACLU of Kansas was able to ascertain that 335 individuals were housed in KDOC facilities, 11 individuals were housed in Kansas county facilities, 8 individuals were housed in federal detention facilities across the country, 2 individuals were housed in out-of-state detention facilities, 190 individuals were no longer in custody (i.e., discharged or paroled), and 10 individuals could not be located despite reasonable efforts. On June 17 and 18, 2024, I mailed via U.S. Postal Service paper copies of the Long Form Notice (Doc. 254-2), the Settlement Agreement, and other relevant documents to the 356 incarcerated class members whose locations could be ascertained.

20.     On June 11, 2024, the ACLU of Kansas purchased a Google search advertisement run concerning the Notice. As of July 31, 2024, the ad was viewed 6,500 times and received 130 clicks.

21.     Beginning on July 1, 2024, the ACLU of Kansas purchased 30-second advertisements from Wichita FM radio stations notifying the public of the settlement and directing listeners to visit the ACLU of Kansas website for information. These ads ran for two weeks to one month on KDGS 93.5, KZCH 96.3, and La Raza 102.5.

22.     Also beginning on July 1, 2024, the ACLU of Kansas purchased digital media banner advertisements from Wichita news outlet KWCH. The KWCH ad campaign for 60,000 impressions was targeted at Wichita zip codes.

23.     On July 12, 2024, I posted physical copies of the Short Form Notice at the following locations:

      a.   Angelou NE Branch Library: 3051 E. 21st

      b.   Plaintiff Progeny's office: 2721 E. Central, Suite 211

I also attempted to post physical copies of the Short Form Notice at the Sedgwick County Main Courthouse (525 N Main), Sedgwick County Jail (141 W Elm St), and the Advanced Learning Library (711 W. 2nd St.), but none of these locations maintained a bulletin board or other similar location for lawfully posting items for public view. Upon inquiry, the Sedgwick County Jail and the Advanced Learning Library declined to post the Notice near their entrances. I did not inquire further at the Sedgwick County Main Courthouse, as multiple copies of the Short Form Notice were already posted around the courthouse following my request to the 18th Judicial District Court. I further provided a Notice for posting to the administrators of the Kansas African American Museum.

**Objections**

24.    Prior to and through July 26, 2024, Class Counsel received comments from 19 class members and other affected individuals. These comments are attached to the motion as **Exhibit B**.

25.    Prior to and through August 2, 2024, I received requests to appear at the final approval hearing scheduled for August 23, 2024 from the following individuals: Marquetta Atkins-Woods, Sherida Price, Amoneo Gutierrez, Heidi Louis, Steven Louis, Caesar Louis, Jamion Wimbley, and Silky Dempsey. To the extent they are not already included in Exhibit B, these requests are attached as **Exhibit C**.

**Settlement Finalization**

26.    The parties have mutually agreed upon the selection of Robert J. Moody as the first Gang Review Ombudsperson ("GRO"). The parties have discussed but not yet finalized the selection of a second GRO to serve as a backup in the event Mr. Moody encounters a conflict of interest during his service.

27.    The current form of the Gang Database Status Review Form is attached as **Exhibit E**.

28.    The current form of the Gang Database Status Appeal Form is attached as **Exhibit F**.

I declare under penalty of perjury under the laws of the United States of America and the State of Kansas that the foregoing is true and correct.

Executed on August 16, 2024 in Overland Park, Kansas.

_s/ Kunyu Ching_
Kunyu Ching

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on August 16, 2024, to be served by the operation of the Court's CM/ECF electronic filing system upon all parties.

*s/ Kunyu Ching*  
Kunyu Ching
