```
1              IN THE UNITED STATES DISTRICT COURT

2                        DISTRICT OF KANSAS

3   PROGENY, a program of        )
    Destination Innovations,     )
4   Inc., CHRISTOPHER COOPER,    )
    ELBERT COSTELLO, MARTEL      )
5   COSTELLO, and JEREMY LEVY,   )
    JR., on behalf of            )
6   themselves and others        )
    similarly situated,          )
7                                )
                Plaintiffs,      )        District Court
8                                )        Case No.21-1100
    CITY OF WICHITA, KANSAS,     )
9              Defendant.        )
    _____)

10

11

12

13     TRANSCRIPT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

14      On the 23rd day of August, 2024, came on to be heard in the

15   proceedings in the above-entitled and numbered cause before the

16   HONORABLE ERIC F. MELGREN, Judge of the United States District

17   Court for the District of Kansas, sitting in Wichita, Kansas,

18   and commencing at 1:30 p.m.  Proceedings recorded by stenomask

19   voice writer.  Transcript produced by computer-aided

20   transcription.

21

22

23

24

25
```

1                              <u>APPEARANCES</u>

2        The plaintiffs appeared by and through:

3             Ms. Kunyu Ching
              ACLU Foundation of Kansas
4             10561 Barkley Street, Suite 500
              Overland Park, Kansas 66212
5

6             Ms. Teresa Woody
              Kansas Appleseed Center for Law and Justice, Inc.
7             211 East 8th Street, Suite D
              Lawrence, Kansas 66044
8

9             Mr. Mitch Engel
              Shook, Hardy and Bacon, LLP
10            2555 Grand Boulevard
              Kansas City, Missouri 64108
11

12       The defendant appeared by and through:

13            Mr. Charles Branson and Mr. David R. Cooper
              Fisher, Patterson, Sayler and Smith, LLP
14            3550 SW Fifth Street
              Topeka, Kansas 66606
15

16

17

18

19

20

21

22

23

24

25

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1              LAW CLERK MR. RALSTON:  All rise.

2              The United States District Court for the District of

3    Kansas is now in session.  The Honorable Eric F. Melgren

4    presiding.

5              THE COURT:  Good afternoon.  You may be seated.

6              The Court calls the case of Progeny versus City of

7    Wichita -- Progeny, et al. versus City of Wichita, et al.

8              Let me start with appearances if I may, please.

9              MS. WOODY:  Your Honor, Teresa Woody, Kansas Appleseed

10   Center for Law and Justice, for the plaintiffs.

11             MR. ENGEL:  Mitch Engel, Shook, Hardy, and Bacon for

12   the plaintiffs.

13             MS. CHING:  Good afternoon, Your Honor.  Kunyu Ching

14   from the ACLU of Kansas for plaintiffs.

15             THE COURT:  Thank you.

16             MR. BRANSON:  Good afternoon, Judge.  Charles Branson

17   and David R. Cooper for defendants, City of Wichita.

18             THE COURT:  Thank you.

19             So we are here on a motion for final approval of a

20   class action settlement.  We've, obviously, gone through

21   preliminary approval, service of notice, and receipt of

22   comments.  I don't need to go into all of those details.  We

23   have some people who want to be heard at this hearing.

24             Let me ask some procedural questions first.  I expect

25   and I intend to hear from the parties regarding the proposed

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1  settlement.  I understand that someone on behalf of Progeny,

2  which is one of the parties for the case, wishes to speak.

3         We have received and I have reviewed several written

4  comments with respect to the proposed settlement, and we have an

5  indication of some people who wish to speak regarding the

6  proposed settlement.

7         Let me ask, first of all, if you-all have consulted on

8  what order of events or process you think would be best to

9  proceed with in this case?

10        MS. CHING:  Your Honor, we have not -- the parties

11  have not consulted on a particular order, but I do think, if the

12  Court is amenable, it might be more efficient if the Court has

13  any questions about objections, the parties could address those

14  after those who wish to speak today have spoken.

15        THE COURT:  Is that agreeable to Defendants?

16        MR. BRANSON:  It is, Your Honor.

17        THE COURT:  I was inclined to hear from the people who

18  wish to speak first and then to move on to matters with the

19  parties.

20        A couple of issues with respect to people who wish to

21  speak.  I have two people who have indicated that they would

22  like to speak but they are not members of the class, nor, as

23  best I can tell, are the representing members of the class.

24        So I'm a bit puzzled as to what to do with that.  They

25  don't have standing or an issue with respect to this case not

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1  being class members.  They are strangers as it were to the

2  litigation.  You-all, of course, are aware of the people who

3  proposed speaking.

4          What is your thoughts regarding that, Counsel?

5          MS. WOODY:  Your Honor, we have no objection to the

6  individuals who are not members of the class speaking.

7          THE COURT:  What's the legal significance of their

8  comments in this case to which they are strangers?

9          MS. WOODY:  Your Honor, there may not be any legal

10 significance, but they're members of the community, and as I

11 understand it, they are relatives of individuals who are

12 affected by the settlement.

13         THE COURT:  All right.

14         Defendants, do you have a position on this?

15         MR. BRANSON:  Your Honor, Defense takes no position on

16 it.

17         THE COURT:  All right.

18         Secondly, particularly having read all of the comments

19 that I have, I'm inclined to think that it would be prudent to

20 set some time limit on those who wish to speak.  My experience

21 is if you give people kind of an open-ended time, some may go on

22 at some length.

23         Is this an issue the parties have discussed?

24         MS. WOODY:  Your Honor, it is pretty common, in the

25 cases I've been involved in, for the individuals who wish to

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1    speak, to be limited to five minutes at the most.

2            THE COURT:  All right.

3            MR. BRANSON:  Defense would agree, Your Honor.

4            THE COURT:  I think that's probably appropriate.  I'm

5    going to limit those who wish to speak to five minutes each just

6    in the interest that we have several people who want to speak

7    and other matters that we need to take up.

8            I'm inclined to start with those who are appearing by

9    Zoom.  Although, we have a half-dozen who are doing so.

10           Plaintiff, I know you've made the arrangements on

11   these.  Are you going to MC this presentation, or how would you

12   suggest we proceed?

13           MS. CHING:  Your Honor, we don't have any particular

14   position.  I'm happy to MC if that's the Court's wish, or I

15   would let you have the honor.

16           THE COURT:  Why don't you take that on if you would,

17   Ms. Ching.  I know you've coordinated with allowing these people

18   to be here.  I think it is appropriate if you would do that.  I

19   will let them proceed in any order with which you wish to

20   proceed, but we will start, as I said, the half-dozen who wish

21   to speak and who are appearing by Zoom, and then we will move on

22   to those -- I think we have a few present in person that would

23   like to speak.

24           MS. CHING:  Certainly, Your Honor.  I understand that

25   the individuals currently housed at Lansing may have some sort

 1    of programming or other time constraints.  So I would like to

 2    start with those individuals.

 3              THE COURT:  Perfect.

 4              MS. CHING:  I suppose we could start with

 5    Mr. Amoneo Gutierrez.

 6              THE COURT:  All right.

 7              Mr. Gutierrez, are you on the Zoom and able to hear

 8    us?

 9              MR. GUTIERREZ:  Yes, sir.

10              THE COURT:  Very well.  Well, the Court will be happy

11    to hear comments from you at this point.

12              MR. GUTIERREZ:  Yeah, really, I just, you know, I

13    really just came to really listen in, you know what I am saying,

14    about the whole thing about being on the gang list about being,

15    you know, targeted as a listed gang member, you know what I'm

16    saying, and trying to figure out exactly where did everything

17    fit in to where how they classify us as gang members, you know

18    what I mean, or how they can put us in a certain group without

19    actually having the common factors?

20              THE COURT:  All right.  I guess you have a question on

21    the terms of the settlement agreement.

22              Ms. Ching, can you perhaps briefly address his issues?

23              MS. CHING:  I am sorry, Mr. Gutierrez, could you

24    please repeat your question?

25

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1      MR. GUTIERREZ:  Yeah, my question is about is -- I
2  really just came to listen in and really just, you know what I
3  am saying, really listen in and just take everything in.  And
4  then I was wondering how -- and I see about the agreement -- how
5  they even put the factors in and determine how we are gang
6  members?

7      MS. CHING:  My understanding is the WPD added people
8  to the gang list based on certain characteristics and statutory
9  criteria, including individual associations with other people
10  who are believed to be known gang members.  Other things,
11  including the type of clothing, or style of clothing, color,
12  tattoos, hand signs.

13      Let me see what else -- a whole host of, I think,
14  other data gathered from police encounters with individuals, and
15  perhaps the City could elaborate more since it is their
16  information.

17      MS. WOODY:  And, Mr. Gutierrez, the settlement changes
18  those criteria and makes them stricter and more difficult for
19  the WPD to put individuals on the gang list, and it focuses on
20  criminal activity rather than just appearances and associations.

21      THE COURT:  I think that's a significant factor,
22  Mr. Gutierrez, that the Wichita Police Department will still
23  maintain a gang list, but as the last counsel speaking just
24  indicated, first of all, the criteria by which someone can be
25  placed on that list has been narrowed and sharpened.

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1              And then very importantly, secondly, when an

2    individual is placed on that list, they will both be given

3    notification of that placement and an opportunity to challenge

4    their placement on that list, neither of which existed under the

5    prior standard.

6              MR. GUTIERREZ:  All right.  Thank you.

7              THE COURT:  All right.  Thank you very much, sir.

8    Thank you for appearing today.

9              Ms. Ching, who can we hear from next?

10             MS. CHING:  Mr. Steven Louis.

11             THE COURT:  Mr. Louis, are you on and can you hear us?

12             MR. LOUIS:  Yes.

13             THE COURT:  We are happy to hear from you at this

14   point.

15             MR. LOUIS:  So my understanding is the settlement is

16   only asking for changes to the already maintained gang list.

17   And I'm in disagreement with the gang list itself and those

18   changes.  I think they are subpar at best.  And it would just

19   perpetuate a cycle of unjust actions conducted by the Wichita

20   Police Department.

21             And considering that the entirety of my conviction is

22   based on the criteria of being on the gang list, regardless of

23   actually being on it or not or having any gang activity

24   involvement, I believe that the settlement isn't asking for

25   enough.

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1      THE COURT:  So if I understand, Mr. Louis, your

2  position is that the police department should not maintain a

3  gang list whatsoever; is that correct?

4      MR. LOUIS:  Correct.

5      THE COURT:  All right.  That, of course, as you know,

6  is not what the settlement provides.  That is, I think it would

7  be fair to say, not a position that the Wichita Police

8  Department, the defendant in this case, would have been

9  agreeable to.

10      The only way that could have come about, probably,

11  would have been if the case had gone to trial and it were

12  demonstrated somehow that the mere maintenance of the gang list

13  itself were unconstitutional.  The parties instead agreed to a

14  settlement along the lines, as I just indicated to our last

15  speaker, which is why we are here today.

16      MR. LOUIS:  Correct.

17      THE COURT:  Anything else you would like to say,

18  Mr. Louis?

19      MR. LOUIS:  I believe that it is unjust, and if all it

20  takes for you to be included in the gang list is for an officer

21  to say that you either self-admitted or they seen something like

22  a tattoo -- there are millions of people in the world with

23  tattoos, and if that's the only criteria it takes to be included

24  in the gang list, it is kind of unconstitutional.

25      THE COURT:  Well, the criteria are much more involved

 1    than that, more so than I think I really have time to go through

 2    in detail with you, but it takes more than that to add someone

 3    to the gang list.  It took more than that, probably under the

 4    old standard, and this settlement actually tightens those

 5    standards quite a bit to add someone to the gang list.

 6          But, ultimately, if those standards are met, they can

 7    be added to the gang list under the terms of this proposed

 8    settlement.

 9          MR. LOUIS:  But that only involves the people that

10    aren't already on the gang list.  And since the criteria that I

11    was included on the gang list was because I went to a school

12    with a certain individual and because the police said I

13    self-admitted, when I did not, those were the criteria that were

14    applied to me when the gang list was originally started and

15    conducted and maintained.

16          So if we are moving on for the future, yeah, that

17    stops some of that from the future, but that does not rectify

18    the mistakes or the unjust actions of the past.  So that's kind

19    of where my disagreements stem from.

20          THE COURT:  Okay.  Well, it is my understanding,

21    Mr. Louis, that they have already begun, even though we have not

22    formally approved it, that they have already begun to implement

23    those new standards to people currently on the gang list.

24          And, Counsel, correct me if I'm wrong, but I believe

25    I've been informed that Mr. Steven Louis was removed from the

1  gang list under the application of the new policy just within

2  the past week; is that correct, Mr. Branson?

3         MR. BRANSON:  That's correct, Your Honor.  My

4  information is that he was removed from the list on August 21st.

5         THE COURT:  All right.

6         So, Mr. Louis, at least with respect to you, they've

7  already begun to apply those new standards, and the result of

8  that application is that you were removed yourself from the gang

9  list under those new standards on August 21st.

10         MR. LOUIS:  Okay.  The only other thing I would say is

11  that for other individuals, the new policy states that while

12  incarcerated, our two years is placed on pause for us to be able

13  to ask for ourselves to be removed from the gang list.

14         And that seems -- more or less you are saying that an

15  entire two years is included in when you are released from

16  prison or if you are incarcerated at the moment, you can't fight

17  your gang status until afterwards, which seems similar to what I

18  was just saying is unjust.

19         THE COURT:  Ms. Ching.

20         MS. CHING:  Your Honor, that's a slight

21  misunderstanding of what I believe is the City policy, which is

22  that when an individual is incarcerated, wherever they are in

23  that two-year period is paused.  So if you are halfway through

24  that two-year period, once you are released, you only have one

25  more year on the list and it resumes once you get out if you

1   have not already been removed through other means provided in

2   the settlement.

3           THE COURT:  Go ahead, Counsel.

4           MS. WOODY:  And also, there's nothing to stop somebody

5   who's incarcerated from challenging their -- from filing a

6   challenge to their presence on the gang list.  So even though

7   you're incarcerated, you can fill out the forms and file the

8   procedures to challenge your presence on the list.

9           THE COURT:  All right.  But it's the time limit that

10  you have to challenge that's frozen or that is paused?

11          MS. WOODY:  The time limit is for being renewed as a

12  gang member.  It used to be three years.  It has been changed to

13  two years.

14          So now if you are put on the gang list and you have no

15  other incidents for two years, you will automatically be removed

16  from the gang list.  And so that two-year period is paused if

17  you are incarcerated, but the ability to challenge your presence

18  on the list, you can do that even while you are incarcerated.

19          THE COURT:  All right.

20          Mr. Louis, apparently, even while you're incarcerated,

21  you can challenge your inclusion on the gang list, and as

22  counsel, for which I just noted, you, yourself, in fact, have

23  already been removed from the gang list, even though

24  incarcerated.

25          Well, thank you for your comments today, sir.  Let's

1    move on to our next speaker.

2           MS. CHING:  Your Honor, perhaps we can move on to

3    Mr. Caesar Louis.

4           THE COURT:  I'm sorry?  To who?

5           MS. CHING:  Mr. Caesar Louis.

6           THE COURT:  Mr. Caesar Louis, are you on the call and

7    can you hear us?

8           MR. CAESAR LOUIS:  I am.  I can hear you fine.

9           THE COURT:  So as I indicated at the start, we have

10   got individuals, such as yourself, who have asked to be heard

11   and to accommodate all that we have to do, we are giving them

12   roughly five minutes or so to make any comments you would like

13   to make.  So I will be happy to hear your comments, sir.

14          MR. CAESAR LOUIS:  All right.  Well, I had something

15   prepared based on much of the same information that was included

16   in the ACLU packet, but I think some of my issues with this

17   settlement have just been addressed.

18          THE COURT:  Okay.

19          MR. CAESAR LOUIS:  That was, basically, the same.  It

20   is like, what's the point of agreeing to this settlement if it

21   does nothing to rectify past wrongs?  Like there are a multitude

22   of families whose brothers and sisters and mothers and cousins

23   have been included on this list for the sole fact that they were

24   in a car with them upon a traffic stop.

25          That in the past, maybe not now, we've not been

1    provided with a full list of changes.  We've only been given a

2    cursory glance, and we don't have the resources ourselves to

3    look these up in timely manners.

4            But in the past, simply being with a group of

5    individuals or wearing the same clothes, for instance, school

6    uniforms have in the past had me placed as an associate of

7    multiple different gangs simply because I'm stopped on the way

8    to or from school after missing a bus with fellow classmates

9    that may or may not be active or associated with gangs.

10           So, I mean, as far as in general, I'm not completely

11   in agreeance with the settlement that it seems like has already

12   been reached.  Lawyer fees and removing associates, that was a

13   start.  Like I say, it does nothing for the people who have been

14   sent to trials and prosecuted and sought extra time in prison on

15   their sentence, heightened prison sentences, because of

16   inclusion on this list when there may or may not be full prongs

17   of their criminal cases met and when the prosecution can't find

18   a reason or a logical explanation for why something happens,

19   then they default on saying, well, it was gang activity.

20           So for no other reason, that is why this charge --

21   that is why this event took place, which has led to people

22   getting, if not life sentences, amounts of time that are just as

23   equal to life sentences.

24           I have ex-girlfriends and other members of my family

25   who have been placed on this gang list solely because they are

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1    related to me.  Myself is one thing, but what have they done?

2    To get pulled over with somebody who's on probation or is

3    already on a list just to be told if you weren't in the car with

4    him, we would not be giving you this ticket today.

5           What about all of the money that's been paid for

6    tickets?  Let's just call it tickets and not criminal cases.

7    What does that do for anybody who has suffered because of that?

8    Our families aren't involved in whatever we are accused to be

9    involved in.

10          My brother sitting right here just spoke to you.  His

11   whole case was based off the inclusion on a gang list and

12   inclusion of something based on one officer saying that there is

13   a self-admitted.

14          Now, it briefly addresses this in the new proposed

15   changes to the gang list, which it seems are more than what we

16   have been shown.  But in accordance with that, it says that if

17   an officer says that somebody self-admitted, the only fact

18   checking of that self-admittance is that same officer who is

19   claiming an individual self-admitted signing an affidavit saying

20   that they themselves heard something.

21          Why is the officer making the claim?  The only person

22   who can validate that claim, as has happened in people's past?

23          I believe that was one thing, too, and we didn't know

24   that being in prison there are ways to get off of it.  The way

25   it read was that if we are in prison our time is stayed, and I

1    feel like that is something that might be able to be tweaked

2    because I don't know if people are familiar with the way prison

3    life is, but being involved in gang activity in prison is much

4    easier and much more accepted than it is on the streets.

5         So for a person to be put on pause in a place where

6    they can or can't actually be validated in the prison system as

7    an active gang member, I mean, it seems like there's already

8    been some steps to allow us to get off of that, but if it hasn't

9    been addressed, I believe that part, if nothing else, should at

10   least be available to us.

11        THE COURT:  Okay.  Well, let me make a couple of

12   responses to that, Mr. Louis, and see if counsel have anything

13   to add.

14        First of all, there was nothing in this lawsuit

15   initially that could have affected or that tried to affect any

16   prior convictions.  Jurisdictionally, that is a much more

17   difficult hill to climb, and when this lawsuit was initially

18   filed, if they did try to set aside or change any prior

19   convictions, that would be very difficult to do.

20        They did, as noted, change how the criteria by which

21   people are placed on the gang list, and as I indicated, I think,

22   to our last speaker, they're beginning to implicate those

23   changes even now and, correct me if I'm wrong, Mr. Branson, but

24   I'm informed that Caesar Louis was removed from the gang list by

25   application of the new policy on August 20th; is that correct?

1          MR. BRANSON:  That is correct, Your Honor.

2          THE COURT:  Thank you.

3          So they are already looking at people who were

4  previously placed on the gang list under the old criteria and if

5  they don't meet the new criteria, then they're already working

6  to take them off, whether they've done that to your prior

7  girlfriends or not, I'm not aware of it at this point, and I

8  couldn't address it.

9          Finally, with respect to the self-admission, it does

10  require a law enforcement officer to not just state that but to

11  sign an affidavit verifying that, but more critically, because

12  the new policy will allow someone to challenge being placed on

13  the gang list, if they dispute and say, no, I did not admit to

14  this officer, even though he must think that I did, I did not

15  admit to him that I'm a member of a gang, then they can

16  challenge their placement on that gang list under the new

17  procedures.

18          Counsel, anything else that either of you want to add

19  to my responses to Mr. Caesar Louis?

20          Ms. Ching.

21          MS. CHING:  Your Honor, the only thing that I would

22  add to that is that the proposed settlement leaves intact any

23  class member's ability to seek post-conviction relief based on

24  the outcome of this case and any potential appeal or removal

25  from the list if they so wish.

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1          The effects of the gang list vary, I think, from

2     individual to individual.  It could be something as simple as

3     traffic tickets.  It could be something as dire as conviction

4     and imprisonment.

5          But litigating all of those individual circumstances

6     would have been -- I would say at odds with the class action

7     nature of this lawsuit.  There has to be some kind of coherent

8     theme towards everybody's injuries.  And if we dig into

9     individual circumstances like that, that probably would have

10    been detrimental to achieving settlement on a classified basis

11    and we would not even be here today.

12          THE COURT:  Well, in fact, without getting too deep in

13    the weeds, it probably would have destroyed the class-action

14    nature of this entire proceeding itself, if we had that many

15    individual questions as to individual defendants raised in this

16    case.

17          MS. CHING:  Yes, that is what I mean, Your Honor.

18          THE COURT:  Thank you, Counsel.

19          Mr. Branson, anything to add?

20          MR. BRANSON:  No, Your Honor.

21          THE COURT:  Mr. Louis, thank you for participating

22    today and for sharing your comments with this.  I appreciate

23    that.

24          Who should we hear from next, Ms. Ching?

25          MS. CHING:  I believe the last individual at Lansing

1  who wished to speak is Mr. Jamion Wimbley.

2        THE COURT:  Mr. Wimbley, are you on and can you here

3  us?

4        MR. WIMBLEY:  Yes, sir.

5        THE COURT:  I'll be happy to hear from you at this

6  point.

7        MR. WIMBLEY:  I just want to know, is there a way

8  you-all could change the stipulations in the settlement for

9  people that they use the gang list to find people guilty and

10  give people all the time that they gave them, you know, because

11  if it wasn't for them saying that I was on the gang list, I

12  wouldn't have the time I have or be in here all the time I've

13  been here, you know?

14        THE COURT:  So I'm not familiar with the particulars

15  of your conviction, Mr. Wimbley, and I suspect counsel isn't

16  either.

17        Ms. Ching, you might be better equipped than I am to

18  address any individual post-conviction remedies that someone

19  might have as a result of this settlement.  I'm not sure what

20  those might be.

21        MS. CHING:  Your Honor, I'm not a criminal appellate

22  specialist, but I imagine that a change in circumstances could

23  potentially be grounds for seeking some kind of post-conviction

24  release.

25        THE COURT:  So to the extent that your conviction or

1    your sentence, Mr. Wimbley, depended in part on your presence on

2    the gang list, and I think that typically has not been the

3    primary effect of someone being on the gang list, but to the

4    extent that that was your experience, this settlement is not

5    capable of addressing those specific issues.

6          To the extent that you have or are making challenges

7    to your conviction or sentence, you could raise these issues in

8    that challenge, but that is going to be outside of the nature of

9    this particular settlement because this settlement is unable to

10   address individual circumstances or individual convictions or

11   sentences themselves.

12         I am, however, advised, again, as I have talked with

13   some of the other members who are speaking today that, again,

14   I'm told that they have been applying these new standards to

15   people currently on the gang list and as a result of their

16   application of that, Mr. Wimbley, I have been advised that you

17   were removed from the Wichita Police Department gang list last

18   week; is that correct, Mr. Branson?

19         MR. BRANSON:  That is correct, Your Honor, as of

20   August 16th.

21         THE COURT:  Right.  Thank you.

22         Anything else, Mr. Wimbley?

23         MR. WIMBLEY:  Yeah.  What about reimbursement for the

24   people included in the class action as a whole?

25         THE COURT:  So this lawsuit was a challenge against

1    the maintenance of the gang list.  It did not raise individual

2    claims for reimbursement or, as I said earlier, for

3    recalculation of sentences or for re-examination of convictions.

4    That was beyond the claims raised in this action.

5         So any rights you have to challenge those are

6    unaffected by this settlement because this settlement was only

7    able, under the nature of the class action, to address the

8    broader issue of how the gang list is maintained and how it may

9    be challenged, but it is not capable of raising individual

10   claims for individuals who may have been impacted by their

11   inclusion on the list.

12        MR. WIMBLEY:  Are people included -- okay -- 500,000

13   and a slap on the wrist for the WPD, that is all?

14        THE COURT:  Well, I wouldn't characterize it that way,

15   but Wichita has been -- has agreed, I would say, to change the

16   way they're doing this.  To change the business they are

17   handling.

18        As a part of the agreement, they've agreed to pay the

19   legal fees that were incurred to get to this level.  Although,

20   the plaintiffs who brought this claim as a part of the

21   agreement, have agreed to only seek part of the fees that they

22   may have incurred to do that.

23        And that's what the claims sought was to force the

24   police department to change how they operate the gang list.  As

25   a part of this settlement, the Wichita Police Department and the

1    City of Wichita have agreed to a number of changes that the

2    plaintiffs thought -- the people who brought this claim thought

3    addressed the claims they had raised.

4           But it did not seek, just as it did not seek any

5    individual remedies of sentences or convictions, it didn't seek

6    anything beyond that from the police department.  So those were

7    not claims raised in this case, so.

8           Yes, Counsel.

9           MS. WOODY:  Yes.  If there are existing rights, either

10   for post-conviction relief or for some kind of damages, this

11   settlement does not release those claims.  The individuals would

12   still have those claims if they exist today.

13          THE COURT:  Right.  Those issues, Mr. Wimbley, aren't

14   raised by this settlement, and so they're not impacted by it.

15   So to the extent there are rights to challenge those and even to

16   challenge them now based on the application of the new policy,

17   those rights are unaffected by this settlement.

18          Thank you, Counsel.

19          Mr. Wimbley, thank you for your comments today.  Thank

20   you for speaking here.

21          Ms. Ching, who should we hear from next?

22          MR. WIMBLEY:  I have one more question, please.

23          THE COURT:  I'm sorry?

24          MR. WIMBLEY:  I have one more question, please.

25          THE COURT:  Okay.

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

```
 1              MR. WIMBLEY:  How do you pursue this claim going
 2    forward?
 3              THE COURT:  I'm sorry.  Say that again, please?
 4              MR. WIMBLEY:  This class action claim, how do you
 5    pursue it going forward?  How do I pursue it going forward, I
 6    mean?  My fault.
 7              THE COURT:  I'm not sure I understand the question.
 8              MR. WIMBLEY:  How do I pursue this class action going
 9    forward?
10              THE COURT:  Well, you don't have to pursue this class
11    action going forward because the settlement reaches the changes
12    with respect to the gang list for everyone in the class, which
13    includes you.  And as I noted, because you're in the class and
14    the application of those terms of the settlement, Wichita has
15    already removed you from the gang list.
16              If you want to pursue things going forward with
17    respect to your own convictions or sentences, that would have to
18    be done individually.  That is not raised by this.
19              But your rights under the settlement are not only
20    intact, but you've already benefited, I guess I would say, from
21    them because in reviewing your case, Wichita already agreed to
22    remove you from the gang list last week.
23              MR. WIMBLEY:  Okay.  Thank you, sir.
24              THE COURT:  Thank you for appearing and for your
25    comments today, Mr. Wimbley.
```

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1     Ms. Ching, who should we go to next?

2     MS. CHING:  I believe that's everyone at Lansing,

3 Your Honor.

4     THE COURT:  Okay.  Very well.  Thank you all for your

5 appearance from the Lansing facility.

6     MS. CHING:  I apologize.  I believe there's one more

7 individual from Lansing that we added at the last minute, which

8 is Mr. Zabriel Evans.

9     THE COURT:  Mister who?

10     MS. CHING:  Zabriel Evans.

11     UNITENDIFED SPEAKER:  Mr. Evans actually declined to

12 participate with us today.

13     THE COURT:  Okay.  So Mr. Evans elected not to speak

14 after all.  All right.  Thank you very much.

15     Then does that leave us with just Mr. Dempsey?

16     MS. CHING:  Correct.  Mr. Silky Dempsey.

17     THE COURT:  Where's Mr. Dempsey?

18     MS. CHING:  I believe he is at Larned, Your Honor.

19     THE COURT:  Mr. Dempsey, are you on this call?

20     MR. DEMPSEY:  Yes, sir.

21     THE COURT:  Well, we will be happy to hear from you at

22 this point, sir.

23     MR. DEMPSEY:  Yeah, I just want to address the

24 effects, the present, and then going forward, the implementation

25 of -- I believe I was placed on the gang list just due to the

1    fact that I have a large family who are gang members.  And my

2    closest cousin, Jason Cane Porter, was shot and killed.  And as

3    a memorial, at my young age, I got the same tattoo as he did.

4         Some of the effects of being placed on this gang list

5    without any confirmation or validation, I've been laid on the

6    ground at gun point in front my grandmother, by a traffic stop

7    with my four daughters in the car.  I have been approached with

8    guns drawn on me and my daughters.  So those effects are

9    psychological to our family.

10        I do believe that at the present how a lot of people

11   get put on that gang list is simply because inside of the old

12   criteria, it says that whenever there was someone who would

13   happen to catch a case, that they would implement inside of the

14   report that the subject was a member of such and such gang.

15        And I've seen that in the few past cases that I have

16   caught.  Although, I've never been arrested for gang activity in

17   the presence of other gang members, with gang members, or any of

18   that nature, but it became customary of WPD to include that in

19   reports as a means to get people validated for the gang list and

20   implemented thereon.

21        So I'm in agreement with everyone and how they see of

22   the gang list, those who are pushing forward with the

23   settlement, and I just believe that the effects of that long

24   term right now is, even inside of prison, outside validation

25   from another agency is one of the criteria that gets us most

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1  known as a STG form, which is a security threat form.

2         And because of that point being active, they can have

3  you lose your custody for three years.  It could have you in a

4  max setting when you really don't have those points.

5         So the effects are ongoing, and I just believe that

6  with the implementation of the new policy, I also believe that

7  before someone is candidated {sic} for the list, that maybe

8  there could be a third party committee who will sit and review

9  the person's background if they have been active in the past

10  number of years.  What those actions were that they have been

11  partaking in and various other things as opposed to -- because

12  there's plenty of officers, say on the north side, northeast

13  side of Wichita, that know a lot of people just by face.  So

14  when they see my face, you are more than likely going to have an

15  encounter with that officer or officers.

16         So I think just in order to be fair, the profiling

17  side of it should also not be a factor in how one gets placed on

18  that list or subject to a stop to see if they -- or if they are

19  participating in gang activity.

20         With that, I would just say that, you know, going

21  forward, a committee should be put in place whenever they have

22  someone up and it should not be an internal committee.  It

23  should be third party who are neutral and detached from the

24  agency seeking to validate, and I think that would be the more

25  fair route to take to see if someone meets the new criteria or

1   standard to be labeled as a gang member.

2          THE COURT:  Okay.  Well, thank you, Mr. Dempsey.  The

3   matters that you have addressed are squarely what this lawsuit

4   was initially brought about and there are two broad areas that

5   this settlement has affected.

6          One is significantly changed, and I would even say

7   narrowed the criteria by which the Wichita Police Department can

8   put someone on the gang list to begin with.

9          So some of the items that you have mentioned where you

10  believed or suspected in the past that people have been put on

11  the gang list solely because of, maybe, innocuous standards or

12  maybe irrelevant ones.  A lot of that's been changed under this

13  settlement agreement and there are much narrower standards by

14  which someone can now be placed on the gang list as they used to

15  be.

16         And the second issue you raised is that this

17  settlement agreement also provides the ability, which did not

18  exist before, for someone to challenge being placed on the gang

19  list.

20         Well, first of all, it provides a requirement that

21  they are notified that they have been placed on the gang list.

22  That also did not exist before.  And then they've got the

23  ability to challenge their placement on that gang list if they

24  believe their placement there was erroneous.  And there's now a

25  review process for how that would work.

1           I have read this, Counsel, but I think I perhaps don't

2    feel completely conversant about how that review process would

3    work.

4           Could one of you explain to Mr. Dempsey if someone

5    challenges being placed on the gang list what that right of

6    challenge looks like and how it's adjudicated?

7           MS. CHING:  Your Honor, all such appeals will be sent

8    to a third party, a neutral, essentially, will be called a gang

9    review ombudsperson, and we have selected that person.  As far

10   as I understand everything, it is in place for that person to

11   begin, not to bury the lead, the first gang ombudsperson, I

12   believe, will be Mr. Robert Moody.  He is a private practitioner

13   with the law firm of Martin Pringle.

14           THE COURT:  Mr. Moody has substantial experience in

15   federal court in defending criminal defendants.  So I'm very

16   familiar with him.  He is a fine lawyer.

17           MS. CHING:  So a person who wishes to appeal their

18   gang status will fill out the appeal form.  That will be sent to

19   the WPD.  WPD will then forward that and any other information

20   that the person appealing their inclusion wants to include.  Any

21   statement you want to write.  Any other evidence you want to

22   provide.  All of that will be forwarded on to the ombudsperson.

23           The ombudsperson will review that information.  They

24   will look at WPD's own documentation about why that person was

25   added to the gang list.  The ombudsperson may meet with the

1    person who is appealing their status, and then the ombudsperson

2    has 90 days to issue a written decision about whether their

3    inclusion was correct or not.

4        THE COURT:  And the important thing about that,

5    Mr. Dempsey, I think is that this ombudsperson, not only does he

6    not work for the police department or for the City of Wichita,

7    he is independent of them, but he is, in fact, as I just

8    indicated, an experienced criminal defense lawyer and so he's

9    neutral and removed from the police department, and he's the one

10   that will handle the review of challenges to the placement on

11   the gang list.

12       Mr. Branson, anything that you would like to add?

13       MR. BRANSON:  No, Your Honor.  I think that covers it

14   all.

15       THE COURT:  All right.  The only thing I would add,

16   Mr. Dempsey, again, is that I am advised that they've already

17   looked into this new criteria to your placement on the gang list

18   and the City removed you from the gang list a few days ago.  So

19   the application of that new criteria is already being applied

20   and the result of that in your case is that they have removed

21   you from the gang list.

22       MR. DEMPSEY:  Okay.  One more question -- well, it is

23   a two-part question.  One, will I receive any paper notification

24   of that in the mail that I can have here that I can have put

25   into my OPUS file here?

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1        THE COURT:  I don't know the answer to that question.

2        Counsel, do either of you know the answer to that?  Is

3   there a notification of removal that will go out?

4        MS. CHING:  Your Honor, Plaintiffs think that that

5   would be a great idea if the City is amendable?

6        THE COURT:  Is that a part of the current settlement

7   proposal?

8        MR. BRANSON:  It is not, Your Honor.  Under the

9   current settlement proposal, an individual may ask if they are

10  on the list, and the Wichita Police Department will respond to

11  that.  There's not a notification process that goes out.

12       THE COURT:  So I think under the current proposal,

13  Mr. Dempsey, what should happen is that you should send a letter

14  or a request to the Wichita Police Department inquiring whether

15  you're still on the gang list and then the settlement agreement

16  will require Wichita to respond to you and inform you, in this

17  case at least, that you are not on the gang list any longer.

18       What was your second question?

19       MR. DEMPSEY:  The second question is:  Would this have

20  an affect on when a person is initially taken to detention or

21  jail?  A lot of people automatically get an upwards of a $50,000

22  or a $100,000 bail enhancement due to being labeled as a gang

23  member.

24       So would this also play a part on whether or not they

25  would still have that bond enhancement and gang conditions added

1    to their bond?

2            THE COURT:  Well, the primary effect is going to be

3    that it will be much more difficult for someone to be placed on

4    that gang list to begin with.  So my expectation is that fewer

5    people will be put in that situation or placed on that gang list

6    to begin with and that will impact them on their initial arrest.

7            I don't know if the particular procedures that

8    Mr. Dempsey has raised have been changed in this settlement

9    agreement.  I don't recall that they have, but that may be a

10   detail that slipped my mind.

11           MS. CHING:  Your Honor, to the extent that this Court

12   could affect a state criminal proceeding, I would be a little

13   concerned about some abstention issues.  I think the more

14   practical effect is that the public defenders in Sedgwick

15   County, and I expect the private bar by now, are well aware of

16   this case and what is happening.

17           And if they have a client who comes in who has that

18   bond applied, they can file a motion to modify the bond,

19   depending on what information they find out about how that

20   person was added to the list.

21           THE COURT:  All right.  Thank you, Counsel.

22           Thank you, Mr. Dempsey, for your comments and for your

23   appearance here in our proceedings today.

24           I think, Ms. Ching, that is everyone that we have

25   appearing by Zoom; is that correct?

1         MS. CHING:  I believe so, Your Honor.

2         THE COURT:  Well, again, I thank you-all for

3    requesting to be heard and for your comments as we are looking

4    at this today.

5         We have a couple of individuals -- I think I would

6    like to start -- we have three people who want to be heard who

7    are here in person.  I think we will start with Heidi Louis, who

8    is, as I understand, though not a class member, is a family

9    member of people who have been on the gang list.

10        Is Mr. Louis present?

11        Mr. Louis, I'm going to ask if you would, that you

12   come up and speak in this microphone at the podium so that we

13   can hear you.  You're not, as I understand, not a member of the

14   class, but correct me if I'm wrong, but you have family members

15   who are; is that correct?

16        MS. LOUIS:  You just heard from my husband and my

17   brother-in-law.

18        THE COURT:  All right.  Very well.  Well, let's now

19   hear from you.

20        MS. LOUIS:  Okay.  So I will have to amend my

21   statement a little bit because I think all of us just found out

22   that none of them are on the gang list as of five minutes ago,

23   which I find curious.

24        THE COURT:  Well, they were removed at some point in

25   the last two weeks.  I understand you just found out.

1          MS. LOUIS:  Right.  Well, my husband was removed on

2    the 21st.  He's been saying since 2011 that he was not a gang

3    member, but it's great.

4          So here's my statement:  The settlement that has been

5    tentatively agreed upon is inadequate in what it demands from

6    Wichita and the Wichita Police Department.

7          The gang list in question has ruined my husband's

8    life, which is evidenced by his personal statement.  The ripple

9    effects of that ruin have impacted myself and my family.

10          When my family, friends, and coworkers Google my

11    husband now, they see what the Wichita Eagle wrote about him

12    based on his inclusion in that gang list.  He is forever labeled

13    a dangerous gang member, which carries all kinds of connotations

14    and very real consequences.

15          Because it's been reported on the media and documented

16    in court by experts with trumped-up qualifications and lies that

17    he self-admitted and because he has tattoos, key chains, and

18    diverse friends, he is now a dangerous gang member.

19          I have family members who are afraid of my husband.  I

20    have two siblings who no longer speak to me and have entirely

21    cut me out of their lives out of fear.  I had an anonymous

22    letter sent to my home addressed to my then 11-year-old youngest

23    son.  The letter talked about how his mother had married a

24    dangerous gang member and included news articles and his

25    charges.

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1      The letter further threatened my job as a public

2  school educator claiming that I was unfit and would be reported

3  to my supervisors and the school board.  I have no idea who

4  mailed this letter.  How they knew my address, my profession, or

5  who my children were.  I was afraid.

6      I had a meeting with my principal, the school SRO, and

7  my union representative.  I was assured that all of these claims

8  of harm towards myself were baseless and had no bearing on my

9  profession.

10      While that was comforting, I feared for my children.

11  I installed cameras at my home.  I contacted the postmaster to

12  try to unsuccessfully find the sender.  I monitor all of my

13  incoming mail by USPS app.  My children are aware and cautious

14  of what this means for them.  I locked down all of my social

15  media accounts and turned off locations for myself and for my

16  children.  I live in the Kansas City area, so I don't even live

17  here.

18      These are the real consequences of that gang list that

19  my husband was added to when he was a child of 12 years old.  He

20  is now a 34-year-old man who has spent more than a third of his

21  life behind bars largely due to that gang list.

22      I'm a professional adult who lives three hours away

23  from Wichita.  I met him long after he was added to that list,

24  after he was incarcerated, but that list impacts me daily.  And

25  it will continue to impact him, me, and our families for the

1    rest of our lives.  The damage has been done.

2            Reported on the media, written in the courts, and for

3    the majority of people, that is seen as the hard and fast truth.

4    Nothing, not this settlement or anything else, can fix that.

5            As written, even in the amended policies, we didn't

6    think he could challenge his placement on it while incarcerated.

7    We are just now finding out that we misunderstood that.  I feel

8    like it's unethical and a gatekeeping to justice for them to

9    have to write about whether or not they're on the list.

10           How do you ask about something you don't even know

11   about?  And that's the case for many of the hundreds of people

12   that are incarcerated that are on that list right now.

13           Even now that he is removed, so what does that mean

14   for us moving forward?  Even if his convictions are overturned,

15   what does that do for me?  For my children?

16           It's hard enough to try to rebuild a life after

17   incarceration without that additional stigma.  So would I be

18   listed as an associate?  I'm afraid when my job looks me up, my

19   husband, looks him up, is that keeping me from advancing in my

20   profession?  Does it effect my children's schooling?  My career?

21   My housing prospects?

22           I find it an outrageous miscarriage of justice and a

23   distortion of human rights.  I am disappointed that the mere

24   payment of court costs, a fraction of the court costs and bail

25   amount for my husband alone, his bail was $1.25 million because

1   he was a gang member and was dangerous.

2           I feel like that's an inadequate rewrite of an

3   inherently racist and prejudicial policy.  The proposed

4   settlement is nothing more than a slap on the wrist just to say

5   that it is making things better going forward.  It does nothing

6   for all of us that happened before.  You can't just be a little

7   bit less racist.

8           THE COURT:  Thank you, Ms. Louis.  We're of course

9   unable to change what has happened in the past.  The best that

10  we can do through this settlement is try to do things more in

11  the future and address the current situation as we have with

12  those currently incarcerated.  Thank you for your appearance

13  here today.

14          MS. CHING:  The remaining two speakers, one, is not --

15  also not technically a member of the case but is here not

16  representing her person or herself, as I understand it, but here

17  on behalf of the Appleseed Foundation, Sherida Price.

18          Is Ms. Price present?  Okay.  I don't see that she's

19  here.  And then, finally, Ms. Atkins-Woods is here, I'm told, on

20  behalf of Plaintiff, Progeny, and wanted to speak.

21          Is Ms. Atkins-Woods present?

22          MS. ATKINS-WOODS:  I am here.

23          THE COURT:  Again, ma'am, if you'd come up and speak

24  in the microphone.  You're not a member of the class, but

25  Progeny is, of course, one of the plaintiffs that brought this

1    action.  That is why I held you to the last as a named party in

2    the case.  I will be happy to hear your comments.

3            MS. ATKINS-WOODS:  Thank you.

4            So my name is Marquetta Atkins-Woods.  I am the

5    founder and executive director of Destination Innovation, Inc,

6    which is the hub of youth leadership development.  In this space

7    it is Progeny.  Progeny are youth touched by the juvenile

8    justice system and that we teach advocacy.  How to change policy

9    and the way it impacts them.

10           In my statement, I want to speak as a person who grew

11   up in Wichita, Kansas, as a mother, and as an advocate, and

12   community member.  So as a teen that grew up in Wichita, Kansas,

13   as a part of the USD 259 School System, these young people that

14   were put on these gang lists were my peers.

15           When you go to school with all of these different kids

16   that come from different backgrounds, we all come together in

17   those schools.  And so, as we proved in the case, anybody can be

18   listed as a gang affiliate by simply being at USD 259.

19           As Ms. Louis stated, being a teacher and being

20   married, going to a funeral of a friend, which I had to go to my

21   first funeral when I was 14 years old, could have gotten us

22   listed as gang members.

23           I remember being 16 years old in full regalia as

24   Ms. WLCP, and I had my boyfriend and his friend in the car and

25   being profiled and followed for almost 15 minutes in a car until

```
 1   I got frustrated and pulled over and let the police get out and

 2   asked them what are you following me for and had that implicated

 3   until they seen me in my full regalia.

 4           Our stories in the community and what we get to see is

 5   totally different from what the police say.

 6           As a mother living right down the street from South

 7   High where my son went to school and being a mother that had the

 8   privilege of being able to work from home and fix my kids lunch

 9   when they came in for lunch from school, having my son walk back

10   from lunch and being pulled over by the officer and asked what

11   gang are you in.

12           My son at that time was 15 years old and he was a

13   gifted honor role student.  Not to say you don't have to be a

14   gifted honor role student not to be profiled, but that's what he

15   was.  And was definitely a sidewalk kid.

16           The fact that he was asked what kind of gang he was in

17   while he is walking home from lunch, the trauma that that does

18   to our children last a lifetime.

19           As a community member and an advocate, I have had

20   young people that have flown out of town and they were

21   moderating tables for senators across this country.  These young

22   people were systems impacted young people.  Only to come home to

23   be profiled.  Every single time they got pulled over they called

24   me and they would put me on speakerphone because they felt

25   unsafe.
```

1          And I can't tell you the countless times that I've

2    heard that questioned asked, am I going to be implicated as

3    being on the gang list?  It is very real in our community.  It

4    happens all the time.

5          I think it is super important that these stories are

6    told and that the stories are heard, and I want to give grace

7    and applause to Kansas Appleseed and the ACLU for listening to

8    us and believing in our stories.

9          And I want to also give credit to Wichita for settling

10   the case, and what I want the people that were speaking from

11   Lansing and incarcerated to know that policy change is a

12   marathon, not a sprint.  What we have done is change policy on

13   30 years, something that's been going on for 30 years.

14         And although we wish we could have done more with that

15   class action suit, what we did is we moved the button forward

16   and we have to continue to push and move the button forward so

17   that we can create safe environments for our community where our

18   children don't have to be profiled.  Where our husbands don't

19   have to be profiled and labeled.  I think that is super

20   important.

21         It is so important that we continue to do the work, so

22   that we have a system that has transparency and that we create

23   systems that are healthy for our communities.

24         Again, I want to thank Kansas Appleseed and the ACLU

25   and especially our Progeny youth.  Doing this class action suit

1  was scary for all of us, and these young people stood in their
2  power.  And it allows us to continue to do our work without our
3  kids having to worry about being on a gang list and compromising
4  any of their probations and continue to heal and continue to
5  grow in their work in their advocacy.
6        These young people are known across the country for
7  the work that they do and they shouldn't have to come home and
8  be profiled.  It sets them back.
9        I also want to look to our Cure Violence Team, who
10 showed up today.  Orange is the color against gun violence.
11 Anyone of these people at some point in time -- Albert, I am
12 going to call you out because you're a part of this lawsuit, has
13 been listed and put on this list at some point in time.
14       All of these people are out here right now fighting
15 against gun violence.  They should not have to be kept to
16 something that happened when they were children.  They should be
17 allowed to grow and become successful parts of their community
18 and that is what we aim to do with these policy changes that
19 we're doing with this gang list.  So I want to thank Wichita for
20 moving the needle forward today.  Thank you.
21       THE COURT:  Thank you very much for your comments.
22 Those were a nice summary for our people who wished to be heard
23 at this proceeding.  Thank you.  I appreciate those comments.
24       Those are the only individuals that indicated,
25 pursuant to the notice procedure, that they wished to be heard.

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

```
 1   At this point, we'll move on then to the parties involved in the
 2   case.
 3            I will tell Counsel that I have looked through all of
 4   the submissions that were made in connection with the filing for
 5   the motion for final approval.
 6            The plan which, of course, we discussed earlier when
 7   we made tentative approval of this as well as their submissions.
 8   So, I guess, I'm saying I am, certainly at a minimum, generally
 9   familiar with them.  And so they don't need to be gone over in
10   detail, per se, but, nevertheless, anything that either counsel
11   believes is important to say at this hearing, we will hear from
12   them.  So we will start with Plaintiffs.
13            MS. CHING:  Thank you, Your Honor.
14            Your Honor, the parties' position on why this
15   settlement is fair and reasonable and adequate is laid out in
16   the joint motion, and I'm not going to rehash the history and
17   background of this contentious case and how it took
18   three-and-a-half years for us to reach this resolution.
19            I just want to add that the proposed settlement is not
20   simply going to be business as usual.  We have talked about many
21   of the major aspects of the settlement today already.
22            I also want to flag that another settlement term is
23   the automatic removal of all inactive and associates within 90
24   days of the Court's approval, and that constitutes, I think,
25   approximately 3,400 some individuals.  That's nearly two-thirds
```

1    of the gang list.  So that will be gone within 90 days if the

2    process has not already begun.

3          Additionally, there will be independent oversight of

4    the WPD's compliance with the settlement terms for three years

5    by a special master on a biannual basis.  All of these things

6    are very real and significant changes to the WPD policy that

7    directly address the procedural due process and First Amendment

8    violations that Plaintiffs identify.

9          The notice plan the Court approved and ordered was

10   robust.  Plaintiffs fully implemented the plan and persuaded

11   additional avenues of notice by publication beyond what the plan

12   required because we really wanted to ensure that the word got

13   out to the community.

14         We published information about the case on the ACLU of

15   Kansas, Kansas Appleseed, and Progeny websites.  We printed

16   notices in the newspaper.  We issued a press release.  We posted

17   dozens of times on social media accounts.  We sent mail to every

18   identified incarcerated class member whose location could be

19   reasonably ascertained.

20         We sent requests to other Government agencies and bar

21   associations to publish information about the case.  We posted

22   physical postings of the notice around the city.  We purchased

23   Google search ads.  We ran radio ads and we purchased a digital

24   media banner ad from KWCH as well, all in an effort to get the

25   word out to the community so folks would know about these

1    processes that hopefully will become available to them.

2            With respect to the objections, Your Honor, class

3    counsel received written comments from 19 individuals.  Nine

4    appeared supportive.  Eight appeared to object.  And two did not

5    seem to express an opinion one way or another.

6            And I do want to note here that the motion states that

7    seven individuals objected, but it should be eight because two

8    individuals submitted a joint objection.  I just wanted to clear

9    that up for the record.  My apologizes for miscounting.

10           Are there any specific objections or concerns the

11   Court would like Plaintiffs to address?

12           THE COURT:  I have no specific objections or concerns.

13   I have perhaps a more procedural issue.  I note that the

14   proposed order doesn't actually note, and I don't know if it's

15   important that the Court is the one that does this, the

16   appointment as to guardian special master, Mr. Moody, is

17   ombudsman.

18           Are those procedures that are done, as I understand,

19   outside of the Court's jurisdiction as a part of the settlement

20   plan?  So I see Defense shaking their heads yes.  So they may

21   not need be incorporated into the terms of the proposed order?

22           MR. BRANSON:  Your Honor, the only thing that needs to

23   be incorporated is just the requirement that we agree.

24           THE COURT:  Okay.  All right.

25           And then because federal courts always worry about

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1    jurisdictional issues, I understand that we are retaining

2    continuing jurisdiction over the settlement agreement.

3           Tell me from a procedural point of view, how you think

4    that looks and how the Court should, in fact, treat this

5    particular case?  I mean, typically, as you know, once we enter

6    into a settlement agreement, we close the case out.  I

7    understand the importance in this case of the Court maintaining

8    the ability, I guess, to enforce its own orders under the

9    settlement agreement.

10          But how does the retention of jurisdiction by this

11   Court for any matters that may arise down the road look from a

12   procedural perspective in your opinion?

13          MS. CHING:  Your Honor, I don't see why this should be

14   substantially procedurally different than any other class action

15   lawsuit in which parties settle and agree for the Court to

16   retain jurisdiction.

17          THE COURT:  Typically, most class action lawsuits

18   don't envision the level of ongoing court involvement that this

19   case might have.  Hopefully will not, but could.  Most class

20   action settlements or resolutions are a bit more final, from the

21   Court's perspective, than this one.  I think by its nature, it

22   has to be.  But I do see that as a bit different from other

23   class actions that I have presided over.

24          MS. CHING:  Yes.  I understand the Court's concern,

25   and I agree, hopefully, there will be no issues.  I do want to

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1  assure, Your Honor, that it is not as if the instant we have a

2  disagreement, that we are going to come running back to you.

3          There are provisions, specifically in the settlement

4  agreement, if the special master identifies some particular

5  issues that Plaintiffs are not happy with, the parties will

6  attempt to come to an agreement and only in the instance that we

7  cannot reach a reasonable agreement, which I am hopeful for

8  because we managed this far, only then would we have to return

9  to the Court for relief.

10         THE COURT:  All right.  Let me back up a half step.  I

11  realized when I looked over my notes, that, in fact, your

12  proposed order does have me appoint Mr. Gurney and Mr. Moody.

13  And it seems to me if so, that should either be discussed

14  somewhat in the narrative portion of the order or if that is

15  actually beyond the authority the Court should take upon itself,

16  then I wonder if we should remove those from the proposed order?

17         MS. CHING:  Your Honor, I see that as sort of a

18  stipulation of a sort that courts would ordinarily grant.

19         THE COURT:  I don't have an objection to including it

20  in the order.  I just think, and, again, this is more process

21  than substance, that if we're going to do that, at a minimum,

22  perhaps the proposed order should state in the body that the

23  parties have stipulated to those and the Court adopts the

24  parties stipulation and makes those appointments, if you think

25  it is important that that appointment be noted in the Court's

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1    order?

2            MS. CHING:  Whatever Your Honor is most comfortable

3    with.  I will say that the settlement agreement specifically

4    names Special Master Gurney.

5            THE COURT:  I think it names Mr. Gurney.  I do not

6    think it named Mr. Moody, did it?

7            MS. CHING:  Not Mr. Moody because it simply states

8    that we are to agree on the first ombudsperson.

9            THE COURT:  Right.

10           MS. CHING:  I mean to the extent that his name does

11   not appear in the settlement agreement, I mean --

12           THE COURT:  Again, I am just noticing that I appoint

13   them as in your proposed order, but they are not discussed in

14   the narrative portion of the order and so that -- I think I

15   should do one or the other, and I am willing to submit that to

16   counsels' mutual decision, but either I shouldn't discuss their

17   appointment at all, or I should note, at a minimum, that the

18   parties have stipulated to their appointment and the Court

19   simply adopts that stipulation.

20           MS. CHING:  Well, not to nitpick, Your Honor, but I

21   believe the proposed order says that the parties' agreement to

22   appoint retired Judge Paul Gurney as Special Master is approved,

23   as opposed to the Court appoints Judge Gurney as Special Master.

24   The language is the same for Mr. Moody.

25           I don't know if that changes how you feel about it,

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1   Your Honor?

2         THE COURT:  Well, but my point is you are saying that

3   I approved the agreement, but I have not previously noted that

4   there is an agreement.  That's the point, perhaps I'm not making

5   clear that, again, it is a procedural issue but we like to have

6   our things buttoned down cleanly.

7         And if that's how you want to proceed, I'm fine with

8   that, but I think I should note or add in the proposed

9   settlement agreement that the parties have agreed to the

10  appointments of Judge Gurney and Mr. Moody before I say that I

11  am approving that appointment when I have not previously noted

12  that that settlement exists -- or not the settlement but that

13  agreement or stipulation exists.

14        MS. CHING:  I don't think Plaintiffs would have any

15  objection to the Court inserting a sentence or two in the

16  factual and procedural background section, perhaps.

17        THE COURT:  So as I said, these are procedural nits,

18  but that's what we do in federal court.  But, substantively, I

19  really have no questions or concerns about the settlement

20  agreement.

21        Anything else that you would like to say?

22        MS. CHING:  There are a few remaining logistical

23  issues, Your Honor.  The parties have discussed, I think as you

24  might have noticed from our proposed order, because Mr. Moody is

25  a criminal practitioner, there is a chance that one of his

```
1    clients wishes to be removed.

2              THE COURT:  There may be a conflict.

3              MS. CHING:  Right.  So we are -- the parties have been

4    discussing the appointment of a secondary ombudsperson to serve

5    as a backup in the event Mr. Moody does encounter such a

6    conflict of interest.

7              THE COURT:  But you have not yet agreed on a conflict

8    appointment of that issue?

9              MS. CHING:  Correct.  And the proposed order provides

10   30 days for us to try to finalize that.

11             THE COURT:  Do you believe it is necessary at that

12   point for the Court to issue an order regarding that approval of

13   a conflict ombudsman?

14             MS. CHING:  Well, Your Honor, nothing motivates

15   lawyers like deadlines.

16             THE COURT:  I'm sorry?

17             MS. CHING:  Nothing motivates lawyers like deadlines.

18             THE COURT:  Well, I guess this goes back to the matter

19   that we were just discussing.  While I am happy to note in my

20   order that I adopt the stipulations you have made regarding

21   Judge Gurney and Mr. Moody, I'm not sure it is necessarily

22   required for this order.

23             And as I read the settlement agreement, I think the

24   parties are capable themselves of agreeing to a stipulation of a

25   conflict ombudsman without the Court's involvement.  And I
```

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1    typically think that, to the extent that the Court's involvement

2    can be kept more at a minimum, that is generally better.

3           Nevertheless, if you think it's important that,

4    ultimately, I issue a supplemental order, we could do that by a

5    follow-on motion -- joint motion made by the parties asking the

6    Court to ratify that appointment if both sides believe that is

7    necessary.

8           MS. CHING:  Understood, Your Honor.

9           Also, pursuant to the Class Action Fairness Act, the

10   defendant submitted notice to state and federal governments.

11   Class counsel did not receive any comments or communications

12   from any of the federal or state government regarding this

13   settlement, just to tie up that loose end.

14          I suppose I only have some closing remarks, if

15   Your Honor would like to hear those now?

16          MS. WOODY:  Your Honor, Ms. Price just arrived who had

17   wished to speak.

18          THE COURT:  Well, the period for public comment was

19   earlier in the hearing.  The hearing started an hour ago.

20          MS. WOODY:  She was delayed by --

21          MS. PRICE:  I did not have my wallet, and I had to

22   leave and go get it.

23          THE COURT:  Well, I guess, Ms. Price, we will let you

24   speak.  We try to follow a process in court.  You are an hour

25   late getting here.  I will give you -- you are in the middle of

1    a separate part of our hearing.  You are disrupting what we are

2    trying to do here.  If Ms. Ching would yield the podium, I will

3    give you a couple three minutes to make comments if you'd like

4    to at this point.

5             MS. CHING:  I'm happy to save my closing for after

6    Ms. Price speaks.

7             THE COURT:  Okay.  Thank you.  We will do that.

8             If you would come up and speak in the microphone,

9    Ms. Price, where Ms. Ching was just speaking.

10            MS. PRICE:  I will attempt to rush this.  I apologize.

11            Illegal surveillance, exaggerated fines, vandalism,

12   unlawful arrested and extended incarceration like my brother

13   Gregory Carter currently.  Civil rights violations and gang

14   members dressed in black repping their beat or precinct --

15            THE COURT:  Ma'am, can I ask you to talk a bit more

16   slowly.  Our court reporter is trying to make a record of what

17   you're saying.

18            MS. PRICE:  Okay.  I was just thinking three minutes.

19   I'm rushing.  I apologize.

20            This is what comes to mind when I think about the gang

21   list.  Police officers having guns drawn during traffic stops.

22            THE COURT:  I will still ask you to talk a little bit

23   more slowly.  You are going a bit fast for her to take it all

24   down.

25

1          MS. PRICE:  Being affiliated is a nervous officer

2    being placed on the scene and being afraid that when he walks up

3    to a person, that they're going to be gunned down.  Being

4    affiliated, I was maliciously associated in 2015 after me and a

5    woman had issues over a man, not over a set or color.

6          Since then, my life has been turned upside down

7    tremendously.  I wasn't aware until I would pull my court

8    records, and it was in fine print, I believe this is gang

9    affiliated.

10          Affiliation means having a gun pulled on you by a

11    stranger.  Calling the cops as the victim, and you being

12    arrested.  Affiliation is a police officer pulling you out of

13    the house.  Telling you that you have felony warrants.  Then

14    asking what it is that you've done.  Attempting to get you to

15    confess to a crime.

16          Affiliation is fighting to get your niece and nephew

17    out of state custody but because you have been labeled as

18    affiliation of a gang member, you can't get them.

19          Affiliation is the police threatening and warning

20    peers to stay away from you.  Being arrested several times.

21    Held in jail without a bond and not told what crime it is that

22    you have committed.

23          Affiliation is being Gregory Carter sitting in jail

24    seven months, no bond, no reason of why he's there after he

25    rendered aid to people who had been shot.

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1          This has been mine and several peoples reality for the
2    last several years.  I was employed at Cox Communications when
3    this affiliation happened, and after that, I was terminated due
4    to a reason unforetold to me and told that I had done something,
5    but I was not allowed to dispute it.
6          Delayed employment.  No reason termination.  And
7    constant workplace bulling because I've been labeled as a bad
8    seed.
9          Now my son's school.  Curtis has the teachers harass
10   and bully him because he's affiliated by me, while insinuating
11   that he's not a "good one."  I've never understood why black and
12   brown people are referenced as a "good one" versus as being
13   referenced as a person or a child.
14         Officers observe you publicly with illegal intent.
15   Officers park cars down the street from your job surveilling
16   you.
17         THE COURT:  Ma'am, I'm going to interrupt you.  This
18   is a comment period for the settlement agreement.
19         MS. PRICE:  Right.
20         THE COURT:  Do you have anything to say about the
21   settlement agreement?
22         MS. PRICE:  I do. I was getting there.
23         THE COURT:  All right.  Well, let's get to it.
24         MS. PRICE:  Okay.  So I oppose the settlement for the
25   gang list because I don't want to raise my son in fear.  I don't

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1    want to raise my son to fear the police, but this has been a

2    thing past and present of black and brown people having to fear

3    the police.

4            Affiliation is not being given a fair chance in

5    America.  I oppose the settlement for the gang list and believe

6    it should be abolished altogether and created in a new light.  I

7    believe we need more minorities actively helping to write and to

8    make the criteria that is incorporated in the new policy.  There

9    needs to be accountability in reaching out to individuals

10   nominated for the list.  And there must be some accountability

11   for the money extorted from individuals who were maliciously

12   associated.

13           Until the City and law enforcement take accountability

14   for their actions, then this is just another document.

15           THE COURT:  All right.  Thank you, ma'am.

16           MS. PRICE:  Thank you.

17           THE COURT:  Ms. Ching, let me hear your closing

18   comments on this matter.

19           MS. CHING:  Thank you, Your Honor.

20           Just a couple of things that I would like to briefly

21   add.  First, I want to acknowledge all of the people who have

22   submitted comments and spoken today, regardless of their opinion

23   on the proposed settlement.

24           It is not an easy thing to come forward and share

25   deeply, personal, and painful stories with your name and face

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1   attached and to do it in this kind of setting.

2         I think I speak for all class counsel when I say we

3   appreciate and respect your courage and desire for justice.

4   Thank you.

5         Second, I think it's abundantly clear from all of the

6   submitted comments and statements made here in court today, just

7   how devastating, far-reaching, and long-lasting the impact of

8   the gang list has been.

9         So many of the commenters were placed on the list as

10  juveniles, as children.  The common thread throughout the

11  comments, whether supporting or objecting to the settlement, is

12  being on the gang list ruined my life.  And the list doesn't

13  just impact the people actually on it.  It is also the people

14  around them, their families and children.

15        Your Honor has seen evidence of literally generations

16  of families added to the gang list, and individuals, including

17  Plaintiffs, being renewed on the list because of who their

18  family members and loved ones are.

19        Plaintiffs brought this suit precisely because they

20  are intimately familiar with the consequences of being on the

21  list and because they wanted justice for the violation of, not

22  only their own civil rights, but those of their peers and their

23  communities.

24        Ultimately, the nature of a settlement is that nobody

25  gets everything that they want.  Nobody walks away 100 percent

1    happy, and that is why we call it settling.

2         The proposed settlement terms curtail the WPD's

3    unconstitutional practices and seek to address these civil

4    rights violations by clarifying and narrowing the way the WPD

5    adds to and maintains its gang list and by providing notice and

6    a process for people to appeal their inclusion.

7         Finally, I would like to mention the third factor the

8    Court must consider in its analysis.  Whether the value of

9    immediate recovery outweighs the near possibility of future

10   relief after protracted and expensive litigation.

11        Plaintiffs could have turned down this settlement,

12   taken the case to trial, and lost on every claim and had

13   absolutely nothing to show for it.  We would have been back to

14   square one.  No change whatsoever to WPD's policy or practices,

15   business as usual.

16        But even if Plaintiffs had gone to trial and prevailed

17   on every single claim, there would still be no guarantee that

18   the Court would have ordered the kind of policy changes and

19   reforms that we were able to obtain through the settlement

20   agreement.

21        We could have won everything and came away with less

22   than what we have today.  So at the end of the day, we felt a

23   bird in the hand is worth two in the bush.

24        So for these reasons and all of the reasons explained

25   in the joint motion, Plaintiffs respectfully request that the

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1    Court grant final approval.  With that, I will submit.

2              THE COURT:  Thank you very much.

3              Defendants.

4              MR. BRANSON:  Your Honor, as you know, this matter has

5    been before the Court for over three years.  It's been the

6    project of aggressive litigation on both sides of the offense.

7    The Court is well aware of the process and procedures that has

8    been gone through in this case.  The Court ruled on the motion

9    to dismiss in this matter, cross motions for summary judgment.

10             This matter has been brought before the Court, and

11   after a lot of sweat and work by the parties involved, as we

12   stand here today, we still disagree on the law and facts that

13   are relevant to this case based upon the comments that counsel

14   has just made.  We strenuously disagree with some of the

15   characterizations.

16             But, nonetheless, serious questions of law and fact do

17   still exist in this case, but most importantly, the value of

18   settlement of this is important to all of the parties involved.

19             The City of Wichita has taken great pains and efforts

20   to revamp and revise and make agreements and adjustments and

21   compromise to this lawsuit, as well as the plaintiffs have.

22             We believe that the procedures that have been put into

23   place not only protect constitutional rights as citizens, the

24   City of Wichita, but also affect and promote the legitimate law

25   enforcement goals of the City of Wichita to keep the public

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

```
 1   safe.

 2            We ask that the Court find that this settlement is

 3   fair and reasonable and adequate under all the circumstances

 4   presented in this case and approve the same.

 5            Thank you, Judge.

 6            THE COURT:  Thank you, Mr. Branson.

 7            I think I'm going to start by noting, I'm often

 8   somewhat amazed in the performance of my job, the disputes I'm

 9   called upon to resolve where it seems to me that the

10   intervention of the Court was not really required.  That there

11   wasn't really a substantive or perhaps even a legitimate

12   dispute.  It seems somewhat superfluous that the courts are

13   involved in that.

14            This case is exactly the opposite scenario.  As both

15   counsel have indicated, the matters involved here were

16   contested.  There were wide areas of disagreement that

17   implicated very series policies and issues.

18            I will tell you that when this case was first filed,

19   as I was looking at it, I thought this would be an

20   extraordinarily interesting case to be involved with and to

21   preside over and adjudicate.  By the same token, my day job

22   doesn't always give me enough time for pursuing interesting

23   things to their final end.

24            What counsel and parties on both sides exhibited in

25   this case was, I would say, an extraordinary demonstration of
```

1    professionalism and reasonableness.  Both sides have admitted

2    that this is not their dream resolution of where things are at,

3    but both sides have indicated that the settlement they believe

4    is in the best interest in resolving the case.

5         Plaintiffs, obviously, are representing a public

6    interest entities in the interest of civil rights, have pursued

7    these claims, and what they believe implicate their reason for

8    existence.

9         The defendant, the City of Wichita, of course, has

10   dual obligations, both through the operation of its police

11   department, the obligation of enforcing law and order and

12   community safety, but also because it is a public entity of

13   representing the rights of all citizens in the city, which

14   sometimes can be difficult for the City because those citizens

15   include police officers and the people the police officers are

16   arresting, and so it leaves those in the public entity in a bit

17   of a balancing act from time to time.

18        As noted, there were serious issues raised.  The Court

19   did not take the opportunity for early resolution of this matter

20   on legal issues because it did not believe it was appropriate.

21        I will be honest with you and tell you that I was a

22   bit surprised -- pleasantly surprised that the parties were able

23   to come to this agreement.  I do think that it is an

24   understatement to state, with respect, at least, to the first

25   legal standard the Court has to look at, that this case, this

1    proposed settlement was fairly and honestly negotiated.

2            There's no question, as both counsel have indicated,

3    that serious issues in dispute remain.  There is no question

4    that, as the Court had already ruled, that this was an issue

5    that needed factual resolution.  And how that resolution would

6    have ultimately played out, of course, is unknown to all of us.

7            That serious questions remained, both as to resolution

8    and as to application of those, as well as the Court's

9    involvement in it.  I think it was the parties recognition of

10   that factors that led to the settlement that's here.

11           Ms. Ching particularly talked about the Court's third

12   factor to review in approving class action settlements.  The

13   value of an immediate recovery outweighing the possibility of

14   future relief.

15           The availability of future relief was, of course, as

16   both sides have noted, an unknown, but the immediate recovery,

17   as noted, as a part of the review process that the City has

18   already undertaken, those individuals who spoke today have

19   already had their placement on the gang list reviewed and as a

20   result of that, and the review under the new criteria, have been

21   removed from the gang list.  That clearly would not have

22   happened this month or even this year had the matter gone on to

23   trial and litigation.

24           So there is clear indication of the immediate value of

25   the settlement outweighing any benefit to either side, such as

1   it may have been by projected litigation to the final end.

2          As a result of that, the Court does find, based on

3   those comments and what I have heard today, that the settlement

4   between the parties is fair and reasonable.  I intend to adopt

5   it and issue a written order in that regard doing so.

6          I would conclude, again, I guess, where I started by

7   just commending parties on both sides for your extraordinary

8   professionalism and diligence in reaching this resolution, which

9   I think is in the interest, not only of the parties that it

10  represented, but in the interest of the community overall.

11         I do have one final question with respect to the form

12  on my proposed order.  You've mentioned the negotiations for a

13  conflict ombudsman appointment in the event Mr. Moody is unable

14  to perform those.

15         Is that a matter that you think you will come to an

16  agreement on in the next few days, or is that an unrealistic

17  timetable at this point to predict?

18         MS. CHING:  Your Honor, we have an individual in mind,

19  but that person has been on vacation for the last week or so.  I

20  think there are still a few questions to be ironed out and to

21  see if that individual will agree to serve.  Baring that, we do

22  have at least one other person who has expressed an interest in

23  serving.

24         THE COURT:  Well, let me ask you then this procedural

25  issue.  Would you prefer that I hold issuing a final order in

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1   this case until that's resolved, or is that more appropriately

2   resolved by some supplemental order?

3           Obviously, if you are two days away -- just to make up

4   a time period -- from doing so, we can incorporate it into one

5   order.

6           If you think it's better to issue an order approving

7   what we have at this date with a supplemental order once a

8   conflict ombudsman is appointed, we can certainly do that.

9           MS. CHING:  Your Honor, given that the effective date

10  of the agreement and all the reforms that are triggered off of

11  that effective date is actually the date of final approval, we

12  would prefer having the final approval order come out sooner and

13  a supplemental order for the secondary ombudspersons.

14          THE COURT:  It looks like Defendants agree.

15          MR. BRANSON:  Defendants agree, Judge.

16          THE COURT:  All right.  Very well.  That is what we

17  will do.

18          What else do we need to take up regarding this matter

19  this afternoon?

20          MS. CHING:  The only other thing I think we would like

21  to do is to thank our Plaintiffs for having stuck through this

22  case for three and half years.  It was not a pretty case, but

23  we've reached an end.

24          THE COURT:  All right.  I think that's certainly

25  appropriate, so you may do that.

1    MS. CHING:  Nothing further, Your Honor.

2    THE COURT:  I guess I have not noted the approval of

3 the fees, but I intend to adopt that portion of the settlement

4 agreement as well.

5    Again, thank you all for your diligent efforts in this

6 matter.  I thank all of those who appeared and spoke regarding

7 that or who were involved in the interest in this litigation.

8    The Court is in recess.

9    MR. RAULSTON:  All rise.

10    (The proceedings concluded at 2:52 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

08-23-24, PROGENY v. CITY OF WICHITA No. 21-1100

1              C E R T I F I C A T E

2              I, Annie S. States, United States Court Reporter in

3    and for the District of Kansas, do hereby certify:

4              That the above and foregoing proceedings were taken

5    by me at said time and place as a stenomask voice writer;

6              That thereafter said proceedings were transcribed

7    under my direction and supervision by means of computer-aided

8    transcription, and that the above and foregoing constitutes a

9    full, true, and correct transcript of said proceedings;

10             That I am a disinterested person to the said

11   action.

12             IN WITNESS WHEREOF, I hereto set my hand on this

13   the 28th day of January, 2025.

14

15                         /s/ Annie S. States
                    Annie S. States, CCR, CVR, RVR-M
16                    United States Court Reporter

17

18

19

20

21

22

23

24

25